1  James H. Goetz
   J. Devlan Geddes
2  **GOETZ, GALLIK & BALDWIN, P.C.**
   35 North Grand
3  P.O. Box 6580
   Bozeman, MT  59771-6580
4  Ph:    406-587-0618
   Fax:    406-587-5144
5
   Bonnie Steingart    (*Pro Hac Vice* Application forthcoming)
6  John W. Brewer    (*Pro Hac Vice* Application forthcoming)
   **FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP**
7  One New York Plaza
   New York, New York 10004
8  (212) 859-8000

9  ATTORNEYS FOR PLAINTIFF

10

11                **IN THE UNITED STATES DISTRICT COURT**

12                  **FOR THE DISTRICT OF MONTANA**

13                         **BUTTE DIVISION**

14                         * * * * * * * *

15  MAGTEN ASSET MANAGEMENT CORPORATION,    )    Cause No. *CV-04-26-BU-RFC*
                                            )
16                  Plaintiff,              )
                                            )
17              -against-                   )    **COMPLAINT AND**
                                            )    **DEMAND FOR JURY TRIAL**
18  MIKE J. HANSON, JACK D. HAFFEY, ERNIE J.  )
    KINDT, and ELLEN M. SENECHAL,           )
19                                          )
                                            )
20                  Defendants.             )
    _____    )

21          Plaintiff Magten Asset Management Corporation ("Magten"), by its undersigned attorneys,

22  hereby alleges in support of its Complaint on personal knowledge as to its own acts and on information

23  and belief as to all other matters as follows:

24                              **INTRODUCTION**

25          1.    Magten is a creditor of Clark Fork and Blackfoot, LLC ("Clark Fork"), formerly

26  known as NorthWestern Energy, LLC ("NWE"), and prior to that known as The Montana Power

27  Company LLC ("MPLLC").  Magten brings this lawsuit to obtain redress for the wrongful actions of

28  defendants Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen M. Senechal, all of whom were

COMPLAINT AND DEMAND FOR JURY TRIAL                                                PAGE 1

FILED
BUTTE, MT
2006 APR 19  AM 10 55
PATRICK E. DUFFY, CLERK
BY _____
DEPUTY CLERK

RECEIVED
JUL 1 8 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

05 - 499

1  officers of Clark Fork on November 15, 2002 and enabled the transfer on that date (the "Transaction")

2  of Clark Fork's key assets — electric, natural gas and propane utility assets (the "Montana Utility

3  Assets") — to its corporate parent NorthWestern Corporation ("NorthWestern") without adequate

4  consideration. The Transaction unjustly enriched NorthWestern by hundreds of millions of dollars while

5  destroying Clark Fork's solvency and thus its ability to meet its obligations to Magten and its other

6  creditors. The defendants, as officers of Clark Fork, had a fiduciary duty to Clark Fork's creditors not

7  to engage in transactions that would render Clark Fork insolvent. In connection with the Transaction,

8  Clark Fork purported to have NorthWestern assume Clark Fork's liabilities, but NorthWestern's other

9  liabilities were so massive that, even after paying inadequate consideration to Clark Fork for the

10  Montana Utility Assets, NorthWestern could not pay its own pre-existing creditors, and filed a

11  voluntary petition for relief under Chapter 11 of the Bankruptcy Code. As a result of defendants'

12  actions, Magten is now owed well in excess of $20 million dollars by a company which defendants

13  rendered unable to meet its obligations to Magten. Magten seeks appropriate compensatory and

14  punitive damages, in an amount to be determined at trial.

15                                      **THE PARTIES**

16         2.      Plaintiff is a corporation validly organized and doing business under the laws of the

17  State of Delaware with its principal place of business in the State of New York and is, therefore,

18  deemed to be a citizen of Delaware and New York pursuant to 28 U.S.C § 1332(c)(1).

19         3.      Defendant Mike J. Hanson is a citizen of the State of Montana and is believed to reside

20  at 1805 C St., Butte, Montana 59701. As of November 15, 2002, Hanson was Chief Executive

21  Officer of Clark Fork.

22         4.      Defendant Jack D. Haffey is a citizen of the State of Montana, and is believed to reside

23  at 2101 Garfield St., Anaconda, Montana 59711. As of November 15, 2002, Haffey was President of

24  Clark Fork.

25         5.      Defendant Ernie J. Kindt is a citizen of the State of Montana, and is believed to reside

26  at 5 Amber Way, Butte, Montana 59701. As of November 15, 2002 Kindt was Vice President and

27  Chief Accounting Officer of Clark Fork.

28         6.      Defendant Ellen M. Senechal is a citizen of the State of Montana, and is believed to

1    reside at 75 Park Drive, Clancy, Montana 59634. As of November 15, 2002, Senechal was Vice

2    President, Treasurer and Chief Financial Officer of Clark Fork.

3                              **JURISDICTION AND VENUE**

4        7.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

5    1332, as it is between citizens of different States and the matter in controversy exceeds the sum or

6    value of $75,000, exclusive of interest and costs.

