Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59624
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | Case No.: CV-04-26-BU-RFC |
| Plaintiff, | |
| vs. | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |
| MIKE J. HANSON, and ERNIE J. KINDT, | |
| Defendant | |

On or about April 19, 2004 Plaintiff Magten Asset Management Corporation ("Magten") filed a complaint against Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen Senechal alleging that they breached a fiduciary duty to Plaintiff because Clark Fork and Blackfoot, LLC ("Clark Fork") (f/k/a NorthWestern Energy, LLC and Montana Power, LLC), a wholly owned subsidiary of NorthWestern Corporation, ("NorthWestern") transferred certain assets and liabilities of Clark Fork (the "Montana Utility Assets and Liabilities") to its corporate parent and sole owner, NorthWestern. These particular Defendants were named by Magten because at various times they hold or held the title of "officers" of Clark Fork.[1]

---

[1] Both Jack Haffey and Ellen Senechal retired prior to the transfer of assets and liabilities complained of by Magten. Magten has stipulated to a dismissal of Mr. Haffey and Ms. Senechal, which Stipulation and Proposed Order are currently pending before this Court.

- 1

1  Defendants Hanson and Kindt have now moved to dismiss the complaint against them
2  since (1) as a matter of law, only the member of a limited liability company, in this case
3  NorthWestern, has the legal authority to order the transfer of assets and liabilities out of a limited
4  liability company; (2) as a matter of law, the Defendants owed no fiduciary duty to Magten; and
5  (3) in any event, the terms of the relevant documents on which Magten bases its claim permitted
6  the transfer of the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

## STANDARD OF REVIEW

8  A claim may be dismissed either because it asserts a legal theory that is not cognizable as
9  a matter of law or because it fails to allege sufficient facts to support a cognizable legal claim.
10 See, SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996).
11 The court presumes that all well-pleaded allegations are true, resolves all doubts and inferences
12 in the pleader's favor, and views the pleading in the light most favorable to the non-moving
13 party. Associated General Contractors of America v. Metropolitan Water Dist. of So. Calif., 159
14 F.3d 1178, 1181 (9th Cir, 1998). Furthermore, when deciding a motion to dismiss, the court may
15 consider the complaint and documents whose contents are alleged in a complaint and whose
16 authenticity no party questions, but which are not physically attached to the pleading. In re
17 Syntex Corp. Securities Litigation, 95 F.3d 922, 926 (9th Cir. 1996). See also, 2 Moore's Federal
18 Practice ¶ 12.34 (2000); GFF Corp v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th
19 Cir. 1997); Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994). As indicated in Branch,
20 "documents whose contents are alleged in a complaint and whose authenticity no party
21 questions, but which are not physically attached to the pleading, may be considered in ruling on a
22 Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into
23 a motion for summary judgment." Id., 14 F.3d at 454. Therefore, it is appropriate to discuss
24 with the Court in the Motion, the Indenture, Guarantee Agreement, and amendments thereto

(collectively referred to herein as the "QUIPS Trust Documents") which form part of the basis of Plaintiff's Complaint and which form at least one basis for dismissal of this action.

## STATEMENT OF FACTS

On February 15, 2002, pursuant to the terms of a Unit Purchase Agreement ("UPA") entered into between NorthWestern, as purchaser, and The Montana Power Company ("MPC") and Touch America Holdings, Inc. ("TAH") as sellers, NorthWestern acquired the sole unit interest in Montana Power, LLC, a Montana limited liability company. Two days previously, as part of a corporate reorganization of MPC into TAH, the electric and natural gas transmission and distribution assets of MPC, as well as MPC's interest in the Milltown Dam, were transferred from MPC to MPLLC.

Among the assets and liabilities transferred to MPLLC were certain 8.45% Junior Subordinated Debentures due in 2036 (the "Junior Debentures") which had been issued by MPC in or about 1996. The interest paid on these Junior Debentures created the cash flow to make dividend payments on certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPS") which had previously been issued by Montana Power Capital I (The "Trust"). The Trust is a business trust established pursuant to the Delaware Business Trust Act. The sole assets of the Trust are the Junior Debentures. Plaintiff Magten is currently a holder of some but not all the QUIPS.

When NorthWestern acquired the unit interest in MPLLC, NorthWestern became the sole Member of MPLLC and named itself as the Manager of MPLLC pursuant to applicable provisions of Montana Limited Liability Company Act. NorthWestern, as sole Member and Manager, appointed certain individuals, including the Defendants, as "officers" of its wholly owned subsidiary, MPLLC, although Montana statutes do not specifically provide that a limited liability company have officers.

