James H. Goetz
J. Devlan Geddes
**GOETZ, GALLIK & BALDWIN, P.C.**
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618



Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004
(212) 859-8000



ATTORNEYS FOR PLAINTIFF


## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BUTTE DIVISION

05 - 499

-------------------------------------------------------------------- x

MAGTEN ASSET MANAGEMENT CORPORATION,   :
                                        :

                    Plaintiff,   :   Cause No. CV-04-26-BU-RFC

                                          :

       - against -   :   **PLAINTIFF MAGTEN**
                                          :   **ASSET MANAGEMENT**
                                          :   **CORPORATION'S**
                                          :   **RESPONSE TO**
MIKE J. HANSON and ERNIE J. KINDT,   :   **DEFENDANTS' MOTION**
                                          :   **TO DISMISS**

                          Defendants.   :

-------------------------------------------------------------------- x

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT........................................................................... 1

FACTUAL ALLEGATIONS OF THE COMPLAINT RELEVANT TO THE MOTION ....2

ARGUMENT ....................................................................................................... 5

I.   THE COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANTS HAD
FIDUCIARY DUTIES TO CLARK FORK'S CREDITORS, BECAUSE CLARK FORK
WAS NEAR INSOLVENCY AT THE TIME IN QUESTION ............................................. 5

II.   DEFENDANTS ARE NOT IMMUNE FROM PERSONAL LIABILITY FOR
THEIR BREACHES OF FIDUCIARY DUTY SIMPLY BECAUSE THEY ACTED
FOR THE BENEFIT OF OR AT THE DIRECTION OF THE OWNER OF CLARK
FORK'S EQUITY ......................................................................................................... 9

III.   THE DEFENDANTS ARE NOT INSULATED FROM PERSONAL LIABILITY
AS A MATTER OF LAW BY THE TERMS OF THE INDENTURE............................... 11

i

## TABLE OF AUTHORITIES

### CASES

*Blackmon v. Estate of Battcock*, 587 N.E.2d 280 (N.Y. 1991) ......................................12

*Brandywine Mushroom Co. v. Hockessin Mushroom Products, Inc.*,
    682 F. Supp. 1307 (D. Del. 1988) ..............................................................9

*In re Buckhead America Corp.*, 178 B.R. 956 (D. Del. 1994) ...............................6,9,10

*Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir. 1996) .................................5,11

*Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, No. Civ.A.12150,
    1991 Del. Ch. LEXIS 215 (Del. Ch. Dec. 30, 1991) ....................................6,8

*Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741 (S.D.N.Y. 1990) ...............12

*Eschenbacher v. Anderson*, 34 P.3d 87 (Mont. 2001) .......................................12

*Geyer v. Ingersoll Publications Co.*, 621 A.2d 784 (Del. Ch. 1992) .......................5,6,8

*H-D Irrigating, Inc. v. Kimble Properties, Inc.*, 8 P.3d 95 (Mont. 2000) ......................9

*Jewel Recovery, L.P. v. Gordon*, 196 B.R. 348 (N.D. Tex. 1996) ............................5

*Kidde Industries, Inc. v. Weaver Corp.*, Civ.A. No. 11683, 1994
    WL 89013 (Del. Ch. Feb. 15, 1994) ..........................................................6

*Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*,
    716 F. Supp. 1504 (S.D.N.Y. 1989) ...........................................................6

*New York Credit Men's Adjustment Bureau v. Weiss*,
    110 N.E.2d 397 (N.Y. 1953) ...................................................................6

*Odyssey Partners, L.P. v. Fleming Companies, Inc.*,
    735 A.2d 386 (Del. Ch. 1999) .................................................................5

*Ryckman v. Wildwood, Inc.*, 641 P.2d 467 (Mont. 1982) ...................................8

*SEIU, Local 102 v. County of San Diego*, 60 F.3d 1346 (9th Cir. 1994) ........................4(footnote)

*Van Gemert v. Boeing Co.*, 553 F.2d 812 (2d Cir. 1977) ................................12

*Wallace v. Wood*, 752 A.2d 1175 (Del. Ch. 1999) ........................................10

*Weldon v. Montana Bank*, 885 P.2d 511 (Mont. 1994) ...................................................................12

## STATUTES

8 Del. Code Ann. § 141 (2004).......................................................................................8 (footnote)

8 Del. Code Ann. § 142 (2004).......................................................................................8 (footnote)

