

05- 49

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| NORTHWESTERN CORPORATION, | : | Case No. 03-12872 (CGC) |
| | : | |
| Debtor. | : | |

**FIRST AMENDED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125
OF THE BANKRUPTCY CODE FOR THE
PLAN OF REORGANIZATION OF THE DEBTOR**

PAUL, HASTINGS, JANOFSKY
& WALKER, LLP
Jesse H. Austin, III
Karol K. Denniston
Carolyn Chayavadhanangkur
600 Peachtree Street, N.E.
Suite 2400
Atlanta, Georgia 30308
Telephone: (404) 815-2400

GREENBERG TRAURIG, LLP
Scott D. Cousins
Victoria Watson Counihan
William E. Chipman, Jr.
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

Co-Counsel to the Debtor
and Debtor-in-Possession

Dated:   May 17, 2004
         Wilmington, Delaware

ATL/993177.56

The Debtor has articulated its intent to request the MPSC to authorize periodic adjustments to utility rates based upon increases in the Debtor's property tax obligations. Such adjustments could result in rate changes that would require MPSC approval prior to (or following) Plan confirmation.

The Debtor, the MPSC and the MCC have conducted, either directly or through representatives, a series of meetings and discussions with respect to the Debtor's Chapter 11 case, the Financial Investigation and the regulatory climate in Montana in which the Reorganized Debtor will operate. The Debtor, the MPSC and the MCC have recently reached an agreement in principle to resolve the issues by and among the Debtor, the MPSC and the MCC. The stipulation and settlement agreement, contemplated by the agreement in principle, will resolve both the Financial Investigation and the disputes pending before the Bankruptcy Court, including the Debtor's motion to enforce the automatic stay. See Exhibit E. This agreement in principle, if concluded, will be implemented by way of a compromise and settlement pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and thereafter by entry of an order by the MPSC implementing the terms of the stipulation and settlement agreement.

E.    **Events Precipitating Chapter 11 Filing**

Several factors contributed to the Debtor's pre-petition financial difficulties. The Debtor incurred a significant amount of debt as a result of the investments it made in Expanets, Blue Dot, and CornerStone, and with respect to the Debtor's purchase of the Montana Operations. The Montana Operations have contributed substantially to the Debtor's revenues and operating income, but Expanets, Blue Dot, and CornerStone performed poorly. The Debtor's non-regulated businesses adversely impacted its overall results of operations, financial condition and liquidity. By late 2002, the Debtor was significantly overleveraged, with current and projected income insufficient to support existing debt levels, and the Debtor determined that it would never recover its investments in Expanets, Blue Dot, and CornerStone, each of which is or was a non-regulated energy business, and that these entities would not generate cash flows in sufficient amounts to provide meaningful contributions to the Debtor's debt service. On December 31, 2002, the Debtor had a common stockholders' deficit of $456.1 million and on September 30, 2003, the common stockholders' deficit was $556.6 million. On the date that the Debtor filed its petition, it had approximately $2.2 billion in debt and trust preferred instruments outstanding.

Expanets was a nationwide provider of networked communications and data services and solutions to small to mid-sized businesses. Expanets' business and financial condition was severely and adversely impacted by the downturn in the economy that began in 2000 and performance problems with its "EXPERT" enterprise system. The Debtor recorded losses before minority interests with respect to Expanets of $19.8 million, $87.0 million and $445.6 million in fiscal 2000, 2001 and 2002, respectively. As of December 31, 2003, after impairment charges and recognition of net losses, the net recorded book value of the Debtor's aggregate $364.1 million equity investment in Expanets and $225.7 million of intercompany advances to Expanets was reduced to $49.8 million. Expanets sold its assets to Avaya on November 25, 2003. Avaya paid Expanets (n/k/a Netexit, Inc.) ("Netexit") cash of approximately $50.8 million and assumed debt of approximately $38.1 million. In addition, Avaya deposited approximately $13.5 million and $1.0 million into escrow accounts to satisfy certain specified liabilities that were not

Case 1:05-cv-00499-JJF    Document 52-14    Filed 07/18/2005    Page 4 of 6

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTHWESTERN CORPORATION, | Case No. 03-12872 (CGC) |
| Debtor. | |

**AFFIDAVIT OF JESSE H. AUSTIN, III IN CONNECTION WITH PAUL, HASTINGS, JANOFSKY & WALKER LLP'S EMPLOYMENT AS ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION**

I, Jesse H. Austin, III, being duly sworn, hereby depose and say as follows:

1. I am a member of the firm of Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings" or the "Firm"), which maintains offices for the practice of law at 600 Peachtree Street, Atlanta, Georgia 30308. I am admitted to the practice of law in Georgia, the United States District Courts for the Northern and Southern Districts of Georgia, and the Eleventh Circuit United States Court of Appeals. Unless otherwise stated in this affidavit, I have personal knowledge of the facts set forth herein.

2. On September 17, 2003, I signed and filed the Affidavit of Jesse H. Austin, III In Support of Application to Employ and Retain Paul, Hastings, Janofsky & Walker, LLP as Attorneys For Debtor and Debtor-in-Possession (Docket Number 40) (the "Original Affidavit") in support of the application of the debtor and debtor-in-possession (the "Debtor" or "NorthWestern") in the above-captioned Chapter 11 case for the entry of an order, pursuant to §§ 327(a) and 328(a) of Title 11 of the United States Code (the "Bankruptcy Code"), authorizing the retention and employment of Paul

LLC ("MP-LLC") (the "MPC Acquisition"), which was the subsidiary limited liability company to which Montana Power had transferred the transmission and distribution assets acquired by the Debtor. Various books and records show that the MPC Acquisition of the unit ownership interests in MP-LLC was completed in February 2002 following completion of financing and regulatory approval for the transaction.

10. Upon completion of the MPC Acquisition of MP-LLC, the Debtor changed the name of MP-LLC to NorthWestern Energy LLC ("NorthWestern Energy").

11. Thereafter, and with the full consent and knowledge of the Debtor, as sole owner of the limited liability interests in NorthWestern Energy, the Debtor's Board of Directors and NorthWestern Energy's Board of Directors, Paul Hastings represented both the Debtor and NorthWestern Energy with respect to (a) regulatory matters before the Federal Energy Regulatory Commission, (b) certain filings which had to be made with the Securities Exchange Commission concerning exemptions from The Public Utility Holding Company Act of 1935 ("PUHCA"), in coordination with PUHCA counsel, Baker & Botts L.L.P., and (c) the transfer from NorthWestern Energy to the Debtor of the transmission and distribution utility assets previously owned by Montana Power and the assumption of related debt obligations (sometimes referred to as the "going flat" transaction).

12. The "going flat" transaction, was completed in November 2002. Northwestern Energy's name was subsequently changed to Clark Fork and Blackfoot LLC ("Clark Fork").