1  Stanley T. Kaleczyc
   Kimberly A. Beatty
2  BROWNING, KALECZYC, BERRY & HOVEN, P.C.
   139 North Last Chance Gulch
3  P.O. Box 1697
   Helena, MT 59604-6669
4  Phone: (406) 443-6820
   Fax: (406) 443-6883

5  Attorneys for Defendants



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BUTTE DIVISION

| | |
|---|---|
| MAGTEN ASSET MAMAGEMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MIKE J. HANSON and ERNIE J. KINDT,<br><br>Defendants. | Case No. CV-04-26-BU-RFC<br><br>REPLY IN SUPPORT OF MOTION TO DISMISS |

### INTRODUCTION

Despite its passionate and at times venomous opposition to Defendants' Motion to Dismiss ("Opposition Brief"), Plaintiff, Magten Asset Management Corporation ("Magten") fails to raise any legitimate reason why this Court should not or cannot dismiss the Complaint with prejudice. Magten's pleas do not change the insurmountable legal barriers facing their allegations: (1) as a matter of law, only NorthWestern Corporation as the sole Member and Manager of Clark Fork and Blackfoot LLC ("Clark Fork") has the legal authority to transfer the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern and Defendants statutorily lacked the legal capacity to effectuate such transfer; and (2) Defendants may not be held liable for the legal and authorized actions of the sole Member of Clark Fork in effecting the

144683.doc/1674.044

transfer of the Montana Utility Assets and Liabilities pursuant to the terms and conditions of the QUIPS Trust Documents. Magten can simply prove no set of facts in support of its claim which would entitle it to relief.

## ARGUMENT

**I.    "Officers" of a limited liability company do not owe the company's creditors a fiduciary duty with respect to decisions made solely by the Member-Manager of the company.**

Throughout Magten's Opposition Brief, it relies primarily upon New York and Delaware decisions concerning the duties of directors of corporations. In so doing, Magten fails to acknowledge that: (1) Clark Fork is a Montana enterprise and Montana law, not New York or Delaware law, applies; (2) Clark Fork is a Montana limited liability company, not a Montana corporation, and thus neither general corporate law nor Montana corporate law are applicable; (3) Clark Fork is managed by its sole Member and Manager, NorthWestern; and (4) the transaction at issue, which Magten alleges was a transfer of substantially all of the income producing assets of Clark Fork to its parent NorthWestern (referred to as "going-flat" or "Transfer") is a transaction which, as a matter of law, may only be authorized by a unanimous vote of the members of the limited liability company. Magten's attempt to make Messrs. Hanson and Kindt responsible for the decisions of the Member-Manager is wrong, as a matter of law, and warrants dismissal of this case with prejudice.

On pages 6-7 of its Opposition Brief, Magten cites a series of Delaware and New York decisions which hold generally that when a <u>corporation</u> is insolvent the directors (and, in some instances, the directors and officers) of the corporation owe a fiduciary duty to the creditors of the corporation. That the courts in these decisions would impose such a duty upon the directors of a corporation is not remarkable in view of general corporate law, which generally provides that the directors of a corporation are responsible for and make key decisions for the corporation. As the Defendants noted in their opening brief, Montana's Business Corporation Act contains provisions which are to the same effect. However, as Defendants also stated in their opening brief, but which Magten is unwilling to recognize and concede, the governance structure of a

Montana limited liability company is different than the governance structure of a Montana corporation. The official comments to Mont. Code Ann. § 35-8-301 provides in pertinent part as follows:

> Members of a member-managed and managers of manager-managed company as agents of the firm, have the apparent authority to bind a company to third parties. Members of a manager-managed company are not as such agents of the firm and do not have the apparent authority, as members, to bind a company. Members and managers with apparent authority possess actual authority by implication unless the actual authority is restricted in an operating agreement. Apparent authority extends to acts for carrying on <u>in the ordinary course</u> the company's business and business of the kind carried on by the company. <u>Acts beyond this scope</u> bind the company only where supported by actual authority created before the act or ratified after the act.

Montana Code Annotated Annotations 2002, Titles 31-38, § 38-8-301, Official Comments, at 630 (emphasis added).

Whether Clark Fork is viewed as a member-managed or a manager-managed limited liability company, NorthWestern was the sole decision maker with authority to bind Clark Fork, especially with respect to matters such as alleged by Magten here which, according to Magten, involved the transfer of substantially all the assets of Clark Fork, and thus could not be actions taken in the ordinary course of business by Clark Fork. Mont. Code Ann. § 35-8-307(3)(l).

