

05 - 499

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> NORTHWESTERN CORPORATION, <br><br> Debtor. | Chapter 11 <br><br> Case No. 03-12872 (CGC) |
| MAGTEN ASSET MANAGEMENT CORPORATION & LAW DEBENTURE TRUST COMPANY OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN CORPORATION, <br><br> Defendant. | Adv. No. _____ |

**COMPLAINT TO AVOID THE TRANSFER OF ASSETS OF CLARK FORK AND BLACKFOOT LLC (F/K/A NORTHWESTERN ENERGY LLC) TO NORTHWESTERN CORPORATION**

Magten Asset Management Corporation ("*Magten*") individually in its capacity as a creditor of Clark Fork and Blackfoot, LLC ("*Clark Fork*"), and on behalf of Montana Capital I (the "*Trust*") together with Law Debenture Trust Company of New York ("*Law Debenture*" and collectively with Magten "*the Plaintiffs*"), in its capacity as the Trustee under the Indenture for the Unsecured Subordinated Debt Securities Relating to Trust Securities dated November 1, 1996 (the "*Indenture*"), and in its capacity as Guarantee Trustee under that certain Guarantee Agreement dated November 1, 1996 (the "*Guarantee Agreement*"), for this complaint alleges as follows:

1. Plaintiffs bring this adversary proceeding in accordance with Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") because NorthWestern Corporation, the above-captioned debtor (the "*Debtor*") received, in a fraudulent conveyance,

**EXHIBIT A**

substantially all of the assets of its wholly owned subsidiary, Clark Fork (an entity formerly known as NorthWestern Energy, LLC ("*NWE*")).

2. At the time of the transfer of the assets of Clark Fork to the Debtor (the "*Transfer*"), the Debtor was the sole equity holder of Clark Fork. Using this control of Clark Fork, the Debtor transferred the assets and liabilities of Clark Fork to itself. The assets of Clark Fork were valued at between $1.15 billion and $1.4 billion while the assumed liabilities amounted to approximately $700 million. However, the Debtor's other liabilities were so excessive that, even after obtaining Clark Fork's assets for inadequate consideration, the Debtor could not pay its own creditors and ultimately filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. Prior to the Transfer, Clark Fork was a solvent and reasonably capitalized entity. The Transfer rendered Clark Fork insolvent and undercapitalized and thereby injured the creditors of Clark Fork, including Magten. The Transfer unjustly enriched the Debtor by hundreds of millions of dollars while destroying Clark Fork's solvency and, thus, its ability to meet its obligations to Magten and its other creditors.

4. By this Complaint, Plaintiffs seek, among other things, (i) the avoidance of the Transfer, (ii) a declaration that the assets that were fraudulently transferred are not the property of the Debtor's estate in its chapter 11 case, (iii) the imposition of a constructive trust over the transferred assets for the benefit of the Trust, and (iv) the return of such assets to Clark Fork.[1]

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334.

6. This proceeding constitutes a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (H) and (O).

---

[1] This Court set January 15, 2004, as the deadline for filing proofs of claim against the Debtor. Magten, as an individual holder of the QUIPS and Law Debenture Trust Company of New York, as Indenture Trustee, each filed timely proofs of claim for damages incurred as a result of the Transfer.

7. Venue properly lies in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

8. Magten is a corporation validly organized and doing business under the laws of the State of Delaware.

9. Magten holds in excess of 33% of the Series A 8.45% Quarterly Income Preferred Securities (the *"QUIPS"*), issued by the Trust. The Trust is a business trust established pursuant to the Delaware Business Trust Act.

10. The Trust was established by The Montana Power Company (*"Montana Power"*), predecessor in interest to Clark Fork (f/k/a NWE), as a financing vehicle. The sole asset of the Trust are the 8.45% Junior Subordinated Debentures due 2036 (the *"Junior Debentures"*). Section 610 of the Indenture governing the Junior Debentures grants to Magten, as a holder of the QUIPS, "the right to institute a legal proceeding directly against [the Debtor]" to enforce certain rights relating to the QUIPS or to the Amended and Restated Trust Agreement (the *"Trust Agreement"*).

