Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59604-6669
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| MAGTENASSET MAMAGEMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MIKE J. HANSON and ERNIE J. KINDT<br><br>Defendants. | Case No. CV-04-26-BU-RFC<br><br>BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

Defendants Mike J. Hanson and Ernie J. Kindt, by and through their undersigned counsel of record, hereby submit this Brief in Support of their Motion for Summary Judgment.

**INTRODUCTION**

The allegations raised in the Complaint, and each argument raised by Magten in its brief in opposition to the Motion to Dismiss, are based on one primary assertion: That Magten was a creditor of, or that its predecessors-in-interest were creditors of, Clark Fork and Blackfoot, LLC (aka NorthWestern Energy, LLC, fka MPLLC) (hereinafter collectively referred to as "Clark Fork") at the time Clark Fork's parent corporation and sole Member and Manager transferred Montana Utility Assets and Liabilities ("Transfer") from Clark Fork to NorthWestern Corporation ("NorthWestern"). As a result, if Magten's primary assertion, namely that it was a

moving party bears the burden of proof at trial, the moving party is entitled to summary judgment by demonstrating that the non-moving party cannot establish the existence of any element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("The plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element on which that party will bear the burden of proof at trial."). In Celotex, the Supreme Court explained:

> In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to 'judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

477 U.S. at 323. The moving party in such a case is not required to offer evidence negating any element of the nonmoving party's claim. Id. at 323. Rather, the burden on the moving party may be discharged by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Here, Plaintiff Magten bears the burden of proof at trial as to their claims for damages.

## ARGUMENT

**I.     Magten was never a creditor of Clark Fork and thus Magten lacks standing to assert a creditor's claim, nor do Defendants owe any duty to Magten.**

The gist of Magten's complaint against Messrs. Hanson and Kindt is that, as officers of Clark Fork, they owed a fiduciary duty to the creditors of Clark Fork at the time Clark Fork's sole Member and Manager, NorthWestern, decided to transfer the Montana Utility Assets and Liabilities from Clark Fork (its wholly owned subsidiary) to itself (the parent corporation). While there are numerous flaws with Magten's assertions, one proves to be both fundamental and fatal to Magten's analysis: it has now been judicially determined that Magten never was a

creditor of Clark Fork, an adjudicative fact which has been affirmed by the sworn testimony of Magten's sole owner and manager.

### A. A prior judicial determination has been made that Magten was not a creditor of Clark Fork.

In an opinion dated July 23, 2004 the Hon. Charles B. Case II, who is presiding over NorthWestern's bankruptcy, held as follows:

> The Debtor [NorthWestern] has consistently alleged, and Magten has never disputed, that Magten did not own any of the debentures prior to the time the assets were transferred to the Debtor [NorthWestern]. Rather, Magten acquired the debentures after the transaction was complete. Therefore, the Debtor [NorthWestern] asserts and Magten has not disputed, that <u>Magten was never a creditor of Clark Fork at a time when Clark Fork had the disputed energy assets</u>. Rather, Magten became a holder of the debentures only after the transaction was completed and was a matter of public record.
>
> \*    \*    \*
>
> As noted above, <u>Magten was not a creditor of Clark Fork at the time the transaction took place</u>. Rather, it only became a creditor of the Debtor [NorthWestern] after the Debtor [NorthWestern] assumed the liability associated with the junior subordinated debenture initially issued by Montana Power Company. Thus, Magten is not only not a party directly affected by the transaction – such as Clark Fort itself – but it was also not an indirect party at the time the transaction took place.

