

RECEIVED

JUL 18 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

05 - 499

H

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

In re:                              )
                                    )        Chapter 11
NORTHWESTERN CORPORATION,           )
                                    )        Case No. 03-12872 (CGC)
                        Debtor.     )
_____)


## MEMORANDUM DECISION


Jess H. Austin, III                     Kathleen M. Miller
Karol K. Denniston                      Smith, Katzenstein & Furlow LLP
Paul, Hastings, Janofsky & Walker LLP   P.O. Box 410
600 Peachtree Street, Suite 2400        800 Delaware Avenue
Atlanta, GA 30308                       Wilmington, DE 19899

David L. Finger                         - and -
Charles Slanina
Finger & Slanina, LLC                   Bijan Amini
One Commerce Center                     Storch Amini & Munves PC
1201 Orange Street, Suite 725           2 Grand Central Tower
Wilmington, DE 19801-1155               New York, NY 10017

- and -                                 Attorneys for Magten Asset Management
                                          Corporation
Dennis E. Glazer
D. Scott Tucker
Catherine Lifeso
David Polk & Wardwell
450 Lexington Avenue
New York, NY 10017

Attorneys for Paul, Hastings, Janofsky
  & Walker LLP



EXHIBIT

H



Scott D. Cousins
William E. Chipman, Jr.
Charles Michael Terribile
Greenberg Traurig, LLP
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801

Attorneys for Debtors and Debtors-in-
    Possession

Dated: July 23, 2004

2

**CASE, J.**

Magten Asset Management Corporation ("Magten") has filed a motion to disqualify Debtor's counsel, Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings") [Docket No. 1502]. A hearing was held on July 15, 2004, after which the matter was taken under advisement. For the reasons set forth below, the motion will be denied.

## I.    BACKGROUND FACTS

In 2002, certain power and distribution assets owned by Montana Power Company were transferred to Montana Power LLC, now known as Clark Fork and Blackfoot, LLC ("Clark Fork"). The Debtor acquired the equity ownership in Clark Fork. Thereafter, the energy assets were transferred from Clark Fork to the Debtor; the Debtor assumed certain obligations of Clark Fork and Montana Power, including approximately sixty-seven million dollars in 8.45% junior subordinated deferrable interest debentures due 2036. Paul Hastings represented the Debtor and Clark Fork, its wholly owned subsidiary, in connection with this transfer of assets and assumption of liabilities, referred to in these proceedings as the "going flat" transaction. The Debtor has consistently alleged, and Magten has never disputed, that Magten did not own any of the debentures prior to the time the assets were transferred to the Debtor. Rather, Magten acquired the debentures after the transaction was complete. Therefore, the Debtor asserts and Magten has not disputed, that Magten was never a creditor of Clark Fork at a time when Clark Fork held the disputed energy assets. Rather, Magten became a holder of the debentures only after the transaction was completed and was a matter of public record.

On September 14, 2003, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. An application to employ Paul Hastings as counsel for the Debtor and

3

Debtor-in-Possession was filed soon thereafter, accompanied by an affidavit of Jesse H. Austin III, lead counsel for Paul Hastings. An order approving the application was entered in due course thereafter.

On January 14, 2004, (Docket No. 686), Magten filed a notice of appearance and request for service of papers. This motion was filed by Magten on June 18, 2004.

A hearing on confirmation of the Debtor's plan is currently scheduled for August 25, 2004.

Boiled to its essence, Magten argues that Paul Hastings should be disqualified for two reasons:

1.    Paul Hastings did not adequately disclose that it represented both the Debtor and Clark Fork in the "going flat" transaction. It therefore violated its obligations under section 327 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure to disclose "all connections" that it has with all parties in interest[1]. Because of this inadequate disclosure, Magten argues that Paul Hastings should now be disqualified.

2.    Whether the disclosure was adequate or not, Paul Hastings should be disqualified because it has an actual and irreconcilable conflict of interest resulting from its dual representation of the Debtor and Clark Fork. The basis for this assertion is Magten's contention that the interests of Clark Fork (and its creditors, to whom Magten argues Paul Hastings owed a fiduciary obligation) were harmed because

---

[1]    Paul Hastings filed a supplemental affidavit disclosing this dual representation on July 7, 2004.

4

the assets were transferred for virtually no consideration. Magten argues that it is a creditor of Clark Fork because it holds debt instruments, the junior subordinated debentures, on which Clark Fork was obligated at the time the assets were transferred.

## II.   **ANALYSIS**

### A.   The Disclosure Issue

It is clear that the initial disclosure by Paul Hastings was inadequate. Although Paul Hastings now argues that there was no conflict because the transaction benefitted both parties, that is not the test for disclosure. Section 327 and Rule 2014 make it clear that *all connections* must be disclosed whether they give rise to an actual conflict of interest or not. Paul Hastings failed to do this.

At the hearing, the attorney for the United States Trustee advised the Court and other parties that he had thoroughly vetted the dual representation with Paul Hastings at the beginning of the case and that he was satisfied with the explanations given. While he stated that he believed the dual representation was a matter of public record, he did not share that information with others nor did he request that Paul Hastings file a supplemental affidavit of disclosure. In retrospect, he acknowledged that this was a mistake. Nevertheless, these representations by the attorney for the United States Trustee support the conclusion that there was no conscious effort by Paul Hastings to conceal its dual representation. This fact is relevant to what remedy, if any, should be imposed for the inadequate disclosure.

As noted above, following a hearing at which counsel for Magten asked the Court to direct Paul Hastings to file a supplement disclosure, and the Court so ordering, Paul Hastings did

5

file the July 7, 2004 affidavit. Therefore, as of this time, the matter has been fully and adequately disclosed. The issue presented is whether the previous failure to disclose justifies disqualification at this point.

The answer is no. Inadequate disclosure does not mandate disqualification of counsel. Rather, the appropriate remedy is left to the broad discretion of the court. *See, e.g.*, *In re Best Craft Gen. Contractor and Design Cabinet, Inc.*, 239 B.R. 462 (Bankr. E.D.N.Y. 1999). In this case, the disclosure was made at the outset of the case to the United States Trustee and formal disclosure was later made. Also, as noted, the prior disclosure to the United States Trustee is indicative of a lack of intent to conceal. Further, as discussed in the next session, this is not a case where full disclosure would have revealed an actual conflict. Rather, full disclosure would have alerted all parties to facts that should have been known but which, in the end, do not bear upon Paul Hastings' qualification to serve as counsel. For these reasons, the Court will not now disqualify Paul Hastings for its previous failure to disclose.

B.    Is There a Conflict?

A primary purpose of the disclosure rules is to allow parties in interest, and the Court, to determine whether the proposed counsel is disinterested and whether such counsel holds or represents an interest adverse to the estate. The question presented here, therefore, is whether Paul Hastings prior dual representation meets either of those standards. It does not.

This motion has been brought solely by Magten; no other creditor has joined. As noted above, Magten was not a creditor of Clark Fork at the time the transaction took place. Rather, it only became a creditor of the Debtor after the Debtor assumed the liability associated with the junior subordinated debenture initially issued by Montana Power Company. Thus, Magten is not

6

only not a party directly affected by the transaction - such as Clark Fork itself - but it was also not

an indirect party at the time the transaction took place. Thus, its relationship to the transaction

for the purposes of asserting a disqualification motion is tenuous at best.

