



James H. Goetz
J. Devlan Geddes
**GOETZ, GALLIK & BALDWIN, P.C.**
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004
(212) 859-8000

ATTORNEYS FOR PLAINTIFF

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF MONTANA
### BUTTE DIVISION

------------------------------------------------------------------------ x
:
MAGTEN ASSET MANAGEMENT CORPORATION, :
:
Plaintiff,       :        Cause No. CV-04-26-BU-RFC
:
- against -         :        **PLAINTIFF MAGTEN**
:        **ASSET MANAGEMENT**
:        **CORPORATION'S**
:        **RESPONSE TO**
MIKE J. HANSON and ERNIE J. KINDT,     :        **DEFENDANTS' MOTION**
:        **FOR SUMMARY**
:        **JUDGMENT**
:
Defendants.       :
:
------------------------------------------------------------------------ x

Plaintiff Magten Asset Management Corporation ("Magten") hereby respectfully submits this Response to the motion filed by defendants Mike J. Hanson and Ernie J. Kindt seeking summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure (the "Motion").

## PRELIMINARY STATEMENT

This lawsuit is an action seeking redress for defendants' wrongful conduct and breaches of fiduciary duty in connection with their role in causing Clark Fork and Blackfoot, LLC ("Clark Fork") to transfer its key assets in a "going flat" transaction to NorthWestern Corporation ("NorthWestern") for grossly inadequate consideration on November 15, 2002 (the "Transaction"). Defendants' Motion is a hasty and premature attempt, using legally irrelevant and false statements, to extricate themselves from this action. The Motion fails because it is reliant on defendants' inaccurate representations of the holding of Judge Case's July 23, 2004 Decision and of the factual basis of Magten's claims against defendants in this action. Moreover, defendants ignore Judge Case's opinion of August 20, 2004, in which the court held that Magten and the Trustee have standing to pursue fraud claims against NorthWestern and Clark Fork in connection with the Transaction.[1] Indeed, the so-called "admissions" by Magten to which defendants allude only serve to reinforce Magten's position and are consistent with the theory of Magten's cause of action set forth in the Complaint.

Defendants' Motion is written as if defendants have never read Magten's Complaint. Defendants now claim that Magten cannot succeed in this action because Magten cannot establish that it was a creditor of Clark Fork at the time of the Transaction. But Magten has never alleged that it was a creditor of Clark Fork at the time of the Transaction. To the contrary, Magten specifically alleged in its Complaint that it had standing to assert the claims which had

---

[1]    On August 27, 2004, attorneys for Magten forwarded Judge Case's August 20, 2004 opinion to attorneys for defendants and gave them the opportunity to withdraw this Motion. Defendants declined to do so.

previously arisen in favor of the Trustee and Magten's predecessors in interest, *i.e.*, the owners

of the QUIPS at the time of the transactions at issue here. Cplt. ¶ 49.[2]

Indeed, the "facts" upon which defendants purport to bring the instant Motion are simply

restatements of the facts alleged in Magten's Complaint. Defendants have not learned of a new

basis for dismissal previously hidden to them. Instead, defendants are attempting to transform

legal arguments that could have (and should have) been brought in their Rule 12(b)(6) motion

into the "factual" basis for the instant Motion.

## FACTUAL ALLEGATIONS OF THE COMPLAINT RELEVANT TO THE MOTION

Magten respectfully refers the Court to the Complaint for its full text, and will highlight

here only the most relevant facts alleged therein.[3]

**The QUIPS and Magten**. Clark Fork is the successor in interest to the former Montana

Power Company ("Montana Power"). Cplt. ¶¶ 23, 27, 39. Magten presently owns in excess of

33% of the Series A 8.45% Quarterly Income Preferred Securities ("QUIPS"), with a principal

face value of in excess of $20 million. Cplt. ¶ 19. The QUIPS were initially issued in 1996.

