Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59624
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | Case No.: CV-04-26-BU-RFC |
| Plaintiff, | **DEFENDANTS' PRELIMINARY PRETRIAL STATEMENT** |
| vs. | |
| MIKE J. HANSON, and ERNIE J. KINDT, | |
| Defendant. | |

Pursuant to the Order of the Court issued April 5, 2005, Defendants, by and through their counsel of record, hereby submit this Preliminary Pretrial Statement addressing the requirements of Fed. R. Civ. P. 26(a)(1) and L.R. 16.2(b)(1).

**A.   Summary of Facts.**

On February 15, 2002, pursuant to the terms of a Unit Purchase Agreement ("UPA") entered into between NorthWestern, as purchaser, and The Montana Power Company ("MPC") and Touch America Holdings, Inc. ("TAH") as sellers, NorthWestern acquired the sole unit interest in Montana Power, LLC, a Montana limited liability company (the "NorthWestern Acquisition"). Two days previously, as part of a corporate reorganization of MPC into TAH, the electric and natural gas transmission and distribution assets of MPC, as well as MPC's interest in

the Milltown Dam, were transferred from MPC to Montana Power, LLC. Both prior to and subsequent to the NorthWestern Acquisition, it was a matter of public record that NorthWestern would hold the Montana electric and natural gas transmission and distribution business (the "Montana Utility Assets and Liabilities") either as a division of NorthWestern or as a wholly owned subsidiary of NorthWestern. As explained below, from the time of acquisition on February 15, 2002 until November 15, 2002, NorthWestern held those assets in a wholly owned subsidiary, Montana Power, LLC (later known as NorthWestern Energy LLC, and then Clark Fork and Blackfoot LLC). Since November 15, 2002, those assets have been and are held in a division of NorthWestern, known as NorthWestern Energy.

Among the assets and liabilities transferred to Montana Power, LLC were certain 8.45% Junior Subordinated Debentures due in 2036 (the "Junior Debentures") which had been issued by MPC in or about 1996. The interest paid on these Junior Debentures created the cash flow to make dividend payments on certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPS") which had previously been issued by Montana Power Capital I (The "Trust"). The Trust is a business trust established pursuant to the Delaware Business Trust Act. The sole assets of the Trust are the Junior Debentures. Plaintiff Magten is currently a holder of some but not all the QUIPS.

When NorthWestern acquired the unit interest in Montana Power, LLC, NorthWestern became the sole Member of Montana Power, LLC and named itself as the Manager of Montana Power, LLC pursuant to applicable provisions of Montana Limited Liability Company Act. NorthWestern, as sole Member and Manager, appointed certain individuals, including the Defendants, as "officers" of its wholly owned subsidiary, although Montana statutes do not specifically provide that a limited liability company have officers. At all times material to the Complaint, NorthWestern has been the sole Member-Manager of its subsidiary, and had the exclusive power and authority to authorize and close the transfer of the Montana Utility Assets

and Liabilities, excluding the Miltown Dam, from its subsidiary to it, the parent corporation (the "Transaction"). At all times material to the Complaint, the "officers," including the Defendants here, had no authority or discretion with respect to decisions of the Member-Manager whether to retain the Montana Utility Assets and Liabilities in the subsidiary or transfer them to the parent.

In August 2002, almost six months after the NorthWestern Acquisition, NorthWestern as the Member-Manager of the subsidiary, authorized and directed the Transaction which, was effected on November 15, 2002. The "officers" performed ministerial duties to effectuate the decision of the Member-Manager and close the Transaction, but they were without the power or authority to prevent the Transaction. The Montana Utility Assets and Liabilities transferred included the obligations associated with the Junior Debentures and QUIPS. Other assets and liabilities remained with the limited liability company, whose name was subsequently changed to Clark Fork and Blackfoot, LLC ("Clark Fork"). Pursuant to the operation of the QUIPS Trust Documents, as amended on or about August 13, 2002, upon the closing of the Transaction, Magten ceased to be a creditor of Clark Fork and became a creditor only of NorthWestern.

