

Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59604-1697
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | Case No. CV-04-26-BU-RFC |
| Plaintiff, | |
| v. | MEMORANDUM OF DEFENDANTS IN SUPPORT OF MOTION TO TRANSFER OR, IN THE ALTERNATIVE, STAY ACTION |
| MIKE J. HANSON and ERNIE J. KINDT | |
| Defendants. | |

INTRODUCTION

This case is but one part of far-reaching litigation strategy of Plaintiff Magten Asset Management Corporation ("Magten") whose purpose is to require NorthWestern Corporation ("NorthWestern") to disgorge as much money as Magten can possibly obtain in satisfaction of its claims which are properly the subject of bankruptcy proceedings in Delaware.

As the Court is aware, this case (the "CFB Litigation") was brought against two individuals who served as officers of Clark Fork and Blackfoot, LLC ("CFB"), a wholly owned subsidiary of NorthWestern, as a result of the decision of NorthWestern, CFB's sole Member and Manager, to transfer a majority of the assets and liabilities of CFB related to the Montana electric and natural gas transmission and distribution business from CFB to NorthWestern (the

"Transaction"). These assets and liabilities included debt owed under the QUIPS and related debentures now owned by Magten and which form the subject matter of this litigation. The Transaction was effected on or about November 15, 2002. Almost one year later, on September 14, 2003, NorthWestern filed a voluntary Chapter 11 reorganization in the United States Bankruptcy Court for the District of Delaware ("NorthWestern Bankruptcy").

What this Court may not know is that over the last twelve months Magten and NorthWestern have been locked in litigation in and out of the bankruptcy court. There are seven proceedings currently pending either in the United States Bankruptcy Court for the District of Delaware or the United States District Court for the District of Delaware directly between Magten and NorthWestern. In addition, Magten has also sued the legal advisors to CFB and NorthWestern concerning advice they gave related to the Transaction. Most recently, Magten has sued the Bank of New York which served as the original Trustee for the Montana Power Capital 1 Trust ("Trust"), which issued the QUIPS, for alleged breaches of fiduciary duty in connection with the Transaction. These latter two proceedings are pending in Delaware Federal District Court and Chancery Court, respectively. All the proceedings involving NorthWestern, its subsidiaries and officers, except this most recently filed case, are pending either in the NorthWestern bankruptcy court in Delaware or the federal district court in Delaware. The total of nine pending referenced proceedings, plus the CFB Litigation, are collectively referred to herein as the "Magten Litigation" and are discussed and defined more completely in Exhibit A, attached hereto.

As demonstrated herein the CFB Litigation is related to the NorthWestern Bankruptcy and related to the other nine pending proceedings in the District of Delaware or the Bankruptcy Court for the District of Delaware. The Federal Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and, change of venue to the District of Delaware is appropriate pursuant to 28 U.S.C. § 1404 and 1409.

In the alternative, discovery in this case should be stayed and/or coordinated with the other cases so that discovery in each of the Magten Litigation cases may proceed at one time,

1  thereby minimizing duplication of discovery efforts and a waste of judicial resources, and

2  maximizing judicial economy and efficiency.   As will be shown, discovery in all of the other

3  proceedings is stayed pending the resolution of the appeals Magten has filed from various orders

4  in NorthWestern's bankruptcy case. As a result, discovery in this case should be stayed pending

5  such coordination.

6                          THE PENDING MAGTEN LITIGATION

7          A discussion of the Magten Litigation and a comparison with the claims asserted in the

8  CFB Litigation will demonstrate that a transfer of the CFB Litigation to the District of Delaware

9  is warranted.

10  1.    Magten's Proof of Claim.

11         The January 13, 2004 Magten Proof of Claim asserts unliquidated, unsecured, nonpriority

12  claims against NorthWestern's bankruptcy estate for (i) damages resulting from the Transaction

13  which it alleges constitutes a fraudulent transfer of assets, and (ii) the face amount of the QUIPS

14  held by Magten.  See, Declaration of Kimberly A. Beatty ("Beatty Decl."), ¶ 7 & Exh. A.

15  2.    Complaint to Avoid Transfer of Assets.

16         On April 16, 2004, Magten filed its Complaint to Avoid Transfer of Assets as an

17  adversary proceeding within NorthWestern's Bankruptcy. Beatty Decl. ¶ 8 & Exh. B.  The

18  Complaint to Avoid Transfer of Assets is substantially similar to the complaint against the CFB

19  officers filed with this Court, in that the Transaction forms the factual basis for each complaint.

20  Compare, Beatty Decl. ¶ 8 & Exh. B, with Beatty Decl. ¶ 29 & Exh. W.  However, in the

21  Complaint to Avoid Transfer of Assets, unlike the CFB Litigation, Magten actually seeks, in

22  part, to avoid and reverse the Transaction. Beatty Decl. ¶ 8, Exh. B  p. 12-13.

23         In that adversary proceeding Magten alleges that pursuant to Montana law the

24  Transaction was a fraudulent conveyance of assets from CFB to NorthWestern in which

25  NorthWestern was unjustly enriched (because it alleges the value of the assets transferred to

26  NorthWestern exceeded the value of liabilities assumed by NorthWestern) and CFB was

27  rendered insolvent, unable to meet its obligations to its creditors. Id., at ¶¶ 58-61, 64-66, 75-78.

1  Further, Magten asserts the Trust Indenture documents do not provide for a release of CFB's

2  obligations upon the consummation of the Transaction. Id., at ¶ 48-52.

3      As summarized by the Bankruptcy Court in the order issued on August 20, 2004,

4  Magten's allegations boil down to complaints that, as a result of the Transaction, Magten has

5  been relegated to the bottom of the heap of NorthWestern's creditors due to its priority status,

6  while it had been at the top of the heap of CFB's creditors prior to the Transaction. Beatty Decl.,

7  ¶ 9 & Exh. C, p. 4.

