



## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **NORTHWESTERN CORPORATION,** | ) |
| | ) Case No. 03- 12872 (CGC) |
| | ) |
| Debtor. | ) **Objection Deadline: May 5, 2004 at 4:00 p.m.** |
| | ) **Hearing Date: May 17, 2004 at 4:00 EDT** |
| | ) |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on April 28, 2004, the above-captioned debtor and debtor in possession (the "Debtor"), filed the attached Debtor's Motion for Order Pursuant to Bankruptcy Rule 9019 Approving Memorandum of Understanding (the "Motion").

PLEASE TAKE FURTHER NOTICE that Objections to the Motion, if any, must be filed on or before **May 5, 2004 at 4:00 p.m.** (the "Objection Deadline") with the United States Bankruptcy Court for the District of Delaware, Marine Midland Plaza, 3rd Floor, 824 Market Street, Wilmington, Delaware 19801 (the "Court"). At the same time, you must also serve a copy of the Objection upon the undersigned counsel to the Debtor so that the response is received on or before the Objection Deadline.

IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE MOTION WITHOUT FURTHER NOTICE OR HEARING.

A HEARING WILL BE HELD ON MAY 17, 2004 AT 1:00 P.M. MST **(4:00 P.M. EDT)**, BEFORE THE HONORABLE CHARLES G. CASE, II, UNITED STATES BANKRUPTCY COURT, 2929 N. CENTRAL AVENUE, 9TH FLOOR, PHOENIX, ARIZONA 85012 (THE "HEARING").

Dated: Wilmington, Delaware
      April 28, 2004             GREENBERG TRAURIG, LLP

                              By: /s/ William E. Chipman, Jr.
                                 Scott D. Cousins (No. 3079)
                                 William E. Chipman, Jr. (No. 3818)
                                 The Brandywine Building
                                 1000 West Street, Suite 1540
                                 Wilmington, DE 19801
                                 (302) 661-7000

-   and —

Jesse H. Austin, III, Esquire
Karol K. Denniston, Esquire
PAUL, HASTINGS, JANOFSKY
      & WALKER LLP
600 Peachtree Street, N.E., 24th Floor
Atlanta, GA 30308
(404) 815-2400 (telephone)

COUNSEL FOR DEBTOR
  AND DEBTOR IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 (CGC) |
| | : |
| Debtor. | : **Hearing Date: May 17, 2004 at 4:00 p.m.** |
| | : **Objection Deadline: May 5, 2004 at 4:00 p.m.** |
| | : |

### DEBTOR'S MOTION FOR ORDER PURSUANT TO BANKRUPTCY RULE 9019 APPROVING MEMORANDUM OF UNDERSTANDING

NorthWestern Corporation (the "Debtor" or "NOR"), as debtor and debtor-in-possession, hereby moves the Court, pursuant to Section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order approving the Memorandum of Understanding (the "MOU")[1] providing for settlement and dismissal with prejudice of all claims against all parties in the consolidated securities class action styled In re NorthWestern Corporation Securities Litigation, Case No. CIV-03-4049, including Golman Family Trust v NorthWestern Corp., Case No. CIV-03-4226 (collectively, the "Class Action"), and in the consolidated shareholder derivative action styled In re NorthWestern Corporation Derivative Litigation, Case No. CIV-03-4091 (the "Derivative Action"), all pending in the United States District Court for the District of South Dakota (the "District Court") (collectively, the "Securities Litigation"). In support of this Motion, the Debtor respectfully represents as follows:

---

[1] Any capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the MOU. A copy of the MOU is attached hereto as Exhibit A.

**JURISDICTION**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

2.      On September 14, 2003 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor continues to operate its businesses and manage its properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.      No request has been made for the appointment of a trustee or examiner in this case. The Official Committee of Unsecured Creditors was appointed by the Office of the United States Trustee on September 30, 2003.

4.      NOR is a publicly traded Delaware corporation which was incorporated in 1923. NOR and its direct and indirect non-debtor energy subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.[2]

**RELIEF REQUESTED**

5.      By this motion (the "Motion"), NOR seeks an order pursuant to Bankruptcy Rule 9019 approving the MOU, the Hylland Agreement (as defined below) and the Insurers' Agreement (as defined below) and authorizing the Debtor to enter into the Stipulation of

---

[2]      A more detailed overview is set forth in the Affidavit of William M. Austin in Support of First Day Motions filed with the Court on the Petition Date (Docket Entry No. 2).

ATL /1026131.4                    2

Settlement upon the material terms set forth in the MOU and such other and consistent terms as are agreed upon by counsel for the Settling Parties.

## BASIS FOR RELIEF

6.      The Debtor, and certain of its present and former officers and directors, were named as defendants in a number of lawsuits consolidated as In re NorthWestern Corporation Securities Litigation (the "Class Action"). The complaints alleged violations of Sections 11, 12, and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 106-5 there under. The complaints contained varying allegations, including that the defendants misrepresented and omitted material facts with respect to the Debtor's 2000, 2001, and 2002 financial results and operations included in the Debtor's filings with the SEC, press releases, and registration statements and prospectuses disseminated in connection with certain offerings of debt, equity, and trust preferred securities.

7.      In July 2003, the lead plaintiffs in the Class Action filed a consolidated amended class action complaint naming the Debtor, NorthWestern Capital Financing II and II, Blue Dot Services, Inc. ("Blue Dot"), Expanets, Inc. ("Expanets")[3], and certain of the Debtor's present and former officers and directors, along with a number of investment banks that participated in the securities offerings. The amended complaint alleged that the defendants misrepresented and omitted material facts concerning the business operations and financial performance of the Debtor, Expanets, Blue Dot and Cornerstone Propane GP, Inc., overstated the Debtor's revenues and earnings by, among other things, maintaining insufficient reserves for accounts receivable at Expanets, failing to disclose billing problems and lapses and data conversion problems, failing to

---

[3] On November 25, 2003, Expanets sold substantially all of its assets to Avaya, Inc. Thereafter, Expanets changed its name to Netexit, Inc.

make full disclosures of problems (including the billing and data conversion issues) arising from the implementation of Expanets' EXPERT computer system, concealing losses at Expanets and Blue Dot by improperly allocating losses to minority interest shareholders, maintaining insufficient internal controls, and profiting from improper related party transactions.

8.     The Debtor, and certain of its present and former officers and directors, were also named as defendants in two complaints which were filed in the United States District Court for the Southern District of New York, entitled Sanford & Beatrice Golman Family Trust, et al. v. NorthWestern Corp., et al., Case No. 03CV3223, and Arthur Laufer v. Merle Lewis, et al., Case No. 03CV3716, which were brought on behalf of the purchasers of the Debtor's 7.20%, 8.25%, and 8.10% trust preferred securities which were offered and sold pursuant to the Debtor's registration statement on Form S-3 filed on July 12, 1999. The plaintiffs' claims were based on similar allegations of material misrepresentations and omissions of fact relating to the registration statement in violation of Sections 11 and 12 of the Securities Act of 1933. In July 2003, Arthur Laufer v. Merle Lewis, et al. was transferred to the District of South Dakota and consolidated with the pending actions in that Court. In September 2003, Sanford & Beatrice Golman Family Trust, et al. v NorthWestern Corp., et al. was also transferred to the District of South Dakota and consolidated with the pending actions in that court. As a result of the Debtor's bankruptcy filing the Class Action was stayed.

9.     The Debtor, and certain of its present and former officers and directors were named in two (2) shareholder derivative actions in the United States District Court for the District of South Dakota, Southern Division. These shareholder derivative suits alleged that the defendants breached various fiduciary duties based upon the same general set of alleged facts and circumstances as the deferral shareholder suits. In July 2003, the complaints were

consolidated into the Derivative Action. As a result of the Debtor's bankruptcy filing, the Derivative Action was stayed.

      10.     On or about October 2, 2003, the Debtor initiated an adversary proceeding by filing its Verified Complaint for Declaratory, Temporary and Permanent Injunctive Relief and its Motion for Temporary Restraining Order and Preliminary Injunction Staying Certain Litigation Against Non-Debtor Entities with the Bankruptcy Court. On or about October 9, 2003, the plaintiffs in the Securities Litigation filed their Memorandum of Law in Opposition to Motion of Plaintiff/Debtor for a Temporary Restraining Order and Preliminary Injunction Staying Certain Litigation Against Non-Debtor Entities. On November 6, 2003, the Bankruptcy Court entered its Order Granting Preliminary Injunction as to the plaintiffs in the Derivative Action and on January 13, 2004, the Bankruptcy Court entered its Order Denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction Staying Certain Litigation Against Non-Debtor Entities as to the lead plaintiffs in the Class Action.

      11.     On January 14, 2004, the plaintiffs in the Securities Litigation filed their proof of claim form, Claim No. 707 (the "Claim"), with the Debtor's claims agent. The Claim was filed by the lead plaintiffs, on behalf of themselves and all others similarly situated in the Securities Litigation. The Securities Litigation plaintiffs asserted a Claim of no less than approximately $575,000,000.

      12.     On January 14, 2004, the Court approved the Stipulation and Order Modifying Automatic Stay to the Extent Necessary to Permit the Debtor to Participate in Non-Binding Mediation (the "Stipulation"). Pursuant to the Stipulation, the automatic stay was modified for the limited purpose of permitting the Debtor to participate in non-binding consensual mediation.

13.    The non-binding mediation occurred on February 7, 2004 before Antonio Piazza (the "Mediator"). After a lengthy mediation, a tentative settlement was reached, subject to the approval of the District Court and this Bankruptcy Court. The MOU contains the material terms of the proposed settlement (the "Settlement"). The Settling Parties have agreed that they will cooperate expeditiously and in good faith to prepare a Stipulation of Settlement and accompanying papers which shall embody the terms set forth in the MOU and such other and consistent terms as are agreed upon by counsel for the Settling Parties.

## THE MEMORANDUM OF UNDERSTANDING

14.    The parties to the MOU and Stipulation of Settlement are (a) the lead plaintiffs in the Class Action, on behalf of themselves and each of the members of the Class (as defined in the MOU) and the Plaintiffs in the Derivative Action (collectively, the "Plaintiffs"); (b) NorthWestern Corporation; (c) NorthWestern Capital Financing II; (d) NorthWestern Capital Financing III; (e) Blue Dot Services, Inc.; (f) Netexit, Inc. (f/k/a Expanets) ("NetExit") (the parties listed in (b) through (f), collectively, the "NorthWestern Entities"); (g) individuals Richard R. Hylland, Merle D. Lewis, Kipp D. Orme, Daniel K. Newell, David A. Monaghan, Marilyn R. Seymann, Randy G. Darcy, Gary Drook, Jerry W. Johnson, Larry F. Ness, Bruce I. Smith, Kurt Whitesel, Eric R. Jacobsen, and John Charters (collectively, the "Individual Defendants"); (h) the insurers for the NorthWestern Entities and the Individual Defendants, namely Associated Electric & Gas Insurance Services Limited ("AEGIS") and Energy Insurance Mutual ("EIM"); (i) Wilmington Trust Company; (j) the underwriters named as defendants in the Class Action, namely Morgan Stanley & Co., Incorporated, Credit Suisse First Boston Corporation (n/k/a Credit Suisse First Boston LLC), UBS Warburg LLC (n/k/a UBS Securities LLC), Merrill Lynch Pierce Fenner & Smith, Inc., Salomon Smith Barney, Inc. (n/k/a Citigroup

Global Markets, Inc.) and Prudential Securities, Incorporated (n/k/a Prudential Equity Group,

LLC) (collectively, the "Underwriter Defendants"); and (k) Deloitte & Touche LLP (including

Deloitte & Touche USA LLP, Deloitte Consulting LLP (successor to Deloitte Consulting

Holding LLC), Deloitte Consulting (Nevada) LLC, Deloitte Consulting LP, Deloitte Consulting

(US) LLC, and Deloitte Consulting (Holding Sub) LLC) (collectively, "Deloitte").

