

RECEIVED

JUL 1 8 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

05 - 499

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| NORTHWESTERN CORPORATION, | Case No. 03-12872 (JLP) |
| Debtor. | |
| MAGTEN ASSET MANAGEMENT CORPORATION & LAW DEBENTURE TRUST COMPANY OF NEW YORK, | |
| Plaintiffs, | |
| v. | Adv. No. 04-53324 (JLP) |
| NORTHWESTERN CORPORATION, | |
| Defendant. | |
| NORTHWESTERN CORPORATION, | |
| Plaintiff, | |
| v. | Adv. No. 04-55051 (JLP) |
| MAGTEN ASSET MANAGEMENT CORPORATION, Defendant. | |

**MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION
AND LAW DEBENTURE TRUST COMPANY OF NEW YORK IN
SUPPORT OF MOTION TO WITHDRAW THE REFERENCE TO
BANKRUPTCY COURT AND FOR CONSOLIDATION WITH
CIVIL ACTION NUMBER 04-1256 PENDING IN THIS DISTRICT**

Magten Asset Management Corporation (*"Magten"*) and Law Debenture Trust Company
of New York (*"Law Debenture"* and together with Magten, the *"Plaintiffs"*) by their
undersigned counsel, hereby respectfully move (the *"Motion"*) this Court to withdraw the
reference to Bankruptcy Court pursuant to 28 U.S.C. § 157 and Federal Rule of Bankruptcy
Procedure 5011 and to consolidate the above-captioned adversary proceedings with Civil Action

Number 04-1256, which is currently pending before Judge Farnan in the United States District Court for the District of Delaware. In support of this Motion, Plaintiffs submit the accompanying memorandum of law and the accompanying declaration of Bonnie Steingart.

Dated: Wilmington, Delaware
      November 17, 2004

**BLANK ROME LLP**

Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
Bonnie Steingart
Gary Kaplan
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile:  (212) 859-4000

Counsel for Magten Asset Management Corporation
   – and –

2                    120087.01600/40147378v1

**SMITH, KATZENSTEIN & FURLOW, LLP**

_/s/ Kathleen M. Miller_

Kathleen M. Miller (DE No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405

- and -

**NIXON PEABODY LLP**
Amanda D. Darwin (BBO No. 547654)
John V. Snellings (BBO No. 548791)
Lee Harrington (DE No. 4046)
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

Attorneys for Law Debenture Trust Company of
New York

3

120087.01600/40147378v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) ) ) ) ) ) | Chapter 11<br><br>Case No. 03-12872 (JLP) |
| NORTHWESTERN CORPORATION,<br><br>Debtor. | | |
| MAGTEN ASSET MANAGEMENT CORPORATION & LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br>Plaintiffs,<br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) | Adv. No. 04-53324 (JLP) |
| NORTHWESTERN CORPORATION,<br><br>Plaintiff,<br>v.<br><br>MAGTEN ASSET MANAGEMENT CORPORATION,<br>Defendant. | ) ) ) ) ) ) ) ) ) | Adv. No. 04-55051 (JLP) |

### MEMORANDUM OF LAW OF MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK IN SUPPORT OF MOTION TO WITHDRAW THE REFERENCE TO BANKRUPTCY COURT AND FOR CONSOLIDATION WITH CIVIL ACTION NUMBER 04-1256 PENDING IN THIS DISTRICT

| | |
|---|---|
| *FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP*<br>One New York Plaza<br>New York, NY 10004<br>Telephone: (212) 859-8000<br>Facsimile: (212) 859-4000 | *NIXON PEABODY LLP*<br>100 Summer Street<br>Boston, MA 02110<br>Telephone: (617) 345-1000<br>Facsimile: (617) 345-1300 |
| *BLANK ROME, LLP*<br>1201 Market Street, Suite 800<br>Wilmington, DE 19801<br>Telephone: (302) 425-6400<br>Facsimile: (302) 425-6464<br>Counsel for Magten Asset Management Corporation | *SMITH, KATZENSTEIN & FURLOW, LLP*<br>800 Delaware Avenue, 7th Floor<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br>Counsel for Law Debenture Trust Company of New York |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...........................................................................1

BACKGROUND .............................................................................................3

ARGUMENT ................................................................................................7

    I.   The Reference To The Bankruptcy Court Should Be Withdrawn ...........................7

          A.  Uniformity in Bankruptcy Administration and Judicial Economy ..............8

          B.  Reducing Forum Shopping and Confusion ................................................10

          C.  The Economic Use of Resources ...............................................................10

          D.  Timing of the Withdrawal Motion .............................................................11

CONCLUSION ..............................................................................................11

120087.01600/40147350v1

## TABLE OF AUTHORITIES

### CASES

In re Big Rivers Electric Corp., 182 B.R. 751 (W.D. Ky. 1995)........................................10

Columbia Gas  Transmission Corp. v. Columbia Gas System, Inc.,
   1993 U.S. Dist. LEXIS 1280 (D. Del. 1993) ..................................................................8

In re Elder-Beerman Stores Corp.,
   1997 U.S. Dist. LEXIS 23784 (S.D. Ohio August 1, 1997) .........................................10

In re Integrated Health Services, Inc., 291 B.R. 615 (Bankr. D. Del. 2003) .......................3

In re NorthWestern Institute of Psychiatry, Inc., 272 B.R. 104 (E.D. Pa. 2001).............8, 9

Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.),
   4 F.3d 1095 (2d Cir. 1993)..............................................................................................8

In re Pan Am Corp., 163 B.R. 41 (S.D.N.Y. 1993) .................................................10, 11, 13

In re Pruitt, 910 F.2d 1160 (3d Cir. 1990) ...........................................................................8

### STATUTES

28 U.S.C. § 1334(b) ...............................................................................................................8

28 U.S. § 1452 (a) ........................................................................................................3, 7, 11

28 U.S.C. § 157.................................................................................................2, 3, 8, 12

120087.01600/40147350v1

Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York ("Law Debenture" and together with Magten, the "Plaintiffs") by their undersigned counsel, submit this memorandum of law in support of their motion to withdraw the reference to Bankruptcy Court (the "Motion"), pursuant to 28 U.S.C. § 157 and Federal Rule of Bankruptcy Procedure 5011 and for consolidation with Civil Action Number 04-1256, currently pending in this District before Judge Farnan. Concurrently herewith Plaintiffs have filed the declaration of Bonnie Steingart (the "Steingart Declaration") in support of this Motion. In further support of their Motion, Plaintiffs respectfully state as follows:

## Preliminary Statement

On November 15, 2002, less than one year before filing a voluntary bankruptcy petition, NorthWestern Corporation ("NorthWestern") orchestrated the transfer of utility assets valued between $1.15 and $1.4 billion from its subsidiary, Clark Fork and Blackfoot LLC ("Clark Fork"). In return, NorthWestern paid no consideration other than the assumption of $700 million of liabilities, leaving Clark Fork undercapitalized and insolvent. Five months later, NorthWestern restated its publicly-filed financial statements and took an additional loss of $878.5 million for FYE 2002. Thus at the time of the transfer of the utility assets from Clark Fork to NorthWestern (the "Fraudulent Transfer"), the consideration was inadequate and the financial statements used by NorthWestern were admittedly false.

During the course of NorthWestern's bankruptcy case, Plaintiffs initiated an adversary proceeding against NorthWestern (the "Adversary Proceeding") asserting that the transfer of the utility assets to NorthWestern was fraudulent under applicable Montana law and seeking a recovery for damages suffered by Plaintiffs because of the transfer. The Adversary Proceeding is currently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") before Judge John L. Peterson.

Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings") represented both Clark Fork and NorthWestern in the Fraudulent Transfer. On May 24, 2004, Magten sued Paul Hastings in

1

Montana state court (the "Paul Hastings Proceeding") for its role in orchestrating the Fraudulent Transfer. The Paul Hastings Proceeding was thereafter removed to the United States District Court for the District of Montana (the "Montana Federal Court") pursuant to 28 U.S.C. § 1452(a) and transferred to the United States District Court for the District of Delaware (the "Delaware District Court"). It is currently pending before Judge Farnan.

In transferring venue to the Delaware District Court, the Montana Federal Court has specifically determined that the issues raised in the Adversary Proceeding and the Paul Hastings Proceeding are intricately intertwined. Similarly, Paul Hastings is seeking a stay of the Paul Hastings Proceeding pending the outcome of the Adversary Proceeding (the "Paul Hastings Motion")[1] because "Magten's claim against Paul Hastings in this case ultimately rests on the same core allegations as the [A]dversary [P]roceeding. . . ." Paul Hastings Motion at 5. Likewise, both Magten and Paul Hastings have recognized that having one trial on the issues at this time would "conserve judicial resources and avoid the possibility of conflicting rulings." (Id. at 2). Since the Paul Hastings Proceeding will be heard by a jury, it cannot be referred to the Bankruptcy Court for trial.[2] Accordingly, Plaintiffs now move this Court to withdraw the reference to the Bankruptcy Court and consolidate the Adversary Proceeding and the Paul Hastings Proceeding in the Delaware District Court before Judge Farnan pursuant to Federal Rule of Civil Procedure 42 as incorporated in Federal Rule of Bankruptcy Procedure 7042.

Because the core allegations in the Adversary Proceeding and the Paul Hastings Proceeding are the same, much of the discovery sought in each will be duplicative of the other proceeding. Withdrawing the reference and consolidating the proceedings, therefore, serves not only the interests of judicial economy, but also conserves the resources of the Plaintiffs,

---

[1] A copy of the Paul Hastings Motion is attached to the Steingart Declaration as Exhibit J.

[2] 28 U.S.C. 157(e) provides that "If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties." Delaware bankruptcy judges have not been designated to hear these disputes. See In re Integrated Health Services, Inc., 291 B.R. 615, 622 (Bankr. D. Del. 2003) ("In this District, the Bankruptcy Judges have not been specifically designated by the District Court to conduct a jury trial."). Moreover, Magten has not consented to a trial of the Paul Hasting's Proceeding by a bankruptcy court judge.

120087.01600/40147350v1

NorthWestern and Paul Hastings. In addition, withdrawing the reference does not delay either proceeding or prejudice any party. There has been no answer filed in the Adversary Proceeding and no discovery has been conducted in the Paul Hastings proceeding or the Adversary Proceeding. NorthWestern's main bankruptcy case was assigned to Judge Peterson on October 28, 2004. Thus, the Judges presiding over both proceedings have only recently been assigned to their respective matters. Granting the Motion will serve to avoid the confusion that may arise from having trials on identical issues tried before different judges. For the reasons set forth below, Plaintiffs respectfully request that the Motion be granted.

## Background

On September 14, 2003, NorthWestern filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, NorthWestern continues to operate its business and manage its property as a debtor in possession.

NorthWestern is a publicly traded Delaware corporation that was incorporated in 1923. NorthWestern, together with its direct and indirect non-debtor subsidiaries, comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska.

Magten is a holder of certain Series A 8.45% Quarterly income Preferred Securities (the "QUIPS") issued by Montana Power Capital I (the "Trust"). The Trust is a business trust established pursuant to the Delaware Business Trust Act. The sole assets of the Trust are the 8.45% Junior Subordinated Debentures due 2036.

3                                                        120087.01600/40147350v1

Law Debenture is a limited purpose trust company organized under the laws of New York and is the successor trustee to the Bank of New York under the Indenture[3] and under the Guarantee Agreement.

**The Adversary Proceeding**

On April 16, 2004, after receiving the approval of the Bankruptcy Court to lift the automatic stay and initiate an adversary proceeding, Plaintiffs filed a complaint (the "Complaint") seeking to set aside the Fraudulent Transfer.

The Complaint asserts, among other things, that NorthWestern is the recipient of a fraudulent transfer, that the release provisions contained in Article Eleven of the Indenture are invalid such that Clark Fork was never validly released from its obligations thereunder, and that the utility assets transferred from Clark Fork to NorthWestern (the "Montana Utility Assets") are held in constructive trust for Plaintiffs, who, as creditors of Clark Fork, have properly brought the Adversary Proceeding.

On May 14, 2004, NorthWestern filed its Motion to Dismiss the Complaint (the "First Motion to Dismiss"). On June 16, 2004, Plaintiffs filed an objection to the First Motion to Dismiss. On August 20, 2004, the Bankruptcy Court issued its Under Advisement Decision re: Motion to Dismiss, denying in part and granting in part the First Motion to Dismiss. A copy of that decision is attached to the Steingart Declaration as Exhibit B.

On August 20, 2004, the Debtor initiated an adversary proceeding against Magten and its principal, Talton Embry (the "NOR Adversary") seeking to subordinate Magten's claim. A copy of the complaint in the NOR Adversary is attached to the Steingart Declaration as Exhibit C. On September 28, 2004 Magten filed a motion to dismiss the NOR Adversary. After the briefing on that matter was completed, on November 8, 2004 the Bankruptcy Court denied Magten's motion.

---

[3] All capitalized terms not expressly defined herein shall have the meaning ascribed to them in the Amended Complaint, a copy of which is attached to the Steingart Declaration as Exhibit A.

120087.01600/40147350v1

before the Bankruptcy Court. The answer in the Adversary Proceeding is scheduled to be filed on November 19, 2004. No discovery has been conducted in the Adversary Proceeding.

**The Paul Hastings Proceeding**

On May 20, 2004, Magten filed a complaint against Paul Hastings in Montana state court (the "Paul Hastings Complaint") and demanded a jury trial pursuant to its Seventh Amendment right. The Paul Hastings Complaint alleges that as counsel to NorthWestern, Paul Hastings (1) aided and abetted NorthWestern in breaching the fiduciary duties owed to the creditors of Clark Fork; (2) aided and abetted in the Fraudulent Transfer; (3) engaged in a conspiracy to conduct the Fraudulent Transfer; and (4) committed malpractice. A copy of the Paul Hastings Complaint is attached as Exhibit F to the Steingart Declaration. On July 23, 2004, Paul Hastings filed its answer to the Paul Hastings Complaint. A copy of that answer is attached to the Steingart Declaration as Exhibit G. The Paul Hastings Proceeding is still in an early stage. No discovery has been conducted and no dispositive motions have been filed.

