

05- 499

1  Stanley T. Kaleczyc
   Kimberly A. Beatty
2  BROWNING, KALECZYC, BERRY & HOVEN, P.C.
   139 North Last Chance Gulch
3  P.O. Box 1697
   Helena, MT 59604-6669
4  Phone: (406) 443-6820
   Fax: (406) 443-6883
5
   Attorneys for Defendants.
6

FILED
4:53
AUG 3 0 2004

PATRICK E. DUFFY, CLERK
BY
        Deputy CLerk

7

8            IN THE UNITED STATES DISTRICT COURT

9                 FOR THE DISTRICT OF MONTANA

10                     BUTTE DIVISION

11  MAGTENASSET MAMAGEMENT              Case No. CV-04-26-BU-RFC
    CORPORATION,
12                                      BRIEF IN SUPPORT OF MOTION
              Plaintiff,                FOR SUMMARY JUDGMENT
13
        v.
14
    MIKE J. HANSON and ERNIE J. KINDT
15
              Defendants.
16

17

18       Defendants Mike J. Hanson and Ernie J. Kindt, by and through their undersigned counsel

19  of record, hereby submit this Brief in Support of their Motion for Summary Judgment.

20                           **INTRODUCTION**

21       The allegations raised in the Complaint, and each argument raised by Magten in its brief

22  in opposition to the Motion to Dismiss, are based on one primary assertion:  That Magten was a

23  creditor of, or that its predecessors-in-interest were creditors of, Clark Fork and Blackfoot, LLC

24  (aka NorthWestern Energy, LLC, fka MPLLC) (hereinafter collectively referred to as "Clark

25  Fork") at the time Clark Fork's parent corporation and sole Member and Manager transferred

26  Montana Utility Assets and Liabilities ("Transfer") from Clark Fork to NorthWestern

27  Corporation ("NorthWestern").  As a result, if Magten's primary assertion, namely that it was a

1   creditor of Clark Fork or was the successor-in-interest to creditors of Clark Fork, proves to be

2   false, Magten's allegations fail and the Defendants are entitled to summary judgment.

3        As will be discussed in greater detail below, Magten's assertion that it was a creditor of

4   Clark Fork fails for two reasons: (1) on July 23, 2004, the Honorable Charles G. Case II, held

5   that Magten "was never a creditor of Clark Fork at a time when Clark Fork had the disputed

6   energy assets;" and (2) on July 27, 2004, Magten's sole owner admitted under oath in a

7   deposition that (a) Magten did not acquire its QUIPS until "late April, 2003" (more than five

8   months after the closing of the asset transfer at issue) and (b) Magten was not a creditor of Clark

9   Fork or of NorthWestern at the time of the closing of the asset transfer at issue. As a result of

10  this prior adjudication by Judge Case and of the admissions made by Magten, Magten is now

11  precluded from arguing that it was Clark Fork's creditor or that Defendants owed any duty to

12  Magten.[1]  Defendants, therefore, are entitled to summary judgment and to dismissal of this

13  action.

14        Further, Magten's averment that it has standing to assert the rights of the Trust and its

15  alleged predecessors-in-interest as owners of the QUIPS who were creditors of Clark Fork at the

16  time of the Transfer, also fails. First, absent a specific assignment, any chose in action which

17  may have been owned by those from whom Magten purchased the QUIPS was not conveyed to

18  Magten; and, therefore, Magten lacks standing to assert such rights. Second, both the Trustee

19  and the prior holders of the QUIPS acquiesced in the Transfer, so complaints stemming from that

20  Transfer have now been waived.

21                                **STANDARD**

22        Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be

23  rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

24  file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

25  and that the moving party is entitled to judgment as a matter of law." Where, as here, the non-

26

27  [1] Defendants have also filed with this Court a Motion to Dismiss in which they argue that, as a matter of law, they
    owed no fiduciary duty to any creditors of Clark Fork and thus Plaintiff's Complaint should be dismissed with
    prejudice.

                                    - 2 -

moving party bears the burden of proof at trial, the moving party is entitled to summary judgment by demonstrating that the non-moving party cannot establish the existence of any element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("The plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element on which that party will bear the burden of proof at trial."). In Celotex, the Supreme Court explained:

> In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is entitled to 'judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

477 U.S. at 323. The moving party in such a case is not required to offer evidence negating any element of the nonmoving party's claim. Id. at 323. Rather, the burden on the moving party may be discharged by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Here, Plaintiff Magten bears the burden of proof at trial as to their claims for damages.

## ARGUMENT

**I.     Magten was never a creditor of Clark Fork and thus Magten lacks standing to assert a creditor's claim, nor do Defendants owe any duty to Magten.**

The gist of Magten's complaint against Messrs. Hanson and Kindt is that, as officers of Clark Fork, they owed a fiduciary duty to the creditors of Clark Fork at the time Clark Fork's sole Member and Manager, NorthWestern, decided to transfer the Montana Utility Assets and Liabilities from Clark Fork (its wholly owned subsidiary) to itself (the parent corporation). While there are numerous flaws with Magten's assertions, one proves to be both fundamental and fatal to Magten's analysis: it has now been judicially determined that Magten never was a

1  creator of Clark Fork, an adjudicative fact which has been affirmed by the sworn testimony of

2  Magten's sole owner and manager.

3      **A.**    **A prior judicial determination has been made that Magten was not a creditor of Clark Fork.**

4

5      In an opinion dated July 23, 2004 the Hon. Charles B. Case II, who is presiding over

6  NorthWestern's bankruptcy, held as follows:

7      The Debtor [NorthWestern] has consistently alleged, and Magten has never
       disputed, that Magten did not own any of the debentures prior to the time the

8      assets were transferred to the Debtor [NorthWestern]. Rather, Magten acquired
       the debentures after the transaction was complete. Therefore, the Debtor

9      [NorthWestern] asserts and Magten has not disputed, that <u>Magten was never a
       creditor of Clark Fork at a time when Clark Fork had the disputed energy assets.</u>

10     Rather, Magten became a holder of the debentures only after the transaction was
       completed and was a matter of public record.

