James H. Goetz
J. Devlan Geddes
**GOETZ, GALLIK & BALDWIN, P.C.**
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004
(212) 859-8000

ATTORNEYS FOR PLAINTIFF





IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BUTTE DIVISION

05 - 499

------------------------------------------------------------x

MAGTEN ASSET MANAGEMENT CORPORATION,

           Plaintiff,

- against -

MIKE J. HANSON and ERNIE J. KINDT,

           Defendants.

------------------------------------------------------------x

Cause No. CV-04-26-BU-RFC

**PLAINTIFF MAGTEN ASSET MANAGEMENT CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER OR, IN THE ALTERNATIVE, STAY ACTION**

Plaintiff Magten Asset Management Corporation ("Magten") respectfully submits this Opposition to the motion filed by Defendants Mike J. Hanson and Ernie J. Kindt seeking transfer of this action, or in the alternative, stay of this action (the "Motion to Transfer").

## PRELIMINARY STATEMENT

After a year of litigation in this Court -- during which this Court has denied both a motion to dismiss and a summary judgment motion, and just as discovery is finally commencing -- defendants Mike Hanson and Ernie Kindt now seek to transfer this action to the District of Delaware. The motion should be denied for three separate and independently sufficient reasons.

First, it is untimely. Defendants long ago waived any objection to venue in the District of Montana. The facts on which they now rely to seek transfer were equally available to them last year. They were happy to litigate in Montana as long as they had any reason to hope that this Court might rule in their favor. That they have made the motion only after this Court has rejected their motions going to the merits of the case shows that they are engaged in impermissible judge-shopping.

Second, the District of Delaware is not an available forum for transfer, because Magten could not have originally brought this action there. If Magten had sued Hanson and Kindt in Delaware, defendants would have valid grounds to seek dismissal or transfer, because venue would not have been proper there and they would not have been subject to personal jurisdiction. That they now, after the fact, indicate that they would have no objection to litigating in that forum is irrelevant under the transfer statute. Their belatedly-raised claim that Delaware was a potentially-available forum because this case is "related to" the chapter 11 bankruptcy of NorthWestern Corporation ("NorthWestern") under 28 U.S.C. § 1334 is contrary to the case law interpreting that statute.

Finally, none of the factors considered in adjudicating discretionary transfer motions favor Delaware. Magten legitimately chose to prosecute its claims in Montana, they are governed by Montana law, defendants are being held accountable for their conduct as officers of a Montana company causing injury to that company's creditors by disposing of assets located in Montana without receiving adequate consideration for them, and there are no potential witnesses who could not be compelled to testify in Montana but who would be subject to compulsory process in Delaware. The fact that other lawsuits involving the liability of other parties for the same underlying events under different legal theories are pending in Delaware (due to jurisdictional issues not present in this case) does not come close to being sufficient, standing alone, to justify transfer.

This case is now ready to proceed with discovery. Defendants seek further delay for the sake of delay, but this Court should not permit that to occur.

## FACTUAL BACKGROUND RELEVANT TO THE MOTION

The facts relevant to this Motion are not complicated. Magten commenced this action against defendants Hanson and Kindt in this Court on April 19, 2004. Magten is based in New York; Kindt is a resident of Montana and Hanson is a resident of South Dakota. Magten is a creditor of Clark Fork and Blackfoot LLC ("Clark Fork"), formerly known as NorthWestern Energy, LLC, and prior to that known as The Montana Power Company LLC. Cplt. ¶¶ 23, 27, 39, 48. Clark Fork is an LLC incorporated under the laws of the state of Montana, and Hanson and Kindt were senior officers of Clark Fork as of November 2002. Cplt. ¶ 9. At that time, they agreed to give away substantially all of Clark Fork's assets -- located in Montana and representing the utility assets of the former Montana Power Company -- without receiving adequate compensation. Cplt. ¶¶ 1, 3, 5. Specifically, by a transaction occurring on November

