

05-    4, 99

*Received by Reg. mail 4/8/04*

Brendon J. Rohan, Esq.
J. Richard Orizotti, Esq.
POORE, ROTH & ROBINSON, P.C.
1341 Harrison Avenue
P. O. Box 2000
Butte, Montana 59702
(406) 497-1200
(406) 782-0043 (Fax)

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BUTTE DIVISION

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION Suing individually and derivatively on behalf of CLARK FORK AND BLACKFOOT, LLC, | ) ) ) ) | Cause No. CV-04-49-BU-SEH |
| Plaintiff, | ) ) ) | **NOTICE OF REMOVAL** |
| v. | ) ) | |
| PAUL HASTINGS JANOFSKY & WALKER LLP, | ) ) ) | |
| Defendant. | ) ) ) | |

Defendant, Paul Hastings Janofsky & Walker LLP ("Paul Hastings"), respectfully

notifies this Court of the removal of this action from the Montana Second Judicial

District Court, Silver Bow County, to the United States District Court for the District of

Montana pursuant to 28 U.S.C. § 1452(a) for the following reasons:

1.      **NOTICE OF REMOVAL**

\\lawdb\prolaw\documents\2680-11648\33280.doc

**EXHIBIT A**

I.

Paul Hastings is the sole defendant in a civil action brought against it in the

Montana Second Judicial District Court, Silver Bow County, captioned, *Magten Asset*

*Management Corporation suing individually and derivatively on behalf of Clark Fork*

*and Blackfoot, LLC v. Paul Hastings Janofsky & Walker LLP*, and assigned cause

number DV-04-131 by that Court. The Summons and Complaint in this action, copies of

which are attached hereto as Exhibit A, constitute all process and pleadings delivered to

or served upon the defendant. A copy of the Montana Second Judicial District Court's

June 15, 2004 Order granting Paul Hastings' Motion for Extension of Time to Make

Initial Appearance to Complaint is attached hereto as Exhibit B. No further proceedings

have occurred in the above-titled action in the Montana Second Judicial District Court,

Silver Bow County.

II.

This action was commenced by serving the Summons and Complaint upon Paul

Hastings on May 27, 2004.

III.

Paul Hastings' time to answer the Complaint has not expired.

IV.

This Notice Of Removal is timely under 28 U.S.C. § 1446(b) because it is being

filed within thirty days after receipt by Paul Hastings, through service or otherwise, of the

Summons and Complaint.

2    **NOTICE OF REMOVAL**

\\lawdb\prolaw\documents\2680-11648\33280.doc

V.

This Court has subject matter jurisdiction over this action under 28 U.S.C. §
1334(b), which provides that this Court has original jurisdiction over all civil proceedings
related to cases under Title 11 of the United States Bankruptcy Code.

VI.

This action is related to a case under Title 11 of the United States Bankruptcy
Code currently pending before the United States Bankruptcy Court for the District of
Delaware in a matter titled "In re:  NorthWestern Corporation, Case No. 03-12872
(CGC)," which was filed on September 14, 2003.

VII.

Plaintiff, Magten Asset Management Corporation ("Magten"), is a creditor of
NorthWestern Corporation ("NorthWestern") in the bankruptcy proceeding, and the
defendant, Paul Hastings, is one of the law firms acting as counsel to NorthWestern in
that proceeding.

VIII.

In April 2004, Magten filed an adversary proceeding against NorthWestern in the
above referenced bankruptcy case captioned, *Magten Asset Management Corporation &
Law Debenture Trust Company of New York v. NorthWestern Corporation.*  That
adversary proceeding seeks to avoid the transfer of certain assets to NorthWestern from
one of its subsidiaries, Clark Fork and Blackfoot LLP ("Clark Fork"), on the grounds
that, *inter alia*, the transfer of such assets constituted a fraudulent transfer.  A copy of the
Complaint filed in that adversary proceeding is attached hereto as Exhibit C.

3.    NOTICE OF REMOVAL

\\lawdb\prolaw\documents\2680-11648\33280.doc

IX.

