

RECEIVED

JUL 18 2005

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

05- 499

James H. Goetz
J. Devlan Geddes
**GOETZ, GALLIK & BALDWIN, P.C.**
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004
(212) 859-8000

ATTORNEYS FOR PLAINTIFF

RECEIVED

MAY 3 1 2005

BROWNING KALECZYC
BERRY HOVEN

## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF MONTANA
### BUTTE DIVISION

-------------------------------------------------------------------x
                          :

MAGTEN ASSET MANAGEMENT CORPORATION,  :
                          :

            Plaintiff,        :  Cause No. CV-04-26-BU-RFC
                          :

        - against -       :  **PLAINTIFF MAGTEN**
                          :  **ASSET MANAGEMENT**
                          :  **CORPORATION'S FIRST**
                          :  **REQUEST FOR PRODUCTION**
MIKE J. HANSON and ERNIE J. KINDT,    :  **OF DOCUMENTS FOR**
                          :  **DEFENDANT MIKE J. HANSON**

            Defendants.     :
                          :
-------------------------------------------------------------- x



EXHIBIT
1

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3, Magten Asset Management Corporation ("Magten" or "plaintiff") requests that defendant Mike J. Hanson produce for examination, inspection and copying at the offices of Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (or at such other place as counsel might agree) at 10:00 a.m. on June 27, 2005 all of the documents described below which are in the possession, custody or control of defendant, or of any persons acting on his behalf.

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1.      The term "defendant," "you" and "your" means or refers to defendant Mike J. Hanson, as well as all persons and/or entities affiliated with defendant, acting in concert with or under the direction of defendant, or purporting to act on defendant's behalf.

2.      "All" means "any and all," and "any" means "any and all."

3.      "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

4.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

1

5.    "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

6.    "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

7.    "Expanets Investment" means all equity investments made in or loans extended to Expanets, Inc. by NorthWestern.

8.    "Guarantee Agreement" shall mean that certain Guarantee Agreement dated as of November 1, 1996, by and between The Montana Power Company as guarantor and The Bank of New York as guarantee trustee and any and all amendments, supplements, revisions and addendums thereto.

9.    "Junior Debentures" means the Junior Subordinated Interest Debentures which The Montana Power Company issued pursuant to its Indenture (For Unsecured Subordinated Debt Securities relating to Trust Securities) dated November 1, 1996.

10.    "Montana Medium-Term Notes Indenture" shall mean that certain Indenture for Unsecured Debt Securities dated December 1, 1989 by and between The Montana Power

2

Company and Citibank, N.A., as trustee and any and all amendments, supplements, revisions and addendums thereto.

11.    "Montana Trustee" shall mean Citibank, N.A. as trustee under the Montana Medium-Term Notes Indenture and any and all predecessors and/or successors in interest thereto.

12.    "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

13.    "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

14.    "QUIPS" means the Series A 8.45% Quarterly Income Preferred Securities issued by Montana Capital Power Trust I pursuant to the Trust Agreement between The Montana Power Company, The Bank of New York, and various other persons dated on or about November 1, 1996.

15.    "QUIPS Indenture" shall mean that certain indenture for Unsecured Subordinated Debt Securities relating to Trust Securities dated November 1, 1996 by and between The Montana Power Company and The Bank of New York, as trustee, and all drafts, amendments, supplements, addendums and revisions thereto including, but not limited to the Second

3

Supplemental Indenture and the Third Supplemental Indenture and the notes that were issued pursuant to such documents.

16.    "QUIPS Trustees" shall mean The Bank of New York as trustee under the QUIPS Indenture, The Bank of New York as property trustee under the Trust Agreement, The Bank of New York as guarantee trustee under the Guarantee Agreement and Ellen M. Senechal, Jerrold P. Pederson and Pamela K. Merrell as administrative trustees under the Trust Agreement, together with any and all predecessors and/or successors in interest thereto.

17.    "Relating to" means, without limitation, consisting of, containing, constituting, concerning, discussing, describing, reflecting, transmitted in connection with, touching upon or summarizing, showing or relating or referring to in any way, directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of, any document called for by each request.

18.    "Second Supplemental Indenture" shall mean that certain indenture dated August 13, 2002 by and between NorthWestern Energy, LLC as successor by merger to The Montana Power Company, NorthWestern, and The Bank of New York, as trustee and all drafts, amendments, supplements, addendums and revisions thereto.

19.    "Third Supplemental Indenture" shall mean that certain indenture dated November 15, 2002 by and between NorthWestern and The Bank of New York as trustee and all drafts, amendments, supplements, addendums and revisions thereto.

