Stanley T. Kaleczyc
Kimberly A. Beatty
Aimee M. Grmoljez
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59604-1697
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| MAGTENASSET MANAGEMENT CORPORATION, | Case No. CV-04-26-BU-RFC |
|---|---|
| Plaintiff, | |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO TRANSFER, OR IN THE ALTERNATIVE, STAY ACTION** |
| MIKE J. HANSON and ERNIE J. KINDT | |
| Defendants. | |

## I.    THE MOTION TO TRANSFER IS TIMELY.

A district court may transfer a case from one proper venue to another if the transfer is convenient to the parties and witnesses or in the interests of justice. *28 U.S.C.A. §1404(a).* Contrary to Magten's assertions, a motion to transfer is <u>not</u> an objection to improper venue under Rule 12(b), and therefore need not be made before an answer is filed[1]. *See e.g., American Standard, Inc. v. Bendix Corp.*, 487 F.Supp. 254, 261 (D.Mo. 1980); *Nowotny v. Turner*, 203 F.Supp. 802 (D.N.C., 1962); *Insurance Co. of North America v. Ozean/ Stinnes-Linien*, 367 F.2d 224, 227 (5th Cir. 1966). A party who has waived objection to improper venue under Rule 12 by failure to timely assert it is therefore <u>not</u> precluded from moving to transfer under §1404(a). *See,*

---

[1] Magtren cites *Fallbrook Pub. Util. Dist. v. U.S. S. Dist. Cal.*, 202 F.2d 942, 944 (9th Cir. 1953) for the proposition that a motion to transfer under §1404(a) is waived if not brought simultaneously with the answer or pre-answer motion. Magten has misread *Fallbrook*. Indeed, *Fallbrook* does not address a §1404(a) transfer at all; but rather relates to the transfer <u>between divisions of one district</u>, and therefore applies §1404(b) and §1406(b).

1

*Montgomery Ward & Co. v. Anderson Motor Serv., Inc.*, 339 F.Supp. 713 (D.Mo. 1971);

*Ferment-Acid Corp. v. Miles Labs, Inc.*, 153 F.Supp. 19, (D.N.Y. 1957).

Section 1404(a) does not dictate a particular time within which to file a motion to

transfer. *Northwest Animal Hospital, Inc. v. Earnhardt*, 452 F.Supp. 191, 194 (W.D. Okla.

1977). Nor does it set a time limit on a party's right to file such a motion. Wright, Miller and

Cooper, *Federal Practice and Procedure: Jurisdiction 2d* §3844, p. 334. Magten's assertion that

Defendants are engaging in "judge-shopping" because of the passage of time between the filing

of the Complaint and the filing of the Motion is scurrilous, inflammatory and unfounded. Such

baseless assertions are contrary to the long-standing preference of waiting to transfer the forum

until a stage in the case when the court may ascertain with certainty that the interests of justice so

dictate. *Farmer Bros. Co. v. Coca-Cola Co.,* 366 F.Supp. 725, 727 (D.Tex. 1973).

Courts have held a defendant's "delay" of up to four years in bringing a motion to

transfer did not render the motion untimely. *See, McFarlin v. Alcoa S.S. Co.*, 210 F.Supp. 793,

795-96 (D.Pa. 1962) ("We do not regard this [a year] delay as a legal waiver or estoppel, for

ultimately decision is to be based on the convenience of the parties and witnesses and the

interests of justice."); *Northwest Animal Hospital, Inc., 45*2 F.Supp. at 194 ("Plaintiffs' argument

that Defendants' delay in bringing this motion until eight months after the action was filed

precludes a transfer fails as Plaintiffs have made no showing that they have been prejudiced by

the delay."); *Apache Products Co. v. Employers Ins. of Wausau*, 154 F.R.D. 650, 657 (1994)

(filing of motion to transfer seven months following initiation of lawsuit); *American Standard,*

487 F.Supp. at 261 (plaintiff's motion to transfer brought four years after initiation of lawsuit

held to be timely because no showing was made that the delay was a dilatory tactic or that

defendant would be prejudiced solely because of the delay). In fact, a court may transfer a case

pursuant to §1404 at any time during the pendency of the case, even if judgment has been entered. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

A defendant's "delay" in making a motion to transfer is not, in itself, sufficient grounds for denying a motion to transfer. *Essex Crane Rental Corp. v. Vic Kirsch Constr. Co.*, 486 F.Supp. 529, 534 (S.D.N.Y. 1980) ("There is no per se rule prohibiting a change of venue merely because a motion to transfer is filed some time after suit is commenced and some progress is made on the pre-trial phase of the case."). The proper analysis is not how much time has passed before bringing the motion, but rather whether the convenience of the parties and witnesses or the interests of justice are served by a transfer of forum. *See, McFarlin*, 210 F.Supp. at 796.

