James H. Goetz
J. Devlan Geddes
**GOETZ, GALLIK & BALDWIN, P.C.**
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, New York 10004
(212) 859-8000

ATTORNEYS FOR PLAINTIFF




05 - 499

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BUTTE DIVISION

------------------------------------------------------------x

MAGTEN ASSET MANAGEMENT CORPORATION,

                Plaintiff,

- against -

MIKE J. HANSON and ERNIE J. KINDT,

                Defendants.

------------------------------------------------------------x

Cause No. CV-04-26-BU-RFC

**PLAINTIFF MAGTEN ASSET MANAGEMENT CORPORATION'S OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER SEEKING TEMPORARY STAY OF DISCOVERY AND REQUEST FOR EXPEDITED CONSIDERATION AND HEARING**

Plaintiff Magten Asset Management Corporation ("Magten") respectfully submits this Opposition to Defendants' motion for protective order seeking temporary stay of discovery and request for expedited consideration and hearing (the "Motion for Protective Order").

## PRELIMINARY STATEMENT

Just a few short weeks after presenting a consensual discovery schedule to this Court for its approval, defendants have demanded that no discovery take place for an indefinite period while the Court is considering their untimely motion to transfer this action to the District of Delaware. This case is now over a year old and defendants have yet to provide any discovery, despite losing two dispositive motions. This latest motion simply confirms that they are seeking delay for its own sake. The pendency of their transfer motion provides no basis for the relief sought: Magten would be entitled to exactly the same discovery if the case were pending in Delaware. Indeed, defendants admit that, were the case to be transferred to Delaware, they would ask the judge there for a further discovery stay. In order to protect the discovery schedule the Court itself has just ordered with the defendants' consent, this motion should be denied, and defendants required to respond to Magten's interrogatories and document requests on or before August 1, 2005.[1]

---

[1] Defendants separately moved for an extension of time to respond to Magten's discovery requests, claiming that the fourteen-day extension Magten had offered was inadequate and being unwilling to pursue Magten's offer to negotiate a longer extension. The Court granted that motion on June 13, 2005, before Magten's time to respond under Local Rule 7.1(e) had expired. The order entered by the Court (which was drafted by defendants' counsel) is somewhat ambiguously worded. Magten presumes that the Court's intention was to give defendants until August 1, 2005 to respond. (Saturday July 30 is 60 days, plus three for initial service by mail, from May 25, 2005, the date Magten served its discovery on defendants). To the extent this order were construed to give defendants 60 days after this Court's ruling on the transfer motion it would in effect have granted defendants' stay motion sub silentio, and without giving Magten an opportunity to be heard.

1

## FACTUAL BACKGROUND RELEVANT TO THE MOTION

Magten is a creditor of Clark Fork and Blackfoot LLC ("Clark Fork"), formerly known as NorthWestern Energy, LLC, and prior to that known as The Montana Power Company LLC. Cplt. ¶¶ 23, 27, 39, 48. Clark Fork is an LLC incorporated under the laws of the state of Montana, and Hanson and Kindt were senior officers of Clark Fork as of November 2002. Cplt. ¶ 9. At that time, they agreed to give away substantially all of Clark Fork's assets -- located in Montana and representing the utility assets of the former Montana Power Company -- without receiving adequate compensation. Cplt. ¶¶ 1, 3, 5. Specifically, by a transaction occurring on November 15, 2002 (the "Transfer") Hanson and Kindt caused Clark Fork to give these key assets — electric, natural gas and propane utility assets (the "Transferred Assets") — to its corporate parent NorthWestern for hundreds of millions of dollars less than they were worth. Cplt. ¶ 31. This fraudulent Transfer authorized by Hanson and Kindt benefited Clark Fork's 100% equity owner NorthWestern at the expense of Clark Fork's creditors. Cplt. ¶¶ 26, 44. Clark Fork was immediately rendered insolvent and unable to meet its obligations to creditors, including its obligations to the holders of the so-called "QUIPS" (Quarterly Income Preferred Securities) originally issued by an affiliate of the former Montana Power Company. Cplt. ¶¶ 33, 36. (Plaintiff Magten is a holder of QUIPS.) Defendants Hanson and Kindt, as officers of Clark Fork, had a fiduciary duty under Montana law to Clark Fork's creditors not to engage in transactions that would render Clark Fork insolvent. Cplt. ¶ 47. In connection with the Transfer, Clark Fork purported to have NorthWestern assume Clark Fork's liabilities, but NorthWestern's other liabilities were so massive that, even after paying inadequate consideration to Clark Fork for the Transferred Assets, NorthWestern could not pay its own creditors, and filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Cplt. ¶¶ 31, 42. Hanson and Kindt

