## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN CORPORATION, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> :    C.A. No. 04-1494-JJF <br> : <br> : <br> : <br> : |
| MAGTEN ASSET MANAGEMENT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> PAUL HASTINGS JANOFSKY & WALKER, LLP, <br><br> Defendant. | : <br> : <br> : <br> : <br> :    C.A. No. 04-1256-JJF <br> : <br> : <br> : <br> : |
| MAGTEN ASSET MANAGEMENT CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> MIKE J. HANSON and ERNIE J. KINDT, <br><br> Defendants. | : <br> : <br> : <br> : <br> :    C.A. No. 05-0499-JJF <br> : <br> : <br> : <br> :: |

**OPPOSITION OF PLAINTIFFS MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK TO NORTHWESTERN CORPORATION'S MOTION FOR A PROTECTIVE ORDER AND JOINDER OF PAUL HASTINGS JANOFSKY & WALKER LLP THERETO**

Dated:  February 13, 2006

Dale R. Dubé (I.D. No. 2863)
Elio Battista, Jr. (I.D. No. 3814)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 425-6400
Facsimile:   (302) 425-6464

-and-

Bonnie Steingart
Gary L. Kaplan
John W. Brewer
FRIED, FRANK, HARRIS, SHRIVER
   & JACOBSON LLP
One New York Plaza
New York, NY 10004-1980
Telephone:   (212) 859-8000
Facsimile:   (212) 859-4000

Counsel for Magten Asset Management
   Corporation in Actions number 04-1494 (JJF)
      and 05-0499 (JJF)

David A. Jenkins (I.D. No. 932)
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Telephone:   (302) 652-8400
Facsimile:   (302) 652-8405

-and-

Bijan Amini
Avery Samet
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017-2131
Telephone:   (212) 490-4100
Facsimile:   (212) 490-4208

Counsel for Magten Asset Management
   Corporation in Action 04-1256

Kathleen M. Miller (I.D. No. 2898)
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Telephone:   (302) 652-8400
Facsimile:   (302) 652-8405

-and-

John V. Snellings
Amanda D. Darwin
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
Telephone:   (617) 345-1000
Facsimile:   (617) 345-1300
Counsel for Law Debenture Trust Company
    of New York

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ...................................................................................................3

ARGUMENT .......................................................................................................6

    A.    Discovery Should Not Be Limited As Proposed by NorthWestern.......................7

    B.    Discovery in the Hanson & Kindt Action Cannot be Limited as
        Requested by NorthWestern's Motion for Protective Order..................................12

    C.    Discovery in the Paul Hastings Action Cannot be Limited as
        Requested by NorthWestern's Motion for Protective Order..................................13

    D.    NorthWestern Has an Obligation to Defend the NorthWestern Action ...............14

CONCLUSION....................................................................................................16

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Cipollone v. Liggett Group,*
    785 F.2d 1108 (3d Cir.1986)......................................................................6

*Glenmede Trust Co. v. Thompson,*
    56 F.3d 476 (3d Cir. 1995)......................................................................6

*Pansy v. Borough of Stroudsburg,*
    23 F.3d 772 (3d Cir. 1994)......................................................................6

*Shingara v. Skiles,*
    420 F.3d 301 (3d Cir. 2005)......................................................................6

### RULES

Fed.R.Civ.P. 12(b)(6)......................................................................13

Fed.R.Civ.P. 26(b)......................................................................8

Fed.R.Civ.P. 26(c)......................................................................6

Fed.R.Civ.P. 26(d)......................................................................5

Fed.R.Civ.P. 26(f)......................................................................passim

Fed.R.Civ.P. 34(b)......................................................................8

120087.01600/40159922v.1

Plaintiffs Magten Asset Management Corporation ("Magten") and Law Debenture Trust

Company of New York, in its capacity as Indenture Trustee for the QUIPS ("Law Debenture"),

respectfully submit this opposition (the "Opposition") to NorthWestern Corporation's

("NorthWestern") motion for a protective order (the "Motion for Protective Order") and Paul

Hastings Janofsky & Walker LLP's ("Paul Hastings") joinder thereto, in connection with the

above-captioned actions (the "Actions").

