IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORP. and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>    Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>    Defendant. | Civil Action No. 04-1494-JJF |
| MAGTEN ASSET MANAGEMENT CORP.,<br><br>    Plaintiff,<br><br>v.<br><br>MIKE J. HANSON and ERNIE J. KINDT,<br><br>    Defendants. | Civil Action No. 05-499-JJF |
| MAGTEN ASSET MANAGEMENT CORP. Suing individually and derivatively on behalf of CLARK FORK and BLACKFOOT, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>PAUL HASTINGS JANOFSKY & WALKER LLP,<br><br>    Defendant. | Civil Action No. 04-1256-JJF |

**REPLY OF MAGTEN ASSET MANAGEMENT CORPORATION
AND LAW DEBENTURE TRUST COMPANY OF NEW YORK
IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO
<u>COMPEL PRODUCTION OF DOCUMENTS AND FOR EXPENSES</u>**

Plaintiffs Magten Asset Management Corporation ("Magten") and Law Debenture Trust

Company of New York ("Law Debenture" and together with Magten, the "Plaintiffs"), by and

120087.01600/40166603v.1

through their counsel, respectfully submit this reply (the "Reply") to the joint response (the "Joint Response") of NorthWestern Corporation ("NorthWestern"), Michael J. Hanson ("Hanson") and Ernie J. Kindt ("Kindt" and together with NorthWestern and Hanson, the "Defendants") to Plaintiffs Motion to Compel Production of Documents and For Expenses (the "Motion to Compel" or "Motion"). In support of this Reply, Plaintiffs state as follows:

1. This is an extremely simple dispute. It does not concern the scope of document discovery, but only its timing. Plaintiffs were forced to bring this Motion because Defendants had neither produced the documents they had already agreed to produce (after negotiated limitations on the scope of production) nor given any commitment as to when they would do so.

2. Incredibly, Defendants are not willing even now to offer a commitment or even a preliminary estimate as to when their production will be completed. Defendants have had Plaintiffs' document request in their possession for almost a year. Defendants have known that they will need to produce these documents for over three months – since their obstructive motion for protective order was denied in its entirety on September 29, 2006. Defendants have known since November 3, 2006 that Judge Farnan has ordered all fact discovery – including depositions – to be completed by May 2. But nowhere in their opposition papers do they suggest when they expect to complete production of the documents.

3. During a telephone conversation on November 20, 2006, defense counsel suggested that all of the depositions in the case could be squeezed into the last week or two of April, meaning there was no pressing need to have documents produced until some time in that month. In our follow-up letter on December 4, 2006 (See Declaration of Bonnie Steingart dated December 15, 2006 filed with the Motion to Compel, (the "Steingart Decl.") Ex. O) we noted that we assumed that this was a jocular suggestion not intended to be taken seriously.

2

Defendants' continuing refusal to suggest any date certain for compliance with their obligation – however far into the future – now indicates that this perhaps was not intended as a joke.

4. Thus, this is not even a typical timing dispute where a plaintiff demands documents produced in 30 days, the defendant claims it will take 60 days, and a compromise is possible somewhere in between. Defendants' current position is that documents will be produced whenever Defendants get around to it, and it should be taken on faith that they are working as hard as possible. This is not acceptable and, frankly, not credible. Given the total lack of any good faith offer by Defendants as to a schedule (despite numerous requests for a date certain by which Defendants would be willing to complete their production, see Steingart Decl. Exs. G, H, O and Q), Plaintiffs simply had no alternative but to seek the assistance of the Court.[1]

5. In the two and a half months between denial of the Defendants' motion for protective order and the filing of this Motion to Compel, Defendants produced only 10,300 pages. In the four weeks since the Motion to Compel was filed, Defendants – presumably mindful of the need to appear as if they were doing something rather than nothing – produced an additional 35,000 pages, for a total of approximately 45,400 pages produced to date.

