# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, suing individually and derivatively on behalf of CLARK FORK AND BLACKFOOT, LLC, | : : : : : |
| Plaintiff, | : : |
| v. | : Civil Action No. 04-1256-JJF |
| PAUL HASTINGS JANOFSKY & WALKER LLP, | : : : |
| Defendant. | : |

### O R D E R

At Wilmington, this 12 day of January 2007, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion For Judgment On The Pleadings (D.I. 86) is **GRANTED**.

/s/ Joseph J. Farnan
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

MAGTEN ASSET MANAGEMENT
CORPORATION, suing individually
and derivatively on behalf of
CLARK FORK AND BLACKFOOT, LLC,

       Plaintiff,

    v.                             Civil Action No. 04-1256-JJF

PAUL HASTINGS JANOFSKY & WALKER
LLP,

       Defendant.

---

Bijan Amini, Esquire and Avery Samet, Esquire of STORCH AMINI & MUNVES PC, New York, New York.
David A. Jenkins, Esquire and Kathleen M. Miller, Esquire, of SMITH, KATZENSTEIN & FURLOW, LLP, Wilmington, Delaware.

Attorneys for Plaintiff, Magten Asset Management Corporation.

Dennis E. Glazer, Esquire and Paul Spagnoletti, Esquire of DAVIS POLK & WARDWELL, New York, New York.
Robert J. Dehney, Esquire and Curtis S. Miller, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Defendant, Paul Hastings Janofsky & Walker LLP.

---

### MEMORANDUM OPINION

January __, 2007
Wilmington, Delaware

Farnan, District Judge

Presently before the Court is a Motion For Judgment On The Pleadings (D.I. 86) filed by Defendant, Paul Hastings Janofsky & Walker, LLP. For the reasons set forth below, the Court will grant the Motion.

I.  BACKGROUND

By its Complaint, Plaintiff Magten Asset Management Corporation, alleges that Northwestern Corporation ("Northwestern") attempted to cover up its losses from poor investment decisions by stripping the assets of its solvent and profitable subsidiary, Clark Fork and Blackfoot LLC ("Clark Fork"). Specifically, Magten contends that Northwestern transferred to itself assets of Clark Fork, valued between $1.1 and 1.4 billion, in exchange for Northwestern's assumption of $700 million in Clark Fork's debt. Magten contends that this consideration was inadequate and illusory, and that Northwestern subsequently encumbered Clark Fork's assets with new debt, which resulted in the disenfranchisement of Clark Fork's creditors. Shortly thereafter, Northwestern filed for Chapter 11 bankruptcy protection.

Paul Hastings has admitted that it represented both Northwestern and Clark Fork in the transfer. However, Magten contends that Paul Hastings aided and abetted Clark Fork's directors and officers in breaching their fiduciary duties and

knowingly designed and implemented the transfer with the purpose of defrauding Clark Fork's creditors.

One of Clark Fork's creditors was Montana Power Capital I (the "QUIPS Trust"). Pursuant to an Indenture Agreement (the "Indenture") dated November 1, 1996 between Clark Fork's predecessor, the Montana Power Company, and Bank of New York[1], the QUIPS Trust was issued $65 million in bonds by the Montana Power Company. Instead of selling these bonds directly to investors, the QUIPS Trust issued Series A 8.45% Quarterly Preferred Securities (the "QUIPS"), whose value was based entirely on Clark Fork's ability to pay interest and principal to the Quips Trust. The Indenture also provided that the holders of the QUIPS were the intended beneficiaries of Clark Fork's obligations to the QUIPS Trust and that, if the trust failed to act, any holder of the QUIPS could sue directly to enforce the rights of the QUIPS Trust. Magten owns in excess of 33% of the QUIPS and contends that it is an express third-party beneficiary under the Indenture.

By its Complaint, Magten asserts four causes of action individually and derivatively on behalf of Clark Fork against

---

[1] The Bank of New York has been succeeded by Law Debenture Trust Company of New York.

