# Exhibit A





IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

0 5 -    4 9 9

BILLINGS DIVISION

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION,  ) | Cause No. CV-04-26-BU-RFC |
| )  | |
| Plaintiff,  ) | |
| )  | |
| vs.  ) | **ORDER** |
| )  | |
| MIKE J. HANSON AND ERIE J. KINDT,  ) | |
| )  | |
| Defendants.  ) | |

## BACKGROUND

On February 15, 2002, pursuant to the terms of a Unit Purchase Agreement ("UPA")
entered into between NorthWestern, as purchaser, and Montana Power Company ("MPC") and
Touch America Holdings, Inc. ("TAH"), as sellers, NorthWestern acquired sole unit interest in
Montana Power, LLC ("MPLLC"). Two days previously, as part of a corporate reorganization of
MPC into TAH, the electric and natural gas transmission and distribution assets of MPC, as well
as MPC's interest in the Milltown Dam, was transferred from MPC to MPLLC. The assets and
liabilities transferred to MPLLC were certain 8.45% Junior Subordinated Debentures due in 2036
which had been issued by MPC in or about 1996. The interest paid on these Junior Debentures

created the cash flow to make dividend payments on certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPS") which had previously been issued by Montana Power Capital I (The "Trust"). The sole assets of the Trust are the Junior Debentures. Plaintiff Magten is a holder of 33% of the Series A 8.45% QUIPS, with a principal face value in excess of $20 million.

In August 2002, NorthWestern authorized and directed the transfer of the electric and natural gas transmission and distribution assets and liabilities held by its subsidiary to it, the parent corporation. The transfer was effected on November 15, 2002. The Montana Utility Assets and Liabilities transferred included the obligations associated with the Junior Debentures and QUIPS. Other assets and liabilities remained with the limited liability company, whose name was changed to Clark Fork and Blackfoot, LLC. Pursuant to the operation of the QUIPS Trust Documents, as amended on or about August 13, 2002, upon the closing of the transfer, Magten ceased to be a creditor of Clark Fork and became a creditor of NorthWestern only.

Subsequently, on September 14, 2003, NorthWestern filed a voluntary petition for reorganization in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Magten filed an adversary proceeding against NorthWestern in the bankruptcy proceeding. On April 19, 2004 Magten filed a complaint against Officers of Clark Fork, Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen Senechal, alleging that Defendants had breached a fiduciary duty to Plaintiff because Clark Fork transferred certain assets and liabilities of Clark Fork (the "Montana Utility Assets and Liabilities") to its corporate parent and sole owner, NorthWestern.

Defendants Hanson and Kindt have moved to dismiss the complaint for the following reasons: (1) as a matter of law, only the member of a limited liability company, in this case

2

NorthWestern, has the legal authority to order the transfer of assets and liabilities out of a limited liability company; (2) as a matter of law, Defendants owed no fiduciary duty to Magten; and (3) the terms of the relevant documents on which Magten bases its claim permitted the transfer of Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

## STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) Fed. R. Civ. P. the Court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the plaintiffs. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). Dismissal for failure to state a claim is appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

## ANALYSIS

### 1)    Do only the members of a limited liability company have the legal authority to order the transfer of assets and liabilities out of a limited liability company?

Defendants argue that only the members have the authority to transfer all or substantially all of the limited liability company's assets. Defendants assert that because NorthWestern was the sole Member of Clark Fork, they could merely carry out the directives of the Member and Manager and had no individual authority or power to bind or prevent Clark Fork from transferring the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

Pursuant to the Montana Limited Liability Company Act, "*unless the articles of*

3

*organization or the operating agreement provide otherwise,* the only matters of a member-managed or manager-managed company's business requiring the consent of all of the members are . . . the sale, lease, exchange or other disposal of all, or substantially all, of the company's property with or without goodwill." Mont. Code Ann. §35-8-307(3)(l) (Emphasis added).

Because this Court was not provided with a copy of the operating agreement for Clark Fork and Black Foot, LLC, it is unable to determine whether only the members of the limited liability company have the legal authority to order the transfer of assets and liabilities out of the limited liability company. The language of Montana's Limited Liability Company Act clearly allows for the possibility of the operating agreement to authorize officers to sell, lease, exchange or dispose of the company's property.

## 2)    Did Defendants owe a fiduciary duty to Magten, as one of Clark Fork's creditors?

Defendants allege that NorthWestern was and is the sole Member and Manager of Clark Fork, and therefore, NorthWestern, as either Member or Manager, owes the fiduciary duties of loyalty and care to Clark Fork, so the Officers of Clark Fork have no duties or obligations conferred upon them by the Montana Limited Liability Company Act. This Court previously ruled in its January 27, 2005 Order that despite Judge Case's judicial determination that Magten never was a creditor of Clark, Magten is not precluded from asserting a breach of fiduciary duty claim.

