# Exhibit A



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | ) ) ) | Cause No. CV-04-26-BU-RFC |
| Plaintiff, | ) ) | |
| vs. | ) ) | **ORDER** |
| MIKE J. HANSON AND ERIE J. KINDT, | ) ) | |
| Defendants. | ) ) ) | |

## BACKGROUND

On February 15, 2002, pursuant to the terms of a Unit Purchase Agreement ("UPA")

entered into between NorthWestern, as purchaser, and Montana Power Company ("MPC") and

Touch America Holdings, Inc. ("TAH"), as sellers, NorthWestern acquired sole unit interest in

Montana Power, LLC ("MPLLC"). Two days previously, as part of a corporate reorganization of

MPC into TAH, the electric and natural gas transmission and distribution assets of MPC, as well

as MPC's interest in the Milltown Dam, was transferred from MPC to MPLLC. The assets and

liabilities transferred to MPLLC were certain 8.45% Junior Subordinated Debentures due in 2036

which had been issued by MPC in or about 1996. The interest paid on these Junior Debentures

created the cash flow to make dividend payments on certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPS") which had previously been issued by Montana Power Capital I (The "Trust"). The sole assets of the Trust are the Junior Debentures. Plaintiff Magten is a holder of 33% of the Series A 8.45% QUIPS, with a principal face value in excess of $20 million.

In August 2002, NorthWestern authorized and directed the transfer of the electric and natural gas transmission and distribution assets and liabilities held by its subsidiary to it, the parent corporation. The transfer was effected on November 15, 2002. The Montana Utility Assets and Liabilities transferred included the obligations associated with the Junior Debentures and QUIPS. Other assets and liabilities remained with the limited liability company, whose name was changed to Clark Fork and Blackfoot, LLC. Pursuant to the operation of the QUIPS Trust Documents, as amended on or about August 13, 2002, upon the closing of the transfer, Magten ceased to be a creditor of Clark Fork and became a creditor of NorthWestern only.

Subsequently, on September 14, 2003, NorthWestern filed a voluntary petition for reorganization in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Magten filed an adversary proceeding against NorthWestern in the bankruptcy proceeding. On April 19, 2004 Magten filed a complaint against Officers of Clark Fork, Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen Senechal, alleging that Defendants had breached a fiduciary duty to Plaintiff because Clark Fork transferred certain assets and liabilities of Clark Fork (the "Montana Utility Assets and Liabilities") to its corporate parent and sole owner, NorthWestern.

Defendants Hanson and Kindt have moved to dismiss the complaint for the following reasons: (1) as a matter of law, only the member of a limited liability company, in this case

2

NorthWestern, has the legal authority to order the transfer of assets and liabilities out of a limited liability company; (2) as a matter of law, Defendants owed no fiduciary duty to Magten; and (3) the terms of the relevant documents on which Magten bases its claim permitted the transfer of Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

## STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) Fed. R. Civ. P. the Court must accept as true all well-pleaded allegations of fact in the complaint and construe them in the light most favorable to the plaintiffs. *Burgert v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). Dismissal for failure to state a claim is appropriate if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

## ANALYSIS

### 1) Do only the members of a limited liability company have the legal authority to order the transfer of assets and liabilities out of a limited liability company?

Defendants argue that only the members have the authority to transfer all or substantially all of the limited liability company's assets. Defendants assert that because NorthWestern was the sole Member of Clark Fork, they could merely carry out the directives of the Member and Manager and had no individual authority or power to bind or prevent Clark Fork from transferring the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

Pursuant to the Montana Limited Liability Company Act, "*unless the articles of*

3

*organization or the operating agreement provide otherwise*, the only matters of a member-managed or manager-managed company's business requiring the consent of all of the members are . . . the sale, lease, exchange or other disposal of all, or substantially all, of the company's property with or without goodwill." Mont. Code Ann. §35-8-307(3)(l) (Emphasis added).

Because this Court was not provided with a copy of the operating agreement for Clark Fork and Black Foot, LLC, it is unable to determine whether only the members of the limited liability company have the legal authority to order the transfer of assets and liabilities out of the limited liability company. The language of Montana's Limited Liability Company Act clearly allows for the possibility of the operating agreement to authorize officers to sell, lease, exchange or dispose of the company's property.

## 2)    Did Defendants owe a fiduciary duty to Magten, as one of Clark Fork's creditors?

Defendants allege that NorthWestern was and is the sole Member and Manager of Clark Fork, and therefore, NorthWestern, as either Member or Manager, owes the fiduciary duties of loyalty and care to Clark Fork, so the Officers of Clark Fork have no duties or obligations conferred upon them by the Montana Limited Liability Company Act. This Court previously ruled in its January 27, 2005 Order that despite Judge Case's judicial determination that Magten never was a creditor of Clark, Magten is not precluded from asserting a breach of fiduciary duty claim.

4

**3)    Do the relevant documents on which Magten bases its claim permit the transfer of
Montana Utility Assets and Liabilities from Clark Fork to NorthWestern?**

Defendants argue the Indenture and its supplements expressly state that a transfer of

assets conducted in accordance with section 1101 of the Indenture has the affect of releasing the

predecessor entity of all obligations under the Indenture or any Outstanding Securities

thereunder. Defendants assert that this Indenture controls the rights of Plaintiff and Plaintiff

should not be allowed to object to acts that were performed in accordance with the terms of the

Indenture. Plaintiffs rebut this by arguing that there was no authorization for the transaction

where the entity purportedly assuming Clark Fork's obligations to the Trust and the holders of

the QUIPS were already insolvent and would never be able to meet the obligations.

Defendant is correct in that the Indenture does not expressly require the entity assuming

the obligation be solvent. However, the Court must accept as true all well-pleaded allegations of

fact in the complaint and construe them in the light most favorable to the plaintiffs. The

Indenture at section 112 provides that it is governed by New York law and in *Blackman v. Estate

of Battcock*, 587 N.E.2d 280, 285 (N.Y. 1991), the Court stated that the aim of the contract

interpretation is not simply mechanical application of the literal language of the contract, but also

consideration of what may reasonably be implied from the language in effectuating the parties'

purpose in entering the contract. Further, as correctly stated by Plaintiff, the Indenture is subject

to the inherent covenant of good faith and fair dealing. The covenant of good faith and fair

dealing "is violated when a party to a contract acts in a manner that, although not expressly

forbidden by any contractual provision, would deprive the other of the right to receive the

5

benefits under the agreement." *Don King Productions, Inc. v. Douglas*, 742 F.Supp.741
(S.D.N.Y. 1990). There is a concern as to whether it is good faith and fair dealing in carrying out
a transaction in which Clark Fork will be released of all further obligations under the Indenture
because its obligations have been assumed by another entity which is known to be insolvent.

For the foregoing reasons, Defendants' Motion to Dismiss [*doc. #4*] is **DENIED**. The
Clerk of Court is directed to notify the parties of the making of this Order.

DATED this ____ day of April, 2005.

Richard F. Cebull
U.S. DISTRICT COURT JUDGE

CERTIFICATE OF MAILING
4/1/05    Ca.

S. Kaleczyc
K. Beatty
B. Steingart
J. Brewer
J. Goetz
J. Geddes

6

# Exhibit B

FILED
BILLINGS DIV.

