# Exhibit E

1  Stanley T. Kaleczyc
   Kimberly A. Beatty
2  BROWNING, KALECZYC, BERRY & HOVEN, P.C.
   139 North Last Chance Gulch
3  P.O. Box 1697
   Helena, MT 59604-6669
4  Phone: (406) 443-6820
   Fax: (406) 443-6883
5
   Attorneys for Defendants.
6

RECEIVED
AUG 2 3 2004
CLERK, U.S. DISTRICT COURT
DISTRICT OF MONTANA
BILLINGS, MONTANA

FILED
4-15-3
AUG 2 0 2004
PATRICK E. DUFFY, CLERK
By
Deputy CLerk
(15)

7

8          IN THE UNITED STATES DISTRICT COURT

9            FOR THE DISTRICT OF MONTANA          0 5 ·   4 9 9

10                    BUTTE DIVISION

11 | MAGTENASSET MAMAGEMENT          | Case No. CV-04-26-BU-RFC
     CORPORATION,                    |
12 |                                 | BRIEF IN SUPPORT OF MOTION
         Plaintiff,                  | FOR SUMMARY JUDGMENT
13 |                                 |
14 |     v.                          |
     MIKE J. HANSON and ERNIE J. KINDT
15 |                                 |
         Defendants.                 |
16 |                                 |

17

18         Defendants Mike J. Hanson and Ernie J. Kindt, by and through their undersigned counsel

19 of record, hereby submit this Brief in Support of their Motion for Summary Judgment.

20                          **INTRODUCTION**

21         The allegations raised in the Complaint, and each argument raised by Magten in its brief

22 in opposition to the Motion to Dismiss, are based on one primary assertion: That Magten was a

23 creditor of, or that its predecessors-in-interest were creditors of, Clark Fork and Blackfoot, LLC

24 (aka NorthWestern Energy, LLC, fka MPLLC) (hereinafter collectively referred to as "Clark

25 Fork") at the time Clark Fork's parent corporation and sole Member and Manager transferred

26 Montana Utility Assets and Liabilities ("Transfer") from Clark Fork to NorthWestern

27 Corporation ("NorthWestern"). As a result, if Magten's primary assertion, namely that it was a

1  moving party bears the burden of proof at trial, the moving party is entitled to summary

2  judgment by demonstrating that the non-moving party cannot establish the existence of any

3  element of the non-moving party's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)

4  ("The plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after

5  adequate time for discovery and upon motion, against a party who fails to make a showing

6  sufficient to establish the existence of an element on which that party will bear the burden of

7  proof at trial."). In Celotex, the Supreme Court explained:

> In such a situation, there can be no 'genuine issue as to any material fact,' since a
> complete failure of proof concerning an essential element of the nonmoving
> party's case necessarily renders all other facts immaterial. The moving party is
> entitled to 'judgment as a matter of law' because the nonmoving party has failed
> to make a sufficient showing on an essential element of her case with respect to
> which she has the burden of proof.

12  477 U.S. at 323. The moving party in such a case is not required to offer evidence negating any

13  element of the nonmoving party's claim. Id. at 323. Rather, the burden on the moving party

14  may be discharged by "pointing out to the district court that there is an absence of evidence to

15  support the nonmoving party's case." Id. at 325. Here, Plaintiff Magten bears the burden of

16  proof at trial as to their claims for damages.

## ARGUMENT

### I.    Magten was never a creditor of Clark Fork and thus Magten lacks standing to assert a creditor's claim, nor do Defendants owe any duty to Magten.

21      The gist of Magten's complaint against Messrs. Hanson and Kindt is that, as officers of

22  Clark Fork, they owed a fiduciary duty to the creditors of Clark Fork at the time Clark Fork's

23  sole Member and Manager, NorthWestern, decided to transfer the Montana Utility Assets and

24  Liabilities from Clark Fork (its wholly owned subsidiary) to itself (the parent corporation).

25  While there are numerous flaws with Magten's assertions, one proves to be both fundamental

26  and fatal to Magten's analysis: it has now been judicially determined that Magten never was a

27

1    creditor of Clark Fork, an adjudicative fact which has been affirmed by the sworn testimony of

2    Magten's sole owner and manager.

3    **A.    A prior judicial determination has been made that Magten was not a creditor of Clark Fork.**

4

5        In an opinion dated July 23, 2004 the Hon. Charles B. Case II, who is presiding over

6    NorthWestern's bankruptcy, held as follows:

7        The Debtor [NorthWestern] has consistently alleged, and Magten has never
         disputed, that Magten did not own any of the debentures prior to the time the
8        assets were transferred to the Debtor [NorthWestern].  Rather, Magten acquired
         the debentures after the transaction was complete.  Therefore, the Debtor
9        [NorthWestern] asserts and Magten has not disputed, that Magten was never a
         creditor of Clark Fork at a time when Clark Fork had the disputed energy assets.
10       Rather, Magten became a holder of the debentures only after the transaction was
         completed and was a matter of public record.
11
                            *        *        *
12
         As noted above, Magten was not a creditor of Clark Fork at the time the
13       transaction took place.  Rather, it only became a creditor of the Debtor
         [NorthWestern] after the Debtor [NorthWestern] assumed the liability associated
14       with the junior subordinated debenture initially issued by Montana Power
         Company.  Thus, Magten is not only not a party directly affected by the
15       transaction – such as Clark Fort itself – but it was also not an indirect party at the
         time the transaction took place.
16

17   Memorandum Decision at 3, 6-7 (emphasis added)[2]

18        This Court, of course, may take judicial notice of the adjudicative facts determined by

19   Judge Case in the Bankruptcy proceedings and entered in his July 23, 2004 Memorandum and

20   Order.  Fed. R. Evid. 201.  The fact that Magten was never a creditor of Clark Fork is not a

21   matter of dispute, as Judge Case noted.  Moreover, in this case, as explained more fully below, it

22   is a fact "capable of accurate and ready determination by resort to sources whose accuracy can

23

24   _____

[2] A copy of the Memorandum Decision is attached as Exhibit H to Defendants' Statement of Uncontroverted Facts. Magten has
25   filed a Motion for Reconsideration of Judge Case's Memorandum and Order, arguing that an affidavit filed by one of the counsel
     for the Debtor NorthWestern had incorrectly stated that the directors of Clark Fork had approved the "going flat" transaction.  As
26   the Defendants here have explained to the Court in our opening brief, since Clark Fork is a limited liability company, it has a sole
     Member-Manager, NorthWestern.  Clark Fork has no board of directors.  The error in discussing the management of Clark Fork
27   was subsequently corrected by counsel in the bankruptcy proceeding.  Most significantly, in Magten's Motion to Reconsider, it
     does not contest the findings of the Bankruptcy Court that Magten never was a creditor of Clark Fork.

1  not reasonably be questioned." Fed. R. Evid. 201(b)(2). Thus, Magten is precluded from making

2  any arguments based on Magten's alleged status as a creditor of Clark Fork.

3      **B.    Magten has admitted it was not a creditor of Clark Fork at the time of the
           Transfer.**

4

5      On July 27, 2004, a week before Magten filed its Opposition Brief in this Court, Talton

6  Embry, Magten's sole owner, testified at his deposition taken in the Bankruptcy proceeding that

7  Magten did not acquire an interest in any QUIPS until "late April 2003", nearly six months <u>after</u>

8  NorthWestern completed its transfer of the Utility Assets from Clark Fork to itself. Dep. Tr. p.

9  20.[3] Mr. Embry further testified that at the time of the Transfer of Utility Assets from Clark Fork

10 to NorthWestern, Magten was not a creditor of Clark Fork. Dep. Tr. p. 27.

11     **C.    The principles of issue preclusion and collateral estoppel dictate summary
           judgment be entered in Defendants' favor.**

12

13     The judicial findings of Judge Case and the admission of Mr. Embry that Magten was not

14 a creditor of Clark Fork are dispositive of the issues in this case and Magten is precluded from

15 arguing to the contrary. The basic principle of issue preclusion applies in this case:

16     The general principle announced in numerous cases is that a right, question, or
       fact distinctly put in issue and directly determined by a court of competent
17     jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit
       between the same parties or their privies; and, even if the second suit is for a
18     different cause of action, the right, question, or fact once so determined must, as
       between the same parties or their privies, be taken as conclusively established, so
19     long as the judgment in the first suit remains unmodified. This general rule is
       demanded by the very object for which civil courts have been established, which
20     is to secure the peace and repose of society by the settlement of matters capable of
       judicial determination. Its enforcement is essential to the maintenance of social
21     order; for the aid of judicial tribunals would not be invoked for the vindication of
       rights of person and property if, as between parties and their privies,
22     conclusiveness did not attend the judgments of such tribunals in respect of all
       matters property put in issue, and actually determined by them.

23

24 Southern Pacific Railroad v. United States, 168 U.S. 1, 48-49 (1897).

25     In the present case, the relationship between NorthWestern and Clark Fork, and the

26 relationship between Clark Fork and the Defendants here are the relationships between privies

27 ──────────────
   [3] Copies of the relevant portions of the deposition transcript are attached as Exhibit B to Defendants' Statement of
   Uncontroverted Facts.