7        8.      Venue is proper pursuant to 28 U.S.C. 1391, because all defendants reside in this

8    judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this

9    judicial district.

10              **FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS**

11   **The Montana Power Company**

12       9.      The Montana Power Company ("Montana Power") was incorporated in 1961 under

13   the laws of the state of Montana as the successor to a corporation formed in 1912 through the merger

14   of four regional electric companies.

15       10.     By the year 2000, Montana Power was engaged in activities related to

16   telecommunications and energy related activities including activities in the fields of oil, coal, natural gas,

17   and electricity.

18       11.     In November 1996, Montana Power and Bank of New York entered into that certain

19   Indenture for Unsecured Subordinated Debt Securities Relating to Trust Securities (the "Indenture").

20       12.     Pursuant to the Indenture, Montana Power issued the Junior Subordinated Interest

21   Debentures (the "Junior Debentures").

22       13.     At or about the same time, pursuant to the Amended and Restated Trust Agreement

23   (the "Trust Agreement") between itself and various other persons, Montana Power created Montana

24   Power Capital I (the "Trust"), a business trust established pursuant to the Delaware Business Trust Act.

25   Bank of New York was designated as the Property Trustee of the Trust as well as serving as Trustee

26   under the Indenture.

27       14.     As detailed below, as of November 2002, Clark Fork had succeeded to Montana

28   Power's obligations with respect to the Junior Indentures. The Bank of New York has been

COMPLAINT AND DEMAND FOR JURY TRIAL                                          PAGE 3

1  succeeded as Property Trustee of the Trust as well as Trustee under the Indenture by the Law

2  Debenture Trust Company of New York ("Law Debenture").

3      15.    The Trust is a special purpose vehicle which, pursuant to the Trust Agreement, issued

4  the Series A 8.45% Quarterly Income Preferred Securities ("QUIPS").

5      16.    The Trust holds 100% of the Junior Debentures, with a total face amount of

6  approximately $67 million, which constitute its sole meaningful asset.  The value of the QUIPS is

7  entirely based on the value of the Junior Debentures, and thus on the ability of Clark Fork to pay

8  interest and principal to the Trust.  The amounts paid by Clark Fork to the Trust would then in turn be

9  passed on by the Trust to the holders of the QUIPS.

10      17.    The Junior Debentures were not sold directly to investors; rather, purchasing the

11  QUIPS provided investors with substantially the same rights and the same potential investment return as

12  they would have had had they been able to own Junior Debentures directly.  The entire structure of the

13  transaction was designed to put investors in the same position as if they had directly purchased the

14  Junior Debentures, while providing Montana Power with a more favorable accounting treatment than

15  would have been possible had the Junior Debentures been sold directly to the investing public.

16      18.    Accordingly, in Section 610 of the Indenture Clark Fork (as successor to Montana

17  Power) expressly acknowledges that the holders of the QUIPS are intended beneficiaries of the

18  Company's obligations with respect to the Junior Debentures and that if the Property Trustee of the

19  Trust (the legal titleholder to the Junior Debentures) fails to act, any holder of the QUIPS can sue

20  directly to enforce the Property Trustee's rights.

21      19.    Magten owns in excess of 33% of the QUIPS.

22      20.    In connection with the Trust Agreement and the Indenture, Montana Power also

23  entered into a Guarantee Agreement with the Bank of New York as Guarantee Trustee (the

24  "Guarantee Agreement").  Pursuant to the Guarantee Agreement, Montana Power, as guarantor,

25  agreed to pay to the holders of the QUIPS certain payments, to the extent such are not paid by the

26  Trust, and to the extent the Property Trustee had funds available in a specified account.  As with the

27  Indenture and the Trust Agreement, Clark Fork and Law Debenture have succeeded to the original

28  roles and responsibilities of Montana Power and Bank of New York respectively.

COMPLAINT AND DEMAND FOR JURY TRIAL                  PAGE 4

**The Sale of the Montana Power Company's Utility Assets**

21.     On March 28, 2000, Montana Power announced plans to restructure its business.  This restructuring involved the sale of its energy related assets, including its electric, natural gas, and propane utility assets, in order to allow Montana Power to focus on telecommunications.

22.     On September 29, 2000, Montana Power entered into a Unit Purchase Agreement with NorthWestern, pursuant to which NorthWestern agreed to purchase control of the Montana Utility Assets, then owned by Montana Power, in a multi-step transaction.