1  In August 2002, almost six months after NorthWestern acquired MPLLC (whose name
2  by that time had been changed to NorthWestern Energy, LLC), NorthWestern authorized and
3  directed the transfer of the electric and natural gas transmission and distribution assets and
4  liabilities held by its subsidiary to it, the parent corporation. The transfer was effected on
5  November 15, 2002. The Montana Utility Assets and Liabilities transferred included the
6  obligations associated with the Junior Debentures and QUIPS. Other assets and liabilities
7  remained with the limited liability company, whose name was subsequently changed to Clark
8  Fork and Blackfoot, LLC. Pursuant to the operation of the QUIPS Trust Documents, as amended
9  on or about August 13, 2002, upon the closing of the transfer, Magten ceased to be a creditor of
10 Clark Fork and became a creditor only of NorthWestern.
11  On September 14, 2003, ten (10) months after the transfer of the Montana Utility Assets
12 and Liabilities, NorthWestern filed a voluntary petition for reorganization in bankruptcy pursuant
13 to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court in Delaware.
14  Magten has filed an adversary proceeding against NorthWestern in the bankruptcy
15 proceeding in which it alleges, among other things, that the November 15, 2002 transfer of the
16 Montana Utility Assets and Liabilities from its wholly owned subsidiary limited liability
17 company was a fraudulent conveyance. Magten seeks the rescission of the transfer.
18  Not satisfied with pursuing its claims against the sole Member and Manager of the
19 limited liability company in bankruptcy court, Magten has also filed this action against the
20 "officers" of Clark Fork, asserting that they breached a fiduciary duty allegedly owed to creditors
21 when the sole Member and Manager transferred the Montana Utility Assets and Liabilities to
22 itself.
23  Plaintiff's complaint, however, fails as a matter of law and thus this action should be
24 dismissed with prejudice.

# ARGUMENT

**I. As a Matter of Law, Only NorthWestern Corporation and Not the Named Defendants Had the Legal Authority to Order the Transfer of Certain Assets and Liabilities from its Wholly Owned Subsidiary to the Corporate Parent.**

Pursuant to the provisions of the Montana Limited Liability Company Act, only the members, upon the unanimous consent of the members, have the legal authority to transfer all or substantially all of the limited liability company's assets. *See*, Mont. Code Ann. §35-8-307(3)(l).

At all times material to Magten's Complaint, NorthWestern was and is the sole Member and Manager of Clark Fork. Section 35-8-102(20) defines a "Member" as a person who has been admitted to membership in a limited liability company. As the sole Member, NorthWestern was (and is) the sole owner of Clark Fork. Further, Mont. Code Ann § 35-8-301(1) provides in pertinent part:

> Except as provided in subsection (2), a member is an agent of the limited liability company for the purpose of its business or affairs and the act of a member, including but not limited to the execution of any instrument in the name of the limited liability company for apparently carrying on in the usual way the business or affairs of the limited liability company binds the limited liability company, unless the member so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom the member is dealing has knowledge of the fact that the member has no such authority.

Thus, as a matter of law, NorthWestern as the sole Member of Clark Fork, has the authority to act for and bind Clark Fork, its wholly owned subsidiary.

Section 35-8-102(18) defines a "Manager" as a person who is vested with authority under § 35-8-301. Subsections (2) and (3) of section 301 provide:

> (2) If the articles of organization provide that management of the limited liability company is vested in a manager or managers:
>
> (a) a member, acting solely in the capacity as a member, may not be an agent of the limited liability company; and

    (b)    a manager is an agent of the limited liability company for the purpose of its business or affairs and the act of a manager, including but not limited to the execution of any instrument in the name of the limited liability company for apparently carrying on in the usual way the business or affairs of the limited liability company binds the limited liability company, unless the manager so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom the manager is dealing has knowledge of the fact that the manager has no such authority.

(3)    An act of a manager or a member that is not apparently for carrying on in the usual way the business of the limited liability company does not bind the limited liability company, unless authorized in accordance with the articles of reorganization or the operating agreement, at the time of the transaction or at any other time.

Thus, as a matter of law, NorthWestern as the Manager of Clark Fork[2] has the authority to act for and bind Clark Fork.