Mont. Stat. Ann. § 28-10-702(3) (2003) .........................................................................................9

Official Commentary to Mont. Stat.§ 35-8-102................................................................................7

Official Commentary to Mont. Stat. § 35-8-304...............................................................................7

## RULES

Fed. R. Civ. P. 12(b)(6)...............................................................................................................1,5,11

## SECONDARY SOURCES

1-14 Delaware Corporation Law and Practice § 14.02 (2003) ........................................8 (footnote)

iii

Plaintiff Magten Asset Management Corporation ("Magten") hereby respectfully submits this Response to the motion filed by defendants Mike J. Hanson and Ernie J. Kindt seeking dismissal of the complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion to Dismiss").

## PRELIMINARY STATEMENT

In 2002, defendants participated in a scheme to strip Clark Fork and Blackfoot, LLC ("Clark Fork") of substantially all of its assets -- representing the utility assets of the former Montana Power Company -- without receiving adequate compensation.[1]  This fraudulent conveyance (the "Transaction") benefited Clark Fork's 100% equity owner NorthWestern Corporation ("NorthWestern") at the expense of Clark Fork's creditors.  Clark Fork was immediately rendered insolvent and unable to meet its obligations to creditors, including its obligations to the holders of the so-called "QUIPS" (Quarterly Income Preferred Securities). (Plaintiff Magten is a holder of QUIPS.)  While NorthWestern purported to assume Clark Fork's obligations with respect to the QUIPS, it was itself insolvent and unable to honor those obligations, and soon thereafter filed for chapter 11 protection.  Magten and the other QUIPS holders now face a possible recovery of only a few pennies on the dollar in NorthWestern's bankruptcy.[2]  At the time of the Transaction, Hanson was the President and Chief Executive Officer and Kindt the Chief Accounting Officer of Clark Fork.  As officers of Clark Fork, they owed Clark Fork's creditors a fiduciary duty not to take actions that would render Clark Fork unable to meet its obligations with respect to the QUIPS.  By carrying out the Transaction, they violated that duty.

None of the arguments defendants raise in their motion to dismiss have merit, especially under the rigorous standard applicable to a 12(b)(6) motion.  Contrary to defendants' claims, it is well-established that the fiduciary duties of a company's officers extend to the company's

---

[1]    Clark Fork's name has changed over time, as is detailed in ¶¶ 23, 27, 39 of the Complaint.  We use the current name throughout this brief to avoid confusion.

[2]    Magten is currently pursuing appropriate claims against NorthWestern with respect to the Transaction in NorthWestern's chapter 11 case, which is pending in the District of Delaware.

creditors when the company is or may become insolvent, as was the case here. Nor is there any basis for their assertion that since Clark Fork was an LLC rather than a corporation they were free of any fiduciary duties. Their claim that the Transaction was directed by NorthWestern, which was Clark Fork's managing member, does not immunize them from personal liability for their own culpable participation in the scheme. Finally, they cannot establish that as a matter of law the governing documents authorized the Transaction when NorthWestern was insolvent, thus rendering its purported assumption of liabilities with regard to the QUIPS illusory and worthless. The facts set forth by Magten in the Complaint state a claim upon which relief can be granted; if the defendants dispute these factual assertions, Magten is eager to join issue so that it can proceed with discovery and prepare for trial.

## FACTUAL ALLEGATIONS OF THE COMPLAINT RELEVANT TO THE MOTION

Magten respectfully refers the Court to the Complaint for its full text, and will highlight here only the most relevant facts alleged therein.[3]

**The QUIPS and Magten.** Clark Fork is the successor in interest to the former Montana Power Company ("Montana Power"). Cplt. ¶¶ 23, 27, 39. Magten presently owns in excess of 33% of the Series A 8.45% Quarterly Income Preferred Securities ("QUIPS"), with a principal face value of in excess of $20 million. Cplt. ¶ 19. The QUIPS were initially issued in 1996. Cplt. ¶¶ 11-15. They were not issued directly by the Montana Power Company (Clark Fork's predecessor in interest), but rather by an affiliated special purpose vehicle called Montana Power Capital Trust I (the "Trust"). Cplt. ¶ 15. The Trust's sole meaningful asset was and is 100% of certain debt securities (the "Junior Debentures") issued by Montana Power to the Trust essentially simultaneously with the sale of the QUIPS by the Trust to the general investing public. Cplt. ¶ 16. Interest paid by Montana Power on the Junior Debentures to the Trust would flow through the Trust and be paid in turn to the owners of the QUIPS. Cplt. ¶ 16. This somewhat complicated structure was intended to provide the holders of the QUIPS with

---

[3]     References herein to the relevant sections of the Complaint are as follows: "Cplt. ¶ _."