Moreover, Magten reads too much into the Official Comment to § 35-8-102 which provides that, "Managers may designate agents with whatever titles, qualifications and responsibilities they desire. For example, managers may designate an agent as 'president.'" That comment suggests nothing more and nothing less than an agent of a limited liability company only has such authority to act for the limited liability company within the scope of the authority granted by the principal to the agent. The scope of that agency is limited to the business affairs of the limited liability company carried on in the usual way, <u>see</u>, MCA § 35-8-301(2)(b), that is, in the ordinary course of business. The transfer of substantially all the assets of Clark Fork, as alleged by the Plaintiff here, is not a transfer in the ordinary course of business. The authority to decide to make such a transfer may not be delegated to an agent of the limited liability company. Mont. Code Ann. § 35-8-307(3)(l) *requiring* the unanimous consent of the

members to transfer substantially all of the assets of the limited liability company. All any agent may do is take such steps, such as executing documents for the principal, which the principal authorizes or directs. Thus, it matters not that Messrs. Hanson and Kindt were denominated as "officers" of the limited liability company, the scope of the agency, as a matter of law, did not and could not extend to deciding when or whether Clark Fork could or should transfer substantially all of its assets to NorthWestern. NorthWestern still retained the sole power and responsibility for the decision to transfer the Utility Assets and Liabilities. If Magten has a cause of action against anyone at all, it is against NorthWestern, not the individuals who are sued here. Magten has instituted adversary proceedings in the NorthWestern Bankruptcy. That is the appropriate forum for airing its alleged grievance over the consequences of the transfer of assets which occurred six months <u>before</u> Magten acquired the QUIPS. This fact may give cold comfort to Magten, but it is the legal reality nonetheless.

      Finally, it is not the law in Montana that an agent is personally liable for every act of his or her principal, nor is it the law in Montana that an agent is personally liable for every act he or she takes in furtherance of the execution of his or her agency. Rather, an agent is only liable for his or her <u>own</u> wrongful acts. As the Montana Supreme Court pointed out in <u>H-D Irrigating, Inc. v. Kimble Properties, Inc.</u>, 301 Mont. 34, 8 P.3d 95(2000), an agent is responsible for his or her own false representations. In that case, Lloyd Kimble, the President of Kimble Properties, Inc. was jointly and severally liable with his corporation for false representations which he personally made to the plaintiff about the condition and operation of the irrigation system which his corporation was selling to plaintiff. <u>Id</u>. at 49, 106. In contrast, Magten has not alleged that either Mr. Hanson or Mr. Kindt personally made false or misleading representations to Magten – or any other person—about the financial condition of Clark Fork or NorthWestern or the impact the Transfer would have upon either Clark Fork or NorthWestern. The only act to which Magten has directed the Court's attention is Mr. Hanson's purely ministerial task of executing on behalf of Clark Fork amendments to various documents which memorialized agreements reached between NorthWestern, Clark Fork and the Trustee of the QUIPS. For the reasons stated

previously, the cases which hold directors or officers of a corporation liable for decisions they make on behalf of their corporation are inapposite here and the principles stated in those cases do not apply to agency relationships in which the agent did not, and legally could not, make the decisions about which the Plaintiff now complains.

## II. The Transfer about which Magten now complains was permitted under the QUIPS Trust Documents.

The Defendants here have filed simultaneously with this Reply Brief a Motion for Summary Judgment, in which they rely upon the following uncontroverted facts: Magten was not and is not a creditor of Clark Fork, did not even own any QUIPS when the Transfer of Utility Assets and Liabilities occurred, and was fully aware and had conducted its own due diligence when it began acquiring QUIPS six months after the Transfer was completed.[1] Not only does Magten lack standing to complain about a transaction which had occurred prior to its acquiring any interest in the QUIPS and which, according to its own admissions, was fully disclosed to and known by Magten, as asserted by Defendants in their Summary Judgment Motion, but as argued in Defendants' opening brief in support of their Motion to Dismiss, the Transfer itself was permitted by the QUIPS Trust Documents. Magten's sole final argument is that the Indenture permitted a transfer of assets which with hindsight Magten believes is commercially unfair and for that reason must be voided. Not only does the cry of "foul" ring hollow in view of the commercial sophistication of Magten and its own due diligence before it acquired the QUIPS six months after the Transfer, but the terms of the QUIPS Trust Documents clearly permitted the Transfer to occur in November 2002.

Section 1101 of the Indenture is clear in empowering Montana Power (and Clark Fork thereafter) to "convey or otherwise transfer, or lease, its properties and assets substantially as an

---

[1] Defendants Motion for Summary Judgment addresses each of these issues in detail and gives this Court additional grounds upon which to dismiss Magten's Complaint. However, because the issues set forth in the Motion for Summary Judgment are independent grounds for dismissal and thus independent of the grounds for dismissal set forth in Defendants' Motion to Dismiss, this Court may grant the Motion to Dismiss and dismiss Magten's Complaint with prejudice without first hearing the Motion for Summary Judgment.

144683.doc/1674.044


entirety to any Person." The prerequisites of any such transaction were also spelled out in the Indenture, which required:

1. The surviving corporation [here NorthWestern] be "organized and validly existing under the laws of the United States, any State thereof..."