11. Law Debenture is a limited purpose trust company duly organized under the laws of the State of New York.

12. Law Debenture brings this complaint as a co-plaintiff in its capacity as successor trustee under the Indenture on behalf of all holders of the QUIPS.

13. The defendant in this adversary proceeding is the Debtor in the above-captioned chapter 11 case.

14. The Debtor is a corporation validly organized under the laws of the State of Delaware, with its headquarters and principal place of business in South Dakota.

15. On September 14, 2003, the Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is continuing to operate its businesses and manage its properties as a debtor in possession.

3

16. The Debtor owns and operates utility companies in the United States. The Debtor and its direct and indirect nondebtor energy subsidiaries comprise of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 598,000 customers throughout Montana, South Dakota and Nebraska.

## BACKGROUND

**The Montana Power Company**

17. Montana Power was incorporated in 1961 under the laws of the state of Montana as the successor to a corporation formed in 1912 through the merger of four regional electric companies.

18. By the year 2000, Montana Power was engaged in activities related to telecommunications and energy related activities including activities in the fields of oil, coal, natural gas, and electricity.

19. In November 1996, Montana Power and The Bank of New York (*"BNY"*) as Trustee entered into the Indenture. Law Debenture subsequently succeeded BNY as Trustee under the Indenture.

20. Pursuant to the Indenture, Montana Power issued the Junior Debentures.

21. Also in November 1996, pursuant to the Trust Agreement, Montana Power, BNY as Property Trustee and certain individuals as Administrative Trustees, created the Trust. Law Debenture and BNY are currently taking the necessary steps to enable Law Debenture to succeed BNY as Property Trustee.

22. Pursuant to the Trust Agreement, the Trust issued the QUIPS.

23. The Trust holds 100% of the Junior Debentures, with a total face amount of $65 million, which constitute its sole meaningful asset. The value of the QUIPS is entirely based on the value of the Junior Debentures, and, thus, the ability of Clark Fork to pay interest and principal to the Trust. Amounts paid by Clark Fork to the Trust are, in turn, paid by the Trust to the holders of the QUIPS.

24. The Junior Debentures were not sold directly to investors. Rather, they were sold to BNY as Property Trustee under the Trust Agreement. Investors thereby acquired an indirect undivided beneficial interest in the Junior Debentures and obtained substantially the same rights and the same potential investment return as they would have, had they owned the Junior Debentures directly.

25. In connection with the Indenture, Montana Power agreed that the holders of the Junior Debentures would have the absolute and unconditional right to receive principal and interest. Under the Indenture, those payments of principal and interest were to be paid to the Property Trustee.

26. Montana Power entered into the Guarantee Agreement with BNY (as Guarantee Trustee) in November 1996. Law Debenture subsequently succeeded BNY as Guarantee Trustee. Pursuant to the Guarantee Agreement, Montana Power, as guarantor, agreed to pay to the holders of the QUIPS certain payments, to the extent such are not paid by the Trust and to the extent that BNY, as Property Trustee has funds available in a specified account.

27. Taken together Montana Power's obligations under the Indenture, the Trust Agreement, the Expense Agreement and the Guarantee provide, in the aggregate, a full, irrevocable and unconditional guarantee of payments of distributions and other amounts due to the holders of the QUIPS.

**The Sale of the Montana Power Company's Utility Assets**

28. On March 28, 2000, The Montana Power Company, (*"Montana Power"*), announced plans to restructure its business. This restructuring involved the sale of its energy related assets, including its electric, natural gas, and propane utility assets, in order to allow Montana Power to focus on its telecommunications business.