Memorandum Decision at 3, 6-7 (emphasis added)[2]

This Court, of course, may take judicial notice of the adjudicative facts determined by Judge Case in the Bankruptcy proceedings and entered in his July 23, 2004 Memorandum and Order. Fed. R. Evid. 201. The fact that Magten was never a creditor of Clark Fork is not a matter of dispute, as Judge Case noted. Moreover, in this case, as explained more fully below, it is a fact "capable of accurate and ready determination by resort to sources whose accuracy can

---

[2] A copy of the Memorandum Decision is attached as Exhibit H to Defendants' Statement of Uncontroverted Facts. Magten has filed a Motion for Reconsideration of Judge Case's Memorandum and Order, arguing that an affidavit filed by one of the counsel for the Debtor NorthWestern had incorrectly stated that the directors of Clark Fork had approved the "going flat" transaction. As the Defendants here have explained to the Court in our opening brief, since Clark Fork is a limited liability company, it has a sole Member-Manager, NorthWestern. Clark Fork has no board of directors. The error in discussing the management of Clark Fork was subsequently corrected by counsel in the bankruptcy proceeding. Most significantly, in Magten's Motion to Reconsider, it does <u>not</u> contest the findings of the Bankruptcy Court that Magten never was a creditor of Clark Fork.

not reasonably be questioned." Fed. R. Evid. 201(b)(2). Thus, Magten is precluded from making any arguments based on Magten's alleged status as a creditor of Clark Fork.

**B.   Magten has admitted it was not a creditor of Clark Fork at the time of the Transfer.**

On July 27, 2004, a week before Magten filed its Opposition Brief in this Court, Talton Embry, Magten's sole owner, testified at his deposition taken in the Bankruptcy proceeding that Magten did not acquire an interest in any QUIPS until "late April 2003", nearly six months after NorthWestern completed its transfer of the Utility Assets from Clark Fork to itself. Dep. Tr. p. 20.[3] Mr. Embry further testified that at the time of the Transfer of Utility Assets from Clark Fork to NorthWestern, Magten was not a creditor of Clark Fork. Dep. Tr. p. 27.

**C.   The principles of issue preclusion and collateral estoppel dictate summary judgment be entered in Defendants' favor.**

The judicial findings of Judge Case and the admission of Mr. Embry that Magten was not a creditor of Clark Fork are dispositive of the issues in this case and Magten is precluded from arguing to the contrary. The basic principle of issue preclusion applies in this case:

> The general principle announced in numerous cases is that a right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified. This general rule is demanded by the very object for which civil courts have been established, which is to secure the peace and repose of society by the settlement of matters capable of judicial determination. Its enforcement is essential to the maintenance of social order; for the aid of judicial tribunals would not be invoked for the vindication of rights of person and property if, as between parties and their privies, conclusiveness did not attend the judgments of such tribunals in respect of all matters property put in issue, and actually determined by them.

Southern Pacific Railroad v. United States, 168 U.S. 1, 48-49 (1897).

In the present case, the relationship between NorthWestern and Clark Fork, and the relationship between Clark Fork and the Defendants here are the relationships between privies

---

[3] Copies of the relevant portions of the deposition transcript are attached as Exhibit B to Defendants' Statement of Uncontroverted Facts.

- 5 -

and the doctrine of *res judicata* should apply to the issue of whether Magten was a creditor of Clark Fork. In First Bank v. Fourth Judicial District, 226 Mont. 515, 519, 737 P.2d 1132, 1134 (1987), the Montana Supreme Court held, "The doctrine of *res judicata* is firmly established to stand for the proposition that a party should not be able to relitigate a matter that that party has already had *opportunity* to litigate, and the public policy that there must be some end to litigation." In this instance, Magten clearly had the opportunity to litigate the issue of its status as a creditor of Clark Fork before the Bankruptcy Court.