Here, neither the Debtor nor Clark Fork, the two parties directly involved, have

complained. Indeed, the transaction was approved by the boards of directors of each company

and was perceived by them to be in the best interests of those companies.

At bottom, Magten's argument is that Paul Hastings must be disqualified for its dual

representation because Magten, as a third party who claims to have been injured by the

transaction, is now challenging it. This is a novel theory that does not withstand scrutiny. First,

as noted, even if third party creditors were injured by the transaction, Magten was not one of

them. Second, there is no present proof of injury in any event; while that issue has been asserted

in Adversary Proceeding No. 04-53324, captioned <u>Magten Asset Management Corporation v.</u>

<u>NorthWestern Corporation</u>, pending before this Court, no such finding has yet been made. Thus,

there is no basis for asserting actual injury that may create an actual conflict. Finally, even if

actual injury were eventually proven, the fact that Paul Hastings represented the injured party,

Clark Fork, would not necessarily mean that it holds an interest adverse to this estate or any class

of its creditors. Clark Fork is not a debtor; therefore, the test is not whether Paul Hastings holds

an interest adverse to a class of Clark Fork's creditors but whether it holds an interest adverse to

a class of Northwestern's creditors. Yes, Magten is a member of a class of the Debtor's

creditors—the subordinated debenture holders—but it asserts it has been injured not in that capacity

7

(after all, the Debtor assumed its debt), but in its non-existent capacity as a creditor of Clark

Fork.[2] The prohibition against counsel holding an "adverse interest" does not stretch so far.

## III.    CONCLUSION

For the foregoing reasons, Magten's motion to disqualify is denied.  An order is to be

submitted under certification of counsel.

Charles G. Case, II
United States Bankruptcy Judge

---

[2]    The gist of the fraudulent conveyance claim asserted in Adv. Proc. 04-53324 is that the utility assets should be returned to Clark Fork to be shared only by its creditors, rather than be subject to claims of NorthWestern's other creditors whose debts did not originate with Montana Power.

THE MONTANA POWER COMPANY

TO

THE BANK OF NEW YORK

Trustee

---

### *Indenture*
(For Unsecured Subordinated Debt Securities
relating to Trust Securities)

Dated as of November 1, 1996

11/06/96/U.OL/0/CO5013/INDENT/4TPH.8



**EXHIBIT**

*I*

i

## TABLE OF CONTENTS

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

RECITAL OF THE COMPANY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE ONE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Definitions and Other Provisions of General Application . . . . . . . . . . . . . . . . . . . . . . . 1
     SECTION 101. Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
          Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          Additional Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          Affiliate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          Authenticating Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          Authorized Officer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          Board of Directors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          Board Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          Business Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
          Commission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          Company Request or Company Order . . . . . . . . . . . . . . . . . . . 3
          Corporate Trust Office . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          corporation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          Defaulted Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          Dollar or $ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          Event of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          Government Obligations . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
          Governmental Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          Guarantee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          Holder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          Indenture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          Interest Payment Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          Maturity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          Officer's Certificate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          Opinion of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          Outstanding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
          Paying Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
          Person . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          Place of Payment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          Predecessor Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          Preferred Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          Property Trustee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          Redemption Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          Redemption Price . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          Regular Record Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
          Required Currency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Note: This table of contents shall not, for any purpose, be deemed to be part of the Indenture.

ii

Responsible Officer .................................................... 6
Securities ........................................................... 6
Security Register and Security Registrar .............................. 6
Senior Indebtedness .................................................. 7
Special Record Date .................................................. 7
Stated Maturity ...................................................... 7
Successor Corporation ................................................ 7
Trust ................................................................ 7
Trust Agreement ...................................................... 7
Trust Indenture Act .................................................. 7
Trustee .............................................................. 7
United States ........................................................ 8
SECTION 102.  Compliance Certificates and Opinions .................... 8
SECTION 103.  Form of Documents Delivered to Trustee .................. 8
SECTION 104.  Acts of Holders ......................................... 9
SECTION 105.  Notices, etc. to Trustee and Company .................... 11
SECTION 106.  Notice to Holders of Securities; Waiver ................. 12
SECTION 107.  Conflict with Trust Indenture Act ....................... 12
SECTION 108.  Effect of Headings and Table of Contents ................ 12
SECTION 109.  Successors and Assigns .................................. 12
SECTION 110.  Separability Clause ..................................... 13
SECTION 111.  Benefits of Indenture ................................... 13
SECTION 112.  Governing Law ........................................... 13
SECTION 113.  Legal Holidays .......................................... 13

ARTICLE TWO .......................................................... 14

Security Forms ....................................................... 14
SECTION 201.  Forms Generally ......................................... 14
SECTION 202.  Form of Trustee's Certificate of Authentication ......... 14

ARTICLE THREE ........................................................ 15

The Securities ....................................................... 15
SECTION 301.  Amount Unlimited; Issuable in Series .................... 15
SECTION 302.  Denominations ........................................... 18
SECTION 303.  Execution, Authentication, Delivery and Dating .......... 18
SECTION 304.  Temporary Securities .................................... 20
SECTION 305.  Registration, Registration of Transfer and Exchange ..... 21
SECTION 306.  Mutilated, Destroyed, Lost and Stolen Securities ........ 22
SECTION 307.  Payment of Interest; Interest Rights Preserved .......... 23
SECTION 308.  Persons Deemed Owners ................................... 24
SECTION 309.  Cancellation by Security Registrar ...................... 24
SECTION 310.  Computation of Interest ................................. 24
SECTION 311.  Payment to Be in Proper Currency ........................ 25
SECTION 312.  Extension of Interest Payment ........................... 25
SECTION 313.  Additional Interest. .................................... 25

iii

ARTICLE FOUR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Redemption of Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    SECTION 401.  Applicability of Article . . . . . . . . . . . . . . . . . . . . . . . . . 26
    SECTION 402.  Election to Redeem; Notice to Trustee . . . . . . . . . . . . . . . . 26
    SECTION 403.  Selection of Securities to Be Redeemed . . . . . . . . . . . . . . . . 26
    SECTION 404.  Notice of Redemption . . . . . . . . . . . . . . . . . . . . . . . . . . 27
    SECTION 405.  Securities Payable on Redemption Date . . . . . . . . . . . . . . . . 28
    SECTION 406.  Securities Redeemed in Part . . . . . . . . . . . . . . . . . . . . . . 28

ARTICLE FIVE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Sinking Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    SECTION 501.  Applicability of Article . . . . . . . . . . . . . . . . . . . . . . . . . 28
    SECTION 502.  Satisfaction of Sinking Fund Payments with Securities . . . . . . . . . . . 29
    SECTION 503.  Redemption of Securities for Sinking Fund . . . . . . . . . . . . . . . . 29

ARTICLE SIX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Covenants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
    SECTION 601.  Payment of Principal, Premium and Interest . . . . . . . . . . . . . . 30
    SECTION 602.  Maintenance of Office or Agency . . . . . . . . . . . . . . . . . . . 30
    SECTION 603.  Money for Securities Payments to Be Held in Trust . . . . . . . . . . . 31
    SECTION 604.  Corporate Existence . . . . . . . . . . . . . . . . . . . . . . . . . . 32
    SECTION 605.  Maintenance of Properties . . . . . . . . . . . . . . . . . . . . . . . 32
    SECTION 606.  Annual Officer's Certificate as to Compliance. . . . . . . . . . . . . . 33
    SECTION 607.  Waiver of Certain Covenants . . . . . . . . . . . . . . . . . . . . . 33
    SECTION 608.  Restriction on Payment of Dividends . . . . . . . . . . . . . . . . . 33
    SECTION 609.  Maintenance of Trust Existence . . . . . . . . . . . . . . . . . . . . 34
    SECTION 610.  Rights of Holders of Preferred Securities . . . . . . . . . . . . . . . . 34