Cplt. ¶¶ 11-15. They were issued by a special purpose vehicle called Montana Power Capital

Trust I (the "Trust"). Cplt. ¶ 15. The Trust's sole meaningful asset was and is 100% of certain

debt securities (the "Junior Debentures") issued by Montana Power to the Trust essentially

simultaneously with the sale of the QUIPS by the Trust to the general investing public. Cplt. ¶

16. This somewhat complicated structure was intended to provide the holders of the QUIPS with

substantially the same rights and potential investment return as if they had purchased the Junior

---

[2]    References herein to the relevant sections of the Complaint are as follows: "Cplt. ¶ _." (A copy of the
       Complaint is attached to the Declaration of J. Devlan Geddes, dated September 13, 2004 ("Geddes
       Declaration"), as Exhibit A.)

[3]    For the purposes of their Motion, defendants have not put forth any facts rebutting specific allegations of
       the Complaint. Accordingly, the allegations of the Complaint are set forth below as background for the
       Court.

Debentures directly from Montana Power, while providing Montana Power with a more favorable accounting treatment. Cplt. ¶ 17. Accordingly, the indenture governing the Junior Debentures (the "Indenture") expressly provides (in its section 610) that the holders of the QUIPS are intended beneficiaries of Clark Fork's obligations and may sue directly to enforce the Trust's rights if the trustee of the Trust fails to act. Cplt. ¶ 18.[4]

**The Role of the Defendants**. As of November 15, 2002, Hanson and Kindt were officers of Clark Fork. Cplt. ¶¶ 3, 5. As Chief Executive Officer and Chief Accounting Officer, respectively, they were necessarily intimately involved in the execution of the Transaction, and they knew or were reckless in not knowing the negative impact it would have on Clark Fork's creditors. Cplt. ¶ 35.

**Clark Fork at the Time of the Transaction**. By November 2002, Clark Fork (known at the time as NorthWestern Energy, LLC) had succeeded by merger to Montana Power's obligations with respect to the QUIPS. The vast majority of Clark Fork's assets consisted of the various utility assets which had belonged to Montana Power (the "Montana Utility Assets"). Cplt. ¶ 31. By that time, NorthWestern had become the 100% owner of Clark Fork's equity.[5] Cplt. ¶ 26.

**The Transaction and the Grievous Harm It Has Caused to Clark Fork's Creditors.** On November 15, 2002, the defendants caused Clark Fork to transfer the Montana Utility Assets to NorthWestern for grossly inadequate consideration (the "Transaction"). Cplt. ¶ 31. Over $1 billion in assets were transferred; no cash or other assets were provided to Clark Fork in return. Cplt. ¶ 31. While consideration was allegedly given in the form of assumption by NorthWestern

---

[4]    *See* Section 610 of the November 1996 Indenture (a copy of the relevant pages are attached to the Geddes Declaration as Exhibit B).

[5]    There were a number of transactions involving Montana Power, NorthWestern and/or Clark Fork during the 2000-02 period prior to November 2002, which are described in greater detail in ¶¶ 21-30 of the Complaint.

of Clark Fork's debt, only $700 million was purportedly assumed, meaning that NorthWestern received hundreds of millions of dollars of additional value for which it did not pay fair consideration.[6] Cplt. ¶ 31.

Both prior to and following the Transaction, NorthWestern was insolvent. Cplt. ¶ 34.[7] Even the hundreds of millions of dollars by which it was unjustly enriched by the Transaction were insufficient to overcome the massive imbalance between assets and liabilities created by its other failed business ventures. Cplt. ¶ 34. Less than a year after the Transaction, NorthWestern filed for bankruptcy. Cplt. ¶ 42. Meanwhile, Clark Fork was rendered immediately insolvent by the Transaction, although it had previously been solvent and able to meet all of its obligations, including those related to the QUIPS. Cplt. ¶¶ 33, 36. Hanson and Kindt knew, or were reckless in not knowing, that Clark Fork would be rendered insolvent as a result of the Transaction and that NorthWestern was insolvent both before and after the Transaction. Cplt. ¶ 35.

In excess of $2 million in interest on the Junior Debentures is now past due and owing. Cplt. ¶ 36. Moreover, the entire principal amount of the Junior Debentures (approximately $67 million, which would be distributed through the Trust to the holders of the QUIPS) has been accelerated pursuant to the terms of the Indenture. Cplt. ¶ 36. Neither NorthWestern nor Clark Fork has honored these obligations, and neither is able to honor these obligations. Cplt. ¶ 36. As a result of the Transaction, the Montana Utility Assets have been made vulnerable to the claims

---

[6]    Moreover, with respect to some of the Clark Fork liabilities purportedly assumed, including the liabilities associated with the QUIPS, NorthWestern was already a co-obligor with Clark Fork, meaning that no additional consideration was being provided by NorthWestern. Cplt. ¶ 31.