At all times material to the Complaint, the Defendants here, as "officers" of the subsidiary, were responsible for and were knowledgeable about the operations and financial condition of the Montana Utility. However, their knowledge of the financial condition of the parent, NorthWestern, was generally limited to that information available to the public in consolidated financial statements filed by NorthWestern with the Securities and Exchange Commission and other regulatory bodies. At all times prior to the Transaction, based on the information available to them, Defendants reasonably believe both the subsidiary and the parent were solvent.

On September 14, 2003, ten (10) months after the transfer of the Montana Utility Assets and Liabilities, NorthWestern filed a voluntary petition for reorganization in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court in Delaware.

Defendants here believe that Magten acquired its interest in the QUIPS after the November 2002 Transaction occurred, and Magten acquired all, or substantially all, of its interest in the QUIPS in the time immediately preceding and after NorthWestern filed for bankruptcy.

Magten filed an adversary proceeding against NorthWestern in the bankruptcy proceeding in which it alleges, among other things, that the Transaction was a fraudulent conveyance. Magten seeks the rescission of the Transaction and the transfer of the Montana Utility Assets and Liabilities. Since that time, Magten has filed additional actions in various courts, all of which are now venued in either the Federal District Court for Delaware, the bankruptcy court in Delaware, or, in one instance, in Delaware Chancery Court. This action is the only pending litigation related in some fashion to the Transaction which is not pending in Delaware.

**B.   Jurisdiction and Venue.**

This Court has jurisdiction pursuant to 28 U.S.C. §1331 (diversity jurisdiction) and 28 U.S.C. § 1334 (matter related to a case under Title 11).

Venue is proper both in the District of Montana and the District of Delaware.

Defendants have filed with this Court a motion to transfer venue to Delaware or, in the alternative, stay these proceedings. Defendants Supporting brief and affidavits shall be filed within the time limits set forth in L.R. 7.1(c).

//

//

C. **Factual Basis for Defendants' Claims and Defenses.**

The factual basis for Defendants' defenses is generally set forth in the summary of facts above and Defendants refer the Court to that summary.

D. **Legal Theories of Defendants' Claims and Defenses.**

Affirmative Defenses Nos. 1 (failure to state a claim); 2 (Defendants had no authority with respect to the transfer of assets and liabilities); 3 (Defendants' reasonable belief that Clark Fork and NorthWestern were solvent); 4 (Defendants did not owe a fiduciary duty to creditors of Clark Fork); 5 (Defendants did not owe a fiduciary duty to creditors of NorthWestern); and 15 (Defendants had no discretion with respect to the decision to enter into the Transaction)

The sole count in Plaintiff's Complaint is that the Defendants breached their fiduciary duty allegedly owed to Magten, as a creditor of Clark Fork, by virtue of Magten's ownership of the QUIPS. In order to make out its claim for breach of fiduciary duty, Magten must demonstrate that a fiduciary duty was owed to Magten as a creditor of Clark Fork at the time of the transfer from Clark Fork to NorthWestern. As set forth in the factual recitation above, at all times material to the Complaint, both Defendants believed that both Clark Fork and NorthWestern were solvent. Moreover, neither Mr. Hanson nor Mr. Kindt had any legal ability to stop a transaction which was within the sole discretion of the Member-Manager of Clark Fork to order and consummate. And, Magten did not acquire any interest in the QUIPS until after the Transaction was completed.

Specifically, section 35-8-107(10) provides that a limited liability company may transfer or otherwise dispose of all or any part of its property and assets. Sections 35-8-702(1) and (5) provide that title to property of the limited liability company that is held in the name of the limited liability company may be transferred only by an instrument of transfer executed by any member or manager in the name of the limited liability company. Section 35-8-307(3)(l) provides that a transfer or other disposition of all or substantially all of a limited liability

company assets requires the unanimous consent of the Members of the company. Therefore, as the sole Member and Manager of Clark Fork, NorthWestern had the exclusive power to act and direct the transfer, sale, or other distribution of the assets and liabilities of the limited liability company. Any "officers" of Clark Fork could merely carry out the directives of the sole Member and Manager, and had no individual authority or power to bind or prevent Clark Fork from transferring the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

Even if it could be argued that the "officers" do have statutory fiduciary duties, such duties would be limited to the same duties owed by the members and managers of the limited liability company: the duties of loyalty and care, as provided in Mont. Code Ann. §§ 35-8-310(1), (2) and (3). These duties are owed solely to the limited liability company and to the members of the limited liability company. Nowhere in Montana's Limited Liability Company Act do agents of the limited liability company owe a duty to general creditors, either secured or unsecured, of the limited liability company. Therefore, even if the Defendants here as "officers" of Clark Fork owed the fiduciary duties of loyalty and care, those duties were owed only to Clark Fork and its sole Member, NorthWestern. The Defendants as "officers" simply did not owe any fiduciary duty to Magten as a general unsecured creditor of Clark Fork.