8      In response to the Complaint to Avoid Transfer of Assets, NorthWestern filed a motion to

9  dismiss. In its August 20, 2004 Order on the motion to dismiss the referenced complaint, the

10  Bankruptcy Court held Magten "lacks standing as creditors of Clark Fork to pursue a fraudulent

11  conveyance action against the Debtor [NorthWestern] because of the Section 1102 release

12  [contained in the Trust Indenture], unless they can prove under applicable law that the Section

13  1102 release was obtained through actual fraud or as part of a fraudulent scheme." Id., at p. 11.

14  3.    Complaint for Magten's Breach of Fiduciary Duties.

15      On August 20, 2004, NorthWestern initiated its own adversary proceeding against

16  Magten, stemming from actions Magten allegedly took while it sat as a member of the

17  Unsecured Creditors' Committee in the NorthWestern Bankruptcy. Beatty Decl., ¶ 10 & Exh. D.

18  On March 9, 2005, pursuant to a motion by NorthWestern, this adversary proceeding was

19  voluntarily dismissed. Beatty Decl. ¶ 11 & Exh. E.

20  4.    Appeal of Confirmation Order.

21      On October 25, 2004, Magten appealed the ruling of the Bankruptcy Court confirming

22  NorthWestern's Second Amended and Restated Plan of Reorganization ("Plan"). Beatty Decl. ¶

23  12 & Exh. F. Specifically, the relevant issues presented by Magten on appeal are whether the

24  Bankruptcy Court erred:

25      (1) in determining the assets conveyed in the Transaction are not held in
         constructive trust for the creditors of CFB;
26

27      (2) in finding the right to recover on account of any alleged fraudulent
         conveyance is a "claim" under section 101(5) of the Bankruptcy Code; and

MEMORANDUM IN SUPPORT OF MOTION TO          - 4 -                                164135.2/1674.044
TRANSFER OR, IN THE ALTERNATIVE, STAY ACTION

(4) in requiring holders of the QUIPS to forego their right to pursue the fraudulent conveyance litigation in order to receive recovery for principle and interest on the QUIPS under the Plan.

Beatty Decl., ¶ 13 & Exh. G, p. 17-18.

On December 10, 2004, the Delaware Federal District Court referred the Appeal of Confirmation Order to the Appellate Mediation Panel in accordance with Standing Order of the Court dated July 23, 2004. Beatty Decl. ¶ 14 & Exh. H. Briefing was deferred. A mediation was held on May 12, 2005, but was unsuccessful. Id.

5.    Appeal of MOU.

On April 28, 2004, NorthWestern filed a motion with the Bankruptcy Court seeking approval of a settlement agreement and memorandum of understanding ("MOU") it entered into in order to settle and dismiss all claims against it in the consolidated securities class action case *In re NorthWestern Corporation Securities Litigation*, Case No. CIV-03-4049, and the consolidated derivative action *In re NorthWestern Corporation Derivative Litigation*, Case No. CIV-03-4091, (collectively referred to as the "Securities Litigation").[1] Beatty Decl. ¶ 15 & Exh. I.

Magten objected to the MOU, claiming that settlement payments made from the D&O policies at issue are distributions of estate property, and therefore, if any class of creditors does not accept the Plan, the Plan will violate the absolute priority rule by making distributions to junior stakeholders while paying less than 100% of the claims to more senior creditors. Beatty Decl. ¶ 16 & Exh. J. The Court, following briefing and a hearing, found Magten's arguments to be "fundamentally flaw[ed]." Beatty Decl. ¶17, Exh. K, Memorandum Decision, p. 5. Magten subsequently filed the Appeal of the MOU on October 26, 2004. Beatty Decl., ¶ 18 & Exh. L.

On December 9, 2004, the Delaware Federal District Court referred the Appeal of Confirmation Order to the Appellate Mediation Panel. Beatty Decl. ¶ 19 & Exh. M. Briefing

---

[1] The plaintiffs in the Securities Litigation alleged a variety of violations of the Securities Act of 1933 and the Securities Exchange Act of 1934 and ultimately filed a Proof of Claim in the NorthWestern Bankruptcy seeking $575,000,000. The District Court of South Dakota has finally approved the settlement of the Securities Litigation and has indicated it will finally approve the Derivative Litigation.

1    was deferred. A mediation was held on May 12, 2005 but was unsuccessful. Id. It should be

2    further noted that on December 30, 2004, pursuant to the joint request of NorthWestern and

3    Magten, the Delaware Federal District Court consolidated the Appeal of MOU with the Appeal

4    of Confirmation Order under Civil Action No. 04-1389 (the Appeal of Confirmation Order cause

5    number). Beatty Decl. ¶ 20 & Exh. N.

6    6.    Appeal of Termination of Settlement Agreement.

7        On January 27, 2005 , NorthWestern and Magten, along with Law Debenture, reached a

8    tentative global settlement pending bankruptcy court approval of all of the pending Magten

9    Litigation ("Magten Settlement"). However, after reaching the Magten Settlement,

10   NorthWestern's Plan Committee and several other creditors objected to the settlement terms. As

11   a result, on February 16, 2005, NorthWestern advised Magten that it could not honor or comply

12   with the terms of the Magten Settlement Agreement because it would be unable to obtain the

13   requisite consents.

14       Following briefs and a hearing on Magten's and Law Debenture's[2] motion to enforce the

15   settlement, the Bankruptcy Court declined to approve the Magten Settlement. Beatty Decl. ¶ 21

16   & Exh. O. Specifically, the Bankruptcy Court held "I further determine that Magten's argument

17   that the agreement is binding on the parties without court approval is without merit. Indeed, the

18   settlement documents plainly state that the agreement was subject to Bankruptcy Court

19   approval." Id., at p.2. The Court further noted: "I conclude that the Debtor [NorthWestern] and

20   Magten et al. entered into the Settlement Agreement in good faith, knowing nevertheless that the

21   Plan provisions required the consent of the Class 7 and Class 9 creditors, and certainly both later

22   realized the Plan, at this late date, cannot be amended to accommodate the settlement terms." Id.