**The Settlement Fund**

15.    As set forth in the MOU, the NorthWestern Entities, with the exception of

Netexit, and the Individual Defendants shall cause their insurers, AEGIS and EIM, to deliver the

sum of $37,000,000 in full settlement and compromise of the Securities Litigation and for the

release and discharge of any and all claims and causes of action asserted or which could have

been asserted in the Securities Litigation.

16.    As set forth in the MOU, the Underwriter Defendants shall deliver or cause their

insurers to deliver the sum of $2,000,000 in full settlement and compromise of the Securities

Litigation and for the release and discharge of any and all claims and causes of action asserted or

which could have been asserted in the Securities Litigation.

17.    As set forth in the MOU, Deloitte shall deliver or cause its insurers to deliver the

sum of $2,000,000 in full settlement and compromise and for the release and discharge of any

and all claims and causes of action asserted or which could have been asserted in the Securities

Litigation if Deloitte had been made a party.

18.    During the mediation, the Settling Parties also agreed as follows: "Expanets will

agree to a $20 million liquidated claim against Expanets as if Plaintiffs' claims asserted in their

federal securities act action had been resolved to judgment on behalf of plaintiff class, subject to

confirmation by creditors committee and management approval by close of business Weds. 2/11/04. No concession is made by the parties regarding priority of claims."

19.    The NorthWestern Entities, the Individual Defendants, Wilmington Trust Company, the Underwriter Defendants, and Deloitte shall each deposit, or cause to be deposited, their respective share of the total sum of $41,000,000 (the "Settlement Fund"), including $810,000 for attorneys' fees incurred by counsel for the plaintiffs in the Derivative Action in an interest bearing account administered by an independent escrow agent, San Diego National Bank (the "Escrow Account") within five (5) business days after the date on which both of the following occurred: (a) the Bankruptcy Court has approved the Settlement pursuant to the terms of the MOU; and (b) the District Court has entered an order approving the Settlement and dismissing the Securities Litigation with prejudice.

20.    The Defendants and their insurers and Deloitte shall not be liable for any costs, fees or expenses of any kind incurred by Plaintiffs' respective attorneys, experts, consultants, agents and representatives, but such attorneys' and experts fees, costs and expenses (except for the Derivative Action fees referenced above), shall be payable from the Settlement Fund to the extent ordered by the District Court.

21.    By filing this Motion the Debtor is seeking Bankruptcy Court approval of the MOU. Upon Bankruptcy Court approval of the MOU, the Debtor shall file the Stipulation of Settlement and the Bankruptcy Court order approving the MOU with the District Court. The Settling Parties have expressly agreed that they will cooperate in good faith to prepare a Stipulation of Settlement and accompanying papers which will embody the terms set forth in the MOU. The Stipulation of Settlement filed with the District Court shall also be filed and served on the Notice Parties (as defined below) in the Debtor's bankruptcy proceeding.

**Releases Under the Stipulation of Settlement**

22.    The Stipulation of Settlement and the order of approval to be issued by the

District Court shall provide that the Releasing Parties (as defined in the MOU) are deemed to

have fully, finally and forever released, relinquished and discharged all Defendants, Deloitte, and

all non-Defendant underwriters involved in any of the offerings for the securities as detailed in

the MOU from all claims, demands, rights, liabilities, and causes of action of every nature and

description whatsoever, whether based in law or equity, on federal, state, local statutory or

common law, or any other law, rule or regulation, known or unknown, that were asserted or

might have been asserted by the Releasing Parties against the Released Parties (as defined in the

MOU) in the Securities Litigation or in any other forum or proceeding, including, without

limitation, claims for fraud, negligence, gross negligence, negligent misrepresentation, violations

of any state or federal statutes or regulations, breach of duty of care, breach of duty of loyalty,

breach of fiduciary duty, insider trading, abuse of control, mismanagement or gross

mismanagement, corporate waste, malpractice, breach of contract, or failure to adequately

perform professional services for any of the NorthWestern Entities, all arising out of, relating to,

o in connection with (a) the purchase or acquisition by any means, directly or indirectly, during

the Class Period (as defined in the MOU) and based on or related to the securities violations

alleged in the Class Action; or (b) any of the acts, omissions, misrepresentations, facts, events,

matters, transactions or occurrences which were alleged, asserted or contended, or which could

have been alleged, asserted, or contended, by any of the Releasing Parties against the Released

Parties based on or related to the wrongful conduct alleged in the Securities Litigation

(collectively, the "Released Claims").

23.     The Released Claims shall not include any claims against securities brokers or

dealers that are based solely on allegations of churning, misappropriation of funds, or breach of

the duty to "know your customer" and that could not have been brought in the Securities

Litigation; nor does Released Claims include any claims asserted in the following pending

litigations: (i) the CornerStone Propane Partners, L.P. securities class actions, consolidated as *In*

*re CornerStone Propane Partners L.P. Securities Litigation* (U.S.D.C., N.D. Cal., Case No. C03-

2522); (ii) the Cornerstone Propane Partners L.P. derivative actions, *Andrews v. Baxter, et al.,*

and *Tyndall v. Baxter, et al.* (Cal. Sup. Ct., County of Santa Cruz, Case Nos. CV 146662 and CV

146661); (iii) *McGreevey v. Montana Power Co., et al.*, and related actions (U.S.D.C., D.

Montana, Case No. CV-03-01-BU-SEH); (iv) the TouchAmerica securities class actions,

consolidated as *In re TouchAmerica Holdings, Inc. Securities Litigation* (U.S.D.C., D. Montana,

Case No. CV-02-57-BU-SEH); (v) the TouchAmerica ERISA class actions, consolidated as *In re*

*TouchAmerica Holdings, Inc. ERISA Litigation* (U.S.D.C., D. Montana, Case No. CV-02-106-

BU-SEH); (vi) *Mewhinney v. CornerStone Propane GP, Inc., et al.* (Circuit Court of the City of

St. Louis, Missouri, Case No. 032-1181); and (vii) *Cohen v. NorthWestern Growth Corporation,*

*et al.* (U.S.D.C., D. South Dakota, Case No. 04-4043).

24.     With respect to any and all claims, upon Final Approval (as that term is defined in

the MOU) and by operation of the judgment entered in the Securities Litigation, the Plaintiffs

expressly waive, and each Class member and other Releasing Party are deemed to waive, any

and all provisions, rights and benefits conferred by any law of any state or territory of the United

States, or any other state, sovereign or jurisdiction, or principle of common law which is similar,

comparable or equivalent to Cal. Civ. Code § 1542 which provides a "general release does not

extend to claims which the creditor does not know or suspect to exist in his favor at the time of

executing the release, which if known by him must have materially affected his settlement with the debtor." However, nothing in the release shall be construed in anyway as a release of the Plaintiffs' rights to pursue their claim against Expanets on their own behalf and on behalf of the Class, as set forth in the MOU.

25.    The Stipulation of Settlement shall provide for a release by each of the Released Parties as to each other Released Parties of all claims for reimbursement, contribution or indemnification, which arise out of or relate to the Released Claims; provided, however, the Stipulation of Settlement shall not provide for a release of any claim of the Underwriter Defendants against any non-Defendant underwriter as set forth in the MOU.

26.    The Stipulation of Settlement shall provide for a release by each of the Released Parties of the Plaintiffs, the Class and all Plaintiffs' Counsel of all claims arising out of or relating to the institution, prosecution, assertion, settlement or resolution of the Securities Litigation and the Released Claims.

27.    As set forth in the MOU, the Debtor's estate and the Debtor shall provide a release of all claims against the Individual Defendants in connection with the Securities Litigation.

## Payment of Fees and Costs

28.    Except as set forth in the MOU, the Defendants and their insurers shall not be liable for any costs, fees or expenses of any kind incurred by Plaintiffs' respective attorneys, experts, consultants, agents and representatives; provided, however, that such attorneys' and experts' fees, costs and expenses shall be payable from the Settlement Fund to the extent ordered by the District Court. The terms of such payment of fees, costs and expenses are set forth in greater detail in Paragraphs 12 and 13 of the MOU.

29.     As set forth in the MOU, the reasonable and necessary costs of administration of the Settlement Fund, notice to the Class of the Settlement Fund and taxes due on the Settlement Fund, not to exceed $150,000 collectively, shall be paid out of the Settlement Fund and may be paid prior to Final Approval (as defined in the MOU) of the Settlement.

30.     The Debtor's contribution under the Settlement is non-monetary and there is no direct financial impact on the Debtor's estate. The Debtor's only obligations are to cause its insurers, AEGIS and EIM, to deliver the sum of $37,000,000 in full settlement and compromise of the Securities Litigation and to provide the releases set forth in the MOU. For the contribution of its insurance policies, the Debtor shall be released and discharged from any and all claims and causes of action asserted or which could have been asserted in the Securities Litigation as more fully described in the MOU. The use of the Debtors' insurance policies is appropriate and provides a direct and material benefit to the Debtor's estate and its officers and directors.[4]

31.     The Underwriter Defendants and Deloitte are required to deliver or cause their insurers to deliver $2,000,000 each in full settlement and compromise of the Securities Litigation. The contributions of the Underwriter Defendants and Deloitte under the Settlement provides a material and direct benefit to the Debtor's estate. The Underwriter Defendants and Deloitte's contributions benefit the Debtor by allowing the Debtor to fully utilize its benefits under its insurance policies as well as the contributions made by the Underwriter Defendants and Deloitte in settling the Securities Litigation, and receiving a release and discharge from any and

---

[4] The Delaware bankruptcy court has approved of the establishment of a settlement fund for class action securities claims against a debtor and certain third parties, including the debtor's current and former directors and officers. *See* Order Confirming the Third Amended Plan of Reorganization of the Columbia Gas System, Inc., dated Nov. 15, 1995 (Bankr. D. Del.). The Columbia Gas plan established a $36.5 million settlement fund, $16.5 million of which the debtor contributed. Similar to the Settlement in this case, the remainder of the fund under the Columbia Gas Plan was funded by the debtor's insurance carrier and the co-defendants, underwriters and independent accountants.

all claims and causes of action asserted or which could have been asserted in the Securities

Litigation as more fully described in the MOU.

**Agreement with Richard R. Hylland**

32.    The Debtor and Richard R. Hylland ("Hylland") reached an agreement (the

"Hylland Agreement") whereby, notwithstanding the conditions and terms set forth in the

Stipulation of Settlement, the Debtor and Hylland agree to release their respective contribution

and indemnity claims in and relating to the Securities and Derivative Litigation.[5]

33.    Under the Hylland Agreement, Hylland will dismiss his claims against the Debtor

asserted in the Debtor's bankruptcy proceeding, except for those claims arising from Mr.

Hylland's employment.  As to the claims arising from Hylland's employment, Hylland and the

Debtor shall attempt to negotiate a liquidated amount and if such negotiations are successful,

Hylland will withdraw his pending appeal in the Debtor's bankruptcy proceeding.  In the event

the Debtor and Hylland cannot agree on a liquidated amount with respect to Hylland's

employment claim, Hylland may continue to pursue his appeal of this Court's order denying his

motion to lift the automatic stay and pursue the previously pending arbitration of his employment

claim.

**Insurers' Agreement**

34.    The Debtor, the NorthWestern Entities, the Individual Defendants, AEGIS and

EIM entered into an agreement for payment of settlement and advancement of defense costs and

mutual release dated April 16, 2004 (the "Insurers' Agreement") whereby the parties agreed

upon a method for payment of the Settlement amount and for advancement of defense costs by

AEGIS and EIM, and to compromise, settle and resolve all current and future disputes, claims,

---

[5] A copy of the agreement with Hylland is attached hereto as Exhibit B.

actions, suits, demands, and causes of action for coverage under the AEGIS and EIM policies

relating to the Securities Litigation (except as otherwise provided for in the Insurers'

Agreement).[6]

35.    The Insurers' Agreement, which is subject to the MOU, provides as follows:

(a)    Until the earlier of the date on which the AEGIS policy's limit of liability is exhausted or the AEGIS Cut-Off Date (as defined in the Insurers' Agreement) has occurred, AEGIS will advance under the AEGIS policy those legal fees and expenses which are reasonable, necessary and covered as "Defense Costs" under the AEGIS policy, consistent with (i) this Court's order authorizing such advancements entered on January 14, 2004 and (ii) the coverage positions adopted to date by AEGIS under the AEGIS policy.