On June 24, 2004, the Paul Hastings Proceeding was removed to the Montana Federal Court pursuant to 28 U.S. § 1452(a). The Montana Federal Court refused to remand the case to state court because it found that the Paul Hastings Proceeding was related to NorthWestern's ongoing bankruptcy case. Thereafter, Paul Hastings moved to transfer the Paul Hastings Proceeding (the "Paul Hastings Transfer Motion") either to the Southern District of New York (for the convenience of the parties) or to the Delaware District Court because of its relation to the Adversary Proceeding. See Paul Hastings Transfer Motion at 2 (noting that Magten's litigation of a "substantially identical fraudulent transfer claim" against NorthWestern in Delaware served as a proper basis for transferring the Paul Hastings Proceeding to this Court.). A copy of the Paul Hastings Transfer Motion is attached to the Steingart Declaration as Exhibit H.

On September 8, 2004, over Magten's objection, the Montana Federal Court granted Paul Hastings' request and transferred the Paul Hastings Proceeding to the Delaware District Court because of its similarity to the Adversary Proceeding (the "Transfer Opinion"). A copy of the

6                                        120087.01600/40147350v1

Transfer Opinion is attached to the Steingart Declaration as Exhibit I. The Paul Hastings proceeding is currently pending before Judge Farnan in the Delaware District Court.

On October 27, 2004, Paul Hastings moved this Court to stay the Paul Hastings Proceeding until the Adversary Proceeding is resolved (the "Paul Hastings Motion"), for reasons of judicial economy.

### Argument

I.    THE REFERENCE TO THE BANKRUPTCY COURT SHOULD BE WITHDRAWN

District courts have original jurisdiction over all civil proceedings "arising under," "arising in" or "related to" bankruptcy cases under Title 11. 28 U.S.C. § 1334(b). In this District, the district court automatically refers all such cases to the Bankruptcy Court in the first instance. See District Court Order dated September 6, 2001 "In re Referral of Title 11 Proceedings to the United States Bankruptcy Judges For This District." This Court, however, possesses broad powers to withdraw any adversary proceeding, including the instant matter, "on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d).

Although Section 157(d) does not define the "cause" sufficient to support withdrawal of the reference of an adversary proceeding, the Third Circuit has identified the following factors (the "Pruitt Factors") to be weighed by district courts in deciding whether to withdraw a case or issue from the bankruptcy court (1) the goals of promoting uniformity in bankruptcy administration and judicial economy; (2) reducing forum shopping and confusion; (3) fostering the economical use of debtor and creditor resources; (4) expediting the bankruptcy process;[5] and (5) the timing of the withdrawal request. In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990). In addition, other courts in this district have considered additional factors such as whether a jury trial has been demanded[6] and whether the matter is a core proceeding.[7] See Columbia Gas

---

[5] Expediting the bankruptcy process is simply not a concern in this case. NorthWestern's plan of reorganization has been confirmed and has gone effective. Thus the Adversary Proceeding will have no impact on the reorganization.
[6] A jury trial has been demanded in the Paul Hastings Proceeding, but has not been demanded in the Adversary Proceeding. Because of this, the Paul Hastings Proceeding could not be referred to the Bankruptcy Court for trial.

120087.01600/40147350v1

Transmission Corp. v. Columbia Gas System, Inc., 1993 U.S. Dist. LEXIS 1280 at *14-15 (D. Del. 1993) (citing the Pruitt Factors and the other factors outlined above as the criteria generally considered by district courts in determining whether to withdraw the reference). For the reasons set forth below, withdrawal of the reference in the Adversary Proceeding is warranted in this instance.

A.    Uniformity in Bankruptcy Administration and Judicial Economy

Withdrawal of the reference will promote uniformity in the bankruptcy process and will not interfere in any way with the reorganization process. As explained in greater detail below, because the underlying allegations in the Adversary Proceeding and the Paul Hastings Proceedings are virtually identical, having the reference withdrawn and consolidating the proceedings before the Delaware District Court will promote uniformity. Absent withdrawal of the reference and consolidation, there is a substantial risk of obtaining conflicting judgments on identical facts.

In addition, NorthWestern's plan of reorganization has been confirmed and the effective date has occurred. Consequently, NorthWestern's reorganization is not contingent upon the outcome of the Adversary Proceeding. See e.g., In re NorthWestern Institute, 272 B.R. at 109 (noting that withdrawal of the reference was not warranted where "the resolution of the adversary matter could have a substantial effect on the [debtor's] ability to reorganize."). In addition, the Adversary Proceeding and NorthWestern's chapter 11 case have only recently been re-assigned to Judge Peterson, who has little familiarity with the parties, the factual and legal issues implicated by these proceedings or with NorthWestern's bankruptcy, generally. Thus, neither party will be prejudiced by withdrawal of the reference and consolidation of the matters before Judge Farnan in the Delaware District Court.

---

[7] The Adversary Proceeding is a core proceeding. However, courts in this circuit have rejected the idea advanced in some circuits that this criterion is a threshold factor. See In re NorthWestern Institute of Psychiatry, Inc., 272 B.R. 104, 108 (E.D. Pa. 2001) ("Notwithstanding that this proceeding is properly characterized as core, under § 157(d) the reference may be withdrawn for cause shown). But see Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101 (2d Cir. 1993) ("A district court considering whether to withdraw the reference should first evaluate whether the claim is core or non-core. . .").

120087.01600/40147350v1

It would be a waste of judicial resources to have factually related matters with virtually identical underlying facts pending before two different courts in the same district. "Where a proceeding in bankruptcy involved common issues of law and fact with a case pending in district court, 'the overlapping of facts, transaction and issues in the two cases. . .is good cause for withdrawal of the reference and consolidation with the district court proceeding." In re Big Rivers Electric Corp., 182 B.R. 751, 755 (W.D. Ky. 1995) (citations omitted). See also In re Elder-Beerman Stores Corp., 1997 U.S. Dist. LEXIS 23784 at *11 (S.D. Ohio August 1, 1997) (granting withdrawal of the reference and noting that " a number of courts have concluded that cause to withdraw the reference exists when parallel actions are pending in the District and Bankruptcy Courts."); In re Pan Am Corp., 163 B.R. 41, 43-44 (S.D.N.Y. 1993) (holding that withdrawal of the reference was proper where a factually related proceeding was pending in the District Court and where a jury demand precluded that case from being heard in the Bankruptcy Court).

In Pan Am, the United States District Court for the Southern District of New York was presiding over two cases for damages suffered by Pan Am employees because of Delta Airline's ("Delta") refusal (allegedly in bad faith) to participate in Pan Am's reorganization. During Pan Am's bankruptcy proceeding the official committee of unsecured creditors and the ad hoc committee of priority creditors of Pan Am filed an adversary proceeding against Delta alleging that Delta "refused in bad faith to participate in Pan Am's reorganization," seeking damages of $2.5 billion and seeking the equitable subordination of Delta's claim. Pan Am, 163 B.R. at 42. Delta moved to withdraw the reference in the adversary proceeding and have that case heard with the matters pending in District Court.

In granting the withdrawal, the court noted that although courts often consider several factors when deciding whether withdrawal is appropriate, when there are virtually identical matters pending before a district court and a bankruptcy court "the higher interest to be served is that of promoting judicial efficiency." Id. Specifically, the Court noted that judicial economy would be served because "the risk of inconsistent adjudications will be lessened as the

9

evidentiary record on mutual issues of fact will not contain variances and all the issues of fact can be heard and decided in one forum. . ." Id. As in Pan Am, the underlying facts in the Adversary Proceeding and the Paul Hastings Proceeding are virtually identical. Therefore, the "higher interest" of judicial economy that guided that court to withdraw the reference is entirely present here.

B.    Reducing Forum Shopping and Confusion

The Plaintiffs do not seek to withdraw the reference to forum shop. The Adversary Proceeding was filed with the Bankruptcy Court because it was the only place the action could properly be brought against NorthWestern. Due to NorthWestern's chapter 11 filing, the automatic stay prohibited the commencement of the action in any court other than the bankruptcy court. Moreover, although the Paul Hastings Proceeding was initially brought in Montana (where the Fraudulent Transfer occurred), the Montana Federal Court removed the Paul Hastings Proceeding pursuant to 28 U.S.C. § 1452(a) and ultimately transferred the Paul Hastings Proceeding to the Delaware District Court because the allegations in the Paul Hastings Complaint "mirror allegations in the [A]dversary [P]roceeding." Transfer Opinion at 3. Plaintiffs are seeking to avoid the confusion that may result if the Bankruptcy Court and the Delaware District Court issue conflicting rulings on the same underlying facts. See Pan Am Corp., 163 B.R. 44 (citing the risk of "potential inconsistent evidence by the Bankruptcy Court in the Adversary Proceeding" and the District Court in the related case as grounds for withdrawal).

C.    The Economic Use of Resources

The core allegations in both complaints are substantially similar – that the transfer of Clark Fork's utility assets was fraudulent. Both Magten and Paul Hastings agree that the Paul Hastings Complaint "relates to the same transaction, the same facts and the same legal theory as the adversary proceeding, and would be subject to the same defenses . . ." Paul Hastings Motion at 9. Likewise, the Montana Federal Court has determined that the allegations in the Paul Hastings Complaint "mirror allegations in the adversary proceeding." Transfer Opinion at 3. As

120087.01600/40147350v1

a result, the discovery to be sought in both the Paul Hastings Proceeding and the Adversary Proceeding will be virtually identical. Paul Hastings has already acknowledged that it may call Law Debenture to testify in the Paul Hastings Proceeding. Paul Hastings Transfer Motion at 12 n.5. Because the discovery in these proceedings is related, it would be a substantial waste of everyone's resources to force the parties to conduct this discovery twice. Therefore, withdrawal of the reference when would conserve the resources of all parties involved in the Adversary Proceeding and the Paul Hastings Proceeding, and would promote judicial economy.

      D.     Timing of the Withdrawal Motion

With respect to the timing of the Withdrawal Motion, as discussed above, the Adversary Proceeding is in its very early stages. No answer has been filed in the Adversary Proceeding and no discovery has taken place. Similarly, in the Paul Hastings Proceeding "dispositive motions have not been filed, discovery in this case has not begun and no trial date has been set." Paul Hastings Motion at 11. Because both proceedings are at essentially the same stage in the trial process, and because discovery has not yet begun in either proceeding the Withdrawal Motion is timely and should be granted.

## CONCLUSION

The causes of action alleged in the Adversary Proceeding and the Paul Hastings Proceeding are inextricably intertwined and should be consolidated in the Delaware District Court pursuant to applicable Federal Rules. The Paul Hastings Proceeding is already pending before this Court. Because Magten has asserted its Seventh Amendment right to a jury trial in the Paul Hastings Proceeding, that proceeding cannot be tried by the Bankruptcy Court pursuant to 28 U.S.C. 157(e). Therefore, withdrawing the reference in the Adversary Proceeding and consolidating the cases will prevent the parties from having to needlessly expend time and resources on duplicative proceedings and avoids the risk of inconsistent decisions. Withdrawing the reference is appropriate here because in the seven months since the Complaint was filed, the Adversary Proceeding has been before three different judges, and thus, Judge Peterson, the

current judge assigned to hear the matter, has not developed familiarity with the parties or the legal or factual issues.

Lastly, the Bankruptcy Court has effectively consolidated the Adversary Proceeding and the NOR Adversary for purposes of trial. Judge Peterson has determined that the NOR Adversary is to be treated as a counter-claim against Magten in the Adversary Proceeding because it seeks to disallow or subordinate Magten's recovery if the Adversary Proceeding is successful. Thus, if this Court withdraws the reference in the Adversary Proceeding, the reference should also be withdrawn for the NOR Adversary so that this counterclaim can be tried together with the underlying action.[8]

For all of the foregoing reasons, Plaintiffs respectfully request that this Motion be granted and that this Court withdraw the reference to the Bankruptcy Court with respect to the Adversary Proceeding and the NOR Adversary Proceeding and consolidate these proceedings with the Paul Hastings Proceeding, which is currently pending before Judge Farnan in the Delaware District Court.

---

[8]See In re Pan Am Corp., 163 B.R. 41 (S.D.N.Y. 1993) (granting withdrawal of the reference in an adversary proceeding seeking, among other things equitable subordination, where a lawsuit with virtually identical factual and legal underpinnings was pending in the district court.).

120087.01600/40147350v1

Dated: Wilmington, Delaware
       November 17, 2004

**BLANK ROME LLP**

_____

Mark J. Packel (DE No. 4048)
Elio Battista, Jr. (DE No. 3814)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile:  (302) 425-6464

-- and --

**FRIED, FRANK, HARRIS, SHRIVER &
     JACOBSON LLP**
Bonnie Steingart
Gary Kaplan
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile:  (212) 859-4000

Counsel for Magten Asset Management
     Corporation
         -- and --

SMITH, KATZENSTEIN & FURLOW, LLP

_/s/ Kathleen M. Miller_
Kathleen M. Miller (I.D. No. 2898)
Smith, Katzenstein & Furlow, LLP
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405

– and –

Amanda D. Darwin, Esq. BBO No. 547654
John V. Snellings, Esq., BBO No. 548791
Lee Harrington, Esq. (DE 4046)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1000
Facsimile: (617) 345-1300

Attorneys for Law Debenture Trust Company of
New York

**"1"**

1993 U.S. Dist. LEXIS 1280

COLUMBIA GAS TRANSMISSION CORPORATION, Plaintiff, v. COLUMBIA GAS SYSTEM, INC. and COLUMBIA NATURAL RESOURCES, INC., Defendants.