11
                       *     *     *

12
       As noted above, <u>Magten was not a creditor of Clark Fork at the time the</u>

13     <u>transaction took place.</u> Rather, it only became a creditor of the Debtor
       [NorthWestern] after the Debtor [NorthWestern] assumed the liability associated

14     with the junior subordinated debenture initially issued by Montana Power
       Company. Thus, Magten is not only not a party directly affected by the

15     transaction – such as Clark Fort itself – but it was also not an indirect party at the
       time the transaction took place.

16

17 Memorandum Decision at 3, 6-7 (emphasis added)[2]

18     This Court, of course, may take judicial notice of the adjudicative facts determined by

19 Judge Case in the Bankruptcy proceedings and entered in his July 23, 2004 Memorandum and

20 Order. Fed. R. Evid. 201. The fact that Magten was never a creditor of Clark Fork is not a

21 matter of dispute, as Judge Case noted. Moreover, in this case, as explained more fully below, it

22 is a fact "capable of accurate and ready determination by resort to sources whose accuracy can

23

24 _____

    [2] A copy of the Memorandum Decision is attached as Exhibit H to Defendants' Statement of Uncontroverted Facts. Magten has

25 filed a Motion for Reconsideration of Judge Case's Memorandum and Order, arguing that an affidavit filed by one of the counsel
   for the Debtor NorthWestern had incorrectly stated that the directors of Clark Fork had approved the "going flat" transaction. As

26 the Defendants here have explained to the Court in our opening brief, since Clark Fork is a limited liability company, it has a sole
   Member-Manager, NorthWestern. Clark Fork has no board of directors. The error in discussing the management of Clark Fork

27 was subsequently corrected by counsel in the bankruptcy proceeding. Most significantly, in Magten's Motion to Reconsider, it
   does <u>not</u> contest the findings of the Bankruptcy Court that Magten never was a creditor of Clark Fork.

1  not reasonably be questioned." Fed. R. Evid. 201(b)(2).  Thus, Magten is precluded from making

2  any arguments based on Magten's alleged status as a creditor of Clark Fork.

**B.    Magten has admitted it was not a creditor of Clark Fork at the time of the Transfer.**

On July 27, 2004, a week before Magten filed its Opposition Brief in this Court, Talton

Embry, Magten's sole owner, testified at his deposition taken in the Bankruptcy proceeding that

Magten did not acquire an interest in any QUIPS until "late April 2003", nearly six months <u>after</u>

NorthWestern completed its transfer of the Utility Assets from Clark Fork to itself.  Dep. Tr. p.

20.[3]  Mr. Embry further testified that at the time of the Transfer of Utility Assets from Clark Fork

to NorthWestern, Magten was not a creditor of Clark Fork. Dep. Tr. p. 27.

**C.    The principles of issue preclusion and collateral estoppel dictate summary judgment be entered in Defendants' favor.**

The judicial findings of Judge Case and the admission of Mr. Embry that Magten was not

a creditor of Clark Fork are dispositive of the issues in this case and Magten is precluded from

arguing to the contrary.  The basic principle of issue preclusion applies in this case:

> The general principle announced in numerous cases is that a right, question, or
> fact distinctly put in issue and directly determined by a court of competent
> jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit
> between the same parties or their privies; and, even if the second suit is for a
> different cause of action, the right, question, or fact once so determined must, as
> between the same parties or their privies, be taken as conclusively established, so
> long as the judgment in the first suit remains unmodified.  This general rule is
> demanded by the very object for which civil courts have been established, which
> is to secure the peace and repose of society by the settlement of matters capable of
> judicial determination.  Its enforcement is essential to the maintenance of social
> order; for the aid of judicial tribunals would not be invoked for the vindication of
> rights of person and property if, as between parties and their privies,
> conclusiveness did not attend the judgments of such tribunals in respect of all
> matters property put in issue, and actually determined by them.

Southern Pacific Railroad v. United States, 168 U.S. 1, 48-49 (1897).

In the present case, the relationship between NorthWestern and Clark Fork, and the

relationship between Clark Fork and the Defendants here are the relationships between privies

---

[3] Copies of the relevant portions of the deposition transcript are attached as Exhibit B to Defendants' Statement of
Uncontroverted Facts.

1   and the doctrine of *res judicata* should apply to the issue of whether Magten was a creditor of

2   Clark Fork. In First Bank v. Fourth Judicial District, 226 Mont. 515, 519, 737 P.2d 1132, 1134

3   (1987), the Montana Supreme Court held, "The doctrine of *res judicata* is firmly established to

4   stand for the proposition that a party should not be able to relitigate a matter that that party has

5   already had *opportunity* to litigate, and the public policy that there must be some end to

6   litigation." In this instance, Magten clearly had the opportunity to litigate the issue of its status

7   as a creditor of Clark Fork before the Bankruptcy Court.

8          Although Clark Fork is not a party to the bankruptcy proceedings, for purposes of the

9   issue of whether Magten was a creditor of Clark Fork or NorthWestern in November 2002 when

10  the Transaction closed, Clark Fork and the Defendants here are in privity with NorthWestern. It

11  is well settled law in Montana that the doctrine of *res judicata* applies both to parties and their

12  privies. Newlan Creek Water District v. Walter, 169 Mont. 358, 361, 547 P.2d 850, 852 (1976).