15, 2002 (the "Transfer") Hanson and Kindt caused Clark Fork to give these key assets — electric, natural gas and propane utility assets (the "Transferred Assets") — to its corporate parent NorthWestern for hundreds of millions of dollars less than they were worth. Cplt. ¶ 31. This fraudulent Transfer authorized by Hanson and Kindt benefited Clark Fork's 100% equity owner NorthWestern at the expense of Clark Fork's creditors. Cplt. ¶¶ 26, 44. Clark Fork was immediately rendered insolvent and unable to meet its obligations to creditors, including its obligations to the holders of the so-called "QUIPS" (Quarterly Income Preferred Securities) originally issued by an affiliate of the former Montana Power Company. Cplt. ¶¶ 33, 36. (Plaintiff Magten is a holder of QUIPS.) Defendants Hanson and Kindt, as officers of Clark Fork, had a fiduciary duty under Montana law to Clark Fork's creditors not to engage in transactions that would render Clark Fork insolvent. Cplt. ¶ 47. In connection with the Transfer, Clark Fork purported to have NorthWestern assume Clark Fork's liabilities, but NorthWestern's other liabilities were so massive that, even after paying inadequate consideration to Clark Fork for the Transferred Assets, NorthWestern could not pay its own creditors, and filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Cplt. ¶¶ 31, 42. Hanson and Kindt likewise violated their fiduciary duties under Montana law by purporting to assign Clark Fork's obligations to its creditors to NorthWestern when they knew or should have known that NorthWestern would be unable to satisfy those obligations, thus injuring the creditors. Cplt. ¶¶ 35, 51.

As a result of Hanson and Kindt's actions, Magten is now owed approximately $40 million dollars by a Montana company which defendants rendered unable to meet its obligations.

## ARGUMENT

### I. THE MOTION SHOULD BE DENIED AS UNTIMELY

Defendants have long since waived any objection to venue in this Court, and their undue delay in bringing the Motion is by itself sufficient grounds for its denial, even if the Court were to assume the Motion might have had some merit (which as explained below, it does not) if it had been promptly made at the outset of the case. Defendants have raised their belated objections to litigating before this Court only after the Court denied two separate dispositive motions they filed. The inference is inescapable that they were willing to litigate in Montana as long as they hoped that the Court might rule in their favor, but would now like to transfer the case to another judge in another district whom they now hope might be more willing to consider the arguments this Court has rejected. The Court need not and should not reward such gamesmanship.

Defendants filed a motion to dismiss the complaint under Rule 12(b) on July 9, 2004, which did not seek transfer or otherwise object to venue in the District of Montana. Pursuant to the express provisions of Rule 12(g) and Rule 12(h)(1), defendants thereby waived any defense of improper venue because they did not include it in that motion. *Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir. 1986) (holding objection to venue waived because not raised in initial motion to dismiss). *See also* 28 U.S.C. § 1406(b) (court may exercise jurisdiction over "any matter involving a party who does not interpose timely and sufficient objection to venue"). Indeed, the Ninth Circuit has squarely held that a motion to transfer brought under 28 U.S.C. § 1404 (the statute defendants invoke here) is waived if not brought simultaneously with the answer or pre-answer motion, especially when the movant has already "fil[ed] motions and

briefs, and . . . participat[ed] in hearings before the court." *Fallbrook Pub. Util. Dist. v. U.S. S. Dist. Cal.*, 202 F.2d 942, 944 (9th Cir. 1953).

*Fallbrook* is by itself sufficient to doom defendants' motion as untimely, but it is worth noting that courts in other circuits which have not held transfer motions waived under Rule 12(h) have nonetheless deemed undue delay to be a sufficient reason for denial of such a motion. *See, e.g., Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) (affirming denial of transfer motion made after case had been pending eighteen months); *DeBruce Grain, Inc. v. Farmland Mut. Ins. Co.*, No. 90-0428-CV-W-6, 1990 U.S. Dist. LEXIS 15689, at *8 (W.D. Mo. Nov. 16, 1990) (treating five month delay in seeking transfer as factor supporting denial and noting that "transfers are often used as a delaying tactic").