The claims asserted in the Complaint in this action relate to the same transaction

as the above referenced adversary proceeding in the United States Bankruptcy Court for

the District of Delaware.  The claims asserted in the Complaint in this action include

causes of action for aiding and abetting a fraudulent transfer, civil conspiracy to conduct

a fraudulent transfer, aiding and abetting a breach of fiduciary duty and malpractice, all

of which relate to the transfer of assets from Clark Fork to NorthWestern in connection

with the above referenced transaction.

X.

The United States District Court for the District of Montana is the federal judicial

district within which the Montana Second Judicial District Court, Silver Bow County is

located and where the lawsuit was originally filed.  Venue is therefore proper in this

district under 28 U.S.C. §§ 1441(a) and 106.

XI.

Paul Hastings has not conceded, and expressly reserves the right to contest,

whether the Montana Second Judicial District Court, Silver Bow County, has personal

jurisdiction over it.  To the extent that this action is removed to and remains in federal

court, Paul Hastings would consent to the exercise of personal jurisdiction over Paul

Hastings by this Court.

XII.

Promptly upon filing this Notice Of Removal, a true copy of this Notice Of

Removal, together with Filing Of Notice Of Removal and Notice To Plaintiff Of

4.    **NOTICE OF REMOVAL**

\\lawdb\prolaw\documents\2680-11648\33280.doc

Removal shall be served upon all adverse parties pursuant to 28 U.S.C. § 1446(d) and
will be filed with the Clerk of the Court for Montana Second Judicial District Court,
Silver Bow County.

XIII.

Upon removal, Paul Hastings respectfully requests that this case not be referred to
the United States Bankruptcy Court for the District of Montana under Standing Order 12
(revised) because, absent agreement among the parties, Paul Hastings intends to promptly
file a motion to stay this case pending the resolution of the above referenced adversary
proceeding brought by Magten against NorthWestern, or, in the alternative, to transfer
this case either to the United States District Court for the Southern District of New York
(where Magten is headquartered, where most of the Paul Hastings lawyers involved in the
matter reside and where most of the documents and witnesses related to this matter are
located) or to the United States District Court for the District of Delaware, where the
above referenced bankruptcy proceeding is pending.


**WHEREFORE**, Defendant Paul Hastings Janofsky & Walker LLP respectfully
prays that this Notice Of Removal be deemed good and sufficient, and that Cause No.
DV-04-131 be removed from the Montana Second Judicial District Court, Silver Bow
County, State of Montana, to the docket of this Court.


5.    **NOTICE OF REMOVAL**

\\lawdb\prolaw\documents\2680-11648\33280 doc

DATED this 24th day of June, 2004.

POORE, ROTH & ROBINSON, P.C.

By _____

Brendon J. Rohan
Attorneys for the Defendant
1341 Harrison Avenue
P.O. Box 2000
Butte, Montana  59702

## CERTIFICATE OF SERVICE BY MAILING

This is to certify that on the 24th day of June, 2004, the foregoing attached NOTICE OF REMOVAL was duly served upon the following attorneys of record, by depositing a true copy thereof in the United States mails, postpaid, addressed as follows, to-wit:

David R. Paoli, Esq.
Paoli & Shea, P.C.
257 West Front Street
P.O. Box 8131
Missoula, Montana 59802

Bijan Amini, Esq.
Storch Amini & Munves, P.C.
405 Lexington Avenue 51st Floor
New York, New York 10174

      Attorneys for Plaintiff

               POORE, ROTH & ROBINSON, P.C.

By _____
            Brendon J. Rohan

7.    **NOTICE OF REMOVAL**

\\lawdb\prolaw\documents\2680-11648\33280.doc

Factiva                                                                                          Page 1 of 2

Go to Factiva.com



factiva
Dow Jones & Reuters

platts
Electric Utility Week

**South Dakota, Montana cities, Nebraska utilities moving fast in bid for NorthWestern**

830 words
9 May 2005
Electric Utility Week
1
English
(c) 2005 McGraw-Hill, Inc.

A group of cities and two utilities in Montana, South Dakota and Nebraska are moving forward quickly to bid this summer to buy NorthWestern Corp.

Triggering the move is concern about the future of NorthWestern, which emerged from bankruptcy reorganization Nov. 1.

"We've been working behind the scenes for some time. We are confident our bid will be accepted when submitted this summer," said Larry Nelson, a Sioux Falls, S.D., lawyer. He represents the South Dakota Power Co., which comprises 18 cities, Heartland Consumers Power District, Missouri River Energy System and two gas utilities in Nebraska. The group has joined forces with Montana Public Power, composed of five cities.