20.    "Transfer" means the transfer of the Transferred Assets from Clark Fork to NorthWestern that occurred on or about November 15, 2002. Transfer shall also include any and all strategies for the eventual acquisition and direct ownership of the Transferred Assets by NorthWestern.

4

21.    "Transferred Assets" means those assets that were transferred from Clark Fork to NorthWestern on or about November 15, 2002.

22.    "Trust Agreement" shall mean that certain Amended and Restated Trust Agreement dated as of November 1, 1996, among The Montana Power Company as depositors and The Bank of New York as property trustee, The Bank of New York (Delaware) as Delaware trustee and Ellen M. Senechal, Jerrold P. Pederson and Pamela K. Merrell as administrative trustees and any and all amendments, supplements, revisions and addendums thereto.

## INSTRUCTIONS

1.    Every request shall be answered separately and fully in writing.  If any answer or part of any answer is based upon information and belief rather than personal knowledge, you shall state that it is made on that basis.

2.    If any part of a request is objected to, the reasons for the objection should be stated with particularity.  If an objection is made to part of any item or category, the part should be specified.

3.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

4.    References to the singular shall include the plural, and references to the plural shall include the singular.

5.    The documents covered by this request include all documents in the possession, custody or control of defendant, or any documents that were generated or received by defendant or otherwise came into existence or were utilized by defendant through the date of production.

5

This request also calls for the production of documents kept or maintained by counsel for defendant.

6.    A request for a document shall be deemed to include a request for any transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, and any file folder in which the document was maintained, in addition to the document itself.

7.    A request for a document shall be deemed to include a request for all drafts and successive iterations thereof and all modifications thereto, in addition to the document itself.

8.    If any document is withheld in whole or part on the ground that it is privileged or otherwise not discoverable, state:

       (a)    the date of the document;

       (b)    the name of each person to whom the document is addressed;

       (c)    the name of each person, other than the addressee(s), to whom the document has been sent or shown, or by whom it has been reviewed;

       (d)    the name of each person who signed or authored the document;

       (e)    the title and job description of each person identified in (b), (c), and (d) above;

       (f)    the subject of the document and the number of pages in the document;

       (g)    the specific privilege claimed and the grounds for any such claim; and

       (h)    the name and address of the person who has custody of the document.

9.    If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

10.    All documents requested are to be produced in a form which renders the documents susceptible to copying and examination for content in the language or numerical expression of the original.

11.    Unless otherwise expressly stated, the documents covered by this request include any documents that were generated, crated, circulated, dated or otherwise came into existence during the period of January 1, 2001 to present.

12.    Each request for production of documents herein shall be construed as continuing in nature, requiring supplemental responses if further or different documents responsive to any request are discovered or obtained at any time prior to any judgment on the merits.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents relating to or concerning the Transfer.

### REQUEST NO. 2

All documents that indicate the name, title, and/or acts undertaken with respect to the Transfer, of any employees, officers or directors of Clark Fork or NorthWestern that were involved in the Transfer.

### REQUEST NO. 3

All documents relating to or concerning the value of the Transferred Assets, any analysis performed to value such assets, and/or all communications concerning such valuation.

### REQUEST NO. 4

All documents relating to or concerning the value of any consideration paid or to be paid by NorthWestern to Clark Fork in connection with the Transfer, any analysis performed to value such consideration, and/or all communications concerning such consideration.

7

**REQUEST NO. 5**

  All legal opinions, fairness opinions, appraisals or other third party professional advice given in connection with the Transfer, the Transferred Assets, the QUIPS Indentures, Second Supplemental Indenture, Third Supplemental Indenture, and/or the Montana Medium-Term Notes Indenture, including all drafts of such opinions, appraisals or other third party professional advice.

**REQUEST NO. 6**

  All documents concerning the Trust Agreement and/or Guarantee Agreement.

**REQUEST NO. 7**

  All documents concerning the QUIPS and/or the QUIPS Indenture.

**REQUEST NO. 8**

  All documents concerning the Second Supplemental Indenture.

**REQUEST NO. 9**

  All documents concerning the Third Supplemental Indenture.

**REQUEST NO. 10**

  All documents constituting or concerning any communications involving the QUIPS Trustees, the Montana Trustee and/or NorthWestern concerning the Transfer and/or the Transferred Assets, including, but not limited to, any request for the release of claims against Clark Fork and any purported release of such claims.

**REQUEST NO. 11**

  All applications and/or other documents submitted to regulatory authorities in connection with the Transfer.