Here, Magten complains the Motion is untimely because it was brought thirteen months after this action was filed. However, the Motion was precipitated by, and is the natural consequence of, the multiple actions filed by Magten in the Delaware courts since service of this Complaint. Magten has filed multiple complaints, adversary proceedings, motions and appeals in an effort to maximize its recovery[2]. On January 13, 2004, Magten filed a Proof of Claim against NorthWestern for the face value of the QUIPS as well as damages from the going flat transaction. On April 16, Magten commenced an Adversary Proceeding against NorthWestern seeking to set aside the transfer of assets which occurred in the going flat transaction. On April 19, Magten filed this litigation. On May 20, Magten sued NorthWestern's legal advisors. On August 9, Magten filed its Objection to NorthWestern's First Amended Plan of Reorganization. On August 25, Magten filed an Objection to NorthWestern's Second Amended Plan of Reorganization. On September 21, Magten filed an Objection to NorthWestern's revised Second

---

[2] *See, Magten's Motion and Brief in Opposition to the Motion to Transfer, or in the Alternative, Stay Action at p.* 17 ("in order to be made whole Magten may need to secure judgments against the various other parties responsible for its injuries, including these defendants, Paul Hastings, and/or the Bank of New York (along with their respective insurers).")

Amended Plan of Reorganization. On October 19, the Bankruptcy Court confirmed

NorthWestern's plan of reorganization and entered the Confirmation Order. On October 22,

Magten requested an emergency hearing to stay the Confirmation Order pending Magten's

anticipated appeal. On October 25, Magten appealed the Confirmation Order. On October 26,

Magten appealed the Bankruptcy Court's Order approving an MOU to settle securities class

action litigation asserted against NorthWestern, despite the Bankruptcy Court's holding that

Magten's objections to the MOU were "fundamentally flawed." Magten's tactics of initiating

litigation continued from 2004 to 2005. For example, on March 17, 2005, Magten appealed the

termination of the proposed global settlement agreement that would have resolved all Magten

litigation[3] and on March 31, 2005, Magten sued the original trustees of the Trust that issued the

QUIPS. Most recently, on April 15, 2005, Magten filed a complaint to revoke the Confirmation

Order.

      One fact emerges from the above recitation of Magten's litigation practices: Defendants'

"delay" was not a tactic, rather, given Magten's activities over the last thirteen months, it has

become clear we have now reached a stage in this case where the Court may ascertain with

certainty that the interests of justice require a transfer of venue. *Farmer Bros., Co., supra.*

      Moreover, despite their vociferous protests, Magten cannot demonstrate prejudice if a

transfer is granted. Discovery is in its infancy; most of the relevant documents and witnesses are

located outside Montana; there are no potential witnesses who could not be compelled to testify

in Delaware but who would be subject to compulsory process in Montana; and, the Delaware

courts are familiar with the facts and circumstances of this case because the transaction that

forms the basis of this litigation is also at the center of the numerous appeals and direct actions

---

[3] In a March 29, 2005 Status Report filed with this Court, Magten states it "continues to believe the prior global settlement is binding and enforceable." *See, Plaintiff's Status Report*, p. 2. If Magten is successful on its appeal,

filed by Magten in Delaware. The Bankruptcy estate will also be impacted by this case as NorthWestern will indemnify Defendants through a D&O Claims Trust created in the bankruptcy proceedings or through insurance policies that may cover any judgment resulting from this proceeding. At this time, because of Magten's unresolved claims against NorthWestern and Magten's multiple litigation matters against NorthWestern and others, NorthWestern's bankruptcy case cannot be closed. Thus, the statements in Magten's Opposition Brief that this case relates only to Defendants, and that its proceedings against NorthWestern are irrelevant (*Opposition Brief*, at p. 8-9), miss the mark.

Further, prejudice is the likely result if this case is <u>not</u> transferred, since the parties and witnesses will be required to litigate the same issues in multiple forums which are 2,500 miles apart. Simply put, the facts and circumstances of this case and Magten's own actions over the preceding thirteen months demonstrate the necessity for the transfer, or in the alternative, the need for one coordinated discovery period for all actions.