likewise violated their fiduciary duties under Montana law by purporting to assign Clark Fork's obligations to its creditors to NorthWestern when they knew or should have known that NorthWestern would be unable to satisfy those obligations, thus injuring the creditors. Cplt. ¶¶ 35, 51.

As a result of Hanson and Kindt's actions, Magten is now owed approximately $40 million by a Montana company which defendants rendered unable to meet its obligations.

Magten commenced this action against defendants Hanson and Kindt in this Court on April 19, 2004. The Court thereafter denied both a motion to dismiss for failure to state a claim and a motion for summary judgment in favor of defendants, concluding that the complaint stated a claim and that there were genuine issues of material fact. On April 22, 2005 the parties conferred pursuant to Rule 26(f) and negotiated and reached agreement on a discovery plan which required all fact discovery to be completed by the end of January 2006. Declaration of John W. Brewer dated June 20, 2005 ("Brewer Decl.") ¶ 3. On May 3, 2005 the parties filed their written report regarding the stipulated discovery plan with the Court. Brewer Decl. ¶ 5. On May 17, 2005 defendants filed a motion to transfer.[2] On May 24, 2005, pursuant to Rule 16(b), a pretrial scheduling conference was held with the Court and the Court approved the proposed discovery dates that the parties jointly submitted in the report on May 3, 2005. Brewer Decl. ¶ 6. Defendants did not disclose to the Court at that conference that they would refuse to provide discovery in light of their transfer motion, nor had they previously informed Magten that they were taking that position. Brewer Decl. ¶ 6. The Court entered a scheduling order consistent with the parties' joint report on May 25, 2005.

---

[2] Defendants filed their notice of motion to transfer on May 17, 2005, and filed their brief and documents in support of the motion on May 19, 2005.

3

## ARGUMENT

I. **DEFENDANTS' PENDING TRANSFER MOTION PROVIDES NO BASIS FOR A AN OPEN-ENDED STAY OF DISCOVERY**

Defendants' request for an open-ended stay of discovery is unsupported by both fact and law. While defendants do not articulate the Federal Rule of Civil Procedure which is the basis of their motion, Rule 26 governs discovery and subdivision (c) specifically provides that the court may issue a protective order "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed. R. Civ. P. 26(c). However, motions for a protective order which seek to prohibit or delay discovery are not favored. *See Kron Med. Corp., v. Groth*, 119 F.R.D. 636, 637 (M.D.N.C. 1988), *citing Medlin v. Andrew*, 113 F.R.D. 650, 652-53 (M.D.N.C 1987).

In moving for a protective order, the burden is on defendants to show some plainly adequate reason for the order. *See* Fed. R. Civ. P. 26(c); *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D.Nev. 1989). Specifically, "[a]ll motions under these subparagraphs of the rule must be supported by 'good cause'...." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir., 1975) *quoting* 4 J. Moore, *Federal Practice* para. 26.69 at pp. 26-494 – 26-495 (2d ed. 1974); *see also* Fed. R. Civ. P. 26(c); *Pacific Lumber Co. v. National Union Fire Ins. Co., of Pittsburgh, PA*, 220 F.R.D. 349, 351 (N.D.Cal. 2003) ("the Federal Rules provide that good cause is required in order for a party to obtain a protective order"); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D.Cal. 1990). Moreover, "[c]ourts have insisted on a particular and specific demonstration of fact, as distinguished from conclusory statements, in order to establish good cause." *See Twin City*, 124 F.R.D. at 653. *See also Kamp Implement Co., Inc. v. J.I. Case Co.*, 630 F. Supp. 218, 219 (D. Mont. 1986) ("...courts generally require a particular and specific demonstration of fact as opposed to conclusory or speculative

statements."); *Tomar Elecs., Inc. v. Whelen Techs., Inc.*, 819 F. Supp. 871, 877 (D.Ariz. 1992) (denying defendants' request for stay because "[d]efendant [had] provided few facts and no applicable law upon which [the court] could rely in granting [the] motion").