## PRELIMINARY STATEMENT

NorthWestern's latest litigation tactic – the filing of the Motion for a Protective Order –

is nothing more than a transparent effort to further delay the resolution of the Actions.  The

Motion for Protective Order seeks a stay of virtually all discovery, not only discovery in Case

No. 04-0494 (the "NorthWestern Action"), but in all three litigations, including two in which

NorthWestern is not a party.[1]  While NorthWestern has couched its request as a motion seeking a

protective order from "broad" discovery, NorthWestern, through its motion, claims to be

essentially seeking summary judgment on one issue – whether The Bank of New York ("BNY")

was defrauded into releasing Clark Fork & Blackfoot LLC ("Clark Fork") as obligor under the

indenture governing the Series A 8.45% Quarterly Income Preferred Securities (the "QUIPS").

In effect, NorthWestern seeks to halt discovery in all Actions when, in fact, discovery from all

parties and various third parties is necessary to establish that NorthWestern perpetrated a fraud

by transferring certain key assets from Clark Fork at a time when NorthWestern knew it was

hopelessly insolvent.

On August 20, 2004 (the "August 2004 Decision"), the Bankruptcy Court granted in part

and denied in part, NorthWestern's motion to dismiss the NorthWestern Action.  The

---

[1]    The other two litigations currently pending before this Court are (i) *Magten v. Paul Hastings Janofsky & Walker LLP*, C.A. No. 04-1256 (JJF) (the "Paul Hastings Action") and (ii) *Magten v. Mike J. Hanson and Ernie J. Kindt*, C.A. No. 05-0499 (JJF) (the "Hanson & Kindt Action")

Bankruptcy Court specifically found that Plaintiffs' claim that NorthWestern had "intentionally and fraudulently concealed the fact that its financial condition was much worse than reported publicly . . . may have legs." See Declaration of Avery Samet dated February 13, 2006 filed contemporaneously herewith (the "Samet Decl."), Ex. A., p. 9.   In fashioning its relief, the Bankruptcy Court stated, "the questions are whether *[NorthWestern] knew* at the time that it could not do the transaction based on its restated accountings etc. and whether the financial information *[NorthWestern] provided* the public was in fact false." (emphasis added). See Samet Decl. Ex. A, p. 10.

In that same decision, the Bankruptcy Court specifically rejected the reasoning underlying NorthWestern's Motion for Protective Order, that being NorthWestern's contention that Plaintiffs were precluded from recovery since NorthWestern had "disclosed the nuts and bolts of the transfer" to BNY. See Samet Decl. Ex. A, p. 10.  NorthWestern's latest contention that had its insolvency been made known to BNY, BNY would have still acquiesced to the fraudulent transfer is misleading and contrary to BNY's obligations under relevant indenture documents and applicable law.

Finally, the Motion for Protective Order so lacks merit as to implicate NorthWestern's motives for making it.  NorthWestern claims to be seeking "to structure an efficient and expeditious resolution" of these cases.  Nothing could be further from the truth.  At the October 21, 2005 status conference before this Court, NorthWestern sought to delay the Actions from proceeding to discovery.  NorthWestern did not make the suggestion it now makes to ostensibly bring about an "efficient and expeditious" resolution of these cases.  Instead, it asked for and received another round of mediation.  In granting NorthWestern's request, the Court made clear that discovery would proceed expeditiously if the mediation was not successful.  NorthWestern

2

said nothing about limiting the scope of discovery or bifurcating the proceedings at the time. Thereafter, at the parties' conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure (the "Rule 26(f) Conference"), NorthWestern sought to slow down discovery. NorthWestern claimed that discovery should take a year or more. NorthWestern then filed a proposed discovery schedule with the Court in which it set cut-off dates for discovery but did not raise limiting the scope of discovery as proposed by the Motion for Protective Order.

Thus, the Motion for Protective Order is entirely inconsistent both with NorthWestern's position on discovery expressed during the Rule 26(f) Conference and with the written representations NorthWestern subsequently made to the Court as to its views on an appropriate discovery schedule. While Plaintiffs believe that most parties would have preferred to settle these Actions consensually, the result of the mediation has been the further delay of any forward momentum in the cases currently pending before this Court. Instead of an accelerated discovery schedule aimed at expeditiously resolving Plaintiffs' claims, NorthWestern is employing dilatory tactics designed to further impede the already protracted litigations. In short, the Motion for Protective Order should be seen for what it is -- just another attempt at delay.