6. Defendants previously indicated that there might be hundreds of thousands of pages of responsive documents. See Steingart Decl. Ex. E. They have not given any more recent estimate. They do not claim that they have already made the bulk of their production and just need a little more time to tie up loose ends. They do not even claim that what has been produced to date represents even as much as 10 or 20 percent of the ultimate production. If the Defendants simply continue production on their present pace there is no guarantee that they would complete the process at any time before the May 2 discovery cut-off.

---

[1] Thus, Defendants' frivolous request for fees in connection with this Motion simply adds insult to injury.

7. Nor can their claims that they are working as fast as they can be taken at face value. They conspicuously decline to offer any details of the staffing or resources they have thus far devoted to compliance with their obligations. Production of 45,000 pages after three months does not, to put it mildly, require the inference that a team of lawyers and paralegals has been dedicated to the task full-time. The claim that it would be overly burdensome to be ordered to complete production "immediately" (See Joint Response, p. 10) thus cannot be given any credence when they have offered no alternative schedule for consideration.

8. Indeed, Plaintiffs' proposed form of order did not even suggest "immediate" production of all responsive documents, but only of the documents previously produced by the Defendants to the SEC. See Plaintiffs' Proposed Order. By definition, those documents have already been assembled, have already been screened for privilege, and could be produced as soon as a copying service could make an additional set (indeed, could have been produced in their entirety back in October). Incredibly, Defendants have not yet done so.

9. The SEC documents not only require minimal burden to produce; they are of key relevance. Judge Case, in his opinion denying NorthWestern's motion to dismiss the fraudulent conveyance action, stated that "[a]ccording to Plaintiffs, at the time of the transfer, [NorthWestern] intentionally and fraudulently concealed the fact that its financial condition was much worse than reported publicly. This argument may have legs ... This argument at its essence is that [NorthWestern] engaged in a knowing and conscious fraudulent scheme." See Under Advisement Decision Re: Motion to Dismiss, entered on August 20, 2004, p. 9. The SEC investigation (which has already led to charges against a number of current and former NorthWestern officers and employees (See Steingart Decl. Ex. O) concerns the same fraudulent

4

scheme that Judge Case identified as the key threshold issue in Plaintiffs' fraudulent conveyance action against NorthWestern.[2]

10. Another part of the wrongful scheme which permitted Defendants to carry out the asset-stripping transaction which is the subject of this litigation was fraud on the regulators whose approval was necessary for the transaction, including the Montana Public Service Commission. Documents produced by Defendants to the MPSC are thus likewise highly relevant and, because already gathered and screened for privilege, could be produced immediately (and could have been produced months ago) with minimal burden.

11. As to the remaining documents, we have always been willing to consider any good-faith scheduling proposal from Defendants, but have never received one. Even in their opposition to this Motion, Defendants offer no adequate excuse for their delay in production and no excuse whatsoever for their failure to commit to any date certain for its completion.

12. Instead, Defendants dredge up a grab-bag of miscellaneous complaints about Plaintiffs, none of which have anything to do with the pace of Defendants' document production and none of which could (even if valid, which they are not) explain or excuse their failure to comply with their discovery obligations.

13. As Defendants acknowledge, Plaintiffs have agreed in principle to withdraw certain of their document requests (6 out of 31) assuming agreement could be reached on a stipulation as to certain underlying facts. We made clear to Defendants prior to filing the Motion to Compel (see Steingart Decl. Ex. Q) that in demanding a date certain for completion of production we

---

[2] Plaintiffs believe the SEC documents are all responsive to the First Requests. Out of a belt-and-suspenders concern that Defendants might rely on an overly narrow reading of the requests to withhold certain embarrassing documents evidencing fraudulent and potentially criminal conduct, Plaintiffs on December 21, 2006 served Second Requests for Production of Documents intended to close any possible loophole that Defendants might hope to exploit in this regard. See Joint Response, pp. 8-9. Defendants can thus no longer claim to be withholding documents produced to the SEC because of a bogus need to review them for literal responsiveness.