2

Paul Hastings. Specifically, Magten contends that Paul Hastings (1) aided and abetted the officers of Clark Fork in breaching the fiduciary duties they owed to Clark Fork's creditors by carrying out the allegedly fraudulent transfer without adequate consideration and rendering Clark Fork insolvent; (2) aided and abetted the allegedly fraudulent transfer by structuring the transaction to leave Clark Fork insolvent and providing substantial assistance and guidance to Northwestern and Clark Fork to carry out the transaction; (3) engaged in a civil conspiracy to conduct the allegedly fraudulent transfer; and (4) committed malpractice by breaching its duties to Clark Fork in failing to disclose its conflict of interest to Clark Fork's officers and directors.

## II. PARTIES' CONTENTIONS

By its Motion, Paul Hastings contends that Magten's claims should be dismissed, because Paul Hastings was not the transferee of the assets in question. According to Paul Hastings, Montana's Uniform Fraudulent Transfer Act ("MUFTA") does not impose liability on non-transferees, and the imposition of any such liability would be inconsistent with the purpose of fraudulent transfer statutes in general.

Paul Hastings also contends that Magten does not have standing to assert its claims against Paul Hastings, because

3

those claims are derivative claims accruing to Clark Fork and not to any creditors of Clark Fork. Paul Hastings also contends that Clark Fork is a limited liability company under Montana law and the applicable Montana statute only authorizes members of the limited liability company to bring derivative claims. Paul Hastings further contends that, in any event, Magten was not a creditor of Clark Fork at the time of the allegedly fraudulent transfer, and therefore, Magten lacks standing to bring this derivative law suit.

In response, Magten contends that the MUFTA preserves principles existing at equity and common law, and Montana courts have long-recognized a cause of action for conspiracy to defraud creditors. Magten contends that courts have upheld claims for conspiracy and aiding and abetting fraudulent conveyances under the Uniform Fraudulent Conveyance Act.

With respect to the question of standing, Magten contends that Montana's limited liability code says nothing about the rights of creditors, and therefore, these statutes do not limit Magten's ability to sue. Magten also contends that it is an express third party beneficiary under the Indenture, and both the United States Bankruptcy Court for the United States District

4

Court for the District of Montana rejected Paul Hastings' lack of standing arguments.

### III. STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards that apply to a motion to dismiss under Rule 12(b)(6). Specifically, the Court must accept the facts alleged in the pleadings as true and draw all reasonable factual inferences in the light most favorable to the nonmovant. A motion for judgment on the pleadings may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The movant bears the burden of demonstrating that no material issue of fact remains to be resolved and judgment as a matter of law is appropriate. Institute for Scientific Info v. Gordon & Breach, Sci. Publs., Inc., 931 F.2d 1002, 1005 (3d Cir. 1991).

### IV. DISCUSSION

Magten's claims in this action are based upon an alleged fraudulent transfer under Mont. Code Ann. § 31-2-326, et seq. At least one court interpreting the MUFTA has recognized that it "bear[s] a close resemblance" to the language of the Bankruptcy Code, and therefore, the fraudulent transfer provisions of the

5

MUFTA should be interpreted "contemporaneously with those of the Bankruptcy Code." Samson v. U.S. West Communications, Inc. (In re Gigonis), 208 B.R. 950, 958 (Bankr. D. Mont. 1997). The majority of courts interpreting the Bankruptcy Code have declined to impose liability for fraudulent transfers on third parties who did not receive the assets in question. See e.g., Mack v. Newton, 737 F.2d 1343, 1358 (5th Cir. 1984) (recognizing that holding nontransferee liable for fraudulent transfer is inconsistent with purpose of fraudulent transfer statutes which is to "preserve the assets of the bankrupt" and not "to render civilly liable all persons who may have contributed in some way to the dissipation of those assets"); Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 737 & n. 10 (1st Cir. 1982) (finding no liability because neither defendant received any of the fraudulently transferred property); Jackson v. Star Sprinkler Corp., 575 F.2d 1223, 1234 (8th Cir. 1978) (holding that "recovery under the Bankruptcy Act does not extend to permit a judgment against 'conspirators' who did not receive the property transferred").