4

**3)    Do the relevant documents on which Magten bases its claim permit the transfer of
Montana Utility Assets and Liabilities from Clark Fork to NorthWestern?**

Defendants argue the Indenture and its supplements expressly state that a transfer of

assets conducted in accordance with section 1101 of the Indenture has the affect of releasing the

predecessor entity of all obligations under the Indenture or any Outstanding Securities

thereunder. Defendants assert that this Indenture controls the rights of Plaintiff and Plaintiff

should not be allowed to object to acts that were performed in accordance with the terms of the

Indenture. Plaintiffs rebut this by arguing that there was no authorization for the transaction

where the entity purportedly assuming Clark Fork's obligations to the Trust and the holders of

the QUIPS were already insolvent and would never be able to meet the obligations.

Defendant is correct in that the Indenture does not expressly require the entity assuming

the obligation be solvent. However, the Court must accept as true all well-pleaded allegations of

fact in the complaint and construe them in the light most favorable to the plaintiffs. The

Indenture at section 112 provides that it is governed by New York law and in *Blackman v. Estate

of Battcock*, 587 N.E.2d 280, 285 (N.Y. 1991), the Court stated that the aim of the contract

interpretation is not simply mechanical application of the literal language of the contract, but also

consideration of what may reasonably be implied from the language in effectuating the parties'

purpose in entering the contract. Further, as correctly stated by Plaintiff, the Indenture is subject

to the inherent covenant of good faith and fair dealing. The covenant of good faith and fair

dealing "is violated when a party to a contract acts in a manner that, although not expressly

forbidden by any contractual provision, would deprive the other of the right to receive the

5

benefits under the agreement." *Don King Productions, Inc. v. Douglas*, 742 F.Supp.741

(S.D.N.Y. 1990). There is a concern as to whether it is good faith and fair dealing in carrying out

a transaction in which Clark Fork will be released of all further obligations under the Indenture

because its obligations have been assumed by another entity which is known to be insolvent.

For the foregoing reasons, Defendants' Motion to Dismiss [*doc. #4*] is **DENIED**. The

Clerk of Court is directed to notify the parties of the making of this Order.

DATED this ___ day of April, 2005.

Richard F. Cebull
U.S. DISTRICT COURT JUDGE

CERTIFICATE OF MAILING
___4/1/05___ BY. Ca .
I hereby certify that a copy
of this order was mailed to:
S. Kaleczyc
K. Beatty
B. Steingart
J. Brewer
J. Goetz
J. Geddes

6

# Exhibit B

FILED
BILLINGS DIV.

2005 JAN 27 PM 2 06
PATRICK E. DUFFY, CLERK

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

MAGTEN ASSET MANAGEMENT )
CORPORATION, )          Cause No. CV-04-26-BU-RFC
                                           )
         Plaintiff, )
                                           )
    vs. )                      **ORDER**
                                           )
MIKE J. HANSON AND ERIE J. KINDT, )
                                           )
         Defendants. )
_____)

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## BACKGROUND

C 5 -   4 9 9

On February 15, 2002, pursuant to the terms of a Unit Purchase Agreement ("UPA")

entered into between NorthWestern, as purchaser, and Montana Power Company ("MPC") and

Touch America Holdings, Inc. ("TAH"), as sellers, NorthWestern acquired sole unit interest in

Montana Power, LLC ("MPLLC"). Two days previously, as part of a corporate reorganization of

MPC into TAH, the electric and natural gas transmission and distribution assets of MPC, as well

as MPC's interest in the Milltown Dam, was transferred from MPC to MPLLC. The assets and

liabilities transferred to MPLLC were certain 8.45% Junior Subordinated Debentures due in 2036

which had been issued by MPC in or about 1996. The interest paid on these Junior Debentures

created the cash flow to make dividend payments on certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPS") which had previously been issued by Montana Power Capital I (The "Trust"). The sole assets of the Trust are the Junior Debentures. Plaintiff Magten is a holder of 33% of the Series A 8.45% QUIPS, with a principal face value in excess of $20 million.

In August 2002, NorthWestern authorized and directed the transfer of the electric and natural gas transmission and distribution assets and liabilities held by its subsidiary to it, the parent corporation. The transfer was effected on November 15, 2002. The Montana Utility Assets and Liabilities transferred included the obligations associated with the Junior Debentures and QUIPS. Other assets and liabilities remained with the limited liability company, whose name was changed to Clark Fork and Blackfoot, LLC. Pursuant to the operation of the QUIPS Trust Documents, as amended on or about August 13, 2002, upon the closing of the transfer, Magten ceased to be a creditor of Clark Fork and became a creditor of NorthWestern only.