2005 JAN 27 PM 2 0⁷;

PATRICK E. DUFFY, CLERK

Y_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### BILLINGS DIVISION

MAGTEN ASSET MANAGEMENT       )
CORPORATION,                  )        Cause No. CV-04-26-BU-RFC
                              )
          Plaintiff,          )
                              )
     vs.                      )    **ORDER**
                              )
MIKE J. HANSON AND ERIE J. KINDT,  )
                              )
          Defendants.         )
_____)

RECEIVED
JUL 1 8 ...
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

0 5 -    4 9 9

## BACKGROUND

On February 15, 2002, pursuant to the terms of a Unit Purchase Agreement ("UPA")

entered into between NorthWestern, as purchaser, and Montana Power Company ("MPC") and

Touch America Holdings, Inc. ("TAH"), as sellers, NorthWestern acquired sole unit interest in

Montana Power, LLC ("MPLLC"). Two days previously, as part of a corporate reorganization of

MPC into TAH, the electric and natural gas transmission and distribution assets of MPC, as well

as MPC's interest in the Milltown Dam, was transferred from MPC to MPLLC. The assets and

liabilities transferred to MPLLC were certain 8.45% Junior Subordinated Debentures due in 2036

which had been issued by MPC in or about 1996. The interest paid on these Junior Debentures

created the cash flow to make dividend payments on certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPS") which had previously been issued by Montana Power Capital I (The "Trust"). The sole assets of the Trust are the Junior Debentures. Plaintiff Magten is a holder of 33% of the Series A 8.45% QUIPS, with a principal face value in excess of $20 million.

In August 2002, NorthWestern authorized and directed the transfer of the electric and natural gas transmission and distribution assets and liabilities held by its subsidiary to it, the parent corporation. The transfer was effected on November 15, 2002. The Montana Utility Assets and Liabilities transferred included the obligations associated with the Junior Debentures and QUIPS. Other assets and liabilities remained with the limited liability company, whose name was changed to Clark Fork and Blackfoot, LLC. Pursuant to the operation of the QUIPS Trust Documents, as amended on or about August 13, 2002, upon the closing of the transfer, Magten ceased to be a creditor of Clark Fork and became a creditor of NorthWestern only.

Subsequently, on September 14, 2003, NorthWestern filed a voluntary petition for reorganization in bankruptcy pursuant to Chapter 11 of the Bankruptcy Code. Magten filed an adversary proceeding against NorthWestern in the bankruptcy proceeding. On April 19, 2004 Magten filed a complaint against Officers of Clark Fork, Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen Senechal, alleging that Defendants had breached a fiduciary duty to Plaintiff because Clark Fork transferred certain assets and liabilities of Clark Fork (the "Montana Utility Assets and Liabilities") to its corporate parent and sole owner, NorthWestern.

2

Defendants have moved the Court for summary judgment on the grounds that Magten was not a creditor of Clark Fork, and therefore, Clark Fork does not have standing to assert a creditor's claim and Defendants owe no duty to Magten.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150 (9th Cir. 1997) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Even if the evidence is merely colorable or is not significantly probative, a grant of summary judgment is still appropriate. *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1288 (9th Cir. 1987). The party moving for summary judgment bears the initial burden of proof to identify the absence of a genuine issue of material fact.

Once the moving party has satisfied this burden, the opposing party must set forth specific facts showing there remains a genuine issue for trial, in order to defeat the motion. Fed.R.Civ.P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986) (*cert. denied* 479 U.S. 949 (1986)). Mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 252.

3

## ANALYSIS

I.    **Does a prior judicial determination that Magten was not a creditor of Clark Fork and Magten's admission it was not a Creditor of Clark Fork at the time of the transaction result in Magten not having standing to assert a creditor's claim that Defendant owed a duty to Magten?**

Defendants argue that it has been judicially determined that Magten never was a creditor

of Clark Fork and Magten has admitted that it was not a creditor of Clark Fork at the time of the

transaction, and therefore, Clark Fork does not have standing to assert a creditor's claim and

Defendants owe no duty to Magten.

In an opinion dated July 23, 2004, Hon. Charles B. Case, II, who is presiding over

Northwestern's bankruptcy held as follows:

> The Debtor [Northwestern] has consistently alleged, and Magten has never disputed, that Magten did not own any of the debentures prior to the time the assets were transferred to the Debtor [Northwestern]. Rather, Magten acquired the debentures after the transaction was complete. Therefore, the Debtor [Northwestern] asserts and Magten has not disputed, that Magten was never a creditor of Clark Form at a time when Clark Form had the disputed energy assets. Rather, Magten became a holder of the debentures only after the transaction was completed and was a matter of public record.

> *    *    *

> As noted above, Magten was not a creditor of Clark Form at the time the transaction took place. Rather, it only became a creditor of the Debtor [Northwestern] after the Debtor [Northwestern] assumed the liability associated with the junior subordinated debenture initially issued by Montana Power Company. Thus, Magten is not only not a party directly affected by the transaction -- such as Clark Fork itself – but it was also not an indirect party at the time the transaction took place.

Memorandum Decision at 3, 6-7.

4

This Court may take judicial notice of the adjudicative facts determined by Judge Case in the Bankruptcy proceedings and entered in his July 23, 2004 Memorandum and Order. Fed.R.Evid. 201. Defendants argue that Judge Case's finding that Magten was not a creditor of Clark Fork is dispositive of the issues in this case and rely on the theories of issue preclusion and collateral estoppel to support their argument that summary judgment should be granted in their favor.

However, as pointed out Plaintiffs, Judge Case did not hold that Magten lacked standing to challenge the validity of the transaction. Judge Case's decision did not even address Magten's standing to sue here, but rather decided that NorthWestern's counsel would not be disqualified from representing the debtor in the ongoing Bankruptcy proceeding. Judge Case did not address Magten's ability to pursue damage claims with respect to the QUIPS against Defendants, NorthWestern, or any other entity. Accordingly, Magten's standing to pursue their breach of fiduciary duty claim has not been precluded by Judge Case's decision.

Defendants further argue that Magten has admitted it was not a creditor of Clark Fork at the time of the transfer. Magten concedes that it has never claimed to be a creditor of Clark Fork at the time of the transaction and it was not necessary for Magten to be a creditor. Magten's standing to pursue the breach of fiduciary duty claim derives from the Trustee, who failed to enforce the Trust's rights and the QUIPS holders who were Magten's predecessors in interest.

5

**II.    Did Magten's Acquisition of QUIPS After-the-Fact and with Full Knowledge of the Transfer Preclude Magten from Alleging Innocence?**

Defendants argue that Tolton Embry, Magten's sole owner, testified at his deposition that

he acquired his interest in the QUIPS with full knowledge of the Transfer of the Montana Utility

Assets and Liabilities to NorthWestern before his first acquisition of QUIPS. Magten has

conceded that it knew the transfer to NorthWestern had occurred prior to acquisition of the

QUIPS. Defendants cite no specific authority in support of their position that because Magten

knew of the Transfer of the Montana Utility Assets and Liabilities to NorthWestern it is

precluded from making a claim for breach of fiduciary duty. Instead, Defendants rely on general

maxims of legal jurisprudence. Without providing further specific authority in support of their

position, Defendants' argument must fail.[1]


**III.    Can Magten Stand in the Shoes of its Predecessor-in-Interest to Assert its Creditor Status?**

Defendants argue that Magten is precluded from asserting a claim for breach of fiduciary

duty because the claim was not conveyed or assigned to Magten in writing, and Defendants rely

upon Mont. Code Ann. § 30-1-206, to support their argument, which states:

---

[1]As an aside, Magten cites to *United States ex rel. Hill v. Teledyne, Inc.*, 103 F.3d 143 (9th Cir. 1996) in support of their argument. However, this is an unpublished opinion and Magten gave no indication to the Court in their argument that said opinion was unpublished. Further, the Federal Rules of Appellate Procedure with Ninth Circuit Rules and Circuit Committee Notes Rule 36-3 specifically states that unpublished dispositions and orders of the Ninth Circuit are not binding precedent and a copy of any cited unpublished disposition or order must be attached to the document in which it is cited, as an appendix. Counsel for Magten should take note of and abide by Rule 36-3 for all future filings with this Court.