-5-

1    and the doctrine of *res judicata* should apply to the issue of whether Magten was a creditor of

2    Clark Fork. In First Bank v. Fourth Judicial District, 226 Mont. 515, 519, 737 P.2d 1132, 1134

3    (1987), the Montana Supreme Court held, "The doctrine of *res judicata* is firmly established to

4    stand for the proposition that a party should not be able to relitigate a matter that that party has

5    already had *opportunity* to litigate, and the public policy that there must be some end to

6    litigation." In this instance, Magten clearly had the opportunity to litigate the issue of its status

7    as a creditor of Clark Fork before the Bankruptcy Court.

8           Although Clark Fork is not a party to the bankruptcy proceedings, for purposes of the

9    issue of whether Magten was a creditor of Clark Fork or NorthWestern in November 2002 when

10   the Transaction closed, Clark Fork and the Defendants here are in privity with NorthWestern. It

11   is well settled law in Montana that the doctrine of *res judicata* applies both to parties and their

12   privies. Newlan Creek Water District v. Walter, 169 Mont. 358, 361, 547 P.2d 850, 852 (1976).

13   Under Montana law, "[a] privy is broadly defined as one who has an interest in an action."

14   Brault v. Smith, 209 Mont. 21, 27, 679 P.2d 236, 239 (1984). In this case, there is no question

15   that Clark Fork has an interest in the issue of whether the Transfer from Clark Fork to

16   NorthWestern is a fraudulent conveyance, as Magten has asserted in its Adversary Proceeding

17   pending in the bankruptcy court, and whether, for these purposes, either NorthWestern or Clark

18   Fork were debtors of Magten at the time of the alleged defective Transfer, especially since

19   NorthWestern, as the sole Member and Manager of Clark Fork, directed the Transfer occur.

20   Likewise, Messrs. Hanson and Kindt, as officers of Clark Fork, are in privity with Clark Fork.

21   First Bank v. Fourth Judicial District, supra, 226 Mont. at 520, 737 P.2d at 1135. Therefore,

22   when Judge Case determined Magten was not a creditor of Clark Fork, a fact plainly put in issue

23   by Magten within the course of NorthWestern's bankruptcy proceedings, that determination

24   cannot be disputed in any subsequent litigation by Magten against NorthWestern, Clark Fork or

25   Defendants here.

26          Even if, however, this Court were reluctant to consider those relationships as ones

27   between privies, classic principles of collateral estoppel control and preclude Magten from

1  relitigating the Bankruptcy Court's finding that it was not a creditor of Clark Fork at the time of
2  the Transfer:

3      Under collateral estoppel, once a court has decided an issue of fact or law
       necessary to its judgment, that decision may preclude relitigation of the issue in a
4      suit on a different cause of action involving a party to the first case.

5  Allan v. McCurry, 449 U.S. 90, 94 (1980).

6      Likewise, the Montana Supreme Court has held that collateral estoppel is a form of *res*

7  *judicata* and bars the reopening of an issue that has been litigated and resolved in a prior suit.

8  The Stanley L. and Carolyn M. Watkins Trust v. LaCosta, 2004 MT 644, ¶ 26, 92 P.3d 620, 626

9  ¶ 26. (citing Kullick v. Skyline Homeowners Association, 2003 MT 137, ¶ 17, 69 P.3d 225, ¶17.)

10     As noted at the outset of this brief, Magten's entire case is predicated upon their

11  allegations that Messrs. Hanson and Kindt, as "officers" of Clark Fork, owed a fiduciary duty to

12  Clark Fork's creditors. See Complaint, ¶ 1; See also Magten's Brief in Opposition to Motion to

13  Dismiss at 1. Even if Magten were correct that the Defendants had owed a duty to Clark Fork's

14  creditors at the time of the asset transfer - - a legal conclusion which the Defendants dispute and

15  which is the subject of Defendants' pending Motion to Dismiss - - it is not only undisputed by

16  Magten, but in fact affirmatively admitted by Magten's sole owner, that Magten was not a

17  creditor of Clark Fork at the time of the Transfer. *A fortiori*, Messrs. Hanson and Kindt could

18  not have owed any duty to Magten at the time of the Transfer.

19     Finally, even if this Court were to find the principles of collateral estoppel are not

20  controlling, the clear admissions made by Magten prevent Magten from pursuing any argument

21  that has at its essence the claim that Defendants owed a duty to Magten at the time of the

22  Transfer because Magten was a creditor of Clark Fork. Magten simply was not a creditor of

23  Clark Fork, both by the own admission of the Plaintiff and by the judicial determinations of

24  Judge Case.

25
26
27

**D.    Magten's acquisition of the QUIPS after-the-fact and with full knowledge of the Transfer preclude Magten from alleging innocence.**

As Mr. Embry admitted later in his deposition, he acquired his interest in the QUIPS with full knowledge of the Transfer of the Montana Utility Assets and Liabilities to NorthWestern (the so called "going flat" transaction) before his first acquisition of QUIPS:

>    Q:    When did you first become aware of the going-flat transaction?
>
>        A.:    In reviewing the company's 10-Q, the quarter ending September 30, 2002.
>
>    Q:    Did you review that document prior to your acquisition of the QUIPS, your initial acquisition f the QUIPS?
>
>    A:    I believe so.

Dep. Tr. p. 33-34. See also, Dep. Tr. p. 16.

Mr. Embry, admitted he is a "veteran" investor who has been investing in distressed debt since 1978. Dep. Tr. p. 14; 78. He routinely performs due diligence before making investments. Dep. Tr. p. 17. Mr. Embry performed due diligence prior to his acquisition of the QUIPS and then personally made the decision to acquire the QUIPS. Dep. Tr. p. 16-17. Mr. Embry further testified:

>    Q.    At the time prior to the acquisition of the QUIPS, were you satisfied with your understanding of the going-flat transaction?
>
>    A.    Yes.

Dep. Tr. p. 37. In fact, Mr. Embry made more than one acquisition of the QUIPS: He continued to acquire QUIPS even after NorthWestern filed for bankruptcy protection, with his last trade being as recently as a "month ago." Dep. Tr. p. 21-23, 25, 55.

In light of Mr. Embry's testimony, Magten can not be heard to say that it had no knowledge of the Transfer which occurred six months before it first acquired the QUIPS, the very transaction about which it now complains. If, in hindsight, Magten believes it made a bad, albeit well-informed, business decision when it initially purchased and continued to purchase the QUIPS, it is not the responsibility of this Court to save Magten from its own business decisions.

**E.    There is no set of facts on which Magten may prevail.**

The judicial determinations made by Judge Case, coupled with the clear admissions made by Magten, preclude Magten from asserting any argument or theory that Defendants breached any duty owed to Magten as a result of Magten's false allegations that it was a creditor of Clark Fork. Because Magten must first prove that it was a creditor of Clark Fork at the time of the transfer, a burden of proof it simply cannot meet, there is no set of facts on which Magten may prevail against Messrs. Hanson and Kindt in their capacity as "officers" of Clark Fork. For these reasons alone, Defendants are entitled to summary judgment.

### II.    Magten cannot stand in the shoes of its predecessor-in-interest to assert its creditor status.

In its Complaint, Magten alleges that its predecessors-in-interest were creditors of Clark Fork and, as such, Defendants had a duty to them which Defendants breached. Complaint ¶ 50-51. Magten further alleges that this breach of duty by the Defendants to Magten's predecessors-in-interest caused substantial injury to Magten. Complaint ¶ 52. Magten's argument is fundamentally flawed. Magten lacks standing to assert the rights of the Trust or its predecessors-in-interest as owners of the QUIPS. First, absent a specific written assignment, any chose in action held by those from whom Magten purchased the QUIPS was not conveyed to Magten. Therefore, Magten lacks standing to assert such rights. Second, both the Trustee and the prior holders of the QUIPS acquiesced in the Transfer, so complaints stemming from that Transfer have now been waived.

### A.    A Chose in Action which value exceeds $5,000 may only be conveyed or assigned by a specific written instrument.

In essence, in their Complaint, Magten has asserted that the officers of Clark Fork owed a duty to its predecessors-in-interest ("Predecessors") by virtue of the Predecessors' status as holders of the QUIPS which, in turn, rendered them creditors of Clark Fork prior to the Transfer. Magten further alleges that the officers of Clark Fork breached an alleged duty owed to the Predecessors at the time of the Transfer; and, therefore, by virtue of Magten's acquisition of the

- 9 -

1  QUIPS from the Predecessors (albeit six months after the Transfer), the officers breached a duty
2  to Magten and Magten has suffered damages as a result[4].