23.     On February 13, 2002, Montana Power merged its energy assets into MPLLC (the "Merger").  As a result of the Merger, MPLLC thereafter held and operated the Montana Utility Assets and succeeded to all of Montana Power's obligations with respect to the Junior Debentures and the QUIPS.

24.     Specifically, in connection with the Merger, on February 13, 2002, pursuant to the First Supplemental Indenture, MPLLC assumed the obligations of Montana Power under the Indenture.

25.     In addition, in connection with the Merger, on February 13, 2002, pursuant to a letter agreement, MPLLC assumed the obligations of Montana Power under the Guarantee Agreement.

26.     On February 15, 2002, NorthWestern purchased 100% of the equity of MPLLC, and, thus, the corresponding control of the Montana Utility Assets, for $478 million in cash.  None of this consideration was received or retained by MPLLC.  It was thus not thereafter available to Clark Fork to assist Clark Fork in meeting its obligations to its creditors.

27.     On March 19, 2002, MPLLC was renamed NWE.

28.     On August 13, 2002, NorthWestern entered into the Second Supplemental Indenture, whereby it assumed on a joint and several basis with NWE all of NWE's obligations under the Indenture.

29.     On August 13, 2002, NorthWestern entered into an Amendment to the Guarantee Agreement, whereby it assumed on a joint and several basis with NWE all of NWE's obligations under the Guarantee Agreement.

30.     On August 13, 2002, NorthWestern entered into a letter agreement amending the Trust Agreement, whereby it assumed on a joint and several basis with NWE all of NWE's obligations under

1    the Trust Agreement.

2    **The Transfer**

3         31.    On November 15, 2002, defendants, as officers of Clark Fork, carried out a scheme

4    to defraud, injure and deprive Magten of the ability to receive the benefits due to it from Clark Fork in

5    connection with the Junior Debentures and the QUIPS, by, in the Transaction, transferring substantially

6    all of Clark Fork's assets, the Montana Utility Assets, to NorthWestern without receiving adequate

7    consideration in return.  Clark Fork received no cash for the Transfer, and the consideration

8    purportedly received was dramatically less than the value of the assets; over $1 billion dollars in assets

9    were transferred to NorthWestern, and only approximately $700 million dollars in Clark Fork liabilities

10   were purportedly assumed by NorthWestern.  Indeed, with respect to some if not all of the liabilities

11   purportedly assumed, NorthWestern was already a co-obligor with Clark Fork prior to the Transaction

12   and/or Clark Fork remained obligated jointly and severally with NorthWestern subsequent to the

13   Transaction, thus making any purported assumption of the liabilities in connection with the Transaction

14   valueless.

15        32.    In particular, NorthWestern was already a co-obligor as to Clark Fork's obligations

16   with respect to the Junior Indentures and QUIPS prior to the transaction, and Clark Fork remained

17   obligated jointly and severally with NorthWestern with respect to the Junior Indentures and QUIPS

18   subsequent to the Transaction.  Indeed, Clark Fork requested Bank of New York (at the time still the

19   Trustee under the Indenture) to execute a supplement to the Indenture purporting to release Clark Fork

20   from its continuing obligations under the Indenture, but Bank of New York refused to provide such a

21   release.

22        33.    As an immediate result of the consummation of the Transfer, Clark Fork was insolvent.

23   Stripped of its assets, Clark Fork was thereafter unable to meet its obligations with respect to the Junior

24   Debentures and QUIPS and did not do so.

25        34.    Both prior to and following the Transaction, NorthWestern was itself insolvent, making

26   both its August 2002 assumption of liabilities with respect to the Junior Debentures and QUIPS and any

27   purported further assumption of those liabilities in connection with the Transaction of little or no value to

28   the holders of the QUIPS and other creditors of Clark Fork.  Even the hundreds of millions of dollars

by which it was unjustly enriched by the Transaction were insufficient to overcome the massive imbalance between assets and liabilities created by its various other failed business ventures.

35.     The defendants all knew, should have known, and/or were reckless with respect to knowing that Clark Fork would be rendered insolvent as a result of the Transaction and that NorthWestern was insolvent both before and after the Transaction.

36.     No interest on the Junior Debentures was paid by either NorthWestern or Clark Fork since prior to September 14, 2003. In excess of $2 million of interest on the Junior Debentures is now past due. If paid, that interest would have been passed on by the Trust to the holders of the QUIPS such as Magten. Moreover, the entire principal amount of the Junior Debentures was accelerated pursuant to the terms of the Indenture no later than September 14, 2003.

37.     Following the Transaction, Clark Fork retained only the Milltown Dam, a two megawatt hydroelectric dam at the confluence of the Clark Fork and Blackfoot Rivers, under a license that expires in 2007, and the related environmental liabilities.

38.     Following the Transaction, NorthWestern operated the Montana Utility Assets as part of NorthWestern's NorthWestern Energy Division.