Section 35-8-107(10) provides that a limited liability company may transfer or otherwise dispose of all or any part of its property and assets. Sections 35-8-702(1) and (5) provide that title to property of the limited liability company that is held in the name of the limited liability company may be transferred only by an instrument of transfer executed by any member or manager in the name of the limited liability company. Section 35-8-307(3)(l) provides that a transfer or other disposition of all or substantially all of a limited liability company assets requires the unanimous consent of the Members of the company. Therefore, as the sole Member and Manager of Clark Fork, NorthWestern had the <u>exclusive</u> power to act and direct the transfer, sale, or other distribution of the assets and liabilities of the limited liability company. Any "officers" of Clark Fork could merely carry out the directives of the sole Member and Manager, and had no individual authority or power to bind or prevent Clark Fork from transferring the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

---

[2] None of the Defendants were "Managers" of Clark Fork as defined by 35-8-102(18) and Magten has not alleged they were at any time the statutory "Managers" of Clark Fork.

Moreover, in contrast to the Montana Business Corporation Act, the Montana Limited Liability Company Act does not require that the limited liability company even have officers. Compare e.g. § 35-1-222(1)(a) ("After incorporation . . . the initial directors shall . . . complete the organization of the corporation by appointing officers . . ."); § 35-1-441 ("A corporation has the officers described in its bylaws or appointed by the board of directors in accordance with the bylaws"). The Montana Limited Liability Company Act makes absolutely no reference to "officers." The legal significance of this omission, alone and when read together with Sections 301, 307, 107 and 702 of the Montana Limited Liability Company Act, is that as a matter of law the "officers" of Clark Fork have no ability to unilaterally bind Clark Fork in the transfer of the Montana Utility Assets and Liabilities; only the sole Member and Manager of Clark Fork (NorthWestern) had the legal capacity to order the transfer of the Montana Utility Assets and Liabilities from Clark Fork to itself, Clark Fork's sole corporate parent. *See*, Mont. Code Ann. § 35-8-307(3)(1); and §§ 35-8-702(1) and (5). Therefore, as a matter of law, the named Defendants may not be held liable for a transfer of assets and liabilities which they could neither order nor prevent.

> II. **As a Matter of Law, The Named Defendants Owed No Fiduciary Duty to Magten or Any Other Holder of QUIPS Which Were General Creditors of the Limited Liability Company.**

At all times material to this Complaint, either Clark Fork or NorthWestern had a liability to pay interest on the Junior Debentures to the Trust pursuant to the terms and conditions of the various trust documents as amended. The Trust, in turn, had an obligation to pay quarterly dividends to the holders of the QUIPS. Assuming facts as alleged in Plaintiff's complaint,

- 7 -

Magten, as a holder of some of the QUIPS, was a general unsecured creditor.[3] Assuming, <u>arguendo</u>, that Magten was an unsecured creditor of Clark Fork, the "officers" of Clark Fork did not owe any fiduciary duty to any general unsecured creditor, including Magten, either prior to or as of the effective date of the transfer of the Montana Utility Assets and Liabilities to NorthWestern.

First, as discussed in the preceding section, the statutory powers and obligations of a limited liability company rest with the members and managers of that limited liability company. Section 35-8-310 discusses the general standards of a member's and of a manager's conduct. The only fiduciary duties owed by a member or a manager of a limited liability company are the duty of loyalty and the duty of care. Those duties are <u>only</u> owed to the limited liability company and to the other members. *See* §§35-8-310(1) and (8). Under the statutory provisions of the Montana Limited Liability Company Act, no fiduciary duties are owed to a creditor of the limited liability company.

NorthWestern was and is the sole Member and Manager of Clark Fork. Therefore, it is NorthWestern, as either the Member or the Manager, who owes the fiduciary duties of loyalty and care to Clark Fork. The "officers" of Clark Fork have no duties or obligations conferred upon them by the Montana Limited Liability Company Act. At most, they function solely as agents of the limited liability company, and then only within the scope of the agency conferred upon them by the principal, which in this case is NorthWestern in its capacity as Manager of Clark Fork.

---

[3] There is no dispute that Magten is an unsecured creditor. The Junior Debentures are unsecured. The QUIPS by their very nature are in the form of preferred securities which are not secured but whose cash flow originates from the unsecured debt instruments, the Junior Debentures. However, it is Defendants contention that by operation of the QUIPS trust documents, upon the transfer of the Montana Utility Assets and Liabilities, Magten ceased to be a creditor of Clark Fork and became the creditor of NorthWestern.