2

substantially the same rights and potential investment return as if they had purchased the Junior Debentures directly from Montana Power, while providing Montana Power with a more favorable accounting treatment. Cplt. ¶ 17. Accordingly, the indenture governing the Junior Debentures (the "Indenture") expressly provides (in its section 610) that the holders of the QUIPS are intended beneficiaries of Clark Fork's obligations and may sue directly to enforce the Trust's rights if the relevant trustee of the Trust fails to act. Cplt. ¶ 18.

**The Role of the Defendants**. As of November 15, 2002, Hanson and Kindt were officers of Clark Fork. Cplt. ¶¶ 3, 5. As Chief Executive Officer and Chief Accounting Officer, respectively, they were necessarily intimately involved in the execution of the Transaction, and they knew or were reckless in not knowing the negative impact it would have on Clark Fork's creditors. Cplt. ¶ 35.

**Clark Fork at the Time of the Transaction**. By November 2002, Clark Fork (known at the time as NorthWestern Energy, LLC) had succeeded by merger to Montana Power's obligations with respect to the QUIPS. The vast majority of Clark Fork's assets consisted of the various utility assets which had belonged to Montana Power (the "Montana Utility Assets"). Cplt. ¶ 31. NorthWestern had become the 100% owner of Clark Fork's equity.[4] Cplt. ¶ 26.

**The Transaction and the Grievous Harm It Has Caused to Clark Fork's Creditors.** On November 15, 2002, the defendants caused Clark Fork to transfer the Montana Utility Assets to NorthWestern for grossly inadequate consideration. Cplt. ¶ 31. Over $1 billion in assets were transferred; no cash or other assets were provided to Clark Fork in return. Cplt. ¶ 31. While consideration was allegedly given in the form of assumption by NorthWestern of Clark Fork's debt, only $700 million was purportedly assumed, meaning that NorthWestern received at a

---

[4]     There were a number of transactions involving Montana Power, NorthWestern and/or Clark Fork during the 2000-02 period prior to November 2002, which are described in greater detail in ¶¶ 21-30 of the Complaint.

minimum hundreds of millions of dollars of additional value for which it did not pay fair consideration.[5] Cplt. ¶ 31.

Both prior to and following the Transaction, NorthWestern was insolvent. Cplt. ¶ 34.[6] Even the hundreds of millions of dollars by which it was unjustly enriched by the Transaction were insufficient to overcome the massive imbalance between assets and liabilities created by its other failed business ventures. Cplt. ¶ 34. Less than a year after the Transaction, NorthWestern filed for bankruptcy. Cplt. ¶ 42. Meanwhile, Clark Fork was rendered immediately insolvent by the Transaction, although it had previously been solvent and able to meet all of its obligations, including those related to the QUIPS. Cplt. ¶¶ 33, 36. Hanson and Kindt knew, should have known, and/or were reckless in not knowing that Clark Fork would be rendered insolvent as a result of the Transaction and that NorthWestern was insolvent both before and after the Transaction. Cplt. ¶ 35.

In excess of $2 million in interest on the Junior Debentures (which would have passed through the Trust to the holders of the QUIPS) is now past due and owing. Cplt. ¶ 36. Moreover, the entire principal amount of the Junior Debentures (approximately $67 million, which would be distributed through the Trust to the holders of the QUIPS) has been accelerated pursuant to the terms of the Indenture. Cplt. ¶ 36. Neither NorthWestern nor Clark Fork has honored these obligations, and neither is able to honor these obligations. Cplt. ¶ 36. As a result of the Transaction, the Montana Utility Assets have been made vulnerable to the claims of

---

[5]    Moreover, with respect to some of the Clark Fork liabilities purportedly assumed, including the liabilities associated with the QUIPS, NorthWestern was already a co-obligor with Clark Fork, meaning that no additional consideration was being provided by NorthWestern. Cplt. ¶ 31.