2. The surviving corporation [here NorthWestern] "assume" in an indenture "executed and delivered to the Trustee, in form satisfactory to the Trustee" the "due and punctual payment of the principal of and premium, if any, and interest, if any, on all Outstanding Securities and the performance of every covenant of the Indenture on the part of the Company to be performed or observed..."[2]

Magten has not disputed that each of these prerequisites has been met, and, in the adversary proceeding before the NorthWestern Bankruptcy Court in which Magten raises similar objections to the Transfer at issue, Magten has expressly conceded that each prerequisite has been met. Magten conceded that NorthWestern is "validly organized under the laws of the State of Delaware . . ." Adversary Proceeding Complaint ¶14 (emphasis added.)[3] Magten conceded that under the express terms of the Third Supplemental Indenture, NorthWestern "assumed the due and punctual payment of the principal and interest on the securities issued under the Indenture," and the performance of every covenant of the Indenture. Adversary Proceeding Complaint ¶43 (emphasis added.)[4]

Contrary to Magten's assertion, nothing in the Indenture required the assuming corporation (here NorthWestern) to be solvent at the time of assuming payment and the other obligations under the Indenture. Moreover, nothing in Montana Law or under the federal law mandates solvency as a legal requirement before a corporation may contractually assume obligations under an indenture. It is therefore not surprising that Magten refers to no statute, decision, treatise, restatement, or other authority that precludes an insolvent entity from entering

---

[2] Section 1101 of the Indenture also requires that no Event of Default "shall have occurred and be continuing" and that the Trustee receive an "Officer's Certificate and an Opinion of Counsel, each stating that" all of the conditions for the transfer have been met. See Indenture §§ 1101(b)-(c). Magten has not alleged noncompliance with these requirements.

[3] A copy of Magten's Complaint in the Adversary Proceeding is attached as Exhibit A. This Court may, of course, take judicial notice of public pleadings in other litigation.

[4] As a result, NorthWestern succeeded and was substituted as the obligor under the Indenture for Montana Power and Clark Fork, and each of those entities was "relieved of all obligations and covenants" under the Indenture. (Indenture at § 1102)

144683.doc/1674.044

1  into contractual obligations. Indeed, much of the bankruptcy process in the United States
2  involves insolvent corporations being permitted to enter into contractual obligations and to incur
3  debt.
4    Moreover, Magten's reliance upon New York case law interpreting New York's covenant
5  of good faith and fair dealing, the issue involved in <u>Don King Productions, Inc. v. Douglas</u>, 742
6  F. Supp. 741, 767 (S.D.N.Y. 1990), cited at p. 12 of Magten's Opposition Brief, is misplaced.
7  First, Magten was not a party to or beneficiary of the Indenture in November 2002, so it can not
8  claim that the covenant was breached. Further, even if Magten could make out such a claim, it
9  was NorthWestern which effected the Transfer from its wholly owned subsidiary, Clark Fork, to
10 itself. Neither Clark Fork nor, certainly, Messrs. Hanson and Kindt could be liable for a decision
11 of the Member-Manager of Clark Fork. <u>See</u> Section I, *supra*. And, of course, the Defendants
12 here certainly do not concede that any violation ever occurred, especially when the Indenture
13 permitted the transfer in November 2002, almost a year before NorthWestern filed its petition
14 before the Bankruptcy court. Even in <u>Weldon v. Montana Bank</u>, 268 Mont. 88, 94, 885 P.2d
15 511, 515 (1994), the Montana Supreme Court recognized that a duty must exist before a breach
16 of the covenant of good faith and fair dealing may be alleged. For all the reasons discussed
17 above, no duty was owed to Magten by any "officer" of Clark Fork.
18   Contrary to Plaintiffs' assertion, Clark Fork's Transfer of the Utility Assets and
19 Liabilities, such as the QUIPS, and NorthWestern's assumption of obligations under the
20 Indenture as part of the "going flat" transaction were valid under the express terms of the
21 Indenture and under the law; whether Messrs. Hanson and Kindt were aware that either Clark
22 Fork or NorthWestern was insolvent or not at the time is irrelevant.
23 //
24
25
26
27

## CONCLUSION

For each of the reasons set forth in this Reply Brief and in the Defendant's opening brief, Magten can prove no set of facts that supports its claims that would entitle it to the relief requested. Magten's Complaint, therefore, must be dismissed with prejudice.

DATED this 20th day of August, 2004.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By _____
Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59604-6669
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of August, 2004, a true copy of the foregoing was mailed by first-class mail, postage prepaid, addressed as follows:

James Goetz
J. Devlan Geddes
Goetz, Gallik & Baldwin, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580

Bonnie Steingert
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, New York 10004

*Jennifer Mahlum*
BROWNING, KALECZYC, BERRY & HOVEN, P.C.