120087.01600/40138386v1

29. On September 29, 2000, Montana Power entered into a Unit Purchase Agreement with the Debtor, pursuant to which the Debtor agreed to purchase Montana Power's electric, natural gas and propane utility assets (the *"Montana Utility Assets"*). In order to facilitate the assets sale to the Debtor, Montana Power created a subsidiary, Montana Power Company LLC (*"MPLLC"*).

30. On February 13, 2002, Montana Power merged its energy assets into MPLLC (the *"Merger"*). As a result of this, MPLLC held and operated the Montana Utility Assets.

31. In connection with the Merger, on February 13, 2002, MPLLC entered into the First Supplemental Indenture, pursuant to which MPLLC assumed the obligations of Montana Power under the Indenture.

32. In connection with the Merger, on February 13, 2002, pursuant to a letter agreement, MPLLC assumed the obligations of Montana Power under the Guarantee Agreement.

33. On February 15, 2002 the Debtor's acquisition of MPLLC was completed with the payment by the Debtor of $478 million in cash to the parent of MPLLC and the assumption of $511 million of MPLLC liabilities. As a result of the acquisition, MPLLC became a wholly owned subsidiary of the Debtor.

34. None of the cash paid for the Montana Utility Assets was retained by MPLLC. It was, thus, not thereafter available to assist Clark Fork in meeting its obligations to its creditors.

35. On March 19, 2002, MPLLC was renamed NWE. NWE was a duly organized Montana limited liability company and is now known as Clark Fork.

36. On August 13, 2002, the Debtor entered into the Second Supplemental Indenture, pursuant to which the Debtor assumed all of the obligations under the Indenture on a joint and several basis with Clark Fork.

37. On August 13, 2002, the Debtor entered into an Amendment to the Guarantee Agreement, whereby it assumed on a joint and several basis with Clark Fork all of the obligations under the Guarantee Agreement.

38. On August 13, 2002, the Debtor entered into a letter agreement amending the Trust Agreement, whereby it assumed on a joint and several basis with Clark Fork all of the obligations under the Trust Agreement.

39. The Debtor was insolvent both immediately before and immediately after the assumption of liabilities. The Debtor was engaged in business with unreasonably small capital and incurred debts beyond its ability to pay both immediately before and immediately after the assumption of liabilities.

**The Transfer**

40. On November 15, 2002, Clark Fork transferred substantially all of its assets, the Montana Utility Assets, to the Debtor and retained only the Milltown Dam, a two megawatt hydroelectric dam at the confluence of the Clark Fork and Blackfoot Rivers. The Milltown Dam operates under a license that expires in 2007.

41. Although Clark Fork transferred over $1 billion of assets to the Debtor, Clark Fork received no cash for the Transfer, and the only consideration was the assumption of certain liabilities (estimated to be only approximately $700 million) by the Debtor. As a result of the Transfer, Clark Fork was rendered insolvent.

42. Because Clark Fork was rendered insolvent and undercapitalized as a result of the Transfer, it is entirely dependent upon the Debtor for the continued funding of the Milltown Dam and, indeed, for the funding of its continuing corporate existence. The Debtor funds the costs and expenses associated with the operation of the Milltown Dam under the terms of certain agreements with Clark Fork.

43. In connection with the Transfer, on November 15, 2002, the Debtor executed the Third Supplemental Indenture, pursuant to which the Debtor expressly assumed the due and punctual payment of the principal and interest on the securities issued under the Indenture.

44. On November 15, 2002, the Debtor executed the Guarantee Assumption Agreement, whereby it assumed the obligations and liabilities of Clark Fork under the Guarantee Agreement.

7

45. On November 15, 2002, the Debtor executed the Trust Assumption Agreement, whereby it assumed the obligations and liabilities of Clark Fork under the Trust Agreement.

46. Following the Transfer, the Debtor operated the Montana Utility Assets as part of the Debtor's NorthWestern Energy Division.

47. On November 20, 2002, the Montana Power energy subsidiary was officially renamed Clark Fork. Clark Fork continues to operate the Milltown Dam.