Although Clark Fork is not a party to the bankruptcy proceedings, for purposes of the issue of whether Magten was a creditor of Clark Fork or NorthWestern in November 2002 when the Transaction closed, Clark Fork and the Defendants here are in privity with NorthWestern. It is well settled law in Montana that the doctrine of *res judicata* applies both to parties and their privies. Newlan Creek Water District v. Walter, 169 Mont. 358, 361, 547 P.2d 850, 852 (1976). Under Montana law, "[a] privy is broadly defined as one who has an interest in an action." Brault v. Smith, 209 Mont. 21, 27, 679 P.2d 236, 239 (1984). In this case, there is no question that Clark Fork has an interest in the issue of whether the Transfer from Clark Fork to NorthWestern is a fraudulent conveyance, as Magten has asserted in its Adversary Proceeding pending in the bankruptcy court, and whether, for these purposes, either NorthWestern or Clark Fork were debtors of Magten at the time of the alleged defective Transfer, especially since NorthWestern, as the sole Member and Manager of Clark Fork, directed the Transfer occur. Likewise, Messrs. Hanson and Kindt, as officers of Clark Fork, are in privity with Clark Fork. First Bank v. Fourth Judicial District, supra, 226 Mont. at 520, 737 P.2d at 1135. Therefore, when Judge Case determined Magten was not a creditor of Clark Fork, a fact plainly put in issue by Magten within the course of NorthWestern's bankruptcy proceedings, that determination cannot be disputed in any subsequent litigation by Magten against NorthWestern, Clark Fork or Defendants here.

Even if, however, this Court were reluctant to consider those relationships as ones between privies, classic principles of collateral estoppel control and preclude Magten from

relitigating the Bankruptcy Court's finding that it was not a creditor of Clark Fork at the time of the Transfer:

> Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.

Allan v. McCurry, 449 U.S. 90, 94 (1980).

Likewise, the Montana Supreme Court has held that collateral estoppel is a form of *res judicata* and bars the reopening of an issue that has been litigated and resolved in a prior suit. The Stanley L. and Carolyn M. Watkins Trust v. LaCosta, 2004 MT 644, ¶ 26, 92 P.3d 620, 626 ¶ 26. (citing Kullick v. Skyline Homeowners Association, 2003 MT 137, ¶ 17, 69 P.3d 225, ¶17.)

As noted at the outset of this brief, Magten's entire case is predicated upon their allegations that Messrs. Hanson and Kindt, as "officers" of Clark Fork, owed a fiduciary duty to Clark Fork's creditors. See Complaint, ¶ 1; See also Magten's Brief in Opposition to Motion to Dismiss at 1. Even if Magten were correct that the Defendants had owed a duty to Clark Fork's creditors at the time of the asset transfer - - a legal conclusion which the Defendants dispute and which is the subject of Defendants' pending Motion to Dismiss - - it is not only undisputed by Magten, but in fact affirmatively admitted by Magten's sole owner, that Magten was not a creditor of Clark Fork at the time of the Transfer. *A fortiori*, Messrs. Hanson and Kindt could not have owed any duty to Magten at the time of the Transfer.

Finally, even if this Court were to find the principles of collateral estoppel are not controlling, the clear admissions made by Magten prevent Magten from pursuing any argument that has at its essence the claim that Defendants owed a duty to Magten at the time of the Transfer because Magten was a creditor of Clark Fork. Magten simply was not a creditor of Clark Fork, both by the own admission of the Plaintiff and by the judicial determinations of Judge Case.

**D. Magten's acquisition of the QUIPS after-the-fact and with full knowledge of the Transfer preclude Magten from alleging innocence.**

As Mr. Embry admitted later in his deposition, he acquired his interest in the QUIPS with full knowledge of the Transfer of the Montana Utility Assets and Liabilities to NorthWestern (the so called "going flat" transaction) before his first acquisition of QUIPS:

> Q:   When did you first become aware of the going-flat transaction?
>
> A.:   In reviewing the company's 10-Q, the quarter ending September 30, 2002.
>
> Q:   Did you review that document prior to your acquisition of the QUIPS, your initial acquisition f the QUIPS?
>
> A:   I believe so.

Dep. Tr. p. 33-34. See also, Dep. Tr. p. 16.

Mr. Embry, admitted he is a "veteran" investor who has been investing in distressed debt since 1978. Dep. Tr. p. 14; 78. He routinely performs due diligence before making investments. Dep. Tr. p. 17. Mr. Embry performed due diligence prior to his acquisition of the QUIPS and then personally made the decision to acquire the QUIPS. Dep. Tr. p. 16-17. Mr. Embry further testified:

> Q.   At the time prior to the acquisition of the QUIPS, were you satisfied with your understanding of the going-flat transaction?
>
> A.   Yes.