ARTICLE SEVEN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Satisfaction and Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
    SECTION 701.  Satisfaction and Discharge of Securities . . . . . . . . . . . . . . . . 35
    SECTION 702.  Satisfaction and Discharge of Indenture . . . . . . . . . . . . . . . . 37
    SECTION 703.  Application of Trust Money . . . . . . . . . . . . . . . . . . . . . . . 38

ARTICLE EIGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Events of Default; Remedies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    SECTION 801.  Events of Default . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
    SECTION 802.  Acceleration of Maturity; Rescission and Annulment . . . . . . . . . . . 40
    SECTION 803.  Collection of Indebtedness and Suits for Enforcement by Trustee . . . . . 41
    SECTION 804.  Trustee May File Proofs of Claim . . . . . . . . . . . . . . . . . . . 42
    SECTION 805.  Trustee May Enforce Claims Without Possession of Securities . . . . . . 42
    SECTION 806.  Application of Money Collected . . . . . . . . . . . . . . . . . . . . 43

iv

SECTION 807. Limitation on Suits ............................... 43
SECTION 808. Unconditional Right of Holders to Receive Principal,
            Premium and Interest ............................ 44
SECTION 809. Restoration of Rights and Remedies ...................... 44
SECTION 810. Rights and Remedies Cumulative ..................... 44
SECTION 811. Delay or Omission Not Waiver ...................... 45
SECTION 812. Control by Holders of Securities ...................... 45
SECTION 813. Waiver of Past Defaults ........................... 45
SECTION 814. Undertaking for Costs ............................. 46
SECTION 815. Waiver of Stay or Extension Laws ..................... 46

ARTICLE NINE ...................................................... 46

The Trustee ........................................................ 46
SECTION 901. Certain Duties and Responsibilities .................... 46
SECTION 902. Notice of Defaults ............................... 47
SECTION 903. Certain Rights of Trustee .......................... 47
SECTION 904. Not Responsible for Recitals or Issuance of Securities ........... 48
SECTION 905. May Hold Securities ............................. 49
SECTION 906. Money Held in Trust ............................. 49
SECTION 907. Compensation and Reimbursement ..................... 49
SECTION 908. Disqualification; Conflicting Interests. ................... 50
SECTION 909. Corporate Trustee Required; Eligibility .................. 50
SECTION 910. Resignation and Removal; Appointment of Successor ........... 51
SECTION 911. Acceptance of Appointment by Successor ................. 53
SECTION 912. Merger, Conversion, Consolidation or Succession to Business ....... 54
SECTION 913. Preferential Collection of Claims Against Company ............ 54
SECTION 914. Co-trustees and Separate Trustees. ..................... 55
SECTION 915. Appointment of Authenticating Agent ................... 56

ARTICLE TEN ...................................................... 58

Holders' Lists and Reports by Trustee and Company ...................... 58
SECTION 1001. Lists of Holders ............................... 58
SECTION 1002. Reports by Trustee and Company ..................... 58

ARTICLE ELEVEN ................................................... 59

Consolidation, Merger, Conveyance or Other Transfer ..................... 59
SECTION 1101. Company May Consolidate, etc., Only on Certain Terms ......... 59
SECTION 1102. Successor Corporation Substituted ................... 59

ARTICLE TWELVE ................................................... 60

Supplemental Indentures .............................................. 60
SECTION 1201. Supplemental Indentures Without Consent of Holders ........... 60
SECTION 1202. Supplemental Indentures With Consent of Holders ............ 62

v

SECTION 1203.  Execution of Supplemental Indentures . . . . . . . . . . . . . . . . . . . . . .  63
SECTION 1204.  Effect of Supplemental Indentures  . . . . . . . . . . . . . . . . . . . . . . . .  63
SECTION 1205.  Conformity With Trust Indenture Act . . . . . . . . . . . . . . . . . . . . . .  63
SECTION 1206.  Reference in Securities to Supplemental Indentures . . . . . . . . . . . .  64
SECTION 1207.  Modification Without Supplemental Indenture . . . . . . . . . . . . . . . .  64

ARTICLE THIRTEEN  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  64

Meetings of Holders; Action Without Meeting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  64
SECTION 1301.  Purposes for Which Meetings May Be Called  . . . . . . . . . . . . . . . .  64
SECTION 1302.  Call, Notice and Place of Meetings . . . . . . . . . . . . . . . . . . . . . . . .  64
SECTION 1303.  Persons Entitled to Vote at Meetings . . . . . . . . . . . . . . . . . . . . . . .  65
SECTION 1304.  Quorum; Action  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  65
SECTION 1305.  Attendance at Meetings; Determination of Voting Rights;
                     Conduct and Adjournment of Meetings . . . . . . . . . . . . . . . . . . . . .  66
SECTION 1306.  Counting Votes and Recording Action of Meetings . . . . . . . . . . . .  67
SECTION 1307.  Action Without Meeting  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  68

ARTICLE FOURTEEN  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  68

Immunity of Incorporators, Stockholders, Officers and Directors . . . . . . . . . . . . . . . . . . .  68
SECTION 1401.  Liability Solely Corporate  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  68

ARTICLE FIFTEEN  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  68

Subordination of Securities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  68
SECTION 1501.  Securities Subordinate to Senior Indebtedness. . . . . . . . . . . . . . . .  68
SECTION 1502.  Payment Over of Proceeds of Securities . . . . . . . . . . . . . . . . . . . .  69
SECTION 1503.  Disputes with Holders of Certain Senior Indebtedness . . . . . . . . . .  71
SECTION 1504.  Subrogation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  71
SECTION 1505.  Obligation of the Company Unconditional  . . . . . . . . . . . . . . . . . .  71
SECTION 1506.  Priority of Senior Indebtedness Upon Maturity  . . . . . . . . . . . . . . .  72
SECTION 1507.  Trustee as Holder of Senior Indebtedness . . . . . . . . . . . . . . . . . . .  72
SECTION 1508.  Notice to Trustee to Effectuate Subordination . . . . . . . . . . . . . . . .  72
SECTION 1509.  Modification, Extension, etc. of Senior Indebtedness . . . . . . . . . . .  73
SECTION 1510.  Trustee Has No Fiduciary Duty to Holders of Senior Indebtedness  . . .  73
SECTION 1511.  Paying Agents Other Than the Trustee . . . . . . . . . . . . . . . . . . . . .  73
SECTION 1512.  Rights of Holders of Senior Indebtedness Not Impaired  . . . . . . . . .  74
SECTION 1513.  Effect of Subordination Provisions; Termination . . . . . . . . . . . . . .  74