[7]    Indeed, NorthWestern has admitted that it was insolvent at the time of the Transaction and was not financially capable of performing its obligations under the Indenture. In its Disclosure Statement, NorthWestern acknowledged that "by late 2002, the Debtor was significantly overleveraged, with current and projected income insufficient to support existing debt levels." Disclosure Statement at p. 22. United States Bankruptcy Court for the District of Delaware Case No. 03-12872; Docket No. 1352 (a copy of the relevant pages of which are attached to the Geddes Declaration as Exhibit C).
The Court can take judicial notice of this admission. *See SEIU, Local 102 v. County of San Diego*, 60 F.3d 1346, 1357 n.3 (9th Cir. 1994) (noting a court could properly take judicial notice of a document which is "part of an official federal court record").

4

of NorthWestern's numerous other creditors. Cplt. ¶ 44. This leaves Magten and the other

holders of the QUIPS with the prospect of receiving a minimal recovery of only pennies on the

dollar in NorthWestern's bankruptcy despite the fact that the Montana Utility Assets generate

approximately 80% of NorthWestern's consolidated EBITDA. Cplt. ¶ 43. If the Transaction

had not taken place, NorthWestern's creditors would not have any direct claim to the Montana

Utility Assets. Cplt. ¶ 44. They would enjoy only the residual value of the Montana Assets after

the repayment in full of the Clark Fork creditors. Cplt. ¶ 44. Magten and Law Debenture Trust

Company of New York (the "Successor Trustee") have also brought an action in bankruptcy

court against NorthWestern challenging the validity of the Transaction (the "Adversary

Proceeding") for the benefit of all QUIPS holders.

## DECISIONS OF THE BANKRUPTCY COURT SUPPORT MAGTEN'S STANDING TO BRING THIS ACTION

### The July 23, 2004 Decision

Defendants purportedly initiated the instant Motion in response to their flawed reading of

Judge Case's July 23, 2004 Decision, a decision far more straightforward than defendants make

it out to be.[8] In the decision, Judge Case denied Magten's motion to disqualify Paul Hastings as

counsel to NorthWestern, holding that Paul Hastings' initial inadequate disclosure was not

grounds for disqualification and that Paul Hastings did not hold an adverse interest to the estate

of NorthWestern. J. Case's July 23, 2004 Decision at 6-7. Judge Case did note (and Magten

acknowledged) that Magten was not a creditor of Clark Fork at the time of the Transaction. *Id.*

at 3. Judge Case did not, however, hold that Magten lacked standing to challenge the validity of

the Transaction. The issue of Magten's standing to pursue claims relating to the Transaction was

---

[8]    References herein to the relevant sections of Judge Case's July 23, 2004 Decision are as follows: "J. Case's
Jul. 23, 2004 Decision at ___." A copy of Judge Case's July 23, 2004 Decision is attached to the Geddes
Declaration as Exhibit D.

not before Judge Case. In fact, Judge Case acknowledged the existence of the Adversary

Proceeding and noted that no decision had been made in the case at that time. *Id.* at 7. When

Judge Case did ultimately address Magten's standing, Judge Case held, as discussed below, that

Magten had properly stated a claim challenging the Transaction.

**The August 20, 2004 Decision**

On August 20, 2004, Judge Case denied NorthWestern's motion to dismiss Magten and

the Successor Trustee's complaint in the Adversary Proceeding seeking to invalidate the

Transaction.[9] NorthWestern argued that plaintiffs were not creditors of Clark Fork – instead

they were creditors of NorthWestern alone – and lacked standing to bring their action.

NorthWestern further argued that any challenge to the validity of the Transaction was precluded

because there was formal compliance with the terms of the Indentures and NorthWestern

disclosed the terms of the Transaction in regulatory filings and documents executed by the

Trustee. Indeed, NorthWestern's waiver arguments were substantially identical to those made by

defendants here.[10] Judge Case rejected both arguments. While acknowledging that Magten was

not a creditor of Clark Fork at the time of the Transaction, Judge Case held that Magten and the

Successor Trustee had standing to bring the Adversary Proceeding because they had pleaded

facts regarding NorthWestern's fraudulent scheme to effect the Transaction and defraud creditors

of Clark Fork sufficient to survive a motion to dismiss. J. Case's Aug. 20, 2004 Op. at 10.