Finally, because both Defendants believed that both Clark Fork and NorthWestern were solvent at the time of the transfer on November 15, 2002, almost a year before NorthWestern voluntarily filed for bankruptcy, even if that belief were erroneous, they cannot be held liable for a breach of fiduciary duty based on their good faith belief. See, Dunfee v. Baskins-Robbins, Inc., 221 Mont. 447, 453, 720 P.2d 1148, 1151-52 (1986).

Affirmative Defenses Nos. 10 (Plaintiff knowledge of NorthWestern's legal authority to authorize and direct the Transaction); 14 (Trustee, not Plaintiff's, has standing for breaches of compliance with the Indenture); 19, 20 and 21 (the QUIPS Trust Documents permitted the Transaction and released NorthWestern Energy from further obligations)

Magten premises the alleged liability of the named Defendants for a breach of fiduciary duty upon the terms of the QUIPS Trust Documents originally created in 1996 when MPC issued the Junior Debentures and the Trust issued the QUIPS. After MPC created the Trust in 1996, MPC, the Trust, and Bank of New York (the original trustee) entered into the Indenture For Unsecured Subordinate Debt Securities dates as of November 1, 1996 relating to Trust Securities (the "Indenture"). The Indenture expressly states that a transfer of assets conducted in accordance with section 1101 of the Indenture has the effect of releasing the predecessor entity of all obligations under the Indenture or any Outstanding Securities thereunder. *See* Indenture, Sec. 1101-1102. The Indenture controls the rights of Magten and Magten should not be allowed to object to acts that were performed in accordance with the terms of the Indenture. *cf.* In re Holiday Mart, Inc., 715 F.2d 430, 432 (9th Cir. 1983) (recognizing that valid subordination agreements are normally enforced in accordance with their terms). Since the Transaction complied with Section 1101 of the Indenture and released the predecessor entities under Section 1102, the Defendants did not violate any alleged duty.

The Second Supplemental Indenture and the Amendment to Guarantee Agreement, executed by the Trustee, NorthWestern and Clark Fork, expressly reserve the right of Clark Fork to transfer substantially all of its assets to NorthWestern. The Second Supplemental Indenture clearly preserves the right of Clark Fork to transfer substantially all of its assets to another entity and clarifies that this right includes the right of Clark Fort to transfer substantially all of its assets to NorthWestern. *See* Second Supplemental Indenture Section 201. The language is also clear that such a transfer to NorthWestern would relieve Clark Fork of "its obligations under the QUIPS Debenture, the Indenture and hereunder as provided in Article Eleven of the Indenture." *See* Second Supplemental Indenture, Section 201.

At the same time that the Second Supplemental Indenture was executed, the Trustee, NorthWestern, and Clark Fork also executed an Amendment to Guarantee Agreement. The Amendment to Guarantee Agreement contains language similar to the Second Supplemental Indenture; it reserves the right of Clark Fork to transfer substantially all of its assets to another entity, and clarifies that this right includes the right of Clark Fork to transfer substantially all of its assets to NorthWestern. *See* Amendment to Guarantee Agreement, section 201. The section also makes clear that such a transfer can be accomplished in compliance with the Indenture. *See* Amendment to Guarantee Agreement, section 201.

These documents, executed by the Trustee, further confirm that a transfer of the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern, in compliance with the Indenture, was permissible. The Transaction was allowed by the Indenture and confirmed in later documents executed by the Trustee; the transfers were within the rights granted to Clark Fork and NorthWestern by the Indenture and these other documents. Magten, therefore, can not now complain because NorthWestern and Clark Fork exercised their rights under documents approved by the Trustee of the QUIPS. Nor may Magten hold the "officers" of the limited liability company liable for a transfer of assets and liabilities permitted by those governing documents and approved by the Trustee. Moreover, contrary to Magten's assertion, <u>nothing</u> in the Indenture required the assuming corporation (here NorthWestern) to be solvent at the time of assuming payment and the other obligations under the Indenture. Moreover, <u>nothing</u> in Montana Law or under the federal law mandates solvency as a legal requirement before a corporation may contractually assume obligations under an indenture.