23   at p. 6.

24       On March 17, 2005, Magten and Law Debenture filed the Appeal of the Termination of

25   the Settlement Agreement. Beatty Decl. ¶ 22 & Exh. P. A Civil Action Number has not yet

26   _____

27   [2] Law DebentureTrust Company of New York is the current trustee for the Montana Power Capital I Trust, having
     succeeded the original Trustee, the Bank of New York. While Law Debenture has joined Magten in most of the
     other Magten Litigation, Law Debenture is not a Plaintiff in this CFB Litigation.

1  been assigned, but pursuant to the Standing Order of the Court, it has been referred to the

2  Appellate Mediation Panel. A mediation was held on May 12, 2005, but was unsuccessful.

3  7.     Complaint to Revoke Confirmation Order.

4        On April 15, 2005, Magten filed its most recent complaint in its litigation campaign

5  against NorthWestern and its management. Beatty Decl. ¶ 23 & Exh. Q. Magten's Complaint to

6  Revoke Confirmation Order is an adversary proceeding within NorthWestern's Bankruptcy in

7  which Magten and Law Debenture argue NorthWestern neglected to place a sufficient amount of

8  new NorthWestern common stock into a disputed claims reserve to provide the holders of

9  disputed claims with full recovery for their claims should such claims ultimately be deemed

10  "allowed claims" by the Bankruptcy Court. Id., at p. 2-3, ¶¶ 2, 5. Magten and Law Debenture

11  assert NorthWestern only funded the disputed claims reserve with enough new NorthWestern

12  common stock to satisfy 50% of the disputed claims, and therefore violated the terms of its Plan.

13  Id., at p. 13, ¶ 47. Magten and Law Debenture further allege the specifically named defendants,

14  including Michael Hanson, breached fiduciary duties of loyalty, good faith and candor they owed

15  to NorthWestern's creditor constituency. Id., at p. 16, ¶¶ 62-65.

16        Magten alleges it is one of "NorthWestern's creditor constituency" because, as a result of

17  the Transaction, the QUIPS were transferred to NorthWestern and holders of the QUIPS ceased

18  to be creditors of CFB and became creditors of NorthWestern. Therefore, Magten, along with

19  Law Debenture, is now complaining that the disputed claims reserve does not contain an

20  adequate amount of new NorthWestern common stock to pay the QUIPS their full claim

21  recovery in the event this disputed claim, as evidenced by Magten's Proof of Claim and

22  Complaint to Avoid Transfer of Assets, becomes a fully allowed claim.

23        As it's a remedy, in addition to monetary damages from all defendants, Magten and Law

24  Debenture request the Bankruptcy Court take the extraordinary act of revoking its order

25  confirming NorthWestern's Plan. Id., at p. 17.

26

27

1    8.    PHJW Litigation.

2          On May 20, 2004, Magten filed a lawsuit in Montana State Court against counsel to

3    NorthWestern and CFB, alleging PHJW committed legal malpractice and otherwise is liable to

4    Magten for its role in advising NorthWestern and CFB with respect to the Transaction. Beatty

5    Decl, ¶ 24 & Exh. R.

6          Specifically, Magten relies upon the same events as set forth in its Proof of Claim,

7    Complaint to Avoid the Transfer of Assets, Appeal of Confirmation Order, and the CFB

8    Litigation, to form the basis of its complaint against PHJW. Compare, Beatty Decl. ¶ 7 & Exh.

9    A; Beatty Decl. ¶ 8 & Exh. B; Beatty Decl. ¶ 12 & Exh. F; Beatty Decl. ¶ 29 & Exh. W. In its

10   first cause of action Magten alleges PHJW "aided and abetted the Clark Fork officers and

11   directors breach of their fiduciary duties to the Trust and Magten's predecessors in interest,

12   causing financial loss, in an amount to be proven at trial." Beatty Decl. ¶ 24 & Exh. R, p. 14, ¶

13   66. In the second cause of action, Magten alleges PHJW "substantially assisted the directors and

14   officers of Clark Fork by structuring and effectively orchestrating the entire Asset Transfer." Id.,

15   at p. 16, ¶ 81. In the third cause of action, Magten alleges PHJW "assisted NorthWestern and

16   Clark Fork" in transferring the assets out of Clark Fork in violation of the Montana Uniform

17   Fraudulent Transfers Act (a) in order to hinder, delay or defraud the creditors of Clark Fork, (b)

18   without receiving a reasonably equivalent value in exchange, rendering Clark Fork insolvent, and

19   (c) without receiving a reasonably equivalent value in exchange, forcing Clark Fork to engage in

20   a business or transaction for which the remaining assets of Clark Fork were unreasonably small.

21   Id., at p. 17-18, ¶¶ 84-86, 90. In the fourth cause of action, Magten alleges PHJW engaged in

22   malpractice as a result of its advice and its failure to disclose a conflict of interest. Id., at p. 18-

23   19, ¶¶ 95-97.

24         The PHJW Litigation was subsequently removed to the Montana Federal District Court,

25   and then ultimately transferred to the Delaware Federal District Court, in part as a result of

26   various other pieces of the pending Magten Litigation, and the similarity of issues, witnesses and

27   documents involved in such aspects of the Magten Litigation. Beatty Decl. ¶ 25 & Exh. S.