(b)    As of the Settlement funding date agreed upon by AEGIS and the other parties, which is the date on which Final Approval of the Settlement has occurred (the "Funding Date"), AEGIS will pay to the Escrow Account $35,000,000 from the AEGIS policy minus any amounts which, as of such date, AEGIS has paid or advanced under the AEGIS policy (the "AEGIS Settlement Contribution").

(c)    As of the Funding Date, EIM will pay into the Escrow Account the balance of the $37,000,000 settlement amount after deducting the AEGIS Settlement Contribution (the "EIM Settlement Contribution").

(d)    EIM will continue advancing under the EIM policy after the AEGIS Cut-off Date until the Funding Date, those legal fees and expenses incurred by the Insureds in connection with the SEC Investigation (as defined in the Insurers' Agreement) that are reasonable and necessary, consistent with the other provisions of the Insurers' Agreement. After the Funding Date, to the extent the EIM policy has not been exhausted by payment of judgments, settlements, and/or defense costs, EIM will continue to advance reasonable and necessary legal fees and expenses incurred by the Insureds in connection with the SEC Investigation on the terms set forth in detail in the Insurers' Agreement.

(e)    Upon payment of the AEGIS Settlement Contribution, the Settling Insureds (as defined in the Insurers' Agreement), including the Debtor, shall release AEGIS and EIM as set forth in detail in the Insurers' Agreement. However, nothing in the Insurers' Agreement shall release and discharge the AEGIS Parties (as defined in the Insurers' Agreement) (i) from their obligations with respect to defense or indemnification of any claims, suits, or proceedings of any kind other than the Securities Litigation that are owed by the AEGIS Parties under any insurance policy issued by AEGIS to the Settling Insureds other than the AEGIS policy (No. D0626A1A00) or any prior AEGIS D&O policies; or (ii) from any obligations expressly agreed to and imposed by this Agreement. As to the EIM Parties (as defined in the Insurers' Agreement"), nothing shall release or discharge the EIM Parties (i) from their obligations with

---

[6] A copy of the Insurers' Agreement is attached hereto as Exhibit C.

respect to defense or indemnification of covered claims under the EIM Policy (No. 900588-00DO) with regard to the policy limits remaining after payment of the EIM Settlement Contribution; or (ii) from any obligations expressly agreed to and imposed by the Insurers' Agreement.

(f) Upon payment of the AEGIS Settlement Contribution and the EIM Settlement Contribution, the AEGIS Parties and the EIM Parties, respectively, shall release and forever discharge the Settling Insureds, including the Debtor, as set forth in detail in the Insurers' Agreement.

36.    The presiding United States District Court Judge in the Securities Litigation, the

Honorable Lawrence L. Piersol, is to retain jurisdiction to resolve any disputes over the

Settlement and its enforcement until the Stipulation of Settlement is finalized and executed by

the Settling Parties.

### LEGAL BASIS FOR RELIEF

37.    This Court may authorize the Debtor to resolve litigation with the parties to the

Securities Litigation on the basis set forth in the MOU. A compromise that involves a

disposition of property of the estate must be approved by the Bankruptcy Court if it is outside the

ordinary course of business. *See* 11 U.S.C. § 363(b) ; Myers v. Martin (In re Martin), 91 F.3d

389, 394 (3d Cir. 1996). Bankruptcy Rule 9019 sets forth the standard for Bankruptcy Court

approval of compromises, providing that "[o]n motion by the [debtor-in-possession] and after

notice and a hearing, the court may approve a compromise or settlement." Bankruptcy Rule

9019(a). "[T]he decision whether to approve a compromise under Rule 9019 is committed to the

sound discretion of the Court, which must determine if the compromise is fair, reasonable, and in

the interest of the estate." In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997) (declining to

approve settlement found to be sub rosa plan); *see* In re Marvel Entertainment Group, Inc., 222

B.R. 243 (D. Del. 1998) (proposed settlement held in best interest of the estate).

38.     The "best interest" test requires the Debtor to show that the settlement or

compromise is "fair and equitable." In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); *see also*

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414,

424 (1968); Tindall v. Mavrode (In re Mavrode), 205 B.R. 716, 721 (Bankr. D.N.J. 1997).

39.     In determining whether a proposed settlement is fair and equitable, the Court

should consider "(a) the probability of success in the litigation; (b) the difficulties, if any, to be

encountered in the matter of collection; (c) the complexity of the litigation involved, and the

expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the

creditors. . . ". Woodson, 839 F.2d at 620; In re Martin, 91 F.3d at 393 (3d Cir. 1996); *see also*

In re Columbia Gas Sys., Inc., Nos. 91-803, 91-804, 1995 WL 404892, at *1 (Bankr. D. Del.

June 16, 1995) ("Relevant factors to consider in evaluating the settlement include the probability

of success in the claims litigation, complexity of litigation, expense, inconvenience and delay

attending to the litigation, interests of creditors, and the extent to which the settlement is truly the

product of arm's length bargaining and not of fraud and collusion.").

40.     The Debtor submits that the MOU satisfies the standards set forth above.  The

terms of the MOU were reached only after a lengthy mediation and arm's length negotiations

between the parties.  Moreover, the Debtor's contribution under the Settlement is non-monetary

and there is no direct financial impact on the Debtor's estate.  As discussed above, the Debtor's

only obligations are to cause its insurers, AEGIS and EIM, to deliver $37,000,000 in full

settlement and compromise of the Securities Litigation and to provide the releases set forth in the

MOU.[7]  Further, the terms set forth in the MOU resolve actual and potential disputes and

---

[7] The settlement approved in the Columbia Gas case included funds from the debtor's insurance carrier. *See* Order
Confirming the Third Amended Plan of Reorganization of the Columbia Gas System, Inc., dated Nov. 15, 1995
(Bankr. D. Del.).  Bankruptcy courts have also allowed the proceeds of insurance policies to be transferred and

controversies that, if permitted to continue, would involve time-consuming and expensive proceedings for the Debtor. Under the Settlement, the Debtor is released and discharged from any and all claims and causes of action asserted or which could have been asserted in the Securities Litigation as more fully described in the MOU. Absent approval of the MOU, the Debtor would not only be forced to engage in protracted and complex litigation with the Plaintiffs but would also not receive the benefits of the contributions of the Underwriter Defendants and Deloitte and the broad releases provided under the Settlement.

41.    Similar to the settlement fund approved under the Columbia Gas plan of reorganization, the Settlement in this case is integral to the Debtor's proposed plan of reorganization (the "Plan")[8] as it provides for the settlement of significant litigation claims and provides the release of related claims against the Debtor and certain non-Debtor affiliates. The Debtor will receive the direct and immediate benefit of having the Securities Litigation resolved. The Claim in the amount of at least $575,000,000 filed by the Plaintiffs in the Debtor's bankruptcy proceeding will be resolved by the Settlement. The resolution of the Claim will significantly simplify the implementation of the Debtor's proposed Plan and allow the Debtor's reorganization process to continue in an efficient manner. Because of the importance of the Settlement to NOR and to the success of NOR's proposed Plan, NOR is requesting Court approval at this time in order to provide assurance that it is authorized to rely on and proceed with the MOU and completion of the Stipulation of Settlement.[9]

---

benefits assigned to trusts for settlement of future claims. *See* In re Combustion Engineering, Inc., 295 B.R. 459 (Bankr. D. Del. 2003) and In re Allegheny Int'l, Inc., 126 B.R. 919 (W.D. Pa. 1991), rev'd in part on other grounds, 104 F.3d 601 (3d Cir. 1997) (court suggests creating trust for disbursement of environmental claims).

[8] On March 11, 2004, the Debtor filed its proposed Plan of Reorganization under Chapter 11 of the Bankruptcy Code.

[9] Once the Stipulation of Settlement is finalized it will be filed with both the Bankruptcy Court and the District Court and copies of the Stipulation of Settlement will be served on the Notice Parties to allow all such parties to

42.     The MOU and Stipulation of Settlement are in the estate's best interest because they provide for the dismissal of the Securities Litigation with prejudice, provide for the release of claims against the Debtor as described more fully above and in the MOU, and resolve the $575,000,000 Claim filed by the Plaintiffs in the Debtor's bankruptcy proceeding.

43.     Accordingly, the Debtor submits that there is more than sufficient business justification for the Court to approve the Debtor's entry into the MOU and authorize the Debtor to enter into the Stipulation of Settlement. The Debtor will benefit greatly from the dismissal of the Securities Litigation and the releases agreed to in the MOU. The Debtor therefore believes that the MOU is appropriate in light of the relevant factors and its terms should be approved.

## NOTICE

44.     Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) counsel for the Debtor's Pre-Petition Lenders; (iii) counsel for the Debtor's Post-Petition Lenders; (iv) counsel for the Official Committee of Unsecured Creditors; (v) the Securities and Exchange Commission; (vi) the Federal Energy Regulatory Commission; (vii) the Montana Public Service Commission; (viii) the South Dakota Public Utilities Commission; (ix) the Nebraska Public Service Commission; (x) counsel for each of the Settling Parties; and (xi) all parties that have requested special notice in this Chapter 11 case pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

---

review the Stipulation of Settlement and confirm the consistency of the terms of the MOU and the Stipulation of Settlement.

## PRIOR RELIEF

21.     No previous motion for the relief requested herein has been made to this or any

other court.

[CONCLUDED ON NEXT PAGE]

WHEREFORE, the Debtor respectfully requests that the Court enter an order (i) approving the MOU, the Hylland Agreement, and the Insurers' Agreement in substantially the form annexed hereto, (ii) authorizing the Debtor to execute any documents and take any action necessary or desirable to consummate the MOU, the Hylland Agreement, the Insurers' Agreement and the Stipulation of Settlement and (iii) granting such other and further relief as is just and proper.

Dated:  Wilmington, Delaware
        April 28, 2004

                          Respectfully submitted,

                          PAUL, HASTINGS, JANOFSKY & WALKER LLP
                          600 Peachtree Street
                          Suite 2400
                          Atlanta, GA 30308
                          Jesse H. Austin, III
                          Karol K. Denniston
                          Telephone: (404) 815-2400

                          And

                          GREENBERG TRAURIG, LLP
                          /s/ William E. Chipman, Jr.
                          Scott D. Cousins (No. 3079)
                          Victoria Watson Counihan (No. 3488)
                          William E. Chipman, Jr. (No. 3818)
                          The Brandywine Building
                          1000 West Street, Suite 1540
                          Wilmington, DE 19801
                          Telephone: (302) 661-7000

                          *Co-Counsel for the Debtor and*
                          *Debtor-in-Possession*

## MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding ("MOU") contains the material terms of a proposed settlement (the "Settlement") providing for the settlement and dismissal with prejudice of all claims against all parties in the consolidated securities class action styled *In re NorthWestern Corporation Securities Litigation*, Case No. CIV-03-4049, including *Golman Family Trust v. NorthWestern Corp.*, Case No. CIV-03-4226 (collectively, the "Class Action"), and in the consolidated shareholder derivative action styled *In re NorthWestern Corporation Derivative Litigation*, Case No. CIV-03-4091 (the "Derivative Action"), all pending in the United States District Court for the District of South Dakota (the "District Court") (collectively, the "Securities Litigation").