Civil Action No. 92-453-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1993 U.S. Dist. LEXIS 1280

February 9, 1993, Decided

**DISPOSITION:** [*1] The Committee's Motion for Withdrawal of the Reference to the Bankruptcy Court will be denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** The committee for unsecured creditors filed a motion for withdrawal of the jurisdictional reference on behalf of plaintiff gas corporation.

**OVERVIEW:** The gas corporation filed a voluntary petition in bankruptcy court for relief under Chapter 11 of the United States Code. A committee representing unsecured creditors sought the withdrawal of the jurisdictional reference to the bankruptcy court under 28 U.S.C.S. § 157(d), after it was authorized to litigate intercompany disputes. One such dispute involved allegations of fraudulent conveyances and the preclusive effect of Securities and Exchange Commission rulings. The court denied the motion because it did not appear that substantial and material consideration of the Public Utility Holding Company Act of 1935, 15 U.S.C.S. § 79 et seq. was necessary to resolve the issues. Thus, withdrawal was not required under the mandatory withdrawal provision of 28 U.S.C.S. § 157(d). The committee was not entitled to a jury trial under U.S. Const. amend. VII because its allegations were part of the claims allowance and disallowance process and thus public in nature. In addition, the court held that judicial economy and administrative efficiency would not be served by withdrawing the reference, thus the court refused to exercise its discretion to withdraw the reference.

**OUTCOME:** The court denied the motion for withdrawal of the reference to the bankruptcy court filed by the committee for unsecured creditors on behalf of plaintiff gas corporation.

**CORE TERMS:** withdrawal, jury trial, withdraw, proof of claim, adversary proceeding, mandatory, Seventh Amendment, fraudulent conveyance, allowance, fraudulent conveyances, withdrawing, financing, convinced, motion to withdraw, preclusive effect, causes of action, judicial economy, waived, public right, permissive, summary judgment, disallowance, equitable, assigned, bankruptcy proceedings, preferential transfer, appropriateness, discretionary, evidentiary, adjudicated

**LexisNexis(TM) Headnotes**

*Bankruptcy Law > Case Administration > Administration*

[HN1] 28 U.S.C.S. § 157(d) codifies two separate standards to guide the determinations of district courts with regard to the appropriateness of a withdraw: a mandatory standard, under which the district court must withdraw the reference if certain circumstances are present, and a permissive standard, under which the district court has discretion to withdraw.

*Bankruptcy Law > Case Administration > Administration*

[HN2] 28 U.S.C.S. § 157(d) states that the district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

*Bankruptcy Law > Case Administration > Administration*

[HN3] The standard for mandatory withdraw utilized by the district contains two elements. First, consideration of the other laws must be necessary for the resolution of the proceeding. Second, the consideration must be substantial and material. Withdrawal is not mandatory if only a straightforward application of a federal law is required, but only when resolution requires significant interpretation of federal laws.

*Bankruptcy Law > Case Administration > Administration*

[HN4]Five factors are to be considered by a district court in ascertaining whether cause exists to withdraw a reference: 1) promoting uniformity of bankruptcy administration; 2) reducing forum shopping and confusion; 3) conserving creditor/debtor resources; 4) expediting bankruptcy process; 5) timing of request for withdraw. In addition, district courts regularly cite two other factors when determining the appropriateness of a withdrawal. They are: 1) whether the parties have requested a jury trial; and 2) whether the matter is a core proceeding.

*Bankruptcy Law > Case Administration > Administrative Powers*

[HN5]The bankruptcy code grants bankruptcy judges the authority to hear and determine all core proceedings arising under 11 U.S.C.S. § 157(b)(1).

*Bankruptcy Law > Case Administration > Administrative Powers*

[HN6]The bankruptcy's authority to decide core proceedings is subject only to appellate review by the district court. 11 U.S.C.S. § 158.

COUNSEL: Kevin Gross, Esquire, of ROSENTHAL MONHAIT & GROSS, Wilmington, Delaware. Larry J. Nyhan, and Richard L. Epling, of SIDLEY & AUSTIN, New York, New York. Attorneys for Official Creditors Committee of Columbia Gas Transmission Corporation.

James L. Patton, Jr., of YOUNG CONAWAY STARGATT & TAYLOR, Wilmington, Delaware. CRAVATH SWAINE & MOORE, New York, New York. STROOCK & STROOCK & LAVAN, New York, New York. Attorneys for Defendants.

JUDGES: FARNAN

OPINIONBY: JOSEPH J. FARNAN

OPINION: MEMORANDUM OPINION

February 9, 1993

Wilmington, Delaware

FARNAN, District Judge.

I. INTRODUCTION

Presently before the Court is a Motion for Withdrawal of the Jurisdictional Reference filed by the Official Committee of Unsecured Creditors of the Columbia Gas Transmission Corporation ("the Committee") on behalf of Columbia Gas Transmission Corporation ("CG Transmission"). (D.I. 1). The Committee filed an initial motion to withdraw the reference to the

Bankruptcy Court on May 14, 1992, and an amended motion to withdraw reference with supporting brief on June 18, 1992. (D.I. 2).

II. BACKGROUND

On July 31, 1991, the Columbia [*2] Gas System, Inc. ("Columbia Gas"), and its wholly owned subsidiary, CG Transmission, filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware for relief under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code"). The United States Trustee appointed the Committee on August 12, 1991. The Bankruptcy Court set a March 18, 1992 bar date for most claims.

By an order dated February 4, 1992, the Bankruptcy Court authorized the Committee to litigate certain intercompany claims against Columbia Gas and Columbia Natural Resources ("CNR") on behalf of CG Transmission. On March 17, 1992, the Committee, on behalf of CG Transmission, filed a proof of claim in the Columbia Gas bankruptcy proceeding against Columbia Gas. Then on March 18, 1992, the Committee instituted this adversary proceeding by filing a complaint in the Bankruptcy Court against Columbia Gas and CNR. The complaint contains 12 counts alleging that several transactions between Columbia Gas and CG Transmission, and among Columbia Gas, CG Transmission and CNR, constituted preferential transfers or fraudulent conveyances.

Columbia Gas and CNR answered the Complaint on May 4, 1992, [*3] and amended their answers on May 20, 1992. On June 11, 1992, Columbia Gas filed a Motion for Partial Judgment on the Pleadings and for Partial Summary Judgment in the Bankruptcy Court seeking judgment on five counts of the Committee's complaint.

On May 8, 1992 and again on June 1, 1992 the Committee filed demands for jury trials. Subsequently, on May 14, 1992, the Committee filed the motion for withdrawal of reference that is presently before the Court. The Committee filed an Amended Motion for Withdrawal of Reference on June 18, 1992. By orders dated May 20, 1992 and June 11, 1992, the Bankruptcy Court permitted the Official Committee of Unsecured Creditors of Columbia Gas ("CG Creditors Committee"), the Official Committee of Equity Security Holders of Columbia Gas ("CG Equity Committee"), and the Official Committee of Customers of Columbia Gas ("CG Customers Committee") to intervene in the adversary proceeding.

On July 30, 1992 all of the parties to this proceeding, including the debtors and debtors-in-possession, entered into a stipulation and order stating that the

1993 U.S. Dist. LEXIS 1280

adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). [*4] (D.I. 14).

## III. DISCUSSION

The Committee seeks the withdrawal of the jurisdictional reference to the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). n1 [HN1]Section 157(d) codifies two separate standards to guide the determinations of district courts with regard to the appropriateness of a withdraw: a mandatory standard, under which the district court must withdraw the reference if certain circumstances are present, and a permissive standard, under which the district court has discretion to withdraw. Plaintiff contends that withdrawal of this case is appropriate under both the mandatory and permissive standards.

- - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n1 [HN2] 28 U.S.C. § 157(d) states:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

[*5]

### A. Mandatory Withdrawal

The Committee contends that withdrawal is required under the mandatory withdrawal provision of § 157(d) because resolution of the adversary proceeding will require substantial and material consideration of the Public Utility Holding Company Act of 1935 ("PUHCA"), 15 U.S.C. § 79 et seq. According to the Committee, substantial consideration of PUHCA is necessary because Columbia Gas and CNR assert that prior SEC approval of the challenged transactions either preclude the Committee's claims, or should be accorded substantial evidentiary weight.

### 1. The Complaint and Answers

The twelve count Complaint alleges that Columbia Gas used its ownership and control of CG Transmission to protect its investment at the expense of other creditors

of CG Transmission. Count One of the Complaint asserts that all of the financing by Columbia Gas of CG Transmission from 1985 to 1991 should be recharacterized as equity. Count Two asserts that every allowed claim of Columbia Gas should be equitably subordinated to those of all other unsecured creditors. Counts 3-12 assert that various transactions among CG Transmission, Columbia [*6] Gas, and CNR were fraudulent conveyances, constructive fraudulent conveyances, and voidable preferences. The allegations are based on federal bankruptcy law and Delaware law.

In their Amended Answers, both Columbia Gas and CNR raise as an affirmative defense to all counts that "Plaintiff's claims are barred or determined, in whole or in part, by the findings and decisions of the SEC." Columbia Gas Amended Answer, at 29; CNR Amended Answer, at 10.

### 2. Columbia Gas' Motion for Summary Judgment

Columbia Gas seeks summary judgment on five counts of the Complaint -- Counts 1, 2, 4, 8, and 12. In support of its motion, Columbia Gas relies in varying degrees upon the prior SEC approval of the transactions challenged in these counts. For example, in arguing that the loans from Columbia Gas to CG Transmission should not be recharacterized as equity, Columbia Gas states:

The [Committee] does not allege that [CG Transmission] was initially undercapitalized, only that adverse developments in the mid-1980s put it in financial distress. . . . In addition, the [Committee] does not allege that the transactions in question were not structured as loans or not treated as loans or that anyone [*7] was ever led to believe that they were anything other than loans.

. . . .

In this case, the fact and details of the loans in question were reviewed and approved by the SEC pursuant to its Congressional mandate and in fulfillment of its Congressionally-imposed responsibilities. Therefore, the fundings' bona fides as loans, rather than as equity contributions, should be considered by this Court to be at least presumptively established. . . .

The HCA's "underlying purpose [is] to give investors and consumers full protection against the deleterious practices which [had] characterized certain holding company finance in the past." Section 7 provides that the SEC shall not permit a declaration regarding the proposed issuance or sale of a security to become effective unless the SEC has first made certain findings with respect to the type, quality and purpose of the proposed securities transaction . . . .

Page 3

1993 U.S. Dist. LEXIS 1280

. . . .

Any interpretation of the Code that would judge the equities or bona fides of a parent loan based upon the hindsight of some imaginary independent (and necessarily hypothetical) lender, while disregarding substantial, real findings by an expert Federal administrative agency [*8] over a six year period, would frustrate the clear statutory mandates and underlying policies of the HCA.

Exhibits to Brief of the Columbia Gas Transmission Corporation in Support of its Motion and Amended Motion for Withdrawal of the Jurisdictional Reference, Exhibit E, Motion of the Columbia Gas System, Inc. for Partial Summary Judgment on the Pleadings and for Partial Summary Judgment ("Summary Judgment Motion"), at 34-38 (citations omitted) (footnotes omitted).

Columbia Gas argues that it is entitled to summary judgment on Count Two in part because the Committee has not adequately alleged inequitable conduct.

The [Committee] does not allege that [CG Transmission] was initially undercapitalized. The [Committee] does not claim that the formalities of [Columbia Gas'] loans to [CG Transmission] did not exist or were not honored. The [Committee] does not assert that the terms of [Columbia Gas'] loans were inherently unfair to [CG Transmission's] creditors or were unfairly concealed from creditors. Indeed, in light of the full regulatory process of disclosure, review and approval by the SEC, none of those claims could credibly be made.

Summary Judgment Motion, at 46.    Later,    [*9] Columbia Gas asserts that the SEC approval process eliminates any issue that the financing was unfair or extraordinary.  Moreover,  to  support  summary judgment on Count 12--the voidable preference count-- Columbia Gas states:

Pursuant to its statutory duty under the HCA to ensure that a given debt financing is appropriate in light of the capital structure of the entire holding company system, the SEC, at all relevant times, approved the capital structure resulting from the issuance of financing instrument by [CG Transmission] and [Columbia Gas]. . . . The SEC's approval of these payments should also be deemed to satisfy any requirement that the transfers be made in accordance with an objective industry standard.

Summary Judgment Motion, at 72-73 (citations omitted).  Finally, Columbia Gas asserts that it is entitled to summary judgment because the equitable subordination, recharacterization and fraudulent conveyance claims are barred by laches and estoppel. Columbia Gas notes that all of the loans were submitted to the SEC for approval, subjected to public notice and could have been challenged by CG Transmission's creditors. Summary Judgment Motion, at 73-77.

3. Legal Standard [*10]

Under the second sentence of § 157(d) a district court is required, on motion by any party, to withdraw a proceeding if "resolution of the proceeding requires consideration of both Title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). [HN3]The standard for mandatory withdraw utilized by this district contains two elements.    First, consideration of the "other laws" must be necessary for the resolution of the proceeding.  In re Continental Airlines, 138 Bankr. 442, 444 (D. Del. 1992). Second, the consideration must be substantial and material. Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, 107 Bankr. 34, 38 (D. Del. 1989). Withdrawal is not mandatory if only a straightforward application of a federal law is required, but only when resolution "requires significant interpretation of federal laws." Id. at 38 (quoting In re Johns-Manville Corp., 63 Bankr. 600, 602 (S.D.N.Y. 1988)). As the party seeking withdrawal, the Committee bears the burden [*11] of demonstrating that a substantial and material consideration of the PUHCA is required. Accord In re Continental, 138 Bankr. 442, 445 (D. Del. 1992).