13  Under Montana law, "[a] privy is broadly defined as one who has an interest in an action."

14  Brault v. Smith, 209 Mont. 21, 27, 679 P.2d 236, 239 (1984). In this case, there is no question

15  that Clark Fork has an interest in the issue of whether the Transfer from Clark Fork to

16  NorthWestern is a fraudulent conveyance, as Magten has asserted in its Adversary Proceeding

17  pending in the bankruptcy court, and whether, for these purposes, either NorthWestern or Clark

18  Fork were debtors of Magten at the time of the alleged defective Transfer, especially since

19  NorthWestern, as the sole Member and Manager of Clark Fork, directed the Transfer occur.

20  Likewise, Messrs. Hanson and Kindt, as officers of Clark Fork, are in privity with Clark Fork.

21  First Bank v. Fourth Judicial District, supra, 226 Mont. at 520, 737 P.2d at 1135. Therefore,

22  when Judge Case determined Magten was not a creditor of Clark Fork, a fact plainly put in issue

23  by Magten within the course of NorthWestern's bankruptcy proceedings, that determination

24  cannot be disputed in any subsequent litigation by Magten against NorthWestern, Clark Fork or

25  Defendants here.

26         Even if, however, this Court were reluctant to consider those relationships as ones

27  between privies, classic principles of collateral estoppel control and preclude Magten from

1   relitigating the Bankruptcy Court's finding that it was not a creditor of Clark Fork at the time of

2   the Transfer:

3           Under collateral estoppel, once a court has decided an issue of fact or law
        necessary to its judgment, that decision may preclude relitigation of the issue in a
4           suit on a different cause of action involving a party to the first case.

5   Allan v. McCurry, 449 U.S. 90, 94 (1980).

6           Likewise, the Montana Supreme Court has held that collateral estoppel is a form of *res*

7   *judicata* and bars the reopening of an issue that has been litigated and resolved in a prior suit.

8   The Stanley L. and Carolyn M. Watkins Trust v. LaCosta, 2004 MT 644, ¶ 26, 92 P.3d 620, 626

9   ¶ 26. (citing Kullick v. Skyline Homeowners Association, 2003 MT 137, ¶ 17, 69 P.3d 225, ¶17.)

10          As noted at the outset of this brief, Magten's entire case is predicated upon their

11  allegations that Messrs. Hanson and Kindt, as "officers" of Clark Fork, owed a fiduciary duty to

12  Clark Fork's creditors.  See Complaint, ¶ 1; See also Magten's Brief in Opposition to Motion to

13  Dismiss at 1.  Even if Magten were correct that the Defendants had owed a duty to Clark Fork's

14  creditors at the time of the asset transfer - - a legal conclusion which the Defendants dispute and

15  which is the subject of Defendants' pending Motion to Dismiss - - it is not only undisputed by

16  Magten, but in fact affirmatively admitted by Magten's sole owner, that Magten was not a

17  creditor of Clark Fork at the time of the Transfer. *A fortiori*, Messrs. Hanson and Kindt could

18  not have owed any duty to Magten at the time of the Transfer.

19          Finally, even if this Court were to find the principles of collateral estoppel are not

20  controlling, the clear admissions made by Magten prevent Magten from pursuing any argument

21  that has at its essence the claim that Defendants owed a duty to Magten at the time of the

22  Transfer because Magten was a creditor of Clark Fork.  Magten simply was not a creditor of

23  Clark Fork, both by the own admission of the Plaintiff and by the judicial determinations of

24  Judge Case.

25

26

27

**D.    Magten's acquisition of the QUIPS after-the-fact and with full knowledge of the Transfer preclude Magten from alleging innocence.**

As Mr. Embry admitted later in his deposition, he acquired his interest in the QUIPS with full knowledge of the Transfer of the Montana Utility Assets and Liabilities to NorthWestern (the so called "going flat" transaction) before his first acquisition of QUIPS:

> Q:    When did you first become aware of the going-flat transaction?
>
> A.:    In reviewing the company's 10-Q, the quarter ending September 30, 2002.
>
> Q:    Did you review that document prior to your acquisition of the QUIPS, your initial acquisition f the QUIPS?
>
> A:    I believe so.

Dep. Tr. p. 33-34. <u>See also</u>, Dep. Tr. p. 16.

Mr. Embry, admitted he is a "veteran" investor who has been investing in distressed debt since 1978. Dep. Tr. p. 14; 78. He routinely performs due diligence before making investments. Dep. Tr. p. 17. Mr. Embry performed due diligence prior to his acquisition of the QUIPS and then personally made the decision to acquire the QUIPS. Dep. Tr. p. 16-17. Mr. Embry further testified:

> Q.    At the time prior to the acquisition of the QUIPS, were you satisfied with your understanding of the going-flat transaction?
>
> A.    Yes.

Dep. Tr. p. 37. In fact, Mr. Embry made more than one acquisition of the QUIPS: He continued to acquire QUIPS even after NorthWestern filed for bankruptcy protection, with his last trade being as recently as a "month ago." Dep. Tr. p. 21-23, 25, 55.

In light of Mr. Embry's testimony, Magten can not be heard to say that it had no knowledge of the Transfer which occurred six months before it first acquired the QUIPS, the very transaction about which it now complains. If, in hindsight, Magten believes it made a bad, albeit well-informed, business decision when it initially purchased and continued to purchase the QUIPS, it is not the responsibility of this Court to save Magten from its own business decisions.

E.    **There is no set of facts on which Magten may prevail.**

The judicial determinations made by Judge Case, coupled with the clear admissions made by Magten, preclude Magten from asserting any argument or theory that Defendants breached any duty owed to Magten as a result of Magten's false allegations that it was a creditor of Clark Fork. Because Magten must first prove that it was a creditor of Clark Fork at the time of the transfer, a burden of proof it simply cannot meet, there is no set of facts on which Magten may prevail against Messrs. Hanson and Kindt in their capacity as "officers" of Clark Fork. For these reasons alone, Defendants are entitled to summary judgment.

**II.    Magten cannot stand in the shoes of its predecessor-in-interest to assert its creditor status.**

In its Complaint, Magten alleges that its predecessors-in-interest were creditors of Clark Fork and, as such, Defendants had a duty to them which Defendants breached. Complaint ¶ 50-51. Magten further alleges that this breach of duty by the Defendants to Magten's predecessors-in-interest caused substantial injury to Magten. Complaint ¶ 52. Magten's argument is fundamentally flawed. Magten lacks standing to assert the rights of the Trust or its predecessors-in-interest as owners of the QUIPS. First, absent a specific written assignment, any chose in action held by those from whom Magten purchased the QUIPS was not conveyed to Magten. Therefore, Magten lacks standing to assert such rights. Second, both the Trustee and the prior holders of the QUIPS acquiesced in the Transfer, so complaints stemming from that Transfer have now been waived.