Denying a transfer motion as untimely is particularly appropriate when the facts relied on for the application are not unforeseen new developments, but could equally well have been raised had the motion been made at the outset of the case. Here, defendants rely primarily on the fact that Magten is suing NorthWestern for relief in respect of the Transfer in an adversary proceeding in the U.S. Bankruptcy Court for the District of Delaware (the "Adversary Proceeding") and that Magten's lawsuit against Paul, Hastings, Janofsky & Walker LLP (the "Paul Hastings Action") for relief in respect of the Transfer, which was originally filed in state court in Montana, was removed to federal court and then transferred to the District of Delaware. The NorthWestern Adversary Proceeding was commenced in April 2004 essentially simultaneously with this action (indeed, it is referenced in paragraph 45 of Magten's complaint in this case). The defendants in the Paul Hastings Action removed it from the Second Judicial District Court, Silver Bow County to this Court on June 24, 2004, and specifically stated in their notice of removal that they would be seeking a transfer to the District of Delaware or the

5

Southern District of New York. *See* Declaration of Bonnie Steingart dated June 2, 2005 (hereinafter "Steingart Decl.") at Exh. A.[1]

Nonetheless, when defendants filed their motion to dismiss on July 9, 2004 they did not seek transfer to the District of Delaware, even in the alternative, and were perfectly willing to allow this Court to adjudicate the case. Likewise, when they filed their motion for summary judgment on August 20, 2004 they did not raise the transfer issue and remained perfectly willing for this Court to adjudicate the case -- this despite the fact that the summary judgment motion was based almost exclusively on an argument that a ruling by the bankruptcy judge in Delaware estopped Magten from pursuing its claims against the defendants. Thus, even this substantive claim that this action was closely related to proceedings in Delaware did not lead defendants to argue that the District of Delaware, rather than this district, was the proper forum for this action.[2]

Defendants can offer no excuse for their delay. Nothing has changed in the underlying factual circumstances that might justify transfer -- all that has changed is that this Court has ruled on defendants' motions, and ruled adversely to them. Under these circumstances, belatedly seeking transfer is an obvious exercise in judge-shopping which cannot and should not be condoned. *Cf. Wood v. McEwen*, 644 F.2d 797 (9th Cir. 1981) (motion for recusal of judge untimely when not made until sixteen months after grounds arose and only after it became clear judge would issue adverse ruling on substance of case); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 312 (3d Cir. 2004) ("the judicial process can hardly tolerate the practice of a litigant . . . holding back [a recusal motion], while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming") (internal quotation and citation omitted).

---

[1] The Paul Hastings Action was assigned in this Court to Judge Haddon. Presumably, the defendants did not consider it sufficiently related to this case to ask that it be assigned to the same judge.

[2] Nor did the defendants raise the transfer issue promptly after September 9, 2004, when Judge Haddon transferred the Paul Hastings Action to the District of Delaware.

6

## II.    DEFENDANTS' MOTION IS GROUNDLESS BECAUSE THIS CASE COULD NOT HAVE ORIGINALLY BEEN BROUGHT IN THE DISTRICT OF DELAWARE

The transfer statute (28 U.S.C. § 1404(a)) only authorizes transfer to "any other district or division where it might have been brought." Thus, this action may be transferred to the District of Delaware *only* if Magten could have brought it there as of right under the circumstances as they existed on the date the action was filed (i.e., April 19, 2004). *Hoffman v. Blaski*, 363 U.S. 335 (1960). In particular, it cannot be assumed that the defendants would have waived objections to personal jurisdiction or venue in the proposed transferee district, even if they now claim to prefer to litigate there -- rather, the proposed transferee district must be one in which no meritorious objections to jurisdiction or venue could potentially have been raised. *Id.* at 343-44. Indeed, if there is even "a 'real question' whether a plaintiff could have commenced the action originally in the transferee forum . . . it is evident that [plaintiff] would not have an unqualified right to bring his cause in the transferee forum" and transfer would thus be unavailable. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) (internal citation omitted).[3]