No one would speculate about the offering price. During bankruptcy, the court placed a value of about $1.6 billion on the company.

Even through NorthWestern's finances have turned around and it turned a profit in the first quarter, the cities are concerned about the future. "Stockholders are all people with unpaid debt," Curt Bernard, chairman of the South Dakota group and mayor of Yankton, S.D., said in an interview. "If they are trying to maximize their investments, why should they remain in a slow growth utility when they can take their gain and move on to the next deal? We're going to make a bid as an insurance policy in case things do not go well."

The Montana and South Dakota groups have been working with Citibank's merger and acquisitions unit, which has been holding discussions with NorthWestern officials and lawyers, Bernard said. Municipal revenue bonds will be issued to pay for the deal, he said.

"They have not yet made a formal offer but said they plan to do so," a NorthWestern spokesman acknowledged. He would not comment further on the discussions. Bernard said that once a bid is accepted by NorthWestern, the cities will conduct due diligence with the goal of closing the transaction by year end.

The consortium would buy the company as a whole and manage it as one entity before eventually splitting it into two entities. Bernard noted. The Montana group wants the facilities in that state, and the South Dakota group the remainder.

Utility veteran William Mayben has been working with the consortium as a liaison with NorthWestern's board and stakeholders to help develop an operating plan, Alec Hanson, executive director of the Montana League of Cities and Towns, said in an interview. The league has been instrumental in forming the Montana group. Mayben was president and CEO of the Nebraska Public Power District from 1995 through 2002.

"We want local control over NorthWestern, which is a monopoly. We want to insure that rates and employment will remain stable," said Bernard. The new company would be regulated by utility commissions in both states. The new publicly owned entity would be non profit with debt repaid from revenues.

Montana Public Power unsuccessfully offered NorthWestern creditors $1.26 billion for the Montana transmission and distribution assets alone last year as the company wallowed in bankruptcy. Those assets, which NorthWestern bought from Montana Power in 2002, serve about 80% of the company's 617,000 customers.

South Dakota Power also failed last year to buy NorthWestern's electric and gas utilities in the two states. These were the company's original holdings when it was called NorthWestern Public Service Co., before it bought the Montana utilities.

Ursula Schryver, director of customer programs for the American Public Power Assn., said a large number of communities are considering getting into the utility business. "I would say there are 50 to 100 communities across the country at some stage in the process of looking at municipalization," she said. "This process began in California because of the problems with deregulation and has spread. Each city is different and has to figure out what works best for the community."

Last week, NorthWestern reported first-quarter net income of $18.9 million, up 11.4% from a year before, on operating revenue of $335.1 million, up 9.6%.

EXHIBIT
B

NorthWestern cautioned that because of application of "fresh start" financial reporting upon its exit from Chapter 11 bankruptcy on Oct. 31, 2004, results are not technically comparable. The company did not report earnings per share for first-quarter 2004. In 2005 they were 53 cents (basic and diluted) on 35.6 million average shares.

Cost of sales rose 10.1% to $190.4 million, leaving gross margin up 9% to $144.7 million.

Operating expenses were down 2.8% to $96.9 million, led by a 50.8% plunge, to $3.4 million, in costs related to the Chapter 11 case. That left operating income up 44.9% to $47.8 million.

Interest fell 24.9% to $16.3 million. Income taxes were $13.7 million, versus year-before tax benefits of $138,000.

The net loss on discontinued operations dropped 89.3% to $524,000.

Document EUW0000020050523e15900001

© 2005 Dow Jones Reuters Business Interactive LLC (trading as Factiva). All rights reserved.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| NORTHWESTERN CORPORATION, ) | Bankruptcy Case No. 03-12872 (JLP) |
| ) | |
| Reorganized Debtor. ) | |