**REQUEST NO. 12**

All documents relating to any and all analyses, reports, summaries, opinions, advice or similar evaluations concerning or relating to the financial condition of NorthWestern at any time between 2001 and the present.

**REQUEST NO. 13**

All documents relating to or concerning the publicly issued financial statements for NorthWestern for the fiscal year ended 2001 through the present.

**REQUEST NO. 14**

All documents relating to any and all analyses, reports, summaries, opinions, advice or similar evaluations concerning or relating to the financial condition of Clark Fork at any time between 2001 and the present.

**REQUEST NO. 15**

All documents relating to or concerning the publicly issued financial statements for Clark Fork for the fiscal year ended 2001 through the present.

**REQUEST NO. 16**

All documents concerning any possible or actual restatement of any publicly issued financial statements of Clark Fork and/or NorthWestern including, without limitation, any communications with any governmental agency.

**REQUEST NO. 17**

All documents concerning any analysis performed as of or prior to the date of the Transfer to determine whether following the Transfer NorthWestern would be able to pay its liabilities (including without limitation the liabilities it had assumed with respect to the Junior Debentures and the QUIPS) as they became due in the ordinary course of its business.

**REQUEST NO. 18**

All documents constituting or concerning any instructions given by NorthWestern to any officer, employee or agent of Clark Fork, including without limitation Hanson and Kindt, to execute documents or take other actions in connection with the Transfer.

**REQUEST NO. 19**

All documents concerning any actual or potential write down by NorthWestern of the Expanets Investment.

**REQUEST NO. 20**

All documents concerning the amount of compensation you have received from NorthWestern since the Transfer.

**REQUEST NO. 21**

All operating agreements for Clark Fork, or any other documents setting forth your rights, duties, and/or responsibilities as an officer, employee or agent of Clark Fork.

**REQUEST NO. 22**

All insurance policies referred to in defendants' 26(a)(1) initial disclosures, to the extent not previously provided.

**REQUEST NO. 23**

All documents identified in defendant's responses to Magten's First Set of Interrogatories for Defendant Mike J. Hanson.

**REQUEST NO. 24**

All documents which defendant may use to support his claims and/or defenses, to the

extent not otherwise produced.

Dated: May 25, 2005
New York, NY

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

By: _____

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

- and -

GOETZ, GALLIK & BALDWIN, P.C.
James H. Goetz
J. Devlan Geddes
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

*Attorneys for Plaintiff*
 *Magten Asset Management Corporation*

469134

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing

document was served this 25th day of May, 2005, as indicated below, upon the following:

| | |
|---|---|
| Stanley T. Kaleczyc<br>Kimberly A. Beatty<br>BROWNING, KALECZYC, BERRY & HOVEN, P.C.<br>139 North Last Chance Gulch<br>P.O. Box 1697<br>Helena, MT 59624<br>Tel. (406) 443-6820<br>Fax. (406) 443-6883 | ☒ U. S. Mail<br>☐ Federal Express<br>☐ Hand-Delivery<br>☐ Via Fax:  (406) 443-6883 |

*Brenda E. Cooke*

Brenda E. Cooke



James H. Goetz
J. Devlan Geddes
**GOETZ, GALLIK & BALDWIN, P.C.**
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

RECEIVED

MAY 3 1 2005

BROWNING KALECZYC
BERRY HOVEN

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004
(212) 859-8000

ATTORNEYS FOR PLAINTIFF

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF MONTANA
### BUTTE DIVISION

--------------------------------------------------------------------x
                                  :

MAGTEN ASSET MANAGEMENT CORPORATION,    :

                           Plaintiff,    :    Cause No. CV-04-26-BU-RFC

                                  :

           - against -         :    **PLAINTIFF MAGTEN**

                                  :    **ASSET MANAGEMENT**

                                  :    **CORPORATION'S**

                                  :    **FIRST SET OF**

MIKE J. HANSON and ERNIE J. KINDT,    :    **INTERROGATORIES**

                                  :    **FOR DEFENDANT**

                                  :    **MIKE J. HANSON**

                     Defendants.    :

                                  :

------------------------------------------------------------------ x

**EXHIBIT**

2

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3, Magten Asset Management Corporation ("Magten" or "plaintiff") requests that defendant Mike J. Hanson answer, in writing and under oath, each of the interrogatories set forth below and serve the answers upon Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 on or before June 27, 2005.

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1.    The term "defendant," "you" and "your" means or refers to defendant Mike J. Hanson, as well as all persons and/or entities affiliated with defendant, acting in concert with or under the direction of defendant, or purporting to act on defendant's behalf.

2.    "All" means "any and all," and "any" means "any and all."