## II.    THIS ACTION COULD HAVE BEEN BROUGHT IN DELAWARE.

Venue is proper in Delaware pursuant to 28 U.S.C. §1409(a) as a matter "related to" NorthWestern's bankruptcy. This litigation therefore could have been brought in the District of Delaware. Magten's only argument to the contrary is that the Delaware court would not have personal jurisdiction over the Defendants based upon a traditional minimum contacts analysis. However, contacts with the forum state are relevant "primarily to justify the sovereign's exercise of power in asserting jurisdiction." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F. 3d 935, 947 n. 21 (11th Cir. 1997). Here, the litigation is related to a bankruptcy which is governed by federal law; minimum contacts with the sovereign – the United States – are the relevant contacts. *See, e.g., Stavriotis v. Litwin*, 1986 W.L. 12005 at 3 (N.D.Ill. 1986) ("It

this case will be dismissed and all actions taken in this case will have been for naught.

would seem anomalous to limit nationwide service of process to only those adversary proceedings which are heard by a bankruptcy court. To do so would cause personal jurisdiction to hinge upon whether the district court has withdrawn its reference to the bankruptcy court.") It would also be an anamolous result for Magten to suggest that the Delaware courts do not have jurisdiction over the Defendants here when, in the separate adversary proceeding to revoke confirmation Magten brought against NorthWestern and certain of its present and former officers and directors on April 15, 2005, the Delaware court does have jurisdiction. Indeed, one of the named defendants in Magten's April 15 filing is Mr. Hanson. Moreover, Mr. Hanson had previously submitted himself to the Bankruptcy Court's jurisdiction by his filing a proof of claim in NorthWestern's bankruptcy case, and, has testified on two occasions in the bankruptcy proceedings. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989); In re HQ Global Holdings, Inc., 293 B.R. 839 (Bankr. D. Del. 2003). (In addition, as noted in our opening brief, Mr. Kindt has consented to personal jurisdiction in Delaware.) Likewise, it would be anomalous for §1409(a) to be interpreted as vesting jurisdiction in the Delaware District Court of a matter related to a pending bankruptcy and then snatching that jurisdiction away because the defendants are not residents of that judicial district. Such a result subverts the statutory scheme of §1409 which is designed to place all proceedings arising under or related to a bankruptcy (with the exception noted in §1409(b)) which relate to pre-petition activities of the bankrupt in one forum. *Hoffman v. Blaski*, 363 U.S. 335 (1960), cited by Magten, is thus distinguishable since it did not address the unique interface between §§1404 and 1409.

## III.    THE RELEVANT FACTORS WEIGH IN FAVOR OF TRANSFER.

Whether to transfer an action pursuant to §1404(a) is left to the sound discretion of the trial Court and the propriety of transfer depends upon the facts and circumstances of the

individual case. *Anderson v. Thompson*, 634 F. Supp. 1201, 1204 (D. Mont. 1986) (*citing United States Aluminum Corp. v. Kawneer Co., Inc.*, 694 F.2d 193, 195 (9th Cir. 1982) and *Commodity Futures Trading Comm. v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979)).  A district court faced with duplicative actions should transfer the case to another proper venue for the convenience of parties and witnesses, in the interest of justice, and in order to prevent waste of the public and the parties' resources. *28 U.S.C. § 1404(a)*.  Section 1404(a) reflects an increased desire to have federal civil suits tried in the federal system at the place called for by considerations of convenience and justice. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Thus, a district court is empowered to transfer any civil action in order to prevent the waste "of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. Barge F.B.L.--585*, 364 U.S. 19, 26, 27, (1960).  Courts generally apply and balance a series of factors to determine whether a transfer should be made. *See*, *Anderson*, 634 F.Supp. at 1204; *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

Magten has neither sufficiently rebutted the factors raised in Defendants' opening brief nor demonstrated that Magten will suffer prejudice if this case is transferred to Delaware.  In fact, given all of the other litigation pending in Delaware, Magten should not be heard to complain that Delaware would be an inconvenient forum.  The relative convenience of retaining the case in Montana does not have greater weight than moving the case to Delaware as most all of the witnesses and documents are located on the East Coast.  Magten has failed to show the possible hardship of moving the case to the District of Delaware.  Allegations of hardship "unsupported by particulars by way of proof or affidavit cannot be accorded much weight in balancing conveniences." *Hostetler v. Baltimore & Ohio R. Co.*, 164 F.Supp. 72, 74 (W.D. Pa.

1958).  Magten's emphasis that the plaintiff's choice of forum should rarely be disturbed, has

been called into question by multiple courts, including the *Anderson* court, cited by Magten,

which court ultimately transferred venue from the plaintiff's selected venue to a different venue

more convenient and appropriate.  *See*, Wright, Miller, and Cooper, *Federal Practice and*

*Procedure:  Jurisdiction 2d* § 3848, 242-43 ("it is generally agreed that plaintiff's initial choice

is no longer entitled to the significance which once attached under forum non conveniens

analysis."); *Anderson*, 634 F.Supp. at 1204-05 ("In balancing the factors pertinent to the

proprietary of transferring the present action, the court begins by noting that a plaintiff's choice

of forum should rarely be disturbed. . . . Nonetheless, though venue is invoked under a special

venue provision, a transfer may still be ordered if a preponderance of relevant factors in a

particular case indicates that transfer is appropriate.").  Magten also relies on the fact that venue

should remain in the forum of the state in which the substantive law will be applied.  *Anderson*,

however, instructs that this factor should be given little weight if the substantive law of the two

proposed forums is neither complex, unsettled, nor significantly different.  *Anderson*, 634 F.