Defendants have utterly failed to show why the pendency of their untimely transfer motion should prevent discovery from proceeding.[3] This is not a situation in which a pending motion would, if granted, lead to dismissal of the case and render any discovery taken in the interim worthless.[4] Rather, if the case were transferred to Delaware, Magten would now be entitled to proceed with discovery in that forum, and would have issued the exact same discovery requests. Thus, "[t]he mere filing of a motion to transfer pursuant to Section 1404(a) does not constitute grounds for staying discovery pending resolution of the motion and the Court should not grant a stay absent a solid showing of good cause." *Kron*, 119 F.R.D. at 638.

Defendants cannot make that showing of good cause. They can only argue (Def. Br. at 3, 9-10) that this court should first assume that it will grant their untimely transfer motion and then assume that a judge in Delaware would grant them another open-ended discovery stay.[5] This

---

[3] As set forth in Magten's opposition to the transfer motion it filed with the Court on June 2, 2005, the transfer motion is not only meritless it is also barred as untimely under controlling Ninth Circuit precedent (*Fallbrook Pub. Util. Dist. v. U.S. S. Dist. Cal.*, 202 F.2d 942 (9th Cir. 1953)), because defendants waived any objection to venue in this district by failing to raise the issue in their initial 12(b) motion. Moreover, the cases defendants' rely on in their reply to Magten's opposition to the transfer motion on this point are not controlling precedent as they are district court cases from outside the Ninth Circuit. Def. Reply Br. at 1.

[4] Thus, defendants cite *Little v. City of Seattle*, 863 F.2d 681 (9th Cir. 1988) for the uncontroversial assertion that "[t]he Ninth Circuit has also repeatedly held that a district court has wide discretion in controlling discovery," Def. Br. at 8, but *Little* involved not only a pending motion to dismiss but one raising the substantive defense of immunity from suit. Here, Magten has already refrained from seeking to commence discovery while defendants pursued not one but two potentially dispositive motions which the Court denied.

[5] To the extent defendants argue (Def. Br. at 7, 11) that discovery is inappropriate because it will be irrelevant if and when Magten succeeds in enforcing the prior global settlement agreement which NorthWestern (at the direction of defendant Hanson) has reneged on, they are simply adding insult to injury. There is no reasonable basis for providing defendants with the benefits of that settlement (including

5

sort of multi-step speculation is the polar opposite of the "particular and specific demonstration of fact, as distinguished from conclusory statements" required for a discovery stay. *See Kamp*, 630 F. Supp. at 219; *Twin City*, 124 F.R.D. at 653. *See also Tomar Elecs.*, 819 F. Supp. at 877.[6] Indeed, the speculative claim that a Delaware judge would likely grant a further stay following transfer is particularly dubious given that discovery has now started in one of the actions pending there. Brewer Decl. ¶ 9 & Exh. A.

By contrast, the open-ended stay defendants seek will both prejudice plaintiff and undermine the schedule the Court has ordered. As another court has observed in similar circumstances:

> Disruption or prolongation of the discovery schedule in this case is normally in no one's interests. A stay of discovery duplicates costs because counsel must reacquaint themselves with the case once the stay is lifted. Matters of importance may be mislaid or avenues unexplored. A case becomes more of a management problem to the Court when it leaves the normal trial track. While time may heal some disputes, in others it merely permits more opportunity for festering.

*Kron*, 119 F.R.D. at 638.

Defendants' lack of good cause for an open-ended stay is further underscored by their gamesmanship in belatedly raising this issue. When the parties conferred in April as required by Rule 26(f), Magten believed defendants had agreed to a consensual discovery schedule. Indeed, Magten agreed to a lengthier discovery schedule than it believed was necessary in order (so it

---

freedom from the need to provide discovery or otherwise participate in litigation) while Magten has not received any of the benefits for which it bargained in the settlement.