Ultimately, NorthWestern's assertion that limiting discovery to one issue and a single non-party will address Plaintiffs' allegations is erroneous and, accordingly, the Motion for Protective Order should be denied.

## BACKGROUND

In November 2002, only 10 months before commencing its chapter 11 case, NorthWestern, as the sole equity holder of Clark Fork, caused Clark Fork to transfer its utility assets (valued at between $1.15 billion and $1.4 billion) (the "Montana Utility Assets") to NorthWestern for no cash and only approximately $700 million of liabilities (the "Transfer").

3

See Samet Decl. Ex. B, ¶¶ 2, 53. At the time of the Transfer, NorthWestern's public financial statements overstated NorthWestern's revenue by $878 million and NorthWestern was not financially capable of performing its obligations under the indenture governing the QUIPS. See Samet Decl. Ex. B, ¶ 60. The public, however, was not apprised of NorthWestern's true financial condition until six months after the Transfer when NorthWestern publicly admitted that (i) the financials used in connection with the transfer were materially misleading[2] and (ii) NorthWestern was insolvent. See Samet Decl. Ex. B, ¶¶ 60, 61. Thus, holders of the QUIPS went from being creditors of a solvent entity to being creditors of an overleveraged and insolvent entity. Due to NorthWestern's insolvency and false financials, holders of the QUIPS were unable to obtain a full recovery from NorthWestern.

In light of NorthWestern's fraudulent actions, Plaintiffs commenced the NorthWestern Action as an adversary proceeding in the Bankruptcy Court. The complaint filed in the NorthWestern Action contends that NorthWestern fraudulently appropriated certain assets of its subsidiary and that the holders of the QUIPS (as direct creditors of that subsidiary as well as NorthWestern) had the right to have their claims paid in full before those assets could be made available to satisfy the claims of NorthWestern's other creditors.

On May 14, 2004, NorthWestern filed a motion to dismiss the NorthWestern Action, arguing, among other thing, that the QUIPS holders lack standing to object to the transfer of the Montana Utility Assets because they are no longer creditors of Clark Fork. [04-53324 Bankr. Docket No. 5]. Following completion of briefing, on August 20, 2004, the Bankruptcy Court, denied NorthWestern's motion to dismiss. [04-53324 Bankr. Docket No. 25].

---

[2]   On April 16, 2003, NorthWestern issued a press release concerning the $878 million in negative charges. See Samet Decl, Ex. C. Shortly thereafter, NorthWestern announced that the SEC has begun an ongoing investigation into these issues.

4

In denying NorthWestern's motion to dismiss the NorthWestern Action, Judge Case issued the August 2004 Decision, noting that Plaintiffs' claim that Clark Fork remained liable for the full amount of QUIPS notwithstanding NorthWestern's purported assumption of the liability for the QUIPS "may have legs." See Samet Decl. Ex. A, p. 9. In particular, Judge Case found that Plaintiffs had adequately plead a liability theory based on the potential invalidity of the release of Clark Fork as obligor under the QUIPS' indenture because such release was obtained through a fraudulent scheme. See Samet Decl. Ex. A, p. 10.

On October 4, 2004, Plaintiffs filed an Amended Complaint in the NorthWestern Action (the "First Amended Complaint"), adding claims arising under the Public Utility Holding Company Act. See Samet Decl. Ex. B. On November 3, 2004, NorthWestern filed a motion to dismiss the First Amended Complaint in part (directed to the newly-added claims, but accepting that those claims from the original complaint that had survived the August 2004 Decision were not properly subject to a second motion to dismiss). [04-53324 Bankr. Docket No. 29]. NorthWestern's motion to dismiss the First Amended Complaint in part is still pending.

On November 17, 2004, Plaintiffs filed a motion with this Court seeking to withdraw the reference with respect to the NorthWestern Action. [04-53324 Bankr. Docket No. 36]. On September 22, 2005, this Court withdrew the reference from the Bankruptcy Court in the NorthWestern Action.

Following another failed attempt at mediation, on January 4, 2006, Plaintiffs held the 26(f) Conference with all defendants in the Actions as required by Rule 26(d) of the Federal

Rules of Civil Procedure. Thereafter Plaintiffs began to serve document requests on defendants in all Actions, two of which NorthWestern is not a party to, and certain non-parties.[3]

On February 2, 2006, NorthWestern filed the Motion for Protective Order. On February 10, Paul Hastings filed its "Joinder to Motion for Protective Order" (the "Joinder") seeking the same relief solely "for substantially the same reasons set forth in the Motion" for Protective Order.