5

were assuming that that agreement in principle would be successfully finalized, so that any commitment to complete document production need not assume production of the additional documents in those six categories. That agreement has not yet been reached on that front is thus totally irrelevant to Defendants' default.[3] Defendants do not even attempt to link their other complaints with their refusal to produce documents or even commit to a date to produce them.[4]

---

[3] Plaintiffs are working on a proposed stipulation and anticipate circulating that draft to defense counsel shortly.

[4] Defendants complain that they were not promptly advised that documents had been produced by Houlihan Loukey in response to a subpoena originally issued in docket no. 04-1256, which is not the subject of this Motion to Compel and in which NorthWestern, Hanson and Kindt are not defendants. The documents produced were entirely duplicative of documents previously produced by Houlihan in prior litigation between the parties and were thus already in NorthWestern's possession. In addition, the letters Magten's counsel has sent to Hanson's counsel and to the Montana regulators regarding various issues raised by NorthWestern's announced intent to sell itself to a foreign company were entirely proper, and obviously have zero relevance to Defendants' continuing failure to produce documents.

14. For the foregoing reasons as well as all of those set forth in Plaintiffs' opening papers, the Motion to Compel should be granted in all respects.

Dated: Wilmington, Delaware
January 12, 2007

**BLANK ROME LLP**

*Dale R. Dubé*
Dale R. Dubé (DE No. 2863)
Mark J. Packel (DE No. 4048)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile:  (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
Bonnie Steingart
Gary Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile:  (212) 859-4000

Counsel for Magten Asset Management Corporation

120087.01600/40166603v.1

| | |
|---|---|
| Dated: Wilmington, Delaware<br>January 12, 2007 | **SMITH KATZENSTEIN & FURLOW LLP**<br><br>/s/ Kathleen M. Miller<br>Kathleen M. Miller<br>800 Delaware Avenue<br>P.O. Box 410<br>Wilmington, DE 19899<br>Telephone: (302) 652-8400<br>Facsimile: (302) 652-8405<br><br>- and -<br><br>**NIXON PEABODY LLP**<br>John V. Snellings<br>Amanda D. Darwin<br>100 Summer Street<br>Boston, MA 02110-2131<br>Telephone: (617) 345-1000<br>Facsimile: (617) 345-1300<br><br>Counsel for Law Debenture Trust Company<br>of New York |

120087.01600/40166603v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2007, I served by hand delivery and electronic filing the REPLY OF MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FOR EXPENSES using CM/ECF which will send notification of such filing(s) to the following:

Special Master John E. James
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951

Robert J. Dehney, Esquire
Curtis S. Miller, Esquire
MORRIS NICHOLS ARSHT
  & TUNNELL LLP
1201 Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
GREENBERG TRAURIG LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

David A. Jenkins, Esquire
SMITH KATZENSTEIN &
  FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

Denise Seastone Kraft, Esquire
EDWARDS ANGELL PALMER &
  DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Kathleen M. Miller, Esquire
SMITH KATZENSTEIN &
  FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

I also certify that, on this 12th day of January, 2007, I served the aforementioned document, by e-mail and Federal Express, upon the following participants:

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061

John V. Snellings, Esquire
Amanda D. Darwin, Esquire
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110-2131

Jesse H. Austin, Esq.
PAUL, HASTINGS, JANOFSKY &
 WALKER, LLP
600 Peachtree Street, N.E.
Atlanta, GA 30308

Bijan Amini, Esquire
Avery Samet, Esquire
Bradley F. Silverman, Esquire
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
BROWNING, KALECZYC, BERRY
 & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Dennis E. Glazer, Esquire
Paul Spagnoletti, Esquire
DAVIS POLK & WARDWELL
450 Lexington Avenue, Room 3004
New York, NY 10017

_____
Dale R. Dubé (I.D. No. 2863)