The MUFTA also expressly provides that it should "be applied and construed to effectuate the general purpose of making uniform the law with respect to the subject of this part among states

enacting it." Mont. Code Ann. § 31-2-327. The majority of courts interpreting state UFTA laws, whose provisions have been similar to those enacted by the State of Montana, have concluded that liability cannot be imposed on non-transferees under aiding and abetting or conspiracy theories. See e.g., In re Parmalat Sec. Litig., 377 F. Supp. 2d 390, 417 (S.D.N.Y. 2005) (holding that aiding and abetting claims do not exist under Illinois UFTA and recognizing that courts have been reluctant to impose such liability absent statutory authorization); Baker O'Neal Holdings v. Ernst & Young, 2004 U.S. Dist. LEXIS 6277 (S.D. Ind. Mar. 24, 2004) (holding that "catch-all" provision similar to one contained in MUFTA did not encompass aiding and abetting liability); Rohm & Haas Co. v. Capuano, 301 F. Supp. 2d 156, 161 (D.R.I. 2004) (refusing to extend liability for fraudulent transfer to a nontransferee under the Rhode Island UFTA); Freeman v. First Union Nat'l Bank, 865 So. 2d 1272 (Fla. 2004) (holding that aiding and abetting claims may not be brought under Florida UFTA).

It is evident from the pleadings in this case, that Paul Hastings did not receive the assets in question. As the Complaint alleges, Northwestern was "the only party that benefitted in the transaction." (D.I. 1 at ¶ 5). Because the Court concludes its interpretation of the MUFTA should be guided

7

by the majority approach to this issue, the Court concludes that Magten cannot establish its claims for aiding and abetting and conspiracy based upon an alleged fraudulent transfer under the MUFTA. Accordingly, the Court will grant Paul Hastings Motion for Judgment on the pleadings.

To the extent that any issue remains regarding Magten's claims that Paul Hastings committed malpractice and aided and abetting the officers and directors of Clark Fork to breach their fiduciary duties, the Court concludes that Magten lacks standing to pursue these claims. Under Montana law, "stockholders and guarantors of a corporation do not have the right to pursue an action on their own behalf when the cause of action accrues to the corporation." Kondelik v. First Fidelity Bank, 8557 P.2d 687, 692 (Mont. 1993) (citations omitted). Regardless of any claims that Clark Fork was "in the zone of insolvency," the Court concludes that Magten's claims are appropriately considered to be derivative claims. See e.g., Production Resources Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 776, 792 (Del. Ch. Ct. 2004). Under the Montana statue authorizing derivative claims against limited liability companies, such claims may only be brought by member of the company, who was a member at the time of the transaction at issue. Mont. Code Ann. 35-8-1104(2).

8

Magten contends that it has third party beneficiary standing under the Indenture, and therefore, it has standing to sue Paul Hastings regardless of the express provisions of Section 35-8-1104(2). While the Indenture may give Magten the right to enforce the Trust's rights, in the Court's view, it does not provide Magten with the right to bring its derivative claims on behalf of Clark Fork. Even if Magten can bring a derivative claim against Clark Fork as a creditor, Magten has not demonstrated that it was a creditor of Clark Fork at the time of the alleged transaction at issue. Thus, Magten cannot satisfy the "contemporaneous ownership" requirements of Section 35-8-1104, whose purpose is particularly applicable here, i.e. to prevent courts from litigating "purchased grievances." Cf. Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.), 320 F.3d 291, 297 (2d Cir. 2003) (discussing contemporaneous ownership provision in context of Federal Rule of Civil Procedure 23.1 pertaining to derivative actions). Accordingly, the Court concludes, in the alternative, that Magten lacks standing to bring its derivative claims against Paul Hastings.

V. CONCLUSION

For the reasons discussed, the Court will grant Paul Hastings' Motion For Judgment On The Pleadings.

An appropriate Order will be entered.