Subsequently, on September 14, 2003, NorthWestern filed a voluntary petition for reorganization in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Magten filed an adversary proceeding against NorthWestern in the bankruptcy proceeding. On April 19, 2004 Magten filed a complaint against Officers of Clark Fork, Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen Senechal, alleging that Defendants had breached a fiduciary duty to Plaintiff because Clark Fork transferred certain assets and liabilities of Clark Fork (the "Montana Utility Assets and Liabilities") to its corporate parent and sole owner, NorthWestern.

Defendants have moved the Court for summary judgment on the grounds that Magten was not a creditor of Clark Fork, and therefore, Clark Fork does not have standing to assert a creditor's claim and Defendants owe no duty to Magten.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Even if the evidence is merely colorable or is not significantly probative, a grant of summary judgment is still appropriate. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288 (9th Cir. 1987). The party moving for summary judgment bears the initial burden of proof to identify the absence of a genuine issue of material fact.

Once the moving party has satisfied this burden, the opposing party must set forth specific facts showing there remains a genuine issue for trial, in order to defeat the motion. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986) (*cert. denied* 479 U.S. 949 (1986)). Mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 252.

3

## ANALYSIS

I.     **Does a prior judicial determination that Magten was not a creditor of Clark Fork and Magten's admission it was not a Creditor of Clark Fork at the time of the transaction result in Magten not having standing to assert a creditor's claim that Defendant owed a duty to Magten?**

Defendants argue that it has been judicially determined that Magten never was a creditor

of Clark Fork and Magten has admitted that it was not a creditor of Clark Fork at the time of the

transaction, and therefore, Clark Fork does not have standing to assert a creditor's claim and

Defendants owe no duty to Magten.

In an opinion dated July 23, 2004, Hon. Charles B. Case, II, who is presiding over

Northwestern's bankruptcy held as follows:

> The Debtor [Northwestern] has consistently alleged, and Magten has never
> disputed, that Magten did not own any of the debentures prior to the time
> the assets were transferred to the Debtor [Northwestern]. Rather, Magten
> acquired the debentures after the transaction was complete. Therefore, the
> Debtor [Northwestern] asserts and Magten has not disputed, that Magten
> was never a creditor of Clark Form at a time when Clark Form had the
> disputed energy assets. Rather, Magten became a holder of the debentures
> only after the transaction was completed and was a matter of public record.
>
> *    *    *
>
> As noted above, Magten was not a creditor of Clark Form at the time the
> transaction took place. Rather, it only became a creditor of the Debtor
> [Northwestern] after the Debtor [Northwestern] assumed the liability
> associated with the junior subordinated debenture initially issued by
> Montana Power Company. Thus, Magten is not only not a party directly
> affected by the transaction -- such as Clark Fork itself – but it was also not
> an indirect party at the time the transaction took place.

Memorandum Decision at 3, 6-7.

4

This Court may take judicial notice of the adjudicative facts determined by Judge Case in the Bankruptcy proceedings and entered in his July 23, 2004 Memorandum and Order. Fed.R.Evid. 201. Defendants argue that Judge Case's finding that Magten was not a creditor of Clark Fork is dispositive of the issues in this case and rely on the theories of issue preclusion and collateral estoppel to support their argument that summary judgment should be granted in their favor.

However, as pointed out Plaintiffs, Judge Case did not hold that Magten lacked standing to challenge the validity of the transaction. Judge Case's decision did not even address Magten's standing to sue here, but rather decided that NorthWestern's counsel would not be disqualified from representing the debtor in the ongoing Bankruptcy proceeding. Judge Case did not address Magten's ability to pursue damage claims with respect to the QUIPS against Defendants, NorthWestern, or any other entity. Accordingly, Magten's standing to pursue their breach of fiduciary duty claim has not been precluded by Judge Case's decision.

Defendants further argue that Magten has admitted it was not a creditor of Clark Fork at the time of the transfer. Magten concedes that it has never claimed to be a creditor of Clark Fork at the time of the transaction and it was not necessary for Magten to be a creditor. Magten's standing to pursue the breach of fiduciary duty claim derives from the Trustee, who failed to enforce the Trust's rights and the QUIPS holders who were Magten's predecessors in interest.

5

## II.    Did Magten's Acquisition of QUIPS After-the-Fact and with Full Knowledge of the Transfer Preclude Magten from Alleging Innocence?