6

> (1) Except in the cases described in subsection (2) a contract for the sale of personal property is not enforceable by way of action or defense beyond $5,000 in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by the party's authorized agent.

However, a further reading of Mont. Code Ann. § 30-1-206(2), supports Plaintiff's argument that Mont. Code Ann. § 30-1-206 is inapplicable because Mont. Code Ann. § 30-1-206(2) states that subsection (1) of the statute does not apply to contracts for the sale of goods (30-2-201) nor of securities (30-8-123) nor to security agreements (30- 9A-203).

Further, Section 610 of the Indenture provides that if the Property Trustee "fails to enforce its rights with respect to the Securities or the related Trust Agreement, a holder of Preferred Securities may institute legal proceedings directly against the Company to enforce the Property Trustee's rights with respect to the Securities or such Trust Agreement, to the fullest extent permitted by law . . ." The Trustee did not bring a claim against Defendants, and Magten is acting as an express third party beneficiary to the Indenture. Therefore, Defendants's argument fails.

## IV.    Did Magten Waive Complaints Stemming from the Transfer?

Defendant argues that Magten waived any complaints it may have from the transfer because Magten's predecessor and the Trustee acquiesced to the transfer. Magten relies on case law from other jurisdictions in support of their argument that waiver is a question of fact for the jury and summary judgment is appropriate only when waiver is the sole reasonable inference that can be drawn from the evidence (cited by Magten as *Lynch v. CIBY 2000*, No. Civ.A 97-9022, 1998 U.S. Dist. LEXIS 23497, *13-14 (D.Cal., July 6, 1998). Magten also argues that failure to

7

object immediately to a party's unlawful act does not by itself constitute a waiver. *See* 28 Am. Jur. 2d Estoppel and Waiver § 209; *Hansen v. 75 Ranch Company*, 1998 MT 77, 957 P.2d 32.

It appears that this argument or a similar argument has appeared before Judge Case, and in his August 20, 2004 Opinion, Judge Case discusses Magten's allegations that Defendants had a fraudulent intent and whether NorthWestern's assumption of obligations pursuant to the transaction was meaningless. Magten asserts that the Second and Third Supplemental Indentures were executed at a time when the only financial information publicly available concerning NorthWestern's financial condition were fraudulent and, therefore, the execution of the supplement indentures cannot be deemed a waiver of a right to assert a claim based upon the transaction. Because of these allegations by Magten, there appears to be several issues of material fact raised by Magten which would be best left to a jury's determination.

For the foregoing reasons, Defendants' Motion for Summary Judgment (*Doc. #14*) is DENIED. The Clerk of Court is directed to notify the parties of the making of this Order.

DATED this 27th day of January, 2005.

Richard F. Cebull
U.S. DISTRICT COURT JUDGE

CERTIFICATE OF MAILING
DATE: 1/27/05 BY: ____
I hereby certify that a copy
of this order was mailed to:
J. Goetz,
J. Devian Geddes
B. Steingart
J. Brewer
K. Beatty
S. Kalecbye

8

# Exhibit C

1   Stanley T. Kaleczyc
    Kimberly A. Beatty
2   BROWNING, KALECZYC, BERRY & HOVEN, P.C
    139 North Last Chance Gulch
3   P.O. Box 1697                RECEIVED
    Helena, MT 59624
4   Phone: (406) 443-6820        JUL 1 3 2004
    Fax: (406) 443-6883
                                 CLERK, U.S. DISTRICT COURT
5   Attorneys for Defendants.    DISTRICT OF MONTANA
                                 BILLINGS, MONTANA

FILED

JUL - 9 2004

PATRICK E. DUFFY, CLERK
By
        Deputy Clerk

RECEIVE D

JUL 1 9

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

6

7               IN THE UNITED STATES DISTRICT COURT
                        DISTRICT OF MONTANA
8                          BUTTE DIVISION

9   MAGTEN ASSET MANAGEMENT          )   Case No.: CV-04-26-BU-RFC
    CORPORATION,                     )
10                                   )
                Plaintiff,           )
11                                   )                 0 5 -   4 9 9
        vs.                          )
12                                   )   MEMORANDUM IN SUPPORT OF
    MIKE J. HANSON, and ERNIE J. KINDT, )   MOTION TO DISMISS
13                                   )
                Defendant            )
14  _ _ _ _ _ _ _ _ _ _ _ _ _ _ _)

15      On or about April 19, 2004 Plaintiff Magten Asset Management Corporation ("Magten")

16  filed a complaint against Mike J. Hanson, Jack D. Haffey, Ernie J. Kindt and Ellen Senechal

17  alleging that they breached a fiduciary duty to Plaintiff because Clark Fork and Blackfoot, LLC

18  ("Clark Fork") (f/k/a NorthWestern Energy, LLC and Montana Power, LLC), a wholly owned

19  subsidiary of NorthWestern Corporation, ("NorthWestern") transferred certain assets and

20  liabilities of Clark Fork (the "Montana Utility Assets and Liabilities") to its corporate parent and

21  sole owner, NorthWestern. These particular Defendants were named by Magten because at

22  various times they hold or held the title of "officers" of Clark Fork.[1]

23  _ _ _ _ _ _ _ _ _ _

24  [1]  Both Jack Haffey and Ellen Senechal retired prior to the transfer of assets and liabilities complained of by
    Magten. Magten has stipulated to a dismissal of Mr. Haffey and Ms. Senechal, which Stipulation and Proposed
    Order are currently pending before this Court.
                                        - 1

1        Defendants Hanson and Kindt have now moved to dismiss the complaint against them

2   since (1) as a matter of law, only the member of a limited liability company, in this case

3   NorthWestern, has the legal authority to order the transfer of assets and liabilities out of a limited

4   liability company; (2) as a matter of law, the Defendants owed no fiduciary duty to Magten; and

5   (3) in any event, the terms of the relevant documents on which Magten bases its claim permitted

6   the transfer of the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

7                        **STANDARD OF REVIEW**

8        A claim may be dismissed either because it asserts a legal theory that is not cognizable as

9   a matter of law or because it fails to allege sufficient facts to support a cognizable legal claim.

10   See, SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996).

11   The court presumes that all well-pleaded allegations are true, resolves all doubts and inferences

12   in the pleader's favor, and views the pleading in the light most favorable to the non-moving

13   party. Associated General Contractors of America v. Metropolitan Water Dist. of So. Calif., 159

14   F.3d 1178, 1181 (9th Cir, 1998). Furthermore, when deciding a motion to dismiss, the court may

15   consider the complaint and documents whose contents are alleged in a complaint and whose

16   authenticity no party questions, but which are not physically attached to the pleading. In re

17   Syntex Corp. Securities Litigation, 95 F.3d 922, 926 (9th Cir. 1996). See also, 2 Moore's Federal

18   Practice ¶ 12.34 (2000); GFF Corp v. Associated Wholesale Grocers, 130 F.3d 1381, 1384 (10th

19   Cir. 1997); Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994). As indicated in Branch,

20   "documents whose contents are alleged in a complaint and whose authenticity no party

21   questions, but which are not physically attached to the pleading, may be considered in ruling on a

22   Rule 12(b)(6) motion to dismiss. Such consideration does not convert the motion to dismiss into

23   a motion for summary judgment." Id., 14 F.3d at 454. Therefore, it is appropriate to discuss

24   with the Court in the Motion, the Indenture, Guarantee Agreement, and amendments thereto

1   (collectively referred to herein as the "QUIPS Trust Documents")which form part of the basis of
2   Plaintiff's Complaint and which form at least one basis for dismissal of this action.