3      Any claim by the Predecessors that the officers breached any duty to them is a chose in
4  action. Mont. Code Ann. § 70-2-101 (2003) ("A thing in action is a right to recover money or
5  other personal property by a judicial proceeding.")[5]. See, also, State ex rel. Coffey, 74 Mont.
6  355, 240 P. 667, 669 (1925) (noting "The Supreme Court of the United States has said that a
7  chose in action 'include[s] all debts and all claims for damages for breach of contract or for tort
8  connected with the contract.'" Bushnell v. Kennedy, 9 Wall 387, 390, 19 L. Ed. 736); Moore v.
9  Nassau County Dept. of Public Transp., 357 N.Y.S.2d 652, 656-57 (1974) ("Choses in action are
10  personal property, and, although intangible, are property subject to encumbrances."); Garford
11  Motor Truck Company v. Buckson, 143 A. 410, 411(Sup. Ct. De. 1927) (holding a chose in
12  action which survives death is assignable); Del. Code Ann. tit. 10, § 3701 (2003) (indicating the
13  chose in action, breach of fiduciary duty, survives death.)

14      It is established by case law and statute that; "[A] chose in action is intangible personal
15  property." Lewis v. Puget Sound Power & Light Co., 2001 MT 145, ¶ 20, 29 P.3d 1028, 1031
16  (Mont. 2001) (citing Mont. Code Ann. § 1-1-205(1)); See also, Moore 357 NYS 2d at 656-57
17  (1974); In re Morace, 74 A. 375, 376 (Sup. Ct. De. 1909) ("A chose in action is personal
18  property, generally speaking ...."). The Uniform Commercial Code which has been adopted by
19  Montana, New York and Delaware states that a contract for the sale of personal property in
20  excess of $5,000 in value must be in writing, must reasonably identify the subject matter, and
21  must state the price. Mont. Code Ann. § 30-1-206 (2003); N.Y. [UCC] Law § 1-206 (McKinney
22  2004); Del. Code Ann. tit. 6, § 1-206 (2003). See also, Lewis, 2001 MT at ¶ 20, 29 P.3d 1028,
23  1031-32 (citing Mont. Code Ann. § 30-1-206); Beldengreen, DDS v. Ashinsky, DDS, 528
24  N.Y.S.2d 744 (1987) (citing Uniform Commercial Code § 1-206). Thus, the sale of a chose in

25  [4] Because the QUIPS Trust Documents are variously governed by the laws of the State of New York or the State of
   Delaware, this brief will cite to Montana, New York and Delaware law. The result in any of the three jurisdictions
26  is the same: Magten lacks standing to assert the rights of the Trust or its Predecessors.

27  [5] A "thing in action" and a "chose in action" are terms that are used interchangeably. See, State ex rel. Coffey, 240
   P. 667, 669 (Mont.1925) ("In the common parlance of the law, a thing in action is designated a chose in action.
   Chose in action means literally thing in action." (citations omitted)).

1   action with a value exceeding $5,000 can only be made by a specific written instrument. It is not
2   enough to simply convey the QUIPS debt instruments themselves; rather, the claim for breach of
3   duty must be particularly described in a written conveyance instrument. See Lewis, 2001 MT at
4   ¶ 20, 29 P.3d at 1031 (in a case for structural damages to real property, the court held: "If the
5   claim [for structural damages] is severed from the real estate by a transfer of the property without
6   assignment [of the claim], the claim, as a chose in action, is intangible personal property."). See
7   also, Moore, 357 N.Y.S.2d at 656-57 (noting choses in action are personal property).

8        As a result, because any claim by the Predecessors for breach of a duty owed by the Clark
9   Fork officers will be considered a chose in action, and because Magten asserts the value of that
10  chose in action well exceeds $5,000, any conveyance or assignment of that chose in action to
11  Magten must have been specifically described in writing, or Magten cannot stand in its
12  Predecessors' shoes. Fed. R. Civ. P. 17(a) ("Every action shall be prosecuted in the name of the
13  real party in interest.") Nowhere in Magten's Complaint does it assert that the owners of the
14  QUIPS at the time of the Transfer specifically assigned to Magten in writing their right to assert
15  a breach of the officers' duty to those former QUIPS owners. As discussed earlier in this brief,
16  because Magten cannot assert it was a direct creditor of Clark Fork, it can only assert a breach of
17  duty owed to previous creditors through whatever rights it obtained from its predecessors. Since
18  it obtained no such right from its Predecessors, Magten lacks standing to assert the rights of the
19  Trust and its Predecessors.

20        **B.    Complaints stemming from the Transfer have been waived.**

21        As discussed earlier in this brief, and as admitted by Mr. Embry, Magten first acquired
22  the QUIPS some six months after the Transfer, with full knowledge of the Transfer and its
23  effects. Magten acknowledges it was not a creditor of Clark Fork at the time of the Transfer. By
24  that time, as a result of the operation of the Trust Indenture Documents, Magten's Predecessors
25  were no longer creditors of Clark Fork, but were rather creditors of NorthWestern. Further,
26  Magten had actual knowledge of these facts, as it acquired the QUIPS six months after the
27

- 11 -

1    Transfer was completed, after performing due diligence, and after Mr. Embry was "satisfied"

2    with his understanding of the Transfer.

3    Under the Second Supplemental Indenture, executed by the Trustee, NorthWestern and

4    Clark Fork reserved the right of Clark Fork to transfer all of its assets to NorthWestern and that

5    such transfer would relieve Clark Fork of "its obligations under the QUIPS Debenture, the

6    Indenture and hereunder as provided in Article Eleven of the Indenture. Second Supplemental

7    Indenture, §201. This Second Supplemental Indenture was duly executed by all parties, and

8    neither the Trustee nor any of the Predecessors have challenged its validity or effect. Section

9    1101 of the Indenture clearly empowered the Montana Power Company, and Clark Fork

10   thereafter, to "convey or otherwise transfer, or lease, its properties and assets substantially as an

11   entirety to any Person." Indenture § 1101. The prerequisites of any such transaction were also

12   spelled out in the Indenture, which required:

13        1.       The surviving corpration to be "organized and validly existing under the laws of

14   the United States, and State thereof ..." and

15        2.       The surviving corporation "assume" in an indenture "executed and delivered to

16   the Trustee, in form satisfactory to the Trustee" the "due and punctual payment of the principal

17   of and premium, if any, and interest, if any, on all Outstanding Securities and the performance of

18   every covenant of the Indenture on the part of the Company to be performed or observed."

19        In its Adversary Proceeding Complaint, Magten has conceded that NorthWestern meets

20   each of these prerequisites. Adversary Proceeding Complaint, ¶¶ 14, 43. Further, all parties

21   executed the Third Supplemental Indenture in which NorthWestern "expressly assume[d] the due

22   and punctual payment of the principal of and premium, if any, and interest, if any, on all

23   Outstanding Securities issued under the Indenture and the performance of every covenant of the

24   Indenture on the part of NorthWestern Energy to be performed or observed."    Third

25   Supplemental Indenture, § 101.

26        Both Magten's Predecessors and the Trustee acquiesced to the Transfer, and thus have

27   waived all such claims to challenge the Transfer. The Montana Supreme Court has held "A

- 12 -

1    waiver is the intentional and voluntary relinquishment of a known right, claim or privilege."

2    Reiter v. Yellowstone CountyU, 192 Mont. 194, 202, 627 P.2d 845, 850 (1981). Further, the

3    Court has held a waiver:

4           May be proved by express declarations, or by acts and declarations
            manifesting an intent and purpose not to claim the supposed
5           advantage, or by a course of acts and conduct, or by so neglecting
            and failing to act, as to induce the belief that it was his intention
6           and purpose to waive.

7

8    Northwestern F. & M. Ins. Co. v. Pollard, 74 Mont. 142, 238 P. 594, 596 (1925). By executing

9    the various supplemental indentures, and by failing to challenge the validity of such transactions

10   at the time the transactions were entered, the Trustee and the Predecessors have waived any such

11   right to do so. As a result of this waiver, Magten, therefore, lacks standing to assert the rights (if

12   any remain) of the Trust or its Predecessors.

13                                      **CONCLUSION**

14          Magten was never a creditor of Clark Fork and Blackfoot, LLC, nor may it "stand in the

15   shoes" of its so-called predecessors-in-interest or the Trustee who never objected to the Transfer

16   of the Montana Utility Assets and Liabilities from Clark Fork some six months before Magten

17   began to acquire QUIPS. Magten therefore has no standing to allege a breach of any fiduciary

18   duty which Magten believes the Defendants owed to the creditors of Clark Fork at the time of the

19   Transfer. (And, of course, the Defendants deny that any such duty was even owed by them to

20   the creditors who are not parties to this litigation for all the same reasons that Defendants deny

21   any duty was ever owed to Magten and as set forth in the Motion to Dismiss currently pending

22   before this Court.) Accordingly, the Defendants respectfully request that summary judgment be

23   entered in their favor and that this case be dismissed with prejudice.

24   //

25   //

26

27

DATED this 20th day of August, 2004.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By _Kimberly Beatty_

Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59604-6669
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.