39.     After the Transaction, NWE remained a subsidiary of NorthWestern and on November 20, 2002, NWE was re-named Clark Fork.

40.     Clark Fork continues to operate the Milltown Dam.

41.     Clark Fork is entirely dependent upon NorthWestern for continued funding of the Milltown Dam and its corporate existence, and NorthWestern is required, under certain agreements with Clark Fork, which require NorthWestern to pay any costs and expenses that arise in connection with the operation of the Milltown Dam.

42.     Less than a year later, on September 14, 2003, NorthWestern filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware.

43.     The Montana Utility Assets generate approximately 80% of NorthWestern's consolidated EBITDA, although NorthWestern did not pay fair value for those assets, thus injuring Magten and Clark Fork's other creditors.

44.    The Montana Utility Assets are now available to all creditors of NorthWestern, most of whom were not creditors of Clark Fork and thus had not previously had any claim to Clark Fork's assets. Accordingly, Magten and other QUIPS holders are likely to receive little or no recovery for their claims in NorthWestern's reorganization plan.

45.    On April 8, 2004, the United States Bankruptcy Court for the District of Delaware granted Magten's motion in NorthWestern's bankruptcy case for leave to commence an adversary proceeding against NorthWestern seeking to have the Transaction set aside as a fraudulent conveyance.

## STATEMENT OF CLAIM

### FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty)

46.    Plaintiff repeats and realleges paragraphs 1-45 and incorporates them herein by reference.

47.    Clark Fork was a company within the zone of insolvency on November 15, 2002. Accordingly, defendants, as officers of Clark Fork, owed individual fiduciary duties to Clark Fork's creditors, including without limitation the Trust and all QUIPS holders, including Magten's predecessors in interest, not to engage in any transaction that would make Clark Fork insolvent and thus unable to perform its obligations with respect to the Junior Debentures and QUIPS.

48.    The Trust and the QUIPS holders, including Magten's predecessors in interest, were creditors of Clark Fork, and were injured by the Transaction which transferred the Montana Utility Assets to NorthWestern without adequate consideration, thereby rendering Clark Fork insolvent.

49.    The Property Trustee has failed to enforce the Trust's rights, so Magten has standing under the Indenture to enforce both the Trust's rights and its own individual rights as successor to the QUIPS holders who were its predecessors in interest.

50.    Defendants breached their fiduciary duties to the Trust and Magten's predecessors in interest by willfully and wantonly carrying out the Transaction and transferring the Montana Utility Assets to NorthWestern without adequate consideration, thereby rendering Clark Fork insolvent.

51.    Defendants also breached their fiduciary duties to the Trust and Magten's predecessors

1  in interest by purporting to assign Clark Fork's obligations with respect to the Junior Debenture and

2  QUIPS to NorthWestern, when they knew NorthWestern was insolvent and would remain insolvent,

3  and would thus be unable to perform those obligations.

4       52.     By reason of the foregoing acts, practices and course of conduct, the defendants have

5  breached their fiduciary duties to the Trust and Magten's predecessors in interest, causing financial loss,

6  in an amount to be proven at trial, but in excess of $20 million.

7       53.     Punitive damages in an amount to be determined at trial should also be awarded due to

8  the willful, malicious, and outrageous nature of these breaches of fiduciary duty.

9

10                                             **PRAYER FOR RELIEF**

11

12       WHEREFORE, plaintiff respectfully requests that this Court enter judgment against defendants

13  as follows:

14       1.     Awarding plaintiff compensatory and punitive damages, in an amount

15  determined at trial but in excess of $20 million;

16       2.     Awarding plaintiff all allowable costs, attorneys' fees and other litigation

17  expenses to the extent recoverable under law; and

18       3.     Awarding plaintiff such other and further relief as to this Court may be just,

19  proper and equitable.

20       DATED this 15th day of April, 2004.

21

22                      GOETZ, GALLIK & BALDWIN, P.C.

23

24

25

26       By: _____

27             _For:_ James H. Goetz

28       ATTORNEYS FOR PLAINTIFF

**COMPLAINT AND DEMAND FOR JURY TRIAL**                         **PAGE 9**

1

## **DEMAND FOR JURY TRIAL**

2

3    Plaintiff hereby demands a trial by jury on all issues so triable.

4

5    DATED this 15th day of April, 2004.

6

7                          GOETZ, GALLIK & BALDWIN, P.C.

8

9

10

11    By: _____
                     James H. Goetz
12    for:
13    ATTORNEYS FOR PLAINTIFF

14

15
      E:\JIM\Karen\Magten Asset Mgmt Corp 4032\Pleadings\Complaint.4 15 04.wpd
16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT AND DEMAND FOR JURY TRIAL**                                    PAGE 10