Even if it could be argued that the "officers" do have statutory fiduciary duties, such duties would be limited to the same duties owed by the members and managers of the limited liability company: the duties of loyalty and care, as provided in Mont. Code Ann. §§ 35-8-310(1), (2) and (3). Importantly, and as noted above, these duties are owed solely to the limited liability company and to the members of the limited liability company. No where in Montana's Limited Liability Company Act do agents of the limited liability company owe a duty to general creditors, either secured or unsecured, of the limited liability company. Therefore, even if the Defendants here as "officers" of Clark Fork owed the fiduciary duties of loyalty and care, those duties were owed only to Clark Fork and its sole Member, NorthWestern. The Defendants as "officers" simply did not owe any fiduciary duty to Magten as a general unsecured creditor of Clark Fork.

Second, even if the status of Defendants here as "officers" of a limited liability company were analogous to the duties of officers of a for-profit corporation organized under Montana's Business Corporation Act, Mont. Code Ann. § 35-1-101 et seq., even traditional corporate officers do not owe a fiduciary duty to general creditors of the corporation. See, Mont. Code Ann. §§ 35-1-416: requirement for and duties of board of directors; 35-1-418: general standards for directors; 35-1-442: duties of officers; 35-1-443 standards of conduct for officers.

Moreover, the rights of Magten are controlled by the QUIPS Trust Documents, including all amendments thereto, under the terms of which the Junior Debentures and QUIPS were issued. See, e.g., Mann v. Oppenheimer & Co., 517 A. 2d 1056, 1061 (Del. 1986) ("The rights of debenture holders are controlled by the terms of the indenture under which the securities are issued."); Katz v. Oak Industries, Inc., 508 A. 2d 873, 879 (Del. CH. 1986) ("The terms of the contractual relationship agreed to and not broad concepts such as fairness define the corporation's obligation to bond holders.") Montana law is consistent with this proposition; the

1 mere existence of a debtor-creditor relationship does not create a fiduciary duty. Only where a
2 "special relationship" exists between a creditor and debtor might a court find a fiduciary duty
3 which is premised on that special relationship, not on the creditor-debtor relationship. *See*,
4 Simmons Oil Corporation v. Holly Corporation, 258 Mont. 79, 84, 852 P. 2d 523, 526 (1993);
5 Diest v. Wachholz, 208 Mont. 207, 216, 678 P.2d 188, 193 (1984). Magten has not, nor can it,
6 allege any "special relationship" between itself and Clark Fork or NorthWestern. Thus, there is
7 no fiduciary duty between Magten and either Clark Fork or NorthWestern, and, *a fortiori*, there is
8 no fiduciary duty owed by the "officers" of Clark Fork to Magten.

**III. The Terms of the Relevant Documents on which Magten Bases Its Claim Expressly Permitted the Transfer of the Assets and Liabilities at Issue Here from the Limited Liability Company to NorthWestern.**

12 As Magten makes clear in its Complaint, it premises the alleged liability of the named
13 Defendants for a breach of fiduciary duty upon the terms of the QUIPS Trust Documents
14 originally created in 1996 when MPC issued the Junior Debentures and the Trust issued the
15 QUIPS.[4] After MPC created the Trust in 1996, MPC, the Trust, and Bank of New York (the
16 original trustee) entered into the Indenture For Unsecured Subordinate Debt Securities dates as
17 of November 1, 1996 relating to Trust Securities (the "Indenture").[5] The Indenture expressly
18 states that a transfer of assets conducted in accordance with section 1101 of the Indenture has the
19 affect of releasing the predecessor entity of all obligations under the Indenture or any
20 Outstanding Securities thereunder. *See* Indenture, Sec. 1101-1102. The Indenture controls the
21 rights of Magten and Magten should not be allowed to object to acts that were performed in
22 accordance with the terms of the Indenture. *cf.* In re Holiday Mart, Inc., 715 F.2d 430, 432 (9th

---

[4] As explained *infra*, these documents have subsequently been amended in accordance with the terms of those documents
[5] A complete copy of the Indenture is attached as Exhibit A.

- 10 -

Cir. 1983) (recognizing that valid subordination agreements are normally enforced in accordance with their terms). Since the transfers of the Montana Utility Assets and Liabilities complied with Section 1101 of the Indenture and released the predecessor entities under Section 1102, Magten should not be heard to say that anyone violated any alleged duty when the transaction at issue was completed in accordance with the rights granted under the Indenture.