[6]    Indeed, NorthWestern has admitted that it was insolvent at the time of the Transfer and was not financially capable of performing its obligations under the Indenture as it has acknowledged its insolvency in its Disclosure Statement, which was filed with the Bankruptcy Court during its chapter 11 case: "by late 2002, the Debtor was significantly overleveraged, with current and projected income insufficient to support existing debt levels …". Disclosure Statement at p. 22. United States Bankruptcy Court for the District of Delaware Case No. 03-12872; Docket No. 1352 (a copy of the relevant pages of which are attached hereto as Exhibit A).
    The Court can take judicial notice of this admission. *See* SEIU, Local 102 v. County of San Diego, 60 F.3d 1346, 1357 n.3 (9th Cir. 1994) (noting a court could properly take judicial notice of a document which is "part of an official federal court record").

4

NorthWestern's numerous other creditors. Cplt. ¶ 44. This leaves Magten and the other holders of the QUIPS with the prospect of receiving a minimal recovery of only pennies on the dollar in NorthWestern's bankruptcy. This is despite the fact that the Montana Utility Assets generate approximately 80% of NorthWestern's consolidated EBITDA. Cplt. ¶ 43. If the Transaction had not taken place, NorthWestern's creditors would not have a direct claim to the Montana Utility Assets. Cplt. ¶ 44. They would enjoy only the residual value of the Montana Assets after the repayment in full of the Clark Fork creditors. Cplt. ¶ 44.

## ARGUMENT

Defendants have moved to dismiss under Rule 12(b)(6). The Complaint "should not be dismissed unless a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996). All allegations of material fact must be taken as true and construed in the light most favorable to the nonmoving party, *id.* at 337-38, in this case Magten. Since the Complaint's factual allegations, once proven at trial, would be legally sufficient to support a judgment for Magten, defendants cannot meet their burden and the motion should be denied.

## I.    THE COMPLAINT SUFFICIENTLY ALLEGES THAT DEFENDANTS HAD FIDUCIARY DUTIES TO CLARK FORK'S CREDITORS, BECAUSE CLARK FORK WAS NEAR INSOLVENCY AT THE TIME IN QUESTION

There is no dispute that when a company is in good financial health its obligations to its creditors are primarily contractual in nature, and that neither the company nor its officers and directors owe fiduciary duties to the creditors. That all changes, however, when the company is insolvent or threatened with insolvency. *See Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787 (Del. Ch. 1992) ("the general rule is that directors do not owe creditors duties…absent special circumstances…when the insolvency exception does arise, it creates fiduciary duties for directors for the benefit of creditors"); *Odyssey Partners, L.P. v. Fleming Companies, Inc.*, 735 A.2d 386, 417 (Del. Ch. 1999) (same); *Jewel Recovery, L.P. v. Gordon*, 196 B.R. 348, 354 (N.D. Tex. 1996) (citations omitted) (denying individual defendants' motion to dismiss -- "[W]hen a

5

corporation becomes insolvent, the assets of the corporation become a trust for the benefit of the corporation's creditors. The corporate directors then hold a fiduciary duty as trustees to protect the assets for the creditors. The breach of that duty gives rise to a claim that can be pursued by the creditors."); *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1524 n. 33 (S.D.N.Y. 1989) ("if the Court here were confronted with an insolvent corporation . . . the company's officers and directors might become trustees of its assets for the protection of its creditors"); *New York Credit Men's Adjustment Bureau v. Weiss*, 110 N.E.2d 397, 398 (N.Y. 1953) ("if the corporation was insolvent at that time it is clear that defendants, as officers and directors thereof, were to be considered as though trustees of the property for the corporate creditor-beneficiaries").

  These fiduciary duties to creditors arise not only when the company is already insolvent, but whenever it approaches the "zone of insolvency" or "vicinity of insolvency." *See Geyer*, 621 A.2d at 787; *Kidde Industries, Inc. v. Weaver Corp.*, Civ.A. No. 11683, 1994 WL 89013, at *2 (Del. Ch. Feb. 15, 1994) (granting creditor leave to amend complaint to assert breach of fiduciary claims against individual defendant corporate directors who had approved transactions alleged to be fraudulent conveyances). As such, officers and directors of a company in the zone of insolvency have an obligation to the "community of interest that sustained the corporation," including creditors. *See Credit Lyonnais Bank Nederland, N.V. v. Pathe Communications Corp.*, No. Civ.A.12150, 1991 Del. Ch. LEXIS 215, at *109 (Del. Ch. Dec. 30, 1991). *See also In re Buckhead America Corp.*, 178 B.R. 956, 968 (D. Del. 1994) (denying motion to dismiss breach of fiduciary claims brought by creditors against individual defendant corporate directors when complaint alleged company was "insolvent or 'operating in the vicinity of insolvency' at the time of the . . . directors alleged approval of and participation in the subject [transactions]"). Defendants' brief simply ignores the zone of insolvency issue, and the well-established authority that actual or potential insolvency gives rise to fiduciary duties to creditors.