**The Debtor's Attempt to Release Clark Fork**

48. Article Eleven of the Indenture purports to release Montana Power (or its successor in interest) upon the transfer of substantially all of the assets of Montana Power if the successor company, among other things, is a corporation validly organized under or subject to the laws of the United States or any state thereof and assumes the due and punctual payment of the principal, premium (if any) and interest on the securities and the performance of every covenant of the Indenture.

49. Upon information and belief, in connection with the Transfer of the Montana Utility Assets, the Debtor requested that BNY, as the initial Trustee under the Indenture execute the Third Supplemental Indenture with language that expressly released Clark Fork from its obligations under the Indenture.

50. Upon information and belief, BNY refused to execute the Third Supplemental Indenture in its capacity as Indenture Trustee if such contained a release of Clark Fork's obligations under the Indenture.

51. The Third Supplemental Indenture, as executed by BNY in its capacity as Indenture Trustee did not include a release of Clark Fork's obligations under the Indenture.

52. In additional, notwithstanding any purported release effectuated by the Third Supplemental Indenture, because the Transfer was a fraudulent transfer, no release could have been effectuated solely by the operation of Article Eleven of the Indenture.

## FIRST CAUSE OF ACTION

### (The Transfer was Fraudulent Under Montana Law Because of an Actual Intent to Hinder, Delay, or Defraud Creditors)

53. The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 52 as if fully set forth here.

54. Under the Montana Code Annotated ("MCA") § 31-2-333, a transfer may be avoided if, the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor.

55. Pursuant to MCA § 31-2-333, in determining actual intent to hinder, delay, or defraud any creditor, consideration may be given, among other factors, to whether: the transfer was to an insider; before the transfer was made, the debtor had been sued; the transfer was of substantially all the debtor's assets; and the value of the consideration received by the debtor was reasonably equivalent to the value of the assets transferred.

56. The QUIPS holders are creditors of the Debtor, and of Clark Fork by operation of the Guarantee Agreement and the Indenture.

57. The Debtor is the parent of Clark Fork and, as such, exercised complete control over Clark Fork. As a result of this relationship, the Debtor qualifies as an insider under Montana law.

58. In connection with the Transfer, Clark Fork transferred assets to the Debtor that are valued between $1.15 billion and $1.4 billion, and the only consideration received for the Transfer was the assumption of approximately $700 million in liabilities.

59. Prior to the Transfer, Clark Fork was a solvent entity. The transfer of substantially all of Clark Fork's assets to the Debtor caused Clark Fork to become insolvent.

60. Prior to the Transfer, Clark Fork was a reasonably capitalized entity. The transfer of substantially all of Clark Fork's assets to the Debtor caused Clark Fork to become undercapitalized.

9

61.  Because the Montana Utility Assets that the Debtor received in the Transfer were worth substantially more than the value of the liabilities that were assumed by the Debtor, Clark Fork did not receive reasonably equivalent value for the transfer.

## SECOND CAUSE OF ACTION

### (The Transfer was Fraudulent As a Constructive Fraud Which Rendered Clark Fork Insolvent)

62.  The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 61 as if fully set forth here.

63.  Pursuant to MCA §31-2-334, a transfer is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

64.  Clark Fork transferred the Montana Utility Assets without receiving reasonably equivalent value in exchange for the Transfer. The Montana Utility Assets that the Debtor received in the Transfer were substantially more valuable than the liabilities that were assumed. Clark Fork did not receive reasonably equivalent value for the transfer.

65.  After the Transfer, Clark Fork, the remaining entity, was left with only the Milltown Dam and corresponding environmental liabilities. Despite the decimated asset pool, Clark Fork was still liable for, among other things, the covenants and obligations under Guarantee Agreement and the Indenture, and the environmental liabilities associated with the Milltown Dam.