Dep. Tr. p. 37. In fact, Mr. Embry made more than one acquisition of the QUIPS: He continued to acquire QUIPS even after NorthWestern filed for bankruptcy protection, with his last trade being as recently as a "month ago." Dep. Tr. p. 21-23, 25, 55.

In light of Mr. Embry's testimony, Magten can not be heard to say that it had no knowledge of the Transfer which occurred six months before it first acquired the QUIPS, the very transaction about which it now complains. If, in hindsight, Magten believes it made a bad, albeit well-informed, business decision when it initially purchased and continued to purchase the QUIPS, it is not the responsibility of this Court to save Magten from its own business decisions.

### E. There is no set of facts on which Magten may prevail.

The judicial determinations made by Judge Case, coupled with the clear admissions made by Magten, preclude Magten from asserting any argument or theory that Defendants breached any duty owed to Magten as a result of Magten's false allegations that it was a creditor of Clark Fork. Because Magten must first prove that it was a creditor of Clark Fork at the time of the transfer, a burden of proof it simply cannot meet, there is no set of facts on which Magten may prevail against Messrs. Hanson and Kindt in their capacity as "officers" of Clark Fork. For these reasons alone, Defendants are entitled to summary judgment.

### II. Magten cannot stand in the shoes of its predecessor-in-interest to assert its creditor status.

In its Complaint, Magten alleges that its predecessors-in-interest were creditors of Clark Fork and, as such, Defendants had a duty to them which Defendants breached. Complaint ¶ 50-51. Magten further alleges that this breach of duty by the Defendants to Magten's predecessors-in-interest caused substantial injury to Magten. Complaint ¶ 52. Magten's argument is fundamentally flawed. Magten lacks standing to assert the rights of the Trust or its predecessors-in-interest as owners of the QUIPS. First, absent a specific written assignment, any chose in action held by those from whom Magten purchased the QUIPS was not conveyed to Magten. Therefore, Magten lacks standing to assert such rights. Second, both the Trustee and the prior holders of the QUIPS acquiesced in the Transfer, so complaints stemming from that Transfer have now been waived.

### A. A Chose in Action which value exceeds $5,000 may only be conveyed or assigned by a specific written instrument.

In essence, in their Complaint, Magten has asserted that the officers of Clark Fork owed a duty to its predecessors-in-interest ("Predecessors") by virtue of the Predecessors' status as holders of the QUIPS which, in turn, rendered them creditors of Clark Fork prior to the Transfer. Magten further alleges that the officers of Clark Fork breached an alleged duty owed to the Predecessors at the time of the Transfer; and, therefore, by virture of Magten's acquisition of the

QUIPS from the Predecessors (albeit six months after the Transfer), the officers breached a duty to Magten and Magten has suffered damages as a result[4].

Any claim by the Predecessors that the officers breached any duty to them is a chose in action. Mont. Code Ann. § 70-2-101 (2003) ("A thing in action is a right to recover money or other personal property by a judicial proceeding.")[5]. See, also, State ex rel. Coffey, 74 Mont. 355, 240 P. 667, 669 (1925) (*noting* "The Supreme Court of the United States has said that a chose in action 'include[s] all debts and all claims for damages for breach of contract or for tort connected with the contract.'" Bushnell v. Kennedy, 9 Wall 387, 390, 19 L. Ed. 736); Moore v. Nassau County Dept. of Public Transp., 357 N.Y.S.2d 652, 656-57 (1974) ("Choses in action are personal property, and, although intangible, are property subject to encumbrances."); Garford Motor Truck Company v. Buckson, 143 A. 410, 411(Sup. Ct. De. 1927) (*holding* a chose in action which survives death is assignable); Del. Code Ann. tit. 10, § 3701 (2003) (indicating the chose in action, breach of fiduciary duty, survives death.)