Testimonium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  75

Signatures and Seals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  75

Acknowledgements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  76

(1/06/94/DMJUDG/200/01)/INDENT/67191.1

THE MONTANA POWER COMPANY

Reconciliation and tie between Trust Indenture Act of 1939
and Indenture, dated as of _____, ___

| Trust Indenture Act Section | | Indenture Section |
|---|---|---|
| §310 | (a)(1) | 909 |
| | (a)(2) | 909 |
| | (a)(3) | 914 |
| | (a)(4) | Not Applicable |
| | (b) | 908 |
| | | 910 |
| §311 | (a) | 913 |
| | (b) | 913 |
| | (c) | 913 |
| §312 | (a) | 1001 |
| | (b) | 1001 |
| | (c) | 1001 |
| §313 | (a) | 1002 |
| | (b) | 1002 |
| | (c) | 1002 |
| §314 | (a) | 1002 |
| | (a)(4) | 606 |
| | (b) | Not Applicable |
| | (c)(1) | 102 |
| | (c)(2) | 102 |
| | (c)(3) | Not Applicable |
| | (d) | Not Applicable |
| | (e) | 102 |
| §315 | (a) | 901 |
| | | 903 |
| | (b) | 902 |
| | (c) | 901 |
| | (d) | 901 |
| | (c) | 814 |
| §316 | (a) | 812 |
| | | 813 |
| | (a)(1)(A) | 802 |
| | | 812 |
| | (a)(1) | 813 |
| | (a)(2) | Not Applicable |
| | (b) | 808 |
| §317 | (a)(1) | 803 |
| | (a)(2) | 804 |
| | (b) | 603 |
| §318 | (a) | 107 |

INDENTURE, dated as of November 1, 1996, between THE MONTANA POWER COMPANY, a corporation duly organized and existing under the laws of the State of Montana (herein called the "Company"), having its principal office at 40 East Broadway, Butte, Montana 59701, and THE BANK OF NEW YORK, a corporation duly organized and existing under the laws of the State of New York, having its principal corporate trust office at 101 Barclay Street, New York, New York 10286, as Trustee (herein called the "Trustee").

### RECITAL OF THE COMPANY

The Company has duly authorized the execution and delivery of this Indenture to provide for the issuance from time to time of its unsecured subordinated debentures, notes or other evidences of indebtedness (herein called the "Securities"), in an unlimited aggregate principal amount to be issued in one or more series as contemplated herein; and all acts necessary to make this Indenture a valid agreement of the Company have been performed.

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires, capitalized terms used herein shall have the meanings assigned to them in Article One of this Indenture.

### NOW, THEREFORE, THIS INDENTURE WITNESSETH:

For and in consideration of the premises and the purchase of the Securities by the Holders thereof, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Securities or of any series thereof, as follows:

### ARTICLE ONE

#### Definitions and Other Provisions of General Application

SECTION 101. **Definitions.**

For all purposes of this Indenture, except as otherwise expressly provided or unless the context otherwise requires:

(a) the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

(b) all terms used herein without definition which are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

(c) all accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles in the United States, and, except as otherwise herein expressly provided, the term "generally accepted accounting principles" with respect to any computation required or permitted hereunder shall mean such accounting principles as are generally accepted in the United States at the date of such

-59-

## ARTICLE ELEVEN

### Consolidation, Merger, Conveyance or Other Transfer

SECTION 1101. Company May Consolidate, etc., Only on Certain Terms.

The Company shall not consolidate with or merge into any other corporation, or convey or otherwise transfer, or lease, its properties and assets substantially as an entirety to any Person, unless

(a) the corporation formed by such consolidation or into which the Company is merged or the Person which acquires by conveyance or transfer, or which leases (for a term extending beyond the last Stated Maturity of the Securities then Outstanding), the properties and assets of the Company substantially as an entirety shall be a Person organized and validly existing under the laws of the United States, any State thereof, or any other jurisdiction, provided that in the latter case such Person shall be subject to the laws of the United States and the States thereof in substantially the same manner as a Person organized and validly existing under any of such laws (such corporation being hereinafter sometimes called the "Successor Corporation"), and shall assume, either by the operation of applicable law or by an indenture supplemental hereto, executed and delivered to the Trustee, in form satisfactory to the Trustee, the due and punctual payment of the principal of and premium, if any, and interest, if any, on all Outstanding Securities and the performance of every covenant of this Indenture on the part of the Company to be performed or observed;

(b) immediately after giving effect to such transaction no Event of Default with respect to Securities of any series, and no event which, after notice or lapse of time or both, would become an Event of Default with respect to Securities of any series, shall have occurred and be continuing; and

(c) the Company shall have delivered to the Trustee an Officer's Certificate and an Opinion of Counsel, each stating that such consolidation, merger, conveyance, or other transfer or lease and such supplemental indenture comply with this Article and that all conditions precedent herein provided for relating to such transactions have been complied with.

SECTION 1102. Successor Corporation Substituted.

Upon any consolidation by the Company with or merger by the Company into any other corporation or any conveyance or other transfer of the properties and assets of the Company substantially as an entirety in accordance with Section 1101, the Successor Corporation shall succeed to, and be substituted for, and may exercise every right and power of, the Company under this Indenture with the same effect as if such Successor Corporation had been named as the Company herein, and hereafter the predecessor Person shall be

11:04/94/UPQUO-QDC/013/INDENT:61F91.1

-60-

relieved of all obligations and covenants under this Indenture and the Securities Outstanding hereunder. All Securities so executed by the Successor Corporation, and authenticated and delivered by the Trustee, shall in all respects be entitled to the benefits provided by this Indenture equally and ratably with all Securities executed, authenticated and delivered prior to the time such consideration, merger, conveyance or other transfer became effective.

## ARTICLE TWELVE

### Supplemental Indentures

SECTION 1201. Supplemental Indentures Without Consent of Holders.

Without the consent of any Holders, the Company and the Trustee, at any time and from time to time, may enter into one or more indentures supplemental hereto, in form satisfactory to the Trustee, for any of the following purposes:

(a) to evidence the succession of another Person to the Company and the assumption by any such successor of the covenants of the Company herein and in the Securities, all as provided in Article Eleven; or

(b) to add one or more covenants of the Company or other provisions for the benefit of all Holders or for the benefit of the Holders of, or to remain in effect only so long as there shall be Outstanding, Securities of one or more specified series, or to surrender any right or power herein conferred upon the Company; or

(c) to add any additional Events of Default with respect to all or any series of Securities Outstanding hereunder; or

(d) to change or eliminate any provision of this Indenture or to add any new provision to this Indenture; provided, however, that if such change, elimination or addition shall adversely affect the interests of any Holder of Securities of any series Outstanding on the date of such indenture supplemental hereto in any material respect, such change, elimination or addition shall become effective with respect to such series only pursuant to the provisions of Section 1202 hereof or when no Security of such series remains Outstanding; or

(e) to provide collateral security for all of the Securities; or

(f) to establish the form or terms of Securities of any series as contemplated by Sections 201 and 301; or

(g) to provide for the authentication and delivery of bearer securities and coupons appertaining thereto representing interest, if any, thereon and for the procedures for the registration, exchange and replacement thereof and for the giving

11/06/94/US-0.0-022/013/INDENT/67891.2

-61-

of notice to, and the solicitation of the vote or consent of, the holders thereof, and for any and all other matters incidental thereto; or

(h)  to evidence and provide for the acceptance of appointment hereunder by a separate or successor Trustee or co-trustee with respect to the Securities of one or more series and to add to or change any of the provisions of this Indenture as shall be necessary to provide for or facilitate the administration of the trusts hereunder by more than one Trustee, pursuant to the requirements of Section 911(b); or

(i)  to provide for the procedures required to permit the Company to utilize, at its option, a noncertificated system of registration for all, or any series of, the Securities; or

(j)  to change any place or places where (1) the principal of and premium, if any, and interest, if any, on all or any series of Securities shall be payable, (2) all or any series of Securities may be surrendered for registration of transfer, (3) all or any series of Securities may be surrendered for exchange and (4) notices and demands to or upon the Company in respect of all or any series of Securities and this Indenture may be served; or

(k)  to cure any ambiguity, to correct or supplement any provision herein which may be defective or inconsistent with any other provision herein, provided that any such cure, correction or supplement shall not adversely affect the interests of any Holder of Securities of any Series Outstanding in any material respect.