Judge Case further held that Magten and the Successor Trustee had sufficiently alleged factual

questions as to whether or not NorthWestern knew at the time of the Transaction that it would

---

[9]   References herein to the relevant sections of Judge Case's August 20, 2004 Opinion are as follows: "J.
      Case's Aug. 20, 2004 Op. at _." A copy of J. Case's Aug. 20, 2004 Opinion is attached to the Geddes
      Declaration as Exhibit E.

[10]  A copy of NorthWestern Corporation's Motion, and Supporting Brief, to Dismiss the Complaint of Magten
      Asset Management Corporation and Law Debenture Trust Company of New York for Failure to State a
      Claim Upon Which Relief Can Be Granted is attached to the Geddes Declaration as Exhibit F.

necessarily be unable to meet the obligations of the QUIPS holders that NorthWestern was

assuming pursuant to the Transaction. *Id.*

## ARGUMENT

Defendants have moved for summary judgment under Rule 56 of the Federal Rules of

Civil Procedure. The court must determine, viewing the evidence in the light most favorable to

the nonmoving party, in this case Magten, and without weighing the evidence or determining the

truth of the matter, whether there are any genuine issues of material fact and whether judgment is

appropriate as a matter of law. *See Clicks Billiards Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257

(9th Cir. 2001) (court reversed district courts' grant of summary judgment in part because

genuine issues of fact existed); *Balint v. Carson City*, 180 F.3d 1047, 1050 (9th Cir. 1999) (en

banc) (same); *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir. 1999) (court held that

the district court's grant of summary judgment must be reversed because genuine issues of fact

existed); *Abdul Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th Cir. 1996) (court did not

weigh the evidence or determine the truth of the matter but still held that the lower courts grant

of summary judgment should be reversed because genuine issues of fact existed).

Moreover, before summary judgment may be entered against a party, that party must be

afforded an adequate opportunity to respond. *See American Guarantee & Liability Insurance

Company v. Ingram Micro, Inc.*, No. Civ.A. 99-185 TUC ACM, 1999 U.S. Dist. LEXIS 21793,

at *1 (D. Ariz. Aug. 26, 1999) *citing Program Engineering, Inc. v. Triangle Publications, Inc.*,

634 F.2d 1188, 1193 (9th Cir. 1980). "Implicit in the opportunity to respond is the requirement

that sufficient time be afforded for discovery as is necessary to develop facts essential to justify a

party's opposition to the motion." *Id.* Here, defendants' Motion is patently premature.

Discovery is not only incomplete, it has yet to even begin. Indeed, the failure to take discovery

is apparent in defendants' Motion, for their supposed "factual" contentions are largely

restatements of the allegations of the Complaint insufficient as a matter of law to justify the relief

defendants seek and, to the extent they differ from the allegations of the Complaint, are easily

rebutted by publicly available documents. Accordingly, defendants' Motion should be denied.

I.    **SUBSTANTIALLY ALL OF DEFENDANTS' SUMMARY JUDGMENT MOTION
      RELIES ON MISIMPRESSIONS OF FACT AND MISCHARACTERIZATIONS
      OF JUDICIAL DETERMINATIONS**

Clark Fork was a company within the zone of insolvency on November 15, 2002 when

defendants, as officers of Clark Fork, willfully and wantonly carried out the transfer of the

Montana Utility Assets to NorthWestern without adequate consideration, thereby rendering

Clark Fork insolvent. Cplt. ¶¶ 3, 5, 31, 33, 47, 48; Geddes Declaration Ex. C. Defendants owed

individual fiduciary duties to all of Clark Fork's creditors, including without limitation, the Trust

and all QUIPS holders, including Magten's predecessors in interest, not to engage in any

transaction that would make Clark Fork insolvent and thus unable to perform its obligations with

respect to the Junior Debentures and QUIPS. Cplt. ¶ 47. Magten's claim is derived from the

injury to the Trust and all QUIPS holders resulting from defendants' breaches of fiduciary duty

in authorizing the Transaction.