<u>Affirmative Defenses Nos. 6 (Plaintiff's comparative negligence resulting from its knowledge of the Transaction prior to acquisition of the QUIPS); 7 (Plaintiff's comparative negligence resulting from its knowledge of the financial condition of NorthWestern prior to its acquisition of the QUIPS); 8 and 9 (Plaintiff's comparative negligence resulting from its knowledge that</u>

DEFENDANTS' PRELIMINARY
PRETRIAL STATEMENT

- 8 -

1674.044/166315

NorthWestern had the authority to authorize the Transaction); 11 (Defendants' reasonable belief Clark Fork received good and valuable consideration for the Transaction); 12 (Defendants' reasonable belief the Transaction was not effectuated with the intent to harm creditors); 13 (Plaintiff's comparative negligence)

Since the sole count of breach of fiduciary sounds in tort, traditional tort defenses applicable to comparative negligence apply. Therefore, to the extent that the negligence of Magten is greater than the negligence of Defendants, Magten is entitled to take nothing. §27-1-702, MCA. To the extent that the negligence of Magten is less than the negligence of Defendants, any damages awarded to Magten must be reduced by the amount of negligence attributable to Magten. Id. Furthermore, to the extent that the negligence attributable by the trier of fact to either Defendant is determined to be less than 50% of the combined negligence of all parties, such party is only severally liable. §27-1-703 MCA.

In this case, because Magten was aware that NorthWestern had at all times material to this case reserved to itself the option of initiating the Transaction, and since Magten acquired its interest in the QUIPS either immediately before or after NorthWestern filed its voluntary petition for bankruptcy, principles of comparative negligence apply, and thus reduce or eliminate any damages that may ultimately be attributable to the Defendants here. In addition, since NorthWestern also assumed significant liabilities as well as assets in the Transaction and the Defendants had no good faith reason to believe that the Transaction would harm any creditor, principles of comparative negligence relieve the Defendants of any liability.

Affirmative Defenses Nos. 16 (venue is improper); 17 and 18 (change of venue to the District of Delaware is appropriate)

This Court has jurisdiction both pursuant to 28 U.S.C. §§ 1334 and 1409. As a result, the United States District Court for the District of Delaware, the venue of the NorthWestern Bankruptcy Court, has concurrent jurisdiction over these proceedings and, for the reasons set forth in the Defendants' Motion to Transfer Venue or, in the alternative, Stay Proceedings, and

accompanying brief, venue should be transferred to the United States District Court for the District of Delaware. See also, 28 U.S.C. § 1404. In the alternative, since NorthWestern, as the sole Member-Manager of Clark Fork, had the exclusive right to authorize the Transaction, the decisions presumably were made by NorthWestern outside the jurisdiction of Montana and venue in Montana is not appropriate. 28 U.S.C. § 1391.

**E.   Computation of Damages.**

It is the Defendants' position that no damages are owed to Plaintiff.

**F.   Report on Early Neutral Evaluation.**

As disclosed in the Written Report Regarding Stipulated Discovery Plan submitted to this Court by the Plaintiffs on or about May 3, 2005, the Parties have met, conferred and considered whether Early Neutral Evaluation would be appropriate for this matter. The Parties agree that Early Neutral Evaluation would not be of assistance in this case.

**G.   Related State or Federal Litigation.**

Simultaneously with this Preliminary Pretrial Statement, Defendants have filed a Motion to Transfer Venue Defendants' supporting brief and affidavits shall be filed within the time limits set forth in L.R. 7.1(c). In the supporting brief, Defendants detail nine (9) related matters pending either in state or federal court in Delaware. Each of those cases are part of Plaintiff's over-all litigation campaign against NorthWestern, its management and advisors. A list of the related state and federal litigation is attached hereto as Exhibit 1 and is described in greater detail in Defendant's Motion to Transfer and supporting briefs and affidavits.