1    It should be noted, too, that on November 17, 2004, apparently recognizing its adversary

2  proceeding complaints were substantially related to the PHJW Litigation, Magten filed a Motion

3  to withdraw the reference to the Bankruptcy Court of the Complaint to Avoid Transfer of Assets

4  and the Complaint for Magten's Breach of Fiduciary Duties, and sought consolidation of these

5  complaints with the PHJW Litigation pending in the Delaware Federal District Court.  Beatty

6  Decl. ¶ 26 & Exh. T.  In their Memorandum in support of the Motion to withdraw reference,

7  Magten admits:

8         In transferring venue to the Delaware District Court, the Montana Federal
       Court has specifically determined that the issues raised in the Adversary
9      Proceeding and the Paul Hastings Proceeding are intricately intertwined. …
       Likewise, both Magten and Paul Hastings have recognized that having one trial
10     on the issues at this time would "conserve judicial resources and avoid the
       possibility of conflicting rulings." [citations omitted]  Since the Paul Hastings
11     proceeding will be heard by a jury, it cannot be referred to the Bankruptcy Court
       for trial.  [footnotes omitted]  Accordingly, Plaintiffs now move this Court to
12     withdraw the reference to the Bankruptcy Court and consolidate the Adversary
       Proceeding and the Paul Hastings Proceeding in the Delaware District Court … .
13

14
        Because the core allegations in the Adversary Proceeding and the Paul
15     Hastings Proceeding are the same, much of the discovery sought in each will be
       duplicative of the other proceeding.  Withdrawing the reference and consolidating
16     the proceedings, therefore, serves not only the interests of judicial economy, but
       also conserves the resources of Plaintiffs, NorthWestern and Paul Hastings. …
17     Granting the Motion will serve to avoid the confusion that may arise from having
18     trials on identical issues tried before different judges."

19  Id., at p. 2-3.  In a December 7, 2004 Order from the Bankruptcy Court, the Hon. John L.

20  Peterson presiding, the Court held that as a matter of law, it could not rule on Magten's Motion

21  to withdraw the reference and consolidate cases because Magten's Appeal of the Confirmation

22  Order, which was sufficiently broad to include some of the issues pending in the adversary

23  proceedings, divested the Bankruptcy Court of jurisdiction pending the outcome of the appeal.

24  Beatty Decl. ¶ 27 & Exh. U, p. 3-4.  The Court therefore stayed the Complaint to Avoid the

25  Transfer of Assets pending resolution of the Appeal of the Confirmation Order.  Id., at p. 4.

26

27

1    9.    Trustee Litigation.

2    On March 31 of this year, Magten initiated yet another lawsuit relating to the QUIPS, the

3    Trust Indenture and the Transaction. Beatty Decl. ¶ 28 & Exh. V. This time, Magten sued in

4    Delaware Chancery Court, naming the Bank of New York and Jerold Pederson in their capacities

5    as predecessor Trustees to the Montana Power Capital I Trust (the "Trust"), which Trust issued

6    the QUIPS. Id. In this lawsuit, Magten alleges that the predecessor Trustees acted in bad faith

7    and/or negligently thus breaching their fiduciary duties to the Trust beneficiaries, including

8    Magten, breached the Trust Agreement, the Indenture, and the Guaranty Agreement, and violated

9    the Trust Indenture Act. Id., at p. 10-12. Magten alleges the Trustees "acquiesced to the

10    repeated transfer and encumbrance of assets [including the Transaction] then available for

11    satisfaction of the junior debenture obligations in favor of other interests, including their own,

12    that were in conflict with those of the Trust." Id., at p. 1, ¶ 1.

13    10.    CFB Litigation.

14    As this Court is aware, Magten initiated the CFB Litigation against Defendants Hanson

15    and Kindt in their capacities as officers of CFB, alleging in such capacity they "enabled" the

16    Transaction. Beatty Decl. ¶ 29 & Exh. W. After repeating the same factual background it

17    asserted in Magten's Proof of Claim, the Complaint to Avoid Transfer of Assets, the Appeal of

18    the Confirmation Order, the PHJW Litigation, and the Trustees Litigation, Magten has alleged in

19    the CFB Litigation that Defendants breached a fiduciary duty owed to Magten as a creditor of

20    CFB "not to engage in any transaction that would make Clark Fork insolvent and thus unable to

21    perform its obligations with respect to the Junior Debentures and QUIPS." Id., at p. 8, ¶ 47.

22    Magten alleges Defendants breach this fiduciary duty by (1) "willfully and wantonly carrying out

23    the Transaction and transferring the Montana Utility Assets to NorthWestern without adequate

24    consideration, thereby rendering Clark Fork insolvent" and (2) "purporting to assign Clark

25    Fork's obligations with respect to the Junior Debenture and QUIPS to NorthWestern, when they

26    knew NorthWestern was insolvent and would remain insolvent, and would thus be unable to

27    perform those obligations." Id., at p. 8-9, ¶¶ 50-51.

1    The Transaction, the Trust Indenture documents, and the facts and circumstances

2    surrounding each, are the centerpiece of the CFB Litigation. Such events, transactions, facts and

3    circumstances also comprise the core allegations of Magten's Proof of Claim, the Complaint to

4    Avoid Transfer of Assets, the Appeal of the Confirmation Order, the PHJW Litigation, and the

5    Trustees Litigation. As a result, the same or substantially similar documents, facts, and

6    witnesses will be called upon to prove, or disprove, the allegations in each of the cases making

7    up the Magten Litigation. If these cases are left in separate courts, on separate and distinct

8    discovery and trial tracts, not only will judicial resources be wasted by duplicative, repetitive and

9    expensive discovery, but there is the real possibility of confusion by disparate and potentially

10   conflicting court results and even by double recoveries if Magten is successful in more than one

11   proceeding. These points were properly acknowledged and conceded by Magten in its Motion to

12   Withdraw the Reference to the Bankruptcy Court of the Complaint to Avoid Transfer of Assets

13   and Consolidate such action with the PHJW Litigation, discussed in section 8 above.[3] Thus, the

14   CFB Litigation should be transferred to the United States District Court of the District of

15   Delaware as a related case to the cases pending before Judge Farnham.

16   I.    This Court Has Jurisdiction over this Case as a Matter Related to a Bankruptcy Case
           Pursuant to 28 U.S.C. §1334 and Venue Should Be Transferred to the United States
17         District Court for Delaware Pursuant to 28 U.S.C. §§1334 and 1404.