The parties to the Settlement are (a) the Lead Plaintiffs in the Class Action, on behalf of themselves and each of the members of the Class defined in Paragraph 1 below) and the Plaintiffs in the Derivative Action (collectively, the "Plaintiffs"); (b) the NorthWestern-related defendants that are or were previously named as defendants in either the Class Action or the Derivative Action, or both, namely NorthWestern Corporation, NorthWestern Capital Financing II, NorthWestern Capital Financing III, Blue Dot Services, Inc., Netexit, Inc. (formerly known as Expanets, Inc.) ("Expanets") (collectively, the "NorthWestern Entities"), and individuals Richard R. Hylland, Merle D. Lewis, Kipp D. Orme, Daniel K. Newell, David A. Monaghan, Marilyn R. Seymann, Randy G. Darcy, Gary Drook, Jerry W. Johnson, Larry F. Ness, Bruce I. Smith, Kurt Whitesel, Eric R. Jacobsen, and John Charters (collectively, the "Individual Defendants"); (c) the insurers for the NorthWestern Entities and the Individual Defendants, namely, Associated Electric & Gas Insurance Services Limited ("AEGIS") and Energy Insurance Mutual ("EIM"); (d) Wilmington Trust Company; (e) the Underwriters named as defendants in the Class Action,

1

namely Morgan Stanley & Co., Incorporated, Credit Suisse First Boston Corporation (now

known as Credit Suisse First Boston LLC), UBS Warburg LLC (now known as UBS Securities

LLC), Merrill Lynch Pierce Fenner & Smith, Inc., Salomon Smith Barney, Inc. (now known as

Citigroup Global Markets, Inc.) and Prudential Securities, Incorporated (now known as

Prudential Equity Group, LLC) (collectively, the "Underwriter Defendants"); and (f) Deloitte &

Touche LLP (including Deloitte & Touche USA LLP, Deloitte Consulting LLP (successor to

Deloitte Consulting Holding LLC), Deloitte Consulting (Nevada) LLC, Deloitte Consulting LP,

Deloitte Consulting (US) LLC, and Deloitte Consulting (Holding Sub) LLC) (collectively,

"Deloitte"). (The NorthWestern Entities, the Individual Defendants, Wilmington Trust

Company, and the Underwriter Defendants are collectively referred to as "Defendants"; the

Plaintiffs, the NorthWestern Entities, the Individual Defendants, Wilmington Trust Company,

the Underwriter Defendants and Deloitte are collectively referred to as the "Settling Parties" or

the "Parties"). Counsel for the Plaintiffs in the Class Action are referred to as "Class Counsel";

Counsel for the Plaintiffs in the Securities Litigation are referred to individually and collectively

as "Plaintiffs' Counsel"; the firm of Milberg Weiss Bershad Hynes & Lerach, LLP is referred to

as "Plaintiffs' Settlement Counsel"; and counsel for the Derivative Action Plaintiffs are referred

to as "Derivative Counsel".).

　　　The Settlement was reached by the Settling Parties on February 7, 2004, by and through

their respective counsel and following a mediation before Antonio Piazza of Gregorio,

Haldeman, Piazza, Rotman & Matityahu. The Settling Parties have agreed that they will

cooperate expeditiously and in good faith to prepare a Stipulation of Settlement and

accompanying papers which shall embody the terms set forth herein and such other and

consistent terms as are agreed upon by counsel for the Settling Parties.

1.  Pursuant to the terms of the Settlement as set forth in this MOU, the Settling
    Parties have agreed to the settlement of claims brought by members of the class
    defined below (the "Class"):

    All persons who purchased or otherwise acquired any of the following
    enumerated securities of NorthWestern Corporation ("NorthWestern"),
    NorthWestern Capital Financing II ("NWCFII"), and NorthWestern
    Capital Financing III ("NWCFIII") between August 2, 2000 and April 15,
    2003 inclusive (the "Class Period"), and who incurred losses on such
    securities: NorthWestern common stock; NorthWestern 7.85% senior
    notes due April 2007; NorthWestern 8.75% ten-year senior notes due
    April 2012; NWCFII 8.25% Trust Preferred Capital securities; and
    NWCFIII 8.10% Trust Preferred Capital securities.
    Excluded from the Class are: (i) Defendants; (ii) Deloitte; (iii) members
    of the immediate families of each of the Individual Defendants; (iv) any
    entity in which any Defendant or Deloitte has or had a controlling interest;
    (v) current or former officers and directors of any of the NorthWestern
    Entities, Deloitte, Wilmington Trust, or the Underwriter Defendants; and
    (vi) the legal representatives, heirs, successors, or assigns of any such
    excluded person or entity.

2.  In settlement of the claims asserted in the Securities Litigation, the Parties have
    agreed that the payments set forth in subparagraphs (a), (b), and (c) shall be made
    as specified in Paragraph 3, and the claim set forth in subparagraph (d) shall be
    given, all as consideration to Plaintiffs in exchange for the releases, dismissals

3

and other consideration given to Defendants and Deloitte as set forth in this
MOU. The total of the amounts set forth in subparagraphs (a), (b), (c) and (d)
below (plus all interest earned on the amounts in (a), (b) and (c) from the date of
deposit of funds through the date of distribution of the escrowed funds as set forth
in Paragraph 3) less $810,000 for attorneys' fees payable to Derivative Counsel,
pursuant to Paragraph 3, shall be referred to as the "Settlement Fund".

(a)     The NorthWestern Entities, with the exception of Expanets, and the
        Individual Defendants shall cause their insurers, AEGIS and EIM, to
        deliver the sum of Thirty-Seven Million Dollars ($37,000,000.00) in full
        settlement and compromise of the Securities Litigation and for the release
        and discharge of any and all claims and causes of action asserted or which
        could have been asserted in the Securities Litigation, as specified in
        Paragraph 5.

(b)     The Underwriter Defendants shall deliver or cause their insurers to deliver
        the sum of Two Million Dollars ($2,000,000.00) in full settlement and
        compromise of the Securities Litigation and for the release and discharge
        of any and all claims and causes of action asserted or which could have
        been asserted in the Securities Litigation, as specified in Paragraph 5.

(c)     Deloitte shall deliver or cause its insurers to deliver the sum of Two
        Million Dollars ($2,000,000.00) in full settlement and compromise and for
        the release and discharge of any and all claims and causes of action

4

asserted or which could have been asserted in the Securities Litigation if Deloitte had been made a party, as specified in Paragraph 5.

(d)     On February 7, 2004, the Parties agreed as follows: "Expanets will agree to a $20 million liquidated claim against Expanets as if Plaintiffs' claims asserted in their federal securities act action had been resolved to judgment on behalf of plaintiff class, subject to confirmation by creditors committee and management approval by close of business Weds. 2/11/04. No concession is made by the parties regarding priority of claims." The confirmation and approval referenced above were provided. The Parties further agree that there is no coverage for the NorthWestern Entities and the Individual Defendants for the Securities Litigation or the Released Claims other than AEGIS Policy No. D0626A1A00 and EIM Policy No. 900588-00DO, and that none of the Parties will make any claim for coverage under either of the above Policies for the claim described in this Paragraph 2(d) or for any legal fees or expenses incurred by any of the Parties in connection with such claim.

3.     The Defendants and Deloitte shall each deposit, or cause to be deposited, their respective share (as set forth in Paragraph 2) of the total sum of $41,000,000 (the Settlement Fund plus $810,000 for attorneys' fees incurred by Derivative Counsel on behalf of the Derivative Action Plaintiffs for their role in obtaining certain corporate governance enhancements) in an interest bearing escrow account administered by the independent escrow agent, San Diego National Bank (the "Escrow Account") within five (5) business days after the date on which both of

5

the following have occurred: (a) the Bankruptcy Court has approved the Settlement pursuant to the terms of this MOU; and (b) the District Court has entered an Order approving the Settlement and dismissing the Securities Litigation with prejudice. The Escrow Account is to be designated, with approval and agreement by counsel for all Parties, and controlled by Plaintiffs' Settlement Counsel for the benefit of Plaintiffs and the Class. The Stipulation of Settlement shall set forth procedures for the investment of the escrowed funds and for disbursement from the Escrow Account.

4.       As used in this MOU, the term "Final Approval" shall mean the date on which both of the following events have occurred: (a) entry of judgment by the District Court in the Securities Litigation, including a Bar Order, approving the Settlement and dismissing the Securities Litigation as against all Defendants and Deloitte with prejudice and without costs to any of the Parties, that has become final and no longer subject to further appeal or review, whether by exhaustion of any possible appeal, lapse of time, or otherwise; and (b) an order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), in the matter entitled *In re NorthWestern Corporation, Debtor*, Case No. 03-12872 (CGC) (the "NorthWestern Bankruptcy Matter"), approving the Settlement pursuant to the terms of this MOU, that has become final and no longer subject to further appeal or review, whether by exhaustion of any possible appeal, lapse of time, or otherwise.

5.       The Stipulation of Settlement and the order of approval to be issued by the District Court shall provide for dismissal of the Securities Litigation with

6

prejudice and shall include a release of all claims in substantially the following form:

The Plaintiffs in the Securities Litigation, including the members of the Class and the Derivative Action Plaintiffs, on behalf of themselves, and any and all of their former and present partners, employees, directors, officers, agents, accountants, attorneys, parents, subsidiaries, affiliates and all of their respective predecessors, successors, assigns, heirs, executors, administrators, agents, and representatives (collectively, the "Releasing Parties") shall be deemed to have fully, finally and forever released, relinquished and discharged all Defendants, Deloitte, and all non-Defendant underwriters involved in any of the offerings for the securities listed in Paragraph 1, and any and all of their former and present partners, employees, principals, directors, officers, agents, accountants, attorneys, parents, subsidiaries, affiliates, insurers, reinsurers, and all of their respective predecessors, successors, assigns, heirs, executors, administrators, agents, and representatives (collectively, the "Released Parties"), from all claims, demands, rights, liabilities, and causes of action of every nature and description whatsoever, whether based in law or equity, on federal, state, local, statutory or common law, or any other law, rule or regulation, known or unknown, that were asserted by or that might have been asserted by the Releasing Parties against the Released Parties in the Securities Litigation or in any other forum or proceeding, including, without limitation, claims for fraud, negligence, gross negligence,

7

negligent misrepresentation, violations of any state or federal statutes or regulations, breach of duty of care, breach of duty of loyalty, breach of fiduciary duty, insider trading, abuse of control, mismanagement or gross mismanagement, corporate waste, malpractice, breach of contract, or failure to adequately perform professional services for any of the NorthWestern Entities, all arising out of, relating to, or in connection with (a) the purchase or acquisition by any means, directly or indirectly, during the Class Period of the securities enumerated in the Class definition in Paragraph 1 and based on or related to the securities violations alleged in the Class Action; or (b) any of the acts, omissions, misrepresentations, facts, events, matters, transactions or occurrences which were alleged, asserted or contended, or which could have been alleged, asserted, or contended, by any of the Releasing Parties against the Released Parties based on or related to the wrongful conduct alleged in the Securities Litigation (all collectively, "Released Claims").

However, Released Claims do not include (i) any claims against securities brokers or dealers that are based solely on allegations of churning, misappropriation of funds, or breach of the duty to "know your customer" and that could not have been brought in the Securities Litigation; or (ii) any claims asserted in the following pending litigations: (1) the CornerStone Propane Partners, L.P. securities class actions, consolidated as *In re CornerStone Propane Partners L.P. Securities Litigation*

8

(U.S.D.C., N.D. Cal., Case No. C03-2522 MHP); (2) the CornerStone
Propane Partners L.P. derivative actions, *Andrews v. Baxter, et al.*, and
*Tyndall v. Baxter, et al.* (Cal. Sup. Ct., County of Santa Cruz, Case Nos.
CV 146662 and CV 146661); (3) *McGreevey v. Montana Power Co., et
al., and related actions* (U.S.D.C., D. Montana, Case No. CV-03-01-BU-
SEH); (4) the TouchAmerica securities class actions, consolidated as *In re
TouchAmerica Holdings, Inc. Securities Litigation* (U.S.D.C., D. Montana,
Case No. CV-02-57-BU-SEH); (5) the TouchAmerica ERISA class
actions, consolidated as *In re TouchAmerica Holdings, Inc. ERISA
Litigation* (U.S.D.C., D. Montana, Case No. CV-02-106-BU-SEH); (6)
*Mewhinney v. CornerStone Propane GP, Inc., et al.* (Circuit Court of the
City of St. Louis, Missouri, Case No. 032-1181); and (7) *Cohen v.
NorthWestern Growth Corporation, et al.* (U.S.D.C., D. South Dakota,
Case No. 04-4043).