4. Analysis

The Committee contends that "regardless of whether PUHCA is asserted for its preemptive, preclusive or evidentiary   impact,   substantial   and   material consideration of PUHCA and the SEC review process is necessary, and thus withdrawal is required. In this regard, the Committee contends that resolution of the following questions related to the preclusive effect of some prior SEC approvals would require substantial consideration of the PUHCA: 1) does the PUHCA express a congressional intent regarding the preclusive effect of SEC findings, 2) what is the scope of issues considered by the SEC when reviewing financing applications, 3) is SEC review limited to those purposes stated in the PUHCA, 4) does SEC have jurisdiction under PUHCA to consider bankruptcy causes of action, 5) can SEC findings be binding upon unsecured creditors, 6) are creditors given notice and fair opportunity to be heard, 7) are creditors aware of the consequences of a determination in a PUHCA

1993 U.S. Dist. LEXIS 1280

proceeding, 8) does the SEC [*12] function in its executive, legislative, or judicial capacity in reviewing financial applications, 9) are hearings conducted at which evidence can be presented and witnesses examined.

In the context of a withdrawal motion, the Court is not convinced that resolving the questions posed by the Committee would involve the substantial and material consideration contemplated by § 157(d). Although determining the preclusive effect of the SEC rulings undoubtedly would require some application of the PUHCA, it does not appear to require substantive interpretation of its provisions. Further, issue and claim preclusion questions are principles of federal common law, and application of federal common-law principles do not require mandatory withdrawal. In re Continental Airlines, 138 Bankr. at 446.

The Committee also contends that the reliance by Columbia Gas on the SEC findings as evidence requires substantial consideration of the PUHCA. However, the Court is persuaded that such a reliance merely implicates the amount of significance the Bankruptcy Court may or should accord the SEC prior rulings, not a substantial and material consideration of the PUHCA. This [*13] is not a case where the cause of action is grounded in a non-bankruptcy statute, or where the proceeding revolves around interpretation of the meaning of a phrase in a non-bankruptcy statute. Under the circumstances presented here, the most that would be required would be an examination of the scope of the SEC review and approval process, and such a de minimis consideration cannot support mandatory withdrawal.

Moreover, the Court is convinced that any consideration of the PUHCA that may occur in this proceeding is speculative. Columbia Gas has raised numerous factual and legal issues in its Answer and Motion that could resolve one or all of the claims without reliance on the preclusive effect of the SEC findings. As such, it is difficult to conclude at this stage of the proceedings that consideration of the PUHCA is necessary to resolve the issues presented in this proceeding. Thus, the Court concludes that mandatory withdrawal under § 157(d) is not warranted.

B. Permissive Withdrawal

The Committee also contends that withdrawal is warranted under the discretionary withdrawal provision of § 157(d). Under 28 U.S.C. § 157(d), a "district [*14] court may withdraw, in whole or in part, any case or proceeding referred under this section . . . for cause shown." The requirement that cause be shown "creates a 'presumption that Congress intended to have bankruptcy proceedings adjudicated in

bankruptcy court unless rebutted by a contravening policy.'" In re Delaware & Hudson Ry., 122 Bankr. 887, 893 (quoting Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec., 106 Bankr. 367, 371 (D. Del. 1989)).

"Cause" is not defined by the statute. However, the Court of Appeals for the Third Circuit has identified the standard outlined by the Court of Appeals for the Fifth Circuit as the minimum standard of cause. n2 In the case of In Re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990), the Third Circuit discussed [HN4]five factors to be considered by a district court in ascertaining whether cause exists to withdraw a reference: 1) promoting uniformity of bankruptcy administration; 2) reducing forum shopping and confusion; 3) conserving creditor/debtor resources; 4) expediting bankruptcy process; 5) timing of request for withdrawal. In addition, district courts regularly [*15] cite two other factors when determining the appropriateness of a withdrawal. They are: 1) whether the parties have requested a jury trial, see, e.g., West Electronics, Inc. v. National Union Fire Insurance Co., 1992 U.S. Dist. LEXIS 10957, at *27 (D.N.J. 1992), and 2) whether the matter is a core proceeding, see, e.g., In re Delaware & Hudson Ry., 122 Bankr. 887, 890 (D. Del. 1989).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n2 In the case of In Re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990), the Court of Appeals for the Third Circuit discussed the factors outlined in Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985).

- - - - - - - - - - - - End Footnotes- - - - - - - -
- - - - - -

Here, the Committee argues that the jurisdictional reference should be withdrawn for cause because (1) the Committee has a Seventh Amendment right to a jury trial on the preference and fraudulent conveyance causes of action, (2) the Committee has timely requested a jury trial, and (3) withdrawing [*16] the reference would eliminate the need for the Court to determine if the Bankruptcy Court has the power to conduct a jury trial. The Committee further contends that judicial economy and administrative efficiency warrant that the reference be withdrawn. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -
- - - - - -

n3 The Customers Committee also filed a statement in support of the amended motion to withdraw reference to the

Bankruptcy Court. (D.I. 10). In its statement, the Customers Committee alleges that it filed its "Intervenor Complaint" against Columbia Gas and CNR on June 15, 1992, seeking relief similar to that sought by the Committee. The Customers Committee further alleges that it filed a demand for a trial by jury on July 8, 1992. Finally, the Customers Committee argues that even if the Committee waived its right to a jury trial, the amended motion to withdraw the reference to the Bankruptcy Court should still be granted because the Customers Committee did not file a proof of claim and thus has not waived its right to a jury trial. The Court's analysis With regard to the Committee's right to a jury trial also applies to the Customers Committee.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*17]

Columbia Gas, on the other hand, contends that there is not cause to withdraw the reference. Columbia Gas argues that the Committee is not entitled to a jury trial on the fraudulent conveyance and preference causes of action. First, Columbia Gas argues that the Committee's complaint in this adversary proceeding is really an objection to the proof of claim filed by Columbia Gas, and thus, falls within the Bankruptcy Court's claims allowance jurisdiction. Second, Columbia Gas contends that the Committee submitted to the equitable jurisdiction of the Bankruptcy Court by filing a voluntary bankruptcy petition. Third, Columbia Gas contends that the Committee waived its right to a trial by jury by filing a proof of claim on behalf of CG Transmission in the Columbia Gas bankruptcy. Moreover, Columbia Gas argues that judicial economy and efficiency argue for allowing the proceeding to continue in the Bankruptcy Court. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 The Columbia Gas Creditors Committee and the Columbia Gas Equity Committee filed a joint memorandum opposing the withdrawal of reference to the Bankruptcy Court. (D.I. 6). The Columbia Gas Creditors Committee and the Columbia Gas Equity Committee contend that there is not cause to withdraw this proceeding. First, the committees note that this is a core proceeding. Second, the committees argue that the need to resolve

this litigation expeditiously, because it is blocking the confirmation of the reorganization plans, would be better satisfied if the Bankruptcy Court retained jurisdiction. With respect to the Committee's claim to a right to a trial by jury, the Columbia Gas committees argue that: the Committee waived its right by filing a proof of claim asserting the same causes of action, the principal claims contained in the Complaint are equitable subordination and recharacterization which lie at equity not at law, and it is too early to withdraw because this proceeding may never reach the trial stage.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*18]

The Court will first consider the Committee's request for a jury trial because, if the Committee is entitled to a trial by jury, the Court believes that sufficient cause to withdraw the reference would exist.

1. The Committee's Seventh Amendment Right to a Jury Trial

The issue of the Committee's right to a trial by jury is easily stated -- does the Seventh Amendment entitle the debtor (in the instant case, the Committee acting on behalf of the debtor) to a jury trial where the debtor seeks to avoid fraudulent conveyances and preferential transfers made to a creditor (Columbia Gas) who has filed a proof of claim against the estate. The Supreme Court's two most recent pronouncements in this area are Granfinanciera, SA v. Nordberg, 492 U.S. 33, 109 S. Ct. 2782 (1989) and Langenkamp v. Culp, 498 U.S. 42, 111 S. Ct. 330 (1990). In Granfinanciera, the Supreme Court outlined a three-part analysis to determine a party's right to a trial by jury under the Seventh Amendment in the bankruptcy context:

"First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. [*19] Second, we examine the remedy sought and determine whether it is legal or equitable in nature." . . . If, on balance, these two factors indicate that a party is entitled to a jury trial under the Seventh Amendment, we must decide whether Congress may assign and has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not use a jury as a factfinder.

1993 U.S. Dist. LEXIS 1280

Id. (citations omitted) (footnotes omitted). In other words, if the action is historically legal, and if the remedy sought is a legal remedy, a right to a jury trial exists if the action involves a "private right" as opposed to a "public right." In Granfinanciera, the Supreme Court concluded that a creditor who had not filed a proof of claim against the estate was entitled to a jury trial on a bankruptcy trustee's fraudulent conveyance claim. Id. at 64.

Applying the Supreme Court's Seventh Amendment analysis to this case, the Court finds that the Committee's claims are legal in nature and that the remedy sought is legal. The Supreme Court has clearly held that fraudulent conveyance and preferential transfer actions are legal in nature. Id. at 43. Moreover, as in Granfinanciera, [*20] the Committee seeks to recover for fraudulent conveyances and preferences of a definite sum of money. Although the prayer for relief is phrased in terms of "avoidance" of the alleged fraudulent transfers as opposed to "damages," the Complaint plainly seeks monetary relief in an attempt to augment the assets of the estate.

Thus, the third step of the Granfinanciera analysis must be examined -- can Congress, notwithstanding the Seventh Amendment, authorize the Bankruptcy Court to render a final judgment over this core proceeding without the use of a jury? The answer to this question turns on whether the rights being adjudicated are public or private rights. The Seventh Amendment right to a jury trial does not attach to those public rights, adjudication of which Congress has assigned to a non-Article III tribunal, such as the Bankruptcy Court. Id. at 2796.

In Granfinanciera, the Supreme Court determined that a trustee's right to recover a fraudulent conveyance, under 11 U.S.C. § 582(a)(2), from a creditor who had not filed a claim against the estate is a private, as opposed to a public right. n5 Id. at 56.

The Court concluded:

[*21]
because petitioners . . . have not filed claims against the estate, respondent's fraudulent conveyance action does not arise "as part of the process of allowance and disallowance of claims." Nor is that action integral to the restructuring of the debtor-creditor relations. Congress therefore cannot divest petitioners of their Seventh Amendment right to a trial by jury.

Id. at 58-59. Similarly, in Langenkamp v. Culp, 498 U.S. 42, 111 S. Ct. 330, 331 (1990), the Supreme Court held that respondents (creditors) were not

entitled to a jury trial on trustee's preference action because they had filed claims against the estate. n6

-------------- Footnotes ---------

n5 The Court defined a "public" right in cases not involving the federal government as one that is "so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution . . . ." Id. at 54.

n6 Since Langenkamp, the Court of Appeals for the Third Circuit has addressed the jury demand issue where the creditor has filed a claim against the estate. Travellers International AG. v. Sue L. Robinson, District Judge, et al., No. 92-7455, slip op. (3rd Cir. December 28, 1992). Citing Langenkamp, the Third Circuit held that "once a creditor files a claim against the bankruptcy estate, he loses his right to a jury trial in regard to an underlying preference action." Id. at 7.

Although Langenkamp and Travellers are instructive, they do not control the resolution of this motion. In both Langenkamp and Travellers, the issue was a creditor's right to a trial by jury where the creditor filed a proof of claim against the estate. The issue presented by this motion is a debtor's right to a jury trial where the creditor has filed a proof of claim against the estate. Because these cases do not directly control the issue presented by this matter, the Court must rely on the public-private rights analysis of Granfinanciera.

------------ End Footnotes---------

[*22]
Thus, in the instant case, if the Committee's claims arise as part of the claims allowance process, or if they are integrally related to restructuring of the debtor-creditor relationship, it is a "public right" and the Committee is not entitled to a jury trial. The Committee argues that this action is not part of the claims allowance process because it seeks affirmative relief in an effort to augment the estate. The Court views it differently.

Columbia Gas, the creditor, has filed a claim against the estate. The claim of Columbia Gas may be reduced or even eliminated if the Committee's fraudulent conveyance and preferential transfer action is successful. Based on this alone, it appears that the

adversary proceeding is part of the bankruptcy process of claims allowance and disallowance. This conclusion is further supported by the unique facts of this case. First, the claims in the Committee's Complaint are substantially similar to the claims it filed as a creditor in the bankruptcy proceedings of Columbia Gas, a parallel and highly related proceeding. Second, the Complaint, by its own terms, states that it serves as an objection to the proof of claim filed by Columbia Gas. [*23] For these reasons, the Court is persuaded that in applying the principles of Travellers and Granfinanciera this adversary proceeding is "inextricably intertwined" with the claims allowance process. The integral relation of the Committee's adversary proceeding to the claims process not only in the CG Transmission bankruptcy, but the Columbia Gas bankruptcy as well, suggests to the Court that the rights involved here are public rights. Since Congress has permissibly assigned adjudication of such rights to the Bankruptcy Court, n7 the Court concludes that the Committee is not entitled to a trial by jury under the Seventh Amendment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n7 [HN5]The bankruptcy code grants bankruptcy judges the authority to "hear and determine . . . all core proceedings arising under Title 11 . . ." 11 U.S.C. § 157(b)(1). [HN6]The bankruptcy's authority to decide core proceedings is subject only to appellate review by the district court. See 11 U.S.C. § 158. The parties to this proceeding have stipulated that the adversary proceeding is a core proceeding within the meaning of § 157.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - -

[*24]

This same reasoning holds true with respect to the Committee's allegations against CNR. Although CNR did not file a proof of claim against the CG Transmission estate, and is not a party to the bankruptcy, the allegations against CNR are based on the same transactions as those involving Columbia Gas. As such, the Court finds that the Committee's allegations against CNR are likewise part of the claims allowance and disallowance process, and are, thus, public in nature.