**A.    A Chose in Action which value exceeds $5,000 may only be conveyed or assigned by a specific written instrument.**

In essence, in their Complaint, Magten has asserted that the officers of Clark Fork owed a duty to its predecessors-in-interest ("Predecessors") by virtue of the Predecessors' status as holders of the QUIPS which, in turn, rendered them creditors of Clark Fork prior to the Transfer. Magten further alleges that the officers of Clark Fork breached an alleged duty owed to the Predecessors at the time of the Transfer; and, therefore, by virtue of Magten's acquisition of the

1    QUIPS from the Predecessors (albeit six months after the Transfer), the officers breached a duty

2    to Magten and Magten has suffered damages as a result[4].

3    Any claim by the Predecessors that the officers breached any duty to them is a chose in

4    action. Mont. Code Ann. § 70-2-101 (2003) ("A thing in action is a right to recover money or

5    other personal property by a judicial proceeding.")[5]. See, also, State ex rel. Coffey, 74 Mont.

6    355, 240 P. 667, 669 (1925) (noting "The Supreme Court of the United States has said that a

7    chose in action 'include[s] all debts and all claims for damages for breach of contract or for tort

8    connected with the contract.'" Bushnell v. Kennedy, 9 Wall 387, 390, 19 L. Ed. 736); Moore v.

9    Nassau County Dept. of Public Transp., 357 N.Y.S.2d 652, 656-57 (1974) ("Choses in action are

10   personal property, and, although intangible, are property subject to encumbrances."); Garford

11   Motor Truck Company v. Buckson, 143 A. 410, 411(Sup. Ct. De. 1927) (holding a chose in

12   action which survives death is assignable); Del. Code Ann. tit. 10, § 3701 (2003) (indicating the

13   chose in action, breach of fiduciary duty, survives death.)

14   It is established by case law and statute that; "[A] chose in action is intangible personal

15   property." Lewis v. Puget Sound Power & Light Co., 2001 MT 145, ¶ 20, 29 P.3d 1028, 1031

16   (Mont. 2001) (citing Mont. Code Ann. § 1-1-205(1)); See also, Moore 357 NYS 2d at 656-57

17   (1974); In re Morace, 74 A. 375, 376 (Sup. Ct. De. 1909) ("A chose in action is personal

18   property, generally speaking ...."). The Uniform Commercial Code which has been adopted by

19   Montana, New York and Delaware states that a contract for the sale of personal property in

20   excess of $5,000 in value must be in writing, must reasonably identify the subject matter, and

21   must state the price. Mont. Code Ann. § 30-1-206 (2003); N.Y. [UCC] Law § 1-206 (McKinney

22   2004); Del. Code Ann. tit. 6, § 1-206 (2003). See also, Lewis, 2001 MT at ¶ 20, 29 P.3d 1028,

23   1031-32 (citing Mont. Code Ann. § 30-1-206); Beldengreen, DDS v. Ashinsky, DDS, 528

24   N.Y.S.2d 744 (1987) (citing Uniform Commercial Code § 1-206). Thus, the sale of a chose in

25   ---
     [4] Because the QUIPS Trust Documents are variously governed by the laws of the State of New York or the State of
26   Delaware, this brief will cite to Montana, New York and Delaware law. The result in any of the three jurisdictions
     is the same: Magten lacks standing to assert the rights of the Trust or its Predecessors.

27   [5] A "thing in action" and a "chose in action" are terms that are used interchangeably. See, State ex rel. Coffey, 240
     P. 667, 669 (Mont.1925) ("In the common parlance of the law, a thing in action is designated a chose in action.
     Chose in action means literally thing in action." (citations omitted)).

1    action with a value exceeding $5,000 can only be made by a specific written instrument. It is not

2    enough to simply convey the QUIPS debt instruments themselves; rather, the claim for breach of

3    duty must be particularly described in a written conveyance instrument. See Lewis, 2001 MT at

4    ¶ 20, 29 P.3d at 1031 (in a case for structural damages to real property, the court held: "If the

5    claim [for structural damages] is severed from the real estate by a transfer of the property without

6    assignment [of the claim], the claim, as a chose in action, is intangible personal property."). See

7    also, Moore, 357 N.Y.S.2d at 656-57 (*noting* choses in action are personal property).

8    As a result, because any claim by the Predecessors for breach of a duty owed by the Clark

9    Fork officers will be considered a chose in action, and because Magten asserts the value of that

10    chose in action well exceeds $5,000, any conveyance or assignment of that chose in action to

11    Magten must have been specifically described in writing, or Magten cannot stand in its

12    Predecessors' shoes. Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the

13    real party in interest.") Nowhere in Magten's Complaint does it assert that the owners of the

14    QUIPS at the time of the Transfer specifically assigned to Magten in writing their right to assert

15    a breach of the officers' duty to those former QUIPS owners. As discussed earlier in this brief,

16    because Magten cannot assert it was a direct creditor of Clark Fork, it can only assert a breach of

17    duty owed to previous creditors through whatever rights it obtained from its predecessors. Since

18    it obtained no such right from its Predecessors, Magten lacks standing to assert the rights of the

19    Trust and its Predecessors.

20    **B.    Complaints stemming from the Transfer have been waived.**

21    As discussed earlier in this brief, and as admitted by Mr. Embry, Magten first acquired

22    the QUIPS some six months after the Transfer, with full knowledge of the Transfer and its

23    effects. Magten acknowledges it was not a creditor of Clark Fork at the time of the Transfer. By

24    that time, as a result of the operation of the Trust Indenture Documents, Magten's Predecessors

25    were no longer creditors of Clark Fork, but were rather creditors of NorthWestern. Further,

26    Magten had actual knowledge of these facts, as it acquired the QUIPS six months after the

27

1   Transfer was completed, after performing due diligence, and after Mr. Embry was "satisfied"

2   with his understanding of the Transfer.