If Magten had sued defendants in Delaware, they would have had meritorious objections both to personal jurisdiction and to venue. They are not Delaware residents and do not work in Delaware. They are not being sued for a violation of Delaware law, a tort committed in Delaware, or a tort committed elsewhere causing damages in Delaware. Rather, they are a resident of Montana and a resident of South Dakota charged with violating their fiduciary duties as officers of a Montana company to that company's creditors, including creditors located in new York. Those fiduciary duties arise under Montana law, and the specific violation involved their

---

[3]    Third Circuit law is particularly relevant here, since it would have governed any motion to dismiss on jurisdiction or venue grounds that the defendants could have brought had the case been filed in the District of Delaware.

7

facilitation of the transfer of assets physically located in Montana for inadequate consideration. The acts and omissions complained of likely took place in Montana or perhaps South Dakota -- certainly not in Delaware. Defendant Kindt's express waiver of any objections to personal jurisdiction in Delaware (Beatty Aff. ¶ 14) simply confirms the obvious -- that Magten could not have subjected him to jurisdiction in Delaware absent an after-the-fact waiver, which is legally irrelevant for purposes of transfer. Defendant Hanson has provided neither such an after-the-fact waiver nor any evidence that he would have been subject to personal jurisdiction in Delaware as of April 2004. Likewise, venue would not have been proper in the District of Delaware under 28 U.S.C. § 1391, since the defendants do not reside there and no substantial part of the events or omissions giving rise to the claim occurred there.

Thus, defendants' entire argument for transfer hangs on the belatedly-raised claim that this action is "related to" NorthWestern's bankruptcy case within the meaning of 28 U.S.C. § 1334(b). Only if the action falls within section 1334 could the nationwide service of process provisions of Fed. R. Bankr. P. 7004 potentially apply, subjecting defendants to personal jurisdiction in Delaware (and, indeed, in any other federal court in the country). Only if the action falls within section 1334 would venue be arguably proper in the District of Delaware under 28 U.S.C. § 1409.

But, this action is not "related to" NorthWestern's bankruptcy case, and was not so related on April 19, 2004. It involves claims by Magten (not a debtor in bankruptcy) against defendants Hanson and Kindt (neither of whom are debtors in bankruptcy) challenging their conduct as officers of Clark Fork (also not a debtor in bankruptcy). That Magten is separately

8

pursuing claims against NorthWestern relating to the same underlying transaction is irrelevant.[4] The "mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the [former] within the scope [of section 1334(b)]." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). *See also Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (favorably citing Pacor and observing that "a bankruptcy court's 'related-to' jurisdiction cannot be limitless"). In particular, the mere possibility that a non-debtor defendant may have a claim for contribution or indemnification against a debtor in bankruptcy will not suffice to transform an ordinary tort claim by one non-debtor against another into an action "related to" the debtor's bankruptcy case giving rise to section 1334 jurisdiction. *In re Federal Mogul Global, Inc.*, 300 F.3d 368, 380-81 (3d Cir. 2002). *See also Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 753-754 (E.D. Pa., 2003) (court remanded action to Philadelphia state court, finding that the indemnification claim asserted by the underwriter defendants was not sufficient to support "related to" jurisdiction under 28 U.S.C. § 1334(b).).

Here, defendants claim that NorthWestern's estate might be affected because NorthWestern has agreed to indemnify them, subject to various agreed terms and conditions. But Hanson's indemnification agreement was not executed until May 9, 2005 -- over a year after this action was commenced -- while Kindt's was not executed until August 2004. Knapp Aff.,

---

[4] Not only is Judge Haddon's interlocutory decision transferring the Paul Hastings Action to the District of Delaware not binding precedent, it is distinguishable on its facts. Two of the three causes of action asserted by Magten against Paul Hastings were for aiding and abetting NorthWestern's own tortious conduct. *See* Beatty Aff., Exh. R. Judge Haddon thus reasoned that the aiding and abetting claims necessarily related to the claims against NorthWestern itself. *See* Beatty Aff., Exh. S. By contrast, Magten has not sued Hanson and Kindt on an aiding and abetting theory, but rather as primary violators of their own fiduciary obligation's to Clark Fork's creditors. That NorthWestern was the intended beneficiary of those breaches of duty is irrelevant to their liability.