| | |
|---|---|
| In re: ) | |
| ) | |
| NORTHWESTERN CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Adv. No. 04-55051 (JLP) |
| ) | |
| v. ) | |
| ) | |
| MAGTEN ASSET MANAGEMENT ) | |
| CORPORATION, and TALTON R. EMBRY, ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| ) | |
| MAGTEN ASSET MANAGEMENT ) | |
| CORPORATION and LAW DEBENTURE ) | |
| TRUST COMPANY OF NEW YORK, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Adv. No. 04-53324 (JLP) |
| ) | |
| NORTHWESTERN CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**JOINT MOTION (I) FOR ORDER ALLOWING THE DEBTOR TO DISMISS
ITS COMPLAINT AGAINST MAGTEN ASSET MANAGEMENT
CORPORATION AND TALTON R. EMBRY, WITH PREJUDICE, PURSUANT
TO RULE 7041(a) OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE AND RULE 41(a) OF THE FEDERAL RULES OF CIVIL
PROCEDURE, AND (II) FOR LEAVE TO AMEND ANSWER AND
AFFIRMATIVE DEFENSES AND TO WITHDRAW COUNTERCLAIMS TO
FIRST AMENDED COMPLAINT TO AVOID THE TRANSFER OF
ASSETS OF CLARK FORK AND BLACKFOOT LLC**



EXHIBIT
C

COMES NOW NorthWestern Corporation (**"NorthWestern"** or the **"Debtor"**), by and through its undersigned counsel, and hereby files its Motion (I) for Order Allowing the Debtor to Dismiss Its Complaint Against Magten Asset Management Corporation and Talton R. Embry, With Prejudice, Pursuant to Rule 7041(a) of the Federal Rules of Bankruptcy Procedure and Rule 41(a) of the Federal Rules of Civil Procedure, and (II) for Leave to Amend Answer and Affirmative Defenses and to Withdraw Its Counterclaims to First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (the **"Motion"**), and in support thereof respectfully represents as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this Chapter 11 case and the Motion are proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.    NorthWestern was incorporated in 1923 and is a publicly traded Delaware corporation. NorthWestern and its direct and indirect energy subsidiaries comprise one of the largest providers of electricity and natural gas in the upper Midwest and Northwest regions of the United States, serving approximately 608,000 customers throughout Montana, South Dakota and Nebraska. The Debtor, a transmission and distribution regulated utility entity, has generated and distributed electricity in South Dakota and has distributed natural gas in South Dakota and Nebraska through its energy division, NorthWestern Energy, since the Debtor's formation in 1923.

- 2 -

3.    On September 14, 2003 (the **"Petition Date"**), NorthWestern filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On September 30, 2003, the Office of the United States Trustee for the District of Delaware (the **"Trustee"**) appointed the official committee of unsecured creditors in the Debtor's bankruptcy proceeding (the "**Committee**").

4.    On October 8, 2004, the Court entered an oral ruling confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the **"Plan"**), and on October 19, 2004, the Court entered the final Order Confirming the Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code. The effective date of the Debtor's Plan was November 1, 2004.

5.    Talton R. Embry (**"Embry"**) was at all relevant times the 100% owner and Chairman of Magten Asset Management Corporation (**"Magten"** and together with Embry, collectively, the **"Defendants"**), and Magten is a corporation organized under the laws of Delaware, having its principal place of business at 410 Park Avenue, 14th Floor, New York, New York 10022.

6.    Magten filed a proof of claim which was designated claim number 842 by the Debtor's claims agent (the **"Magten Claim"**).[1]    The Magten Claim asserts unliquidated claims against the Debtor's estate for: (i) the face amount of the approximately 40% of the Debtor's Series A 8.45% Quarterly Income Preferred Securities (**"QUIPS"**) that were held by Magten as of the Petition Date; and (ii) damages

---

[1] A copy of the Magten Claim is attached hereto as <u>Exhibit A</u>. Through the discovery process it became clear that Magten did not own all of the securities referred to in its proof of claim on its own behalf, but rather that such securities were held in accounts managed by Magten for others. To date, Magten has not filed a statement pursuant to Federal Rule of Bankruptcy Procedure 2019, as required by such rule.

NY55/434737.3

resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to NorthWestern on November 15, 2002 (the **"QUIPS Litigation Claim"**).

7.        On or about November 6, 2003, this Court entered its Order Permitting Securities Trading Upon Establishment of Ethical Wall (the **"Securities Trading Order"**).  The Securities Trading Order prohibits members of the Committee (present and future, each a **"Member"**) from trading in the securities of the Debtor and its affiliates, unless and until such Member establishes and implements an ethical wall (the **"Ethical Wall"**) in accordance with the terms and conditions of the Securities Trading Order.