3.    "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

4.    "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

5.    "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

1

6.    "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

7.    "Expanets Investment" means all equity investments made in or loans extended to Expanets, Inc. by NorthWestern.

8.    "Identify" when used with respect to:

(a) Documents means to state, unless otherwise specifically instructed, the type of document, the general subject matter, the date of the document and the author(s), addressee(s), recipient(s) and custodian(s) of the document. In lieu of the aforementioned procedure, defendant can provide copies of the documents to Magten;

(b) Persons means to state the name, employer and job title (at the relevant time) of the person. If a person is known to you to be deceased, so state.

9.    "Junior Debentures" means the Junior Subordinated Interest Debentures which The Montana Power Company issued pursuant to its Indenture (For Unsecured Subordinated Debt Securities relating to Trust Securities) dated November 1, 1996.

2

10.    "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

11.    "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

12.    "QUIPS" means the Series A 8.45% Quarterly Income Preferred Securities issued by Montana Capital Power Trust I pursuant to the Amended and Restated Trust Agreement between The Montana Power Company, The Bank of New York, and various other persons dated on or about November 1, 1996.

13.    "Relating to" means, without limitation, consisting of, containing, constituting, concerning, discussing, describing, reflecting, transmitted in connection with, touching upon or summarizing, showing or relating or referring to in any way, directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of, any document called for by each interrogatory.

14.    "Transfer" means the transfer of the Transferred Assets from Clark Fork to NorthWestern that occurred on or about November 15, 2002.  Transfer shall also include any and

3

all strategies for the eventual acquisition and direct ownership of the Transferred Assets by NorthWestern.

     15.    "Transferred Assets" means those transferred assets that were transferred from Clark Fork to NorthWestern on or about November 15, 2002.

## **INSTRUCTIONS**

     1.    Every interrogatory shall be answered separately and fully in writing.  If any answer or part of any answer is based upon information and belief rather than personal knowledge, you shall state that it is made on that basis.

     2.    If any part of an interrogatory is objected to, the reasons for the objection should be stated with particularity.  If an objection is made to part of any item or category, the part should be specified.

     3.    Where a claim of privilege is asserted, the nature of the privilege shall be identified and the following information shall be provided (i) the name of the party making the communication; (ii) the name of all other parties receiving the communication; (iii) the relationship among said parties; (iv) the date and place of the communication; and (v) the general subject matter thereof.

     4.    For each interrogatory, identify all documents upon which you have relied in answering the interrogatory.

     5.    For each person consulted in answering these interrogatories (other than counsel), please provide the person's name, employer, position, a description of the person's duties, and a description of the information provided by the person.

6.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

7.    References to the singular shall include the plural, and references to the plural shall include the singular.

8.    Each interrogatory shall be deemed to be continuing so as to require prompt supplemental responses if further responses or information called for herein is obtained or discovered between the time of responding to these interrogatories and the time of trial, to the full extent provided in Rule 26(e) of the Federal Rules of Civil Procedure.

**INTERROGATORIES**

**INTERROGATORY NO. 1**

Describe each act you performed in connection with the Transfer, identifying any documents executed.

**INTERROGATORY NO. 2**

Describe each act performed by any other officer, employee or agent of Clark Fork in connection with the Transfer, identifying any documents executed and the officer(s), employee(s) or agent(s) involved.

**INTERROGATORY NO. 3**

State the fair market value of the Transferred Assets as of the date of the Transfer and the fair market value of any consideration received by Clark Fork in connection with the Transfer as of the same date.

**INTERROGATORY NO. 4**

Describe the analysis, if any, you performed or relied on as of or prior to the date of the Transfer to determine the fair market value of the Transferred Assets and identify any documents constituting or evidencing such analysis.

**INTERROGATORY NO. 5**

Describe the analysis, if any, you performed or relied on as of or prior to the date of the Transfer to determine the fair market value of any consideration to be received by Clark Fork in connection with the Transfer and identify any documents constituting or evidencing such analysis.

**INTERROGATORY NO. 6**

Describe the analysis, if any, you performed or relied on as of or prior to the date of the Transfer to determine whether following the Transfer NorthWestern would be able to pay its liabilities (including without limitation the liabilities it had assumed with respect to the Junior Debentures and the QUIPS) as they became due in the ordinary course of its business and identify any documents constituting or evidencing such analysis.

**INTERROGATORY NO. 7**

Describe the analysis, if any, you performed or relied on as of or prior to the date of the Transfer to determine whether all of Clark Fork's pre-Transfer creditors would be paid the full amount of Clark Fork's pre-Transfer obligations to them (whether such payment was anticipated to come from Clark Fork, NorthWestern, or some other source) and identify any documents constituting or evidencing such analysis.