Supp. at 1205.  Such is the case here, and thus this factor should be given little weight.

Moreover, judicial economy may be determinative, even if the convenience of the parties

and witnesses might call for a different result. *Regents of the University of California v. Eli Lilly*

*& Co.*, 119 F.3d 1559, (Fed. Cir. 1997).  Section 1404(a) is designed to prevent duplicate trials

of the subject matter. *Minnesota Mining & Mfg. Co. v Technical Tape Corp.*, 123 F. Supp. 497

(D.Ill 1954).  Thus, in many cases the courts, in granting a motion for transfer, have considered

the existence of a pending action involving the same or substantially similar subject matter in the

district to which the transfer was sought. *Aircraft Marine Products, Inc. v Burndy Engineering*

*Co.*, 96 F. Supp. 588, (D.Cal. 1951).  The pendency of an action in another district is important

because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties. *A. J. Industries, Inc. v U. S. Dist. Court for Cent. Dist.,* 503 F2d. 384 (9th Cir. 1974).

The parties will save time, energy and money by transferring the case to Delaware. The District of Delaware is closer in proximity to multiple witnesses and thousands of documents and is the District where multiple related cases are already pending. Because the Delaware courts already face a number of cases, motions and appeals concerning the going flat transaction, this Court's docket should not be burdened with complex commercial litigation factually similar to those other actions pending in another proper venue. Congress enacted §1404(a) to allow courts to avoid exactly the situation present here: given Magten's actions in other courts over the preceding thirteen months, it is an unnecessary waste of private and public resources to continue litigation in this forum. Venue is properly transferred to Delaware.

## IV. DISCOVERY SHOULD BE COORDINATED IN MULTIPLE CASES INVOLVING THE SAME TRANSACTION, WITNESSES AND DOCUMENTS.

A stay of discovery here is necessary to coordinate discovery between and among the multiple related cases so all cases may proceed on one discovery track. Such coordination maximizes the use of resources by the various parties, prevents repetitive discovery directed to parties and non-parties, and precludes multiple depositions of the same witnesses. Contrary to Magten's assertions that all discovery in Delaware has been stayed, it is Defendants' understanding that discovery has not been stayed in the cases involving NorthWestern's legal advisors and the original Trustees of the Trust that issued the QUIPS. Nonetheless, Magten's assertion that all discovery has been stayed highlights two issues: one, Magten is making an end-run around discovery stays in place in the other litigation by pursuing discovery in this closely related case; and two, the best way to maximize the use of judicial and private resources

9

is to stay all discovery in all cases so discovery can proceed on one coordinated track. Additionally, Magten has now served subpoenas upon seven third parties, including CFB, NorthWestern, and its lawyers and consultants retained in the bankruptcy proceedings, requesting not only documents related to the going flat transaction, but also documents related to events that occurred after November 15, 2002 and which are only related to Magten's cases in the stayed Delaware proceedings.

In footnote 11 of its Opposition Brief Magten asserts it is "willing to work in good faith with counsel … to avoid unnecessary duplication of effort." Magten insists, however, that Defendants here should first respond to extensive interrogatories and requests for production, and only then would Magten be willing to "discuss" ways to ensure Defendants are not subjected to multiple depositions. However, these Defendants are certainly witnesses in the other proceedings. If discovery is stayed in those other proceedings, defense counsel in those proceedings are not compelled to attend and participate in depositions here. Unless discovery is stayed and coordinated, the clear result will be the requirement of multiple depositions.

Additionally, if Magten is successful in the appeal of the termination of the proposed global settlement, this case will be dismissed, and any further action, including but not limited to the extensive and expensive discovery Magten has set forth in this case, is unnecessary and only wastes resources. The prudent and most cost-effective procedure is to coordinate discovery among all related cases.

## CONCLUSION

For these reasons, Defendants request the Court transfer this action to Delaware or, in the alternative, stay the action pending coordination of discovery with the Delaware cases.

10

DATED this 16th day of June, 2005.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By _Kimberly Beatty_____
     Stanley T. Kaleczyc
     Kimberly A. Beatty
     Aimee M. Grmoljez

Attorneys for Defendants


## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of June , 2005, a true copy of the foregoing was mailed by first-class mail, postage prepaid, addressed as follows:

Bonnie Steingert
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, NY 10004

James H. Goetz
J. Devlan Geddes
Goetz, Madden & Dunn, P.C.
35 N. Grand
P.O. Box 6580
Bozeman, MT 59771-6580


_____
BROWNING, KALECZYC, BERRY & HOVEN

168926.doc