[6] *Goodman v. Fleischmann*, 364 F. Supp. 1172 (E.D.Pa. 1973) and *LaBrier v. A.H. Robins Co., Inc.*, 551 F. Supp. 53 (D.D.C. 1982), which defendants cite, involve dramatically different circumstances. In *Goodman* the issue was whether the parties were entitled to take discovery in connection with litigating the transfer motion itself, and the court found that no discovery was needed to decide that motion. *See Goodman*, 364 F. Supp. at 1176. In *LaBrier* the court granted the transfer motion and as a result, briefly stayed discovery while the case was being transferred from its docket to that of the transferee court. *See LaBrier*, 551 F. Supp. at 57.

6

thought) to have a consensual resolution and avoid the need to seek the Court's intervention. Brewer Decl. ¶ 3. Had defendants revealed that they would not abide by the agreed discovery schedule but immediately seek an open-ended stay, Magten could have asked the Court to resolve that issue at the 16(b) conference held on May 24. Instead, both Magten and the Court were misled by defendants' silence into believing that there were no disputes with respect to the discovery schedule.

## II. MAGTEN'S DISCOVERY REQUESTS ARE APPROPRIATE IN SCOPE AND DEFENDANTS HAVE NOT SOUGHT TO MEET AND CONFER WITH RESPECT TO ANY SPECIFIC OBJECTIONS THEY MAY HAVE TO SPECIFIC REQUESTS

Defendants' claims that the discovery requests Magten has served seek information not relevant to this action are both false and procedurally misplaced. If defendants (or a third party served with a subpoena) have a good faith basis for contending that specific requests (or portions thereof) are unduly burdensome or not calculated to lead to admissible evidence, they have the right to object to those specific requests or portions of requests while providing appropriate responses to Magten's remaining discovery requests. Fed. R. Civ. P. 33(b)(1), 34(b). A refusal to provide any discovery whatsoever is not an appropriate remedy for such a concern, and again simply confirms that defendants are seeking delay for its own sake. Notably, defendants have not contacted Magten's counsel to discuss any of their supposed relevance objections to specific requests, and have not attempted to resolve any such concerns consensually through the meet-and-confer process. Brewer Decl. ¶ 7.[7] It is thus clear that providing any discovery whatsoever on any agreed schedule would undermine their chosen strategy of indefinite delay.

---

[7] Magten's counsel have been contacted by representatives of some of the third parties on whom subpoenas have been served, and have indicated to those third parties a willingness to negotiate with respect both as to the scope of the subpoena and as to potential extensions of the response date. Brewer Decl. ¶ 8.

7

Moreover, defendants' claim, in a conclusory manner, that with respect to Magten's discovery requests, the only thing that could be relevant to defendants' liability is what defendants actually personally knew or did not know on the date of the transaction, thereby rendering many of Magten's discovery requests irrelevant (because, e.g., they seek documents which might have been created in the months after the specific date the transaction closed, or were not seen contemporaneously by defendants). Defendants cite no authority for their contention that actual lack of personal knowledge of certain facts would provide them with a bulletproof liability defense. Defendants are being sued for breach of fiduciary duty because, under the circumstances, as Clark Fork's officers they had a fiduciary duty to Clark Fork's creditors not to render Clark Fork insolvent, especially without ensuring that another solvent entity would assume Clark Fork's obligations to those creditors. Cplt. ¶¶ 1, 47, 50-51.[8]

As fiduciaries, defendants cannot justify their conduct based on inaction and ignorance. Rather, fiduciaries have an affirmative obligation to conduct due diligence into the bona fides of proposed transactions to the extent it is reasonable under the circumstances to do so. *See, e.g., Delano v Kitch* 663 F2d 990, 995 (10th Cir. 1981), (controlling shareholders of corporation would violate their fiduciary duties to minority shareholders if they knew or should have known prospective purchasers of controlling interest would be likely to mismanage corporation or loot assets), *cert denied* 456 US 946; *Salahutdin v. Valley of Cal., Inc.*, 24 Cal. Rptr. 2d 463, 467 (broker "has a fiduciary duty to investigate the material facts of the transaction, and…cannot accept information received from others as being true, and transmit it to the principal…"). *See also Kloss v. Edward D. Jones & Co., et al.*, 310 Mont. 123 (2002) (as fiduciaries, defendants

---

[8] *Cf. Jewel Recovery, L.P. v. Gordon*, 196 B.R. 348, 354 (N.D. Tex. 1996) (citations omitted) ("[W]hen a corporation becomes insolvent, the assets of the corporation become a trust for the benefit of the corporation's creditors. The corporate directors then hold a fiduciary duty as trustees to protect the assets for the creditors. The breach of that duty gives rise to a claim that can be pursued by the creditors.").