## ARGUMENT

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, a party seeking a protective order bears the burden of demonstrating good cause to preclude or limit discovery. Fed.R.Civ.P. 26(c). It is well established in the Third Circuit that, "to overcome the presumption [in favor of discovery], the party seeking the protective order must show good cause by demonstrating a particular need for protection." *Cipollone v. Liggett Group,* 785 F.2d 1108, 1121 (3d Cir.1986). See also *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 786 (3d Cir. 1994); *Shingara v. Skiles,* 420 F.3d 301, 306 (3d Cir. 2005). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Cipollone,* 785 F.2d at 1121. See also *Glenmede Trust Co. v. Thompson,* 56 F.3d 476, 483 (3d Cir. 1995). As demonstrated herein, NorthWestern does not base its motion "upon the existing rulings in this case." See Motion for Protective Order, p. 2. Instead, it does just the opposite. The Motion for Protective Order seeks to block discovery into the very issues specified by the August 2004 Decision. NorthWestern asks this Court to ignore the August 2004 Decision and

---

[3] At the 26(f) Conference, the parties agreed that the Actions would be consolidated for purposes of discovery. Since a formal order consolidating the Actions has not yet been entered, each discovery request served by Plaintiffs contained a caption of one specific litigation in order to avoid unnecessary duplication. However, to avoid duplication, each discovery request, whether directed to defendants or to a non-party, was intended to seek all document discovery that would be relevant to any of the claims in any of the actions.

6

instead engage in rank speculation. Fundamentally, NorthWestern has failed to establish that it should be granted the protections its seeks and has thus failed to meet its burden of demonstrating a good cause to preclude Plaintiffs from going forward with their proposed discovery.

A.    Discovery Should Not Be Limited As Proposed by NorthWestern

For the first time since the commencement of the NorthWestern Action, NorthWestern requests that Plaintiffs limit their discovery to a single narrow issue and, preposterously, to evidence on that issue from a single non-party and not even from NorthWestern itself. NorthWestern claims, in a conclusory manner, that the only discovery that could be relevant to the NorthWestern Action is whether BNY was "defrauded in connection with the execution of the Third Supplemental Indenture," thereby rendering Plaintiffs' document demands on the parties and third party subpoenas irrelevant. See Motion for Protective Order, p. 6.

The allegations set forth in the First Amended Complaint include, among other things, allegations of fraud. In connection with the First Amended Complaint, Plaintiffs will establish that (i) NorthWestern made false and misleading statements with respect to its financial condition (or withheld information which, if known, would have made the statements NorthWestern made false under the circumstances), (ii) NorthWestern knew or should have know that its statements were false, and (iii) but for these false statements, NorthWestern would not have been able to consummate the Transfer and, in particular, would not have been able to obtain the release of Clark Fork executed by BNY, which is the cornerstone of its lack of standing defense. NorthWestern has not offered to stipulate that it made these false statements with the requisite knowledge and intent. Thus, once the proposed summary judgment motion is denied due to a factual dispute on how BNY would have proceeded had it known the truth, the

7

NorthWestern Action would still not be ready for trial because discovery on those other issues would still be necessary.

Not only has NorthWestern sought to block discovery on two of three aforementioned issues, it even seeks to block any discovery from itself on the third issue. NorthWestern has taken the radical position that no document in its possession could conceivably be relevant to the Actions. NorthWestern's claim that Plaintiffs' discovery requests seek information that is "broad and wide-ranging" is both false and procedurally misplaced. If either NorthWestern or a third party served with a subpoena have a good faith basis for contending that specific requests (or portions thereof) are unduly burdensome or not calculated to lead to admissible evidence, they have the right to object to those specific requests or portions of requests while providing appropriate responses to Plaintiffs' remaining discovery requests. Fed. R. Civ. P. 34(b). A refusal to provide any discovery whatsoever is not an appropriate remedy for such a concern, and again simply confirms that refusing to provide discovery is consistent with NorthWestern's chosen strategy of indefinite delay.