Defendants argue that Tolton Embry, Magten's sole owner, testified at his deposition that

he acquired his interest in the QUIPS with full knowledge of the Transfer of the Montana Utility

Assets and Liabilities to NorthWestern before his first acquisition of QUIPS. Magten has

conceded that it knew the transfer to NorthWestern had occurred prior to acquisition of the

QUIPS. Defendants cite no specific authority in support of their position that because Magten

knew of the Transfer of the Montana Utility Assets and Liabilities to NorthWestern it is

precluded from making a claim for breach of fiduciary duty. Instead, Defendants rely on general

maxims of legal jurisprudence. Without providing further specific authority in support of their

position, Defendants' argument must fail.[1]

## III.    Can Magten Stand in the Shoes of its Predecessor-in-Interest to Assert its Creditor Status?

Defendants argue that Magten is precluded from asserting a claim for breach of fiduciary

duty because the claim was not conveyed or assigned to Magten in writing, and Defendants rely

upon Mont. Code Ann. § 30-1-206, to support their argument, which states:

---

[1] As an aside, Magten cites to *United States ex rel. Hill v. Teledyne, Inc.*, 103 F.3d 143 (9th Cir. 1996) in support of their argument. However, this is an unpublished opinion and Magten gave no indication to the Court in their argument that said opinion was unpublished. Further, the Federal Rules of Appellate Procedure with Ninth Circuit Rules and Circuit Committee Notes Rule 36-3 specifically states that unpublished dispositions and orders of the Ninth Circuit are not binding precedent and a copy of any cited unpublished disposition or order must be attached to the document in which it is cited, as an appendix. Counsel for Magten should take note of and abide by Rule 36-3 for all future filings with this Court.

6

(1) Except in the cases described in subsection (2) a contract for the sale of personal property is not enforceable by way of action or defense beyond $5,000 in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by the party's authorized agent.

However, a further reading of Mont. Code Ann. § 30-1-206(2), supports Plaintiff's argument that Mont. Code Ann. § 30-1-206 is inapplicable because Mont. Code Ann. § 30-1-206(2) states that subsection (1) of the statute does not apply to contracts for the sale of goods (30-2-201) nor of securities (30-8-123) nor to security agreements (30-9A-203).

Further, Section 610 of the Indenture provides that if the Property Trustee "fails to enforce its rights with respect to the Securities or the related Trust Agreement, a holder of Preferred Securities may institute legal proceedings directly against the Company to enforce the Property Trustee's rights with respect to the Securities or such Trust Agreement, to the fullest extent permitted by law . . ." The Trustee did not bring a claim against Defendants, and Magten is acting as an express third party beneficiary to the Indenture. Therefore, Defendants's argument fails.

## IV.    Did Magten Waive Complaints Stemming from the Transfer?

Defendant argues that Magten waived any complaints it may have from the transfer because Magten's predecessor and the Trustee acquiesced to the transfer. Magten relies on case law from other jurisdictions in support of their argument that waiver is a question of fact for the jury and summary judgment is appropriate only when waiver is the sole reasonable inference that can be drawn from the evidence (cited by Magten as *Lynch v. CIBY 2000*, No. Civ.A 97-9022, 1998 U.S. Dist. LEXIS 23497, *13-14 (D.Cal., July 6, 1998). Magten also argues that failure to

7

object immediately to a party's unlawful act does not by itself constitute a waiver. *See* 28 Am. Jur. 2d Estoppel and Waiver § 209; *Hansen v. 75 Ranch Company*, 1998 MT 77, 957 P.2d 32.

It appears that this argument or a similar argument has appeared before Judge Case, and in his August 20, 2004 Opinion, Judge Case discusses Magten's allegations that Defendants had a fraudulent intent and whether NorthWestern's assumption of obligations pursuant to the transaction was meaningless. Magten asserts that the Second and Third Supplemental Indentures were executed at a time when the only financial information publicly available concerning NorthWestern's financial condition were fraudulent and, therefore, the execution of the supplement indentures cannot be deemed a waiver of a right to assert a claim based upon the transaction. Because of these allegations by Magten, there appears to be several issues of material fact raised by Magten which would be best left to a jury's determination.

For the foregoing reasons, Defendants' Motion for Summary Judgment (*Doc. #14*) is DENIED. The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 21 day of January, 2005.