3                                    **STATEMENT OF FACTS**

4          On February 15, 2002, pursuant to the terms of a Unit Purchase Agreement ("UPA")
5   entered into between NorthWestern, as purchaser, and The Montana Power Company ("MPC")
6   and Touch America Holdings, Inc. ("TAH") as sellers, NorthWestern acquired the sole unit
7   interest in Montana Power, LLC, a Montana limited liability company. Two days previously, as
8   part of a corporate reorganization of MPC into TAH, the electric and natural gas transmission
9   and distribution assets of MPC, as well as MPC's interest in the Milltown Dam, were transferred
10  from MPC to MPLLC.

11         Among the assets and liabilities transferred to MPLLC were certain 8.45% Junior
12  Subordinated Debentures due in 2036 (the "Junior Debentures") which had been issued by MPC
13  in or about 1996. The interest paid on these Junior Debentures created the cash flow to make
14  dividend payments on certain Series A 8.45% Quarterly Income Preferred Securities ("QUIPS")
15  which had previously been issued by Montana Power Capital I (The "Trust"). The Trust is a
16  business trust established pursuant to the Delaware Business Trust Act. The sole assets of the
17  Trust are the Junior Debentures. Plaintiff Magten is currently a holder of some but not all the
18  QUIPS.

19         When NorthWestern acquired the unit interest in MPLLC, NorthWestern became the sole
20  Member of MPLLC and named itself as the Manager of MPLLC pursuant to applicable
21  provisions of Montana Limited Liability Company Act. NorthWestern, as sole Member and
22  Manager, appointed certain individuals, including the Defendants, as "officers" of its wholly
23  owned subsidiary, MPLLC, although Montana statutes do not specifically provide that a limited
24  liability company have officers.

                                              - 3

1      In August 2002, almost six months after NorthWestern acquired MPLLC (whose name

2 by that time had been changed to NorthWestern Energy, LLC), NorthWestern authorized and

3 directed the transfer of the electric and natural gas transmission and distribution assets and

4 liabilities held by its subsidiary to it, the parent corporation. The transfer was effected on

5 November 15, 2002. The Montana Utility Assets and Liabilities transferred included the

6 obligations associated with the Junior Debentures and QUIPS. Other assets and liabilities

7 remained with the limited liability company, whose name was subsequently changed to Clark

8 Fork and Blackfoot, LLC. Pursuant to the operation of the QUIPS Trust Documents, as amended

9 on or about August 13, 2002, upon the closing of the transfer, Magten ceased to be a creditor of

10 Clark Fork and became a creditor only of NorthWestern.

11      On September 14, 2003, ten (10) months after the transfer of the Montana Utility Assets

12 and Liabilities, NorthWestern filed a voluntary petition for reorganization in bankruptcy pursuant

13 to Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court in Delaware.

14      Magten has filed an adversary proceeding against NorthWestern in the bankruptcy

15 proceeding in which it alleges, among other things, that the November 15, 2002 transfer of the

16 Montana Utility Assets and Liabilities from its wholly owned subsidiary limited liability

17 company was a fraudulent conveyance. Magten seeks the rescission of the transfer.

18      Not satisfied with pursuing its claims against the sole Member and Manager of the

19 limited liability company in bankruptcy court, Magten has also filed this action against the

20 "officers" of Clark Fork, asserting that they breached a fiduciary duty allegedly owed to creditors

21 when the sole Member and Manager transferred the Montana Utility Assets and Liabilities to

22 itself.

23      Plaintiff's complaint, however, fails as a matter of law and thus this action should be

24 dismissed with prejudice.

- 4

## ARGUMENT

**I.    As a Matter of Law, Only NorthWestern Corporation and Not the Named Defendants Had the Legal Authority to Order the Transfer of Certain Assets and Liabilities from its Wholly Owned Subsidiary to the Corporate Parent.**

Pursuant to the provisions of the Montana Limited Liability Company Act, only the members, upon the unanimous consent of the members, have the legal authority to transfer all or substantially all of the limited liability company's assets. *See*, Mont. Code Ann. §35-8-307(3)(l).

At all times material to Magten's Complaint, NorthWestern was and is the sole Member and Manager of Clark Fork. Section 35-8-102(20) defines a "Member" as a person who has been admitted to membership in a limited liability company. As the sole Member, NorthWestern was (and is) the sole owner of Clark Fork. Further, Mont. Code Ann § 35-8-301(1) provides in pertinent part:

> Except as provided in subsection (2), a member is an agent of the limited liability company for the purpose of its business or affairs and the act of a member, including but not limited to the execution of any instrument in the name of the limited liability company for apparently carrying on in the usual way the business or affairs of the limited liability company binds the limited liability company, unless the member so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom the member is dealing has knowledge of the fact that the member has no such authority.

Thus, as a matter of law, NorthWestern as the sole Member of Clark Fork, has the authority to act for and bind Clark Fork, its wholly owned subsidiary.

Section 35-8-102(18) defines a "Manager" as a person who is vested with authority under § 35-8-301. Subsections (2) and (3) of section 301 provide:

> (2)    If the articles of organization provide that management of the limited liability company is vested in a manager or managers:
>
>     (a)    a member, acting solely in the capacity as a member, may not be an agent of the limited liability company; and

- 5

(b)    a manager is an agent of the limited liability company for the purpose of its business or affairs and the act of a manager, including but not limited to the execution of any instrument in the name of the limited liability company for apparently carrying on in the usual way the business or affairs of the limited liability company binds the limited liability company, unless the manager so acting has, in fact, no authority to act for the limited liability company in the particular matter and the person with whom the manager is dealing has knowledge of the fact that the manager has no such authority.

(3)    An act of a manager or a member that is not apparently for carrying on in the usual way the business of the limited liability company does not bind the limited liability company, unless authorized in accordance with the articles of reorganization or the operating agreement, at the time of the transaction or at any other time.

Thus, as a matter of law, NorthWestern as the Manager of Clark Fork[2] has the authority to act for and bind Clark Fork.

Section 35-8-107(10) provides that a limited liability company may transfer or otherwise dispose of all or any part of its property and assets. Sections 35-8-702(1) and (5) provide that title to property of the limited liability company that is held in the name of the limited liability company may be transferred only by an instrument of transfer executed by any member or manager in the name of the limited liability company. Section 35-8-307(3)(l) provides that a transfer or other disposition of all or substantially all of a limited liability company assets requires the unanimous consent of the Members of the company. Therefore, as the sole Member and Manager of Clark Fork, NorthWestern had the exclusive power to act and direct the transfer, sale, or other distribution of the assets and liabilities of the limited liability company. Any "officers" of Clark Fork could merely carry out the directives of the sole Member and Manager, and had no individual authority or power to bind or prevent Clark Fork from transferring the Montana Utility Assets and Liabilities from Clark Fork to NorthWestern.

---

[2] None of the Defendants were "Managers" of Clark Fork as defined by 35-8-102(18) and Magten has not alleged they were at any time the statutory "Managers" of Clark Fork.