- 14 -

1

**CERTIFICATE OF SERVICE**

2     I hereby certify that on the 20th day of August , 2004, a true copy of the
     foregoing was mailed by first-class mail, postage prepaid, addressed as follows:

3

James Goetz
4     J. Devlan Geddes
      Goetz, Gallik & Baldwin, P.C.
5     35 North Grand
      P.O. Box 6580
6     Bozeman, MT 59771-6580

7

      Bonnie Steingert
8     John W. Brewer
      Fried, Frank, Harris, Shriver & Jacobson, LLP
9     One New York Plaza
10    New York, New York 10004

11

12

13                          BROWNING, KALECZYC, BERRY & HOVEN, P.C.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Title                              - 15 -                          144934.doc/1674.044

# Exhibit F



Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59604-1697
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

| MAGTENASSET MAMAGEMENT CORPORATION, | Case No. CV-04-26-BU-RFC |
|---|---|
| Plaintiff, | |
| v. | REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT |
| MIKE J. HANSON and ERNIE J. KINDT | |
| Defendants. | |

## Introduction

Rule 56(e) of the Federal Rules of Civil Procedure clearly states that when a motion for summary judgment is made, "an adverse party may not rest on the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Here, Magten has failed to raise any *material* facts in dispute which would properly preclude the issuance of summary judgment in Defendants' favor.

In fact, Magten agrees with the facts set forth in Defendants Statement of Uncontroverted Facts, or makes conclusory statements, which are neither material to the legal issues raised by

1    Defendants nor supported by evidence in the form of documents or affidavit testimony, such that
2    "there exists a genuine issue to be tried." See generally, Pl.'s Stmt. of Genuine Issues. Such
3    conclusory statements are insufficient to raise a genuine issue of disputed fact or preclude
4    summary judgment.   Porter v. CA Dept of Corrections, 2004 WL 2029923 *5 (9th Cir. 2004)
5    (noting "once the moving party meets the requirements of Rule 56 by showing there is an
6    absence of evidence to support the non-moving party's case, the burden shifts to the party
7    resisting the motion, who 'must set forth specific facts showing that there is a genuine issue for
8    trial.'");  Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998) (holding "to defeat a summary
9    judgment motion, the non-moving party must demonstrate that the evidence is such that a
10   reasonable jury could return a verdict in his or her favor."). See also, Rattner v. Netburn, 930
11   F.2d 204, 209 (2th Cir. 1991) (holding "the function of the district court in considering the
12   motion for summary judgment is not to resolve disputed issues of fact but only to determine
13   whether there is a genuine issue to be tried.").

14        Further, Plaintiff's "Statement of Genuine Issues" is inadequate; it consists of four
15   statements, two of which are merely recitations of legal conclusions and none of which are
16   relevant to or raise genuine material facts in dispute related to the matters raised in the motion
17   for summary judgment.

18        Magten's Complaint in this Court asserts one cause of action: that Defendants as officers
19   of Clark Fork and Blackfoot, LLC (CFB) breached fiduciary duties owed to creditors of CFB.
20   Nowhere in the Complaint does Magten assert any claim for fraudulent conveyance or any claim
21   to invalidate the transfer of assets by CFB to its parent corporation.  Nor could it raise such
22   complaints without invoking the jurisdiction of the federal bankruptcy court, thus divesting this
23   Court of jurisdiction.

24        Magten further misstates the significance of Judge Case's August 20 opinion in an
25   attempt to lend credence to the allegations raised by Magten in this Court.  Magten erroneously
26   cites Judge Case's opinion for the proposition that Magten has a cause of action against CFB and
27   its officers.  Judge Case's August 20 opinion, however, holds only that Magten has standing to

1    assert a claim for fraud against NorthWestern Corporation, an allegation Magten does not make

2    here. Judge Case's August 20 and July 23 opinions, however, are dispositive in that they hold

3    (a) that Magten was never a creditor of CFB, an allegation Magten must prove if it is to prove

4    that CFB's officers owed it any fiduciary duty in the first place[1], (b) that CFB owes no duty to

5    any QUIPS holder under either the Trust Indenture or the Guaranty Agreement, and (c) that only

6    *NorthWestern* may be liable for the unwinding of the going flat transaction *if and only if* Magten

7    can prove to the Bankruptcy Court that NorthWestern committed fraud. Moreover, Judge Case's

8    August 20 order has now rendered moot whether the Trustee or the QUIPS holders waived their

9    right to challenge the validity of the going flat transaction since Judge Case determined that

10   CFB's obligations under the Trust Indenture and the Guaranty Agreement were released in the

11   going flat transaction.

12        Finally, the "factual issues" raised by Magten here are irrelevant to whether they have

13   standing to assert claims of their predecessors-in-interest. First, what Magten's predecessors

14   may have known at the time of the transfer is not relevant to what Magten itself knew when it

15   acquired the QUIPS. Secondly, while Magten may have acquired the QUIPS securities without a

16   written conveyance instrument, it cannot acquire the rights to choses in action related to those

17   securities without a written instrument.

18                             **Argument**

19   **I.   The finding that Magten is not, and never was, a creditor of CFB is dispositive of the**
         **issues pending before this Court.**

20

21        In its response to Defendants' motion to dismiss, Magten conveniently ignores that the

22   Defendants also have pending before this Court a Motion to Dismiss in which Defendants argue

23   that, as a matter of law, as "officers" of CFB they owed no fiduciary duties to the creditors of

24   CFB on November 15, 2002, the date of the going flat transaction. Judge Case, in his first

25   opinion dated July 23, 2004, made a specific finding that Magten was not – and is not today – a

26   creditor of Clark Fork. Exh. E to Defs.' Stmt. Of Uncontroverted Facts, J. Case Memorandum

27

---

[1]  Defendants' have filed a Motion to Dismiss the Complaint on grounds that they owe no fiduciary duties to
Plaintiff. That Motion is currently pending before this Court.

1  Decision dated 7/23/04 at p. 3 ("the Debtor [NorthWestern] asserts and Magten has not disputed,
2  that Magten was never a creditor of Clark Fork …"); at p. 6 ("Magten was not a creditor of Clark
3  Fork at the time the transaction took place."); at p. 7 ("even if third party creditors were injured
4  by the transaction, Magten was not one of them.") This adjudicative fact is not disputed. See,
5  Pl.'s Statement of Genuine Issues, at p 4, ¶ 13; p 5, ¶ 20. This adjudicative fact is dispositive of
6  both the Defendants' Motion to Dismiss[2] and this Motion for Summary Judgment, not because
7  Judge Case made any specific finding about the standing of Magten to sue the officers of CFB –
8  indeed, the officers are not parties to the NorthWestern Bankruptcy proceeding and Judge Case
9  made no such explicit finding – but because the fact that Magten never was a creditor of CFB
10  may be properly relied upon by this Court in ruling in favor of the Defendants here and
11  dismissing this case with prejudice.

12      Magten further conveniently glosses over the fact that both Judge Case's July 23 ruling
13  and the deposition of Talton Embry, Magten's sole owner, occurred *after* the Defendants filed
14  their Motion to Dismiss.    Magten also ignores the fact that both these events occurred *before*
15  Magten responded to either Defendants' Motion to Dismiss or Motion for Summary Judgment.
16  Thus, Magten had in its possession facts relevant to this case *before* these facts were known to
17  the Defendants. It is therefore disingenuous at the very least for Magten to suggest that these
18  facts should have been raised when the Defendants filed their Motion to Dismiss.    Any
19  suggestion by Magten that the standing issue should have been raised earlier is simply misplaced
20  and should be summarily disregarded as a desperate attempt by Magten to avoid an issue which
21  proves fatal to their case.

22
23
24
25
26
_____

[2]      If the Court decides to rely upon this adjudicative fact, the Court certainly may convert Defendants' Motion
27  to Dismiss into a Motion for Summary Judgment since Magten has had the opportunity to respond to this
adjudicative fact and its relevance to these proceedings. Fed. R. Civ. P. 12(b).

1  **II.   The import of Judge Case's August 20 Opinion.**

2       Magten blatantly misconstrues the import of Judge Case's August 20, 2004 order when it

3  says that Judge Case held that Magten has standing to pursue fraud claims against CFB.  Pl.'s

4  Response to Defs' Mtn. for Summary Judgment, p.1.  In his August 20 Opinion, Judge Case

5  makes several findings:   First, there was no guarantee that the transferee of the QUIPS

6  obligations had to be solvent.  Exh. E to Decl. of J. Devlan Geddes, J. Case Under Advisement

7  Decision re: Motion to Dismiss, dated 8/20/04 at p. 5.  As a result, Magten's reliance on

8  solvency as a "genuine issue" is both misplaced and irrelevant.  Second, CFB and NorthWestern

9  fully complied with section 1102 of the Trust Indenture and with the terms of the Guaranty

10 Agreement, such that CFB was fully released from all obligations to the QUIPS holders as of the

11 date of the going flat transaction.  Id. at pp. 6-9.  Third, because Judge Case determined that

12 CFB's obligations under the Trust Indenture and the Guaranty Agreement were released in the

13 going flat transaction, the issue of whether the Trustee or the QUIPS holders waived their right

14 to challenge the validity of the going flat transaction is now moot.  See, generally, id.  Fourth,

15 Magten may maintain its adversary proceeding *only against NorthWestern* if, and only if,

16 *NorthWestern* committed fraud.  Id. at 11.  No where in Judge Case's Opinion does he even

17 remotely suggest that Magten has any standing to bring this action against officers of CFB as

18 Magten has asserted.  Compare, Pl.'s Response to Motion for Summary Judgment at p. 1 to

19 Judge Case's Opinion generally.  Indeed, Magten's own Complaint does not allege a fraudulent

20 conveyance by the Defendants here; the only count of the Complaint is one for alleged breach of

21 fiduciary duty.  Moreover, even if Magten could bootstrap Judge Case's August 20, 2004 order

22 to form the legal basis for this suit against officers of CFB, then just as Judge Haddon recently

23 ordered in Magten Asset Management Corporation v. Paul Hastings Janofsky & Walker, LLP,

24 CV-04-40-BU-SEH,[3] this Court should find that these issues are integrally related to the

25

26

27

---

[3]     A copy of Judge Haddon's Memorandum and Order dated September 8, 2004, is attached as Exhibit 1.