The Indenture allows property of the original entity to be transferred to "a Person organized and validly existing under the laws of the United States, any State thereof, or any other jurisdiction." *See* Indenture, Sec. 1101. The only other requirements in Section 1101 of the Indenture are that, immediately <u>after</u> the transaction, no Event of Default "shall have occurred and be continuing" and that the Trustee receive an "Officer's Certificate and an Opinion of Counsel, each stating all of the conditions for the transfer have been met." *See* Indenture, Sec. 1101(b)-(c). Magten has not alleged noncompliance with either of these remaining requirements. Conspicuously absent from the Indenture is any requirement of approval by the Indenture Trustee or a holder of an interest in the Indenture Trust prior to a transfer. *See* Indenture, Sec. 1101. Therefore, the transfer complained of here complied with section 1101, and the transfer was thus valid under the varying agreements upon which Magten references in its Complaint.

Further, the Second Supplemental Indenture and the Amendment to Guarantee Agreement[6], executed by the Trustee, NorthWestern and Clark Fork,[7] expressly reserve the right of Clark Fork to transfer substantially all of its assets to NorthWestern. The Second Supplemental Indenture clearly preserves the right of Clark Fork to transfer substantially all of its assets to another entity and clarifies that this right includes the right of Clark Fort to transfer

---

[6] The Guarantee Agreement and Amendment to Guarantee Agreement are attached as Exhibits B and C respectively.

[7] The Second Supplemental Indenture and Amendment to Guarantee Agreement were entered into on or about August 13, 2002. A complete copy of the Second Supplemental Indenture is attached as Exhibit D.

- 11 -

substantially all of its assets to NorthWestern. *See* Second Supplemental Indenture Section 201. The language is also clear that such a transfer to NorthWestern would relieve Clark Fork of "its obligations under the QUIPS Debenture, the Indenture and hereunder as provided in Article Eleven of the Indenture." *See* Second Supplemental Indenture, Section 201.

At the same time that the Second Supplemental Indenture was executed, the Trustee, NorthWestern, and Clark Fork also executed an Amendment to Guarantee Agreement. The Amendment to Guarantee Agreement contains language similar to the Second Supplemental Indenture; it reserves the right of Clark Fork to transfer substantially all of its assets to another entity, and clarifies that this right includes the right of Clark Fork to transfer substantially all of its assets to NorthWestern. *See* Amendment to Guarantee Agreement, section 201. The section also makes clear that such a transfer can be accomplished in compliance with the Indenture. *See* Amendment to Guarantee Agreement, section 201.

These documents, executed by the Trustee, further confirm that a transfer of the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern, in compliance with the Indenture, was permissible. The transfer of the Montana Utility Assets and Liabilities by Clark Fork to NorthWestern was allowed by the Indenture and confirmed in later documents executed by the Trustee; the transfers were within the rights granted to Clark Fork and NorthWestern by the Indenture and these other documents. Magten, therefore, can not now complain because NorthWestern and Clark Fork exercised their rights under documents approved by the Trustee of the QUIPS. Nor may Magten hold the "officers" of the limited liability company liable for a transfer of assets and liabilities permitted by those governing documents and approved by the Trustee.

## CONCLUSION

As a matter of law, only NorthWestern, as the sole Member and Manager of Clark Fork, had the legal authority to transfer the Montana Utility Assets and Liabilities from its wholly owned subsidiary to itself. As a matter of law, the Defendants here were neither the Members nor the Managers of Clark Fork, and thus lacked the legal capacity to effectuate such transfer, and thus may not be held liable for the decisions or acts of the Members or Managers of Clark Fork.

Further, as a matter of law, the Defendants here owed no fiduciary duty to Magten, a general creditor of the limited liability company. As a matter of law, the only duties owed were the duties of loyalty and care, which duties were owed by the members and managers (here NorthWestern) to the limited liability company (here Clark Fork) and the members (here NorthWestern).

Finally, as a matter of law, NorthWestern was within its legal rights to transfer the Montana Utility Assets and Liabilities from its wholly owned subsidiary, Clark Fork, to itself pursuant to the terms and conditions of the QUIPS Trust Documents, and Magten has no standing to complain about such legal and valid transfer, and thus, Defendants may not be held liable for the legal and authorized actions of the Members or Managers of Clark Fork.

For these reasons, as a matter of law, Magten's Complaint must be dismissed with prejudice.

Dated this 9th day of July, 2004.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By _____
Stanley T. Kaleczyc
Kimberly A. Beatty

Attorneys for Defendants

- 13

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of July, 2004, a true and correct copy of the foregoing was mailed by first-class mail, postage prepaid, addressed to:

James H. Goetz
J. Devlan Geddes
Goetz, Gallik & Baldwin, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580

Bonnie Steingart
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobsen, LLP
One New York Plaza
New York, NY 10004