6

Here, the Complaint alleges (¶ 47) that Clark Fork was in the zone of insolvency on November 15, 2002 and further alleges (¶¶ 33, 48) that Clark Fork was then rendered insolvent as a result of the defendants' acts in approving the Transaction. The Complaint further alleges (¶¶ 3, 5) that defendants Hanson and Kindt were officers of Clark Fork on November 15, 2002 and (¶ 31) that they approved of and participated in the scheme executed to defraud Clark Fork's creditors by looting its assets for the benefit of NorthWestern. This is all that is necessary to plead a cause of action for breach of fiduciary duty.[7]

Defendants argue that because Clark Fork is a limited liability company rather than a corporation, and, unlike corporations, LLC's are not *required* by statute to have officers, they therefore owe no fiduciary duties to anyone. This self-serving and disingenuous argument is unsurprisingly supported by no citation to any case in any jurisdiction holding officers of an LLC to a lower standard than that applicable to officers of a corporation. Whether or not Clark Fork was required to have officers, it chose to do so, and defendants Hanson and Kindt in turn voluntarily agreed to serve in that capacity. Defendants claim that NorthWestern, as the sole "member" and "manager" of Clark Fork had the statutory right to manage Clark Fork and enter into binding commitments on Clark Fork's behalf. But a member or manager can delegate that authority to officers or other agents. *See, e.g.*, Official Commentary to Mont. Stat. § 35-8-304 ("Where a member or manager delegates or assigns the authority or duty to exercise appropriate company functions, the member or manager is ordinarily not personally liable for the acts or omissions of the officer, employee, or agent").[8] Likewise, the Official Commentary to the definition of "Manager" in Mont. Stat. § 35-8-102 provides:

> The rules of agency apply to limited liability companies. Therefore, managers may designate agents with whatever titles, qualifications, and responsibilities they desire. For example, managers may designate an agent as "President."

---

[7]   Defendants have not disputed that Magten has standing to assert the rights of the Trust and its predecessors in interest as owners of the QUIPS, both of which were creditors of Clark Fork as of November 15, 2002.

[8]   Here, NorthWestern (the member and manager) also participated in and benefited from the scheme to defraud Clark Fork's creditors and would thus be directly rather than vicariously liable.

It is ludicrous to suggest that a person designated by an LLC's manager to be the LLC's president lacks any legal authority or legal duties because he is not a manager of the LLC within the meaning of the statute.  Indeed, Exhibits C and D submitted by defendants with their brief are agreements between Clark Fork (at the time known as NorthWestern Energy LLC), NorthWestern, and the Bank of New York, which were *signed on behalf of Clark Fork* by defendant Hanson as "President and Chief Executive Officer."  On defendants' current theory, these documents should have been executed on behalf of Clark Fork by NorthWestern as its sole member and manager -- but they were not.

As agents, Hanson and Kindt owed fiduciary duties to their principals as a simple matter of black-letter agency law, without any need for an express statutory provision imposing such a duty.  *See, e.g., Ryckman v. Wildwood, Inc.*, 641 P.2d 467, 471 (Mont. 1982) (employment as agent gave rise to fiduciary relationship).[9]  The whole point of the "zone of insolvency" rule set forth above is that when a company is insolvent or in the vicinity of insolvency, the company's equity is worthless or of purely speculative value and the value of the whole enterprise thus belongs to the creditors.  The fiduciary duties extend to the creditors at that point because the creditors rather than the equity owners are the true principal.  *Credit Lyonnais*, 1991 Del. Ch. LEXIS 215 at *108-09 (in vicinity of insolvency desires of 98% shareholder could no longer be presumed to be best interests of enterprise as a whole); *Geyer*, 621 A.2d at 789 (duties to