66.  The Transfer rendered Clark Fork insolvent.

120087.01600/40138386v1

## THIRD CAUSE OF ACTION

### (The Transfer was Fraudulent As a Constructive Fraud Because it Rendered Clark Fork Undercapitalized)

67. The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 66 as if fully set forth here.

68. Pursuant to MCA §31-2-334, a transfer is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

69. Clark Fork transferred the Montana Utility Assets without receiving reasonably equivalent value in exchange for the Transfer. The Montana Utility Assets that the Debtor received in the Transfer were substantially more valuable than the liabilities that were assumed. Clark Fork did not receive reasonably equivalent value for the transfer.

70. After the Transfer, Clark Fork, the remaining entity, was left with only the Milltown Dam and corresponding environmental liabilities. Despite the decimated asset pool, Clark Fork was still liable for, among other things, the covenants and obligations under Guarantee Agreement and the Indenture, and the environmental liabilities associated with the Milltown Dam.

71. The Transfer rendered Clark Fork engaged in a business or a transaction for which the remaining assets of Clark Fork were unreasonably small.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment)

72. The Plaintiffs repeat and re-allege the allegations of paragraphs 1 through 71 as if fully set forth herein.

73. The Debtor was the recipient of the Montana Utility Assets.

11

74. The Transfer was fraudulent under MCA §§31-2-333 and 31-2-334.

75. Prior to the Transfer, Clark Fork was solvent. As a result of the Transfer, the Debtor received assets valued between $1.15 billion and $1.4 billion, for which the assumption of $700 million of liabilities by the Debtor was less than reasonably equivalent value.

76. Upon information and belief, the Montana Utility Assets comprise approximately 80% of the Debtor's consolidated EBITDA. In light of this and the fact that Clark Fork received less than reasonably equivalent value for the Transfer, the receipt by the Debtor of the Montana Utility Assets has unjustly enriched the Debtor and the Debtor's creditors.

77. Absent the Transfer, the holders of the QUIPS would have received payment in full from Clark Fork, as a solvent utility company, on behalf of their claims. However, as a result of the Transfer, the holders of the QUIPS may receive nothing on account of their claims.

78. The Junior Debentures were subordinated obligations to the other debt owed by Montana Power. Upon the assumption of liabilities by the Debtor, the Debtor has asserted that these obligations are junior to approximately $1.7 billion of senior debt. In light of the fact that the Debtor was insolvent at the time of the assumption of liabilities, the Debtor's creditors would be unjustly enriched if the QUIPS are treated as *pari passu* or junior to the Debtor's other indebtedness.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests that the Court enter judgment against the Defendant[2] as follows:

---

[2] Though not named herein, Plaintiffs hereby retain all rights to amend this complaint bring suit against all parties that orchestrated or other wise benefited from the Transfer.

(a) Avoiding the Transfer;

(b) Declaring that the Montana Utility Assets are not the property of the Debtor's estate in the chapter 11 case;

(c) Imposing a constructive trust on the Montana Utility Assets for the benefit of the Trust and ordering the return of such assets to Clark Fork;

(d) Attorney's fees and costs of this action; and

(e) Such other relief as this Court deems just and proper.

*[Remainder of Page Intentionally Left Blank]*

Dated: Wilmington, Delaware
April __, 2004

| NIXON PEABODY LLP | BLANK ROME LLP |
|---|---|
| */s/ John Snellings* | */s/ William J. Burnett* /tmmo |
| John V. Snellings (BBO No. 548791) | William J. Burnett (DE No. 4078) |
| 100 Summer Street | 1201 Market Street, Suite 800 |
| Boston, MA 02110 | Wilmington, DE 19801 |
| Telephone: (617) 345-1202 | Telephone: (302) 425-6400 |
| Facsimile: (866) 947-1732 | Facsimile: (302) 425-6464 |

Counsel for Law Debenture Trust
Company of New York

- and -

FRIED, FRANK, HARRIS, SHRIVER &
    JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Counsel for Magten Asset Management
    Corporation