It is established by case law and statute that; "[A] chose in action is intangible personal property." Lewis v. Puget Sound Power & Light Co., 2001 MT 145, ¶ 20, 29 P.3d 1028, 1031 (Mont. 2001) (*citing* Mont. Code Ann. § 1-1-205(1)); See also, Moore 357 NYS 2d at 656-57 (1974); In re Morace, 74 A. 375, 376 (Sup. Ct. De. 1909) ("A chose in action is personal property, generally speaking ...."). The Uniform Commercial Code which has been adopted by Montana, New York and Delaware states that a contract for the sale of personal property in excess of $5,000 in value must be in writing, must reasonably identify the subject matter, and must state the price. Mont. Code Ann. § 30-1-206 (2003); N.Y. [UCC] Law § 1-206 (McKinney 2004); Del. Code Ann. tit. 6, § 1-206 (2003). See also, Lewis, 2001 MT at ¶ 20, 29 P.3d 1028, 1031-32 (*citing* Mont. Code Ann. § 30-1-206); Beldengreen, DDS v. Ashinsky, DDS, 528 N.Y.S.2d 744 (1987) (*citing* Uniform Commercial Code § 1-206). Thus, the sale of a chose in

---

[4] Because the QUIPS Trust Documents are variously governed by the laws of the State of New York or the State of Delaware, this brief will cite to Montana, New York and Delaware law. The result in any of the three jurisdictions is the same: Magten lacks standing to assert the rights of the Trust or its Predecessors.

[5] A "thing in action" and a "chose in action" are terms that are used interchangeably. See, State ex rel. Coffey, 240 P. 667, 669 (Mont.1925) ("In the common parlance of the law, a thing in action is designated a chose in action. Chose in action means literally thing in action." (citations omitted)).

1  action with a value exceeding $5,000 can only be made by a specific written instrument. It is not
2  enough to simply convey the QUIPS debt instruments themselves; rather, the claim for breach of
3  duty must be particularly described in a written conveyance instrument. See Lewis, 2001 MT at
4  ¶ 20, 29 P.3d at 1031 (in a case for structural damages to real property, the court held: "If the
5  claim [for structural damages] is severed from the real estate by a transfer of the property without
6  assignment [of the claim], the claim, as a chose in action, is intangible personal property."). See
7  also, Moore, 357 N.Y.S.2d at 656-57 (*noting* choses in action are personal property).
8        As a result, because any claim by the Predecessors for breach of a duty owed by the Clark
9  Fork officers will be considered a chose in action, and because Magten asserts the value of that
10  chose in action well exceeds $5,000, any conveyance or assignment of that chose in action to
11  Magten must have been specifically described in writing, or Magten cannot stand in its
12  Predecessors' shoes. Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the
13  real party in interest.") Nowhere in Magten's Complaint does it assert that the owners of the
14  QUIPS at the time of the Transfer specifically assigned to Magten in writing their right to assert
15  a breach of the officers' duty to those former QUIPS owners. As discussed earlier in this brief,
16  because Magten cannot assert it was a direct creditor of Clark Fork, it can only assert a breach of
17  duty owed to previous creditors through whatever rights it obtained from its predecessors. Since
18  it obtained no such right from its Predecessors, Magten lacks standing to assert the rights of the
19  Trust and its Predecessors.
20        **B.**    **Complaints stemming from the Transfer have been waived.**
21        As discussed earlier in this brief, and as admitted by Mr. Embry, Magten first acquired
22  the QUIPS some six months after the Transfer, with full knowledge of the Transfer and its
23  effects. Magten acknowledges it was not a creditor of Clark Fork at the time of the Transfer. By
24  that time, as a result of the operation of the Trust Indenture Documents, Magten's Predecessors
25  were no longer creditors of Clark Fork, but were rather creditors of NorthWestern. Further,
26  Magten had actual knowledge of these facts, as it acquired the QUIPS six months after the
27

Transfer was completed, after performing due diligence, and after Mr. Embry was "satisfied" with his understanding of the Transfer.