Without limiting the generality of the foregoing, if the Trust Indenture Act as in effect at the date of the execution and delivery of this Indenture or at any time thereafter shall be amended and

(x)  if any such amendment shall require one or more changes to any provisions hereof or the inclusion herein of any additional provisions, or shall by operation of law be deemed to effect such changes or incorporate such provisions by reference or otherwise, this Indenture shall be deemed to have been amended so as to conform to such amendment to the Trust Indenture Act, and the Company and the Trustee may, without the consent of any Holders, enter into an indenture supplemental hereto to effect or evidence such changes or additional provisions; or



(y)  if any such amendment shall permit one or more changes to, or the elimination of, any provisions hereof which, at the date of the execution and delivery hereof or at any time thereafter, are required by the Trust Indenture Act to be contained herein, the Company and the Trustee may, without the consent of any Holders, enter into an indenture supplemental hereto to evidence such amendment hereof.

11/06/96/L/U/U/4-C200/013/INDENT/47751.5

-62-

SECTION 1202.  Supplemental Indentures With Consent of Holders.

With the consent of the Holders of not less than a majority in aggregate principal amount of the Securities of all series then Outstanding under this Indenture, considered as one class, by Act of said Holders delivered to the Company and the Trustee, the Company, when authorized by a Board Resolution, and the Trustee may enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to, or changing in any manner or eliminating any of the provisions of, this Indenture or modifying in any manner the rights of the Holders of Securities of such series under the Indenture; provided, however, that if there shall be Securities of more than one series Outstanding hereunder and if a proposed supplemental indenture shall directly affect the rights of the Holders of Securities of one or more, but less than all, of such series, then the consent only of the Holders of a majority in aggregate principal amount of the Outstanding Securities of all series so directly affected, considered as one class, shall be required; and provided, further, that no such supplemental indenture shall:

(a)  change the Stated Maturity of the principal of, or any installment of principal of or interest on (except as provided in Section 312 hereof), any Security, or reduce the principal amount thereof or the rate of interest thereon (or the amount of any installment of interest thereon) or change the method of calculating such rate or reduce any premium payable upon the redemption thereof, or change the coin or currency (or other property), in which any Security or any premium or the interest thereon is payable, or impair the right to institute suit for the enforcement of any such payment on or after the Stated Maturity of any payment on any Security (or, in the case of redemption, on or after the Redemption Date), without, in any such case, the consent of the Holder of such Security, or

(b)  reduce the percentage in principal amount of the Outstanding Securities of any series (or, if applicable, in liquidation preference of any series of Preferred Securities), the consent of the Holders of which is required for any such supplemental indenture, or the consent of the Holders of which is required for any waiver of compliance with any provision of this Indenture or of any default hereunder and its consequences, or reduce the requirements of Section 1304 for quorum or voting, without, in any such case, the consent of the Holder of each Outstanding Security of such series, or

(c)  modify any of the provisions of this Section, Section 607 or Section 813 with respect to the Securities of any series, except to increase the percentages in principal amount referred to in this Section or such other Sections or to provide that other provisions of this Indenture cannot be modified or waived without the consent of the Holder of each Outstanding Security affected thereby; provided, however, that this clause shall not be deemed to require the consent of any Holder with respect to changes in the references to "the Trustee" and concomitant changes in this Section, or the deletion of this proviso, in accordance with the requirements of Sections 911(b), 914 and 1201(h).

11/06/96/12/04/04/12/DOCENT/43891.1

-63-

Notwithstanding the foregoing, so long as any of the Preferred Securities remain outstanding, the Trustee may not consent to a supplemental indenture under this Section 1202 without the prior consent, obtained as provided in the Trust Agreement pertaining to the Trust which issued such Preferred Securities, of the holders of not less than a majority in aggregate liquidation preference of all Preferred Securities issued by such Trust then Outstanding which would be affected thereby or, in the case of changes described in clauses (a), (b) and (c) above, 100% in aggregate liquidation preference of all such Preferred Securities. A supplemental indenture which changes or eliminates any covenant or other provision of this Indenture which has expressly been included solely for the benefit of one or more particular series of Securities or which modifies the rights of the Holders of Securities of such series with respect to such covenant or other provision, shall be deemed not to affect the rights under this Indenture of the Holders of Securities of any other series.

It shall not be necessary for any Act of Holders under this Section to approve the particular form of any proposed supplemental indenture, but it shall be sufficient if such Act shall approve the substance thereof. A waiver by a Holder of such Holder's right to consent under this Section shall be deemed to be a consent of such Holder.

SECTION 1203. Execution of Supplemental Indentures.

In executing, or accepting the additional trusts created by, any supplemental indenture permitted by this Article or the modifications thereby of the trusts created by this Indenture, the Trustee shall be entitled to receive, and (subject to Section 901) shall be fully protected in relying upon, an Opinion of Counsel stating that the execution of such supplemental indenture is authorized or permitted by this Indenture. The Trustee may, but shall not be obligated to, enter into any such supplemental indenture which affects the Trustee's own rights, duties, immunities or liabilities under this Indenture or otherwise.

SECTION 1204. Effect of Supplemental Indentures.

Upon the execution of any supplemental indenture under this Article, this Indenture shall be modified in accordance therewith, and such supplemental indenture shall form a part of this Indenture for all purposes; and every Holder of Securities theretofore or thereafter authenticated and delivered hereunder shall be bound thereby. Any supplemental indenture permitted by this Article may restate this Indenture in its entirety, and, upon the execution and delivery thereof, any such restatement shall supersede this Indenture as theretofore in effect for all purposes.

SECTION 1205. Conformity With Trust Indenture Act.

Every supplemental indenture executed pursuant to this Article shall conform to the requirements of the Trust Indenture Act as then in effect.

-64-

SECTION 1206.  Reference in Securities to Supplemental Indentures.

Securities of any series authenticated and delivered after the execution of any supplemental indenture pursuant to this Article may, and shall if required by the Trustee, bear a notation in form approved by the Trustee as to any matter provided for in such supplemental indenture.  If the Company shall so determine, new Securities of any series so modified as to conform, in the opinion of the Trustee and the Company, to any such supplemental indenture may be prepared and executed by the Company and authenticated and delivered by the Trustee in exchange for Outstanding Securities of such series.

SECTION 1207.  Modification Without Supplemental Indenture.

If the terms of any particular series of Securities shall have been established in a Board Resolution or an Officer's Certificate as contemplated by Section 301, and not in an indenture supplemental hereto, additions to, changes in or the elimination of any of such terms may be effected by means of a supplemental Board Resolution or Officer's Certificate, as the case may be, delivered to, and accepted by, the Trustee; provided, however, that such supplemental Board Resolution or Officer's Certificate shall not be accepted by the Trustee or otherwise be effective unless all conditions set forth in this Indenture which would be required to be satisfied if such additions, changes or elimination were contained in a supplemental indenture shall have been appropriately satisfied.  Upon the acceptance thereof by the Trustee, any such supplemental Board Resolution or Officer's Certificate shall be deemed to be a "supplemental indenture" for purposes of this Article Twelve.