In their 12(b)(6) Motion to Dismiss, defendants did not dispute that Magten has standing

to assert the rights of the Trust and its predecessors in interest and owners of the QUIPS, both of

which were creditors of Clark Fork as of November 15, 2002. Instead, claiming the existence of

"new" facts, defendants now argue that Magten lacks standing to assert any claims against the

defendants because Magten was not a holder of the QUIPS at the time of the Transaction. Def.

Br. at 3-9.[11] Defendants' Motion, however, is reliant on misimpressions of fact and a misreading

---

[11]    References herein to the relevant sections of the defendants' Brief in Support of Motion for Summary
        Judgment are as follows: "Def. Br. at __."

standing to pursue the breach of fiduciary duty claim against defendants pursuant to the express

terms of the master indenture.  Section 610 provides in relevant part that

> if the property trustee under the related Trust Agreement (the "Property Trustee")
> fails to enforce its rights with respect to the Securities or the related Trust
> Agreement, a holder of Preferred Securities may institute a legal proceeding
> directly against the Company to enforce the Property Trustee's rights with respect
> to the Securities or such Trust Agreement, to the fullest extent permitted by law,
> without first instituting any legal proceeding against the Property Trustee or any
> other person or entity.
> Geddes Declaration Ex. B.

It is undisputed that the Trustee has not brought a claim against the defendants here.  Defendants

do not argue otherwise.  And as an express third party beneficiary to the Indenture, Magten has

standing to bring the breach of fiduciary claim relating to that Indenture against the defendants

here.  *See, e.g.*, *TVT Records v. Island Def Jam Music Group*, 279 F. Supp. 2d 366, 383

(S.D.N.Y. 2003) (third party beneficiary to contract had standing to bring fraud and tortious

interference claims relating to the contract).

## B.    Magten's Claims Have Not Been Waived

Failing to dispute that Magten has standing to assert the rights of the Trust, defendants

are forced to argue that the Trust and Magten's predecessors in interest waived, as a matter of

law, their rights by executing the various supplemental indentures and failing to challenge the

validity of such transactions at the time the transactions were executed. Def. Br. at 11-13.[14]  A

waiver claim depends on whether the claimant intended to relinquish a known right.  *See, e.g.*,

*Saunders v. Lloyd's of London*, 779 P.2d 249 (Wash. 1989).  Ordinarily, the question of waiver is

a question of fact for the jury.  *See Lynch v. CIBY 2000*, No. Civ.A. 97-9022, 1998 U.S. Dist.

LEXIS 23497, *13-14 (D. Cal., July 6, 1998) *citing Kossler v. Palm Springs Developments, Ltd.*,

161 Cal. Rptr. 423 (1980).  Summary judgment is appropriate only when waiver is the sole

---

[14]    Despite arguing that Magten's predecessors in interest have waived any of their claims against defendants,
defendants fail to identify any documents executed by Magten's predecessors in interest.

despite the undisputed fact that it did not yet own any QUIPS at the time of that Transaction; and

b) Magten has pleaded a triable cause of action that the release of Clark Fork's obligations

related to the QUIPS may be invalid on the ground that it was obtained as part of a fraudulent

scheme. This latter holding necessarily reflected a rejection of NorthWestern's acquiescence and

waiver arguments, which were essentially identical to those which defendants make in their

presently pending Motion for Summary Judgment. Accordingly, Magten's standing to pursue

this breach of fiduciary duty claim has not been precluded by any Order entered by Judge Case

in either the Adversary Proceeding or the Bankruptcy Proceeding.

## II.   MAGTEN HAS STANDING TO ASSERT THE RIGHTS OF ITS QUIPS PREDECESSORS IN INTEREST AS WELL AS THE PROPERTY TRUSTEE

### A.   Magten Does Not Need A Specific Assignment From Its Predecessors In Interest In Order To Bring This Cause Of Action

Defendants' argument that Magten is precluded from asserting a claim for breach of

fiduciary duty because the claim was not conveyed or assigned to Magten in writing also fails.

Defendants rely primarily on Montana Code § 30-1-206, a statute of frauds gap-filling statute.