**H.   Proposed Stipulations of Fact and Law.**

Defendants believe the following stipulations of law and fact may be agreed upon by the Parties:

1.   This Court has subject matter jurisdiction over this matter under diversity and related to bankruptcy jurisdiction, 28 U.S.C. §§ 1331 and 1334.

2.   Venue is proper in both Delaware and Montana Federal District Courts.

3. NorthWestern Corporation acquired Montana Power, LLC on February 15, 2002 ("NorthWestern Acquisition").

4. Immediately prior to the NorthWestern Acquisition, The Montana Power Company and Touch America Holdings transferred certain Montana utility assets and liabilities to Montana Power, LLC.

5. Both before and after the NorthWestern Acquisition, it was public knowledge that NOR and held the Montana Utility as either a division or subsidiary.

6. Liability for debentures and QUIPS were transferred to and therefore became the liabilities of Montana Power, LLC at the time of the NorthWestern Acquisition.

7. On or about March 19, 2002, Montana Power, LLC was re-named NorthWestern Energy, LLC.

8. On or about August 7, 2002, NorthWestern, as the Member-Manager of NorthWestern Energy, LLC authorized the Transaction and directed the officers of the subsidiary to effectuate the Transaction.

9. The Transaction closed on or about November 15, 2002.

10. From February 15, 2002 to November 15, 2002 NorthWestern held Montana Utility as subsidiary.

11. Since November 15, 2002 NorthWestern held Montana Utility as Division.

12. Liability for the QUIPS was validly transferred and conveyed from NorthWestern Energy, LLC to NorthWestern Corporation as part of the Transaction.

13. On or about November 20, 2002, NorthWestern Energy, LLC was re-named Clark Fork and Blackfoot, LLC.

14. On or about September 14, 2003, NorthWestern Corporation filed a voluntary petition for reorganization in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court in the District of Delaware.

**I.  Proposed Deadlines for Joiner of Parties and Amendment of Pleadings.**

As set forth in the Written Report Regarding Stipulated Discovery Plan submitted to this Court by the Plaintiffs on or about May 3, 2005, the Parties have met, conferred and considered proposed deadlines for the joinder of parties and amendment of the pleadings. The Parties have jointly proposed the Court fix July 29, 2005 as the deadline for each the joinder of parties and the amendment of the pleadings.

**J.  Controlling Issues of Law for Pretrial Disposition.**

1.  Defendants' Motion to Transfer Venue or in the Alternative, to Stay Proceedings.

2.  Defendants lacked the legal authority to make decisions concerning the Transaction because pursuant to applicable provisions of the Montana Limited Liability Company Act, and the Articles of Organization and Operating Agreement of Clark Fork, only the Member-Manager had the legal authority to order the Transaction.

**K.  Individuals Believed to Have Information.**

Defendants believe the following individuals have information that may be used in proving or denying any Party's claims or defenses:

Michael J. Hanson: Mr. Hanson may be contacted only through the undersigned counsel at the address and telephone number listed below. Generally, Mr. Hanson possesses knowledge of the operations of the Montana utility division, the financial condition of the Montana utility, and the financial condition of NorthWestern as disclosed in various public filings with the Securities and Exchange Commission and other regulatory agencies. Mr. Hanson also has knowledge of the directions by NorthWestern as the Member-Manager of the subsidiary to effectuate and close the Transaction, and of the actions taken by Mr. Hanson to close such Transaction.

Ernie J. Kindt: Mr. Kindt may be contacted only through the undersigned counsel at the address and telephone number listed below. Generally, Mr. Kindt possesses knowledge of the operations of the Montana utility division, the financial condition of the Montana utility, and the financial condition of NorthWestern as disclosed in various public filings with the Securities

and Exchange Commission and other regulatory agencies. Mr. Kindt also has knowledge of the directions by NorthWestern as the Member-Manager of the subsidiary to effectuate and close the Transaction, and of the actions taken by Mr. Kindt to close such Transaction.

<u>Talton Embry</u>: Mr. Embry may presumably be contacted by and through counsel of record for Magten. It is believed that Mr. Embry possesses knowledge of the business dealings of Magten, of the facts and circumstances relied upon by Magten in its decisions to acquire the QUIPS, and other facts and circumstances relevant to the claims at issue in this litigation.

<u>Consultants and advisors to Magten and Talton Embry</u>: It is believed that the consultants and advisors to Magten and Talton Emby will possess knowledge of the facts, circumstances, and advice given to Magten concerning the acquisition of the QUIPS.