18         A.    This Court Has Jurisdiction over this Matter Pursuant to 28 U.S.C. §1334(b).

19         Section 1334(b) of Title 18 provides, in pertinent part, that "the district courts shall have

20   original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in

21   or related to cases under title 11." The standard "related to" has been liberally construed in the

22   Ninth Circuit to include cases where "*the outcome of the proceeding could conceivably have any*

23

24   _____

25   [3] Finally, based on the allegations set forth in the PHJW Litigation concerning the "aiding, abetting, and assistance"
     PHJW allegedly gave to the officers of CFB and to CFB itself, if nothing else, the CFB Litigation is substantially
     related to the PHJW Litigation so that transfer to the District Court hearing the PHJW Litigation is appropriate. For
26   the same reasons the PHJW Litigation was transferred to the Delaware Federal District Court in the first place,
     namely, it is integrally related to the Complaint to Avoid Transfer of Assets and other various pieces of the Magten
27   Litigation campaign, the CFB Litigation is integrally intertwined with the various Magten Litigation, therefore
     making transfer appropriate as discussed below.

1   *effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily
2   be against the debtor or against the debtor's property." In re Feitz, 852 F. 2d 455, 457 (9th Cir.
3   1988), *quoting* Pacor v. Higgins, 743 F. 2d 984, 994 (3d Cir. 1984) (emphasis in original).[4]

4       As the recitation of the various cases pending in the Delaware courts demonstrates, the
5   instant CFB Litigation which challenges the Transaction is related to Magten's Proof of Claim,
6   its Complaint to Avoid Transfer of Assets, its Appeal of the Confirmation Order, and its
7   Complaint to Revoke Confirmation Order – each of which is, at its core, a challenge to the same
8   Transaction.[5]   In addition, Magten's Appeal of Termination of Settlement Agreement, if it is
9   successful, will result in the termination of this CFB Litigation, as well as Magten's other suits
10  against NorthWestern, its management, and its advisors.

11      Furthermore, NorthWestern's indemnification of the Defendants in the CFB Litigation
12  provides an additional reason why this case is "related to cases [brought] under Title 11" since
13  proceeds available for indemnification of the Defendants here depending on the applicable
14  directors and officers liability insurance policy will have to come from either the assets of
15  NorthWestern which are subject to the Second Confirmation Order and may be disbursed only
16  with approval of the bankruptcy court sitting in Delaware or the D & O Trust established under
17  the Second Amended and Restated Plan of Reorganization as confirmed by order of the
18  Bankruptcy Court on October 19, 2004, now on appeal to the United States District Court for the
19  District of Delaware.

20      B.  Change of Venue to Delaware Is Warranted Here.

21      28 U.S.C. §1409(a) provides that " a proceeding . . . related to a case under Title 11 may
22  be commenced in the district in which such case is pending." Because the CFB Litigation is a
23  proceeding which is related to the NorthWestern Bankruptcy for the reasons discussed above,

24  _____

25  [4]  Standing Rule 12 of this Court dealing with automatic referral to bankruptcy court also uses the same "related to"
    language as found in 28 U.S.C. §§1334 and 1409. See discussion *infra* concerning the latter provision.
26
    [5]  Even the PHJW Litigation pending in the Delaware Federal District Court and the Trustees Litigation pending in
27  the Delaware Chancery Court are intimately related to the Transaction, as discussed more fully below. Moreover,
    Magten has pending its Motion to withdraw reference of its Complaint to Avoid Transfer of Assets from the
    Delaware bankruptcy court so that adversarial proceeding may be consolidated with the PHJW Litigation.

Magten could have brought this action in Delaware. Since this action could have been brought in Delaware, a motion to change venue to Delaware is appropriate since "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a).

> 1.    Delaware is a more convenient forum since all the related litigation is pending in that jurisdiction.

In each lawsuit described above, Magten properly chose Delaware as the forum state because, as noted at the outset, its litigation strategy has been to develop as many legal theories and causes of action as possible either to force NorthWestern to settle or obtain a judgment from NorthWestern. The one notable exception is the PHJW Litigation which was originally filed in Montana but whose venue was changed to Delaware in the September 8, 2004 Order of Judge Haddon. As Judge Haddon properly noted:

> Upon review of the record and the materials provided by both parties, the Court is persuaded that the interests of justice and of convenience and fairness are best served by transfer of this case [the PHJW Litigation] to the District of Delaware. As noted, Plaintiff [Magten] already has filed an adversary proceeding claim in NorthWestern's bankruptcy in Delaware, the outcome of which may substantially impact the vitality of the claims asserted in this case. Many of the obligations claimed against Defendant [Paul Hastings] in the Montana case appear to mirror allegations in the adversary proceedings.

Beatty Decl. ¶ 25, Exh. S, p.3. Magten itself has acknowledged in its Memorandum in Support of Motion to Withdraw Reference and Consolidate:

> In transferring venue to the Delaware District Court, the Montana Federal Court has specifically determined that the issues in the Adversary Proceeding [Complaint to Avoid Transfer of Assets] and the [PHJW Litigation] are intricately intertwined.

Beatty Decl. ¶ 26, Exh. T, p. 2.

As Magten acknowledges and as explained above, the "core allegations" of its Complaint to Avoid Transfer and its Complaint against PHJW "are the same" (id.); namely, that they both arise from and are inextricably intertwined with the Transaction – precisely the same factual issues raised in the CFB Litigation. Moreover, Magten has already acknowledged and

1    represented to the NorthWestern Bankruptcy Court that "much of the discovery sought in each

2    [the Complaint to Avoid Transfer and the PHJW Litigation] will be duplicative of the other

3    proceeding." For the same reasons, transfer of the CFB Litigation to Delaware is appropriate

4    here.