"Unknown claims" means any and all settled claims which any Releasing
Party does not know or suspect to exist in his, her or its favor at the time
of the release of the Released Parties, which if known by him, her or it
might have affected his, her or its decision not to object to the Stipulation
of Settlement. With respect to any and all claims, the Parties stipulate and
agree that upon Final Approval, the Plaintiffs shall expressly, and each
Class member and other Releasing Party shall be deemed to have, and by
operation of the judgment entered in the Securities Litigation shall have,

9

expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or any other state, sovereign or jurisdiction, or principle of common law which is similar, comparable, or equivalent to Cal. Civ. Code § 1542 which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

However, nothing in this release shall be construed in any way as a release of the Plaintiffs' rights to pursue their claim against Expanets on their own behalf and on behalf of the Class, as set forth in Paragraph 2(d).

6.    The Stipulation of Settlement shall provide for a release, in substantially the same form as that set forth in Paragraph 5, by each of the Released Parties as to each other Released Party of all claims for reimbursement, contribution or indemnification, which arise out of or relate to the Released Claims; provided that the Stipulation of Settlement shall not provide for a release of any claim of the Underwriter Defendants against any non-Defendant underwriter involved in any offerings for the securities set forth in Paragraph 1.

7.    The Stipulation of Settlement shall provide for a release, in substantially the same form as that set forth in Paragraph 5, by each of the Released Parties of Plaintiffs,

10

the Class and all Plaintiffs' Counsel of all claims arising out of or relating to the institution, prosecution, assertion, settlement or resolution of the Securities Litigation and the Released Claims.

8.     The estate of the Debtor, NorthWestern Corporation, in the NorthWestern Bankruptcy Matter shall provide a release, in substantially the same form as that set forth in Paragraph 5, of all claims against the Individual Defendants in connection with the Securities Litigation.

9.     This Settlement is conditioned upon the negotiation and execution of a Stipulation of Settlement. The Parties acknowledge that this MOU may not set forth all of the substantive terms necessary and appropriate for a complete and final Settlement, and agree that they will:  (a) cooperate in good faith to prepare the Stipulation of Settlement expeditiously; (b) jointly seek preliminary and final court approval of the Stipulation of Settlement as soon as possible; and (c) jointly seek a stay of all schedules and deadlines pending effectuation of this Settlement.

10.    The Stipulation of Settlement shall provide for, among other things, that:  (a) the District Court shall order preliminary approval of the Stipulation of Settlement and direct that notice of the Settlement be provided to the Class; (b) the consideration to the Class set forth in Paragraph 2 shall be provided in order to fund the Settlement; (c) the Defendants and Deloitte have denied and continue to deny that they have committed any act or omission giving rise to any liability and/or violation of law; (d) neither the Settlement nor any of its terms shall constitute an admission or finding of any wrongful conduct; (e) Plaintiffs

11

conclude that the Settlement is fair, reasonable and adequate and in the best interests of the members of the Class; (f) any decision by the District Court regarding any plan of allocation of the Settlement among the members of the Class shall not affect the validity or finality of the Settlement; and (g) Defendants and Deloitte shall have no responsibility for and will not comment on the plan of allocation of the Settlement Fund. The Stipulation shall also address, among other things, the procedures for notice to members of the Class of the Settlement, costs of notice, and procedures to submit proofs of claim.

11.    This is not a "claims-made" settlement and, if all conditions under the Stipulation of Settlement are satisfied and the Settlement receives Final Approval, no settlement consideration will be returned to any of the Defendants or their insurers, or to Deloitte.

12.    Except for the fees and costs set forth in Paragraphs 3, 13, 14 and 15(a), the Defendants and their insurers and Deloitte shall not be liable for any costs, fees or expenses of any kind incurred by Plaintiffs' respective attorneys, experts, consultants, agents and representatives, but such attorneys' and experts' fees, costs and expenses (except for the Derivative Action fees referenced in Paragraph 3), shall be payable from the Settlement Fund to the extent ordered by the District Court. Defendants and their insurers and Deloitte shall not be liable for any claims resulting from the distribution of the Settlement Fund or the administration of claims.

12

13.    Attorneys' fees and costs awarded shall, with court approval, be paid to Plaintiffs' Counsel within ten (10) business days after the date on which both of the following have occurred:  (a) the Settlement Fund has been paid into the Escrow Account; and (b) the District Court has entered an order awarding such fees and costs, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof.  However, such payment is subject to the joint and several obligations of Class Counsel to make appropriate refunds or repayments to the Settlement Fund plus accrued interest at the same net rate as is earned by the Settlement Fund, if and when, as a result of any objection, appeal and/or further proceedings on remand, or successful collateral attack, the fee or cost award is reduced or reversed.  Plaintiffs' Settlement Counsel shall make the appropriate refund or repayment in full (with interest accrued thereon) on behalf of Class Counsel within thirty (30) days following any such reduction of the fee or cost award, or the termination of the Settlement.  The payment to Derivative Counsel pursuant to Paragraph 3 is subject to such counsel's obligation to refund such sum to the Defendants and their insurers and to Deloitte, in proportion to their respective payments into the Escrow Account, within thirty (30) days of the denial of any of the orders required for Final Approval as set forth in Paragraph 4, or of the termination of the Settlement.  The obligation to make appropriate refund or repayment may be enforced by summary orders of the District Court.

14.    The reasonable and necessary costs of administration of the Settlement, notice to the Class of the Settlement and taxes due on the Settlement Fund, not to exceed

13

$150,000 collectively, shall be paid out of the Settlement Fund and may be paid prior to Final Approval of the Settlement.

15.    If the Settlement is terminated or is not approved by the District Court or the Bankruptcy Court, or both, or if for any reason Final Approval does not occur: (a) the balance of the Settlement Fund will be returned to the Defendants and Deloitte and their insurers in proportion to their respective payments into the Escrow Account within ten (10) business days of such termination or non-approval, less reasonable amounts paid for cost of notice, administration and taxes as set forth in Paragraph 14; (b) Plaintiffs' Settlement Counsel and Derivative Counsel will refund to Defendants and their insurers and to Deloitte, in proportion to their respective payments into the Escrow Account, all sums paid to such counsel within thirty (30) days of such termination or non-approval, as set forth in Paragraph 13; (c) the Parties shall revert to their litigation positions on February 6, 2004; (d) the fact and terms of this Settlement shall not be used for any purpose in connection with the trial or prosecution of the Securities Litigation or for any purpose in any other action or proceeding not directly related to the Settlement.

16.    The Defendants and Deloitte shall have the right but not the obligation to terminate the Settlement in the event that putative class members who purchased during the Class Period an agreed-upon percentage of the securities enumerated in the Class definition in Paragraph 1 choose to exclude themselves from the Class. This number of shares shall be kept confidential and disclosed only to the Parties, their counsel, the applicable insurers, and the District Court.

17.   The Defendants' and Deloitte's execution of this MOU does not constitute an
      admission by any of the Parties of any violation of the federal securities laws, and
      Defendants and Deloitte specifically deny that they have violated the securities
      laws or any other laws or any obligations owed to Plaintiffs or the Class. The
      provisions of this MOU shall not be deemed or offered or received in evidence as
      a presumption, a concession, or an admission of any fault, liability, or
      wrongdoing, and, except as required to enforce this Settlement, such terms shall
      not be offered or received in evidence or otherwise used by any of the Parties in
      the Securities Litigation or any other actions or proceedings, whether civil,
      criminal, or administrative. The Stipulation of Settlement shall contain
      comparable disclaimers of liability.

18.   Each of the Settling Parties warrants and represents that he, she or it has not
      assigned or transferred, and will not assign or transfer, to any person or entity any
      Released Claims or any other claims related to the matters alleged in the
      Securities Litigation. Each counsel or other person executing this MOU on behalf
      of any Party hereto represents and warrants that such person has full authority to
      do so.

19.   The Defendants, Deloitte, and all other signatories to this MOU agree that they
      will not assert in any proceedings in the District Court, the Bankruptcy Court, or
      in any other forum that the Securities Litigation was not filed in good faith or was
      filed in violation of Rule 11 of the Federal Rules of Civil Procedure.

20.  Judge Piersol, the presiding District Court judge in the Securities Litigation, shall

retain jurisdiction to resolve any disputes over the Settlement and its enforcement

until the Stipulation of Settlement is finalized and executed by the Parties.

21.  This Memorandum of Understanding may be amended or modified only by:

(a) the Stipulation of Settlement which, once fully executed, will supersede this

MOU; or (b) another written instrument signed by or on behalf of duly authorized

representatives of all Parties.

22.  This Memorandum of Understanding may be executed in counterparts.  All

executed counterparts and each of them shall be deemed to be one and the same

instrument.

AGREED AND APPROVED:

Dated: April 8, 2004                    HAGEN, WILKA & ARCHER, P.C.
                                       THOMAS K. WILKA

                                       _____
                                            THOMAS K. WILKA

                                       418 First National Bank Building
                                       100 South Phillips, P.O. Box 964
                                       Sioux Falls, SD  57101-0964
                                       Telephone: 605/334-0005
                                       605/334-4814 (fax)

16

DOUGHERTY & DOUGHERTY, LLP
TIMOTHY J. DOUGHERTY


TIMOTHY J. DOUGHERTY

100 North Phillips Avenue, suite 402
Sioux Falls, SD 57101
Telephone: 605/335-8586
605/331-2519 (fax)

Co-Liaison Counsel

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
DARREN J. ROBBINS
JOY ANN BULL


JOY ANN BULL

401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
PATRICK J. COUGHLIN
REED R. KATHREIN
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

17

DOUGHERTY & DOUGHERTY, LLP
TIMOTHY J. DOUGHERTY

_____
TIMOTHY J. DOUGHERTY

100 North Phillips Avenue, suite 402
Sioux Falls, SD 57101
Telephone: 605/335-8586
605/331-2519 (fax)

Co-Liaison Counsel

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
DARREN J. ROBBINS
JOY ANN BULL

_____
JOY ANN BULL

401 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)

MILBERG WEISS BERSHAD
  HYNES & LERACH LLP
PATRICK J. COUGHLIN
REED R. KATHREIN
DENNIS J. HERMAN
WILLOW E. RADCLIFFE
100 Pine Street, Suite 2600
San Francisco, CA 94111
Telephone: 415/288-4545
415/288-4534 (fax)

17

SCOTT & SCOTT, LLC
NEIL ROTHSTEIN

*Neil Rothstein*
NEIL ROTHSTEIN

108 Norwich Avenue
Colchester, CT 06415
Telephone: 860/537-3818
860/537-4432 (fax)

Co-Lead Counsel for Plaintiffs in the Class
Action

DeCARLO, CONNOR & SELVO
JOHN T. DeCARLO
DANIEL M. SHANLEY
533 South Fremont Avenue, 9th Floor
Los Angeles, CA 90071-1706
Telephone: 213/488-4100
213/488-4180 (fax)

Attorneys for Plaintiffs in the Class Action

Dated: April ___, 2004

ROBBINS UMEDA & FINK, LLP
BRIAN ROBBINS

_____
BRIAN ROBBINS

1010 Second Avenue, Suite 2360
San Diego, CA 92101
Telephone: 619/525-3990
619/525-3991 (fax)

Counsel for Plaintiffs in the Derivative Action

18

SCOTT & SCOTT, LLC
NEIL ROTHSTEIN

_____

NEIL ROTHSTEIN

108 Norwich Avenue
Colchester, CT  06415
Telephone:  860/537-3818
860/537-4432 (fax)

Co-Lead Counsel for Plaintiffs in the Class
Action

DeCARLO, CONNOR & SELVO
JOHN T. DeCARLO
DANIEL M. SHANLEY
533 South Fremont Avenue, 9th Floor
Los Angeles, CA 90071-1706
Telephone: 213/488-4100
213/488-4180 (fax)

Attorneys for Plaintiffs in the Class Action

Dated: April __7__, 2004        ROBBINS UMEDA & FINK, LLP
                                BRIAN ROBBINS

_____
                    BRIAN ROBBINS

1010 Second Avenue, Suite 2360
San Diego, CA  92101
Telephone: 619/525-3990
619/525-3991 (fax)

Counsel for Plaintiffs in the Derivative Action

18

Dated: April 8, 2004                 PAUL, HASTINGS, JANOFSKY
                                     & WALKER LLP
                                     JOHN A. REDING, JR.
                                     GRACE A. CARTER

                                     GRACE A. CARTER


                                     55 Second Street, 24th Floor
                                     San Francisco, CA 94015
                                     Telephone: 415/856-7000
                                     415/856-7100 (fax)

                                     PAUL, HASTINGS, JANOFSKY
                                     & WALKER LLP
                                     WILLIAM F. SULLIVAN

                                     3579 Valley Centre Drive
                                     San Diego, CA 92130
                                     Telephone: 858/720-2500
                                     858/720-2555 (fax)

                                     Attorneys for Defendants NorthWestern
                                     Corporation, NWCF II, NWCF III, Netexit, Inc.
                                     (formerly known as Expanets, Inc.), and Blue
                                     Dot Services, Inc.