2. Other Factors

Upon consideration of the other factors involved in a withdrawal of reference analysis, the Court concludes that there is not cause to withdraw the reference in this

proceeding. The Committee argues that permissive withdrawal is warranted because of the Bankruptcy Court's uncertain jurisdiction to conduct jury trials. Further, the Committee contends that withdrawing the reference is more efficient because it would eliminate the need to bifurcate the proceedings between those claims that must be heard by a jury and those that the Bankruptcy Court has jurisdiction over. These arguments all flow from the assumption that the Committee is entitled to a jury trial. Since the Court has concluded [*25] that the Committee is not entitled to a jury trial, these arguments are not relevant.

In addition, there are at least two factors that argue against withdrawing the reference. First, the parties have stipulated that the adversary proceeding is a core proceeding. Second, the parties are operating under an expedited schedule ordered by the Bankruptcy Court. Withdrawing the reference at this point in time would severely undermine that contemplated schedule. Thus, on balance, the Court is convinced that judicial economy, uniformity, and administrative efficiency will all be better served if the Bankruptcy Court retains jurisdiction. Accordingly, the Court will not order withdrawal of this matter under the discretionary withdrawal provision of § 157(d).

IV. CONCLUSION

Because it does not appear at this stage in the proceedings that substantial and material consideration of the PUHCA is necessary to resolve the issues involved in this matter, the Court concludes that withdrawal is not required under the mandatory withdrawal provision of § 157(d). In addition, because the Court is convinced that judicial economy and administrative efficiency will not be served by withdrawing the [*26] reference, the Court refuses to exercise its discretion to withdraw the reference. Accordingly, the Committee's Motion for Withdrawal of the Reference to the Bankruptcy Court will be denied.

An appropriate Order will be entered.

**"2"**

1997 U.S. Dist. LEXIS 23784

IN RE THE ELDER-BEERMAN STORES CORPORATION, et al., Debtors. BEERMAN-PEAL HOLDINGS, INC., et al., Plaintiffs, vs. CARSON PIRIE SCOTT & COMPANY, Defendant. THE ELDER-BEERMAN STORES CORPORATION, Plaintiff, vs. CARSON PIRIE SCOTT & COMPANY, Defendant.

Case No. C-3-96-378, Case No. C-3-97-299

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

1997 U.S. Dist. LEXIS 23784

August 1, 1997, Filed

**PRIOR HISTORY:** [*1] Bankruptcy Case No. 95-33643. Adv. Pro. No. 97-3189.

**DISPOSITION:** CPS' Motion for Withdrawal of Reference of Jurisdiction (Doc. # 1) sustained. Reference of adversary proceeding to Bankruptcy Court withdrawn pursuant to 28 U.S.C. § 157(d).

**CORE TERMS:** adversary proceeding, withdrawal, discovery, withdraw, non-core, post-petition, judicial economy, withdrawn, pre-petition, extraordinary circumstances, shopping, lawsuit, breach of contract, state law, economical, litigate, memorandum, exercise jurisdiction, shareholders, exclusive jurisdiction, injunctive relief, counterclaim, supplemental, inextricably intertwined, federal bankruptcy law, conclusions of law, substantive right, final judgment, set forth, consolidated

**COUNSEL:** For BEERMAN-PEAL HOLDINGS INC, BEERMAN CORP, plaintiffs: R Jeffrey Pollock, McDonald, Hopkins, Burke & Haber, Cleveland, OH.

For BEERMAN-PEAL HOLDINGS INC, BEERMAN CORP, plaintiffs: William J O'Neill, HMcDonald, Hopkins, Burke & Haber Co., LPA, Cleveland, OH.

For BEERMAN-PEAL HOLDINGS INC, BEERMAN CORP, plaintiffs: Shawn M Riley, McDonald Hopkins Burke & Haber Co LPA, Cleveland, OH.

For CARSON PIRIE SCOTT AND CO, appellant: Thomas Brennan Ridgley, Robert John Sidman, James A Wilson, Jr, Vorys, Sater, Seymour & Pease - 2, Columbus, OH.

For CARSON PIRIE SCOTT AND CO, appellant: Douglas K Mayer, Wachtell, Lipton, Rosen & Katz, New York, NY.

For OFFICIAL COMMITTEE OF UNSECURED CREDITORS, intervenor: Diane Stehle Dix, Louis Frank Solimine, Thompson, Hine & Flory - 1, Cincinnati, OH.

For OFFICIAL COMMITTEE OF UNSECURED CREDITORS, intervenor: Richard Mason Boydston, Jr, Benesch, Friedlander, [*2] Coplan & Aronoff - 1, Cincinnati, OH.

For OFFICIAL COMMITTEE OF UNSECURED CREDITORS, intervenor: Alan R Lepene, Theresa J Pulley Radwan, Thompson Hine & Flory, Cleveland, OH.

For OFFICIAL COMMITTEE OF UNSECURED CREDITORS, intervenor: Jay R Indyke, Siegel, Sommers & Schwartz, New York, NY.

For CARSON PIRIE SCOTT AND CO, defendant: Thomas Brennan Ridgley, Robert John Sidman, James A Wilson, Jr, Vorys, Sater, Seymour & Pease - 2, Columbus, OH.

For CARSON PIRIE SCOTT AND CO, defendant: Douglas K Mayer, Wachtell, Lipton, Rosen & Katz, New York, NY.

For ELDER-BEERMAN STORES CORPORATION, appellee: Richard Alan Chesley, Jones Day Reavis & Pogue - 2, Columbus, OH.

For ELDER-BEERMAN STORES CORPORATION, appellee: Scott J Davido, Jones, Day, Reavis & Pogue, Pittsburgh, PA.

For ELDER-BEERMAN STORES CORPORATION, appellee: Richard M Cieri, Jones, Day, Reavis & Pogue, Cleveland, OH.

For CARSON PIRIE SCOTT AND CO, counterclaimant: Thomas Brennan Ridgley, Robert John Sidman, James A Wilson, Jr, Vorys, Sater, Seymour & Pease - 2, Columbus, OH.

For CARSON PIRIE SCOTT AND CO, counter-claimant: Douglas K Mayer, Wachtell, Lipton, Rosen & Katz, New York, NY.

For [*3]  BEERMAN-PEAL HOLDINGS INC, BEERMAN CORP, counter-defendants: R Jeffrey Pollock, McDonald, Hopkins, Burke & Haber, Cleveland, OH.

For BEERMAN-PEAL HOLDINGS INC, BEERMAN CORP, counter-defendants: William J O'Neill, HMcDonald, Hopkins, Burke & Haber Co., LPA, Cleveland, OH.

For BEERMAN-PEAL HOLDINGS INC, BEERMAN CORP, counter-defendants: Shawn M Riley, McDonald Hopkins Burke & Haber Co LPA, Cleveland, OH.

**JUDGES:** WALTER HERBERT RICE, CHIEF JUDGE, UNITED STATES DISTRICT COURT.

**OPINIONBY:** WALTER HERBERT RICE

**OPINION:** DECISION AND ENTRY SUSTAINING MOTION FOR WITHDRAWAL OF REFERENCE OF JURISDICTION FILED BY DEFENDANT CARSON PIRIE SCOTT & COMPANY (DOC. # 1 IN CASE NO. C-3-97-299); REFERENCE OF ELDER-BEERMAN STORES CORP. V. CARSON PIRIE SCOTT & CO., ADV. PRO. NO. 97-3189, WITHDRAWN PURSUANT TO 28 U.S.C. § 157(d); DECISION AND ENTRY OVERRULING, AS MOOT, MOTION FOR EXPEDITED DETERMINATION FILED BY DEFENDANT CARSON PIRIE SCOTT & COMPANY (DOC. # 2 IN CASE NO. C-3-97-299); CASE NO. C-3-97-299 CONSOLIDATED WITH CASE NO. C-3-96-378; ALL FURTHER PLEADINGS AND OTHER PAPERS TO BE FILED IN CASE NO. C-3-96-378; BRIEFING SCHEDULE AND FURTHER PROCEDURES SET FORTH

On June 27, 1997, The [*4] Elder-Beerman Stores Corporation ("EB") filed an adversary proceeding in the United States Bankruptcy Court for the Southern District of Ohio, alleging that Carson Pirie Scott & Company ("CPS") had violated a Confidentiality Agreement and an Amended Confidentiality Agreement. n1 Elder-Beerman Stores Corp. v. Carson Pirie Scott & Co.), Adv. Pro. No. 97-3189 ("adversary proceeding"). Nearly one year earlier, Beerman-Peal Holdings ("Beerman-Peal") and the Beerman Corporation had filed a lawsuit, which was removed to this Court, which also alleged that CPS had violated the two agreements. Beerman-Peal Holdings, Inc., et al. v. Carson Pirie Scott, 1997 U.S. Dist. LEXIS 23784, Case No. C-3-96-378 ("District Court action").

Not wishing to litigate these seemingly identical lawsuits in two separate fora, CPS has moved to withdraw reference of the adversary proceeding. n2 See Doc. # 1 in Case No. C-3-97-299. EB is not a party to the District Court action; however, it has participated in some of the discovery conducted in that litigation. n3 Moreover, even though not a party to the District Court action, EB is inextricably intertwined with Beerman-Peal and Beerman Corporation, the Plaintiffs therein. Beerman-Peal [*5] is a holding corporation which owns 100% of the stock of EB. The Beerman Corporation is an owner the stock of Beerman-Peal. The intertwining of EB and the Plaintiffs in the District Court action was amply demonstrated by a letter which EB sent to Plaintiffs' counsel, stating that it (EB) would prohibit the voluntary resolution of the District Court action, without its consent.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - - -

n1 The Confidentiality Agreement, dated December 5, 1994, was between CPS, on one hand, and Beerman-Peal and the Beerman Corporation, on the other. EB alleges that it is an intended beneficiary of that agreement. In addition to CPS, Beerman-Peal and the Beerman Corporation, EB was a party to the October 3, 1995, Amended Confidentiality Agreement.

n2 CPS has also filed a motion requesting an expedited determination of its request for withdrawal of reference. See Doc. # 2. Since the Court now rules upon CPS' request, CPS' Motion for Expedited Determination of same (Doc. # 2) is overruled, as moot.

n3 For instance, EB produced far more documents than the Plaintiffs in the District Court action. As a consequence, EB's counsel was involved in drafting the agreed protective order entered in that lawsuit. Additionally, EB participated in the depositions of its key personnel and of its investment banker.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*6]

The briefs have been filed; the parties have vented their spleens, and, now, the Court must decide whether to save the republic by granting the request of CPS for withdrawal of reference or whether to save it by

denying that request. The resolution of that question appropriately commences with a brief discussion of the subject matter jurisdiction of this Court and of the Bankruptcy Court over bankruptcy matters.

Subject matter jurisdiction over bankruptcy matters is conferred upon this and other District Courts by 28 U.S.C. § 1334, which provides:(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.Reference of such matters to a Bankruptcy Court is governed by 28 U.S.C. § 157(a), which provides:Each district [*7] court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.This District has provided for such reference. Under 28 U.S.C. § 157(d), a District Court may withdraw reference, "on its own motion or on timely motion, for cause shown." n4

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 This type of withdrawal is called permissive withdrawal. Section 157(d) also provides for mandatory withdrawal under certain circumstances. CPS does not argue that mandatory withdrawal is applicable.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

CPS argues that the fact that the two parallel cases arise out of the same facts and involve common issues establishes cause for withdrawal. n5 EB, on the other hand, contends that CPS must establish both cause and extraordinary circumstances in order for reference to be withdrawn and that neither exists in this situation.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 CPS argues that its request to withdraw reference was timely, since it was made less than one week after EB filed the adversary proceeding. EB does not argue to the contrary. Given that EB initiated the adversary proceeding on June 27th, a Friday, and CPS sought withdrawal of reference the following Wednesday, the Court finds that the request was timely.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*8]

The Court first turns to EB's argument relating to the need for and the absence of "extraordinary circumstances." In In re Onyx Motor Car Corp., 116 B.R. 89, 91 (S.D.Ohio 1990), Judge Smith wrote "let it be clear, without truly exceptional and compelling circumstances, a motion for withdrawal of reference will not be well received by this Court." In In re Federated Dept. Stores, Inc., 189 B.R. 142, 144 (S.D.Ohio 1995), Judge Kinneary seized upon that language from Onyx and held that the party seeking withdrawal of reference must establish both cause and extraordinary circumstances. No other court has explicitly indicated that the presence of extraordinary circumstances is a separate factor which must be demonstrated before reference may be withdrawn. Examining the language of § 157(d) causes the Court to conclude that the presence of extraordinary circumstances is not a separate requirement for withdrawal. Section 157(d) expressly requires that cause be shown, without mentioning a separate requirement of extraordinary circumstances. That said, however, courts have uniformly stressed that withdrawal of reference should be the exception rather [*9] than the rule. Therefore, cause should be found only in unusual circumstances. See e.g., In re Parklane/Atlanta Joint Venture, 927 F.2d 532, 536 (11th Cir. 1991) (noting that cause "is not a hollow requirement"). For reasons which follow, the Court concludes that cause exists.