3        Under the Second Supplemental Indenture, executed by the Trustee, NorthWestern and

4   Clark Fork reserved the right of Clark Fork to transfer all of its assets to NorthWestern and that

5   such transfer would relieve Clark Fork of "its obligations under the QUIPS Debenture, the

6   Indenture and hereunder as provided in Article Eleven of the Indenture. Second Supplemental

7   Indenture, §201. This Second Supplemental Indenture was duly executed by all parties, and

8   neither the Trustee nor any of the Predecessors have challenged its validity or effect. Section

9   1101 of the Indenture clearly empowered the Montana Power Company, and Clark Fork

10   thereafter, to "convey or otherwise transfer, or lease, its properties and assets substantially as an

11   entirety to any Person." Indenture § 1101. The prerequisites of any such transaction were also

12   spelled out in the Indenture, which required:

13      1.     The surviving corpration to be "organized and validly existing under the laws of

14   the United States, and State thereof ..." and

15      2.     The surviving corporation "assume" in an indenture "executed and delivered to

16   the Trustee, in form satisfactory to the Trustee" the "due and punctual payment of the principal

17   of and premium, if any, and interest, if any, on all Outstanding Securities and the performance of

18   every covenant of the Indenture on the part of the Company to be performed or observed."

19        In its Adversary Proceeding Complaint, Magten has conceded that NorthWestern meets

20   each of these prerequisites. Adversary Proceeding Complaint, ¶¶ 14, 43. Further, all parties

21   executed the Third Supplemental Indenture in which NorthWestern "expressly assume[d] the due

22   and punctual payment of the principal of and premium, if any, and interest, if any, on all

23   Outstanding Securities issued under the Indenture and the performance of every covenant of the

24   Indenture on the part of NorthWestern Energy to be performed or observed." Third

25   Supplemental Indenture, § 101.

26        Both Magten's Predecessors and the Trustee acquiesced to the Transfer, and thus have

27   waived all such claims to challenge the Transfer. The Montana Supreme Court has held "A

1  waiver is the intentional and voluntary relinquishment of a known right, claim or privilege."

2  Reiter v. Yellowstone CountyU, 192 Mont. 194, 202, 627 P.2d 845, 850 (1981). Further, the

3  Court has held a waiver:

> May be proved by express declarations, or by acts and declarations
> manifesting an intent and purpose not to claim the supposed
> advantage, or by a course of acts and conduct, or by so neglecting
> and failing to act, as to induce the belief that it was his intention
> and purpose to waive.

8  Northwestern F. & M. Ins. Co. v. Pollard, 74 Mont. 142, 238 P. 594, 596 (1925). By executing

9  the various supplemental indentures, and by failing to challenge the validity of such transactions

10  at the time the transactions were entered, the Trustee and the Predecessors have waived any such

11  right to do so. As a result of this waiver, Magten, therefore, lacks standing to assert the rights (if

12  any remain) of the Trust or its Predecessors.

## CONCLUSION

14  Magten was never a creditor of Clark Fork and Blackfoot, LLC, nor may it "stand in the

15  shoes" of its so-called predecessors-in-interest or the Trustee who never objected to the Transfer

16  of the Montana Utility Assets and Liabilities from Clark Fork some six months before Magten

17  began to acquire QUIPS. Magten therefore has no standing to allege a breach of any fiduciary

18  duty which Magten believes the Defendants owed to the creditors of Clark Fork at the time of the

19  Transfer. (And, of course, the Defendants deny that any such duty was even owed by them to

20  the creditors who are not parties to this litigation for all the same reasons that Defendants deny

21  any duty was ever owed to Magten and as set forth in the Motion to Dismiss currently pending

22  before this Court.) Accordingly, the Defendants respectfully request that summary judgment be

23  entered in their favor and that this case be dismissed with prejudice.

24  //

25  //

DATED this _20th_ day of _August_____, 2004.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By _Kimberly Beatty_____

Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch ·
P.O. Box 1697
Helena, MT 59604-6669
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.

- 14 -

## CERTIFICATE OF SERVICE

1

2    I hereby certify that on the _2 0th_ day of _August_, 2004, a true copy of the
foregoing was mailed by first-class mail, postage prepaid, addressed as follows:

3

4    James Goetz
J. Devlan Geddes
5    Goetz, Gallik & Baldwin, P.C.
35 North Grand
6    P.O. Box 6580
Bozeman, MT 59771-6580

7

8    Bonnie Steingert
John W. Brewer
9    Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza
10   New York, New York 10004

11

12

13   BROWNING, KALECZYC, BERRY & HOVEN, P.C.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Title                                        - 15 -                         144934.doc/1674.044

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| NORTHWESTERN CORPORATION, | : Case No. 03-12872 (CGC) |
| | : |
| Debtor. | : |
| | : |
| | : |
| | : |
| MAGTEN ASSET MANAGEMENT | : |
| CORPORATION and LAW DEBENTURE TRUST | : |
| COMPANY OF NEW YORK, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | : Adv. No. 04-53324-CGC |
| | : |
| NORTHWESTERN CORPORATION, | : |
| | : |
| Defendant. | : |

**NORTHWESTERN CORPORATION'S REPLY MEMORANDUM
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE
COMPLAINT OF MAGTEN ASSET MANAGEMENT CORPORATION
AND LAW DEBENTURE TRUST COMPANY OF NEW YORK**

Scott D. Cousins (No. 3079)  
William E. Chipman Jr. (No. 3818)  
Paul D. Brown (No. 3903)  
GREENBERG TRAURIG, LLP  
The Brandywine Building-and-  
1000 West Street, Suite 1540  
Wilmington, Delaware 19801  
(302) 661-7000