9

Exhs. A & B.[5] Again, the availability of Delaware as a transferee forum depends on whether Magten had an unqualified right to bring this action there as an original matter without the defendants' consent. If Magten had brought this action in Delaware in April 2004, it could hardly have opposed a motion to dismiss for lack of personal jurisdiction and improper venue by arguing that the defendants might in the future enter into indemnification agreements with NorthWestern.

Thus, at a bare minimum there is a "real question" as to whether Magten could have successfully opposed a motion to dismiss on jurisdictional or venue grounds had it originally sued in the District of Delaware. *See Shutte*, 431 F.2d at 25 (Western District of Missouri not available transferee forum when there was "substantial doubt" as to whether Missouri long-arm statute could be construed to support personal jurisdiction over defendants in that district). Magten can hardly be faulted for bringing its Montana law claims regarding defendants' acts as officers of a Montana company in this Court, thus suing defendants in the only judicial district in the country where there could be no doubt as to personal jurisdiction and venue.[6] Because the action could not originally have been brought in Delaware as a matter of right, the motion must fail.

---

[5] Since NorthWestern has now emerged from bankruptcy, it is not clear that any payments which might be made pursuant to these indemnification agreements would come from NorthWestern's bankruptcy estate as opposed to its general post-bankruptcy operating budget. Moreover, defendants are also indemnified by Clark Fork and apparently are also insureds under various potentially applicable insurance policies, making the potential impact of the recently-signed indemnification agreements on NorthWestern itself even more speculative and remote.

[6] Indeed, even if a Delaware court could have been persuaded that the claims against Hanson and Kindt were sufficiently related to NorthWestern's bankruptcy case to provide a basis for personal jurisdiction in Delaware, it might well have granted an alternative request to transfer the case to Montana. *See Brown v. C.D. Smith Drug Co.*, C.A. No. 98-494-SLR, 1999 U.S. Dist. LEXIS 13872 (D. Del. Aug. 18, 1999) (holding that Missouri defendants were subject to personal jurisdiction in Delaware because claims asserted against them were "related to" pending bankruptcy case under section 1334, but transferring case to Western District of Missouri under section 1404).

### III. EVEN ASSUMING A THEORETICAL BASIS FOR JURISDICTION IN DELAWARE, A CHANGE OF VENUE IS NOT PROPER PURSUANT TO § 1404(a)

Even if this motion were deemed timely and the District of Delaware considered a potentially available transfer forum, defendants have not met their burden of establishing that this Court should exercise its discretion to transfer the case.[7] Section 1404(a) authorizes, but does not require, transfer "[f]or the convenience of parties and witnesses, in the interest of justice." To determine whether transfer will serve the interests of justice, the Ninth Circuit has listed a number of factors which courts may properly take into consideration, including among others giving deference to plaintiff's choice of forum, the law governing the case, the parties' contacts with the forum, the relation of the claims asserted in the action to the forum, and the availability of process to compel attendance of unwilling non-party witnesses at trial. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000)

1. Plaintiff's Choice of Forum

The "plaintiff's choice of forum should rarely be disturbed." *Anderson v. Thompson*, 634 F.Supp. 1201, 1204 (D. Mont. 1986). That is especially true when plaintiff has not been engaged in forum-shopping. Here, Magten did not sue in its own "home court," which would have been in New York, but in Montana, which any neutral observer would consider to be the defendants' "home court," and which the defendants themselves considered to be an acceptable forum until this Court denied their motions seeking dismissal.

2. Law Governing the Case

All else being equal, a case governed by a particular state's substantive law is best adjudicated by a federal district court in that state, especially if the issues are complex or

---

[7] As movants, it is defendants' burden to establish that transfer is proper. *CFTC v. Savage*, 611 F.2d 270 (9th Cir. 1979).