8.        Upon request of Magten, and by notice dated November 25, 2003, the Trustee appointed Magten to the Committee.  Magten was represented on the Committee by its 100% principal, Embry.

9.        Once appointed to the Committee, Magten's fiduciary and other common law duties precluded it from trading in the securities of the Debtor and its affiliates, including, without limitation, the QUIPS, except as provided in the Securities Trading Order, which permitted limited trading upon establishment of an Ethical Wall.  Magten, however, could not establish an Ethical Wall because it is 100% owned by Embry.

10.        On December 18, 2003, Embry, as Chairman of, and on behalf of, Magten, executed a Confidentiality Agreement with the Committee (the **"Confidentiality Agreement"**).  Under the Confidentiality Agreement, the Defendants agreed to maintain as confidential all non-public and proprietary information provided by or to the Committee.  In addition, on December 18, 2003, Embry, as Chairman of, and on behalf of, Magten, also executed a confidentiality agreement with the Debtor, pursuant to which

- 4 -

the Defendants agreed to maintain as confidential all non-public and proprietary information provided by the Debtor.

**The NorthWestern Adversary Proceeding**

11.     On or about August 20, 2004, the Debtor filed a complaint against Magten and Embry, thereby commencing the adversary proceeding styled as NorthWestern Corporation v. Magten Asset Management Corporation and Talton R. Embry [Adv. Pro. No. 04-55051-JLP] (the **"NorthWestern Adversary Proceeding"**). The NorthWestern Adversary Proceeding sought subordination of Magten's claims, actual damages and equitable relief, and objected to the Magten Claim, based on Magten's alleged improper trading of the QUIPS while serving as a Member of the Committee.

12.     In the Complaint, the Debtor expressly reserved the right to amend, modify or supplement the Complaint and to object further to the Magten Claim on any and all additional factual or legal grounds.[2]

13.     On or about September 28, 2004, the Defendants filed the Motion of Magten Asset Management and Talton R. Embry to Dismiss the Complaint of NorthWestern Corporation For Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Federal Rule of Civil Procedure 12(b)(6) (the **"Motion to Dismiss"**) in the NorthWestern Adversary Proceeding.

14.     On November 4, 2004, the Court entered a Scheduling Order that set a discovery cut-of date of January 21, 2005, and scheduled trial to commence on February 7, 2005.

---

[2] *See* Complaint, ¶ 55.

15.     On November 8, 2004, the Court entered an order denying the Motion to Dismiss.

16.     In addition, on or about November 17, 2004, Magten, joined by Law Debenture Trust Company of New York (**"Law Debenture"**), filed a Motion and Memorandum in Support of Motion for Stay of Adversary Proceeding Pending Resolution of Motion to Withdraw the Reference to Bankruptcy Court (the **"Motion for Stay"**).

17.     On December 12, 2004, the Court entered an order denying the Motion for Stay as it relates to the NorthWestern Adversary Proceeding.

18.     The parties entered into settlement discussions and proposed settlement terms were negotiated.   The Plan Committee, and Class 7 holders of claims as represented by Harbert Distressed Investment Master Fund, Ltd., have vehemently objected to the proposed settlement.

19.     In reviewing information obtained during the discovery process from the Committee's advisors, Members and Magten, the Debtor has determined that while it can prove that the Debtor provided material non-public information to the Committee's advisors, the discovery produced by the Committee does not clearly establish what information was conveyed to the Members.  As a result, it no longer makes economic sense for the Debtor to continue the NorthWestern Adversary Proceeding.[3]

---

[3] Discovery was not completed, as a result of the proposed settlement.  However, documents produced by the Committee's advisors do not identify what material, non-public confidential information was provided to the Members or when such information was provided.

**The Magten Adversary Proceeding**

20.     On April 16, 2004, Magten and Law Debenture filed their Complaint (the **"Magten Complaint"**) [Adv. Pro. Dkt. No. 1] to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy, LLC) to NorthWestern Corporation, thereby commencing the adversary proceeding styled as Magten Asset Management Corporation & Law Debenture Trust Company of New York v. NorthWestern Corporation [Adv. Pro. No. 04-53324-JLP] (the **"Magten Adversary Proceeding"**).