**INTERROGATORY NO. 8**

Describe all instructions you were given by NorthWestern to execute documents or take other actions in connection with the Transfer and identify any documents constituting or evidencing such instructions.

**INTERROGATORY NO. 9**

Describe any opinion or advice of any attorney, financial adviser, or other third party which you considered or relied on in carrying out the Transfer and identify any documents constituting or evidencing such opinion or advice.

**INTERROGATORY NO. 10**

Identify all lawyers, investment bankers, accountants, and/or other professional advisors employed by Clark Fork in connection with the Transfer.

**INTERROGATORY NO. 11**

Describe the date on which and circumstances under which you first became aware that any of NorthWestern's publicly-issued financial statements might be materially false and/or misleading.

**INTERROGATORY NO. 12**

Describe the date on which and circumstances under which you first became aware that NorthWestern might be unable to pay its debts in full as they came due in the ordinary course of its business.

**INTERROGATORY NO. 13**

Describe the date on which and circumstances under which you first became aware that NorthWestern might file a voluntary bankruptcy petition.

**INTERROGATORY NO. 14**

Describe the date on which and circumstances under which you first became aware that NorthWestern might need to write down the Expanets Investment.

**INTERROGATORY NO. 15**

Regardless of your belief at the time of the Transfer, state whether you now contend that immediately following the Transfer NorthWestern was, in fact, able to pay its debts in full as they came due in the ordinary course of its business, and if your answer is other than an unqualified negative describe all facts that support that contention.

**INTERROGATORY NO. 16**

Regardless of your belief at the time of the Transfer, state whether you now contend that immediately following the Transfer Clark Fork was, in fact, able to pay its debts in full as they came due in the ordinary course of its business, and if your answer is other than an unqualified negative describe all facts that support that contention.

**INTERROGATORY NO. 17**

Describe all facts that support your contention that Magten was negligent.

**INTERROGATORY NO. 18**

State whether you contend that The Bank of New York and/or any holder of QUIPS as of the date of the Transfer was negligent with respect to the Transfer, and if your answer is other than an unqualified negative describe all facts that support that contention.

**INTERROGATORY NO. 19**

Describe all communications of which you are aware with The Bank of New York and/or Law Debenture Trust Company of New York concerning the QUIPS and/or the Transfer, and identify any documents constituting or evidencing such communications.

**INTERROGATORY NO. 20**

State the date on which you contend that it was publicly announced that NorthWestern

would hold the Transferred Assets in a NorthWestern division rather than through a subsidiary,

and identify any documents showing such public announcement.

**INTERROGATORY NO. 21**

State (broken down by year) the amount of all compensation you have received from

NorthWestern since the Transfer.

**INTERROGATORY NO. 22**

Describe the involvement, if any, of Jack Haffey and Ellen Senechal in the Transfer.

Dated:  May 25, 2005
New York, NY

> FRIED, FRANK, HARRIS, SHRIVER
> & JACOBSON LLP
>
> By: _____
>
> Bonnie Steingart (admitted pro hac vice)
> John W. Brewer (admitted pro hac vice)
> One New York Plaza
> New York, New York 10004-1980
> (212) 859-8000
>
> - and -
>
> GOETZ, GALLIK & BALDWIN, P.C.
>
> James H. Goetz
> J. Devlan Geddes
> 35 North Grand Avenue
> P.O. Box 6580
> Bozeman, Montana 59715
> (406) 587-0618
>
> *Attorneys for Plaintiff*
> *Magten Asset Management Corporation*

469153

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing

document was served this 25th day of May, 2005, as indicated below, upon the following:

| | |
|---|---|
| Stanley T. Kaleczyc<br>Kimberly A. Beatty<br>BROWNING, KALECZYC, BERRY & HOVEN, P.C.<br>139 North Last Chance Gulch<br>P.O. Box 1697<br>Helena, MT 59624<br>Tel. (406) 443-6820<br>Fax. (406) 443-6883 | ☒ U. S. Mail<br>☐ Federal Express<br>☐ Hand-Delivery<br>☐ Via Fax: (406) 443-6883 |

Brenda E. Cooke

10

James H. Goetz
J. Devlan Geddes
**GOETZ, GALLIK & BALDWIN, P.C.**
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