8

had affirmative obligation to explain effect of contract's arbitration provisions to plaintiff). Many of Magten's discovery requests are aimed at eliciting details of what, if any, due diligence Hanson and Kindt actually performed before they permitted NorthWestern to loot Clark Fork of hundreds of millions of dollars of value to the detriment of Clark Fork's creditors. *See, e.g.*, Def. Br., Exhs. 1 & 3 (Requests for Production Nos. 3-5, & 17); Def. Br., Exhs. 2 & 4 (Interrogatory Nos. 1, 4-8, & 9). If, as Magten suspects, Hanson and Kindt conducted essentially no inquiry into the bona fides of the transaction before approving it, Magten will be entitled to establish at trial what information a reasonable inquiry would have revealed to them, so that the jury may impute that information to them for purposes of determining whether they breached their fiduciary duties.

Thus, to the extent others did inquire into subjects such as the value of the assets transferred, the value of the consideration provided for those assets, NorthWestern's solvency, and the circumstances which subsequently led NorthWestern to confess that the financial results it had publicly reported as of the date of the transaction were materially false and misleading, discovery into the conclusions others reached on those subjects (whether before the date of the transaction or shortly thereafter) is reasonably calculated to lead to admissible evidence of what Hanson and Kindt could have and should have known had they conducted the reasonable affirmative inquiry which their fiduciary duties required.[9] It is possible that Magten's need for discovery into some of these areas might be obviated if the defendants were willing to stipulate to certain facts, but defendants' counsel advised Magten's counsel at the 26(f) conference that they considered discussion of such stipulations premature until some discovery had taken place. Brewer Decl. ¶ 4.

---

[9]   *See, e.g.*, Def. Br., Exhs. 5-11 (Requests for Production Nos. 3-4, 12-13, & 16-17).

9

Defendants also claim that Magten's attempts to take discovery in this case consistent with the schedule this Court has ordered constitute an "end-run" of a discovery stay in place in certain litigation pending in Delaware. Defs. Br. at 4, 10. There is no dispute that, to the extent some of the Delaware litigation involves the same transaction as this action (albeit with claims against different defendants on different liability theories) there will necessarily be some overlap in the relevant evidence and thus the scope of permissible discovery. But the fact that discovery sought in one action might also be relevant to another action does not somehow render it off-limits to discovery in the first action as long as there is a legitimate need for it there. *See Dove v. Atlantic Capital Corp.* 963 F.2d 15, 19 ( 2d Cir. 1992) ("[W]here the discovery sought is relevant to a good faith defense in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order"); *Cipollone v. Liggett Group Inc.*, 113 F.R.D. 86, 91 (D.N.J. 1986) ("So long as the initial litigation has not itself been instituted in bad faith for the purpose of obtaining documents for other actions, and so long as the interests of those represented in the initial litigation are being fully and ethically prosecuted, the Federal Rules do not foreclose the collaborative use of discovery"), mandamus denied, 822 F.2d 335 (3d Cir.), cert. denied, 484 U.S. 976 (1987).[10]

---

[10]   Defendants cite *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) for the proposition that certain aspects of Magten's discovery requests are irrelevant, and defendants' main contention is that the information Magten seeks may also serve a dual purpose and assist Magten in the actions pending in other jurisdictions. Defs. Br. at 9. However, *Oppenheimer* does not address discovery requests that may have a dual use. Instead, *Oppenheimer* deals with information that is deemed wholly irrelevant under Rule 26 from the outset. *Id.* at 352, ("Respondents' attempt to obtain the class members' names and addresses cannot be forced into the concept of "relevancy" described above. The difficulty is that respondents do not seek this information for any bearing that it might have on issues in the case.")