NorthWestern mischaracterizes the August 2004 Decision and the allegations pled in the First Amended Complaint as limiting Plaintiffs' claims and rights to obtain reasonable discovery. Nearly a year and half has passed since the August 2004 Decision and only now, after a scheduling conference before the Court, a second failed mediation, the Rule 26(f) Conference and the submission of proposed scheduling orders and initial disclosures, NorthWestern chooses to assert that it believes the August 2004 Decision should be interpreted to mean that discovery should be limited to a non-party in the Actions.

Nothing in the August 2004 Decision precluded Plaintiffs from seeking discovery on the issue of whether NorthWestern received the Montana Utility Assets through fraud.

8

NorthWestern, however, distorts the August 2004 Decision by extrapolating that the only discovery necessary to show that NorthWestern had actual fraudulent intent with respect to the Transfer is discovery from BNY. As evidence of the fact that this interpretation is entirely misplaced, one only needs to look at the explicit language in the August 2004 Decision stating that "the questions are whether [NorthWestern] knew at the time that it could not do the transaction based on its restated accountings etc. and whether the financial information [NorthWestern] provided the public was in fact false." See Samet Decl. Ex. A, p. 10. It is disingenuous to seek to limit discovery to BNY when, in fact, Judge Case recognized that the Plaintiffs need to establish the extent of NorthWestern's knowledge of the falsity of its financials. This issue clearly requires discovery from NorthWestern, its attorneys, financial advisors and accountants.

In addition, NorthWestern's reliance on BNY's position in the litigation commenced by Magten against BNY in Delaware Chancery Court is senseless on its face.[4] BNY took the position that it relied on the validity of NorthWestern's certification that it was a solvent entity and therefore, BNY was not required to question the validity of that certification. See Samet Decl. Ex. D, pp. 17-18.[5] Unsurprisingly, BNY did not claim that it would have released Clark Fork as obligor under the indenture if NorthWestern had publicly disclosed that it was insolvent and could not perform its obligations under the QUIPS' indenture.[6] NorthWestern fails to

---

[4]     Plaintiffs disagree with NorthWestern's characterization of the Delaware Chancery Court decision on BNY's motion to dismiss Magten's claims and respectfully refer this Court to the Transcript of the proceedings for an accurate representation of the proceedings. See Samet Decl. Ex. E, pp. 102-105.

[5]     The transcript of the hearing on BNY's motion to dismiss the complaint, upon which NorthWestern relies, indicates that the Court believed BNY had the duty to act in good faith, and that faced with such fraudulent financials, it may well have had the duty to refuse acquiescence to any transfer. See Samet Decl. Ex. E, pp. 13-17. In any event, there was no determination on that or any other issue by the court at that hearing.

[6]     NorthWestern argues, although falsely, that the indenture governing the QUIPS only required its representation that there was no immediate default, and that NorthWestern made such a representation which was true at the time of the Transfer. See Motion for Protective Order p.5, n.2. This argument,

9

recognize that given BNY's reliance on both NorthWestern and its advisors' certifications that NorthWestern was solvent at the time of the Transfer (see Samet Decl. Ex. F), Plaintiffs, in accordance with the August 2004 Decision, seek to prove that when NorthWestern and its advisors made such representations to BNY, they knew or should have known (i) that the statements were fraudulent and (ii) that BNY would reasonably rely upon such statements. It is inconceivable that neither NorthWestern nor any other third party other than BNY might have evidence relevant to the issues. It is not surprising that NorthWestern cites no authority for its contention that discovery should proceed only from a single third-party but not from the defendant in the action.

As discussed below, NorthWestern can certainly not limit the scope of discovery in the Paul Hastings Action and the Hanson & Kindt Action. All the third-party subpoenas that NorthWestern seeks to quash were not served in connection with the NorthWestern Action but rather were served in connection with the Paul Hastings Action and NorthWestern cites no authority granting it standing to quash these subpoenas. Therefore, there is no basis for the Court to allow NorthWestern to prevent Magten from seeking discovery from third parties in either the Hanson & Kindt Action or the Paul Hastings Action.