Richard F. Cebull
U.S. DISTRICT COURT JUDGE

CERTIFICATE OF MAILING
DATE: 1/27/05 BY: ___
I hereby certify that a copy
of this order was mailed to:
J. Goetz,
J. Devian Geddes
B. Steingart
J. Brewer
K. Beatty
S. Kaleczye

8

# Exhibit C



G. ANDREW ADAMEK
CHAD E. ADAMS
DANIEL S. AUERBACH
KIMBERLY A. BEATTY
SARA S. BERG
LEO BERRY
BRAND G. BOYAR
MARK D. ETCHART
OLIVER H. GOE
AIMEE GRMOLJEZ
J. DANIEL HOVEN

### BROWNING, KALECZYC, BERRY AND HOVEN, P.C.
### ATTORNEYS AT LAW

STANLEY T. KALECZYC
KATI G. KINTLI
MATTHEW KUNTZ
CATHERINE A. LAUGHNER
DAVID M. MCLEAN
MARK R. TAYLOR
W. JOHN TIETZ
TREVOR L. UFFELMAN
CHAD R. VANDIKO
STEVEN T. WADE
LEO S. WARD
RYAN C. WILLMORE

Mailing Address
POST OFFICE BOX 1697
HELENA, MONTANA 59624
TELEPHONE (406) 443-6820
bkbh@bkbh.com

Street Address
139 NORTH LAST CHANCE GULCH
HELENA, MONTANA 59601
TELEFAX (406) 443-6883
www.bkbh.com

ED BARTLETT, Of Counsel
R. STEPHEN BROWNING, Retired

January 29, 2007

Bonnie Steingart, Esq.                                    *Via Email and First Class Mail*
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

RE:    *Magten Asset Management Corp. v. Hanson and Kindt*; CA No. 05-0499-JJF

Dear Bonnie:

We write to request that Magten voluntarily dismiss with prejudice the above-referenced litigation against Messrs. Hanson and Kindt. We base this request on Judge Farnan's recent decision in *Magten Asset Management Corp. v. Paul Hastings Janofsky & Walker, LLP*, CA No. 04-1256-JJF ("PHJW Order"), a copy of which is attached to this letter as Exhibit A. Because the reasoning supporting Judge Farnan's decision in *Magten v. PHJW* is equally applicable to Magten's case against Messrs. Hanson and Kindt, we believe when faced with the proper motion, Judge Farnan will dismiss with prejudice this case as well. Therefore, we request you voluntarily dismiss this case with prejudice in order to save the parties and the Court from the effort of briefing and hearing this matter.

Specifically, as you know, Judge Farnan found that a party who is not the transferee of the assets in question will not be liable for any alleged fraudulent transfer. *See* PHJW Order, at 6. Just like PHJW, neither Messrs. Hanson or Kindt received the assets in question; therefore, the Court will also hold that Magten cannot establish its claims against them.

Further, Judge Farnan specifically held Magten lacks standing to pursue its claims because its claims are derivative claims. *See* PHJW Order at p. 8. Because Montana's Limited Liability Company Act only permits derivative claims against a limited liability company to be brought by a member of the Company who was a member at the time of the transaction at issue, and because Magten was not a member at the time of the Transfer at issue, Magten lacks standing to pursue these claims. Further, Judge Farnan specifically held that Magten lacks standing to bring a derivative claims against Clark Fork as a creditor because he found Magten was not a creditor of Clark Fork at the time of the Transfer. *See* PHJW Order, at p. 9. Thus,

RE: *Magten v. Hanson and Kindt*
January 29, 2007
Page 2

Judge Farnan found Magten cannot satisfy the "contemporaneous ownership" requirement under
Montana's Limited Liability Company Act. For these reasons, we believe Judge Farnan will
preclude this suit against Messrs. Hanson and Kindt.

Finally, we believe Magten cannot take solace in any of Judge Cebull's prior Orders
denying the Motion to Dismiss or the Motion for Summary Judgment as "the law of the case."
None of those orders specifically addressed the issues addressed by Judge Farnan.

First, Judge Cebull did not address whether Magten may properly seek to impose liability
pursuant to the MUFTA against a party who did not receive the assets in question. Therefore,
Judge Cebull did not address Magten's standing to bring this action. Second, Judge Cebull did
not address the derivative nature of these claims or impact of Mont Code Ann. § 35-8-1104 on
this case. Judge Cebull did acknowledge that all parties, including Magten and Judge Case,
admitted Magten was not a creditor of Clark Fork at the time of the Transfer. *See* Order Denying
Motion to Dismiss, at p. 4; Order Denying Motion for Summary Judgment, at p. 5. In fact, Judge
Cebull simply acknowledged that notwithstanding that Magten was not a creditor of Clark Fork
at the time of the Transfer, there had been no prior judicial determination as to whether Magten
had standing to assert these claims. *Id.* So, while Judge Cebull found that Judge Case's prior
orders did not preclude Magten's standing, Judge Cebull did not find Magten possessed standing
either. Finally, Judge Cebull did not address whether Magten was a member of Clark Fork at the
time of the Transfer, nor did Judge Cebull preclude the argument of Messrs. Hanson and Kindt
that they had no ability to direct the actions of Clark Fork. Rather, Judge Cebull himself
recognized that he did not have the requisite corporate documents in the record to decide that
issue one way or the other. *See* Order Denying Motion to Dismiss, at p. 4.