- 6

1    Moreover, in contrast to the Montana Business Corporation Act, the Montana Limited

2    Liability Company Act does not require that the limited liability company even have officers.

3    Compare e.g. § 35-1-222(1)(a) ("After incorporation . . . the initial directors shall . . . complete

4    the organization of the corporation by appointing officers . . ."); § 35-1-441 ("A corporation has

5    the officers described in its bylaws or appointed by the board of directors in accordance with the

6    bylaws"). The Montana Limited Liability Company Act makes absolutely no reference to

7    "officers." The legal significance of this omission, alone and when read together with Sections

8    301, 307, 107 and 702 of the Montana Limited Liability Company Act, is that as a matter of law

9    the "officers" of Clark Fork have no ability to unilaterally bind Clark Fork in the transfer of the

10    Montana Utility Assets and Liabilities; only the sole Member and Manager of Clark Fork

11    (NorthWestern) had the legal capacity to order the transfer of the Montana Utility Assets and

12    Liabilities from Clark Fork to itself, Clark Fork's sole corporate parent. *See*, Mont. Code Ann. §

13    35-8-307(3)(1); and §§ 35-8-702(1) and (5). Therefore, as a matter of law, the named

14    Defendants may not be held liable for a transfer of assets and liabilities which they could neither

15    order nor prevent.

16

17                    **II.    As a Matter of Law, The Named Defendants Owed No
                            Fiduciary Duty to Magten or Any Other Holder of QUIPS
18                            Which Were General Creditors of the Limited Liability
                            Company.**

19

20    At all times material to this Complaint, either Clark Fork or NorthWestern had a liability

21    to pay interest on the Junior Debentures to the Trust pursuant to the terms and conditions of the

22    various trust documents as amended. The Trust, in turn, had an obligation to pay quarterly

23    dividends to the holders of the QUIPS. Assuming facts as alleged in Plaintiff's complaint,

24

- 7

1   Magten, as a holder of some of the QUIPS, was a general unsecured creditor.[3]  Assuming,

2   arguendo, that Magten was an unsecured creditor of Clark Fork, the "officers" of Clark Fork did

3   not owe any fiduciary duty to any general unsecured creditor, including Magten, either prior to or

4   as of the effective date of the transfer of the Montana Utility Assets and Liabilities to

5   NorthWestern.

6        First, as discussed in the preceding section, the statutory powers and obligations of a

7   limited liability company rest with the members and managers of that limited liability company.

8   Section 35-8-310 discusses the general standards of a member's and of a manager's conduct.

9   The only fiduciary duties owed by a member or a manager of a limited liability company are the

10  duty of loyalty and the duty of care.  Those duties are only owed to the limited liability company

11  and to the other members.  See §§35-8-310(1) and (8).  Under the statutory provisions of the

12  Montana Limited Liability Company Act, no fiduciary duties are owed to a creditor of the limited

13  liability company.

14       NorthWestern was and is the sole Member and Manager of Clark Fork.  Therefore, it is

15  NorthWestern, as either the Member or the Manager, who owes the fiduciary duties of loyalty

16  and care to Clark Fork.  The "officers" of Clark Fork have no duties or obligations conferred

17  upon them by the Montana Limited Liability Company Act.  At most, they function solely as

18  agents of the limited liability company, and then only within the scope of the agency conferred

19  upon them by the principal, which in this case is NorthWestern in its capacity as Manager of

20  Clark Fork.

21

22  _____

[3] There is no dispute that Magten is an unsecured creditor.  The Junior Debentures are unsecured.  The QUIPS by

23  their very nature are in the form of preferred securities which are not secured but whose cash flow originates from
the unsecured debt instruments, the Junior Debentures.  However, it is Defendants contention that by operation of
the QUIPS trust documents, upon the transfer of the Montana Utility Assets and Liabilities, Magten ceased to be a

24  creditor of Clark Fork and became the creditor of NorthWestern.

- 8

1    Even if it could be argued that the "officers" do have statutory fiduciary duties, such

2 duties would be limited to the same duties owed by the members and managers of the limited

3 liability company: the duties of loyalty and care, as provided in Mont. Code Ann. §§ 35-8-

4 310(1), (2) and (3). Importantly, and as noted above, these duties are owed solely to the limited

5 liability company and to the members of the limited liability company. No where in Montana's

6 Limited Liability Company Act do agents of the limited liability company owe a duty to general

7 creditors, either secured or unsecured, of the limited liability company. Therefore, even if the

8 Defendants here as "officers" of Clark Fork owed the fiduciary duties of loyalty and care, those

9 duties were owed only to Clark Fork and its sole Member, NorthWestern. The Defendants as

10 "officers" simply did not owe any fiduciary duty to Magten as a general unsecured creditor of

11 Clark Fork.

12    Second, even if the status of Defendants here as "officers" of a limited liability company

13 were analogous to the duties of officers of a for-profit corporation organized under Montana's

14 Business Corporation Act, Mont. Code Ann. § 35-1-101 et seq., even traditional corporate

15 officers do not owe a fiduciary duty to general creditors of the corporation. *See*, Mont. Code

16 Ann. §§ 35-1-416: requirement for and duties of board of directors; 35-1-418: general standards

17 for directors; 35-1-442: duties of officers; 35-1-443 standards of conduct for officers.

18    Moreover, the rights of Magten are controlled by the QUIPS Trust Documents, including

19 all amendments thereto, under the terms of which the Junior Debentures and QUIPS were issued.

20 *See, e.g.,* Mann v. Oppenheimer & Co., 517 A. 2d 1056, 1061 (Del. 1986) ("The rights of

21 debenture holders are controlled by the terms of the indenture under which the securities are

22 issued."); Katz v. Oak Industries, Inc., 508 A. 2d 873, 879 (Del. CH. 1986) ("The terms of the

23 contractual relationship agreed to and not broad concepts such as fairness define the

24 corporation's obligation to bond holders.") Montana law is consistent with this proposition; the

- 9

1    mere existence of a debtor-creditor relationship does not create a fiduciary duty. Only where a

2    "special relationship" exists between a creditor and debtor might a court find a fiduciary duty

3    which is premised on that special relationship, not on the creditor-debtor relationship. *See*,

4    Simmons Oil Corporation v. Holly Corporation, 258 Mont. 79, 84, 852 P. 2d 523, 526 (1993);

5    Diest v. Wachholz, 208 Mont. 207, 216, 678 P.2d 188, 193 (1984). Magten has not, nor can it,

6    allege any "special relationship" between itself and Clark Fork or NorthWestern. Thus, there is

7    no fiduciary duty between Magten and either Clark Fork or NorthWestern, and, *a fortiori*, there is

8    no fiduciary duty owed by the "officers" of Clark Fork to Magten.

9                    **III.    The Terms of the Relevant Documents on which Magten Bases
                           Its Claim Expressly Permitted the Transfer of the Assets and**
10                          **Liabilities at Issue Here from the Limited Liability Company
                           to NorthWestern.**

11

12    As Magten makes clear in its Complaint, it premises the alleged liability of the named

13    Defendants for a breach of fiduciary duty upon the terms of the QUIPS Trust Documents

14    originally created in 1996 when MPC issued the Junior Debentures and the Trust issued the

15    QUIPS.[4] After MPC created the Trust in 1996, MPC, the Trust, and Bank of New York (the

16    original trustee) entered into the Indenture For Unsecured Subordinate Debt Securities dates as

17    of November 1, 1996 relating to Trust Securities (the "Indenture").[5] The Indenture expressly

18    states that a transfer of assets conducted in accordance with section 1101 of the Indenture has the

19    affect of releasing the predecessor entity of all obligations under the Indenture or any

20    Outstanding Securities thereunder. *See* Indenture, Sec. 1101-1102. The Indenture controls the

21    rights of Magten and Magten should not be allowed to object to acts that were performed in

22    accordance with the terms of the Indenture. *cf.* In re Holiday Mart, Inc., 715 F.2d 430, 432 (9th

23

24    [4] As explained infra, these documents have subsequently been amended in accordance with the terms of those
      documents
      [5] A complete copy of the Indenture is attached as Exhibit A.