1  NorthWestern bankruptcy estate and transfer jurisdiction of this case to the Delaware Bankruptcy
2  Court where it would be properly adjudicated as part of the NorthWestern bankruptcy estate.

3      The lynchpin of Judge Case's August 20 order is that Magten will be permitted to
4  continue its Adversary Proceeding and attempt to prove *NorthWestern, not CFB or its officers,*
5  engaged in fraud – allegations not raised by Magten in these proceedings. Judge Case has
6  exonerated CFB of all wrongdoing or liability with respect to the going flat transaction and has
7  found that CFB was released of all obligations under the Trust Indenture and Guaranty
8  Agreements. Exh. E to Decl. of J. Devlan Geddes, J. Case Decision at p. 8 ("Here, the Indenture
9  specifically provides that Clark Fork is released from its underlying liability on the debentures in
10  a Section 1101 transaction. All of those obligations, including making distributions to the Trust
11  for the purposes of paying the Holders, now lie exclusively with the successor in interest, here
12  Debtor NorthWestern. Given the quasi *in rem* nature of the guarantee, [footnote omitted] it is
13  nonsensical that a stranger to the transaction (Clark Fork after the Section 1101 transaction)
14  would retain any liability under the Guarantee. It only makes sense that any such liability has
15  been released as well."); p. 9 ("the Court concludes that Plaintiffs are not creditors of Clark Fork
16  because of the Guarantee. Rather, Clark Fork's obligations under the Guarantee, to the same
17  extent as its obligations under the Debenture, were released in the Section 1101 transaction with
18  NorthWestern.")

19      These facts and conclusions are consistent with the Defendants' position that
20  NorthWestern, as the sole Member and Manager of CFB, had the authority to direct and
21  implement the going flat transaction, and thus alone retains the liability, if any, with respect to
22  that transaction. The Defendants here as the officers of CFB were merely performing ministerial
23  acts implementing the mandates of the sole decision maker, a fact documented by that Written
24  Consent of Sole Member and Manager to Action in Lieu of Meeting, dated 8/7/02, attached as
25  Exh. E to Defs.' Stmt. of Uncontroverted Facts, and a fact that Magten neither disputes nor
26  rebuts with its own contrary evidence, documents or affidavit testimony. See, Pl.'s Statement of
27  Genuine Issues, p. 2-3 ¶ 9.

**III.    Magten lacks standing to assert a breach of fiduciary duty.**

Magten misapprehends the Defendants' argument that Magten lacks standing to assert a claim for breach of any fiduciary duty which these Defendants may have owed to creditors of CFB on the date of the "going flat" transaction (a legal proposition which the Defendants deny and is the basis for their Motion to Dismiss). As the Defendants explained in their brief in support of their Motion for Summary Judgment, a chose in action is a separate and distinct property right as a matter of law. Any chose in action which either the Trustee or the holder of the QUIPS may have had with respect to the Defendants here was personal to them and would have had to have been conveyed separately to Magten when it first acquired its interest in the QUIPS months after the going flat transaction closed and when Magten continued to acquire additional QUIPS even after Magten's owner admitted he was aware that NorthWestern was insolvent. The fact that a sale of securities does not come within Montana's statute of frauds is irrelevant; the issue is not the sale of the securities but rather the sale (or more accurately the lack of any evidence of a sale) of a chose in action for breach of fiduciary duty by former owners of the QUIPS to Magten. If Magten had evidence of such a sale, it should have produced that evidence in its opposition to the Defendants' Motion for Summary Judgment. There obviously is no such evidence.

In this light, it is telling that the QUIPS Property Trustee has not brought any action in this Court on behalf of the present or former holders of QUIPS against either CFB or the individual officers who are Defendants here. Rather, the Trustee has focused upon the acts of NorthWestern which, as the Defendants here have already explained to the Court, was and is the sole owner of CFB and factually and legally had the power to make, and did in fact make, all decisions related to the going flat transaction.

**IV.    Magten is not entitled to invoke the equitable powers of this Court.**

A fundamental maxim of legal jurisprudence is that "no one can take advantage of his own wrong." Mont. Code Ann. § 1-3-208. In litigation involving the fiduciary duties that partners in a joint venture owed to each other and the calculation of damages resulting from a

breach of such duties, the Montana Supreme Court held that "equity will refuse to aid a party whose claims had their inception in his own wrongdoing, whether the victim of the wrongdoing is the other party or a third party." Murphy v. Redland, 178 Mont. 296, 309, 583 P.2d 1049,1056 (1978); accord, Kauffman-Harmon v. Kauffman, 307 Mont. 45, 52, 36 P.3d 408, 413.

Here, Magten knew of the going flat transaction. Exh. B, Defs.' Stmt. of Uncontroverted Facts, Embry Dep. Tr. p. 33, l. 16 – p. 34, l. 2; p. 37, l. 2-6. Mr. Embry is a "veteran" investor of distressed securities. Id. at p. 14, l. 19-22; p. 78, l. 10-12. Magten conducted due diligence before its initial acquisition of the QUIPS. Id. at p. 16-20. Magten knew at the time it purchased the QUIPS that NOR had restated its financial statements. Id. at p. 80, l. 8-16 (*testifying* that he read "what was available in the S.E.C. documents for Montana Power, Montana Capital and NorthWestern." Because NorthWestern's amended 10Qs for the first three quarters of 2002 are public documents on file with the SEC, this Court can take judicial notice, pursuant to Fed. R. Evid. 201 and 1005, that the amended financial statements were filed with the SEC on April 16, 2003 and thus, were available for Magten's review prior to its initial acquisition of the QUIPS "at the end of April, 2003." Dep. Tr. p. 20, l. 10.) Having conducted due diligence and having made the informed decision to speculate on distressed securities knowing full well that NorthWestern not only restated its financial statements but also stated in its SEC filings that filing for bankruptcy protection might be a likely event in the near future, Magten cannot seek to profit from its own actions by asserting the officers of CFB breached some alleged fiduciary duty owed to a predecessor in interest of which it does not have standing to represent.

**V.     Magten has raised no material issues of disputed fact.**

As is evident from both the Complaint and the briefs filed by Magten, Magten relies upon artful pleading and deliberate obfuscation in an effort to keep their case alive before this Court. On the one hand, Magten suggests to the Court that the Defendants' Motion for Summary Judgment is "premature" because no discovery has been completed. Yet, Magten has chosen to respond substantively to the Motion and has *not* seen fit to file a motion pursuant to Fed. R. Civ. P. 56(f), perhaps because Magten recognizes there is no justification to conduct discovery on the

- 8 -

1  issues raised in Defendants' Motion for Summary Judgment since the *material* facts are not in
2  dispute and thus no discovery is needed for the Court to resolve the issues before it.

3      On the other hand, Magten's Statement of Genuine Issues is no more than a compilation
4  of legal conclusions and allegations which are not material to the legal issues presented in the
5  Defendants' Motion for Summary Judgment. As Judge Case found, it matters not whether
6  NorthWestern was insolvent or placed CFB within a zone of insolvency since NorthWestern and
7  CFB fully complied with the terms of the Trust Indenture and Guaranty Agreement. Thus, there
8  is no basis for Magten to allege the individual officers of CFB owed a fiduciary duty to a party
9  (Magten) which acquired any interest in the QUIPS literally months after the going flat
10 transaction occurred. Likewise, Magten has no standing to sue the Defendants here for an
11 alleged breach of fiduciary duty when it is undisputed, even by Magten, that NorthWestern was
12 the sole decision maker with respect to the going flat transaction. Having conceded these
13 material facts and in light of Judge Case's orders, the Defendants here are entitled to summary
14 judgment in their favor and Magten's Complaint should be dismissed with prejudice.

15                              **Conclusion**

16     For the foregoing reasons, and the reasons provided both in support of the Defendants'
17 Motion to Dismiss and in this Motion for Summary Judgment, summary judgment should be
18 entered in Defendants' favor and this action should be dismissed with prejudice.