---

[9]    While Montana law provides by statute for certain of the duties of corporate officers, other jurisdictions, notably including Delaware, do not impose any fiduciary duties on corporate officers by express statutory provision, but there is nonetheless no doubt that those duties exist under the common law.  *Compare* 8 Del. Code Ann. § 141 (2004) (specifying that directors owe fiduciary duties of care and loyalty) *with* 8 Del. Code Ann. § 142 (2004) (providing that corporations shall have officers, but not addressing the existence of fiduciary duties); *see* 1-14 Delaware Corporation Law and Practice § 14.02 (2003) ("With respect to the obligation of officers to their own corporation and its stockholders, there is nothing in any Delaware case which suggests that the fiduciary duty owed is different in the slightest from that owed by directors.").  In any event, since the Montana LLC statute does not require an LLC to have officers at all, defendants cannot credibly claim that its silence on the existence or nonexistence of fiduciary duties for officers of those LLCs which choose to have them displaces the general common law rule that any agent is presumed to have a fiduciary duty to his principal.

creditors arise "at a point in time when shareholders' wishes should not be the directors' only concern").[10]

## II.    DEFENDANTS ARE NOT IMMUNE FROM PERSONAL LIABILITY FOR THEIR BREACHES OF FIDUCIARY DUTY SIMPLY BECAUSE THEY ACTED FOR THE BENEFIT OF OR AT THE DIRECTION OF THE OWNER OF CLARK FORK'S EQUITY

Defendants claim that they "merely carr[ied] out the directives of the sole Member and Manager [i.e. NorthWestern] and had no individual authority or power to bind or prevent Clark Fork from" carrying out the Transaction. Def. Br. at 6.[11] This "just-following-orders" defense does not provide the defendants with per se immunity from personal liability. "[A] director or officer of a corporation is individually liable for fraudulent acts or false representations of his own or in which he participates even though his action in such respect may be in furtherance of the corporation's business. This personal liability attaches regardless of whether liability also attaches to the corporation." *H-D Irrigating, Inc. v. Kimble Properties, Inc.*, 8 P.3d 95, 106 (Mont. 2000). *See also Brandywine Mushroom Co. v. Hockessin Mushroom Products, Inc.*, 682 F. Supp. 1307, 1311 (D. Del. 1988) ("An officer of a corporation can be held personally liable for the torts he commits . . . and cannot shield himself behind a corporation when he is an actual participant in the tort. The corporation also may be vicariously or secondarily liable if the officer commits a tort while acting on behalf of the corporation but the officer remains liable individually."); Mont. Stat. Ann. § 28-10-702(3) (2003) (agent liable to third party as if principal "when his acts are wrongful in their nature").

Here, the Complaint alleges (¶ 31) that Hanson and Kindt personally participated in carrying out the Transaction, which was a fraudulent conveyance, with actual or constructive knowledge that Clark Fork's creditors would be injured thereby. Defendants' argument was squarely rejected by the court in the *Buckhead* case -- where the individual director defendants

---

[10]    Again, the extension of fiduciary duties to creditors in the "vicinity of insolvency" context is based on the application of general common law principles, not the parsing of statutory text.

[11]    References herein to the relevant sections of the defendants' Memorandum in Support of Motion to Dismiss are as follows: "Def. Br. at _."

9

were sued for breach of fiduciary duty for approving transactions which enriched the company's

sole stockholder but allegedly constituted fraudulent conveyances as to the company's creditors.

Precisely because the company was operating in the "vicinity of insolvency," the court rejected

the claim that the individual defendants were permitted to pursue the interests of the controlling

shareholder without regard to the creditors, and denied the defendants' motion to dismiss.

*Buckhead*, 178 B.R. at 968. Here, since the entire aim of the Transaction was to loot Clark

Fork's assets for NorthWestern's benefit at the expense of Clark Fork's creditors, the blessing of

the beneficiary of the fraud cannot be a basis for the defendants to avoid personal liability.[12]

Given NorthWestern's bankruptcy, defendants' suggestion (Def. Br. at 8) that it is

NorthWestern rather than they who owed a fiduciary duty to Clark Fork's creditors is obviously

cold comfort. But even if NorthWestern's dominating role as the sole member and manager of

Clark Fork as well as the beneficiary of the fraudulent conveyance were thought to mean that

Hanson and Kindt should not be liable to creditors for breach of their own individual fiduciary

duties, they would still be liable in the alternative as aiders and abettors. In *Wallace v. Wood*,