Under the Second Supplemental Indenture, executed by the Trustee, NorthWestern and Clark Fork reserved the right of Clark Fork to transfer all of its assets to NorthWestern and that such transfer would relieve Clark Fork of "its obligations under the QUIPS Debenture, the Indenture and hereunder as provided in Article Eleven of the Indenture. Second Supplemental Indenture, §201. This Second Supplemental Indenture was duly executed by all parties, and neither the Trustee nor any of the Predecessors have challenged its validity or effect. Section 1101 of the Indenture clearly empowered the Montana Power Company, and Clark Fork thereafter, to "convey or otherwise transfer, or lease, its properties and assets substantially as an entirety to any Person." Indenture § 1101. The prerequisites of any such transaction were also spelled out in the Indenture, which required:

1. The surviving corpration to be "organized and validly existing under the laws of the United States, and State thereof ..." and

2. The surviving corporation "assume" in an indenture "executed and delivered to the Trustee, in form satisfactory to the Trustee" the "due and punctual payment of the principal of and premium, if any, and interest, if any, on all Outstanding Securities and the performance of every covenant of the Indenture on the part of the Company to be performed or observed."

In its Adversary Proceeding Complaint, Magten has conceded that NorthWestern meets each of these prerequisites. Adversary Proceeding Complaint, ¶¶ 14, 43. Further, all parties executed the Third Supplemental Indenture in which NorthWestern "expressly assume[d] the due and punctual payment of the principal of and premium, if any, and interest, if any, on all Outstanding Securities issued under the Indenture and the performance of every covenant of the Indenture on the part of NorthWestern Energy to be performed or observed." Third Supplemental Indenture, § 101.

Both Magten's Predecessors and the Trustee acquiesced to the Transfer, and thus have waived all such claims to challenge the Transfer. The Montana Supreme Court has held "A

waiver is the intentional and voluntary relinquishment of a known right, claim or privilege."
Reiter v. Yellowstone CountyU, 192 Mont. 194, 202, 627 P.2d 845, 850 (1981). Further, the Court has held a waiver:

> May be proved by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or by a course of acts and conduct, or by so neglecting and failing to act, as to induce the belief that it was his intention and purpose to waive.

Northwestern F. & M. Ins. Co. v. Pollard, 74 Mont. 142, 238 P. 594, 596 (1925). By executing the various supplemental indentures, and by failing to challenge the validity of such transactions at the time the transactions were entered, the Trustee and the Predecessors have waived any such right to do so. As a result of this waiver, Magten, therefore, lacks standing to assert the rights (if any remain) of the Trust or its Predecessors.

## CONCLUSION

Magten was never a creditor of Clark Fork and Blackfoot, LLC, nor may it "stand in the shoes" of its so-called predecessors-in-interest or the Trustee who never objected to the Transfer of the Montana Utility Assets and Liabilities from Clark Fork some six months before Magten began to acquire QUIPS. Magten therefore has no standing to allege a breach of any fiduciary duty which Magten believes the Defendants owed to the creditors of Clark Fork at the time of the Transfer. (And, of course, the Defendants deny that any such duty was even owed by them to the creditors who are not parties to this litigation for all the same reasons that Defendants deny any duty was ever owed to Magten and as set forth in the Motion to Dismiss currently pending before this Court.) Accordingly, the Defendants respectfully request that summary judgment be entered in their favor and that this case be dismissed with prejudice.

//
//

DATED this 20th day of August, 2004.

                      BROWNING, KALECZYC, BERRY & HOVEN, P.C.

                      By *Kimberly Beatty*

                      Stanley T. Kaleczyc
                      Kimberly A. Beatty
                      BROWNING, KALECZYC, BERRY & HOVEN, P.C.
                      139 North Last Chance Gulch
                      P.O. Box 1697
                      Helena, MT 59604-6669
                      Phone: (406) 443-6820
                      Fax: (406) 443-6883

                      Attorneys for Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of August, 2004, a true copy of the foregoing was mailed by first-class mail, postage prepaid, addressed as follows:

James Goetz
J. Devlan Geddes
Goetz, Gallik & Baldwin, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580

Bonnie Steingert
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, New York 10004

_____
BROWNING, KALECZYC, BERRY & HOVEN, P.C.