## ARTICLE THIRTEEN

### Meetings of Holders; Action Without Meeting

SECTION 1301.  Purposes for Which Meetings May Be Called.

A meeting of Holders of Securities of one or more, or all, series may be called at any time and from time to time pursuant to this Article to make, give or take any request, demand, authorization, direction, notice, consent, waiver or other action provided by this Indenture to be made, given or taken by Holders of Securities of such series.

SECTION 1302.  Call, Notice and Place of Meetings.

(a)  The Trustee may at any time call a meeting of Holders of Securities of one or more, or all, series for any purpose specified in Section 1301, to be held at such time and at such place in the Borough of Manhattan, The City of New York, as the Trustee shall determine or, with the approval of the Company, at any other place.  Notice of every such meeting, setting forth the time and the place of such meeting and in general terms the action proposed to be taken at such meeting, shall be given, in

1/06/96/UM04/OCDV013/INDENT/41991.8

-75-

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed, and their respective corporate seals to be hereunto affixed and attested, all as of the day and year first above written.

THE MONTANA POWER COMPANY

By: _____
     J. P. Pederson
     Vice President and Chief Financial
     and Information Officer

ATTEST:

_____
P. K. Merrell
Vice President, Human Resources
and Corporate Secretary

THE BANK OF NEW YORK, Trustee

By: _____
     ROBERT E. PATTERSON III
     Assistant Vice President

ATTEST:

_____

-76-

STATE OF MONTANA          )
                          ) ss.:
COUNTY OF SILVER BOW  )


On the 6th day of November, 1996, before me personally came J. P. Pederson, to me known, who, being by me duly sworn, did depose and say that he is Vice President and Chief Financial and Information Officer of The Montana Power Company, one of the corporations described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation, and that he signed his name thereto by like authority.


                                          Notary Public
                                          [Notarial Seal]

-77-

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK    )


On the 5th day of November, 1996, before me personally came Robert E. Patterson III, to me known, who, being by me duly sworn, did depose and say that he is an Assistant Vice President of The Bank of New York, one of the corporations described in and which executed the foregoing instrument; that he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation, and that he signed his name thereto by like authority.

Notary Public
[Notarial Seal]

WILLIAM J. CASSELS
Notary Public, State of New York
No. 01CAS027729
Qualified in Bronx County
Certificate Filed in New York County
Commission Expires May 16, 1998

11/04/96/HLW/4C000/OLVRNDENT/67FH.7

J

SECOND SUPPLEMENTAL INDENTURE, dated as of August 13, 2002 (this "Second Supplemental Indenture"), among NORTHWESTERN ENERGY, L.L.C.. a limited liability company duly organized and existing under the laws of the State of Montana, formerly known as The Montana Power, L.L.C. and successor by merger to The Montana Power Company (the "Company"), having its principal office at 40 East Broadway, Butte, Montana 59701, NORTHWESTERN CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware, having its principal office at 125 S. Dakota Avenue, Sioux Falls, South Dakota 57104 ("NOR"), and THE BANK OF NEW YORK, a corporation duly organized and existing as a banking corporation under the laws of the State of New York, having its principal corporate trust office at 101 Barclay Street, New York, New York 10286, as Trustee (the "Trustee"), supplementing the Indenture, dated as of November 1996, between The Montana Power Company, predecessor to the Company, and the Trustee, as amended by the First Supplemental Indenture, dated as of February 13, 2002, between the Company (formerly known as The Montana Power, L.L.C.) and the Trustee (as supplemented, the "Indenture").

RECITALS

WHEREAS, pursuant to a Unit Purchase Agreement, dated as of September 29, 2000, by and between NOR, Touch America Holdings, Inc. and The Montana Power Company, on February 15, 2002, NOR acquired all the outstanding membership interests in the Company and the Company became a direct wholly-owned subsidiary of NOR; and

WHEREAS, as of the date hereof, $67,010,325 aggregate principal amount of the Company's 8.45% Junior Subordinated Debentures due December 31, 2036 are the only Securities Outstanding under the Indenture (the "QUIPS Debentures");

WHEREAS, NOR now desires to enter into this Second Supplemental Indenture to fully and unconditionally assume, on a joint and several basis with the Company, the Company's obligations with respect to the Outstanding QUIPS Debentures and the performance of every covenant, obligation and agreement of the Company under the Indenture applicable to the Outstanding QUIPS Debentures to be performed or observed as though each such covenant, obligation and agreement were applicable directly to NOR (substituting NOR for the Company for purposes of the Indenture), which assumption shall be subject to all of the terms and conditions related to the QUIPS Debentures contained herein, in the Indenture and in the QUIPS Debentures, including, without limitation, the subordination of the obligations so assumed to all Senior Indebtedness of NOR (substituting NOR for the Company for purposes of the definition of Senior Indebtedness) to the same extent as such QUIPS Debentures are subordinated to all Senior Indebtedness of the Company, and which assumption shall remain in effect only for so long as any of the QUIPS Debentures, which are outstanding on the date hereof, shall remain Outstanding; and

WHEREAS, Section 1201(b) of the Indenture permits the parties thereto to enter into a supplemental indenture without the consent of Holders to add provisions to the Indenture for the benefit of all Holders or for the benefit of the Holders of, or to remain in effect only so long as there shall be Outstanding, Securities of one or more specified series; and



WHEREAS, the assumption by NOR of the obligations of the Company with respect to the QUIPS Debentures under the Indenture will benefit the Holders of the Outstanding QUIPS Debentures; and

WHEREAS, the Company and NOR have duly authorized the execution and delivery of this Second Supplemental Indenture pursuant to Section 1201(b) of the Indenture; and

WHEREAS, the Company and NOR have requested the Trustee join with them in the execution of this Second Supplemental Indenture.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound, hereby agree as follows:

ARTICLE ONE

Additional Obligor.

Section 101. As of the date hereof, NOR fully and unconditionally assumes, on a joint and several basis with the Company, the due and punctual payment of the principal of and premium, if any, and interest, if any, on all Outstanding QUIPS Debentures and the performance of every covenant, obligation and agreement of the Company under the Indenture applicable to the Outstanding QUIPS Debentures to be performed or observed as though each such covenant, obligation and agreement were applicable directly to NOR (substituting NOR for the Company for purposes of the Indenture), which assumption shall be subject to all of the terms and conditions related to the QUIPS Debentures contained herein, in the Indenture and in the QUIPS Debentures, including, without limitation, the subordination of such obligations to all Senior Indebtedness of NOR (substituting NOR for the Company for purposes of the definition of Senior Indebtedness) to the same extent as such QUIPS Debentures are subordinated to all Senior Indebtedness of the Company. The assumption contained in this Second Supplemental Indenture shall remain in effect only for so long as any of the QUIPS Debentures, which are Outstanding on the date hereof, shall remain Outstanding. Notwithstanding the assumption contained in this Second Supplemental Indenture, the obligations of the Company to duly and punctually pay the principal of and premium, if any, and interest, if any, on the Outstanding QUIPS Debentures and to perform its covenants, obligations and agreements on the part of the Company under the Indenture shall remain in full force and effect, without diminution or derogation in any respect whatsoever.

ARTICLE TWO

Rights of Parties Not Prejudiced.