*See* Def. Br. at 9-11. That statute is expressly inapplicable to the sale of securities and is

necessarily inapplicable to the transfer of causes of actions relating to those securities. *See*

Montana Code § 30-1-206(2) ("[s]ubsection (1) does not apply to contracts for the sale of goods

(30-1-201) nor of *securities* (30-8-123) nor to security agreements (30-9A-203)") (emphasis

added).[13] Regardless of the applicability of Montana Code § 30-1-206, Magten clearly has

---

[13]   Both Delaware and New York have virtually identical statutes. *See* 6 Del. Code Ann. § 1-206 (2004); N.Y. Uniform Commercial Code §1-206 (2004). Indeed, none of the cases relied on by defendants deal with the transfer of rights related to the purchase of securities. Def. Br. at 9-11. Moreover, under New York law (which defendants concede may be applicable here), the transfer – whether in writing or not – of a bond (including a debt security such as the QUIPS) includes the transfer of all causes of action held by the bondholder against the obligor of the bond (in this case, Clark Fork and NorthWestern). *See* N.Y. GENERAL OBLIGATIONS LAW § 13-107 (2004); *Bluebird Partners, L.P. v. First Fidelity Bank, N.A.*, 767 N.E.2d 672 (N.Y. 2002). The rationale of N.Y. G.O.L. § 13-107 applies equally to claims against agents of the obligor such as defendants here.

acknowledged in this proceeding: it purchased the QUIPS *after* the Transaction. Cplt. ¶¶ 47-52;

Pl. Resp. Br. at 7. Nonetheless, Defendants use Mr. Embry's alleged "admission" to argue that

because Magten was not a holder at the time of the Transaction, Magten has no permissible

claims against defendants for breaches of fiduciary duty. Def. Br. at 3-5. Defendants are

mistaken.

Furthermore, contrary to defendants' claim, Judge Case's July 23, 2004 Decision does

not even address Magten's standing to sue here. *See generally,* J. Case's July 23, 2004 Decision.

Judge Case simply decided that NorthWestern's counsel would not be disqualified from

representing the debtor in the ongoing Bankruptcy Proceeding. *Id.* At that time, Judge Case did

not say anything either directly or by implication about Magten's ability to pursue damage

claims with respect to the QUIPS against defendants, NorthWestern or any other entity, *id*, and

defendants' argument regarding the application of the principles of issue preclusion and res

judicata in the present proceeding is wholly irrelevant. Furthermore, as discussed below, on

August 20, 2004, in a ruling on a motion to dismiss in the Adversary Proceeding, Judge Case

specifically decided that Magten's ability to seek relief *was not* precluded by the fact that

Magten did not own any QUIPS at the time of the Transaction. *See* J. Case's Aug. 20, 2004 Op.

at 11.

### B.     Judge Case's August 20, 2004 Opinion Recognizes Magten's Ability to Pursue Claims as a Creditor of Clark Fork

Magten has always acknowledged that its standing to raise claims against the defendants

is derived from Magten's role as a third party beneficiary of the Indenture and Magten's

predecessors in interest. Cplt. at ¶¶ 47-52; Pl. Resp. Br. at 7. On August 20, 2004, Judge Case

issued an Opinion in the Adversary Proceeding which held that: a) Magten has standing to

pursue its claims for relief against NorthWestern with respect to the November 2002 Transaction

10

of Judge Case's July 23, 2004 ruling on a Motion to Disqualify debtor's counsel in the

NorthWestern Bankruptcy Proceeding.

A.    **Magten has Never Claimed, nor is it Necessary, to be a Creditor of Clark Fork at the Time of the Transaction**

Magten's standing to pursue this breach of fiduciary duty claim is derived from the

Trustee, who failed to enforce the Trust's rights, and the QUIPS holders that were Magten's

predecessors in interest. Cplt. ¶ 49; Pl. Resp. Br. at 7.[12]  Section 610 of the Indenture expressly

provides that Magten has standing to sue when the Trustee does not bring suit. Indeed, Magten

specifically alleged as follows: "The Property Trustee has failed to enforce the Trust's rights, so

Magten has standing under the Indenture to enforce both the Trust's rights and its own individual

rights as successor to the QUIPS holders who were its predecessors in interest." Cplt. ¶ 49.