<u>Representative(s) of the Bank of New York</u>: It is believed representatives of the Bank of New York as the original Trustee for the Trust, will possess knowledge of the Trust documents and the relevant consents and terms of the Transaction specifically and of the assignment and conveyance of the QUIPS generally from the Montana Power Company, ultimately to NorthWestern.

<u>Representative(s) of Law Debenture Trust Company of New York</u>: It is believed representatives of Law Debenture Trust Company of New York as the successor Trustee for the Trust, will possess knowledge of the Trust documents and the relevant consents and terms of the Transaction specifically and of the assignment and conveyance of the QUIPS generally from the Montana Power Company, ultimately to NorthWestern.

Defendants shall supplement this list as discovery progresses should additional individuals having knowledge be discovered.

**L.     Description of Documents.**

As set forth in the Written Report Regarding Stipulated Discovery Plan submitted to this Court by the Plaintiffs on or about May 3, 2005, the Parties have met, conferred and considered Fed. R. Civ. P. 26(a)(1) and have agreed by stipulation to waive the initial disclosure

otherwise required by Rule 26(a)(1)(B) to provide "a copy of or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses."

### M.  Insurance Agreements.

Defendants are each indemnified for this litigation by both Clark Fork and Blackfoot, LLC and NorthWestern Corporation. See, ¶ 4-5, Aff. of Thomas J. Knapp, submitted in support of Motion to Transfer Venue. Any proceeds available for the indemnification of the Defendants, depending upon the applicable directors and offices liability insurance policy, must come from either the assets of NorthWestern Corporation, or from the D & O Trust established under the Second Amended and Restated Plan of Reorganization, confirmed by Order of the Bankruptcy Court, which Order has been appealed by the Plaintiff here to the District of Delaware. Id., ¶ 6. Copies of the applicable insurance policies shall be provided to Plaintiff.

### N.  Prospects for Compromise and Feasibility of Settlement.

At this time, Defendants do not believe there are any prospects for compromise or that settlement is feasible. As disclosed in a letter to this Court by counsel for Plaintiff, dated January 28, 2005, NorthWestern Corporation and the Plaintiff had reached a tentative settlement which would have resulted in a global resolution of all claims in this litigation and all related litigation; however, that settlement did not receive the required consents in the NorthWestern bankruptcy proceedings and was therefore terminated. See, Defendants' Status Report, dated March 25, 2005. Plaintiff has appealed the termination of the global settlement to the Federal Court for the District of Delaware. Most recently, on May 12, 2005, NorthWestern and Plaintiff attended a mediation required by the District of Delaware. That mediation was unsuccessful. As a result, for the same reasons the Parties believe Early Neutral Evaluation will not be helpful in this case, given the Plaintiff's far reaching litigation strategy related to the transaction that comprise the subject of this lawsuit, neither to the Defendants believe there are any prospects for settlement of this matter at this time.

O.   **Special Procedures.**

At this time, Defendants do not believe any special procedures will be necessary.

DATED this 17ᵀᴴ day of May, 2005.

                          BROWNING, KALECZYC, BERRY & HOVEN, P.C.

                          By _____
                               Stanley T. Kaleczyc
                               Kimberly A. Beatty
                               Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of May, 2005, a true and correct copy of the foregoing was mailed by first-class mail, postage prepaid, addressed to:

James H. Goetz
J. Devlan Geddes
Goetz, Gallik & Baldwin, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580

Bonnie Steingart
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobsen, LLP
One New York Plaza
New York, NY 10004

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

# EXHIBIT 1

1. On January 13, 2004, Magten filed a Proof of Claim No. 842 in the NorthWestern Bankruptcy ("Magten's Proof of Claim"). See, Def's. Motion to Transfer, Beatty Decl. Exh. A.

2. On April 16, 2004, Magten filed an adversary proceeding in the NorthWestern Bankruptcy against NorthWestern, styled *Magten Asset Management Corporation & Law Debenture Trust Company of New York v. NorthWestern Corporation*, Adv. No. 04-53324, in which Magten and Law Debenture filed a *Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (f/k/a/ NorthWestern Energy LLC) to NorthWestern Corporation* ("Complaint to Avoid Transfer of Assets"). See, Def's. Motion to Transfer, Beatty Decl., Exh. B.