5    2.    No witness would be inconvenienced by the transfer and transfer to Delaware will
           be more convenient for the witnesses and parties.

6

7            Only one party to this proceeding, Ernie Kindt, the Vice President, Chief

8    Accounting Officer and Controller of CFB at the time of the Transaction, resides in

9    Montana. He will undoubtedly be called as a witness in Magten's litigation pending in

10   the Delaware courts concerning the Transaction because of his position with CFB both

11   when that Transaction was approved by NorthWestern and completed. Thus, Magten can

12   not be heard to say that Mr. Kindt will be any more inconvenienced if this additional

13   lawsuit is transferred to Delaware. Beatty Decl. ¶4. Quite the contrary, if all the

14   litigation is consolidated in one forum state, there is greater likelihood that all discovery

15   in the several pending cases will be coordinated and Mr. Kindt will only be deposed

16   once. Reorganizaing the ptotential for multiple depositions and his involvement in all

17   these cases, Mr. Kindt conserts to the transfer of venue to Delaware and agrees to make

18   himself   personally   subject   to   the   jurisdiction   of   the   Delaware   Court.

19   Beatty Decl. ¶ 14.

20           Mr. Hanson is a citizen and resident of South Dakota and thus the continuation of

21   the litigation in Montana does not present any more of a convenient forum to him when

22   all the other litigation concerning the Transaction to which he is either a party or a

23   potential witness is pending in Delaware. Beatty Decl. ¶3.

24           In addition, potential third party witnesses in this CFB Litigation, including

25   representatives of the Bank of New York (the first trustee), and Law Debenture (the

26   successor trustee) as well as the Plaintiff, Magten, are located in New York. These

27   witnesses may possess important information related to various defenses which Messrs.

1   Kindt and Hanson have asserted. Likewise, much of the documentary evidence related to

2   the Transaction is already located in New York or Delaware where various relevant

3   documents have been assembled in connection with the NorthWestern Bankruptcy.

4   Beatty Decl., ¶ 3. Any documents in the possession of Messrs. Hanson and Kindt, or

5   either of them, to the extent not already in New York or Delaware, are as easily

6   accessible if this litigation is conducted in Delaware as in Montana. Beatty Decl. ¶ 2.

7        3.   Judicial Economy Favors Transfer to Delaware.

8        Transferring this action to Delaware reduces any appearance of forum shopping

9   by the Plaintiff here. All other related actions either had to brought in Delaware because

10   that is the situs of the NorthWestern Bankruptcy[6] or were transferred from Montana to

11   Delaware in the interests of judicial economy. Transferring this case to the same judicial

12   district will facilitate the administration and coordination of the various law suits already

13   in the Delaware courts.

14        Judicial economy is also served by the transfer to Delaware. As the Supreme

15   Court noted in Fehrens v. John Deere, 494 U.S. 513 516 (1990), "We have made it quite

16   clear that to permit a situation in which two cases involving precisely the same issue area

17   simultaneously pending in different District Courts leads to the wastefulness of time,

18   energy and money that §1404(a) was designed to prevent." When the Court considers the

19   multiple lawsuits pending in Delaware brought by Magten which, in one fashion or

20   another, challenge the same Transaction at issue in the CFB Litigation, it is clear that this

21   Court should exercise its discretion and transfer this action to Delaware.

22        In this case, where the CFB Litigation is still in its early stages and no discovery

23   has even been commenced, transfer to Delaware will not prejudice either party. Indeed,

24   prejudice is more likely to result if this case is not transferred, since the parties and

25

26   _____

27   [6] The other exception is the Trustee Litigation, which was just recently filed by Magten in the Delaware Chancery Court.

1  witnesses will be required to be involved in litigation concerning the same issues in

2  forums which are 2,500 miles apart.

3       II.    In The Alternative, This Court Should Stay This Action In The Interest Of
              Judicial Economy.
4

5       In the alternative, this Court should stay further proceedings in the CFB Litigation

6  until the Delaware Courts have ruled on (1) Magten's Motion to Withdraw Reference and

7  Consolidate Magten's Complaint to Avoid Transfer of Assets with Magten's Complaint

8  against PHJW, (2) Magten's Appeal of the Confirmation Order, and (3) other pending

9  matters, so that the procedural path is clear in Delaware and the litigation concerning the

10 merits of the Transaction may proceed in that jurisdiction in tandem with this litigation.

11 Only then should this Court allow the CFB Litigation to go forward so that discovery

12 may be coordinated between and among the various parties in the multiple forums and

13 judicial economy may be achieved.

14      This Court, of course, has the inherent power to stay these proceedings as part of

15 its authority to "control the disposition of the cases on its docket with economy of time

16 and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299

17 U.S. 248, 254 (1936). This principle was reiterated by the United States Supreme Court

18 in Clinton v. Jones, 520 U.S. 681, 706 (1997), when the Court noted that, "The District

19 Court has broad discretion to stay proceedings as an incident to its power to control its

20 own docket." Thus, this Court may properly exercise its discretion and stay these

21 proceedings in the interests of judicial economy and efficiency, and with deference to the

22 activities and rulings of the courts in another forum in which litigation involving the same

23 issues is pending. To promote judicial economy, when cases are filed in two federal

24 courts "with substantially the same issues the first suit shall have priority, absent the

25 showing of a balance of convenience in favor of the second action." Regions Bank d/b/a

26 Regions Funding v. Morning Star Mortgage Bankers, Inc., 170 F. Supp. 2d 436, 439

27 (2001). This rule promotes the comprehensive disposition of litigation among parties

1   over related issues. Furthermore, this Court may enter a stay in the CFB Litigation

2   pending resolution of independent proceedings, even if "such proceedings are not

3   necessarily controlling of the action before the court." Leyva v. Certified grocers of

4   California, Ltd., 593 F. 2d. 857, 863-864 (1979). Magten's Proof of Claim and the

5   Complaint to Avoid Transfer of Assets filed in the Delaware bankruptcy court, were both

6   filed prior to the filing of the CFB Litigation. Each of these filings is clearly related to, if

7   not controlling, the CFB Litigation. Thus, the CFB Litigation should be stayed pending

8   disposition of pending motions in the Delaware Courts and the lifting of any stays on

9   those proceedings.