                                     JESSE H. AUSTIN, III
                                     PAUL, HASTINGS, JANOSFKY
                                     & WALKER LLP
                                     600 Peachtree Street N.E., Suite 2400
                                     Atlanta, GA 30308-2222
                                     Telephone: 404/815-2400
                                     404/815-2424 (fax)

                                     Bankruptcy Counsel for NorthWestern
                                     Corporation

19

Dated: April **14**, 2004

WINTHROP & WEINSTINE, P.A.
DAVID P. PEARSON
*KARL E. ROBINSON*

_____
DAVID P. PEARSON
*KARL E. ROBINSON*
225 South 6th Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: 612/604-6400
612/604-6800 (fax)

Attorneys for Defendant Richard Hylland

Dated: April ___, 2004

LATHAM & WATKINS LLP
PAUL H. DAWES

_____
PAUL H. DAWES

135 Commonwealth Drive
Menlo Park, CA 94025
Telephone: 650/463-2626
650/463-2600 (fax)

LATHAM & WATKINS LLP
MICHELE F. KYROUZ
505 Montgomery Street, Suite 1900
San Francisco, CA 94111
Telephone: 415/391-0600
415/395-8095 (fax)

Attorneys for Defendants Marilyn R. Seymann,
Randy G. Darcy, Gary I. Drook, Jerry W.
Johnson, Larry F. Ness, and Bruce I. Smith

20

Dated: April ___, 2004

WINTHROP & WEINSTINE, P.A.
DAVID P. PEARSON

_____
DAVID P. PEARSON

225 South 6th Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: 612/604-6400
612/604-6800 (fax)

Attorneys for Defendant Richard Hylland

Dated: April 7, 2004

LATHAM & WATKINS LLP
PAUL H. DAWES

_____
PAUL H. DAWES

135 Commonwealth Drive
Menlo Park, CA 94025
Telephone: 650/463-2626
650/463-2600 (fax)

LATHAM & WATKINS LLP
MICHELE F. KYROUZ
505 Montgomery Street, Suite 1900
San Francisco, CA 94111
Telephone: 415/391-0600
415/395-8095 (fax)

Attorneys for Defendants Marilyn R. Seymann,
Randy G. Darcy, Gary I. Drook, Jerry W.
Johnson, Larry F. Ness, and Bruce I. Smith

20

Apr-13-04  04:37pm   From-                                    T-833   P.02/02   F-903

Dated:  April ___, 2004                    KATTEN MUCHIN ZAVIS & ROSENMAN
                                           SHELDON T. ZENNER
                                           MARY ELLEN HENNESSY
                                           DAVID J. STAGMAN


                                           DAVID J. STAGMAN

                                           525 West Monroe
                                           Suite 1600
                                           Chicago, IL  60661-3693
                                           Telephone: 312/902-5200
                                           312/902-1061 (fax)

                                           Attorneys for Defendant Kipp Orme


Dated:  April ___, 2004                    LEONARD, STREET AND DEINARD, P.C.
                                           MICHAEL G. TAYLOR


                                           _____
                                                  MICHAEL G. TAYLOR

                                           150 South Fifth Street
                                           Suite 2300
                                           Minneapolis, MN  55402
                                           Telephone: 612/335-1500
                                           612/335-1657 (fax)

                                           Attorneys for Defendants Merle Lewis, David
                                           Monaghan, Daniel Newell, Kurt Whitesel, and
                                           Eric Jacobsen

FROM LEONARD STREET AND DEINARD                (THU) 4. 8'04 10:33/ST. 10:31/NO. 4261040813 P  3

Dated: April ___, 2004                KATTEN, MUCHIN ZAVIS & ROSENMAN
                                      DAVID J. STAGMAN


                                      _____
                                             DAVID J. STAGMAN

                                      525 West Monroe
                                      Suite 1600
                                      Chicago, IL 60661-3693
                                      Telephone: 312/902-5200
                                      312/902-1061 (fax)

                                      Attorneys for Defendant Kipp Orme

Dated: April ___, 2004                LEONARD, STREET AND DEINARD, P.C.
                                      MICHAEL G. TAYLOR


                                      _____
                                             MICHAEL G. TAYLOR

                                      150 South Fifth Street
                                      Suite 2300
                                      Minneapolis, MN 55402
                                      Telephone: 612/335-1500
                                      612/335-1657 (fax)

                                      Attorneys for Defendants Merle Lewis, David
                                      Monaghan, Daniel Newell, Kurt Whitesel, and
                                      Eric Jacobsen

21

CHARLES H TORRES PC     3038308890     04/14/04  02:45pm  P. 022

Dated: April ___, 2004

KATTEN, MUCHIN ZAVIS & ROSENMAN
DAVID J. STAGMAN


_____
DAVID J. STAGMAN

525 West Monroe
Suite 1600
Chicago, IL  60661-3693
Telephone: 312/902-5200
312/902-1061 (fax)

Attorneys for Defendant Kipp Orme


Dated: April 1⅞, 2004

LEONARD, STREET AND DEINARD, P.C.
MICHAEL G. TAYLOR


_____
MICHAEL G. TAYLOR

150 South Fifth Street
Suite 2300
Minneapolis, MN  55402
Telephone: 612/335-1500
612/335-1657 (fax)

Attorneys for Defendants Merle Lewis, David
Monaghan, Daniel Newell, Kurt Whitesel, and
Eric Jacobsen

CHARLES H. TORRES, PC


_____

21

APR-12-2004  15:19    WEIL GOTSHAL                    212 735 4988    P.02/02

CHARLES H. TORRES, PC

_____

CHARLES H. TORRES

Mile High Center
1700 Broadway
Suite 1770
Denver, CO  80290
Telephone:  303/830-8885
303/830-8890 (fax)

Attorneys for Defendant John Charters

WEIL, GOTSHAL & MANGES LLP
JOSEPH S. ALLERHAND
JOHN A. NEUWIRTH

_____

JOHN A. NEUWIRTH

767 Fifth Avenue
New York, NY  10153-0119
Telephone:  212/310-8000
212/310-8007 (fax)

Attorneys for Underwriters Morgan Stanley &
Co., Incorporated, Credit Suisse First Boston
Corporation (now known as Credit Suisse First
Boston LLC), UBS Warburg LLC (now known
as UBS Securities LLC), Merrill Lynch Pierce
Fenner & Smith, Inc., Salomon Smith Burney,
Inc. (now known as Citigroup Global Markets,
Inc.) and Prudential Securities, Incorporated
(now known as Prudential Equity Group, LLC)

22

Dated: April _7_, 2004

SIDLEY AUSTIN BROWN & WOOD LLP
WILLIAM F. LLOYD

_____
WILLIAM F. LLOYD

Bank One Plaza
10 S. Dearborn Street
Chicago, IL 60603
Telephone: 312/853-7000
312/853-7036 (fax)

Attorneys for Deloitte & Touche LLP (including
Deloitte & Touche USA LLP, Deloitte Consulting
LLP (successor to Deloitte Consulting Holding
LLC), Deloitte Consulting (Nevada) LLC,
Deloitte Consulting LP, Deloitte Consulting (US)
LLC, and Deloitte Consulting (Holding Sub)
LLC)

Dated: April ___, 2004

BAILEY CAVALIERI LLC

_____
DAN A. BAILEY

One Columbus Center
10 West Broad Street
Columbus, OH 43215
Telephone: 614/221-3155
615/221-0479 (fax)

Attorneys for Associated Energy & Gas Insurance
Services Limited (AEGIS)

23

APR. 8. 2004  9:14AM    6142210479 BAILEY CAVALIERI LLC          NO. 9566   P. 2

Dated: April ___, 2004                    SIDLEY AUSTIN BROWN & WOOD LLP
                                          WILLIAM F. LLOYD


                                          _____
                                                  WILLIAM F. LLOYD

                                          Bank One Plaza
                                          10 S. Dearborn Street
                                          Chicago, IL 60603
                                          Telephone: 312/853-7000
                                          312/853-7036 (fax)

                                          Attorneys for Deloitte & Touche LLP (Including
                                          Deloitte & Touche USA LLP, Deloitte Consulting
                                          LLP (successor to Deloitte Consulting Holding
                                          LLC), Deloitte Consulting (Nevada) LLC, Deloitte
                                          Consulting LP, Deloitte Consulting (US) LLC, and
                                          Deloitte Consulting (Holding Sub) LLC)


Dated: April _8_, 2004                    BAILEY CAVALIERI LLC


                                          _____
                                                  DAN A. BAILEY

                                          One Columbus Center
                                          10 West Broad Street
                                          Columbus, OH 43215
                                          Telephone: 614/221-3155
                                          615/221-0479 (fax)

                                          Attorneys for Associated Energy & Gas Insurance
                                          Services Limited (AEGIS)


                                          23

FROM BAKER & McKENZIE, CHICAGO                    (THU) 4. 8' 04 16:57/ST. 16:56/NO. 4864627767 P 3

Dated: April 8, 2004                    BAKER & MCKENZIE

                                        Barrie L. Brejcha
                                        _____
                                        BARRIE L. BREJCHA

                                        130 E. Randolph Drive, Suite 3500
                                        Chicago, IL 60601
                                        Telephone: 312/861-2782
                                        312/861-2899 (fax)

                                        Attorneys for Energy Insurance Mutual (EIM)

SF/312256.8
04/07/04

24

04/14/2004 14:31 FAX  6126046400          WINTHROP & WEINSTINE                    @ 027/030

## AGREEMENT BETWEEN RICHARD R. HYLLAND AND NORTHWESTERN CORPORATION

1.    Notwithstanding the conditions and terms set forth in the Settlement Agreement and Mr. Hylland's confirmation by COB on Sunday, February 8, 2004, the parties agree to release their contribution and indemnity claims in and relating to the Securities and Derivative Litigation.

2.    Mr. Hylland agrees to dismiss claims against NorthWestern asserted in the Bankruptcy Court, except for the claims arising from Mr. Hylland's employment.

3.    Mr. Hylland agrees that the amount of the claims he has arising from his employment will be agreed to by Mr. Hylland and the Company as a liquated amount of $_____ in the Bankruptcy, and that Mr. Hylland will withdraw his pending appeal in the Bankruptcy Court.

4.    In the alternative, if the Company and Mr. Hylland cannot agree on a liquidated amount, the parties agree that Mr. Hylland may continue to pursue his appeal of the Bankruptcy Court's order denying his motion to lift the automatic stay and to permit Mr. Hylland to pursue his previously pending arbitration of the employment claim.

Dated: **April 14** , 2004

WINTHROP & WEINSTINE, P.A.