Congress did not define cause; however, courts have identified a number of factors which a court should consider when deciding whether the requisite cause exists. In Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 999 (5th Cir. 1985), the Fifth Circuit said that, in determining whether to withdraw reference (and, thus, whether cause exists), a District Court should consider judicial economy and the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process. Accord In re Parklane, supra; In re Pruitt, 910 F.2d 1160, 1168 (3rd Cir. 1990). n6 An application of those factors leads the Court to the conclusion that CPS has indeed established cause.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 The Sixth Circuit has not addressed the question of what factors a District Court

should consider when deciding whether to withdraw reference.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*10]

In the Court's opinion, the most important factor to consider in this particular case is judicial economy. Given that a parallel action has been pending in this Court for approximately ten months, judicial economy will be served by withdrawing reference and consolidating the two lawsuits into one for disposition. By so doing, it will not be necessary for two judicial officers to resolve cases arising out of the same contracts, cases which will in all probability involve a substantial overlap in proof. n7 EB argues that judicial economy would not be served, since the only similarity between the adversary proceeding and the District Court action is the fact that they arise out of the same Confidentiality Agreements. According to EB, the adversary proceeding arises out of breaches of those agreements by CPS which occurred this year, after the District Court action had been filed. EB's assertion that the two cases do not arise out of the same facts and occurrences is belied by the fact that EB has subpoenaed all discovery conducted in the District Court action. n8 Moreover, according to CPS, the Plaintiffs, during discovery in the District Court action, have been asking questions about [*11] the allegations which were later contained in EB's complaint in the adversary proceeding. There will in all probability, therefore, be an overlap of proof in the two cases, beyond the mere existence of the two agreements. n9 In addition, CPS has defended against the District Court action, by arguing that the Confidentiality Agreements are not enforceable, since it was not provided the information to which it was entitled. n10 That defense will unquestionably be asserted in the adversary proceeding and its resolution will, of necessity, involve identical evidence and arguments. Accordingly, this Court concludes that the District Court action and the adversary proceeding are parallel actions, initiated by inextricably intertwined plaintiffs against a common defendant. A number of courts have concluded that cause to withdraw reference exists when parallel actions are pending in the District and Bankruptcy Courts. See e.g., Big Rivers Elec. Corp. v. Green River Coal Co., 182 B.R. 751 (W.D.Ky. 1995); In re Sevko, 143 B.R. 114 (N.D.Ill. 1992).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - -

n7 The Motion for Summary Judgment filed by CPS in the District Court action has just become at issue. In that motion, CPS focuses upon its defense that it has been relieved of its commitments under the Confidentiality Agreements by the failure of EB, Beerman-Peal and the Beerman Corporation to perform their obligations under those agreements. The issues raised by CPS in that motion will undoubtedly by raised in the adversary proceeding; therefore, if reference is not withdrawn, two judicial officers will be required to rule upon these identical issues.

[*12]

n8 The subpoena was issued in the adversary proceeding. EB has served it upon counsel for Beerman-Peal and the Beerman Corporation.

n9 EB also argues that the two cases are different, because it is seeking injunctive relief in the adversary proceeding, whereas the Plaintiffs in the District Court action are seeking damages. That is not entirely correct. In the District Court action, the Plaintiffs are seeking injunctive relief, as well as damages. Moreover, they have recently withdrawn their damages expert, without naming a substitute witness. The Court's pretrial order required the Plaintiffs to identify expert witnesses no later than January 23, 1997. Consequently, the Plaintiffs in the District Court action will most likely be limited to injunctive relief.

n10 CPS has asserted that defense both as affirmative defenses and as a counterclaim, seeking a declaration that the Confidentiality Agreements are void. See Doc. # 3 in Case No. C-3-96-378. EB argues that CPS violated Rule 19, by failing to join it as a Counterclaim Defendant, since it was a party to the Amended Confidentiality Agreement. Assuming for sake of argument that EB is an indispensable party to the Counterclaim, EB does not explain why its non-joinder is the basis for denying withdrawal of reference.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*13]

In sum, the Court concludes that judicial economy establishes cause sufficient to warrant withdrawal of reference. Moreover, none of the other above-listed considerations cautions against withdrawal of

reference. The adversary proceeding is a garden variety breach of contract action, which does not raise issues of bankruptcy law. Therefore, withdrawal of reference will not hinder the goal of promoting uniformity of bankruptcy administration, nor would declining to withdraw reference foster that goal. Both CPS and EB accuse the other of forum shopping; however, the Court cannot conclude that either has engaged in same. EB's reorganization is currently pending before the Bankruptcy Court; therefore, it is understandable, from EB's perspective, that it would want to have its claims against CPS decided in that forum, even though to do so would not be in the interest of judicial economy. CPS argues that EB has engaged in forum shopping, because it has laid in wait, rather than seeking to intervene in the District Court action. This Court cannot conclude that the timing of the filing of the adversary proceeding by EB is indicative of forum shopping. Quite understandably, EB does not want [*14] to be bound by this Court's decision on CPS' Motion for Summary Judgment in the District Court action and any resulting judgment, without having had the opportunity to conduct discovery and to participate in the briefing on that motion. EB's desire not to be so bound, however, is not a sufficient reason for this Court to deny the request for withdrawal of reference and, thus, to allow the adversary proceeding to go forward in the Bankruptcy Court with the concomitant inefficient use of judicial resources and risk of inconsistent adjudications. It is eminently justifiable for CPS to conserve its resources, as well as fostering judicial economy, by seeking withdrawal of reference of the adversary proceeding, so that it could be resolved in conjunction with the District Court action. Therefore, forum shopping will neither be encouraged nor reduced by withdrawal of reference. The potential for confusion, on the other hand, will be reduced by having these disputes heard by one court, given the possibility of two judicial officers entering inconsistent decisions on the same issue(s). It certainly will be no less economical for EB to litigate the adversary proceeding in this Court (as opposed [*15] to the Bankruptcy Court). This Court is located in a building which is catercorner from that in which the Bankruptcy Court sits. On the contrary, it would seem to be more economical for EB to proceed in this Court. For instance, it has been involved in some of the discovery that has been conducted in the District Court action, and EB will have the option of incorporating and relying upon some or all of the memorandum Plaintiffs have filed in the District Court action. Moreover, it will unquestionably be more economical for CPS to litigate the parallel disputes arising out of the same agreements in one forum. Finally, there is no indication that withdrawal of reference will expedite or slow the bankruptcy process.

The Second Circuit has held that a District Court should also consider whether the matter sought to be withdrawn is a core or non-core proceeding. In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir. 1993). Therein, the Second Circuit stressed that resolution of the core/non-core issue can have a practical effect on whether to withdraw reference, since the Bankruptcy Court submits proposed findings of fact and conclusions of law to the District Court in [*16] a non-core proceeding, rather than issuing a final judgment. See 28 U.S.C. § 157(c)(1). Therefore, judicial economy could be served by withdrawing reference of a non-core proceeding.

Herein, the parties disagree about whether the adversary proceeding represents a core or non-core matter. The Sixth Circuit has said that a core proceeding "either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy." Sanders Confectionery Products v. Heller Financial, 973 F.2d 474, 483 (6th Cir. 1992). See also In re U.S. Brass Co., 110 F.3d 1261, 1268 (7th Cir. 1997) ("Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law, normally state law."); Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 773-74 (8th Cir. 1995) (Non-core proceedings do not invoke substantive rights created by federal bankruptcy law and could exist [*17] outside of bankruptcy, even though they may be related to a bankruptcy); Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228, 1234-35 (3rd Cir. 1994); In re Wood, 825 F.2d 90, 96-97 (5th Cir. 1987). Applying the standards enunciated by these courts leads to the conclusion that the adversary proceeding is a non-core proceeding, given that the adversary proceeding is nothing more than a garden variety state law, breach of contract action. In that adversary proceeding, EB has not invoked a substantive right created by the Bankruptcy Code or one that could not exist outside of bankruptcy. Rather, EB employs the Bankruptcy Code merely as the procedural vehicle by which it is asserting a claim based upon state law.

However, EB has cited a number of cases in which courts have concluded that an action by a debtor based upon a post-petition breach of a pre-petition contract is a core proceeding. See e.g., In re East Hill Mfg. Corp., 200 B.R. 535 (D.Vt. 1996) (and cases cited therein); In re Seatrain Lines, Inc., 198 B.R. 45 (S.D.N.Y. 1996); Hughes-Bechtol v. Construction Management, 144 B.R. 755 (S.D.Ohio 1992). [*18] In addition, some courts have said that an action which arises out of both

pre-petition and post-petition breaches of a pre-petition contract is a non-core proceeding. See e.g., Beard v. Braunstein, 914 F.2d 434, 443-45 (3rd Cir. 1990); Ralls v. Docktor Pet Centers, 177 B.R. 420 (D.Mass. 1995). Herein, the Confidentiality Agreements were both pre-petition. EB has alleged that CPS breached the agreements post-petition. CPS, on the other hand, argues that the adversary proceeding also arises out of events that occurred before EB filed its petition in bankruptcy. In this Court's opinion, it is not necessary to decide whether the adversary proceeding is based solely upon a post-petition breach or whether it is based in part on one of a pre-petition variety, since resolution of the issue of withdrawal of reference does not require the Court to decide whether the adversary proceeding is a core or a non-core proceeding. n11 Assuming for sake of argument that the adversary proceeding is a core proceeding, that fact would not change the conclusion that the this Court should withdraw reference of the adversary proceeding. Merely because a matter sought to be **[\*19]** withdrawn is a core proceeding does not affect the power of the District Court to withdraw reference. In re Almac's Inc., 202 B.R. 648, 657 (D.R.I. 1996); In re Sevko, 143 B.R. at 115. Even if the adversary proceeding were a core matter and, therefore, the Bankruptcy Court could enter final judgment therein (as opposed to issuing proposed findings of fact and conclusions of law), it would be inefficient for the adversary proceeding to remain in the Bankruptcy Court, since Beerman-Peal and the Beerman Corporation, EB's shareholders, could not proceed with their claims against CPS in the Bankruptcy Court. Rather, Beerman-Peal and the Beerman Corporation would be required to litigate their claims against CPS in this Court, since the Bankruptcy Court could not exercise jurisdiction over those claims. n12 Therefore, if this Court declined the request to withdraw reference over the adversary proceeding, two courts would be required to expend scarce judicial resources to resolve litigation arising out of the same or similar events and involving the same or similar claims and defenses.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n11 If called upon to resolve the question, the Court would conclude, based upon the definition of a core proceeding, set forth by the Sixth Circuit in Sanders Confectionery, supra, that the adversary proceeding is non-core. Moreover, courts which have held that the post-petition breach of a pre-petition contract is a core proceeding tread too close to the jurisdictional limitations of Bankruptcy Courts set by the Supreme Court in Northern Pipeline Const. Co. v.

Marathon Pipeline Co., 458 U.S. 50, 73 L. Ed. 2d 598, 102 S. Ct. 2858 (1982) (holding that a non-Article III judge could not render a final decision in a state law breach of contract action brought by a debtor). In those cases, the courts have not defined core proceedings in a manner similar to that set forth by the Sixth Circuit in Sanders Confectionery, supra. In support of this Court's dicta, in In re National Enterprises, Inc., 128 B.R. 956, 961 (E.D.Va. 1991), the court discussed the question of whether a post-petition breach of a pre-petition contract is a core proceeding:The fortuitous occurrence of an alleged breach of contract post-petition--standing alone--should not render the estate's action to collect damages for that breach a core proceeding. Where, as here, it is clear that the contract underlying the claim is a pre-petition contract that contemplated neither dealing with a bankrupt estate nor consenting to the jurisdiction of the bankruptcy court, some affirmative interaction between the non-debtor contracting party and the estate must exist for the matter to be considered a core action, subject to the full panoply of the bankruptcy court's power. Notably, each case cited by NEI as authority for its assertion that the action is core did in fact involve a post-petition debt that arose more clearly in connection with administration of the estate than the debt at issue here. See, e.g., In re Arnold Print Works, Inc., 815 F.2d 165, 168 (1st Cir. 1987) (claim arose in connection with sale of estate property); In the Matter of O'Sullivan's Fuel Co., Inc., 88 B.R. 17, 19-20 (D.Conn. 1988) (same).

Absent substantial post-petition contacts, an alleged breach of contract action treads too closely beside the bounds of the bankruptcy court's constitutional authority to render it a core proceeding. In such instances, the action is a "traditional state-law based contract action" without a substantial connection to the bankruptcy. Viewing such actions as core would create too grave a chance that the bankruptcy court would adjudicate rights at law that, under the Constitution, must be adjudicated by Article III courts. These actions thus are no more than related to the bankruptcy proceedings and should be

considered, as this action shall be considered, non-core matters.

See also, In re Castlerock Properties, 781 F.2d 159 (9th Cir. 1986). Herein, there is no indication that there was substantial contact between CPS and EB's bankruptcy estate.

[*20]

n12 The only conceivable basis for the Bankruptcy Court to exercise jurisdiction over the claims of EB's shareholders would be under 28 U.S.C. § 1334(b), which, through 28 U.S.C. § 157(a), authorizes a Bankruptcy Court to exercise jurisdiction over civil proceedings which are related to a bankruptcy. See Celotex Corp. v. Edwards, 514 U.S. 300, 307, 131 L. Ed. 2d 403, 115 S. Ct. 1493 (1995). To be related to a bankruptcy, a civil proceeding must effect the estate of the bankrupt. Id. at 308-09 n.6. Beerman-Peal and the Beerman Corporation have asserted claims, on their own behalf, arising out of the alleged breach of contracts, to which they are parties, by CPS. Consequently, resolution of their claims will not affect EB's estate, and, therefore, their claims are not related to EB's bankruptcy. Indeed, despite the fact that EB's filed bankruptcy long before its shareholders filed suit against CPS, no party has requested that this Court refer the District Court action to the Bankruptcy Court since it is related to EB's bankruptcy.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*21]

In sum, the Court sustains CPS' Motion for Withdrawal of Reference of Jurisdiction (Doc. # 1). Reference of the adversary proceeding to the Bankruptcy Court is withdrawn, pursuant to 28 U.S.C. § 157(d). Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Case No. C-3-97-299 is ordered consolidated with Case No. C-3-96-378. All further pleadings and additional papers are to be filed in Case No. C-3-96-378.