Adam D. Cole  
GREENBERG TRAURIG, LLP  
885 Third Avenue  
New York, New York 10022  
(212) 848-1000

ATTORNEYS FOR NORTHWESTERN CORPORATION

Dated: June 28, 2004

TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... i

INTRODUCTION........................................................................................................ 2

ARGUMENT................................................................................................................ 4

    I.  PLAINTIFFS ARE UNABLE TO ESTABLISH THE REQUISITE
    STANDING TO MAINTAIN THEIR PURPORTED CLAIMS................................ 4

    II.  MAGTEN'S CLAIMS ARE BARRED BECAUSE IT KNEW ALL
    FACTS UPON WHICH ITS FRAUD  CLAIM IS BASED PRIOR TO ITS
    PURCHASE OF QUIPS................................................................................ 9

CONCLUSION ........................................................................................................ 10

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Allard v. DeLorean, 884 F.2d 464 (9th Cir. 1989) ........................................................ 4

Kupetz v. Wolf, 845 F.2d 842 (9th Cir.1988) ................................................................ 9

Lippi v. City Bank, 955 F.2d 599 (9th Cir. 1992) ......................................................... 9

**STATE CASES**

Farris v. Hutchinson, 838 P.2d 374 (Mont. 1992) ........................................................ 7

Tvedt v. Farmers Ins. Group of Companies, 91 P.3d 1 (Mont. 2004) .......................... 7

**STATUTES**

Mont. Stat. § 31-2-333 ............................................................................................. 4, 7

## INTRODUCTION

The present adversary proceeding constitutes an improper attempt by Plaintiffs Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York ("Law Debenture" and collectively "Plaintiffs") to elevate their subordinated claims above other creditors of the Debtor, NorthWestern Corporation ("NorthWestern" or the "Debtor"). Plaintiffs are the indenture trustee of and a holder of Quarterly Income Preferred Securities ("QUIPS"), the obligations under which NorthWestern assumed in a November 15, 2002 "going flat" transaction between NorthWestern and Clark Fork and Blackfoot LLC ("Clark Fork"). Plaintiffs contend that the "going flat" transaction left Clark Fork insolvent and conclude it was the product of alleged "fraud." Accordingly, Plaintiffs demand that the "going flat" transaction be rescinded as a purported "fraudulent" transfer to enable them to collect more money on their subordinated securities than other NorthWestern creditors with higher priority.

This Adversary Proceeding should be dismissed. Nothing in Plaintiffs' voluminous objection comes to grips with the single, uncontested and dispositve fact in the present motion: Neither Plaintiff is a "creditor" of Clark Fork. Indeed, as a result of the "going flat" transaction and under the terms of the Indentures relating to their QUIPS, Plaintiffs are NorthWestern creditors. As creditors of NorthWestern, Plaintiffs lack standing to assert fraudulent transfer claims as creditors of Clark Fork relating to the "going flat" transaction. The law is clear in this regard and mandates dismissal.

Plaintiffs instead attempt to turn settled fraudulent conveyance law on its head by pretending—contrary to the express terms of the Montana fraudulent conveyance statute upon which they rely—that they are relieved from the requirement that they be Clark Fork creditors to

maintain their claims. Law Debenture and other QUIP holders contend that if they prove actual fraud in the "going flat" transaction—even though their fraud claim is fabricated—standing may be based upon the fact that they were previously creditors of Clark Fork.[1] Montana law is to the contrary and empowers current and, in certain limited instances, future creditors to maintain fraudulent conveyance claims; Montana law makes no similar provision for past creditors, such as the Plaintiffs.

In fact, there was no fraud, and reasonably equivalent value was exchanged for the relevant assets. The "going flat" transaction was disclosed as early as September 2000 (over one year prior to the purported "restated" quarters), and continued to be disclosed in public documents. The transaction concerned the transfer and restructuring of regulated electric, natural gas, and propane utility assets and was thus approved by Federal Energy Regulatory Commission. Given these uncontested facts and events, to suggest that the "going flat" transaction was designed for the single purpose of depriving Plaintiffs of a recovery over two years later is absurd.

For these reasons, and as further demonstrated below, Plaintiffs' objection should be rejected. Plaintiffs' rights were left unimpaired by the going flat transaction, and they retain their claims in NorthWestern's chapter 11 case.

---

[1]     Magten has never been a creditor – past, present or future – of Clark Fork.

3

## ARGUMENT

### I.    PLAINTIFFS ARE UNABLE TO ESTABLISH THE REQUISITE STANDING TO MAINTAIN THEIR PURPORTED CLAIMS

Plaintiffs concede—as they must—that they are required to be "creditors" of Clark Fork to have standing to pursue the claims set forth in their complaint. (Pl. Mem. at 12) See, e.g., Mont. Stat. § 31-2-333. Plaintiffs also do not dispute that consolidations and transfers that satisfy Section 1101 of the Indenture for Unsecured Subordinate Debt Securities (the "Indenture") results in the successor entity—here NorthWestern—succeeding to the obligations under the Indenture, including amounts owing under the preferred securities at issue in this adversary proceeding (the "QUIPS"). (Pl. Mem. at 13; Motion, Exh. "A" at § 1101.)[2] And Plaintiffs do not dispute that had the transaction at issue complied with Section 1101 of the Indenture, they would lack standing to maintain the present fraudulent conveyance action, and Clark Fork would be released under Section 1102 of the Indenture. (Pl. Mem. at 13-16.) See Allard v. DeLorean, 884 F.2d 464, 467 n.1 (9th Cir. 1989) (no standing to assert fraudulent conveyance where plaintiff was "no longer a creditor").

Plaintiffs' principal assertion—which is at the heart of their entire opposition—is that the "going flat" transaction did not comply with Section 1101 of the Indenture because NorthWestern was purportedly "insolvent." (Pl. Mem. at 13-14.) Section 1101 of the Indenture, however, is clear in empowering Montana Power (and Clark Fork thereafter) to "convey or otherwise transfer, or lease, its properties and assets substantially as an entirety to any Person."