11

unsettled. *Anderson*, 634 F. Supp. at 1205. Here, Montana law governs Magten's claims against Hanson and Kindt. This Court is inherently better situated to determine those issues (and make appropriate predictions under the *Erie* doctrine as to how the Montana state courts would decide the issues where there is no precedent on point) than a federal judge in Delaware would be. *See also Jarvis v. Marietta Corp.*, 1999 U.S. Dist. LEXIS 12659, at *16 - *20 (N.D.Cal. Aug. 12, 1999) (transferring action to the Northern District of New York where New York substantive law implicated by complaint).

        3.      Parties' Contacts with Forum

Defendant Kindt lives in Montana; he can hardly claim that litigating here is inconvenient. Nor can defendant Hanson's asserted preference for litigating in Delaware be given any credence. Delaware is hardly a more convenient forum for Hanson (a South Dakota resident) than is Montana. Moreover, Hanson is being sued for his acts and omissions as President of Clark Fork, a Montana company headquartered in Montana, with respect to the disposition of over a billion dollars in assets physically located in Montana. While Hanson apparently considered himself capable of discharging his responsibilities to Clark Fork without actually living in Montana, that hardly gives him any equitable basis for objecting to the need to defend his conduct in that role in a Montana courthouse before a Montana jury.

        4.      Relation of Claims Asserted to the Forum

The substantive claims in the lawsuit have absolutely nothing to do with Delaware and everything to do with Montana. The Transferred Assets were and are located in Montana, and Clark Fork was and is a Montana company, whose officers' fiduciary duties are governed by Montana law. There can be no justification for requiring Delaware residents to serve on a jury charged with deciding whether a Montana resident and South Dakota resident breached their duties under Montana law to a Montana company's creditors and thus owe damages to a New

York plaintiff. By contrast, there is considerable public interest in having this Montana-based controversy adjudicated in Montana.[8] Indeed, it has recently been reported in the media that a coalition of Montana municipalities is negotiating to buy the Transferred Assets from NorthWestern, apparently because they do not believe that Montana's citizens will be well-served by the continuing control of these important assets by out-of-state ownership. Steingart Decl. Exh. B.

5.   Availability of Compulsory Process

Defendants have not identified any potential witnesses who would be subject to compulsory process in Delaware but who could not be compelled to testify in Montana.

6.   Other Considerations

None of the factors discussed above support transfer -- all show that Montana is a superior forum to Delaware. Moreover, it is defendants' burden to show that Delaware is affirmatively preferable to Montana. *Anderson*, 634 F. Supp. at 1204 ("a transfer is not available to a forum which is equally convenient or inconvenient to the original forum"). This they cannot do.

Defendants' argument for transfer comes down to the claim that because other cases involving the liability of other parties to Magten with respect to the Transfer are pending in Delaware, this case must be sent there. They cite no authority for that proposition, much less any case ordering transfer on such a basis when all of the other factors weighed against transfer.[9]

---

[8]   The fact that the Adversary Proceeding cannot be brought in Montana is simply a consequence of the bankruptcy laws, and NorthWestern's exercise of its right as a Delaware corporation to use the District of Delaware as the venue for its voluntary chapter 11 filing. It certainly does not reflect any judgment that Delaware has a greater connection to the underlying controversy than Montana.

[9]   Defendants cite only *Ferens v. John Deere Co.*, 494 U.S. 516 (1990), in which the plaintiff had filed separate lawsuits in two different states against the *same defendant*, and then made an *unopposed* transfer motion in order to consolidate them. The Court was not considering the propriety of the transfer itself, only its consequences for the choice of law analysis to be applied by the transferee court. The irrelevance to the

13

Moreover, they have simply listed all "proceedings" in Delaware having anything to do with Magten (including one that has already been dismissed!), without any serious analysis of what, if anything, they have to do with the present litigation or how transfer of the present litigation to the District of Delaware could promote judicial efficiency.