21.     The Magten Complaint sought, inter alia, to avoid the transfer of assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy) pursuant to what has been referred to in the Debtor's bankruptcy proceedings generally as the "going flat" transaction.

22.     On or about October 4, 2004, Magten and Law Debenture filed their First Amended Complaint to Avoid the Transfer of Assets of Clark Fork and Blackfoot LLC (f/k/a NorthWestern Energy, LLC) (the **"Amended Magten Complaint"**) [Adv. Pro. Dkt. No. 27].

23.     Adjudication of the Magten Adversary Proceeding will essentially serve as a proceeding to determine the validity of the QUIPS Litigation Claim asserted in the Magten Claim, wherein Magten asserts that it is entitled to damages resulting from the alleged fraudulent transfer of the utility assets of NorthWestern Energy, LLC to NorthWestern on November 15, 2002.

NY55/434737.3

24.    On or about November 19, 2004, NorthWestern filed its Answer, Affirmative Defenses and Counterclaims to the Amended Magten Complaint (the **"NorthWestern Answer"**) [Adv. Pro. Dkt. No. 41].

25.    The Debtor's objection to the Magten Claim (the **"Objection"**) is set forth in Count III of the counterclaims in the NorthWestern Answer. The Objection includes both an objection to the QUIPS Litigation Claim[4] as well as an objection to the Magten Claim based on alleged violations of the Securities Trading Order and Confidentiality Agreement.

26.    The Debtor expressly reserved the right to amend, modify or supplement its counterclaims and to further object to the Magten Claim on any and all additional factual or legal grounds.[5]

## SUMMARY OF RELIEF REQUESTED

27.    After reviewing the evidence obtained during discovery and considering the litigation costs to the bankruptcy estate, the Debtor has determined that as a result of its review of the documents produced by the Committee's advisors, it is no longer cost effective to pursue the NorthWestern Adversary Proceeding because the records do not establish when or what material, non-public information the Committee's advisors disclosed to the Committee. The Debtor seeks an order from this Court allowing the Debtor to voluntarily dismiss the NorthWestern Adversary Proceeding, **with prejudice**, pursuant to Rule 7041(a)(2) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**) and Fed. R. Civ. P. 41(a)(2), with each party to bear its own fees and costs.

---

[4] *See* NorthWestern Answer, ¶ 42.

[5] *See* NorthWestern Answer, ¶¶ 41-45, 54.

NY55/434737.3

28.    Further, the Debtor seeks an order granting the Debtor leave to amend the NorthWestern Answer in the Magten Adversary Proceeding and to withdraw its counterclaims asserted therein, while preserving the Objection to the QUIPS Litigation Claim contained in paragraph 42 of the NorthWestern Answer and the Debtor's right to amend or modify the NorthWestern Answer with respect to the Objection to the QUIPS Litigation Claim.

## BASIS FOR RELIEF

### A.  Dismissal of the NorthWestern Adversary Proceeding Will Not Result in Prejudice to the Defendants

29.    The Debtor filed the NorthWestern Adversary Proceeding based on its good faith belief that the Defendants had engaged in inappropriate, and possibly illegal, trading of the Debtor's QUIPS based on confidential, non-public, information about the Debtor that the Defendants allegedly received as a Member of the Committee.

30.    This Court denied the Motion to Dismiss finding that the Debtor had alleged causes of action under F. R. Civ. P. 12(b)(6), made applicable to adversary proceeding by Bankruptcy Rule 7012(b).[6] After assessing the evidence produced by the Committee's advisors, Members and Magten, the Debtor has determined that it is no longer cost effective to pursue the subordination claims asserted in the NorthWestern Adversary Proceeding because the documents produced by the Committee's advisors fail to identify when and what material, non-public information provided by the Debtor to the Committee's advisors was communicated by the Committee's advisors to the Members.

---

[6] *See* Order entered on November 8, 2004 in the NorthWestern Adversary Proceeding [Adv. Pro. Dkt. No. 15].

As a result, the Debtor seeks to voluntarily dismiss the NorthWestern Adversary Proceeding, **with prejudice**, pursuant to Bankruptcy Rule 7041(a)(2).