RECEIVED

MAY 3 1 2005

BROWNING KALECZYC
BERRY HOVEN

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004
(212) 859-8000

ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## BUTTE DIVISION

-------------------------------------------------------------------x
| | : | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | : | |
| | : | |
| Plaintiff, | : | Cause No. CV-04-26-BU-RFC |
| | : | |
| - against - | : | **PLAINTIFF MAGTEN** |
| | : | **ASSET MANAGEMENT** |
| | : | **CORPORATION'S FIRST** |
| | : | **REQUEST FOR PRODUCTION** |
| MIKE J. HANSON and ERNIE J. KINDT, | : | **OF DOCUMENTS FOR** |
| | : | **DEFENDANT ERNIE J. KINDT** |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------------ x

EXHIBIT

_3_

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rule 26.3, Magten Asset Management Corporation ("Magten" or "plaintiff") request that defendant Ernie J. Kindt produce for examination, inspection and copying at the offices of Fried, Frank, Harris, Shriver & Jacobson LLP, One New York Plaza, New York, NY 10004 (or at such other place as counsel might agree) at 10:00 a.m. on June 27, 2005 all of the documents described below which are in the possession, custody or control of defendant, or of any persons acting on his behalf.   .

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below:

1.      The term "defendant," "you" and "your" means or refers to defendant Ernie J. Kindt, as well as all persons and/or entities affiliated with defendant, acting in concert with or under the direction of defendant, or purporting to act on defendant's behalf.

2.      "All" means "any and all," and "any" means "any and all."

3.      "Clark Fork" means Clark Fork and Blackfoot, LLC, formerly known as, among other things, NorthWestern Energy, LLC and Montana Power, LLC, and any of its affiliates, subsidiaries, predecessors and any person or entity acting or purporting to act on behalf of, at the direction of or in concert with it, including but not limited to Clark Fork's present and former officers, directors, employees, servants, agents, representatives and attorneys.

4.      "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any medium -- oral, written or otherwise.

1

5.    "Concerning" includes referring to, relating to, embodying, in connection with, commenting on, responding to, showing, demonstrating, declaring, describing, analyzing, reflecting, containing or constituting.

6.    "Document" is used herein in the broadest sense and includes, but is not limited to, all originals, whether printed or handwritten, non-identical copies, copies with marginal notations or interlineations of any writing, recording, photograph, computer data, film, e-mail, video or audio tape (including transcripts or memoranda reflecting or referring to the contents thereof), any written, typewritten or other tangible form of recording or preserving communication or thought (including computerized records of any kind), including any non-identical copy thereof, or any other items containing information of any kind or nature, however produced or reproduced, whatever its origin or location and regardless of the form in which such information exists or is maintained.

7.    "Expanets Investment" means all equity investments made in or loans extended to Expanets, Inc. by NorthWestern.

8.    "Guarantee Agreement" shall mean that certain Guarantee Agreement dated as of November 1, 1996, by and between The Montana Power Company as guarantor and The Bank of New York as guarantee trustee and any and all amendments, supplements, revisions and addendums thereto.

9.    "Junior Debentures" means the Junior Subordinated Interest Debentures which The Montana Power Company issued pursuant to its Indenture (For Unsecured Subordinated Debt Securities relating to Trust Securities) dated November 1, 1996.

10.    "Montana Medium-Term Notes Indenture" shall mean that certain Indenture for Unsecured Debt Securities dated December 1, 1989 by and between The Montana Power

2

Company and Citibank, N.A., as trustee and any and all amendments, supplements, revisions and addendums thereto.

11.    "Montana Trustee" shall mean Citibank, N.A. as trustee under the Montana Medium-Term Notes Indenture and any and all predecessors and/or successors in interest thereto.

12.    "NorthWestern" means NorthWestern Corporation, its affiliates and any parent, subsidiaries, predecessors and successors, and any person or entity acting or purporting to act on behalf of, at the direction of, or in concert with it, including but not limited to NorthWestern's present and former officers, directors, employees, servants, agents, representatives and attorneys; provided, however, that NorthWestern shall not be construed to include Clark Fork, which has been separately defined herein.

13.    "Person" includes any natural person, group, investigatory body, governmental unit, governmental agency or department, corporation, association, partnership, limited partnership, joint venture, sole proprietorship, business, business entity, organization, or institution.

14.    "QUIPS" means the Series A 8.45% Quarterly Income Preferred Securities issued by Montana Capital Power Trust I pursuant to the Trust Agreement between The Montana Power Company, The Bank of New York, and various other persons dated on or about November 1, 1996.

15.    "QUIPS Indenture" shall mean that certain indenture for Unsecured Subordinated Debt Securities relating to Trust Securities dated November 1, 1996 by and between The Montana Power Company and The Bank of New York, as trustee, and all drafts, amendments, supplements, addendums and revisions thereto including, but not limited to the Second

3

Supplemental Indenture and the Third Supplemental Indenture and the notes that were issued pursuant to such documents.