In fact, *Oppenheimer* actually strengthens Magten's argument in this present motion because the Court went on to state that "[t]he key phrase in this definition [in FRCP 26]—'relevant to the subject matter involved in the pending action'--has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* Therefore, defendants are wrong in their assertion that much of the information sought by Magten is not relevant because it does not target the issue of the defendants' personal knowledge at the time of the Transfer (as discussed on pages 7-9, *supra*, this is apparently the only issue defendants believe Magten is

10

Magten has deliberately refrained from seeking any discovery in this case that would be relevant in any of the cases pending in Delaware but not in this case. For example, one of the issues in one of the adversary proceedings pending in Delaware is compliance by NorthWestern and others with the Public Utilities Holding Companies Act of 1935, 15 U.S.C. § 79 ("PUHCA"). Brewer Decl. ¶ 10 & Exh. B at ¶¶ 4-9, 36-41, & 71-75. However, Magten has not served any discovery in this action requesting documents discussing PUHCA compliance. Likewise, the discovery Magten has served against The Bank of New York in a Delaware state court action seeks a number of items not relevant to this action; Magten's subpoena to The Bank of New York in this action does not request those items. *See* Def. Br. Exhs. 8; *cf.* Brewer Decl. ¶ 9, Exh. A. For example, the discovery in Delaware state court seeks documents relating to "Northwestern's 2002 Credit Facility" (defined as the senior secured credit facility by and between Northwestern and Credit Suisse First Boston on or about January 14, 2002) as well as documents relating to the "Touch America Credit Facility" (defined as Touch America's November 8, 2000, $400 million Senior Secured Credit Facility). *See* Brewer Decl. ¶ 9, Exh. A. Magten has not served any discovery in this action requesting documents discussing NorthWestern's 2002 Credit Facility or the Touch America Credit Facility.

As noted above, discovery has now commenced in one of the cases pending in Delaware. Magten remains willing to discuss with any interested party (whether these defendants, the parties to the various actions in Delaware, or third parties who may possess discoverable information) any practical proposals to eliminate unnecessary duplication and burden that might

---

entitled to discovery about). To the contrary, Magten's discovery is clearly relevant to what defendants knew or should have known at the time of the Transfer. For example, it is clear that defendants, in the exercise of due diligence, would be expected to first consult with "lawyers, investment bankers, accountants and/or professional advisors employed by Clark Fork in connection with the Transfer." *See* Def. Br. Exhs. 2 & 4 (Interrogatory Nos. 9, 10 & 19); Def. Br. Exhs. 1 & 3 (Requests for Production Nos. 5, 10, 12, 14 & 19).

11

be created by the overlap between discovery relevant in this action and discovery relevant in the actions pending in Delaware. Defendants' self-serving proposal to avoid duplication by simply barring *all* discovery for an indefinite time, however, is not a serious attempt to address that issue, but simply another step in their strategy of delay.

It is time for that strategy to be finally rejected by this Court, and discovery to proceed on the schedule the Court (without objection from defendants and in fact with their affirmative consent) has ordered.

## CONCLUSION

For the reasons set forth above, defendants' motion for protective order seeking temporary stay of discovery and request for expedited consideration and hearing should be denied and defendants should be required to respond to plaintiff's discovery requests on or before August 1, 2005. A proposed form of order is submitted herewith.

RESPECTFULLY SUMITTED this 20th day of June, 2005

GOETZ, GALLIK & BALDWIN, P.C.

By: _____

for James H. Goetz
J. Devlan Geddes
35 North Grand Avenue
P.O. Box 6580
Bozeman, Montana 59715
(406) 587-0618

- and -

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

By: _____

Bonnie Steingart (admitted pro hac vice)
John W. Brewer (admitted pro hac vice)
One New York Plaza
New York, New York 10004-1980
(212) 859-8000

*Attorneys for Plaintiff*
  *Magten Asset Management Corporation*

470808

13

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing document was served this 20th day of June, 2005, as indicated below, upon the following:

| | |
|---|---|
| Stanley T. Kaleczyc<br>Kimberly A. Beatty<br>BROWNING, KALECZYC, BERRY & HOVEN, P.C.<br>139 North Last Chance Gulch<br>P.O. Box 1697<br>Helena, MT 59624<br>Tel. (406) 443-6820<br>Fax. (406) 443-6883 | ☒ U. S. Mail<br>☐ Federal Express<br>☐ Hand-Delivery<br>☐ Via Fax: (406) 443-6883 |

_____
Devlan Geddes