As already mentioned, the tactical nature of NorthWestern's ploy to delay the resolution of the Actions is evidenced by the fact that NorthWestern is belatedly raising these issues. On October 21, 2005, the Court held a status conference with respect to the Actions and appeals pending before this Court (the "October 21 Hearing"). At the October 21 Hearing, NorthWestern insisted that its request for another mediation was not a tactic to delay but would

---

however, does not accurately describe articles eleven and twelve of the QUIPS' indenture. Pursuant to the indenture, failure to pay the QUIPS obligations as they came due was an "Event of Default"; one that quite obviously would occur with the "lapse of time" in view of NorthWestern's and Clark Fork's insolvencies.

10

be a good faith effort to settle all of Plaintiffs' outstanding claims in connection with the NorthWestern bankruptcy. See Samet Decl. Ex. G, p.18: 5-11.   While Plaintiffs agreed to participate in the mediation, Plaintiffs asked the Court to establish a process whereby the parties could commence immediate discovery so that if the mediation failed, Magten would not be further prejudiced by any additional delay in these matters. See Samet Decl. Ex G, p.16: 9-20, p. 38:15-39:3.

As this Court is aware, the mediation failed and Magten sought to proceed with discovery in the Actions pending before this Court.  Accordingly, on January 4, 2006, the parties held their 26(f) Conference at which time NorthWestern did not raise any issues with respect to the scope of discovery.  Specifically, neither NorthWestern nor any other defendant in the Actions ever suggested that discovery initially be limited to less than all of the factual issues in the Actions. The only disagreements raised at the 26(f) Conference revolved around the timing of discovery and whether the stay was still in effect with respect to the Hanson & Kindt Action.  Accordingly, Plaintiffs and the defendants in the Actions each submitted proposed scheduling orders to the Court.  Likewise, nowhere in the cover letter from NorthWestern's counsel, dated January 10, 2006, attaching defendants' proposed scheduling order did NorthWestern raise its current position with respect to discovery.   NorthWestern has failed to offer any explanation as to why it did not make its current proposal at the 26(f) Conference or when it presented its proposed schedule to the Court.  All of the arguments that NorthWestern now raises could have been raised as early as the fall of 2004; there are no new issues or changed circumstances.

Notably, NorthWestern waited a month after the Rule 26(f) Conference and weeks after submitting its own proposed form of scheduling order to raise the arguments set forth in the Motion for Protective Order.  Only on the eve of filing the Motion for Protective Order did

11

counsel for NorthWestern contact Magten's counsel advancing the proposal that the parties

suspend all discovery with the exception of limited discovery with respect to BNY.

B.    Discovery in the Hanson & Kindt Action Cannot be Limited as Requested by
      NorthWestern's Motion for Protective Order

NorthWestern, as a non-party in the Hanson & Kindt Action does not have standing to

limit discovery in that action. The allegations in the Hanson & Kindt action are based in part on a

different theory than the allegations pled in the NorthWestern Action and evidence in that action

may be relevant irrespective of whether such evidence is relevant in the NorthWestern Action.

NorthWestern's incorrect assertion that "the claims against NorthWestern's officers, directors

and attorneys are derivative of the claims asserted against NorthWestern," simply ignores the

separate issues and liability theories and, thus, the appropriate scope of discovery in the other

action. See Motion for Protective Order, p. 2.

The litigation brought against the former officers of Clark Fork, Mike Hanson and Ernie

Kindt, seeks redress for defendants' wrongful conduct and breaches of fiduciary duty in

connection with their role in causing Clark Fork to transfer its Montana Utility Assets in a "going

flat" transaction to NorthWestern for grossly inadequate consideration on November 15, 2002.

The crux of the litigation is that because Clark Fork was in the zone of insolvency at the time of

the fraudulent transfer of the Montana Utility Assets, the officers of Clark Fork owed fiduciary

duties to Clark Fork's creditors not to engage in any transaction that would render Clark Fork

insolvent and unable to perform its obligations with respect to the QUIPS.  In that regard,

Hanson and Kindt knew, should have known, and/or were reckless in not knowing that Clark

Fork would be rendered insolvent as a result of the Transfer and that NorthWestern was

insolvent both before and after the Transaction. See Samet Decl. Ex H, ¶ 35.