For these reasons, we request you dismiss with prejudice Magten's litigation against
Messrs. Hanson and Kindt. If we do not hear a response from you by **12:00pm MST (2:00 pm
EST) on Thursday, February 1, 2007**, we will file the appropriate motions with Judge Farnan
and represent to the Court that Magten opposes such motions.

Sincerely,

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By _Kimberly Beatty_
Stanley T. Kaleczyc
Kimberly A. Beatty

RE: *Magten v. Hanson and Kindt*
January 29, 2007
Page 3

cc:    John E. James, Esq.
       Gary L. Kaplan, Esq.
       John W. Brewer, Esq.
       Bijan Amini, Esq.
       Jesse H. Austin, III, Esq.
       Victoria W. Counihan, Esq.
       Karol K. Denniston, Esq.
       Dennis E. Glazer, Esq.
       David A. Jenkins, Esq.
       Paul Spagnoletti, Esq.
       Adam G. Landis, Esq.
       Dennis A. Meloro, Esq.
       Curtis S. Miller, Esq.
       Kathleen M. Miller, Esq.
       John V. Snellings, Esq.
       Joseph D. Pizzurro, Esq.
       Denise Seastone Kraft, Esq.
       Dale R. Dube

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|

MAGTEN ASSET MANAGEMENT : 
CORPORATION, suing individually : 
and derivatively on behalf of : 
CLARK FORK AND BLACKFOOT, LLC, : 
 : 
     Plaintiff, : 
 : 
 : 
    v. : Civil Action No. 04-1256-JJF
 : 
PAUL HASTINGS JANOFSKY & WALKER : 
LLP, : 
 : 
    Defendant. : 

---

Bijan Amini, Esquire and Avery Samet, Esquire of STORCH AMINI &
MUNVES PC, New York, New York.
David A. Jenkins, Esquire and Kathleen M. Miller, Esquire, of
SMITH, KATZENSTEIN & FURLOW, LLP, Wilmington, Delaware.

Attorneys for Plaintiff, Magten Asset Management Corporation.

Dennis E. Glazer, Esquire and Paul Spagnoletti, Esquire of DAVIS
POLK & WARDWELL, New York, New York.
Robert J. Dehney, Esquire and Curtis S. Miller, Esquire of
MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware.

Attorneys for Defendant, Paul Hastings Janofsky & Walker LLP.

---

## MEMORANDUM OPINION

January ⟨handwritten⟩ 2007
Wilmington, Delaware



Farnan, District Judge

Presently before the Court is a Motion For Judgment On The
Pleadings (D.I. 86) filed by Defendant, Paul Hastings Janofsky &
Walker, LLP. For the reasons set forth below, the Court will
grant the Motion.

## I.    BACKGROUND

By its Complaint, Plaintiff Magten Asset Management
Corporation, alleges that Northwestern Corporation
("Northwestern") attempted to cover up its losses from poor
investment decisions by stripping the assets of its solvent and
profitable subsidiary, Clark Fork and Blackfoot LLC ("Clark
Fork"). Specifically, Magten contends that Northwestern
transferred to itself assets of Clark Fork, valued between $1.1
and 1.4 billion, in exchange for Northwestern's assumption of
$700 million in Clark Fork's debt. Magten contends that this
consideration was inadequate and illusory, and that Northwestern
subsequently encumbered Clark Fork's assets with new debt, which
resulted in the disenfranchisement of Clark Fork's creditors.
Shortly thereafter, Northwestern filed for Chapter 11 bankruptcy
protection.

Paul Hastings has admitted that it represented both
Northwestern and Clark Fork in the transfer. However, Magten
contends that Paul Hastings aided and abetted Clark Fork's
directors and officers in breaching their fiduciary duties and

knowingly designed and implemented the transfer with the purpose
of defrauding Clark Fork's creditors.