- 10

1    Cir. 1983) (recognizing that valid subordination agreements are normally enforced in accordance

2    with their terms). Since the transfers of the Montana Utility Assets and Liabilities complied with

3    Section 1101 of the Indenture and released the predecessor entities under Section 1102, Magten

4    should not be heard to say that anyone violated any alleged duty when the transaction at issue

5    was completed in accordance with the rights granted under the Indenture.

6        The Indenture allows property of the original entity to be transferred to "a Person

7    organized and validly existing under the laws of the United States, any State thereof, or any other

8    jurisdiction." *See* Indenture, Sec. 1101. The only other requirements in Section 1101 of the

9    Indenture are that, immediately after the transaction, no Event of Default "shall have occurred

10   and be continuing" and that the Trustee receive an "Officer's Certificate and an Opinion of

11   Counsel, each stating all of the conditions for the transfer have been met." *See* Indenture, Sec.

12   1101(b)-(c). Magten has not alleged noncompliance with either of these remaining requirements.

13   Conspicuously absent from the Indenture is any requirement of approval by the Indenture

14   Trustee or a holder of an interest in the Indenture Trust prior to a transfer. *See* Indenture, Sec.

15   1101. Therefore, the transfer complained of here complied with section 1101, and the transfer

16   was thus valid under the varying agreements upon which Magten references in its Complaint.

17       Further, the Second Supplemental Indenture and the Amendment to Guarantee

18   Agreement[6], executed by the Trustee, NorthWestern and Clark Fork,[7] expressly reserve the right

19   of Clark Fork to transfer substantially all of its assets to NorthWestern. The Second

20   Supplemental Indenture clearly preserves the right of Clark Fork to transfer substantially all of

21   its assets to another entity and clarifies that this right includes the right of Clark Fort to transfer

---

[6] The Guarantee Agreement and Amendment to Guarantee Agreement are attached as Exhibits B and C respectively.

[7] The Second Supplemental Indenture and Amendment to Guarantee Agreement were entered into on or about August 13, 2002. A complete copy of the Second Supplemental Indenture is attached as Exhibit D.

- 11

1  substantially all of its assets to NorthWestern. *See* Second Supplemental Indenture Section 201.

2  The language is also clear that such a transfer to NorthWestern would relieve Clark Fork of "its

3  obligations under the QUIPS Debenture, the Indenture and hereunder as provided in Article

4  Eleven of the Indenture." *See* Second Supplemental Indenture, Section 201.

5      At the same time that the Second Supplemental Indenture was executed, the Trustee,

6  NorthWestern, and Clark Fork also executed an Amendment to Guarantee Agreement. The

7  Amendment to Guarantee Agreement contains language similar to the Second Supplemental

8  Indenture; it reserves the right of Clark Fork to transfer substantially all of its assets to another

9  entity, and clarifies that this right includes the right of Clark Fork to transfer substantially all of

10  its assets to NorthWestern. *See* Amendment to Guarantee Agreement, section 201. The section

11  also makes clear that such a transfer can be accomplished in compliance with the Indenture. *See*

12  Amendment to Guarantee Agreement, section 201.

13      These documents, executed by the Trustee, further confirm that a transfer of the Montana

14  Utility Assets and Liabilities from Clark Fork to NorthWestern, in compliance with the

15  Indenture, was permissible. The transfer of the Montana Utility Assets and Liabilities by Clark

16  Fork to NorthWestern was allowed by the Indenture and confirmed in later documents executed

17  by the Trustee; the transfers were within the rights granted to Clark Fork and NorthWestern by

18  the Indenture and these other documents. Magten, therefore, can not now complain because

19  NorthWestern and Clark Fork exercised their rights under documents approved by the Trustee of

20  the QUIPS. Nor may Magten hold the "officers" of the limited liability company liable for a

21  transfer of assets and liabilities permitted by those governing documents and approved by the

22  Trustee.

23

24

1

**CONCLUSION**

2 As a matter of law, only NorthWestern, as the sole Member and Manager of Clark Fork,

3 had the legal authority to transfer the Montana Utility Assets and Liabilities from its wholly

4 owned subsidiary to itself. As a matter of law, the Defendants here were neither the Members

5 nor the Managers of Clark Fork, and thus lacked the legal capacity to effectuate such transfer,

6 and thus may not be held liable for the decisions or acts of the Members or Managers of Clark

7 Fork.

8 Further, as a matter of law, the Defendants here owed no fiduciary duty to Magten, a

9 general creditor of the limited liability company. As a matter of law, the only duties owed were

10 the duties of loyalty and care, which duties were owed by the members and managers (here

11 NorthWestern) to the limited liability company (here Clark Fork) and the members (here

12 NorthWestern).

13 Finally, as a matter of law, NorthWestern was within its legal rights to transfer the

14 Montana Utility Assets and Liabilities from its wholly owned subsidiary, Clark Fork, to itself

15 pursuant to the terms and conditions of the QUIPS Trust Documents, and Magten has no standing

16 to complain about such legal and valid transfer, and thus, Defendants may not be held liable for

17 the legal and authorized actions of the Members or Managers of Clark Fork.

18 For these reasons, as a matter of law, Magten's Complaint must be dismissed with

19 prejudice.

20 Dated this _____ day of July, 2004.

21 BROWNING, KALECZYC, BERRY & HOVEN, P.C.

22

23 By _____
Stanley T. Kaleczyc

24 Kimberly A. Beatty

Attorneys for Defendants
- 13

1

## CERTIFICATE OF SERVICE

2   I hereby certify that on the 9th day of July, 2004, a true and correct
copy of the foregoing was mailed by first-class mail, postage prepaid, addressed to:

3

4   James H. Goetz
J. Devlan Geddes
5   Goetz, Gallik & Baldwin, P.C.
35 North Grand
6   P.O. Box 6580
Bozeman, MT 59771-6580

7

Bonnie Steingart
8   John W. Brewer
Fried, Frank, Harris, Shriver & Jacobsen, LLP
9   One New York Plaza
New York, NY 10004

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

- 14

# Exhibit D

1 | Stanley T. Kaleczyc
Kimberly A. Beatty
2 | BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
3 | P.O. Box 1697
Helena, MT 59604-6669
4 | Phone: (406) 443-6820
Fax: (406) 443-6882 RECEIVED
5 |
Attorneys for Defendants AUG 2 3 2004
6 |
CLERK, U.S. DISTRICT COURT
7 | DISTRICT OF MONTANA
BILLINGS, MONTANA

FILED
4:53
AUG 2 0 2004
PATRICK E. DUFFY, CLERK
By_____
Deputy Clerk

(13)

8 | THE UNITED STATES DISTRICT COURT

9 | FOR THE DISTRICT OF MONTANA

10 | BUTTE DIVISION

11 | MAGTEN ASSET MAMAGEMENT
CORPORATION,
12 |
Plaintiff,
13 |
v.
14 |
MIKE J. HANSON and ERNIE J. KINDT,
15 |
Defendants.
16 |

Case No. CV-04-26-BU-RFC

REPLY IN SUPPORT OF MOTION
TO DISMISS

17 | ――――――――――――――――――――――

18 | INTRODUCTION

19 | Despite its passionate and at times venomous opposition to Defendants' Motion to

20 | Dismiss ("Opposition Brief"), Plaintiff, Magten Asset Management Corporation ("Magten") fails

21 | to raise any legitimate reason why this Court should not or cannot dismiss the Complaint with

22 | prejudice. Magten's pleas do not change the insurmountable legal barriers facing their

23 | allegations: (1) as a matter of law, only NorthWestern Corporation as the sole Member and

24 | Manager of Clark Fork and Blackfoot LLC ("Clark Fork") has the legal authority to transfer the

25 | Montana Utility Assets and Liabilities from Clark Fork to NorthWestern and Defendants

26 | statutorily lacked the legal capacity to effectuate such transfer; and (2) Defendants may not be

27 | held liable for the legal and authorized actions of the sole Member of Clark Fork in effecting the

- 1 -

144683.doc/1674.044

1  transfer of the Montana Utility Assets and Liabilities pursuant to the terms and conditions of the

2  QUIPS Trust Documents. Magten can simply prove no set of facts in support of its claim which

3  would entitle it to relief.