19     DATED this 27th day of September, 2004.

20                          BROWNING, KALECZYC, BERRY & HOVEN, P.C.

21

22                          By _____

23                          Stanley T. Kaleczyc
                            Kimberly A. Beatty
24                          BROWNING, KALECZYC, BERRY & HOVEN, P.C.
                            139 North Last Chance Gulch
25                          P.O. Box 1697
                            Helena, MT 59604-1697
26                          Phone: (406) 443-6820
                            Fax: (406) 443-6883
27
                            Attorneys for Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of September, 2004, a true copy of the foregoing was mailed by first-class mail, postage prepaid, addressed as follows:

James Goetz
J. Devlan Geddes
Goetz, Gallik & Baldwin, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580

Bonnie Steingert
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobson, LLP
One New York Plaza
New York, NY 10004

*Jennifer Mehlum*

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

**RECEIVED**

**SEP 1 0 2004**

**POORE, ROTH & ROBINSON, P.C.**
**OUR FILE NO.** 2620-1164 q



F I L E D
GREAT FALLS DIV. 24

'04 SEP 8 PM 4 20

~~PATRICK~~ .. ... ....... ....ERK

BY ............... ...... ......

DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### BUTTE DIVISION

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION Suing individually and derivatively on behalf of CLARK FORK AND BLACKFOOT, LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>PAUL HASTINGS JANOFSKY & WALKER LLP,<br><br>      Defendant. | No. CV 04-49-BU-SEH<br><br>**MEMORANDUM AND ORDER** |

### INTRODUCTION

Magten Asset Management Corporation brought this action "individually and derivatively

on behalf of CLARK FORK AND BLACKFOOT, LLC" in Montana state district court alleging

breach of fiduciary duties, aiding and abetting fraudulent transfer, civil conspiracy and

malpractice.[1] Defendant removed to this Court under 28 U.S.C. § 1452(a) as a case "related to"

---

[1] Magten Asset Management Corporation Suing individually and derivatively on behalf of Clark Fork and Blackfoot, LLC v. Paul Hastings Janofsky & Walker LLP, Cause No. DV 04-131, Montana Second Judicial District Court, Silver Bow County.

-1-



**EXHIBIT**
**1**

bankruptcy of Northwestern Corporation (Northwestern), parent corporation of Clark Fork and Blackfoot, LLC. Plaintiff has moved to remand. Defendant has moved to have the case transferred to the District of Delaware, where Northwestern's bankruptcy is pending, or to the District of New York. As an alternative to transfer, Defendant asks that the case be stayed pending the outcome of certain adversary proceedings involving Northwestern pending in the Delaware Bankruptcy Court. All motions are opposed.

## Motion to Remand

A case is "related to" bankruptcy "if the outcome could alter the debtors' rights, liabilities, options or freedoms of action (either negatively or positively) and which in any way impacts upon the handling and administration of the bankruptcy estate." In re Fietz, 852 F.2d 455, 457 (9th Cir. 1988)(quoting Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)). Here, the claims asserted by Plaintiff are said to be brought in part on behalf of Clark Fork and Blackfoot, LLC. Clark Fork and Blackfoot, LLC is a wholly-owned subsidiary of Northwestern. Successful prosecution of this case could have a positive effect on the size and value of Northwestern's estate in bankruptcy, thus impacting, at a minimum, options available to the bankrupt, and administration of its estate. The "relating to" test of Fietz is met. This Court has jurisdiction. Remand for lack of jurisdiction is not appropriate.

## Motion to Transfer

A motion for transfer under 28 U.S.C. § 1404(a) may be granted if: "(1) . . . venue is proper in the transferor district; (2) . . . the transferee district is one where the action might have been brought; and (3) . . . the transfer will serve the convenience of the parties and witnesses and will promote the interest of justice." Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.,

-2-

820 F. Supp. 503, 506 (C.D. Cal. 1992). Such a motion is addressed to the discretion of the court and is to be decided on an individualized case-by-case consideration of convenience and fairness. Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). Factors to be taken into account in evaluating convenience and fairness include: "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986)(quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

Upon review of the record and the materials provided by both parties, the Court is persuaded that the interests of justice and of convenience and fairness are best served by transfer of this case to the District of Delaware. As noted, Plaintiff already has filed an adversary proceeding claim in Northwestern's bankruptcy in Delaware, the outcome of which may substantially impact the vitality of the claims asserted in this case. Many of the obligations claimed against Defendant in the Montana case appear to mirror allegations in the adversary proceedings. Plaintiff's choice of forum warrants less consideration since neither party is a citizen of Montana. Plaintiff is a citizen of Delaware. Both Plaintiff and Defendant have offices in New York. Neither has officers or employees in Montana. By all accounts, most of all the significant witnesses reside outside Montana. Substantially all legal activities giving rise to the case occurred outside Montana and in locations on the east coast. Records relating to the transactions in question are in venues located outside Montana and closer to Delaware than to Montana.

## ORDERED

1.    Plaintiff's Motion to Remand[2] is DENIED.

2.    Defendant's motion to transfer this case to the District of Delaware for the

convenience of parties and witnesses and in the interest of justice[3] is GRANTED.

3.    Defendant's motion to stay is DENIED without prejudice to renewal following

transfer to the District of Delaware.

The clerk is directed to transfer this case to the United States District Court for the

District of Delaware.

DATED this ___8___ day of September, 2004.

SAM E. HADDON
United States District Judge

---

[2] Docket No. 16.

[3] Docket No. 15.

-4-

# Exhibit G



Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C
139 North Last Chance Gulch
P.O. Box 1697
Helena, MT 59624
Phone: (406) 443-6820
Fax: (406) 443-6883

Attorneys for Defendants.

APR 21 2003    IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
BUTTE DIVISION

CLERK, U.S. DISTRICT COURT
DISTRICT OF

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | Case No.: CV-04-26-BU-RFC |
| Plaintiff, | 0 5 − 4 9 9 |
| vs. | **ANSWER OF DEFENDANTS MICHAEL J. HANSON AND ERNIE J. KINDT** |
| MIKE J. HANSON, and ERNIE J. KINDT, | |
| Defendant | |

Michael J. Hanson and Ernie J. Kindt, the remaining defendants in this action "defendants", through their attorneys of record, answer Plaintiff's Complaint as follows:

1.    With respect to the allegations contained in paragraph 1 of Plaintiff's Complaint, Defendants Hanson and Kindt admit that they had the titles of officers of Clark Fork and Blackfoot, LLC ("Clark Fork") as of November 15, 2002. Defendants further admit that on or about September 14, 2003 NorthWestern Corporation ("NorthWestern") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. To the extent that paragraph 1 of Plaintiff's Complaint contains legal conclusions, Defendants are not required to respond to the



same. Defendants deny each and every other allegation contained in paragraph 1 of Plaintiff's Complaint for which a response is required.

2.    Defendants are without sufficient information concerning the allegations in paragraph 2 of Plaintiff's Complaint and therefore deny the same.

3.    Defendant Hanson denies that he is a citizen of the State of Montana and further denies that he resides in Montana. Defendant Hanson admits that as of November 15, 2002, he was Chief Executive Officer of Clark Fork.

4.    Jack D. Haffey is no longer a defendant in this lawsuit and therefore no response to paragraph 4 of Plaintiff's Complaint is required.

5.    Defendant Kindt admits the allegations contained in paragraph 5 of the Plaintiff's complaint.

6.    Ellen M. Senechal is no longer a party to this action and therefore no response to paragraph 6 of Plaintiff's Complaint is required.

7.    Defendants are without sufficient information concerning the citizenship of Plaintiff and therefore deny the allegations contained in paragraph 7 of Plaintiff's Complaint. If there is diversity of citizenship between the Plaintiff and the Defendants, then Defendants admit this Court has jurisdiction pursuant to 28 U.S.C. § 1332; however Defendants allege that this is not the only basis for federal jurisdiction.

8.    Defendants deny that all defendants reside in this Judicial District or that a substantial part of the events or omissions giving rise to the claims alleged in Plaintiff's Complaint occurred in this Judicial District and therefore deny the allegations contained in paragraph 8 of Plaintiff's Complaint.

9.      Upon information and belief, Defendants admit the allegations contained in paragraph 9 of Plaintiff's Complaint.

10.     Upon information and belief, Defendants admit the allegations contained in paragraph 10 of Plaintiff's Complaint.

11.     Defendants admit the allegations contained in paragraph 11 of Plaintiff's Complaint.

12.     Defendants admit the allegations contained in paragraph 12 of Plaintiff's Complaint.

13.     Defendants admit The Montana Power Company created Montana Power Capital I (the "Trust") on or about October 15, 1996 pursuant to that certain Trust Agreement executed by it and various other persons. Defendants admit The Montana Power Company and various other persons executed that certain Amended and Restated Trust Agreement dated on or about November 1, 1996. Defendants admit the Trust is a business trust established pursuant to the Delaware Business Trust Act. Defendants admit the last sentence of paragraph 13 of Plaintiff's Complaint. Defendants deny all other allegations contained in paragraph 13 of Plaintiff's Complaint.

14.     With respect to the allegations contained in paragraph 14 of Plaintiff's Complaint, Defendants admit that as of February 15, 2002 Clark Fork, then known as, Montana Power, LLC had succeeded to the Montana Power Company's obligations with respect to the Junior Debentures. On November 15, 2002 NorthWestern succeeded to these same obligations. Upon information and belief, Defendants admit the last sentence of paragraph 14 of Plaintiff's Complaint.