752 A.2d 1175, 1184 (Del. Ch. 1999), the court found that even if the officers and directors in

question did not themselves owe personal fiduciary duties to the plaintiffs, plaintiffs could plead

in the alternative that they had knowingly participated in the breach of fiduciary duty committed

by the company with which they were affiliated, and would thus be liable on an aiding and

abetting theory. Indeed, at the motion to dismiss stage, the *Wallace* court permitted plaintiffs to

proceed with both a primary liability theory and an aiding and abetting theory even though they

---

[12]    Although Hanson and Kindt now claim that they were obliged to carry out NorthWestern's bidding and
lacked any ability to exercise independent judgment on behalf of Clark Fork's own interests, it should be
noted that NorthWestern's counsel have recently represented to the Bankruptcy Court that their joint
representation of NorthWestern and Clark Fork in connection with the Transaction was proper precisely
because it was independently approved by both NorthWestern and Clark Fork -- necessarily implying that
Clark Fork's decisionmakers were able to exercise independent judgment when appropriate. *See* Case No.
03-12872; Docket No. 1622, Exhibit A ¶ 11 (a copy of the relevant pages of which are attached hereto as
Exhibit B). The court can take judicial notice of this representation. *See supra* note 6.



were inconsistent, holding that any decision as to which theory was appropriate under the circumstances would be better made after discovery or at trial. *Id.*[13]

## III.    THE DEFENDANTS ARE NOT INSULATED FROM PERSONAL LIABILITY AS A MATTER OF LAW BY THE TERMS OF THE INDENTURE

The defendants claim that the Indenture and its various supplements expressly authorized them to injure Clark Fork's creditors by rendering Clark Fork insolvent and providing the creditors with no alternative source of payment. Unsurprisingly, the documents they cite do no such thing. At a bare minimum, these documents do not establish that Magten "can prove no set of facts in support of [its] claim which would entitle [it] to relief," *Cahill*, 80 F.3d at 338, which is the standard on a 12(b)(6) motion.

Defendants essentially argue that section 1101 of the Indenture permitted Clark Fork to transfer substantially all of its assets to NorthWestern as long as NorthWestern assumed Clark Fork's obligations to the Trust and the holders of the QUIPS. They further argue that certain documents (Exhibits C & D to their brief) -- executed several months prior to the Transaction -- contemplate that the Transaction would take place. But none of those documents authorize the Transaction under the circumstances where the entity purportedly assuming Clark Fork's obligations to the Trust and the holders of the QUIPS was *already insolvent* and would thus *never* be able to meet those obligations. The Complaint alleges that the defendants knew or should have known that NorthWestern was insolvent both before and after the Transaction (¶ 35), that it would be unable to meet the obligations it purportedly assumed (¶ 35), and it has not in fact met those obligations (¶ 36). Meanwhile, Clark Fork, which had previously been able to meet all of its obligations to the Trust, the holders of the QUIPS, and its other creditors, was stripped of its assets without receiving fair value in return for them and was thus rendered insolvent and unable to meet its obligations.

---

[13]    If the Court believes it would be helpful or appropriate, Magten can obviously amend its Complaint to add such an aiding and abetting claim.

11

Defendants' argument is apparently that the Indenture authorizes the assumption of Clark Fork's obligations by an insolvent obligor who will be unable to meet those obligations simply because it does not expressly require that the entity assuming the obligations be solvent. This is absurd. It is as if a party to a contract permitting payments to be made by personal check argued that the contract authorizes the tender of a check drawn on a bank account known to have insufficient funds to honor the check simply because the contract did not in so many words require that the check not bounce.

Such a strained, self-serving and commercially unreasonable construction (which no creditor could have intended to agree to) cannot be deemed dispositive, especially on a motion to dismiss where all inferences must be drawn in favor of Magten as the non-movant. *See Eschenbacher v. Anderson*, 34 P.3d 87, 91 (Mont. 2001) ("court must interpret a contract in such way that makes it lawful and reasonable, so long as it can be done without violating the intent of the parties"); *Blackmon v. Estate of Battcock*, 587 N.E.2d 280, 285 (N.Y. 1991) ("the aim of contract interpretation is not simply mechanical application of the literal language of an agreement, but also consideration of what may reasonably be implied from that language in effectuating the parties' purpose in entering the contract").[14] Moreover, like any contract, the Indenture is subject to the inherent covenant of good faith and fair dealing. This implied covenant means that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Van Gemert v. Boeing Co.*, 553 F.2d 812, 815 (2d Cir. 1977). "This covenant is violated when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under their agreement." *Don King Productions, Inc. v. Douglas*, 742 F.Supp. 741, 767 (S.D.N.Y. 1990) (citations omitted). *See also Weldon v. Montana Bank*, 885 P.2d 511, 515 (Mont. 1994) ("when one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the

---

[14]    The Indenture (Def. Br. at Exhibit A) provides in its section 112 that it is governed by New York law.