Section 201. Notwithstanding the foregoing, the assumption contained in this Second Supplemental Indenture shall be without prejudice to any rights of each of the Company and NOR under the QUIPs Debentures, the Indenture and this Second Supplemental Indenture, including, without limitation, the right of each of the Company and NOR to consolidate with or

2

merge into any other corporation, or convey or otherwise transfer, or lease, its properties and assets substantially as an entirety to any Person, and to be relieved from its obligations under the QUIPS Debenture, the Indenture and hereunder, as provided in Article Eleven of the Indenture. For the avoidance of doubt, the Company may consolidate with or merge into NOR or convey or otherwise transfer, or lease, its properties and assets substantially as an entirety to NOR, and be relieved of its obligations under the QUIPS Debentures, the Indenture and hereunder as provided in Article Eleven of the Indenture notwithstanding the fact that NOR has assumed the Company's obligations under the QUIPS Debentures and the Indenture pursuant to this Second Supplemental Indenture, and such assumption hereunder is expressly subject to such right.

ARTICLE THREE

Miscellaneous Provisions.

Section 301. The terms defined in the Indenture shall, for all purposes of this Second Supplemental Indenture, have the meaning specified in the Indenture.

Section 302. The Trustee hereby accepts the trusts herein declared, provided, created or supplemented and agrees to perform the same upon the terms and conditions herein and in the Indenture set forth; provided, however, that the Trustee shall not be responsible in any manner whatsoever for or in respect of the validity or sufficiency of this Second Supplemental Indenture or for or in respect of the recitals contained herein, all of which recitals are made solely by the Company and NOR.

Section 303. Each and every term and condition contained in this Second Supplemental Indenture shall apply to and form part of the Indenture with the same force and effect as if the same were set forth in full with such omissions, variations and insertions, if any, as may be appropriate to make the same conform to the provisions of this Second Supplemental Indenture and each and every term and condition contained in Article Nine of the Indenture shall apply to and form part of this Second Supplemental Indenture with the same force and effect as if the same were set forth in full herein.

Section 304. Whenever in this Second Supplemental Indenture any of the parties hereto is named or referred to, this shall, subject to the provisions of the Indenture, be deemed to include the successors and assigns of such respective parties, and all the covenants and agreements in this Second Supplemental Indenture contained by or on behalf of the Company, NOR or the Trustee shall, subject as aforesaid, bind and inure to the respective benefits of the respective successors and assigns of such parties, whether so expressed or not.

Section 305. Nothing in this Second Supplemental Indenture, expressed or implied, is intended, or shall be construed, to confer upon, or to give to, any person, firm or corporation, other than the parties hereto and the Holders of the QUIPS Debentures Outstanding under the Indenture, as amended and supplemented, any right, remedy or claim under or by reason of this Second Supplemental Indenture or any covenant, condition, stipulation, promise or agreement hereof, and all the covenants, conditions, stipulations, promises and agreements in this Second Supplemental Indenture contained by or on behalf of respective parties shall be for the

3

sole and exclusive benefit of the parties hereto, and of the Holders of the QUIPS Debentures Outstanding under the Indenture.

Section 306. This Second Supplemental Indenture may be executed in several counterparts, each of which shall be deemed to be an original and all of which shall constitute but one and the same instrument.

Section 307. Except as set forth in this Second Supplemental Indenture, all of the provisions of the Indenture remain in full force and effect, unamended.

Section 308. This Second Supplemental Indenture shall be governed by and construed in accordance with the laws of the State of New York, except to the extent that the law of any other jurisdiction shall be mandatorily applicable.

Section 309. In case any one or more of the provisions contained in this Second Supplemental Indenture shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions of this Second Supplemental Indenture, but this Second Supplemental Indenture shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein or therein.

4

IN WITNESS WHEREOF, the parties hereto have caused this Second Supplemental Indenture to be duly executed, and their respective seals to be hereunto affixed attested, all as of the day and year first above written.

[Seal]                                  NORTHWESTERN ENERGY, L.L.C.


                                        By: /s/ Michael J. Hanson
                                            ------------------------------
                                            Michael J. Hanson
                                            President and Chief Executive Officer

ATTEST:

/s/ Alan D. Dietrich
------------------------------------
Alan D. Dietrich
Secretary

[Seal]                                  NORTHWESTERN CORPORATION


                                        By: /s/ Kipp D. Orme
                                            ------------------------------
                                            Kipp D. Orme
                                            Vice President and Chief Financial Officer

ATTEST:

/s/ Alan D. Dietrich
------------------------------------
Alan D. Dietrich
Vice President - Legal Administration
and Corporate Secretary

[Seal]                                  THE BANK OF NEW YORK, its Trustee


                                        By: /s/ MaryBeth A. Lewicki
                                            ------------------------------
                                            MaryBeth A. Lewicki
                                            Vice President

ATTEST:

/s/ Stacey Poindexter
------------------------------------
Name:  Stacey Poindexter
Title: Assistant Treasurer

STATE OF SOUTH DAKOTA      )
                           )  ss.:
COUNTY OF MINNEHHA         )


On the 9th day of August, 2002, before me personally came Michael J. Hanson, to me known, who, being by me duly sworn, did depose and say that she/he is President and Chief Executive Officer of NorthWestern Energy, L.L.C., the limited liability company described in and which executed the foregoing instrument; and that she/he signed her/his name thereto.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office this 9th day of August, 2002.

[SEAL]                                    /s/ Karen L. Smook
                                          ---------------------------
                                          Karen L. Smook
                                          My Commision Expires: 7-12-2005
                                          ---------


STATE OF SOUTH DAKOTA      )
                           )  ss.:
COUNTY OF MINNEHHA         )


On the 9th day of August, 2002, before me personally came Kipp D. Orme, to me known, who, being by me duly sworn, did depose and say that she/he is Vice President and Chief Financial Officer of NorthWestern Corporation, one of the corporations described in and which executed the foregoing instrument; that she/he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation; and that she/he signed her/his name thereto by like authority.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office this 9th day of August, 2002.

[SEAL]                                    /s/ Karen L. Smook
                                          ---------------------------
                                          Karen L. Smook
                                          My Commision Expires: 7-12-2005
                                          ---------

STATE OF NEW YORK            )
                            )   ss.:
COUNTY OF NEW YORK          )

        On the 13 day of August, 2002, before me personally came MaryBeth A. Lewicki, to me known, who, being by me duly sworn, did depose and say that she is a Vice President of The Bank of New York, one of the corporations described in and which executed the foregoing instrument; that she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation; and that she signed her name thereto by like authority.

        IN WITNESS WHEREOF, I have hereunto set my hand and affixed my seal of office this 13 day of August, 2002.

                                   /s/ William J. Cassels
                                   ----------------------------

                                WILLIAM J. CASSELS
                    Notary Public, State of New York
                          No. 01CA5027729
                      Qualified in Bronx County
                Commission Expires May 18, 2006

K

THIRD SUPPLEMENTAL INDENTURE, dated as of November 15, 2002, between NORTHWESTERN CORPORATION, a Delaware corporation (herein called "NorthWestern"), having its principal office at 125 S. Dakota Avenue Sioux Falls, SD 57104, and THE BANK OF NEW YORK, a corporation duly organized and existing as a banking corporation under the laws of the State of New York, having its principal corporate trust office at 101 Barclay Street, New York, New York 10286, as Trustee (herein called the "Trustee"), supplementing the Indenture, dated as of November 1, 1996, between The Montana Power Company, a corporation organized under the laws of the State of Montana ("MPC"), and the Trustee (the "Indenture"), such Indenture having been previously supplemented by the First Supplemental Indenture, dated as of February 13, 2002, and the Second Supplemental Indenture dated as of August 13, 2002, both by and between the Trustee and NorthWestern Energy, L.L.C. (formerly known as The Montana Power L.L.C.), a limited liability company duly organized and existing under the laws of the State of Montana (herein called "NorthWestern Energy") and successor by merger to MPC.