Magten has never alleged or implied that it was a creditor of Clark Fork on November 15,

2002, the date of the Transaction. Statements to the contrary in defendants' papers simply

suggest that defendants have not read the Complaint. Indeed, the Complaint's specific

allegations of Magten's standing to assert the claims which had previously arisen in favor of its

predecessors in interest would make no sense if Magten itself had owned QUIPS as of the date of

the Transaction.

Nevertheless, defendants, in their Motion, felt it was necessary to discuss an alleged

"admission" made by Talton Embry, Magten's sole owner, in a July 27, 2004 deposition in the

bankruptcy proceeding that Magten was not an owner of QUIPS as of the date of the

Transaction. Def. Br. at 5. Yet this so-called "admission" was affirmatively asserted by Magten

in its Complaint. Cplt. ¶¶ 47-52. Defendants have not stumbled upon a new fact. Rather, Mr.

Embry's testimony on that point is completely consistent with what Magten has always

---

[12]    References herein to the relevant sections of Magten's Brief in Response to defendants' Motion to Dismiss are as follows: "Pl. Resp. Br. at _."

reasonable inference that can be drawn from the evidence. *Id*. Defendants, however, cite no facts supporting their waiver argument.

Defendants now claim that the mere execution of the documents by the Trustee is a waiver of any and all claims against them (Def. Br. at 11-12), but failure to object immediately to a party's unlawful act does not by itself constitute a waiver. *See* 28 American Jurisprudence 2d § 209 (2d ed. 2000); *see also Hansen v. 75 Ranch Company*, 957 P.2d 32 (Mont. 1998) (court held that minority shareholders were not barred from asserting their rights to dissent by failing to expressly object to the acts of the corporation). As Judge Case recognized in rejecting arguments identical to those made by defendants in their Motion, the key issue is whether NorthWestern's purported assumption of obligations pursuant to the Transaction was meaningless. *See* J. Case's Aug. 20, 2004 Op. at 9-11. NorthWestern was insolvent at the time of the Transaction. Geddes Declaration Ex. C. Defendants have not put forth any evidence that the insolvency was contemporarily disclosed to the Trust at the time of the Transaction. Six months *after* the Transaction, NorthWestern issued a press release announcing that it was amending its quarterly reports for the first three quarters of 2002, reporting an additional $878 million of negative charges for FYE 2002.[15] The SEC immediately began an investigation into this restatement.[16] That investigation was subsequently formalized and is ongoing.[17] The Second and Third Supplemental Indentures were, therefore, executed at a time when the only financial information publicly available concerning NorthWestern's financial condition was fraudulent. The mere execution by the Trustee of the supplemental indentures, therefore, cannot be deemed a waiver of

---

[15] A copy of NorthWestern's press release, dated April 16, 2003, in which it announced that it was amending its quarterly reports, is attached to the Geddes Declaration as Exhibit G.

[16] A copy of NorthWestern's press release, dated December 31, 2003, in which it reported that the U.S. Securities and Exchange Commission ("SEC") had formalized what had previously been, since April 2003, an informal SEC inquiry of NorthWestern regarding restatements and other accounting and financial reporting matters, is attached to the Geddes Declaration as Exhibit H.

[17] *See id*.

any right to assert a claim based upon the "going flat" Transaction. Defendants cannot be permitted to benefit from participating in the orchestrated transfer of substantially all of Clark Fork's utility assets and then argue that parties waived their right to object to the Transaction.

Moreover, defendants' citation to Judge Case's July 23, 2004 Decision is inapposite. Judge Case did not hold that Magten, its predecessors or the Trustee knowingly waived their rights to challenge the Transaction. *See* J. Case's July 23, 2004 Decision. Nor did Judge Case make any findings of fact relevant to the question of waiver. Judge Case simply denied Magten's request to disqualify counsel for NorthWestern in the bankruptcy proceedings. In fact, Judge Case's August 20, 2004 Opinion expressly rejected the argument that the Trustee had waived its right to challenge the Transaction as a matter of law as a result of NorthWestern's compliance with "the technical, procedural requirements of the Indenture" and disclosure of the various steps that purported to effect the Transaction in regulatory filings and documents executed by the Trustee. *See* J. Case's Aug. 20, 2004 Op. at 9-11.