3. On April 19. 2004, Magten filed this action in Montana Federal District Court against Messrs. Hanson and Kindt, who were "officers" of CFB at the time the "going flat" transaction was completed ("CFB Litigation"). See, Def's. Motion to Transfer, Beatty Decl. Exh. W.

4. On May 20, 2004, Magten filed a lawsuit against the law firm Paul Hastings Janofsky & Walker, LLP ("PHJW"), counsel to NorthWestern and CFB ("PHJW Litigation"). This case was originally filed in the Montana Second Judicial District Court, Silver Bow County, (Cause No. DV-04-131), but was removed to the Montana Federal District Court (Cause No. CV-04-49-SEH). On September 8, 2004, the Hon. Sam Haddon found that given the similarities in the various Magten litigation, "the interests of justice and of convenience and fairness are best served by transfer of this case" and ordered the case transferred to the Delaware Federal District Court, where it is currently pending as Civil Action No. 04-1256. See, Def's. Motion to Transfer, Beatty Decl. Exhs. R and S.

5. On August 20, 2004, NorthWestern initiated an adversary proceeding in the NorthWestern Bankruptcy against Magten, styled *NorthWestern Corporation v. Magten Asset Management Corporation and Talton R. Embry*, Adv. No. 04-55051, in which NorthWestern filed a *Complaint* relating to the defendants' breach of fiduciary duties, misappropriation and use of material, non-public, information and improper trading activities in purchasing approximately 40% of the Debtors Series A 8.45% Quarterly Income Preferred Securities while the defendants were members of NorthWestern's Unsecured Creditors Committee ("Complaint for Magten's Breach of Fiduciary Duties"). See, Def's. Motion to Transfer, Beatty Decl. Exh. D.

6. On October 25, 2004, Magten appealed the Bankruptcy Court *Order Confirming Debtor's Second Amended and Restated Plan of Reorganzation Under Chapter 11 of the Bankruptcy Code [appeal of Docket No. 2237 in Bankruptcy Case No. 03-12872]* to the United States District Court for the District of Delaware, Civil Action No. 04-1389 KAJ ("Appeal of Confirmation Order"). See, Def's. Motion to Transfer, Beatty Decl. Exh. F.

7. On October 26, 2004, Magten appealed the Bankruptcy Court *Order Approving the Memorandum of Understanding [appeal of Docket No. 2230 in Bankruptcy Case No. 03-12872]* to the United States District Court for the District of Delaware, Civil Action No. 04-1508 ("Appeal of MOU"). See, Def's. Motion to Transfer, Beatty Decl. Exh. I.

8. On March 17, 2005, Magten appealed the Bankruptcy Court *Order Denying Joint Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New York for Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Between NorthWestern Corporation, Magten Asset Management Corporation, and Law Debenture Trust Company of New York [appeal of Docket Nos. 2910 and 2911 in Bankruptcy Case No. 03-12872]* to the United States District Court for the District of Delaware,

AP-05-21 ("Appeal of Termination of Settlement Agreement"). <u>See</u>, Def's. Motion to Transfer, Beatty Decl. Exh. P.

9.  On March 31, 2005, Magten filed a lawsuit against the Bank of New York and Jerrold P. Pederson in their capacities as the Trustees of the Montana Power Capital I Trust, in the Court of Chancery of the State of Delaware ("Trustee Litigation"). <u>See</u>, Def's. Motion to Transfer, Beatty Decl. Exh. V.

10. On April 15, 2005, Magten initiated an adversary proceeding in the NorthWestern Bankruptcy, styled *Magten Asset Management Corporation & Law Debenture Trust Company of New York v. NorthWestern Corporation, Gary G. Drook, Michael J. Hanson, Brian B. Bird, Thomas J. Knapp and Roger P. Schrum,* in which Magten and Law Debenture filed a *Complaint to Revoke Order of Confirmation Pursuant to Section 1144 of the Bankruptcy Code and Rule 7001(5) of the Federal Rules of Bankruptcy Procedure and for Breach of Fiduciary Duty* ("Complaint to Revoke Confirmation Order"), <u>See</u>, Def's. Motion to Transfer, Beatty Decl. Exh. Q.