10      Finally, if this Court allows discovery in the CFB Litigation to proceed, that

11  discovery will necessarily involve the same witnesses, exhibits, and documents at issue in

12  the other pending Magten Litigation. Discovery in those cases has all been stayed

13  pending resolution of various appeals brought by Magten. To permit discovery to

14  proceed in the CFB Litigation will frustrate the stays entered in the Delaware Courts,

15  destroy comity between the Courts, and permit Magten to end-run adverse results

16  otherwise imposed on Magten as a direct result of its own litigious actions.

17      1. A Stay Here Is in the Interests of Judicial Economy.

18      A motion to stay should be granted in the interests of judicial economy, especially

19  where to deny the motion would result in judicial inefficiency. As discussed in the

20  opening section of this brief, the issues involved in this case are predicated upon the same

21  facts pled by Magten in its Proof of Claim, its Complaint to Avoid Transfer of Assets, its

22  Appeal of the Confirmation Order, its lawsuit against Paul Hastings, and its complaint

23  against the Trustees.

24      As in each of these other cases, the Complaint against Messrs. Hanson and Kindt

25  here is that they participated in the same allegedly fraudulent transaction which is the

26  subject of these other proceedings enumerated throughout this Memorandum. There can

27  be no doubt that same or substantially similar documents, facts and witnesses will be

1    involved in each of these cases. Already in this proceeding, the Defendants here have

2    raised several of the defenses which NorthWestern itself raised as arguments in briefs

3    filed with Bankruptcy Court in opposition to Magten's Complaint to Avoid Transfer of

4    Assets, including that (a) Magten was not a creditor of CFB, (b) Magten lacked standing

5    to assert the claims of holders of the QUIPS at the time the Transaction occurred, and (c)

6    the Trustee did not object to the assignment of QUIPS related obligations from CFB to

7    NorthWestern. Compare the Answer of Hanson and Kindt (Beatty Decl. ¶ 31, Exh. Y)

8    and their Motion for Summary Judgment in the CFB Litigation, (Beatty Decl. ¶ 32, Exh.

9    Z) with NorthWestern's Reply Memorandum in Further Support of its Motion to Dismiss

10    Complaint to Avoid Transfer of Assets (Beatty Decl. ¶ 33, Exh. AA) and the Order of

11    Judge Case dated August 20, 2004, (Beatty Decl. ¶ 9, Exh. C).

12    Whether or not Magten's Complaint to Avoid Transfer of Assets is ultimately

13    joined with Magten's suit against Paul Hastings, or, for that matter, any of the other

14    pending actions are combined, it makes sense for all these suits to be placed on the same

15    track so that discovery of the same persons and documents may be coordinated and

16    duplication of resources can be avoided.

17    2.    The Defendants Here Are Prejudiced if a Stay Is Not Granted.

18    As noted above, if a stay is not granted here, not only will there be waste of

19    judicial resources in the form of duplicative, repetitive and expensive discovery, but there

20    is a real possibility of confusion if any judgment ultimately rendered by this Court is

21    different than the judgment of either the NorthWestern Bankruptcy Court, the Delaware

22    Federal District Court, or the Delaware Chancery Court. Indeed, if Magten does not

23    prevail on its arguments pending in its Complaint to Avoid Transfer of Assets that

24    NorthWestern engaged in actual fraud and the Court there has duly noted that these

25    allegations only "narrowly survived a motion to dismiss with a high burden placed on the

26    plaintiff even to stay in the game at this point" (Beatty Decl. ¶ 30 & Exh. X, Selected

27

1    pages of 10/08/04 Transcript, p. 27, lines 4-7.) – then this entire litigation against Messrs.

2    Hanson and Kindt may become moot.

3         In addition, Magten has appealed the denial of the Magten Settlement, as

4    discussed above. If Magten is successful, the Magten Settlement will be reinstated and

5    this litigation, along with all the other lawsuits involving NorthWestern, which are

6    currently stayed, will be dismissed with prejudice.

7         3.    Magten Will Not Be Prejudiced If These Proceedings Are Stayed.

8         As explained at the outset, this litigation is just one part of a concerted effort by

9    Magten to force NorthWestern to settle a case in order to avoid the costs of expensive,

10   multiple law suits brought by Magten in any forum and on any legal theories which

11   Magten is clever enough to conjure up. There is no pending transaction which Magten is

12   seeking to enjoin. The Transaction at issue here was completed more than two and a half

13   years ago. As the number of actions filed in the NorthWestern Bankruptcy evidences, the

14   focal point of Magten's offense is centered in Delaware. Staying this proceeding while

15   the Delaware courts untangle the procedural and substantive morass which Magten has

16   created by its purposeful litigation strategy in that venue will not create any prejudice

17   which Magten has not already visited upon itself. In contrast, allowing this suit to go

18   forward at this time will prejudice the Defendants here and result in judicial inefficiency

19   and potentially conflicting results.