By:  David P. Pearson
      Karl E. Robinson

225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 5402
(612) 604-6400

Attorneys for Richard R. Hylland

Dated: **APRIL 15** , 2004

PAUL, HASTINGS, JANOFSKY & WALKER LLP

By:  John Reding
      Grace Carter
      Edward Han

55 Second Street, Twenty Fourth Floor
San Francisco, CA 94101

Attorneys for NorthWestern Corporation

2109848v1

## AGREEMENT FOR PAYMENT OF SETTLEMENT AND ADVANCEMENT OF DEFENSE COSTS AND MUTUAL RELEASE

This Agreement For Payment Of Settlement And Advancement Of Defense Costs And Mutual Release ("Agreement") is entered into as of April __, 2004 by and among the following parties (the "Parties"): (1) Associated Electric & Gas Insurance Services Limited and its managing general agent, AEGIS Insurance Services, Inc. (collectively "AEGIS"); (2) Energy Insurance Mutual ("EIM"); (3) NorthWestern Corporation ("NorthWestern") and the NorthWestern-related entities who are or were previously named defendants in the actions described below, namely NorthWestern Capital Financing II, NorthWestern Capital Financing III, Blue Dot Services, Inc., Netexit, Inc. (formerly known as Expanets, Inc.) ("Expanets") (collectively, the "NorthWestern Entities"); and (4) the NorthWestern-related individuals who are or were previously named defendants in the actions described below, namely Richard R. Hylland, Merle D. Lewis, Kipp D. Orme, Daniel K. Newell, David A. Monaghan, Randy G. Darcy, Gary G. Drook, Jerry W. Johnson, Larry F. Ness, Bruce I. Smith, Kurt D. Whitesel, Eric R. Jacobsen, Marilyn R. Seymann and John C. Charters (collectively, the "Individual Defendants"). The Northwestern Entities and the Individual Defendants are referred to collectively as the "Insureds".

WHEREAS, AEGIS issued to NorthWestern the primary directors and officers liability insurance policy, No. D0626A1A00 for the period from June 1, 2000 to June 1, 2003 (the "Policy Period"), with a policy limit of $35 million and subject to a deductible of $200,000 ("AEGIS Policy");

WHEREAS, EIM issued to NorthWestern the excess directors and officers liability policy, No. 900588-00DO, having the same period as the Policy Period and a policy limit of $25 million excess of the $35 million AEGIS Policy ("EIM Policy");

WHEREAS, during the Policy Period, the NorthWestern Entities and Individual Defendants who are Insureds under the AEGIS Policy were named defendants in various lawsuits, including the lawsuits captioned In Re NorthWestern Corporation Securities Litigation, Case No. 03-CV-4049, United States District Court for the District of South Dakota (collectively, the "Class Action") and In re NorthWestern Corporation Derivative Litigation, Case No. CIV-03-4091, United States District Court for the District of South Dakota ("Derivative Action") (collectively, the "Securities Litigation").

WHEREAS, the parties to the Securities Litigation and AEGIS and EIM agreed in a mediation held on February 7, 2004 to settle all claims asserted therein or related thereto, pursuant to the terms and conditions summarized in a Memorandum of Understanding ("MOU") dated as of April __, 2004 and to be finalized in a Stipulation of Settlement (the "Settlement");

WHEREAS, AEGIS and EIM have raised certain coverage issues and defenses under the AEGIS Policy and the EIM Policy with respect to the Securities Litigation and have reserved all of their rights and defenses under those Policies and available at law, including the right to deny coverage under the Policies for the Securities Litigation;

WHEREAS, the Insureds have disputed the coverage issues and defenses raised by AEGIS and EIM;

WHEREAS, the Insureds have incurred and will incur in the future certain attorneys' fees and costs in defending and settling the Securities Litigation and in the ongoing investigation by the Securities and Exchange Commission ("SEC Investigation"), together with defense costs in other claims, suits or proceedings that have been or may be filed or asserted, for which the Insureds have sought reimbursement from AEGIS under the AEGIS Policy;

WHEREAS, the Parties desire to agree upon a method for payment of the Settlement amount and for advancement of defense costs by AEGIS and EIM, and to compromise, settle and resolve all current and future disputes, claims, actions, suits, demands, and causes of action for coverage under the AEGIS and EIM Policies relating to the Securities Litigation (except as otherwise provided herein).

NOW, THEREFORE, in consideration of the mutual promises and covenants contained herein, AEGIS, EIM and the Insureds agree as follows:

1. Until the earlier of the date on which the AEGIS Policy's limit of liability is exhausted or the AEGIS Cut-Off Date defined below in Paragraph 3 has occurred, AEGIS will advance under the AEGIS Policy those legal fees and expenses which are reasonable, necessary and covered as "Defense Costs" under the AEGIS Policy, consistent with (i) the Bankruptcy Court Order authorizing such advancements, and (ii) the coverage positions adopted to date by AEGIS under the AEGIS Policy. Without limiting the foregoing, AEGIS acknowledges it will advance reasonable and necessary legal fees and expenses incurred by the Insureds in connection with the SEC Investigation as Defense Costs on account of defense of covered Securities Claims.

2. As of the settlement funding date agreed upon by AEGIS and the parties, which is the date on which "Final Approval" of the Settlement has occurred as defined in the MOU ("Funding Date"), AEGIS will pay to the Escrow Account defined in the MOU, the sum of Thirty-Five Million Dollars ($35,000,000) from the AEGIS Policy minus any amounts which, as of such date, AEGIS has paid or advanced under the AEGIS Policy (the "AEGIS Settlement Contribution").

3. As of the Funding Date, EIM will pay into the Escrow Account the balance of the $37 million settlement amount after deducting the AEGIS Settlement Contribution (the "EIM Settlement Contribution"). (AEGIS and EIM will agree upon a mechanism and date on which the remaining amount of the AEGIS Policy is fixed, and the amount of the EIM Settlement Contribution is determined ("AEGIS Cut-Off Date").) AEGIS and EIM will provide the Insureds with 10 days' prior written notice of the AEGIS Cut-off Date.

4. EIM consents to the depletion of AEGIS' policy limits as set forth in Paragraphs 1 and 2 above, and further agrees to continue advancing under the EIM Policy after the AEGIS Cut-off Date until the Funding Date, those legal fees and expenses incurred by the Insureds in connection with the SEC Investigation that are reasonable and necessary, consistent with Paragraph 1 above. After the Funding Date, to the extent the EIM Policy has not been exhausted by payment of judgments, settlements, and/or defense costs, EIM agrees to continue to advance

reasonable and necessary legal fees and expenses incurred by the Insureds in connection with the SEC Investigation, but only to the extent such fees and expenses are (a) incurred by Insureds who are then defendants in one or more securities lawsuits which (i) are related to the issues under investigation in the SEC Investigation; and (ii) constitute covered Securities Claims under the terms of the AEGIS Policy (to which the EIM Policy follows form); and (b) incurred before any such securities lawsuit(s) described in part (a) of this Paragraph 4 are settled or otherwise resolved.

5.  The Parties agree there is no coverage under the AEGIS Policy or the EIM Policy, or any other insurance policies issued by AEGIS and EIM to any of the Insureds, for the $20 milllion liquidated claim in favor of the Plaintiffs and against Expanets and defined in Paragraph 2(d) of the MOU, or for any legal fees or expenses incurred by any of the Parties in connection with such claim.

6.  EIM and the Insureds reserve their respective rights with respect to all coverage positions and determinations under the EIM Policy, including, subject to the parameters set forth in Paragraph 4 above, advancement by EIM of legal fees and expenses incurred by the Insureds.

7.  Upon payment of the AEGIS Settlement Contribution, the NorthWestern Entities and the Individual Defendants, on their own behalf and on behalf of their subsidiaries and affiliates, and all of their respective current and former agents, representatives, attorneys, successors, predecessors, owners, assigns, executors, administrators, principals, directors, officers, employees, insurers and reinsurers ("Settling Insureds"), hereby release and forever discharge AEGIS, its subsidiaries and affiliates, and all of their respective current and former agents, representatives, attorneys, successors, predecessors, owners, assigns, executors, administrators, principals, directors, officers, employees, insurers and reinsurers ("AEGIS Parties") from any and all actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, judgments and demands whatsoever in law or in equity, known or unknown including but not limited to any action, proceeding or claim arising from the AEGIS Parties' investigation, evaluation, handling or settlement of the Securities Litigation or alleging any "bad faith" or breach of any promise, oral or written, or breach of any duty grounded in law or in contract relating thereto which the Settling Insureds have or may have in the future against the AEGIS Parties arising out of or under the AEGIS Policy, or any other directors and officers liability policy or policies issued by AEGIS to NorthWestern prior to the AEGIS Policy ("prior AEGIS D&O policies"). However, nothing in this paragraph or in this Agreement shall release or discharge the AEGIS Parties (a) from their obligations with respect to defense or indemnification of any claims, suits, or proceedings of any kind other than the Securities Litigation that are owed by the AEGIS Parties under any insurance policy issued by AEGIS to the Settling Insureds other than the AEGIS Policy (No. D0626A1A00) or any prior AEGIS D&O policies; or (b) from any obligations expressly agreed to and imposed by this Agreement.

8.  Upon payment of the EIM Settlement Contribution, the Settling Insureds hereby release and forever discharge EIM, its subsidiaries and affiliates, and all of their respective current and former agents, representatives, attorneys, successors, predecessors, owners, assigns, executors, administrators, principals, directors, officers, employees, insurers and reinsurers ("EIM Parties") from any and all actions, causes of action, suits, claims for sums of money,

contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, judgments and demands whatsoever in law or in equity, known or unknown arising from the EIM Parties' investigation, evaluation, handling or settlement of the Securities Litigation, including any "bad faith" or breach of any promise, oral or written, or breach of any duty grounded in law or in contract relating thereto, which the Settling Insureds have or may have in the future against the EIM Parties arising out of or under the EIM Policy or any other insurance policy issued by EIM to NorthWestern prior to the EIM Policy. However, nothing in this paragraph or in this Agreement shall release or discharge the EIM Parties (a) from their obligations with respect to defense or indemnification of covered claims under the EIM Policy (No. 900588-00DO) with regard to the policy limits remaining after payment of the EIM Settlement Contribution; or (b) from any obligations expressly agreed to and imposed by this Agreement.

9.  Upon payment of the AEGIS Settlement Contribution, the AEGIS Partiers hereby release and forever discharge the Settling Insureds from any and all actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, judgments and demands whatsoever in law or in equity, known or unknown, which the AEGIS Parties have or may have in the future against the Settling Insureds arising out of or under the AEGIS Policy. Nothing in this paragraph or in this Agreement shall release or discharge the Settling Insureds from any obligations expressly agreed to and imposed by this Agreement.

10.  Upon payment of the EIM Settlement Contribution, the EIM Parties hereby release and forever discharge the Settling Insureds from any and all actions, causes of action, suits, claims for sums of money, contracts, controversies, agreements, costs, attorneys' fees, expenses, damages, judgments and demands whatsoever in law or in equity, known or unknown, which the EIM Parties have or may have in the future against the Settling Insureds relating to or arising out of the Securities Litigation. Nothing in this paragraph or in this Agreement shall release or discharge the Settling Insureds from any obligations expressly agreed to and imposed by this Agreement.

11.  EIM and the Insureds agree that, notwithstanding anything contained in this Agreement, the Insureds shall expressly retain their rights against EIM under the EIM Policy and under law, to pursue the Insureds' outstanding and unpaid attorneys' fees and costs, and related costs, incurred in defending and settling the Securities Litigation and any other claim or proceeding against the Insureds, and in responding to the SEC Investigation, including but not limited to (a) those fees and costs that were tendered to AEGIS under the AEGIS Policy but were outstanding and unpaid as of the AEGIS Cut-Off Date, and (b) those fees and costs tendered to EIM under the EIM Policy after the AEGIS Cut-Off Date; and EIM shall expressly retain its rights to dispute coverage for the Insureds' outstanding and unpaid attorneys' fees and costs tendered either to AEGIS or EIM.

12.  This Agreement represents a compromise of disputed claims, and payment hereunder is not to be construed as an admission of liability by any of the Parties, nor of coverage on the part of AEGIS or EIM under their respective insurance policies.

13.   In the event any of the provisions of this Agreement are deemed to be invalid and unenforceable, those provisions shall be severed from the remainder of this Agreement only if and to the extent agreed upon by the Parties.