As is stated above, the Motion for Summary Judgment filed by CPS in the District Court action has recently become at issue. In order to afford EB an adequate opportunity to respond to that motion and to allow its prompt resolution, the Court establishes the following schedule, to wit:

1. EB shall have 30 days from date in which to conduct supplemental discovery, necessary to respond to that motion; n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n13 Thirty days may seem to be an overly modest period for EB to conduct the requisite discovery; however, upon close examination, this Court is convinced that it is not. During the conference call the Court conducted with counsel on Monday, July 7, 1997, the question of EB's subpoena seeking all of the discovery in the District Court action was discussed. It was agreed that the discovery would be provided to EB after it had signed the agreed protective order, which EB was partially responsible for drafting. Therefore, EB has (or will have) all of the discovery previously conducted in the District Court action. In addition, as noted, EB has been somewhat involved in the discovery in that lawsuit. Finally, CPS' Motion for Summary Judgment raises a narrow issue and is supported by only one affidavit. Consequently, a significant amount of supplemental discovery should not be required.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

[*22]

2. EB shall file its memorandum in opposition to CPS' motion within 10 days thereafter; n14 and

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n14 EB is free to incorporate some or all of the memorandum filed by the Plaintiffs in the District Court action.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

3. CPS shall file a supplemental reply memorandum with 10 days thereafter.

WALTER HERBERT RICE, CHIEF JUDGE

UNITED STATES DISTRICT COURT



UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | Case No. 03-12872 (JLP) |
| Debtor. | ) | |
| | ) | |
| | ) | |
| MAGTEN ASSET MANAGEMENT | ) | |
| CORPORATION AND LAW | ) | |
| DEBENTURE TRUST COMPANY OF | ) | |
| NEW YORK, | ) | |
| Plaintiffs, | ) | Adv. Proc. No. 04-53324 (JLP) |
| | ) | |
| v. | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| NORTHWESTERN CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 04-55051 (JLP) |
| | ) | |
| v. | ) | |
| | ) | |
| MAGTEN ASSET MANAGEMENT | ) | |
| CORPORATION, and TALTON R. | ) | |
| EMBRY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

In these cases, Plaintiff/Defendant Magten Asset Management Corporation and Embry

("Magten") have moved the U.S. District Court to withdraw the reference on each cause and

contemporaneously filed a "Motion and Memorandum of Law in Support of Motion for Stay of

Adversary Proceedings Pending Resolution of Motion to Withdraw the References to Bankruptcy Court." NorthWestern Corporation ("NOR") filed a memorandum opposing the stay motion.

Both causes are at issue, and a scheduling order entered November 2, 2004 set trial of each cause for February 7, 2005 after pre-trial discovery and filing of a final pre-trial order.

Also pending in Cause No. 04-53324 is NOR's motion to dismiss in part certain claims for relief set forth in Magten's amended complaint, specifically dealing with claims arising under the Public Utility Holding Company Act ("PUHCA") on grounds said claims were settled adversely to Magten in the court's order confirming NOR's amended Chapter 11 Plan of Reorganization. Memoranda have been filed by both parties on the motion of NOR. The Court has the motion under advisement.

However, in Magten's objection and memorandum in opposition to NOR's motion to dismiss the PUHCA related claims, which are an integral part of Magten's claim for relief in its amended complaint, Magten argues on pp. 12-13 of its memo: "If the Confirmation Order addresses these issues [the PUHCA claims], this Court is divested of jurisdiction because of the pending appeal." Magten filed a notice of appeal of the confirmation order and thereafter a "Statement of Issues to be Presented" on appeal. Exhibit "A" attached hereto and by reference made a part hereof.

Magten's First Amended Complaint at ¶ 9 states:

By this complaint, Plaintiffs seek, among other things, (i) a declaration that because the Debtor violated PUHCA, all contracts relating to the Montana Utility Assets and the Transfer that were executed between the filing of the Application and the date of the Transfer are void, (ii) the avoidance of the Transfer, (iii) a declaration that the assets that were fraudulently transferred are not the property of the Debtor's estate in its chapter 11 case, (iv) the imposition of a constructive trust over the transferred assets for the benefit of the Trust, and (v) the return of such

2

assets to Clark Fork.

In the order of confirmation, the court on pp. 44-46 stated:

e. Magten and Law Debenture also asserted in rem property interests in the Montana Assets and that such assets were being held in a constructive trust for the benefit of the QUIPS holders. The Court finds that neither Magten nor Law Debenture took any action to impose a constructive trust on the Montana Assets and presented no evidence whatsoever as to why they should be entitled to a constructive trust with respect to the Montana Assets.

\* \* \* \*

Accordingly, the Court finds that no constructive trust has been established and that money damages are an appropriate remedy for the holders of QUIPS Litigation Claims. The Court also finds that QUIPS Litigation Claims will be treated in the same manner as disputed unsecured claims under Section 7.5 of the Plan. Whatever claims may be asserted in the QUIPS Litigation are nothing more than general unsecured claims against the Debtor's estate and are treated as such.

\* \* \* \*

Accordingly, the Court hereby overrules the Magten and Law Debenture Objections in their entirety.

f. Law Debenture also belatedly raised an objection to confirmation of Debtor's Plan based on PUHCA. Neither Magten nor Law Debenture presented any evidence in connection with their PUHCA objections. Accordingly, the Court hereby overrules the Magten and Law Debenture objections in their entirety.

Magten's brief in opposition to the motion to dismiss certain claims, including PUHCA and constructive trust allegations, correctly cited the applicable authority that "the filing of a notice of appeal is an event of jurisdictional significance - it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 114 n.10 (1996).

Since issues on appeal are also now presented for decision to this Court, and, indeed, the pending litigation encompasses those issues, this Court is without jurisdiction to try Cause No.

3

04-53324 until there has been final resolution of those issues at the appellate level. I might also add that the U.S. District Court, if the reference is withdrawn, would act as a bankruptcy court and face the same jurisdictional problem.

Cause No. 04-55051 does not have that jurisdictional barrier, as the issues in that cause are not remotely connected to the confirmed plan matters, but the allegations in the complaint arise totally independent of the Plan and issues on appeal. The same is true of NOR's counterclaim in Cause No. 53324, which will be severed from such action.

IT IS ORDERED that Adversary No. 04-53324 is stayed pending final resolution of Magten's and Law Debenture's appeal of the Order confirming the Second Amended Plan of Reorganization.

IT IS FURTHER ORDERED that Adversary No. 04-55051 and the counterclaim in Cause No. 04-53324 shall proceed to trial pursuant to the Scheduling Order entered November 2, 2004.

Dated: December 7, 2004

Honorable John L. Peterson
United States Bankruptcy Judge

4

EXHIBIT "A"

## Statement of Issues to be Presented

1.      Whether the Bankruptcy Court erred in determining that the Montana Utility Assets (the "Montana Utility Assets"), which were transferred to the Debtor from Clark Fork and Blackfoot LLC ("Clark Fork"), the Debtor's non-debtor subsidiary, are not held in constructive trust for the creditors of Clark Fork even though creditors of Clark Fork have brought an action seeking to set aside the transfer of the Montana Utility Assets as a fraudulent conveyance and have sought recognition that a constructive trust has been imposed over those assets.

2.      Whether the Bankruptcy Court erred in finding that the right to recover on account of the fraudulent conveyance cause of action is a "claim" under section 101(5) of the Bankruptcy Code when (i) the exclusive remedy sought as a result of the fraudulent transfer of the Montana Utility Assets is an equitable remedy that does not "give rise to a right to payment" and, (ii) §31-2-339 of the Montana Code Annotated, which governs the remedies available to creditors in seeking to set aside a fraudulent conveyance, only provides for remedies that are equitable in nature and does not provide for any form of monetary relief.

3.      Whether the Bankruptcy Court erred in finding that that Plan complies with sections 1122 and 1129(a)(1) of the Bankruptcy Code where there was no legitimate business reason for separately classifying the claims of the holders of the TOPrS and the QUIPS for principal plus interest

4.      Whether the Bankruptcy Court erred in finding that it is appropriate to force the holders of the QUIPS to forego their right to pursue the fraudulent conveyance litigation in order to receive their rightful recovery for principal plus interest on account of their QUIPS notes, while other creditors with claims of equal rank were not required to relinquish their litigation claims.

13

120087.01600/40146871v1

5.    Whether the Court erred in determining that the Plan did not discriminate unfairly against the holders of the QUIPS because the distributions to the QUIPS holders were a "gift" from senior creditors despite the fact that there is no authority under the Bankruptcy Code to support this line of reasoning and it is the Debtor, not the creditors, making the distributions pursuant to the Plan.

6.    Whether the Court erred in determining that the Plan is "fair and equitable" when subordinated holders of equity interests receive a distribution under the Plan while more senior creditors are not being paid in full and are only receiving a minimal recovery under the Plan.

7.    Whether the Court erred in finding that the proceeds of the D&O Insurance Policy are not property of the Debtor's estate when the derivative actions belong to the Debtor and not the shareholders and all damages awarded in a derivative suit inure directly to the corporation.

8.    Whether the Court erred in determining that the Debtor is not relinquishing value to the estate when the Debtor, through its release and waiver of all "Causes of Action of any nature," is abandoning every potential colorable claim and cause of action that may ultimately result in substantial value to the Debtor's estate.

14

9.    Whether the Bankruptcy Court erred in finding that the senior debt should not be

voided or subordinated despite the fact that the Debtor's application for exemption from the

Public Utility Holding Company Act ("PUHCA") was not filed in good faith and, under

PUHCA, the rights of a party to a contract made while there was a PUHCA violation – including

lack of good faith filing in an application for a PUHCA exemption – are void.


Dated: Wilmington, Delaware
       November 4, 2004

                              BLANK ROME LLP

                              Mark J. Packel (DE No. 4048)
                              Elio Battista, Jr. (DE No. 3814)
                              1201 Market Street, Suite 800
                              Wilmington, DE 19801
                              Telephone:   (302) 425-6400
                              Facsimile:   (302) 425-6464

                                     -and –

                              FRIED, FRANK, HARRIS, SHRIVER &
                                  JACOBSON LLP
                              Bonnie Steingart, Esq.
                              Gary L. Kaplan, Esq.
                              One New York Plaza
                              New York, NY 10004
                              Telephone: (212) 859-8000
                              Facsimile:  (212) 859-4000

                              Counsel for Magten Asset Management
                                  Corporation

15

120087.01600/40146871v1

EFiled: Mar 31 2005  3:48PM EST
Filing ID 5477751

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

```
----------------------------------------------------------------------x
MAGTEN ASSET MANAGEMENT CORPORATION,      :

                         Plaintiff.                : C.A. No._____
             vs.
                                                   :
BANK OF NEW YORK, BANK OF NEW YORK
(DELAWARE) and JERROLD P. PEDERSON,                :

                         Defendants.               :
----------------------------------------------------------------------x
```

## COMPLAINT

Magten Asset Management Corporation ("Magten or the "Plaintiff"). for its Complaint against The Bank of New York, The Bank of New York (Delaware) (collectively, "BNY") and Jerrold P. Pederson ("Pederson"). in their capacities as the Trustees of the Montana Power Capital I Trust (the "Trust"), (defendants are collectively referred to as the "Trustees"). alleges as follows:

## INTRODUCTION

1.      By this action. Plaintiff, the beneficiary of certain junior debentures issued by the Trust, seeks to recover for the Trustees' violation of their fiduciary duties to the Trust beneficiaries. breach of the Amended and Restated Trust Agreement (the "Trust Agreement"). the Indenture for the Unsecured Subordinated Debt Securities Relating to Trust Securities (the "Indenture") and the Guarantee Agreement (the "Guaranty Agreement"). all dated November 1, 1996, and violation of the Trust Indenture Act. The Trustees acquiesced to the repeated transfer and encumbrance of assets then available for satisfaction of the junior debenture obligations in favor of other interests. including their own, that were in conflict with those of the Trust. The Trustees' actions were made in

bad faith and with knowledge that the Trust beneficiaries' interests were being sacrificed for those of the Trustees and others.

2.    The proceeds of the first transfer of the assets were used to repay a syndicate of lenders of which BNY was the syndication agent, and to pay $1.3 million to defendant Pederson. A subsequent transfer used the assets to secure other obligations of the obligor pursuant to another trust of which BNY also served as trustee, thus favoring the interests of that trust's beneficiaries at the expense of the Trust's beneficiaries. The Trustees approved these transfers knowing that they would benefit personally, and that the transfers would materially reduce the assets available to Plaintiff and the other beneficiaries under the Trust Agreement.

3.    Upon the successor obligor's default thereafter, neither BNY nor Pederson took any steps to safeguard the rights of the beneficiaries of the Trust, further allowing the assets to be dissipated in favor of other obligations. As a result, BNY was made whole; Pederson was paid $1.3 million; the beneficiaries of the other trust which used the assets as collateral were also made whole; all at expense of the beneficiaries of the Trust, including Plaintiff. The Trustees' conflicts, bad faith and breaches of fiduciary duty were the cause of the Plaintiff's losses of approximately $32 million plus lost interest to which it was otherwise entitled.

## The Parties

4.     The Plaintiff. Magten, is a Delaware corporation, with its principle place of business in the State of New York.

5.     Defendant The Bank of New York, is a New York corporation with its principal place of business in New York, New York (when referred to separately, "BNY(NY)"), and is a subsidiary of The Bank of New York Company, Inc. At all times relevant BNY(NY) served as a Trustee of the Trust.

6.     At all times relevant. The Bank of New York (Delaware) ("BNY(Delaware)") was a Delaware corporation and the Delaware Trustee of the Trust. BNY (Delaware) is a subsidiary of The Bank of New York Company. Inc., a corporation headquartered in New York City.

7.     At all times relevant Jerrold P. Pederson ("Pederson") was the Vice Chairman and Chief Financial Officer of the Montana Power Company, and one of the Administrative Trustees of the Trust.