---

[2] Citations herein to "Pl. Mem. at ___." are to the Objection of Magten Asset Management Corporation and Law Debenture Trust Company of New York to the Motion of North Western Corporation's to dismiss the complaint seeking to avoid the fraudulent transfer.

4

(Motion, Exh. "A" at § 1101). The prerequisites of any such transaction were also spelled out in

the indenture, which required:

> 1.    The surviving corporation—here NorthWestern—be "organized and validly existing under the laws of the United States, any State thereof. . . ." (Motion, Exh. "A" at § 101(a));
>
> 2.    The surviving corporation—here NorthWestern—"assume" in an indenture "executed and delivered to the Trustee, in form satisfactory to the Trustee" the "due and punctual payment of the principal of and premium, if any, and interest, if any, on all Outstanding Securities and the performance of every covenant of the Indenture on the part of the Company to be performed or observed . . . ." (Id.)[3]

Here, Plaintiffs concede each of these prerequisites.  Plaintiffs concede that

NorthWestern is "validly organized under the laws of the State of Delaware. . . ." (Complaint

¶14) (emphasis added.)  And Plaintiffs concede that under the express terms of the Third

Supplemental Indenture, NorthWestern "assumed the due and punctual payment of the principal

and interest on the securities issued under the Indenture," and the performance of every covenant

of the Indenture.(Complaint ¶ 43; see Pl. Mem. ¶ 17) (emphasis added.)[4]  Contrary to Plaintiffs'

assertion, nothing in the Indenture required the assuming corporation—here NorthWestern—to

be solvent at the time of assuming payment and the other obligations under the Indenture.

Moreover, nothing in Montana law (much less the common law in any State of which we are

---

[3] Section 1101 of the Indenture also requires that no Event of Default "shall have occurred and be continuing" and that the Trustee receive an "Officer's Certificate and an Opinion of Counsel, each stating that" all of the conditions for the transfer have been met. *See* Motion, Exh. "A" §§ 1101(b)-(c).  As explained in the Motion, Plaintiffs have not alleged noncompliance with these requirements.

[4] As a result, NorthWestern succeeded and was substituted as the obligor under the Indenture for Montana Power and Clark Fork, and each of those entities was "relieved of all obligations and covenants" under the Indenture.  (Motion, Exh. "A" at § 1102)

5

aware) or under the federal law mandates solvency as a legal requirement before a corporation may contractually assume obligations under an indenture.[5] Contrary to Plaintiffs' assertion, accordingly, NorthWestern's assumption of obligations under the Indenture as part of the "going flat" transaction was valid under the express terms of the Indenture and under the law; whether NorthWestern was aware it was insolvent or not at the time is irrelevant.

Plaintiffs next attempt to overcome their lack of standing by asserting that the Indenture was modified as part of the "going flat" transaction, and therefore required the consent of the holders of QUIPs. (Pl. Mem. at 14.) To the contrary, and as quoted above, the Indenture expressly authorized assumption of its obligations by a third party by a document "executed and delivered to the Trustee, in form satisfactory to the Trustee . . . ." (Motion, Exh. "A" at § 1101 (a)) Plaintiffs concede that NorthWestern assumed the obligations under the Indenture, and that the documentary form under which its assumption occurred was in a form satisfactory to the Trustee—namely, the Third Supplemental Indenture which the Trustee executed.[6] (Motion, Exh. "P".) Nothing in the Indenture required Holder approval, and the Third Supplemental Indenture

---

[5] It is therefore not surprising that Plaintiffs refer to no statute, decision, treatise, restatement, or other authority that precludes an insolvent entity from entering into contractual obligations. Indeed, much of the bankruptcy process in the United States involves insolvent corporations being permitted to enter into contractual obligations and to incur debt.

[6] Any question concerning whether the Trustee approved the form of transfer is put to rest by the Second Supplemental Indenture, also executed by the Trustee. Under the Second Supplemental Indenture, NorthWestern and Clark Fork reserved the right of Clark Fork to transfer substantially all of its assets to NorthWestern and would relieve Clark Fork of "its obligations under the QUIPS Debenture, the Indenture and hereunder as provided in Article Eleven of the Indenture.". (Pl. Mem., Exh. 3 § 201.)

6

maintained through express assumption (not impaired or modified the "core terms" of) the QUIP

Holders' rights to payment of principal and interest under the Indenture.[7] (Motion, Exh. "P".)

Plaintiffs next contend that they are creditors of Clark Fork because the "going flat"

transaction "itself was a fraudulent conveyance." (Pl. Mem. at 15-16.) Plaintiffs' assertion

places the "cart before the horse." For as Plaintiffs also concede and Montana law mandates,

Plaintiffs are required to establish standing as creditors in the first instance to assert fraudulent

conveyance. (Pl. Mem. at 12) Mont. Stat. § 31-2-333. They may not assert fraudulent

conveyance to rescind a transaction to enable them to establish themselves as creditors only then

to assert the transaction was a fraudulent conveyance.

Plaintiffs' reference to an implied covenant of good faith also fails. Even had Plaintiffs

asserted such a claim in their Complaint—which they did not and cannot—it is well-established

that the covenant of good faith and fair dealing does not "prohibit a party from doing that which

is expressly permitted by an agreement." Tvedt v. Farmers Ins. Group of Companies, 91 P.3d 1,

7 (Mont. 2004), quoting Farris v. Hutchinson, 838 P.2d 374, 376 (Mont. 1992). As the Montana

Supreme Court made clear in Tvedt, "'[a]s to acts and conduct authorized by the express

provisions of the contract, no covenant of good faith and fair dealing can be implied which

forbids such acts and conduct. And if defendants were given the right to do what they did by the

express provisions of the contract there can be no breach.'" Id., quoting Farris, 838 P.2d at 377.