- They cite four separate disputes within NorthWestern's chapter 11 case (their #1, 4, 5 & 6 -- none of which had separate docket numbers in the Bankruptcy Court) as if they were separate "proceedings."

- They cite (their #3) an adversary proceeding brought against Magten (having nothing to do with the Transfer) which the plaintiff has now voluntarily *dismissed with prejudice after admitting that it had been unable to substantiate its allegations of wrongdoing by Magten.* Steingart Decl. ¶ 5.

- They cite (their #5) an appeal of the Bankruptcy Court's rejection of an objection by Magten to NorthWestern's proposed *settlement* of *other* litigation having nothing to do with the Transfer.

- Adding insult to injury, they cite (their #6) Magten's ongoing attempts to enforce the prior settlement agreement it reached with respect to various pending disputes (including this one) as a reason why this lawsuit should not proceed in Montana, even though this lawsuit is proceeding at all only because NorthWestern reneged on that settlement.

- They cite (their # 4, 5 & 6) matters pending before the District Court sitting as an appellate tribunal over the Bankruptcy Court pursuant to 28 U.S.C. § 158 as if they were indistinguishable from matters pending before the District Court as a

---

present motion of Judge Haddon's decision transferring the Paul Hastings Action to Delaware is discussed at note 4 supra.

14

court of original jurisdiction -- although that court would obviously be unable to consolidate an appeal with a jury trial.

- They cite (their #9) a case brought by Magten in Delaware *state* court even though by definition that case cannot be consolidated with the matters pending either in the federal District Court (including this case, were it to be transferred) or the Bankruptcy Court.[10]

Nor do defendants provide any basis for a conclusion that the Delaware courts are more familiar with the key issues in this case than is this Court. If anything, the opposite is true. While this Court has now ruled on two substantive motions brought by defendants, the District Court in Delaware has yet to make any substantive rulings in the Paul Hastings Action. Steingart Decl. ¶ 7. Due to docket congestion in Delaware and the consequent need to use visiting judges from other districts, the Adversary Proceeding (and indeed NorthWestern's entire chapter 11 case) have been transferred from judge to judge -- the bankruptcy judge currently presiding over the case is the third one since the Adversary Proceeding was filed. *Id.* ¶ 8. Moreover, it is currently unclear whether the Adversary Proceeding will remain in the Bankruptcy Court (in which case it could not be coordinated with this case were it to be transferred) or be transferred to the District Court. *Id.* ¶ 9.

For all of these reasons, discretionary transfer would not be justified, even if defendant's motion had been timely made (which it was not) and even if Delaware was an available transferee forum (which it is not).

---

[10] The defendants in that case obviously do not consider it to be "related to" the NorthWestern bankruptcy because they have not sought to remove it to federal court, and the time for removal has now passed. Steingart Decl. ¶ 6.

15

## IV.   DEFENDANTS HAVE NO BASIS FOR THEIR ALTERNATIVE REQUEST FOR A STAY

Defendants tip their hand by their alternative request for an open-ended stay. They claim that it would be "efficient" to "coordinate" discovery in this case with proceedings in other cases in Delaware, well-knowing that discovery is not yet going forward in those other cases due to various unresolved procedural motions. Thus, "coordination" with those cases means indefinite delay. While this delay might suit the defendants' own preferences, it will hardly promote judicial efficiency. Rather, it would be most efficient for this case to proceed on the schedule this Court has just ordered (to which the defendants expressly consented).[11] Defendants have avoided discovery in this case for a year by filing not one but two meritless dispositive motions which this Court has now rejected. It is time for that delay to end.

Defendants complain about Magten's litigation strategy, and seem to be under the self-serving delusion that Magten is not interested in securing a judgment against them, but only in gaining leverage to secure a settlement from NorthWestern. This is false. Magten remains willing to abide by the terms of the prior settlement which NorthWestern reneged on, but until such time as NorthWestern is willing to honor that agreement Magten has both the right and the need to pursue all of its claims against the various parties responsible for its injuries in the appropriate forums.