31.    Pursuant to Fed. R. Civ. P. 41(a)(2), made applicable to adversary proceedings by Bankruptcy Rule 7041(a)(2), when a defendant has filed an answer to a complaint, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Bankruptcy Rule 7041(a)(2); Fed. R. Civ. P. 41(a)(2).

32.    "Courts generally agree that Rule 41(a)(2) motions should be allowed unless defendant will suffer some prejudice other than the mere prospect of a second lawsuit," and the Third Circuit endorses a liberal view toward granting Rule 41(a)(2) dismissals. *See DuToit v. Strategic Minerals Corp.*, 136 F.R.D. 82 (D. Del. 1991); *Reach & Assoc., P.C. v. Dencer*, No. CIV.A. 02-1355, 2004 WL 253487, at *1, 2 (D. Del. Feb. 9, 2004) (citations omitted); *In re Paoli RR. Yard PCB Litig.*, 916 F.2d 829, 863 (3d Cir. 1990).[7]

33.    Further, "[t]he purpose of Rule 41(a)(2) is to prevent [voluntary] dismissals that prejudice an opposing party and to permit the court to impose curative conditions it deems necessary," and, "[o]rdinarily, a court should grant a Rule 41(a)(2) dismissal unless the defendant will suffer plain legal prejudice." *Reach & Assoc., P.C.*, 2004 WL 253487, at *1; *Spring City Corp. v. American Bldgs. Co.*, Nos. CIV.A. 97-8127, 98-105, 1999 WL 1212201, at *1 (E.D. Pa. Dec. 17, 1999).

34.    When determining whether a party will suffer prejudice, the court should consider " 1) 'any excessive and duplicative expense of a second litigation; 2) the effort

---

[7] *See also Westinghouse Elec. Corp. v. United Elec. Radio & Mach. Workers*, 194 F.2d 770, 771 (3d Cir. 1952), *cert. denied*, 343 U.S. 966 (1952); *Ockert v. Union Barge Line Corp.*, 190 F.2d 303 (3d Cir. 1951).

NY55/434737.3

and expense incurred by a defendant in preparing for trial; 3) the extent to which the pending litigation has progressed; and 4) the claimant's diligence in moving to dismiss.'" *See Reach*, 2004 WL 253487, at *1 (quoting *Spring City*, 1999 WL 1212201, at *1).

35.     After assessing the discovery evidence produced by the Committee's advisors, Members and Magten, the Debtor has determined that it is not in the best interest of the Debtor's estate to pursue the NorthWestern Adversary Proceeding.

36.     Because the Debtor seeks approval to dismiss the Adversary Proceeding with prejudice, the Defendants cannot be prejudiced in any way by costs as well as further litigation of the claims and causes of action asserted in the NorthWestern Adversary Proceeding as the Debtor, upon review of the evidence before it, has concluded that dismissal with prejudice is appropriate so as to fully and finally adjudicate the claims and causes set forth in the NorthWestern Adversary Proceeding.

37.     As a result, the Defendants cannot possibly be prejudiced and the relief requested is wholly appropriate.

## B. Granting Leave to Amend the NorthWestern Answer Will Not Prejudice Magten or Law Debenture in Any Way

38.     While dismissing the NorthWestern Adversary Proceeding with prejudice is of importance to both the Debtor and the Defendants, so as to eliminate additional expense and finally adjudicate the claims set forth therein, the Debtor is cognizant of the need to amend the NorthWestern Answer in the Magten Adversary Proceeding to be consistent with the request for dismissal with prejudice and to preserve the Debtor's claim objection to the QUIPS Litigation Claim.

39.     Federal Rule of Civil Procedure 15(a), made applicable to adversary proceedings by Bankruptcy Rule 7015(a), mandates that leave to amend a pleading "shall

- 11 -

be [granted] freely when justice so requires," and that "motions to amend pleadings should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Adams v. Gould Inc.*, 739 F.2d 858, 867-68 (3d Cir. 1984)).

40.    Further, the Supreme Court has stated:

> In the absence of any apparent or declared reason - - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. - - the leave sought should … be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

41.    In addition, the Third Circuit "has often held that, absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless 'denial [can] be grounded in bad faith or dilatory' motive, *truly undue or unexplained delay*, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173 (3d Cir. 1994) (quoting *Bechtel v. Robinson*, 886 F.2d 644, 652-53 (3d Cir. 1989) (emphasis in original).