16.    "QUIPS Trustees" shall mean The Bank of New York as trustee under the QUIPS Indenture, The Bank of New York as property trustee under the Trust Agreement, The Bank of New York as guarantee trustee under the Guarantee Agreement and Ellen M. Senechal, Jerrold P. Pederson and Pamela K. Merrell as administrative trustees under the Trust Agreement, together with any and all predecessors and/or successors in interest thereto.

17.    "Relating to" means, without limitation, consisting of, containing, constituting, concerning, discussing, describing, reflecting, transmitted in connection with, touching upon or summarizing, showing or relating or referring to in any way, directly or indirectly, and is meant to include, among other documents, documents underlying, supporting, now or previously attached or appended to, or used in the preparation of, any document called for by each request.

18.    "Second Supplemental Indenture" shall mean that certain indenture dated August 13, 2002 by and between NorthWestern Energy, LLC as successor by merger to The Montana Power Company, NorthWestern, and The Bank of New York, as trustee and all drafts, amendments, supplements, addendums and revisions thereto.

19.    "Third Supplemental Indenture" shall mean that certain indenture dated November 15, 2002 by and between NorthWestern and The Bank of New York as trustee and all drafts, amendments, supplements, addendums and revisions thereto.

20.    "Transfer" means the transfer of the Transferred Assets from Clark Fork to NorthWestern that occurred on or about November 15, 2002. Transfer shall also include any and all strategies for the eventual acquisition and direct ownership of the Transferred Assets by NorthWestern.

4

21.    "Transferred Assets" means those assets that were transferred from Clark Fork to NorthWestern on or about November 15, 2002.

22.    "Trust Agreement" shall mean that certain Amended and Restated Trust Agreement dated as of November 1, 1996, among The Montana Power Company as depositors and The Bank of New York as property trustee, The Bank of New York (Delaware) as Delaware trustee and Ellen M. Senechal, Jerrold P. Pederson and Pamela K. Merrell as administrative trustees and any and all amendments, supplements, revisions and addendums thereto.

## INSTRUCTIONS

1.    Every request shall be answered separately and fully in writing. If any answer or part of any answer is based upon information and belief rather than personal knowledge, you shall state that it is made on that basis.

2.    If any part of a request is objected to, the reasons for the objection should be stated with particularity. If an objection is made to part of any item or category, the part should be specified.

3.    "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this request all responses that might otherwise be construed to be outside of its scope.

4.    References to the singular shall include the plural, and references to the plural shall include the singular.

5.    The documents covered by this request include all documents in the possession, custody or control of defendant, or any documents that were generated or received by defendant or otherwise came into existence or were utilized by defendant through the date of production.



This request also calls for the production of documents kept or maintained by counsel for defendant.

6.      A request for a document shall be deemed to include a request for any transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, and any file folder in which the document was maintained, in addition to the document itself.

7.      A request for a document shall be deemed to include a request for all drafts and successive iterations thereof and all modifications thereto, in addition to the document itself.

8.      If any document is withheld in whole or part on the ground that it is privileged or otherwise not discoverable, state:

      (a)    the date of the document;

      (b)    the name of each person to whom the document is addressed;

      (c)    the name of each person, other than the addressee(s), to whom the document has been sent or shown, or by whom it has been reviewed;

      (d)    the name of each person who signed or authored the document;

      (e)    the title and job description of each person identified in (b), (c), and (d) above;

      (f)    the subject of the document and the number of pages in the document;

      (g)    the specific privilege claimed and the grounds for any such claim; and

      (h)    the name and address of the person who has custody of the document.

9.      If any requested document or other document potentially relevant to this action is subject to destruction under any document retention or destruction program, the document(s) should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this lawsuit or unless otherwise permitted by the Court.

10.    All documents requested are to be produced in a form which renders the documents susceptible to copying and examination for content in the language or numerical expression of the original.

11.    Unless otherwise expressly stated, the documents covered by this request include any documents that were generated, crated, circulated, dated or otherwise came into existence during the period of January 1, 2001 to present.

12.    Each request for production of documents herein shall be construed as continuing in nature, requiring supplemental responses if further or different documents responsive to any request are discovered or obtained at any time prior to any judgment on the merits.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1

All documents relating to or concerning the Transfer.

### REQUEST NO. 2

All documents that indicate the name, title, and/or acts undertaken with respect to the Transfer, of any employees, officers or directors of Clark Fork or NorthWestern that were involved in the Transfer.