12

Hanson and Kindt made a motion to dismiss the Hanson & Kindt Action pursuant to Federal Rule of Civil Procedure 12(b)(6). While that motion was still pending, Hanson and Kindt made a motion for summary judgment. Both motions were denied by the Montana District Court. Thus, NorthWestern's solvency, the circumstances which subsequently led NorthWestern to confess that the financial results it had publicly reported as of the date of the transaction were materially false and misleading, and discovery into the conclusions others reached on those subjects (whether before the date of the transaction or shortly thereafter) is reasonably calculated to lead to admissible evidence. What Hanson and Kindt could have and should have known had they conducted the reasonable affirmative inquiry which their fiduciary duties required is relevant to that proceeding. What BNY knew or should have known, or how it might have acted had NorthWestern's financials not been fraudulent, cannot resolve the Hanson & Kindt Action, nor have Hanson and Kindt suggested that it could.[7] Hanson and Kindt would not be entitled to summary judgment even if the release executed by BNY were to be found valid.

C.    Discovery in the Paul Hastings Action Cannot be Limited as Requested by NorthWestern's Motion for Protective Order

In addition, like the Hanson & Kindt Action, the same reasoning applies equally to the discovery served in the Paul Hastings Action. Seemingly lacking federal jurisdiction, Magten filed the Paul Hastings Action in May 2004, in Montana state court. Paul Hastings removed the action to federal court in Montana, then sought and obtained a transfer to this Court, also seeking a stay at the time pending resolution of certain matters in the NorthWestern Action. Ultimately,

---

[7]    In the NorthWestern Action, if the Court finds that the release of Clark Fork as obligor is valid and the QUIPS holders were thus no longer creditors of Clark Fork, the QUIPS holders arguably lacked standing to receive a recovery for the Transfer on a fraudulent conveyance theory. By contrast, in the Hanson and Kindt Action, the breach of duty claims are based on the fact that QUIPS holders were creditors of Clark Fork at the time of the wrongful conduct. As such, whether or not Magten is currently a creditor of Clark Fork is irrelevant to whether Magten can recover against Hanson and Kindt for breaching their fiduciary duties in connection with the Transfer. Thus the validity or invalidity of the release of Clark Fork executed by BNY will not resolve that action.

13

this Court rejected that stay, directing the parties to commence discovery in the event the second mediation failed, and even appointing a special master recently to oversee the discovery. At no time has anyone on Paul Hastings' behalf sought to confer with Magten's counsel to limit the scope of discovery in their action, whether at the Rule 26(f) conference or otherwise. Nor, until its belatedly filed the two sentence Joinder that seeks the same relief as NorthWestern solely "for substantially the same reasons set forth" by NorthWestern, did Paul Hastings ever seek a stay on these grounds despite previous application for a stay and other opportunities to do so. Like NorthWestern, this latest maneuver should be seen for what it is: yet another attempt to delay the ultimate resolution of these Actions.

Magten seeks to hold Paul Hastings accountable for the advice and assistance it provided to Clark Fork and its officers (including Hanson and Kindt), even while simultaneously representing NorthWestern, thus breaching duties owed to Clark Fork's creditors, including Magten, in light of that entity's insolvency. See, Samet Decl. Ex I. Paul Hastings sought to initially conceal its representation of Clark Fork in that transaction, finally admitting it only after being forced by the Bankruptcy Court to do so. See Samet Decl. Ex. J. Clark Fork's financial condition, NorthWestern's insolvency, and NorthWestern's financial chicanery are all relevant to the Paul Hastings Action. Moreover, as in the Hanson and Kindt Action, whether or not BNY properly released Clark Fork is not determinative of the claims against Paul Hastings.

D.     NorthWestern Has an Obligation to Defend the NorthWestern Action

NorthWestern asserts that it has no intrinsic economic interest in the NorthWestern Action because Plaintiffs' recovery will be satisfied out of the Disputed Claims Reserve established pursuant to section 7.5 of NorthWestern's chapter 11 plan – a pot of shares that cannot revert back to NorthWestern. Accordingly, NorthWestern argues that it should not be

14

required to meet the ordinary obligations of a named party in an action in federal court. This is a total non sequitur. The claim that NorthWestern has no economic stake in the outcome is neither here nor there. Defendants who have no economic interest in the outcome of a litigation because they are covered by insurance or indemnification are not excused from participating in discovery. The same is true for NorthWestern.