One of Clark Fork's creditors was Montana Power Capital I
(the "QUIPS Trust"). Pursuant to an Indenture Agreement (the
"Indenture") dated November 1, 1996 between Clark Fork's
predecessor, the Montana Power Company, and Bank of New York[1],
the QUIPS Trust was issued $65 million in bonds by the Montana
Power Company. Instead of selling these bonds directly to
investors, the QUIPS Trust issued Series A 8.45% Quarterly
Preferred Securities (the "QUIPS"), whose value was based
entirely on Clark Fork's ability to pay interest and principal to
the Quips Trust. The Indenture also provided that the holders of
the QUIPS were the intended beneficiaries of Clark Fork's
obligations to the QUIPS Trust and that, if the trust failed to
act, any holder of the QUIPS could sue directly to enforce the
rights of the QUIPS Trust. Magten owns in excess of 33% of the
QUIPS and contends that it is an express third-party beneficiary
under the Indenture.

By its Complaint, Magten asserts four causes of action
individually and derivatively on behalf of Clark Fork against

---

[1]    The Bank of New York has been succeeded by Law
Debenture Trust Company of New York.

2

Paul Hastings. Specifically, Magten contends that Paul Hastings
(1) aided and abetted the officers of Clark Fork in breaching the
fiduciary duties they owed to Clark Fork's creditors by carrying
out the allegedly fraudulent transfer without adequate
consideration and rendering Clark Fork insolvent; (2) aided and
abetted the allegedly fraudulent transfer by structuring the
transaction to leave Clark Fork insolvent and providing
substantial assistance and guidance to Northwestern and Clark
Fork to carry out the transaction; (3) engaged in a civil
conspiracy to conduct the allegedly fraudulent transfer; and (4)
committed malpractice by breaching its duties to Clark Fork in
failing to disclose its conflict of interest to Clark Fork's
officers and directors.

## II. PARTIES' CONTENTIONS

By its Motion, Paul Hastings contends that Magten's claims
should be dismissed, because Paul Hastings was not the transferee
of the assets in question. According to Paul Hastings, Montana's
Uniform Fraudulent Transfer Act ("MUFTA") does not impose
liability on non-transferees, and the imposition of any such
liability would be inconsistent with the purpose of fraudulent
transfer statutes in general.

Paul Hastings also contends that Magten does not have
standing to assert its claims against Paul Hastings, because

3

these claims are derivative claims accruing to Clark Fork and not to any creditors of Clark Fork.  Paul Hastings also contends that Clark Fork is a limited liability company under Montana law and the applicable Montana statute only authorizes members of the limited liability company to bring derivative claims.  Paul Hastings further contends that, in any event, Magten was not a creditor of Clark Fork at the time of the allegedly fraudulent transfer, and therefore, Magten lacks standing to bring this derivative law suit.

In response, Magten contends that the MUFTA preserves principles existing at equity and common law, and Montana courts have long-recognized a cause of action for conspiracy to defraud creditors.  Magten contends that courts have upheld claims for conspiracy and aiding and abetting fraudulent conveyances under the Uniform Fraudulent Conveyance Act.

With respect to the question of standing, Magten contends that Montana's limited liability code says nothing about the rights of creditors, and therefore, these statutes do not limit Magten's ability to sue.  Magten also contends that it is an express third party beneficiary under the Indenture, and both the United States Bankruptcy Court for the United States District

4

Court for the District of Montana rejected Paul Hastings' lack of standing arguments.

## III. STANDARD OF REVIEW

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards that apply to a motion to dismiss under Rule 12(b)(6). Specifically, the Court must accept the facts alleged in the pleadings as true and draw all reasonable factual inferences in the light most favorable to the nonmovant. A motion for judgment on the pleadings may only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The movant bears the burden of demonstrating that no material issue of fact remains to be resolved and judgment as a matter of law is appropriate. Institute for Scientific Info v. Gordon & Breach, Sci. Publs., Inc., 931 F.2d 1002, 1005 (3d Cir. 1991).

## IV. DISCUSSION

Magten's claims in this action are based upon an alleged fraudulent transfer under Mont. Code Ann. § 31-2-326, et seq. At least one court interpreting the MUFTA has recognized that it "bear[s] a close resemblance" to the language of the Bankruptcy Code, and therefore, the fraudulent transfer provisions of the

5

MUFTA should be interpreted "contemporaneously with those of the Bankruptcy Code." Samson v. U.S. West Communications, Inc. (In re Gigonis), 208 B.R. 950, 958 (Bankr. D. Mont. 1997). The majority of courts interpreting the Bankruptcy Code have declined to impose liability for fraudulent transfers on third parties who did not receive the assets in question. See e.g., Mack v. Newton, 737 F.2d 1343, 1358 (5th Cir. 1984) (recognizing that holding nontransferee liable for fraudulent transfer is inconsistent with purpose of fraudulent transfer statutes which is to "preserve the assets of the bankrupt" and not "to render civilly liable all persons who may have contributed in some way to the dissipation of those assets"); Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 737 & n. 10 (1st Cir. 1982) (finding no liability because neither defendant received any of the fraudulently transferred property); Jackson v. Star Sprinkler Corp., 575 F.2d 1223, 1234 (8th Cir. 1978) (holding that "recovery under the Bankruptcy Act does not extend to permit a judgment against 'conspirators' who did not receive the property transferred").