### ARGUMENT

I.    **"Officers" of a limited liability company do not owe the**
      **company's creditors a fiduciary duty with respect to**
      **decisions made solely by the Member-Manager of the**
      **company.**

Throughout Magten's Opposition Brief, it relies primarily upon New York and Delaware

decisions concerning the duties of directors of corporations. In so doing, Magten fails to

acknowledge that: (1) Clark Fork is a Montana enterprise and Montana law, not New York or

Delaware law, applies; (2) Clark Fork is a Montana limited liability company, not a Montana

corporation, and thus neither general corporate law nor Montana corporate law are applicable;

(3) Clark Fork is managed by its sole Member and Manager, NorthWestern; and (4) the

transaction at issue, which Magten alleges was a transfer of substantially all of the income

producing assets of Clark Fork to its parent NorthWestern (referred to as "going-flat" or

"Transfer") is a transaction which, as a matter of law, may only be authorized by a unanimous

vote of the members of the limited liability company. Magten's attempt to make Messrs. Hanson

and Kindt responsible for the decisions of the Member-Manager is wrong, as a matter of law, and

warrants dismissal of this case with prejudice.

On pages 6-7 of its Opposition Brief, Magten cites a series of Delaware and New York

decisions which hold generally that when a corporation is insolvent the directors (and, in some

instances, the directors and officers) of the corporation owe a fiduciary duty to the creditors of

the corporation. That the courts in these decisions would impose such a duty upon the directors

of a corporation is not remarkable in view of general corporate law, which generally provides

that the directors of a corporation are responsible for and make key decisions for the corporation.

As the Defendants noted in their opening brief, Montana's Business Corporation Act contains

provisions which are to the same effect. However, as Defendants also stated in their opening

brief, but which Magten is unwilling to recognize and concede, the governance structure of a

- 2 -                                          144683.doc/1674.044

1  Montana limited liability company is different than the governance structure of a Montana

2  corporation. The official comments to Mont. Code Ann. § 35-8-301 provides in pertinent part as

3  follows:

> 4  Members of a member-managed and managers of manager-managed company as
> agents of the firm, have the apparent authority to bind a company to third parties.
> 5  Members of a manager-managed company are not as such agents of the firm and
> do not have the apparent authority, as members, to bind a company. Members
> 6  and managers with apparent authority possess actual authority by implication
> unless the actual authority is restricted in an operating agreement. Apparent
> 7  authority extends to acts for carrying on in the ordinary course the company's
> business and business of the kind carried on by the company. Acts beyond this
> 8  scope bind the company only where supported by actual authority created before
> the act or ratified after the act.

9

10  Montana Code Annotated Annotations 2002, Titles 31-38, § 38-8-301, Official Comments, at

11  630 (emphasis added).

12      Whether Clark Fork is viewed as a member-managed or a manager-managed limited

13  liability company, NorthWestern was the sole decision maker with authority to bind Clark Fork,

14  especially with respect to matters such as alleged by Magten here which, according to Magten,

15  involved the transfer of substantially all the assets of Clark Fork, and thus could not be actions

16  taken in the ordinary course of business by Clark Fork. Mont. Code Ann. § 35-8-307(3)(l).

17      Moreover, Magten reads too much into the Official Comment to § 35-8-102 which

18  provides that, "Managers may designate agents with whatever titles, qualifications and

19  responsibilities they desire. For example, managers may designate an agent as 'president.'"

20  That comment suggests nothing more and nothing less than an agent of a limited liability

21  company only has such authority to act for the limited liability company within the scope of the

22  authority granted by the principal to the agent. The scope of that agency is limited to the

23  business affairs of the limited liability company carried on in the usual way, see, MCA § 35-8-

24  301(2)(b), that is, in the ordinary course of business. The transfer of substantially all the assets

25  of Clark Fork, as alleged by the Plaintiff here, is not a transfer in the ordinary course of business.

26  The authority to decide to make such a transfer may not be delegated to an agent of the limited

27  liability company. Mont. Code Ann. § 35-8-307(3)(l) *requiring* the unanimous consent of the

- 3 -                                                                144683.doc/1674.044

1    members to transfer substantially all of the assets of the limited liability company. All any agent
2    may do is take such steps, such as executing documents for the principal, which the principal
3    authorizes or directs. Thus, it matters not that Messrs. Hanson and Kindt were denominated as
4    "officers" of the limited liability company, the scope of the agency, as a matter of law, did not
5    and could not extend to deciding when or whether Clark Fork could or should transfer
6    substantially all of its assets to NorthWestern. NorthWestern still retained the sole power and
7    responsibility for the decision to transfer the Utility Assets and Liabilities. If Magten has a cause
8    of action against anyone at all, it is against NorthWestern, not the individuals who are sued here.
9    Magten has instituted adversary proceedings in the NorthWestern Bankruptcy. That is the
10   appropriate forum for airing its alleged grievance over the consequences of the transfer of assets
11   which occurred six months before Magten acquired the QUIPS. This fact may give cold comfort
12   to Magten, but it is the legal reality nonetheless.

13           Finally, it is not the law in Montana that an agent is personally liable for every act of his
14   or her principal, nor is it the law in Montana that an agent is personally liable for every act he or
15   she takes in furtherance of the execution of his or her agency. Rather, an agent is only liable for
16   his or her own wrongful acts. As the Montana Supreme Court pointed out in H-D Irrigating, Inc.
17   v. Kimble Properties, Inc., 301 Mont. 34, 8 P.3d 95(2000), an agent is responsible for his or her
18   own false representations. In that case, Lloyd Kimble, the President of Kimble Properties, Inc.
19   was jointly and severally liable with his corporation for false representations which he personally
20   made to the plaintiff about the condition and operation of the irrigation system which his
21   corporation was selling to plaintiff. Id. at 49, 106. In contrast, Magten has not alleged that either
22   Mr. Hanson or Mr. Kindt personally made false or misleading representations to Magten – or any
23   other person—about the financial condition of Clark Fork or NorthWestern or the impact the
24   Transfer would have upon either Clark Fork or NorthWestern. The only act to which Magten
25   has directed the Court's attention is Mr. Hanson's purely ministerial task of executing on behalf
26   of Clark Fork amendments to various documents which memorialized agreements reached
27   between NorthWestern, Clark Fork and the Trustee of the QUIPS. For the reasons stated

                                                    - 4 -                              144683.doc/1674.044

1    previously, the cases which hold directors or officers of a corporation liable for decisions they

2    make on behalf of their corporation are inapposite here and the principles stated in those cases do

3    not apply to agency relationships in which the agent did not, and legally could not, make the

4    decisions about which the Plaintiff now complains.