15.    With respect to the allegations contained in paragraph 15 of Plaintiff's Complaint, Defendants do not know what Plaintiffs mean by the term "special purpose vehicle" and therefore deny the allegations contained therein. Otherwise, the Trust Agreement identified in Plaintiff's Complaint speaks for itself and no response is required.

16.    With respect to the allegations contained in paragraph 16 of Plaintiff's Complaint, Defendants are informed and believe that Clark Fork has no current obligation to make any payments with respect Junior Debentures and thus deny the allegations contained in paragraph 16 of Plaintiff's Complaint. Otherwise, the terms of the Trust Agreement which set forth the operative terms with respect to the QUIPS and the Junior Debentures speak for themselves and no response is required.

17.    Defendants are informed and believe that The Montana Power Company sold the Junior Debentures to the trust which held the Junior Debentures as an investment. To the extent that the allegations contained in the remainder of paragraph 17 of Plaintiff's Complaint are legal conclusions, no response is required. To the extent that the remaining allegations of paragraph 17 purport to recite the terms and conditions of the Trust Agreement, that document speaks for itself and no response is required. Defendants are without personal knowledge as to the intent of The Montana Power Company in issuing the Junior Debentures and thus deny the remaining allegations of paragraph 17.

18.    Paragraph 18 of Plaintiff's Complaint purports to state the terms of section 6.10 of an indenture. To the extent that it does, the Indenture speaks for itself and thus no response is required.

19.    Defendants are without sufficient knowledge or information to respond to paragraph 19 of Plaintiff's Complaint and therefore deny the same.

20.    To the extent that paragraph 20 of Plaintiff's Complaint purports to paraphrase certain of the terms and conditions of the Guarantee Agreement, that Guarantee Agreement speaks for itself and no response is required. With respect to the last sentence of paragraph 20 of Plaintiff's Complaint, the sentence is unintelligible and therefore Defendants are unable to respond to the same. Further, to the extent that the last sentence of paragraph 20 calls for a legal conclusion, no response is required.

21.    Defendants admit the allegations contained in paragraph 21 of Plaintiff's Complaint.

22.    Defendants admit that on or about September 29, 2000 NorthWestern entered into a Unit Purchase Agreement with The Montana Power Company and Touch America Holdings to acquire the unit ownership of the Montana Power, LLC. To the extent that the allegations contained in paragraph 22 of Plaintiff's Complaint purport to paraphrase the terms of the Unit Purchase Agreement, that document speaks for itself and no response is required.

23.    The terms and conditions of the Merger documents speak for themselves, and thus, no response is necessary.

24.    To the extent the allegations in paragraph 24 of Plaintiff's Complaint purport to paraphrase or summarize the terms and conditions of the First Supplemental Indenture, that document speaks for itself, and thus, no response is required.

25.    To the extent the allegations in paragraph 25 of Plaintiff's Complaint purport to paraphrase or summarize the terms and conditions of a "letter agreement" or of the Guarantee Agreement, those documents speak for themselves, and thus, no response is required.

26.    Defendants admit that on February 15, 2002, pursuant to the terms of the Unit Purchase Agreement, NorthWestern acquired the unit ownership of MPLLC. To the extent that

the allegations contained in paragraph 26 purport to paraphrase the terms of the Unit Purchase Agreement, that document speaks for itself and no response is required. Insofar as neither MPLLC nor Clark Fork were the Sellers, allegations contained in the second and third sentences of paragraph 26 are irrelevant, imply legal conclusions which have no basis in fact or in law, and thus no response is required.

27.    Defendants admit that MPLLC was renamed NorthWestern Energy, LLC ("NWE"). Defendants affirmatively allege that NWE is now known as Clark Fork.

28.    Defendants admit NorthWestern entered into the Second Supplemental Indenture; however, to the extent that paragraph 28 of Plaintiff's Complaint purports to paraphrase the terms of the Second Supplemental Indenture, that document speaks for itself and thus no response is required. To the extent that the allegations contained paragraph 28 consist of one or more legal conclusions, no response is required.

29.    Defendants admit NorthWestern entered into an Amendment to the Guarantee Agreement; however, to the extent that paragraph 29 of Plaintiff's Complaint purports to paraphrase the terms of the Amendment to the Guarantee Agreement, that document speaks for itself and thus, no response is required. To the extent that paragraph 29 of Plaintiff's Complaint contains one or more legal conclusions, no response is required.

30.    To the extent that paragraph 30 of Plaintiff's Complaint purports to paraphrase the terms of a certain letter agreement, that document speaks for itself and no response is required. To the extent that paragraph 30 of Plaintiff's Complaint contains one or more legal conclusions no response is required.

31.    Defendants admit that on November 15, 2002, NorthWestern and Clark Fork and closed a transaction. The closing documents speak for themselves and thus, no further response

is required. Defendants deny the allegations contained in paragraph 31 of Plaintiff's Complaint that are not consistent with the specific terms and conditions of the closing documents. Further, Defendants specifically deny the allegations contained in the First Sentence of paragraph 31.

32.    To the extent that the allegations contained in paragraph 32 of Plaintiff's Complaint contain legal conclusions, no response is required. To the extent that paragraph 32 of Plaintiff's Complaint purports to summarize terms, conditions and statements contained in various documents related to the closing of the agreement to transfer certain assets and liabilities from Clark Fork to NorthWestern, those documents speak for themselves and no response is required. With respect to the last sentence of Paragraph 32 of Plaintiff's Complaint, Defendants are without sufficient knowledge and information with respect to such allegations and therefore deny the same.

33.    To the extent that paragraph 33 of Plaintiff's Complaint contains one or more legal conclusions, no response is required. Otherwise, Defendants deny the allegations contained in paragraph 33 of Plaintiff's Complaint.

34.    The allegations contained in paragraph 34 of Plaintiff's Complaint are not specific as to time frame, and thus, it is impossible to respond to the same.

35.    Defendants deny the allegations contained in paragraph 35 of Plaintiff's Complaint.

36.    Defendants do not understand what Plaintiff means when it alleges that "no interest ... was paid ... since prior to the September 14, 2003" (emphasis added) and Defendants find this sentence unintelligible and, therefore, are unable to respond to the same. Defendants are without sufficient information to know the amount of interest currently due or past due on the Junior Debentures. The third sentence of paragraph 36 of Plaintiff's Complaint would require



the Defendants to speculate as to what the trust might have done and, therefore, Defendants deny the same. The last sentence of paragraph 36 of Plaintiff's Complaint purports to paraphrase the terms of the Indenture, which document speaks for itself and, thus, no response is required. To the extent the last sentence of paragraph 36 of Plaintiff's Complaint calls for a legal conclusion, no response is required.

37.    Defendants admit that following the transfer of certain assets and liabilities from Clark Fork to NorthWestern, Clark Fork retained among its assets and liabilities the Milltown Dam and related environmental liabilities. Defendants deny the inference that these were the only assets and liabilities retained by Clark Fork.

38.    Defendants admit that after the transfer of certain assets and liabilities from Clark Fork to its parent corporation, NorthWestern Corporation operated the electric and natural gas transmission and distribution business in Montana as a division of NorthWestern, which division is known as NorthWestern Energy.

39.    Defendants admit the allegations contained in paragraph 39 of Plaintiff's Complaint.

40.    Defendants admit the allegations contained in paragraph 40 of Plaintiff's Complaint.

41.    Defendants deny the allegations contained in paragraph 41 of Plaintiff's Complaint. To the extent the allegations purport to paraphrase certain agreements between NorthWestern and Clark Fork, those certain agreements speak for themselves and no response is required.

42.    Defendants admit the allegations contained in paragraph 42 of Plaintiff's Complaint.

43.    Defendants affirmatively allege that NorthWestern's public financial documents speak for themselves, and thus, no response is required. Defendants deny the remainder of the allegations contained in paragraph 43 of Plaintiff's Complaint.

44.    To the extent that the allegations contained in paragraph 44 of Plaintiff's Complaint contain legal conclusions, no response is required. To the extent that the allegations contained in paragraph 44 of Plaintiff's Complaint require Defendants to speculate as to the future, no response is required. Otherwise, Defendants deny the allegations contained in paragraph 44 of Plaintiff's Complaint.

45.    To the extent that paragraph 45 of Plaintiff's Complaint purports to paraphrase an April 8, 2004 Order of the United States Bankruptcy for the District of Delaware, that Order speaks for itself and no response is required.

### STATEMENT OF CLAIM

### FIRST CAUSE OF ACTION

### (Breach of Fiduciary Duty)

46.    Defendants repeat and re-allege their responses contained in paragraph 1-45 of this Answer and incorporate them herein by reference.

47.    To the extent the allegations contained in paragraph 47 of Plaintiff's Complaint contain legal conclusions, no response is required. Otherwise, Defendants deny the allegations contained in paragraph 47 of Plaintiff's Complaint.

48.    Defendants deny the allegations contained in paragraph 48 of Plaintiff's Complaint.



49.    To the extent the allegations contained in paragraph 49 of Plaintiff's Complaint contain legal conclusions, no response is required.  Otherwise, Defendants deny the allegations contained in paragraph 49 of Plaintiff's Complaint.