12

other party of the benefit of the contract, the contract is breached").[15]  Carrying out a transaction in which Clark Fork will purportedly be released of all further obligations under the Indenture because its obligations have been assumed by another entity *which is known to be insolvent* is exactly the sort of bad faith conduct the covenant is intended to protect against.

Defendants also claim (Def. Br. at 12) that the Bank of New York as the indenture trustee (the "Indenture Trustee") acquiesced in the Transaction, but this does not insulate defendants from liability as a matter of law.  They cite no Indenture provision or legal authority that would make the Indenture Trustee's purported subjective belief that the Transaction was permissible binding on Magten or any other creditor as a matter of law.  More significantly, however, there can be no presumption that the Indenture Trustee acquiesced in the Transaction *with knowledge of NorthWestern's insolvency* -- perhaps the single most material fact about the Transaction's bona fides.  Indeed, any such acquiescence by the Indenture Trustee may have been induced by fraud, given that NorthWestern subsequently admitted that its public financial statements at the time of the Transaction were materially false and misleading, and then belatedly announced previously-undisclosed losses of almost one *billion* dollars.[16]

Significantly, defendants totally ignore the Complaint's explicit averment (¶ 32) that the Indenture Trustee refused to release Clark Fork from its continuing obligations under the Indenture despite Clark Fork's express request that such a release be provided.  Yet defendants claim that Clark Fork was nonetheless released from those obligations without the Indenture Trustee's approval or consent.  Defendants apparently consider the Indenture Trustee's positions dispositive when helpful and irrelevant when unhelpful.

---

[15]    Other provisions of the Indenture are also implicated by the Transaction.  For example, the impairment of Clark Fork's ability to meet its payment obligations without substituting a solvent alternative obligor constituted a "modifi[cation] . . . of the rights of the Holders" which thus under section 1202 required the approval of a majority of Holders -- approval which was apparently neither sought nor obtained.  In short, defendants' claim of contractual preapproval of their actions is a fact-intensive affirmative defense which is hotly disputed by plaintiff, and cannot be resolved on the face of the pleadings.

[16]    Although it is not Magten's obligation to plead facts negating potential affirmative defenses outside the scope of the Complaint, details of NorthWestern's false financial statements and its subsequent admission of their falsity could easily be added in an amended complaint.

13

It should finally be noted that while there is a significant dispute as to whether Clark Fork was released from its own continuing obligations to Magten and others under the Indenture as a result of the Transaction (an issue which is also being litigated in NorthWestern's bankruptcy case), the effectiveness or ineffectiveness of that release is ultimately irrelevant to these defendants' liability. There are two possibilities. Either the release was ineffective so that Clark Fork continued to be obligated under the Indenture but is now unable to meet those obligations as a result of defendants' conduct (Cplt. ¶ 50), or the release was effective so that the obligations were assumed by NorthWestern although defendants knew or should have known that NorthWestern was already insolvent and would not be able to honor the obligations it purportedly assumed. In either event, Hanson and Kindt breached their fiduciary duties to Clark Fork's creditors and caused substantial injury to Magten.

14

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied.


Dated:  this 2nd day of August, 2004.


GOETZ, GALLIK & BALDWIN, P.C.

By: _____


FRIED, FRANK, HARRIS, SHRIVER

& JACOBSON LLP

By: _____


ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record, by first class U. S. mail, postage prepaid, this 2nd day of August, 2004.

Bonnie Steingart
John W. Brewer
Fried, Brank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, NY 10004
ATTORNEYS FOR PLAINTIFF

Kimberly A. Beatty
Browning, Kaleczyc, Berry & Hoven, P.C.
P. O. Box 1697
Helena, MT 59624
ATTORNEYS FOR DEFENDANTS

_____
Robert K. Baldwin

16