RECITALS

WHEREAS, MPC entered into an Agreement and Plan of Merger among MPC, Touch America Holdings, Inc. (a Delaware corporation and a wholly-owned subsidiary of MPC), and NorthWestern Energy, dated as of February 20, 2001, pursuant to which MPC was merged with and into NorthWestern Energy; and

WHEREAS, NorthWestern Energy duly authorized the execution and delivery of a First Supplemental Indenture, dated as of February 13, 2002, pursuant to Sections 1101(a) and 1201 of the Indenture, to evidence the succession of NorthWestern Energy to MPC, and the assumption by NorthWestern Energy of the covenants of MPC contained in the Indenture and the Securities issued thereunder;

WHEREAS, NorthWestern Energy and NorthWestern entered into an Asset and Stock Transfer Agreement, dated as of November 15, 2002, pursuant to which the property and assets of NorthWestern Energy substantially as an entirety have been transferred to NorthWestern and NorthWestern has assumed substantially all of the liabilities of NorthWestern Energy;

WHEREAS, NorthWestern duly authorized the execution and delivery of this Third Supplemental Indenture pursuant to Sections 1101(a) and 1201 of the Indenture, to evidence the succession of NorthWestern to NorthWestern Energy and the assumption by NorthWestern of the covenants of NorthWestern Energy contained in the Indenture and the Securities issued thereunder;

WHEREAS, NorthWestern Energy has requested the Trustee join with NorthWestern in the execution of this Third Supplemental Indenture;

NOW, THEREFORE, THIS THIRD SUPPLEMENTAL INDENTURE WITNESSETH:



EXHIBIT

K

For and in consideration of the premises, it is mutually covenanted and agreed, for the equal and proportionate benefit of all Holders of the Securities or of any series thereof, as follows:

## ARTICLE ONE

### Covenants and Agreements of NorthWestern.

Section 101. NorthWestern hereby expressly assumes the due and punctual payment of the principal of and premium, if any, and interest, if any, on all Outstanding Securities issued under the Indenture and the performance of every covenant of the Indenture on the part of NorthWestern Energy to be performed or observed.

## ARTICLE TWO

### Section 201. Miscellaneous Provisions.

Section 1.     The terms defined in the Indenture shall, for all purposes of this Third Supplemental Indenture, have the meaning specified in the Indenture.

Section 2.     The Trustee hereby accepts the trusts herein declared, provided, created or supplemented and agrees to perform the same upon the terms and conditions herein and in the Indenture set forth and upon the following terms and conditions:

The Trustee shall not be responsible in any manner whatsoever for or in respect of the validity or sufficiency of this Third Supplemental Indenture or for or in respect of the recitals contained herein, all of which recitals are made by NorthWestern solely. In general, each and every term and condition contained in this Third Supplemental Indenture shall apply to and form part of the Indenture with the same force and effect as if the same were set forth in full with such omissions, variations and insertions, if any, as may be appropriate to make the same conform to the provisions of this Third Supplemental Indenture.

Section 3.     Whenever in this Third Supplemental Indenture any of the parties hereto is named or referred to, this shall, subject to the provisions of the Indenture, be deemed to include the successors and assigns of such respective parties, and all the covenants and agreements in this Third Supplemental Indenture contained by or on behalf of Northwestern, or by or on behalf of the Trustee shall, subject as aforesaid, bind and inure to the respective benefits of the respective successors and assigns of such parties, whether so expressed or not.

Section 4.     Nothing in this Third Supplemental Indenture, expressed or implied, is intended, or shall be construed, to confer upon, or to give to, any person, firm or corporation, other than the parties hereto and the holders of the Outstanding Securities under the Indenture, as amended and supplemented, any right, remedy or claim under or by reason of this Third Supplemental Indenture or any covenant, condition, stipulation, promise or agreement hereof, and all the covenants, conditions, stipulations, promises and agreements in this Third Supplemental Indenture contained by or on behalf of respective parties shall be for the sole and exclusive benefit of the parties hereto, and of the Holders of the Securities now or to be Outstanding under the Indenture.

Section 5.    This Third Supplemental Indenture may be executed in several counterparts, each of which shall be deemed to be an original and all of which shall constitute but one and the same instrument.

[Signature Pages to Follow]

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed, and their respective seals to be hereunto affixed attested, all as of the day and year first above written.

[Seal]

NORTHWESTERN CORPORATION

By: _____
    Name:    Eric R. Jacobsen
    Title:    SVP, General Counsel and CLO

ATTEST:

_____
Name: Michael J. Young
Title: Asst. Secretary

[Seal]

. THE BANK OF NEW YORK, Trustee

By:_____
    Name:
    Title:

ATTEST:

_____
Name:
Title:

STATE OF SOUTH DAKOTA      )
                           ) ss.:
COUNTY OF MINNEHAHA        )

On the 12th day of November, 2002, before me personally came Eric R. Jacobsen, to me known, who, being by me duly sworn, did depose and say that he is SVP, General Counsel and CLO of NorthWestern Corporation, the corporation described in and which executed the foregoing instrument; that she/he knows the seal of said company; that the seal affixed to said instrument is such corporate seal; that it as so affixed by authority of the Board of Directors of said company, and that she/he signed his name thereto by like authority.

KAREN L. SMOOK
SEAL  NOTARY PUBLIC  SEAL
SOUTH DAKOTA

*Karen L. Smook*

Karen L. Smook
My Commission Expires: 7-12-2005

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed, and their respective seals to be hereunto affixed attested, all as of the day and year first above written.

[Seal]

NORTHWESTERN CORPORATION

By: _____
 Name:
 Title:

ATTEST:

_____
Name:
Title:

[Seal]

THE BANK OF NEW YORK, Trustee

By: _____
 Name: Mary Beth Lewicki
 Title: Vice President

ATTEST:

_____
Name:
Title: STACEY B. POINDEXTER
ASSISTANT TREASURER

STATE OF NEW YORK     )
                      ) ss.:
COUNTY OF NEW YORK    )

On this _____ day of November, 2002, before me, William Cassels , a Notary Public in and for the State of New York, personally came and appeared Mrs Beth Lourdo , to me known and known to me to be a/the Vice President of THE BANK OF NEW YORK, the corporation that executed the within instrument, and acknowledged to me that such corporation executed the same, and, being by me duly sworn, did depose and say that she/he resides at Staten Island NY (?) that she/he is a/the Vice President of THE BANK OF NEW YORK, the corporation described in and which executed the within and above instrument; that she/he knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the Board of Directors of said corporation, and that she/he signed her/his name thereto by like authority.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my official seal the day and year in this certificate first above written.

Notary Public, State of New York
No. _____
Qualified in _____
Commission Expires _____

WILLIAM J. CASSELS
Notary Public, State of New York
No. 01CA5027729
Qualified in Bronx County
Commission Expires May 18, 2006