Accordingly, defendants' failure to identify any evidence regarding the knowledge of the parties at the time of the Transaction prevents resolution of the question of waiver at this time. *See, e.g.*, *Time Oil Co. v. Cigna Prop. & Cas. Ins. Co.*, 743 F. Supp. 1400, 1419 (D. Wash. 1990) (court concluded that the waiver and estoppel issues were factual issues not appropriate for resolution on a motion for summary judgment and must be decided at trial).

Furthermore, defendants' assertion that Magten's acquisition of the QUIPS after the date, and with knowledge of, the Transaction precludes Magten from alleging "innocence" (Def. Br. at 8) is disingenuous. As defendants' waiver argument implicitly acknowledges, this Court must look to the Trustee and Magten's predecessors in interest in assessing Magten's breach of fiduciary claim. Moreover, innocence is not a requisite element of a breach of fiduciary duty

14

claim. In order to sustain a claim for breach of fiduciary duty, Magten must prove: (1) the existence of a fiduciary relationship; (2) breach of the fiduciary relationship; and (3) damage proximately caused by that breach. *See United States ex rel. Hill v. Teledyne, Inc.*, 1996 U.S. App. LEXIS 30178 (9th Cir. Nov. 7, 1996). Here, the Complaint alleges (¶ 47) that Clark Fork was in the zone of insolvency on November 15, 2002 and further alleges (¶¶ 33, 48) that Clark Fork was then rendered insolvent as a result of the defendants' acts in approving the Transaction.[18] The Complaint further alleges (¶¶ 3, 5) that defendants Hanson and Kindt were officers of Clark Fork on November 15, 2002 and (¶ 31) that they approved of and participated in the scheme executed to defraud Clark Fork's creditors by looting its assets for the benefit of NorthWestern.[19] This is all that is necessary to plead a cause of action for breach of fiduciary duty.[20] Defendants have not cited a single case in support of this ludicrous assertion that in order to allege a breach of fiduciary duty claim Magten must have been "innocent" and without knowledge of the Transaction at the time Magten purchased QUIPS. Def. Br. at 8. Furthermore, Magten has never claimed that it did not know that NorthWestern had acquired Clark Fork or that Magten was defrauded into purchasing QUIPS. Magten has pleaded sufficient facts to establish that Magten validly brought its claim for breach of fiduciary duty, and defendants' Motion should be denied.

---

[18]  *See Geyer v. Ingersoll Publications Co.*, 621 A.2d 784, 787 (Del. Ch. 1992) ("the general rule is that directors do not owe creditors duties...absent special circumstances...when the insolvency exception does arise, it creates fiduciary duties for directors for the benefit of creditors"); *Odyssey Partners, L.P. v. Fleming Companies, Inc.*, 735 A.2d 386, 417 (Del. Ch. 1999) (same).

[19]  *See Jewel Recovery, L.P. v. Gordon*, 196 B.R. 348, 354 (N.D. Tex. 1996) (citations omitted) ("[W]hen a corporation becomes insolvent, the assets of the corporation become a trust for the benefit of the corporation's creditors. The corporate directors then hold a fiduciary duty as trustees to protect the assets for the creditors. The breach of that duty gives rise to a claim that can be pursued by the creditors.").

[20]  Magten respectfully refers the Court to its Response to Defendants' Motion to Dismiss for Magten's complete argument in support of its claim for breach of fiduciary duty.

## CONCLUSION

For the foregoing reasons, defendants' Motion should be denied.


Dated:  this 13th day of September, 2004.


GOETZ, GALLIK & BALDWIN, P.C.


By: _____

James H. Goetz
J. Devlan Geddes
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

- and -

FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP


By: _____

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
One New York Plaza
New York, New York 10004-1980
(212) 859-8000


*Attorneys for Plaintiff*
 *Magten Asset Management Corporation*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record, by first class U. S. mail, postage prepaid, this 13th day of September, 2004.

Bonnie Steingart
John W. Brewer
Fried, Brank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, NY 10004
ATTORNEYS FOR PLAINTIFF

Kimberly A. Beatty
Browning, Kaleczyc, Berry & Hoven, P.C.
P. O. Box 1697
Helena, MT 59624
ATTORNEYS FOR DEFENDANTS

J. Devlan Geddes