20        DATED this _19th_ day of May, 2005.

21                       BROWNING, KALECZYC, BERRY & HOVEN, P.C.

22

23            By _Kimberly Beatty_

24               Stanley T. Kaleczyc
                 Kimberly A. Beatty
25               Attorneys for Defendants

26

27

**CERTIFICATE OF SERVICE**

1

2        I hereby certify that on the ___19th___ day of ___May___, 2005, a true copy of the
foregoing was mailed by first-class mail, postage prepaid, addressed as follows:
3

4   Bonnie Steingert
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobson, LLP
5   One New York Plaza
New York, NY 10004
6

7   James H. Goetz
J. Devlan Geddes
Goetz, Madden & Dunn, P.C.
8   35 N. Grand
P.O. Box 6580
9   Bozeman, MT 59771-6580

10

11

12              _Jennifer Mahlen_
                                                    _____
13              BROWNING, KALECZYC, BERRY & HOVEN, P.C.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

164135_2.doc/1674.044

1

2                                    **EXHIBIT A**

3          1.      On January 13, 2004, Magten filed a Proof of Claim No. 842 in the NorthWestern

4    Bankruptcy ("Magten's Proof of Claim"). <u>See</u>, Beatty Decl. Exh. A.

5          2.      On April 16, 2004, Magten filed an adversary proceeding in the NorthWestern

6    Bankruptcy against NorthWestern, styled *Magten Asset Management Corporation & Law*

7    *Debenture Trust Company of New York v. NorthWestern Corporation*, Adv. No. 04-53324, in

8    which Magten and Law Debenture filed a *Complaint to Avoid the Transfer of Assets of Clark*

9    *Fork and Blackfoot LLC (f/k/a/ NorthWestern Energy LLC) to NorthWestern Corporation*

10   ("Complaint to Avoid Transfer of Assets"). <u>See</u>, Beatty Decl., Exh. B.

11         3.      On April 19. 2004, Magten filed this action in Montana Federal District Court

12   against Messrs. Hanson and Kindt, who were "officers" of CFB at the time the "going flat"

13   transaction was completed ("CFB Litigation"). <u>See</u>, Beatty Decl. Exh. W.

14         4.      On May 20, 2004, Magten filed a lawsuit against the law firm Paul Hastings

15   Janofsky & Walker, LLP ("PHJW"), counsel to NorthWestern and CFB ("PHJW Litigation").

16   This case was originally filed in the Montana Second Judicial District Court, Silver Bow County,

17   (Cause No. DV-04-131), but was removed to the Montana Federal District Court (Cause No.

18   CV-04-49-SEH).  On September 8, 2004, the Hon. Sam Haddon found that given the similarities

19   in the various Magten litigation, "the interests of justice and of convenience and fairness are best

20   served by transfer of this case" and ordered the case transferred to the Delaware Federal District

21   Court, where it is currently pending as Civil Action No. 04-1256. <u>See</u>, Beatty Decl. Exhs. R and

22   S.

23         5.      On August 20, 2004, NorthWestern initiated an adversary proceeding in the

24   NorthWestern Bankruptcy against Magten, styled *NorthWestern Corporation v. Magten Asset*

25   *Management Corporation and Talton R. Embry*, Adv. No. 04-55051, in which NorthWestern

26   filed a *Complaint* relating to the defendants' breach of fiduciary duties, misappropriation and use

27   of material, non-public, information and improper trading activities in purchasing approximately

1  40% of the Debtors Series A 8.45% Quarterly Income Preferred Securities while the defendants

2  were members of NorthWestern's Unsecured Creditors Committee ("Complaint for Magten's

3  Breach of Fiduciary Duties"). <u>See</u>, Beatty Decl. Exh. D.

4        6.      On October 25, 2004, Magten appealed the Bankruptcy Court *Order Confirming*

5  *Debtor's Second Amended and Restated Plan of Reorganzation Under Chapter 11 of the*

6  *Bankruptcy Code [appeal of Docket No. 2237 in Bankruptcy Case No. 03-12872]* to the United

7  States District Court for the District of Delaware, Civil Action No. 04-1389 KAJ ("Appeal of

8  Confirmation Order"). <u>See</u>, Beatty Decl. Exh. F.

9        7.      On October 26, 2004, Magten appealed the Bankruptcy Court *Order Approving*

10  *the Memorandum of Understanding [appeal of Docket No. 2230 in Bankruptcy Case No. 03-*

11  *12872]* to the United States District Court for the District of Delaware, Civil Action No. 04-1508

12  ("Appeal of MOU"). <u>See</u>, Beatty Decl. Exh. I.

13       8.      On March 17, 2005, Magten appealed the Bankruptcy Court *Order Denying Joint*

14  *Motion of Magten Asset Management Corporation and Law Debenture Trust Company of New*

15  *York for Order Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure Approving*

16  *a Settlement Between NorthWestern Corporation, Magten Asset Management Corporation, and*

17  *Law Debenture Trust Company of New York [appeal of Docket Nos. 2910 and 2911 in*

18  *Bankruptcy Case No. 03-12872]* to the United States District Court for the District of Delaware,

19  AP-05-21 ("Appeal of Termination of Settlement Agreement"). <u>See</u>, Beatty Decl. Exh. P.

20       9.      On March 31, 2005, Magten filed a lawsuit against the Bank of New York and

21  Jerrold P. Pederson in their capacities as the Trustees of the Montana Power Capital I Trust, in

22  the Court of Chancery of the State of Delaware ("Trustee Litigation"). <u>See</u>, Beatty Decl. Exh. V.

23       10.     On April 15, 2005, Magten initiated an adversary proceeding in the NorthWestern

24  Bankruptcy, styled *Magten Asset Management Corporation & Law Debenture Trust Company of*

25  *New York v. NorthWestern Corporation, Gary G. Drook, Michael J. Hanson, Brian B. Bird,*

26  *Thomas J. Knapp and Roger P. Schrum,* in which Magten and Law Debenture filed a *Complaint*

27

1    *to Revoke Order of Confirmation Pursuant to Section 1144 of the Bankruptcy Code and Rule*

2    *7001(5) of the Federal Rules of Bankruptcy Procedure and for Breach of Fiduciary Duty*

3    ("Complaint to Revoke Confirmation Order"),  <u>See</u>, Beatty Decl. Exh. Q.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27