14.   The Parties agree that this Agreement may be executed in one or more counterparts, and in both original form and one or more photocopies, each of which shall be deemed to be an original, but all of which shall be deemed to be and constitute one and the same instrument.

15.   The Parties represent and warrant that there has been no, and agree that there will be no, assignment or other transfer of any interest in any claim which they release and discharge pursuant to this Agreement.

16.   This Agreement is specifically made subject to the MOU setting forth the terms of the Settlement of the Securities Litigation, and the MOU's terms and conditions are specifically incorporated herein by reference. Subject to the foregoing, the Parties agree and acknowledge that this Agreement constitutes the entire agreement among the Parties regarding the settlement and release of the matters specified herein and that this Agreement may not be altered, amended, modified, or otherwise changed in any respect whatsoever except by a duly executed writing by all of the Parties.

17.   The Agreement is not to be construed in favor of any particular Party to the Agreement but is to be construed as if it were drafted by all Parties to the Agreement.

18.   Each Party to this Agreement understands, acknowledges and agrees that if any fact now believed to be true is found hereafter to be other than, or different from, that which is now believed, each Party expressly assumes the risk of such difference in fact and agrees that this Agreement shall and will remain effective notwithstanding any such difference in fact.

19.   This Agreement, in all respects, shall be interpreted, enforced and governed by and under the laws of the State of South Dakota as they exist on the date that this Agreement is fully executed by the Parties.

20.   The Parties hereby acknowledge that they have been represented and advised by counsel in connection with the execution of this Agreement.

21.   This Agreement may be executed on behalf of any Party by the Party's attorney with the same force and effect as if the Party had executed the Agreement personally.  Each person signing this Agreement warrants and represents that he or she has read this Agreement and has the necessary authority to execute the Agreement individually and on behalf of his or her respective principals, if any.

22.   This Agreement and its terms and conditions to the extent reasonably feasible shall be treated hereafter by all Parties as confidential, except as and only to the extent required in the Securities Litigation or in the Bankruptcy Court, or in order to comply with laws or regulations concerning disclosure, or in the conduct of the business of the Parties.

CAUTION: THIS AGREEMENT INCLUDES A RELEASE OF YOUR RIGHTS. READ THE AGREEMENT CAREFULLY BEFORE SIGNING.

Dated: April _15_, 2004                 BAILEY CAVALIERI LLC

                                         _Dan A. Bailey_
                                         DAN A. BAILEY

                                         One Columbus
                                         10 West Broad Street
                                         Columbus, OH 43215
                                         Telephone: 614/221-3155
                                         614/221-0479 (fax)

                                         Attorneys for Associated Energy & Gas Insurance
                                         Services Limited (AEGIS)

Dated: April ___, 2004                   BAKER & MCKENZIE


                                         _____
                                         BARRIE L. BREJCHA

                                         130 E. Randolph Drive, Suite 3500
                                         Chicago, IL 60601
                                         Telephone: 312/861-2782
                                         312/861-2899 (fax)

                                         Attorneys for Energy Insurance Mutual (EIM)

362692.1
46009/33810

CAUTION: THIS AGREEMENT INCLUDES A RELEASE OF YOUR RIGHTS.
READ THE AGREEMENT CAREFULLY BEFORE SIGNING.


Dated: April ___, 2004                    BAILEY CAVALIERI LLC


                                          _____
                                                DAN A. BAILEY

                                          One Columbus
                                          10 West Broad Street
                                          Columbus, OH 43215
                                          Telephone: 614/221-3155
                                          614/221-0479 (fax)

                                          Attorneys for Associated Energy & Gas Insurance
                                          Services Limited (AEGIS)

Dated: April 12, 2004                     BAKER & MCKENZIE


                                          _____
                                                BARRIE L. BREJCHA

                                          130 E. Randolph Drive, Suite 3500
                                          Chicago, IL 60601
                                          Telephone: 312/861-2782
                                          312/861-2899 (fax)

                                          Attorneys for Energy Insurance Mutual (EIM)

Dated: April 16, 2004

PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
JOHN A. REDING, JR.
GRACE A. CARTER
55 Second Street, 24th Floor
San Francisco, CA 94015
Telephone: 415/856-7000
415/856-7100 (fax)


GRACE A. CARTER
EDWARD HAN
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
WILLIAM F. SULLIVAN

3579 Valley Centre Drive
San Diego, CA 92130
Telephone: 858/720-2500
858/720-2555 (fax

Attorneys for Defendants NorthWestern
Corporation, NWCF II, NWCF III, Netexit, Inc.
(formerly known as Expanets, Inc.), and Blue
Dot Services, Inc.

JESSE H. AUSTIN, III
PAUL, HASTINGS, JANOSFKY
  & WALKER LLP
600 Peachtree Street N.E., Suite 2400
Atlanta, GA 30308-2222
Telephone: 404/815-2400
404/815-2424 (fax)

Bankruptcy Counsel for NorthWestern
Corporation

Dated: April *15*, 2004

WINTHROP & WEINSTINE, P.A.
DAVID P. PEARSON
KARL E. ROBINSON

*Karl Rob*
_____
DAVID P. PEARSON
KARL E. ROBINSON

225 South 6th Street, Suite 3500
Minneapolis, MN 55402-4629
Telephone: 612/604-6400
612/604-6800 (fax)

Attorneys for Defendant Richard Hylland

Dated: April ___, 2004

LATHAM & WATKINS LLP
PAUL H. DAWES

_____
PAUL H. DAWES

135 Commonwealth Drive
Menlo Park, CA 94025
Telephone: 650/463-2626
650/463-2600 (fax)

LATHAM & WATKINS LLP
MICHELE F. KYROUZ
505 Montgomery Street, Suite 1900
San Francisco, CA 94111
Telephone: 415/391-0600
415/395-8095 (fax)

Attorneys for Defendants Marilyn R. Seymann,
Randy G. Darcy, Gary I. Drook, Jerry W.
Johnson, Larry F. Ness, and Bruce I. Smith

362892.1
46009/32810

9

Dated: April ___, 2004                WINTHROP & WEINSTINE, P.A.
                                       DAVID P. PEARSON


                                       _____
                                                DAVID P. PEARSON

                                       225 South 6th Street, Suite 3500
                                       Minneapolis, MN 55402-4629
                                       Telephone: 612/604-6400
                                       612/604-6800 (fax)

                                       Attorneys for Defendant Richard Hylland

Dated: April /5 , 2004                 LATHAM & WATKINS LLP
                                       PAUL H. DAWES


                                       _____
                                                PAUL H. DAWES

                                       135 Commonwealth Drive
                                       Menlo Park, CA 94025
                                       Telephone: 650/463-2626
                                       650/463-2600 (fax)

                                       LATHAM & WATKINS LLP
                                       MICHELE F. KYROUZ
                                       505 Montgomery Street, Suite 1900
                                       San Francisco, CA 94111
                                       Telephone: 415/391-0600
                                       415/395-8095 (fax)

                                       Attorneys for Defendants Marilyn R. Seymann,
                                       Randy G. Darcy, Gary I. Drook, Jerry W.
                                       Johnson, Larry F. Ness, and Bruce I. Smith

Dated: April 16, 2004                     KATTEN, MUCHIN ZAVIS & ROSENMAN
                                          SHELDON T. ZENNER
                                          MARY ELLEN HENNESSY
                                          DAVID J. STAGMAN


                                          _____
                                                DAVID J. STAGMAN

                                          525 West Monroe
                                          Suite 1600
                                          Chicago, IL 60661-3693
                                          Telephone: 312/902-5200
                                          312/902-1061 (fax)

                                          Attorneys for Defendant Kipp Orme

Dated: April ___, 2004                    LEONARD, STREET AND DEINARD, P.C.
                                          MICHAEL G. TAYLOR


                                          _____
                                                MICHAEL G. TAYLOR

                                          150 South Fifth Street
                                          Suite 2300
                                          Minneapolis, MN 55402
                                          Telephone: 612/335-1500
                                          612/335-1657 (fax)

362892.1
46009/32810                        10

FROM LEONARD STREET AND DEINARD          (FRI) 4. 16' 04 16:04/ST. 16:03/NO. 4261040208 P  2

Dated: April \_\_\_, 2004

KATTEN, MUCHIN ZAVIS & ROSENMAN
DAVID J. STAGMAN

_____
DAVID J. STAGMAN

525 West Monroe
Suite 1600
Chicago, IL  60661-3693
Telephone:  312/902-5200
312/902-1061 (fax)

Attorneys for Defendant Kipp Orme

Dated: April 16, 2004

LEONARD, STREET AND DEINARD, P.C.
MICHAEL G. TAYLOR

_____
MICHAEL G. TAYLOR

150 South Fifth Street
Suite 2300
Minneapolis, MN  55402
Telephone:  612/335-1500
612/335-1657 (fax)

CHARLES H. TORRES, PC

_____
CHARLES H. TORRES

Mile High Center
1700 Broadway
Suite 1770
Denver, CO  80290
Telephone:  303/830-8885
303/830-8890 (fax)

362892.1
46009/32810

10

Dated: April ___, 2004              KATTEN, MUCHIN ZAVIS & ROSENMAN
                                    DAVID J. STAGMAN


                                    _____
                                           DAVID J. STAGMAN

                                    525 West Monroe
                                    Suite 1600
                                    Chicago, IL  60661-3693
                                    Telephone: 312/902-5200
                                    312/902-1061 (fax)

                                    Attorneys for Defendant Kipp Orme

Dated: April ___, 2004              LEONARD, STREET AND DEINARD, P.C.
                                    MICHAEL G. TAYLOR


                                    _____
                                          MICHAEL G. TAYLOR

                                    150 South Fifth Street
                                    Suite 2300
                                    Minneapolis, MN  55402
                                    Telephone: 612/335-1500
                                    612/335-1657 (fax)



                                    CHARLES H. TORRES, PC


                                    _____
                                          CHARLES H. TORRES
                                                                4-16-2004
                                    Mile High Center
                                    1700 Broadway
                                    Suite 1770
                                    Denver, CO  80290
                                    Telephone: 303/830-8885
                                    303/830-8890 (fax)


                                    Attorneys for Defendant John Charters

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 (CGC) |
| | : |
| Debtor. | : |
| | : |
| | : |

## ORDER APPROVING MEMORANDUM OF UNDERSTANDING

**UPON** the Motion For Order Pursuant to Bankruptcy Rule 9019 Approving the Memorandum of Understanding (the "Motion") filed by the above-captioned debtor (the "Debtor") and the Court having reviewed the Motion; and a hearing (the "Hearing") having been held with respect to the Motion; and the Court having heard the statements of counsel regarding the relief requested in the Motion at the Hearing; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and due notice of the Motion having been given under the circumstances; and it appearing that no other or further notice of the Motion is necessary or required; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors and other parties-in-interest; and after due deliberation and sufficient cause appearing therefore, it is hereby

**ORDERED**, that the Motion is **GRANTED**; and it is further

ATL/1026233.1

ORDERED, that the Debtor is authorized to enter into the MOU[1], the Hylland

Agreement and the Insurers' Agreement; and it is further

ORDERED, that the Debtor is authorized to execute any documents and take any

action necessary or desirable to consummate the MOU, the Hylland Agreement, the

Insurers' Agreement and Stipulation of Settlement; and it is further

ORDERED, that upon execution of the Stipulation of Settlement, this Order and

the Stipulation of Settlement shall be filed with the District Court; and it is further

ORDERED, that the Debtor shall also file a copy of the executed Stipulation of

Settlement with this Court and serve copies of such Stipulation of Settlement on the

Notice Parties; and it is further

ORDERED, that this Order shall take effect immediately upon its entry; and it is

further

ORDERED, that this Court shall retain jurisdiction to hear and determine all

matters arising from the implementation of this Order.


Dated:  Wilmington, Delaware
        May ___, 2004

                                    _____
                                    THE HONORABLE CHARLES G. CASE, II
                                    UNITED STATES BANKRUPTCY JUDGE

---

[1]     Any capitalized term used herein but not otherwise defined shall have the meaning ascribed to such term in the Motion.