## BACKGROUND

### BNY as Trustee

8.     By agreement dated November 1, 1996, the Montana Power Company ("Montana Power") as obligor, BNY (NY) as property trustee, BNY (Delaware) as Delaware trustee and Pederson and certain other individuals, as administrative trustees, entered into the Trust Agreement establishing the Trust as a business trust pursuant to Delaware's Business Trust Act.

9.     On November 1. 1996. Montana Power and BNY(NY) entered into the Indenture, pursuant to which Montana Power issued $65 million in 8.45% Junior Subordinated Debentures (the "Junior Debentures") to the Trust. The Trust holds 100% of the Junior Debentures, constituting its sole assets.

10.     Pursuant to the Trust Agreement, the Trust issued the Series A 8.45% Quarterly Income Preferred Securities (the "QUIPS"). Thereafter, and at all times relevant hereto. BNY(NY) served as Indenture Trustee for the Junior Debentures. The value of the QUIPS is based entirely upon the value of the Junior Debentures. Pursuant to the Indenture, no entity could replace the obligor under the Indenture, without the approval and signature of BNY(NY) as the Indenture Trustee. Magten currently holds in excess of 33% of the QUIPS.

11.     Also, on November 1, 1996, Montana Power entered into the Guarantee Agreement with BNY(NY), as Guarantee Trustee. Pursuant to the Guarantee Agreement, Montana Power, as guarantor, promised to make certain payments to the holders of the QUIPS to the extent such were not paid by the Trust, and to the extent BNY had funds available in a specified account.

12.     Separate from its role in connection with the Trust. on August 5, 1994, BNY succeeded as Corporate Trustee under a Mortgage and Deed of Trust (the "Mortgage") for the utility assets (the "Montana Utility Assets") held by Montana Power. As trustee for the Mortgage. BNY was mandated to "secure the payment of bonds issued or to be issued under" the Mortgage. Prior to the transactions described below, the Montana Utility Assets constituted the principal assets to which the beneficiaries of the Junior Debentures could look in the event of any default.

## The Transfers of the Montana Utility Assets

13.    As set forth in more detail below, in 2002, Montana Power, with BNY's and Pederson's consent, transferred the Montana Utility Assets to Montana Power Company LLC ("MPLLC"), a wholly owned entity, which it then sold to Northwestern Corporation ("Northwestern"). MPLLC subsequently was renamed Northwestern Energy LLC ("NWE"), and then Clark Fork and Blackfoot LLC ("Clark Fork"). In or about late 2002 and early 2003, Northwestern, again with BNY's and Pederson's consent, transferred the Montana Utility Assets to itself. Northwestern claims that all of these transfers were part of a single, integrated, transaction.

14.    Thus, on February 13, 2002, Montana Power transferred the Montana Utility Assets to MPLLC. Pederson, both as a Trustee and one of the Officers of Montana Power, was intimately involved and approved of the transfer, knowing it would yield him $1.3 million personally.

15.    BNY's approval was also required to permit MPLLC to replace Montana Power as obligor under both the Mortgage and the Indenture. In that connection, MPLLC and BNY executed the Twenty-First Supplemental Indenture to the Mortgage whereby MPLLC assumed the obligations of Montana Power under all of the Mortgage Indentures. MPLLC and BNY also executed the First Supplemental Indenture to the Junior Debentures whereby MPLLC assumed all of the obligations under the Indenture.

16.    BNY entered into these agreements to facilitate the repayment of monies owed to it as the syndication agent of a line of credit to Montana Power's telecommunication subsidiaries, Touch America. Previously, on November 8, 2000, BNY, as syndication agent, entered into a loan agreement with Touch America for a new

$400 million Senior Secured Credit Facility. One year later, on November 14, 2001, Montana Power announced that Touch America was not in compliance with the financial covenants in the Senior Secured Credit Facility. On December 14, 2001, Montana Power received a waiver of its failure to comply with the financial covenants contained in the Senior Secured Credit Facility through February 15, 2002. This date was chosen based upon the projected sale of the Montana Utility Assets to Northwestern. At the time, the balance outstanding under the facility was $254 million.

17.     On February 15, 2002, Northwestern, another power company also saddled with overvalued communications assets as a result of expansion from utility to communications services, purchased 100% of the equity of MPLLC for $478 million in cash. All of these monies were received by Montana Power. None of this consideration was received or retained by MPLLC and was therefore unavailable to MPLLC in meeting its obligations to its creditors, including the Trust.

18.     On that same day, Montana Power used part of the proceeds of the sale of the Montana Utility Assets to repay the entire $254 million outstanding under its credit facility, then in default, to BNY and the other lenders for whom BNY was the syndication agent.    In getting repaid, BNY pursued its own interests at the expense of those of the Trust and its beneficiaries, and undertook no steps to protect the Trust's interests.

19.     As a result of Northwestern's acquisition of MPLLC, Pederson was paid $1.3 million as a "change of control payout" as Vice Chairman and Chief Financial Officer of Montana Power. Pederson approved the transaction in light of his own

interests. and at the expense of those of the Trust and its beneficiaries. and undertook no steps to protect the Trust's interests.

20.    On March 19, 2002. MPLLC was renamed NWE.  NWE was a duly organized Montana limited liability company and is now known as Clark Fork.

21.    On August 13, 2002, BNY entered into the Second Supplemental Indenture approving Northwestern's assumption of the obligations under the Indenture on a joint and several basis with Clark Fork; and an Amendment to the Guarantee Agreement, approving Northwestern's assumption of the obligations under the Guarantee Agreement on a joint and several basis with Clark Fork. On that same day the individual trustees of the Trust, including Pederson, acknowledged and agreed to Northwestern's assumption agreement.

22.    On November 15, 2002. BNY approved the Asset Transfer and Stock Purchase Agreement (the "Asset Transfer") between Clark Fork and Northwestern. Under the Asset Transfer, Clark Fork transferred the Montana Utility Assets. which were substantially all its assets, to Northwestern.  Pederson also consented to the Asset Transfer by. at a minimum, his failure to object to it.

23.    That same day BNY (1) executed the Third Supplemental Indenture in which it gave written consent to Northwestern solely assuming the liabilities and obligations of Clark Fork under the Indenture, (2) gave written consent to the Guarantee Assumption Agreement in which Northwestern solely assumed the obligations of Clark Fork under the Guarantee Agreement and (3) gave written consent to the Trust Assumption Agreement in which Northwestern solely assumed the obligations of Clark

Fork under the Trust Agreement. No provision in the Trust Agreement permitted such assumption of liabilities.

24.    In exchange for these relatively unencumbered assets. Clark Fork received no cash: instead, over $1 billion in assets were transferred to Northwestern and only approximately $700 million in Clark Fork liabilities were purportedly assumed solely by Northwestern. As described above. Northwestern was already a co-obligor with Clark Fork on some of the liabilities assumed under the Asset Transfer, including the liabilities to the Trust.

25.    The Trustees approved these transfers despite their knowledge that these transfers were being used to deprive the Trust and its beneficiaries of critical collateral. Thus, the Trustees approved the transfers in bad faith.

26.    Only one month later, on December 17, 2002, BNY and Northwestern agreed they would execute the Twenty-Third Supplemental Indenture under the Mortgage and that BNY would issue $280 million of bonds as the Mortgage trustee to Credit Suisse First Boston ("CSFB"), Northwestern's secured lender. In other words, BNY agreed to allow Northwestern to further secure and increase its credit line by $280 million though the use of the Montana Utility Assets as collateral at the expense of the Trust and its beneficiaries. Thereafter, on February 10, 2003, Northwestern entered into a new credit facility with CSFB. On the same day. BNY and Northwestern executed the Twenty-Third Supplemental Indenture.

27.    Thus. Northwestern, with BNY's knowledge and written consent, immediately encumbered the Montana Utility Assets as security for its existing debt and for new debt assumed. granting CSFB an interest superior to that of the QUIPS holders,

thus effectively leaving the creditors of Clark Fork, including the QUIPS holders, without recourse against any assets.

28.     Two months later, on April 16, 2003, Northwestern reported its financial results for the 2002 fiscal year. In it, Northwestern restated its previously announced unaudited quarterly results for the first three quarters of fiscal year 2002. For the first time, Northwestern revealed an additional $875.5 million in unreported "negative charges," and its inability to pay its debts, including amounts owed under the Trust, as they came due.

29.     Despite the April 16 announcement, and the subsequent failure to pay interest, the defendant Trustees took no steps whatsoever to safeguard the Trust or its beneficiaries' interest. Despite an obligation to do so, the Trustees made no effort to take any action against Northwestern either to set aside the prior transfers as fraudulent, and in violation of the Indenture, or impose a constructive trust on the Montana Utility Assets. Had they done so promptly, those assets could have been segregated and preserved for the benefit of the Trust and its beneficiaries.

30.     On September 14, 2003, a mere ten months after the Asset Transfer, nine months after the new mortgage/credit facility agreement and seven months after the execution of the Twenty-Third Supplemental Indenture, Northwestern filed a petition for relief under chapter 11 of the Bankruptcy Code with the United States District Court for the District of Delaware. In re Northwestern, Corp., Case No. 03-12872 (JLP).

31.     Thereafter, in October 2003, Magten demanded, by letter, that the Trustees take steps to safeguard its interest, which the Trustees refused to do. On November 6, 2003, BNY notified Magten that it was resigning as Trustee, finally recognizing its

{10001222.DOC}                                9

conflict with its duties owed as Mortgage trustee. However, BNY retained its status as Mortgage trustee and has benefited from the issuance of additional First Mortgage Bonds since the bankruptcy filing. The administrative trustees, including Pederson, never responded.

32.    Under Northwestern's confirmation plan, effective November 1, 2004, the holders of the First Mortgage Bonds remained unimpaired by Northwestern's bankruptcy. On the same day, BNY and Northwestern executed the Twenty-Fourth Supplemental Indenture under the Mortgage, converting the $280 million in First Mortgage Bonds into new First Mortgage Bonds.

33.    On the other hand, the holders of the QUIPS, including Magten, received no return for their debt unless they agreed to accept only 15% of the face value of their instruments in return for waiving claims against Northwestern and its affiliates with respect to the fraudulent transfer.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF TRUST INDENTURE ACT OF 1939

34.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth here.

35.    Under the Trust Indenture Act, 15 U.S.C. § 77ooo(a), and as Trustees for the Junior Debentures, the Trustees had a duty to take no action with respect to the Trust, except in good faith.

36.    As set forth in detail above, because of the Trustees' conflicts, and actual knowledge of the circumstances of the above described transfers of the Montana Utility Assets, the Trustees acted in bad faith by approving, among other things, the transfer of

{10001222.DOC}                                    10

the Montana Utility Assets and entering into the First Supplemental Indenture under the Trust, the Third Supplemental Indenture under the Trust, the Twenty-First Supplemental Indenture under the Mortgage and the Twenty-Third Supplemental Indenture under the Mortgage. and failing to take any steps to safeguard the Trust or Trust beneficiaries' interests in light of the obligor's anticipated and actual default.

37.    Plaintiff is entitled to damages for the Trustees' violations in an amount to be determined at trial but in no event. less than $23 million plus interest.

## SECOND CLAIM FOR RELIEF

## BREACH OF CONTRACT

38.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth here.

39.    BNY breached sections 901, 903. 1101, 1102 and 1201 of the Indenture by approving the transfers of the Montana Utility Assets and executing the necessary supplemental indentures. and failing to take any steps to safeguard the Trust or Trust beneficiaries' interests in light of the obligor's anticipated and actual default, all in bad faith.

40.    BNY breached sections 3.01 and 3.02 of the Guarantee by approving the transfers of the Montana Utility Assets and executing the necessary supplemental indentures. and failing to take any steps to safeguard the Trust or Trust beneficiaries' interests in light of the obligor's anticipated and actual default, all in bad faith.

41.    The Trustees breached sections 8.01, 8.03 and 8.17 of the Trust Agreement by approving the transfers of the Montana Utility Assets and executing the necessary supplemental indentures. and failing to take any steps to safeguard the Trust or

Trust beneficiaries' interests in light of the obligator's anticipated and actual default, all in bad faith.

42.    Plaintiff is entitled to damages for the Trustees' breaches in an amount to be determined at trial but in no event. less than $23 million plus interest.

## THIRD CLAIM FOR RELIEF

## BREACH OF FIDUCIARY DUTIES

43.    Plaintiff repeats and re-alleges the allegations contained in the preceding paragraphs as if fully set forth here.

44.    As Delaware Trustee. Indenture Trustee, Guaranty Trustee, Property Trustee or Administrative Trustee. the Trustees owed fiduciary obligations to the holder of the QUIPS not to take any action in bad faith.

45.    By approving the transfers of the Montana Utility Assets and entering into all of the agreements implementing the same, and failing to take any steps to safeguard the Trust or Trust beneficiaries' interests in light of the obligor's anticipated and actual default, having both knowledge of the actual financial circumstances of Northwestern and having a conflict with their own personal interests. the Trustees acted in bad faith.

46.    As such. Plaintiff is entitled to damages for the Trustees' breaches in an amount to be determined at trial but in no event, less than $32 million plus interest.

WHEREFORE. Plaintiff seeks judgment on all causes of action in an amount to

be proven at trial. Plaintiff's attorney's fees, costs and expenses of bringing this action

and such other and further relief as the Court deems just and proper.

Dated: March 31, 2005                    SMITH, KATZENSTEIN & FURLOW LLP

David A. Jenkins (ID No. 932)
The Corporate Plaza
800 Delaware Avenue
P.O. Box 410
*Of Counsel*                              Wilmington, DE 19899 (Courier 19801)
STORCH AMINI & MUNVES PC    Telephone: 302-652-8400
Bijan Amini                               Facsimile: 302-652-8405
Avery Samet
2 Grand Central Tower                     Attorneys for Plaintiff
New York, New York 10017
(212) 490-4100