Here, as demonstrated above, Clark Fork transferred assets and complied with the express terms

of the Indenture, the Second Supplemental Indenture, and the Third Supplemental Indenture.

---

[7] For the same reason, Section 1202 of the Indenture is inapplicable. (Pl. Mem. at 14.)
The Third Amended Indenture and the "going flat" transaction documents preserve—not
modify—the rights of QUIP Holders.

7

Under these circumstances, Tvedt would preclude Plaintiffs' "good faith and fair dealing claim" had it been alleged in the Complaint.

Plaintiffs also attempt to concoct standing based upon the Guarantee Agreement. (Pl. Mem. at 17-18.) The Guarantee Agreement provides that Clark Fork is not permitted to assign its obligations, except in one circumstance: "in connection with a consolidation, merger or sale involving [Clark Fork] that is permitted under Article Eleven of the Indenture . . . ." (Motion, Exh. "C" § 801.) As explained above, the "going flat" transaction—which included an assignment of Clark Fork's obligations under the Guarantee Agreement—was pursuant to, and was "permitted" by Section 1101 of the Indenture. Because the assignment of obligations under the Guarantee Agreement to NorthWestern was "permitted" under the Indenture, Plaintiffs are creditors of NorthWestern under the Guarantee Agreement, not of Clark Fork.[8]

In short, the uncontested allegations and facts demonstrate that Plaintiffs are not creditors of Clark Fork; they are creditors of NorthWestern under the express terms of the Third Supplemental Indenture. Because they are not creditors of Clark Fork, Plaintiffs are precluded, as a matter of law, from maintaining their fraudulent transfer claims. As such, the Complaint should be dismissed.

---

[8] Plaintiffs attempt to salvage standing by stating that although Clark Fork assigned the Guarantee Agreement under the limited circumstance provided, Clark Fork remains obligated because it did not obtain a release from the Plaintiffs. The Plaintiffs (or their predecessors), however, authorized the limited circumstances under which an assignment of obligations was valid under the express terms of the Guarantee Agreement. By approving the assignment of obligations, they approved the successor's assumption of Clark Fork's obligations under Guaranty Agreement.

8

## II.  MAGTEN'S CLAIMS ARE BARRED BECAUSE IT KNEW ALL FACTS UPON WHICH ITS FRAUD CLAIM IS BASED PRIOR TO ITS PURCHASE OF QUIPS

Even were Plaintiffs able to establish that they are creditors of Clark Fork—which the uncontested facts demonstrate they are not—Magten's purported "fraud" claims fail as a matter of law because Magten was well-aware of all the facts upon which its claims are based <u>before</u> purchasing its QUIPS. The design of fraudulent conveyance law is to protect creditors from a debtor's secret transactions, not create an insurance policy for transactions of which creditors are well aware. Thus, a post-transaction creditor is precluded from contesting a transaction on fraud grounds where the creditor knew, or should have known, the facts upon which its fraud claim was based prior to the transaction. <u>E.g., Kupetz v. Wolf</u>, 845 F.2d 842, 849-50 and 851 n.16 (9th Cir.1988); <u>see</u> <u>Lippi v. City Bank</u>, 955 F.2d 599, 607 (9th Cir. 1992) ("the issue is whether future creditors were somehow precluded by actual fraud or concealment from discovering the nature of the transaction and the company's financial status at the time of their advances").

Here, Magten knew, or should have known, of the facts upon which it now alleges the "going flat" was a fraudulent transfer. Magten asserts that the purported "fraud" was disclosed in April 2003, when NorthWestern purportedly "restated" its pro forma quarterly results for the "first three quarters of FYE 2002." (Pl. Mem. ¶ 25.) Magten does not contest that it acquired its interests in the QUIPS <u>after</u> April 2003 and immediately prior to or after NorthWestern filed its Chapter 11 petition in September 2003. (See Motion ¶¶ 1,12.) Thus, Magten purchased its QUIPS <u>after</u> the "going flat" transaction, either with full knowledge of the purported restatement, or—because purported restatement was set forth in a publicly-filed, audited financial statement—it should have known of the purported restatement.

9

In sum, Magten purchased its QUIPS with knowledge of the facts upon which it now relies to attempt to undo the "going flat" transaction. The fraudulent transfer laws were not designed to protect purported creditors, such as Magten, whose alleged reliance upon a purported "fraud" was unjustified.

## CONCLUSION

For the foregoing reasons this Court should dismiss Plaintiff's Complaint for failure to state a valid claim upon which relief can be granted.

This 28th day of June, 2004.

Respectfully submitted,

GREENBERG TRAURIG, LLP

Scott D. Cousins (No. 3079)
William E. Chipman, Jr. (No. 3818)
Paul D. Brown (No. 3903)
The Brandywine Building
1000 West Street, Suite 1540
Wilmington, DE 19801
Telephone: (302) 661-7000

And

Adam D. Cole
GREENBERG TRAURIG, LLP
Adam D. Cole
885 Third Avenue
New York, New York 10022
Telephone: (212) 848-1000

Counsel for NorthWestern Corporation, as Debtor and Debtor-in-Possession

10

## CERTIFICATE OF SERVICE

I hereby certify that I have this date caused to be served the foregoing Northwestern Corporation's Reply Memorandum in Further Support of its Motion to Dismiss the Complaint of Magten Asset Management Corporation and Law Debenture Trust Company of New York, on the following counsel in the matter indicated below:

> Via E-Filing and Hand Delivery
> William J. Burnett
> Blank Rome LLP
> 1201 Market Street, Suite 800
> Wilmington, Delaware 19801
>
> Via First Class Mail
> Fried, Frank, Harris, Shriver & Jacobsen LLP
> One New York Plaza
> New York, New York 10004
> *Counsel for Magten Asset Management Corporation*
>
> John V. Snellings
> Nixon & Peabody LLP
> 100 Summer Street
> Boston, Massachusetts 02100
> *Counsel for Law Debenture Trust Company of New York*

This 28 day of June, 2004.

William E. Chipman, Jr. (No. 3818)