Hanson and Kindt are being sued directly for their own acts and omissions, and are independently liable to Magten. Indeed, NorthWestern has asserted at least one defense to

---

[11]   Magten is willing to work in good faith with counsel for defendants in this case as well as counsel for NorthWestern and Paul Hastings in the Delaware cases to avoid unnecessary duplication of effort. But Hanson and Kindt will need to produce the documents relevant to this case, and answer interrogatories relevant to this case regardless of what schedule the other cases might be proceeding on, and there is no reason for them to be permitted to delay providing that discovery indefinitely. After documents have been produced and interrogatories answered, counsel can discuss possible ways of ensuring that Hanson and Kindt are not unnecessarily subjected to multiple depositions.

liability (that Magten is, as a result of the Transfer, not currently a creditor of Clark Fork) which is unavailable to Hanson and Kindt, making it possible in principle (although Magten disputes both the factual and legal grounds for this defense by NorthWestern) that Hanson and Kindt might be adjudged liable while NorthWestern would not be, since causing NorthWestern to be substituted as the obligor for Clark Fork with actual or constructive knowledge that NorthWestern would be unable to honor the obligations it purportedly assumed would be a separate breach of their duty to Clark Fork's pre-Transfer creditors.[12]

Moreover, in connection with NorthWestern's insolvency (and certain terms of NorthWestern's reorganization plan which Magten has challenged), the plan provides that its liabilities to Magten, to the extent that they are ultimately found to be an "allowed claim," may only be paid out of the disputed claims reserve. It is our understanding that these claims would be treated as Class 9 claims and that those claims will only receive an approximate 62% recovery. Steingart Decl. ¶ 10. Thus, in order to be made whole Magten may need to secure judgments against the various other parties responsible for its injuries, including these defendants, Paul Hastings, and/or the Bank of New York (along with their respective insurers).[13]

---

[12] Thus, a judgment for NorthWestern in the Adversary Proceeding would not necessarily render this case moot. Moreover, defendants have conspicuously failed to stipulate that a judgment *against* NorthWestern in the Adversary Proceeding would entitle Magten to judgment against them without the need for a separate trial -- they would presumably like to be able to argue the ability to have their own separate bite at the apple if that were to occur.

[13] Thus, this case is unlike *Regions Bank v. Wieder & Mastroianni, P.C.*, 170 F. Supp. 2d 436, 440 (S.D.N.Y. 2001), where a judgment against the defendant in the first-filed suit would make the plaintiff totally whole and obviate any need to pursue the defendant in the later-filed suit which the court elected to stay.

17

## CONCLUSION

For the reasons set forth above, defendants' motion to transfer or, in the alternative, to stay should be denied in its entirety.

RESPECTFULLY SUMITTED this 2nd day of June, 2005

                                                GOETZ, GALLIK & BALDWIN, P.C.

                                                By: _____

                                                James H. Goetz
                                                J. Devlan Geddes
                                                35 North Grand Avenue
                                                P.O. Box 6580
                                                Bozeman, Montana 59715
                                                (406) 587-0618

                                                - and -

                                                FRIED, FRANK, HARRIS, SHRIVER
                                                   & JACOBSON LLP

                                                By: _____

                                                Bonnie Steingart (admitted pro hac vice)
                                                John W. Brewer (admitted pro hac vice)
                                                One New York Plaza
                                                New York, New York 10004-1980
                                                (212) 859-8000

                                                *Attorneys for Plaintiff*
                                                  *Magten Asset Management Corporation*

469798

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record, by first class U. S. mail, postage prepaid, this 2nd day of June, 2005.

Bonnie Steingart
John W. Brewer
Fried, Brank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, NY 10004
ATTORNEYS FOR PLAINTIFF

Kimberly A. Beatty
Browning, Kaleczyc, Berry & Hoven, P.C.
P. O. Box 1697
Helena, MT 59624
ATTORNEYS FOR DEFENDANTS

J. Devlan Geddes