42.    The burden is placed firmly on the party opposing the amendment to prove that it will be unfairly prejudiced. This is a "heavier burden than merely claiming prejudice, [the party opposing the amendment] must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the [movant's] amendments been timely." *Heyl & Patterson Int'l Inc. v. F.D. Rich Housing of the Virgin Islands, Inc.*, 663 F.2d 419, 426 (3d Cir. 1981); *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000).

43.    The Debtor is seeking leave to amend the NorthWestern Answer in order to withdraw the counterclaims, other than its Objection to the QUIPS Litigation Claim,

- 12 -

asserted therein that are identical to the claims that the Debtor seeks to have dismissed in the NorthWestern Adversary Proceeding.

44.     The Debtor's proposed First Amended Answer, Affirmative Defenses and Withdrawal of Counterclaims to First Amended Complaint does not contain any additional answers, affirmative defenses or counterclaims beyond those alleged in the NorthWestern Answer, thus, neither Magten nor Law Debenture will be prejudiced or burdened if leave is granted.[8]

45.     The Debtor's request for leave is not grounded in bad faith or dilatory motive, and the proposed amendments to the NorthWestern Answer will not result in undue or unexplained delay to either Magten or Law Debenture.

46.     Magten and Law Debenture will not be disadvantaged, prejudiced or burdened if leave is granted to the Debtor to amend the NorthWestern Answer.

### REQUEST FOR RELIEF

47.     Based on the foregoing, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto, (i) allowing the Debtor to voluntarily dismiss the NorthWestern Adversary Proceeding, with prejudice, pursuant to Bankruptcy Rule 7041(a)(2) and Fed. R. Civ. P. 41(a)(2), with each party to bear its own fees and costs, (ii) permitting the Debtor to amend the NorthWestern Answer in the Magten Adversary Proceeding to delete the counterclaims asserted therein, while preserving the Debtor's Objection to the QUIPS Litigation Claim therein,[9] and (iii)

---

[8] A copy of the Debtor's proposed First Amended Answer, Affirmative Defenses and Withdrawal of Counterclaims to First Amended Complaint is attached hereto as Exhibit B. In addition, a copy of the NorthWestern Answer is attached hereto as Exhibit C. A blackline copy of the proposed amended answer comparing it to the NorthWestern Answer is attached hereto as Exhibit D.

[9] *See* NorthWestern Answer, ¶ 42.

NY55/434737.3

preserving the Debtor's right to amend or modify the Objection in the NorthWestern Answer.[10]

## NOTICE

48.    Notice of this Motion has been provided to: (i) the Trustee, (ii) counsel for the Plan Committee, (iii) counsel for Law Debenture, (iv) counsel for Embry, and (v) counsel for Magten.  In light of the nature of the relief requested herein, the Debtor submits that no other or further notice of the Motion is required.

## NO PRIOR REQUEST

49.    No prior request for the relief sought herein has been made to this or any other Court.

[CONCLUDED ON NEXT PAGE]

---

[10] *See* Complaint ¶ 55, wherein the Debtor expressly reserved the right to amend, modify or supplement the Complaint and Objection and to object further to the Magten Claim on any and all additional factual or legal grounds.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court enter an order granting the relief requested herein, substantially in the form attached hereto, or in such other form that the Court may deem appropriate based on the foregoing.

Dated: February 24, 2005

> NORTHWESTERN
> CORPORATION
>
> By its attorneys,
>
> GREENBERG TRAURIG, LLP
>
> By: _____
>
> Scott D. Cousins (No. 3079)
> William E. Chipman, Jr. (No. 3818)
> Dennis A. Meloro (No. 4435)
> The Brandywine Building
> 1000 West Street, Suite 1540
> Wilmington, DE 19801
> (302) 661-7000 (telephone)
>
> - and -
>
> Jesse H. Austin, III, Esquire
> Karol K. Denniston, Esquire
> PAUL, HASTINGS, JANOFSKY
> & WALKER LLP
> 600 Peachtree Street, N.E., 24[th] Floor
> Atlanta, GA 30308
> (404) 815-2400 (telephone)
>
> *CO-COUNSEL FOR REORGANIZED DEBTOR*

NY55/434737.3