### REQUEST NO. 3

All documents relating to or concerning the value of the Transferred Assets, any analysis performed to value such assets, and/or all communications concerning such valuation.

### REQUEST NO. 4

All documents relating to or concerning the value of any consideration paid or to be paid by NorthWestern to Clark Fork in connection with the Transfer, any analysis performed to value such consideration, and/or all communications concerning such consideration.

7

**REQUEST NO. 5**

All legal opinions, fairness opinions, appraisals or other third party professional advice given in connection with the Transfer, the Transferred Assets, the QUIPS Indentures, Second Supplemental Indenture, Third Supplemental Indenture, and/or the Montana Medium-Term Notes Indenture, including all drafts of such opinions, appraisals or other third party professional advice.

**REQUEST NO. 6**

All documents concerning the Trust Agreement and/or Guarantee Agreement.

**REQUEST NO. 7**

All documents concerning the QUIPS and/or the QUIPS Indenture.

**REQUEST NO. 8**

All documents concerning the Second Supplemental Indenture.

**REQUEST NO. 9**

All documents concerning the Third Supplemental Indenture.

**REQUEST NO. 10**

All documents constituting or concerning any communications involving the QUIPS Trustees, the Montana Trustee and/or NorthWestern concerning the Transfer and/or the Transferred Assets, including, but not limited to, any request for the release of claims against Clark Fork and any purported release of such claims.

**REQUEST NO. 11**

All applications and/or other documents submitted to regulatory authorities in connection with the Transfer.

**REQUEST NO. 12**

All documents relating to any and all analyses, reports, summaries, opinions, advice or similar evaluations concerning or relating to the financial condition of NorthWestern at any time between 2001 and the present.

**REQUEST NO. 13**

All documents relating to or concerning the publicly issued financial statements for NorthWestern for the fiscal year ended 2001 through the present.

**REQUEST NO. 14**

All documents relating to any and all analyses, reports, summaries, opinions, advice or similar evaluations concerning or relating to the financial condition of Clark Fork at any time between 2001 and the present.

**REQUEST NO. 15**

All documents relating to or concerning the publicly issued financial statements for Clark Fork for the fiscal year ended 2001 through the present.

**REQUEST NO. 16**

All documents concerning any possible or actual restatement of any publicly issued financial statements of Clark Fork and/or NorthWestern including, without limitation, any communications with any governmental agency.

**REQUEST NO. 17**

All documents concerning any analysis performed as of or prior to the date of the Transfer to determine whether following the Transfer NorthWestern would be able to pay its liabilities (including without limitation the liabilities it had assumed with respect to the Junior Debentures and the QUIPS) as they became due in the ordinary course of its business.

9

**REQUEST NO. 18**

All documents constituting or concerning any instructions given by NorthWestern to any officer, employee or agent of Clark Fork, including without limitation Hanson and Kindt, to execute documents or take other actions in connection with the Transfer.

**REQUEST NO. 19**

All documents concerning any actual or potential write down by NorthWestern of the Expanets Investment.

**REQUEST NO. 20**

All documents concerning the amount of compensation you have received from NorthWestern since the Transfer.

**REQUEST NO. 21**

All operating agreements for Clark Fork, or any other documents setting forth your rights, duties, and/or responsibilities as an officer, employee or agent of Clark Fork.

**REQUEST NO. 22**

All insurance policies referred to in defendants' 26(a)(1) initial disclosures, to the extent not previously provided.

**REQUEST NO. 23**

All documents identified in defendant's responses to Magten's First Set of Interrogatories for Defendant Ernie J. Kindt.

**REQUEST NO. 24**

All documents which defendant may use to support his claims and/or defenses, to the

extent not otherwise produced.

Dated: May 25, 2005
New York, NY

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

By: _____

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

- and -

GOETZ, GALLIK & BALDWIN, P.C.
James H. Goetz
J. Devlan Geddes
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

*Attorneys for Plaintiff*
*Magten Asset Management Corporation*

469880

11

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing

document was served this 25th day of May, 2005, as indicated below, upon the following:

| | |
|---|---|
| Stanley T. Kaleczyc<br>Kimberly A. Beatty<br>BROWNING, KALECZYC, BERRY & HOVEN, P.C.<br>139 North Last Chance Gulch<br>P.O. Box 1697<br>Helena, MT 59624<br>Tel. (406) 443-6820<br>Fax. (406) 443-6883 | ☒ U. S. Mail<br>☐ Federal Express<br>☐ Hand-Delivery<br>☐ Via Fax: (406) 443-6883 |

_Brenda E. Cooke_
Brenda E. Cooke

12