Likewise, NorthWestern's contention that it would like to settle the action except for the intransigence of other parties is not a basis for refusing to provide discovery. The idea of avoiding full-blown discovery might have been appealing a year ago, but after a year of delay, one failed settlement and two failed mediations, further delaying discovery in the hopes of a settlement is not a strategy for bringing about a resolution of the Actions. Accordingly, it is absurd to suggest that bifurcating discovery at this time will advance a settlement among the parties.[8] It is time for NorthWestern's constant strategy of delay to finally be rejected by this Court, and discovery to proceed so that these actions may be prepared for trial.

---

[8] We have been advised by NorthWestern that the Plan Committee, in no uncertain terms, will not agree to a settlement. Therefore, NorthWestern has provided no basis for its claim that the Plan Committee's opposition to any settlement turns on how BNY might have reacted to knowledge of NorthWestern's insolvency.

15

## CONCLUSION

WHEREFORE, the Plaintiffs respectfully request that (i) the Motion for Protective Order

be denied for the reasons stated herein; and (2) the Court grant any such other relief as the Court

deems just and proper.

Dated:  February 13, 2006

*Dale R. Dubé*

Dale R. Dubé (I.D. No. 2863)
Elio Battista, Jr. (I.D. No. 3814)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:   (302) 425-6400
Facsimile:    (302) 425-6464

-and-

Bonnie Steingart
Gary L. Kaplan
John W. Brewer
FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP
One New York Plaza
New York, NY 10004-1980
Telephone:   (212) 859-8000
Facsimile:    (212) 859-4000

Counsel for Magten Asset Management
  Corporation in Actions number 04-1494 (JJF)
    and 05-0499 (JJF)

Dated:  February 13, 2006

    /s/ David A. Jenkins
David A. Jenkins (I.D. No. 932)
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Telephone:   (302) 652-8400
Facsimile:    (302) 652-8405

-and-

16

120087.01600/40159905v.1

Bijan Amini
Avery Samet
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, NY 10017-2131
Telephone:    (212) 490-4100
Facsimile:    (212) 490-4208

Counsel for Magten Asset Management
   Corporation in Action 04-1256

Dated:   February 13, 2006

      /s/ Kathleen M. Miller
Kathleen M. Miller (I.D. No. 2898)
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Telephone:    (302) 652-8400
Facsimile:    (302) 652-8405

-and-

John V. Snellings
Amanda D. Darwin
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110-2131
Telephone:    (617) 345-1000
Facsimile:    (617) 345-1300

Counsel for Law Debenture Trust Company of
   New York

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February, 2006, I electronically filed the

**Opposition of Plaintiffs Magten Asset Management Corporation and Law Debenture Trust**

**Company of New York to Northwestern Corporation's Motion for a Protective Order and**

**Joinder of Paul Hastings Janofsky &\* Walker LLP Thereto** using CM/ECF which will send

notification of such filing(s) to the following:

Kathleen M. Miller, Esquire
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899
kmm@skfdelaware.com

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
GREENBERG TRAURIG LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
counihanv@gtlaw.com
melorod@gtlaw.com

Denise Seastone Kraft, Esquire
EDWARDS ANGELL PALMER &
   DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801
dkraft@edwardsangell.com

David A. Jenkins, Esquire
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899
daj@skfdelaware.com

Robert J. Dehney, Esquire
Curtis S. Miller, Esquire
MORRIS NICHOLS ARSHT
   & TUNNELL
1201 Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
rdehney@mnat.com
cmiller@mnat.com

I also certify that, on this 13th day of February, 2006, I served the aforementioned document, by e-mail and Federal Express, upon the following non-registered participants:

John V. Snellings, Esquire
Amanda D. Darwin, Esquire
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110-1832
jsnellings@nixonpeabody.com
adarwin@nixonpeabody.com

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061
sreisman@cm-p.com
jpizzurro@cm-p.com
ndelaney@cm-p.com
mharwood@cm-p.com

Bijan Amini, Esquire
Avery Samet, Esquire
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017
bamini@samlegal.com
asamet@samlegal.com

Dennis E. Glazer, Esquire
Paul Spagnoletti, Esquire
DAVIS POLK & WARDWELL
450 Lexington Avenue, Room 3004
New York, NY 10017
dennis.glazer@dpw.com
paul.spagnoletti@dpw.com

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
BROWNING, KALECZYC, BERRY
   & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624
stan@bkbh.com
kim@bkbh.com

Dale R. Dubé (I.D. No. 2863)