The MUFTA also expressly provides that it should "be applied and construed to effectuate the general purpose of making uniform the law with respect to the subject of this part among states

6

enacting it." Mont. Code Ann. § 31-2-327. The majority of
courts interpreting state UFTA laws, whose provisions have been
similar to those enacted by the State of Montana, have concluded
that liability cannot be imposed on non-transferees under aiding
and abetting or conspiracy theories. See e.g., In re Parmalat
Sec. Litig., 377 F. Supp. 2d 390, 417 (S.D.N.Y. 2005) (holding
that aiding and abetting claims do not exist under Illinois UFTA
and recognizing that courts have been reluctant to impose such
liability absent statutory authorization); Baker O'Neal Holdings
v. Ernst & Young, 2004 U.S. Dist. LEXIS 6277 (S.D. Ind. Mar. 24,
2004) (holding that "catch-all" provision similar to one
contained in MUFTA did not encompass aiding and abetting
liability); Rohm & Haas Co. v. Capuano, 301 F. Supp. 2d 156, 161
(D.R.I. 2004) (refusing to extend liability for fraudulent
transfer to a nontransferee under the Rhode Island UFTA); Freeman
v. First Union Nat'l Bank, 865 So. 2d 1272 (Fla. 2004) (holding
that aiding and abetting claims may not be brought under Florida
UFTA).

It is evident from the pleadings in this case, that Paul
Hastings did not receive the assets in question. As the
Complaint alleges, Northwestern was "the only party that
benefitted in the transaction." (D.I. 1 at ¶ 5). Because the
Court concludes its interpretation of the MUFTA should be guided

7

by the majority approach to this issue, the Court concludes that
Magten cannot establish its claims for aiding and abetting and
conspiracy based upon an alleged fraudulent transfer under the
MUFTA.  Accordingly, the Court will grant Paul Hastings Motion
for Judgment on the pleadings.

To the extent that any issue remains regarding Magten's
claims that Paul Hastings committed malpractice and aided and
abetting the officers and directors of Clark Fork to breach their
fiduciary duties, the Court concludes that Magten lacks standing
to pursue these claims.  Under Montana law, "stockholders and
guarantors of a corporation do not have the right to pursue an
action on their own behalf when the cause of action accrues to
the corporation."  Kondelik v. First Fidelity Bank, 8557 P.2d
687, 692 (Mont. 1993) (citations omitted).  Regardless of any
claims that Clark Fork was "in the zone of insolvency," the Court
concludes that Magten's claims are appropriately considered to be
derivative claims.  See e.g., Production Resources Group, L.L.C.
v. NCT Group, Inc., 863 A.2d 772, 776, 792 (Del. Ch. Ct. 2004).
Under the Montana statue authorizing derivative claims against
limited liability companies, such claims may only be brought by
member of the company, who was a member at the time of the
transaction at issue.  Mont. Code Ann. 35-8-1104(2).

8

Magten contends that it has third party beneficiary standing under the Indenture, and therefore, it has standing to sue Paul Hastings regardless of the express provisions of Section 35-8-1104(2). While the Indenture may give Magten the right to enforce the Trust's rights, in the Court's view, it does not provide Magten with the right to bring its derivative claims on behalf of Clark Fork. Even if Magten can bring a derivative claim against Clark Fork as a creditor, Magten has not demonstrated that it was a creditor of Clark Fork at the time of the alleged transaction at issue. Thus, Magten cannot satisfy the "contemporaneous ownership" requirements of Section 35-8-1104, whose purpose is particularly applicable here, i.e. to prevent courts from litigating "purchased grievances." <u>Cf. Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)</u>, 320 F.3d 291, 297 (2d Cir. 2003) (discussing contemporaneous ownership provision in context of Federal Rule of Civil Procedure 23.1 pertaining to derivative actions). Accordingly, the Court concludes, in the alternative, that Magten lacks standing to bring its derivative claims against Paul Hastings.

## V.    CONCLUSION

For the reasons discussed, the Court will grant Paul Hastings' Motion For Judgment On The Pleadings.

An appropriate Order will be entered.

9