5                    **II.      The Transfer about which Magten now complains was**
                               **permitted under the QUIPS Trust Documents.**

6

7        The Defendants here have filed simultaneously with this Reply Brief a Motion for

8    Summary Judgment, in which they rely upon the following uncontroverted facts: Magten was

9    not and is not a creditor of Clark Fork, did not even own any QUIPS when the Transfer of Utility

10   Assets and Liabilities occurred, and was fully aware and had conducted its own due diligence

11   when it began acquiring QUIPS six months after the Transfer was completed.[1]  Not only does

12   Magten lack standing to complain about a transaction which had occurred prior to its acquiring

13   any interest in the QUIPS and which, according to its own admissions, was fully disclosed to and

14   known by Magten, as asserted by Defendants in their Summary Judgment Motion, but as argued

15   in Defendants' opening brief in support of their Motion to Dismiss, the Transfer itself was

16   permitted by the QUIPS Trust Documents.  Magten's sole final argument is that the Indenture

17   permitted a transfer of assets which with hindsight Magten believes is commercially unfair and

18   for that reason must be voided.  Not only does the cry of "foul" ring hollow in view of the

19   commercial sophistication of Magten and its own due diligence before it acquired the QUIPS six

20   months after the Transfer, but the terms of the QUIPS Trust Documents clearly permitted the

21   Transfer to occur in November 2002.

22       Section 1101 of the Indenture is clear in empowering Montana Power (and Clark Fork

23   thereafter) to "convey or otherwise transfer, or lease, its properties and assets substantially as an

24

25   [1] Defendants Motion for Summary Judgment addresses each of these issues in detail and gives this Court
     additional grounds upon which to dismiss Magten's Complaint. However, because the issues set forth in
     the Motion for Summary Judgment are independent grounds for dismissal and thus independent of the

26   grounds for dismissal set forth in Defendants' Motion to Dismiss, this Court may grant the Motion to
     Dismiss and dismiss Magten's Complaint with prejudice without first hearing the Motion for Summary

27   Judgment.

144683.doc/1674.044

1  entirety to any Person." The prerequisites of any such transaction were also spelled out in the

2  Indenture, which required:

> 1.  The surviving corporation [here NorthWestern] be "organized and validly
>     existing under the laws of the United States, any State thereof. . ."
>
> 2.  The surviving corporation [here NorthWestern] "assume" in an indenture
>     "executed and delivered to the Trustee, in form satisfactory to the Trustee"
>     the "due and punctual payment of the principal of and premium, if any,
>     and interest, if any, on all Outstanding Securities and the performance of
>     every covenant of the Indenture on the part of the Company to be
>     performed or observed. . ."[2]

8  Magten has not disputed that each of these prerequisites has been met, and, in the

9  adversary proceeding before the NorthWestern Bankruptcy Court in which Magten raises similar

10  objections to the Transfer at issue, Magten has expressly conceded that each prerequisite has

11  been met. Magten conceded that NorthWestern is "validly organized under the laws of the State

12  of Delaware . . ." Adversary Proceeding Complaint ¶14 (emphasis added.)[3]   Magten conceded

13  that under the express terms of the Third Supplemental Indenture, NorthWestern "assumed the

14  due and punctual payment of the principal and interest on the securities issued under the

15  Indenture," and the performance of every covenant of the Indenture. Adversary Proceeding

16  Complaint ¶43 (emphasis added.)[4]

17  Contrary to Magten's assertion, nothing in the Indenture required the assuming

18  corporation (here NorthWestern) to be solvent at the time of assuming payment and the other

19  obligations under the Indenture. Moreover, nothing in Montana Law or under the federal law

20  mandates solvency as a legal requirement before a corporation may contractually assume

21  obligations under an indenture. It is therefore not surprising that Magten refers to no statute,

22  decision, treatise, restatement, or other authority that precludes an insolvent entity from entering

---

[2] Section 1101 of the Indenture also requires that no Event of Default "shall have occurred and be continuing" and that the Trustee receive an "Officer's Certificate and an Opinion of Counsel, each stating that" all of the conditions for the transfer have been met. *See* Indenture §§ 1101(b)-(c). Magten has not alleged noncompliance with these requirements.

[3] A copy of Magten's Complaint in the Adversary Proceeding is attached as Exhibit A. This Court may, of course, take judicial notice of public pleadings in other litigation.

[4] As a result, NorthWestern succeeded and was substituted as the obligor under the Indenture for Montana Power and Clark Fork, and each of those entities was "relieved of all obligations and covenants" under the Indenture. (Indenture at § 1102)

1   into contractual obligations. Indeed, much of the bankruptcy process in the United States
2   involves insolvent corporations being permitted to enter into contractual obligations and to incur
3   debt.

4       Moreover, Magten's reliance upon New York case law interpreting New York's covenant
5   of good faith and fair dealing, the issue involved in <u>Don King Productions, Inc. v. Douglas</u>, 742
6   F. Supp. 741, 767 (S.D.N.Y. 1990), cited at p. 12 of Magten's Opposition Brief, is misplaced.
7   First, Magten was not a party to or beneficiary of the Indenture in November 2002, so it can not
8   claim that the covenant was breached. Further, even if Magten could make out such a claim, it
9   was NorthWestern which effected the Transfer from its wholly owned subsidiary, Clark Fork, to
10  itself. Neither Clark Fork nor, certainly, Messrs. Hanson and Kindt could be liable for a decision
11  of the Member-Manager of Clark Fork. <u>See</u> Section I, *supra*. And, of course, the Defendants
12  here certainly do not concede that any violation ever occurred, especially when the Indenture
13  permitted the transfer in November 2002, almost a year before NorthWestern filed its petition
14  before the Bankruptcy court. Even in <u>Weldon v. Montana Bank</u>, 268 Mont. 88, 94, 885 P.2d
15  511, 515 (1994), the Montana Supreme Court recognized that a duty must exist before a breach
16  of the covenant of good faith and fair dealing may be alleged. For all the reasons discussed
17  above, no duty was owed to Magten by any "officer" of Clark Fork.

18      Contrary to Plaintiffs' assertion, Clark Fork's Transfer of the Utility Assets and
19  Liabilities, such as the QUIPS, and NorthWestern's assumption of obligations under the
20  Indenture as part of the "going flat" transaction were valid under the express terms of the
21  Indenture and under the law; whether Messrs. Hanson and Kindt were aware that either Clark
22  Fork or NorthWestern was insolvent or not at the time is irrelevant.

23  //

24

25

26

27

- 7 -                                   144683.doc/1674.044

1          **CONCLUSION**

2          For each of the reasons set forth in this Reply Brief and in the Defendant's opening brief,

3    Magten can prove no set of facts that supports its claims that would entitle it to the relief

4    requested. Magten's Complaint, therefore, must be dismissed with prejudice.

5          DATED this 20 day of August, 2004.

6                                   BROWNING, KALECZYC, BERRY & HOVEN, P.C.

7

8                              By _____

9                                   Stanley T. Kaleczyc
                                   Kimberly A. Beatty
10                                  BROWNING, KALECZYC, BERRY & HOVEN, P.C.
                                   139 North Last Chance Gulch
                                   P.O. Box 1697
11                                  Helena, MT 59604-6669
                                   Phone: (406) 443-6820
12                                  Fax: (406) 443-6883

13                                   Attorneys for Defendants.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

                                        - 8 -                              144683.doc/1674.044

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on the 20th day of August, 2004, a true copy of the foregoing was
mailed by first-class mail, postage prepaid, addressed as follows:

3

James Goetz
4      J. Devlan Geddes
Goetz, Gallik & Baldwin, P.C.
5      35 North Grand
P.O. Box 6580
6      Bozeman, MT 59771-6580

7

Bonnie Steingert
8      John W. Brewer
Fried, Frank, Harris, Shriver & Jacobson, LLP
9      One New York Plaza
10     New York, New York 10004

11

12

13                                      *Jennifer Mahlum*

14                              BROWNING, KALECZYC, BERRY & HOVEN, P.C.

15

16

17

18

19

20

21

22

23

24

25

26

27

- 9 -                                      144683.doc/1674.044