50.    Defendants deny the allegations contained in paragraph 50 of Plaintiff's Complaint.

51.    Defendants deny the allegations contained in paragraph 51 of Plaintiff's Complaint.

52.    Defendants deny the allegations contained in paragraph 52 of Plaintiff's Complaint.

53.    Defendants deny the allegations contained in paragraph 53 of Plaintiff's Complaint.

54.    To the extent any allegation contained in Plaintiff's Complaint is neither admitted nor otherwise responded to, Defendants deny all such other allegations.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

55.    Plaintiff fails to state a cause of action for which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

56.    At all times material to this Complaint, Clark Fork formerly known as NWE and MPLLC, was a wholly owned subsidiary of NorthWestern and NorthWestern was the sole member and manager of Clark Fork.  NorthWestern and not Defendants possessed the sole authority to make any decisions concerning the business operations of Clark Fork .



## THIRD AFFIRMATIVE DEFENSE

57.    At all times material to this Complaint, Defendants reasonably believed that NorthWestern and Clark Fork and were solvent.

## FOURTH AFFIRMATIVE DEFENSE

58.    At no time material to this Complaint did Defendants owe a fiduciary duty to any creditor of Clark Fork.

## FIFTH AFFIRMATIVE DEFENSE

59.    At no time material to this Complaint did Defendants owe a fiduciary duty to any creditor of NorthWestern.

## SIXTH AFFIRMATIVE DEFENSE

60.    Plaintiff was responsible, in whole or in part, for any damages which it may have suffered because it acquired its interest in the QUIPS after the November 15, 2002 transaction of which Plaintiff now complains.

## SEVENTH AFFIRMATIVE DEFENSE

61.    Plaintiff is responsible, in whole or in part, for any damages which it may have suffered because it knew, or should have known, of the financial condition of NorthWestern at the time it purchase its interest in the QUIPS.

## EIGHTH AFFIRMATIVE DEFENSE

62.    Both prior to and subsequent to the purchase by NorthWestern of the entire unit interest in MPLLC, it was a matter of public record that NorthWestern would hold the Montana electric and natural gas transmission and distribution business it was acquired pursuant to the terms of the Unit Purchase Agreement, as either a division of NorthWestern or as a wholly owned subsidiary of NorthWestern. Thus, at all times material to the Complaint, Plaintiff knew,



or should have known, that NorthWestern had the legal authority to order and direct the transfer of certain assets and liabilities associated with the Montana electric and natural gas transmission and distribution business from its wholly owned subsidiary, Clark Fork, to the parent corporation, which was the sole member and manager of the subsidiary.

## NINTH AFFIRMATIVE DEFENSE

63.     At all times material to this Complaint, it was a matter of public record that NorthWestern intended to transfer certain of the assets and liabilities associated with the Montana electric and natural gas transmission and distribution business in Montana from its wholly owned subsidiary, Clark Fork to the parent, NorthWestern. Thus, Plaintiff knew, or should have known, that NorthWestern had the legal authority to order and direct the transfer of certain assets and liabilities associated with the Montana electric and natural gas transmission and distribution business in Montana from its wholly owned subsidiary, Clark Fork to the parent corporation which was the sole member and manager of the subsidiary.

## TENTH AFFIRMATIVE DEFENSE

64.     The Indenture for Unsecured Subordinated Debt Securities relating to Trust Securities, under the terms of which the Montana Power Company issued the Junior Subordinated Interest Debentures provides on its face that Montana Power Company or its successor in interest could assign the obligation to pay the Junior Debentures without the consent of the holder of the QUIPS. Thus, at all times material to this Complaint, Plaintiff knew, or should have known, that NorthWestern had the legal authority to order and direct the transfer of certain assets and liabilities, including assets and liabilities associated with Junior Debentures and the QUIPS, from its wholly owned subsidiary, Clark Fork to the parent corporation, NorthWestern, without the consent of the holders of the QUIPS.

## ELEVENTH AFFIRMATIVE DEFENSE

65.    At all times material to the Complaint, the Defendants reasonably believed Clark Fork received good and valuable consideration in the form of the assumption of liabilities of Clark Fork by NorthWestern Corporation and guarantees from NorthWestern to Clark Fork which would permit Clark Fork to meet its financial obligations.

## TWELFTH AFFIRMATIVE DEFENSE

66.    At all times material to this Complaint, Defendants reasonably believed the transfer of certain assets and liabilities associated with the Montana electric and natural gas transmission and distribution business from Clark Fork, to NorthWestern was done with no intent to harm any creditors, including any holders or other creditors of the QUIPS.

## THIRTEENTH AFFIRMATIVE DEFENSE

67.    The negligence of Plaintiff, Magten, was greater than the negligence, if any, of the Defendants. Thus, Plaintiff should take nothing from this action.

## FOURTEENTH AFFIRMATIVE DEFENSE

68.    Only the Trustee has standing to bring an action for breach of any duty associated with the failure to comply with the Indenture, and thus, Plaintiff has no standing to bring this action.

## FIFTEENTH AFFIRMATIVE DEFENSE

69.    At no time material to this Complaint were the Defendants, or either of them, consulted or had any discretion with respect to the decision of NorthWestern to transfer certain assets and liabilities associated and held by its wholly owned subsidiary, Clark Fork to the parent corporation.



## SIXTEENTH AFFIRMATIVE DEFENSE

70.    Venue is not proper in that not all the defendants live in this judicial district and a substantial part of the events or omissions giving rise to the claim occurred outside this judicial district.

## SEVENTEENTH AFFIRMATIVE DEFENSE

71.    This Court has jurisdiction pursuant to 28 U.S.C. §1334 since this case is related to NorthWestern's bankruptcy, which is a case filed under Title 11 of the United States Code.

72.    As a case related to a matter in bankruptcy, change of venue of this case to the United States District Court for the District of Delaware is appropriate pursuant to 28 U.S.C. §1412.

## EIGHTEENTH AFFIRMATIVE DEFENSE

73.    Change of venue of this case to the United States District Court for the District of Delaware is appropriate pursuant to 28 U.S.C. §1404.

## NINTEENTH AFFIRMATIVE DEFENSE

74.    Pursuant to the terms of the Second Supplemental Indenture, NorthWestern became a co-obligor with NWE with respect to the obligations of the QUIPS Debentures and the Indenture. NorthWestern's assumption of such obligations was without prejudice to the rights of NorthWestern or NWE to transfer assets and liabilities to any Person, including NorthWestern. Upon such transfer, the Second Supplemental Indenture provides for the full release of the transferor of all obligations under the QUIPS Debentures and the Indenture.    Thus, the Defendants and each of them did not breach any duties owed to the Plaintiff.

## TWENTYETH AFFIRMATIVE DEFENSE

75.    Pursuant to the terms of the Amendment to Guarantee Agreement, NorthWestern became a co-obligor with NWE with respect to the obligations of the Guarantee Agreement. NorthWestern's assumption of such obligations was without prejudice to the rights of NorthWestern or NWE to transfer or assign their obligations under the Guarantee Agreement. Thus, the Defendants and each of them did not breach any duties owed to the Plaintiff.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

76.    Pursuant to the terms of the Second Supplemental Indenture and the Amendment to Guarantee Agreement, each executed on August 13, 2002 by the parties including the Bank of New York as Trustee, NorthWestern became a co-obligor with NWE with respect to the obligations of the QUIPS Debentures. NorthWestern's assumption of such obligations was without prejudice to the rights of NorthWestern or NWE to transfer assets and liabilities to any Person, including NorthWestern.    Upon such transfer, the Second Supplemental Indenture provides for the full release of the transferor of all obligations under the QUIPS Debentures and the Indenture. Upon the closing of the transfer of the assets and liabilities to NorthWestern, therefore, Clark Fork was relieved of all further obligations. Thus, the Defendants and each of them did not breach any duties owed to the Plaintiff.

## ADDITIONAL AFFIRMATIVE DEFENSES

77.    To the extent that Defendants or any of them during the course of this litigation become aware of additional affirmative defenses or become aware that one or more of the affirmative defenses pled need to be modified or amended or deleted, Defendants reserve the right to do the same.



## PRAYER FOR RELIEF

WHEREFORE, Defendants respectfully request this Court enter judgment against Plaintiffs as follows.

1.    Deny Plaintiff's any compensatory or punitive damages.

2.    Award to Defendants, all allowable costs, attorneys' fees and other litigation expenses to the extent recoverable under the law.

3.    Dismiss Plaintiff's Complaint with prejudice.

4.    Award Defendants such other and further relief as this Court may deem just proper and equitable.

Dated this 21st day of April, 2005.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By _____
     Stanley T. Kaleczyc
     Kimberly A. Beatty

Attorneys for Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of April, 2004, a true and correct copy of the foregoing was mailed by first-class mail/postage prepaid, addressed to:

James H. Goetz
J. Devlan Geddes
Goetz, Gallik & Baldwin, P.C.
35 North Grand
P.O. Box 6580
Bozeman, MT 59771-6580

Bonnie Steingart
John W. Brewer
Fried, Frank, Harris, Shriver & Jacobsen, LLP
One New York Plaza
New York, NY 10004

BROWNING, KALECZYC, BERRY & HOVEN, P.C.