# Exhibit H

IN UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------x
MAGTEN ASSET MANAGEMENT                  :
CORPORATION, Suing individually and      :
Derivatively on behalf of CLARK FORK     :
AND BLACKFOOT, LLC,                       :
                                         :
                Plaintiff,               :
                                         :
        v.                               :     Civil Action No. 04-1256 JJF
                                         :
PAUL, HASTINGS, JANOFSKY &               :
WALKER LLP,                              :
                                         :
                Defendant.               :
-------------------------------------------------x
```

## BRIEF IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Robert J. Dehney (#3578)
Curtis S. Miller (#4583)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
 Attorneys for Defendant Paul Hastings
Janofsky & Walker LLP

OF COUNSEL:

Dennis E. Glazer
Paul Spagnoletti
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

March 31, 2006

i.

# TABLE OF CONTENTS

Page

TABLE OF CITATIONS                                                          ii

PRELIMINARY STATEMENT                                                       1

STATEMENT OF FACTS                                                          2

ARGUMENT                                                                    5

   I.    MAGTEN'S CLAIMS AGAINST PAUL HASTINGS
SHOULD BE DISMISSED BECAUSE NON-
TRANSFEREES ARE NOT LIABLE FOR
FRAUDULENT TRANSFERS.                                                       5

   II.   MAGTEN DOES NOT HAVE STANDING TO ASSERT
CLAIMS AGAINST PAUL HASTINGS FOR AIDING
AND ABETTING A BREACH OF FIDUCIARY DUTY
OR MALPRACTICE.                                                             10

CONCLUSION                                                                  16

ii.

## TABLE OF CITATIONS

Cases

Atlanta Shipping Corp. v. Chemical Bank,
    631 F. Supp. 335 (S.D.N.Y. 1986), aff'd 818 F. 2d 240 (2d
    Cir. 1987)     8

Baker O'Neal Holdings v. Ernst & Young,
    No. 1:03-CV-0132-DFH, 2004 U.S. Dist. LEXIS 6277
    (S.D. Ind. March 24, 2004)     6, 7

Bondi v. Citigroup, Inc.,
    No. BER-L-10902-04, 2005 WL 975856 (N.J. Super. Feb.
    28, 2005)     7

Chepstow Ltd. v. Hunt,
    381 F.3d 1077 (11th Cir. 2004)     9

Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.,
    97 P.3d 140 (Colo. App. 2003)     7

Drachman v. Harvey,
    453 F.2d 722 (2d Cir 1971)     14

Edgeworth v. First Nat'l Bank of Chi.,
    677 F. Supp. 982 (S.D. Ind. 1988)     14

Elliott v. Glushon,
    390 F.2d 514 (9th Cir. 1967)     5, 8

FDIC v. Porco,
    552 N.E.2d 158 (N.Y. 1990)     9

FDIC v. S. Prawer & Co.,
    829 F. Supp. 453 (D. Me. 1993)     7

FDIC v. White,
    No. 3:96-CV-0560-P, 1998 U.S. Dist. LEXIS 3020 (N.D.
    Tex. March 5, 1998)     7

Freeman v. First Union Nat'l Bank,
    865 So. 2d 1272 (Fla. 2004)     5

Geren v. Quantum Chem. Corp.,
    832 F. Supp. 728 (S.D.N.Y. 1993)     9

iii.

In re Ampat S. Corp.,
    128 B.R. 405 (Bankr. D. Md. 1991)          8

In re NorthWestern Corp.,
    Case No. 03-12872 (CGC) (Bankr. D. Del. Oct. 18, 2004)      3

In re NorthWestern Corp.,
    Case No. 03-12872 (CGC) (Bankr. D. Del. Oct. 8, 2004)      3

In re NorthWestern Corp.,
    No. 03-12872 (CGC), 2004 WL 1661016 (Bankr. D. Del.
    July 23, 2004)      4, 12

In re Parmalat Sec. Litig.,
    377 F. Supp. 2d 390 (S.D.N.Y. 2005)      7

Jackson v. Star Sprinkler Corp.,
    575 F.2d 1223 (8th Cir. 1978)      8

Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.),
    320 F.3d 291 (2d Cir. 2003)      12

Kondelik v. First Fidelity Bank,
    857 P.2d 687 (Mont. 1993)      10

Lewis v. Chiles,
    719 F.2d 1044 (9th Cir. 1983)      14

Lowell Staats Mining Co., Inc. v. Phila. Elec. Co.,
    878 F. 2d 1271 (10th Cir. 1989)      9

Mack v. Newton,
    737 F.2d 1343 (5th Cir. 1984)      5, 8

Magten Asset Mgmt. Corp. v. Mike J. Hanson, et al.,
    No. CV-04-26-BU-RFC (D. Mont. Jan. 27, 2005)      15

Matthies v. Seymour Mfg. Co.,
    270 F.2d 365 (2d Cir. 1959)      14, 15

Morganroth & Morganroth v. Norris, McLaughlin & Marcus,
    331 F.3d 406 (3d Cir. 2003)      7

NorthWestern Corp. v. McGreevey (In re NorthWestern Corp.),
    Case No. 03-12872, Adv. No. 05-52525 (JLP), 2005 Bankr.
    LEXIS 2146 (Bankr. D. Del. Oct. 25)      3

iv.

Prod. Res. Group, L.L.C. v. NCT Group, Inc.,
    863 A.2d 772 (Del. Ch. Ct. 2004)      11

Richland Nat'l Bank & Trust v. Swenson,
    816 P.2d 1045 (Mont. 1991)      10

Robinson v. Watts Detective Agency, Inc.,
    685 F.2d 729 (1st Cir. 1982)      8

Rohm & Haas Co. v. Capuano,
    301 F. Supp. 2d 156 (D.R.I. 2004)      7, 9

Samson v. U.S. West Commc'ns, Inc. (In re Grigonis),
    208 B.R. 950 (Bankr. D. Mont. 1997)      7

Silling v. Erwin,
    881 F. Supp. 236 (S.D.W. Va. 1995)      14

Starrels v. First Nat'l Bank of Chi.,
    No. 85 C 6458, 1987 U.S. Dist. LEXIS 518 (N.D. Ill. Jan.
    21, 1987), aff'd, 870 F.2d 1168 (7th Cir. 1989)      14

Thomson Kernaghan & Co. v. Global Intellicom, Inc.,
    99 Civ. 3005 (DLC), 1999 U.S. Dist. LEXIS 13723
    (S.D.N.Y. Sept. 14, 1999)      8

Statutes
13 William Meade Fletcher, Fletcher Cyclopedia of the Law of
    Private Corporations § 5981.10, at 146–47 (rev. ed. 2004)      12

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
    Federal Practice and Procedure § 1828 (2d ed. 1986)      13

Federal Rule of Civil Procedure 12(c)      1

Federal Rule of Civil Procedure Rule 23.1      12

MCA § 31-2-326      5

MCA § 31-2-327      5

MCA § 35-8-1104      10, 12, 15

1.

Defendant Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"), by and through its counsel, respectfully submits this brief in support of its motion pursuant to Fed. R. Civ. P. 12(c) for a judgment dismissing plaintiff's claims on the pleadings.

### PRELIMINARY STATEMENT

The core allegation in this case is that Paul Hastings assisted NorthWestern Corp. ("NorthWestern") and one of its wholly owned subsidiaries, Clark Fork and Blackfoot, LLC ("Clark Fork"), in connection with a transaction that the plaintiff, Magten Asset Management Corporation ("Magten"), alleges was a fraudulent transfer. Based upon this core allegation, Magten asserts claims for aiding and abetting a fraudulent transfer, civil conspiracy to conduct a fraudulent transfer, aiding and abetting a breach of fiduciary duty, and malpractice.

All of Magten's claims against Paul Hastings should be dismissed because, inter alia, a non-transferee cannot be held liable for a fraudulent transfer as a matter of law. Simply put, laws prohibiting fraudulent transfers are designed to allow creditors to trace and recover a debtor's assets from their recipients and are not designed to impose liability upon third parties who did not receive the assets that were transferred. Significantly, the complaint does not allege that Paul Hastings received any of the assets transferred from Clark Fork. To the contrary, the complaint makes it clear that Paul Hastings, at all times, was acting as legal counsel to NorthWestern and Clark Fork. On its face, the complaint alleges that NorthWestern was the only party that benefited from the transaction.

Magten's claims against Paul Hastings for aiding and abetting a breach of fiduciary duty and malpractice also should be dismissed because they are derivative

2.

claims. Magten does not have standing to assert these claims on behalf of Clark Fork because Magten has not alleged—and cannot allege—that it was a creditor of Clark Fork at the time that the transaction at issue took place. Indeed, Magten has admitted that it did not acquire its claims until well after the transfer of assets it seeks to attack occurred.[1]

## STATEMENT OF FACTS

In September 2000, NorthWestern agreed to acquire certain transmission and distribution energy assets and liabilities from Montana Power Company. (See Compl. ¶¶ 2, 27) In furtherance of that agreement, Montana Power Company transferred these assets and liabilities on February 13, 2002 into a new, wholly owned limited liability subsidiary, which NorthWestern had agreed to acquire. (Id. ¶ 27.) That subsidiary was originally known as Montana Power Company LLC and is now known as Clark Fork. (See id. ¶¶ 28, 38, 51.) On February 15, 2002, NorthWestern purchased 100% of the equity of Clark Fork for $478 million and the assumption of $700 million in liabilities. (Id. ¶ 34.) Following NorthWestern's acquisition of Clark Fork, Clark Fork transferred the majority of its assets and designated liabilities to NorthWestern in November 2002. (Id. ¶¶ 42–43.)

Paul Hastings served as counsel to NorthWestern in connection with its consummation of the agreement to acquire the transmission and distribution energy assets and liabilities of Montana Power Company in February 2002, and acted as counsel to NorthWestern and Clark Fork in connection with the subsequent transfer of the

---

[1]    Paul Hastings reserves the right to assert other legal defenses not specifically raised by this motion, including without limitation additional defenses based on the Montana Uniform Fraudulent Transfer Act and defenses based on section 544 of the federal Bankruptcy Code, at a subsequent stage in these proceedings.

transmission and distribution energy assets and liabilities from Clark Fork to NorthWestern in November 2002 (collectively, the "MPC Acquisition").[2]

The liabilities transferred from Montana Power Company to Clark Fork and then from Clark Fork to NorthWestern included certain junior debentures issued by MPC, which were held by a Delaware business trust. (See id. ¶ 18–20.) Magten acquired a beneficial interest in these debentures by purchasing Quarterly Income Preferred Securities ("QUIPS") issued by the trust well after November 2002. The complaint does not allege that Magten was ever a creditor of Clark Fork or that it owned any QUIPS before the transfer of assets and liabilities from Clark Fork to NorthWestern. To the contrary, the United States Bankruptcy Court has found that:

> "The Debtor has consistently alleged, and Magten has never disputed, that Magten did not own any of the debentures prior to the time the assets were transferred to the Debtor. Rather, Magten acquired the debentures after the transaction was complete. Therefore, the Debtor asserts and Magten has not disputed, that Magten was never a creditor of Clark Fork at a time when Clark Fork held the

---

[2] Judge Case addressed the integrated character of the MPC Acquisition in overruling Magten's objection to NorthWestern's plan of reorganization. See Transcript of Proceedings at 33, In re NorthWestern Corp., Case No. 03-12872 (CGC) (Bankr. D. Del. Oct. 8, 2004) (attached hereto as Exhibit A) ("[I]n reviewing all of the underlying transaction documents . . . and the applicable law, it is clear to me that this was really all one transaction."); In re NorthWestern Corp., Case No. 03-12872 (CGC), Order Confirming Debtor's Second Amended and Restated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, at 35 (Bankr. D. Del. Oct. 18, 2004) (attached hereto as Exhibit B) (same).

Judge Peterson subsequently adopted Judge Case's holding in dismissing an adversary proceeding initiated by a plaintiff class that, like Magten, sought to "parse one aspect of the transfer and call it fraudulent." See NorthWestern Corp. v. McGreevey (In re NorthWestern Corp.), Case No. 03-12872, Adv. No. 05-52525 (JLP), 2005 Bankr. LEXIS 2146, at *15 (Bankr. D. Del. Oct. 25) (holding that "[t]he mechanism of creation of LLC's to effect the transfer and payment was indeed all one transaction, and it defies logic to argue otherwise")(all unreported decisions cited herein are attached to the Compendium of Unreported Decisions filed contemporaneously with the instant Motion).

4.

> disputed energy assets. Rather, Magten became a holder of
> the debentures only after the transaction was completed and
> was a matter of public record." In re NorthWestern Corp.,
> No. 03-12872 (CGC), 2004 WL 1661016, at *1 (Bankr. D.
> Del. July 23, 2004) (emphasis added).

Thus, while the complaint alleges that "Magten owns in excess of 33% of

the QUIPS" (Compl. ¶ 24), it is clear that Magten acquired all of these securities after the

transaction at issue had already been completed. As the Bankruptcy Court held, "even if

third party creditors were injured by the transaction, Magten was not one of them," a

ruling that Magten has not contested on appeal. In re NorthWestern Corp., 2004 WL

1661016, at *3.

Despite the fact that it was not injured in any way by the transaction

challenged in the complaint, Magten acquired 33% of the QUIPS in an apparent hope that

it would make a windfall profit by challenging the November 2002 transaction between

NorthWestern and Clark Fork. As part of this strategy, Magten has filed claims against

NorthWestern, certain officers of Clark Fork and this complaint against Paul Hastings.

All of these claims are based on the premise that the November 2002 transfer following

the consummation of the MPC Acquisition in February 2002 constituted a fraudulent

transfer. Based on this premise, Magten has asserted claims against Paul Hastings for (i)

aiding and abetting a breach of fiduciary duty owed to creditors of Clark Fork, (ii) aiding

and abetting a fraudulent transfer, (iii) civil conspiracy to conduct a fraudulent transfer,

and (iv) malpractice.

5.

## ARGUMENT

I.    MAGTEN'S CLAIMS AGAINST PAUL HASTINGS
      SHOULD    BE    DISMISSED    BECAUSE    NON-
      TRANSFEREES ARE NOT LIABLE FOR FRAUDU-
      LENT TRANSFERS.

Magten's claims against Paul Hastings should be dismissed because Paul
Hastings was not the transferee of the assets in question. As discussed below, imposing
fraudulent transfer liability on a non-transferee is plainly inconsistent with the purpose of
fraudulent transfer statutes, which is "clearly to preserve the assets of the bankrupt; they
are not intended to render civilly liable all persons who may have contributed in some
way to the dissipation of those assets." Mack v. Newton, 737 F.2d 1343, 1358 (5th Cir.
1984) (quoting Elliott v. Glushon, 390 F.2d 514, 516 (9th Cir. 1967)).

Significantly, all of the plaintiff's claims relate to an alleged fraudulent
transfer under Montana's Uniform Fraudulent Transfer Act ("UFTA"). MCA § 31-2-326
et seq. This statute, however, does not impose liability on non-transferees. Furthermore,
the statute provides that it should be applied and construed in a manner consistent with
the other states that have enacted the UFTA,[3] and the majority of cases interpreting the
UFTA enacted by other states have rejected attempts to impose liability on non-
transferees for fraudulent transfers.

For example, in Freeman v. First Union Nat'l Bank, 865 So. 2d 1272 (Fla.
2004), the Florida Supreme Court held that aider-and-abettor claims may not be brought
under the Florida UFTA against parties who are neither debtors nor transferees. The

---

[3]    See MCA § 31-2-327 ("This part must be applied and construed to effectuate the
       general purpose of making uniform the law with respect to the subject of this part
       among states enacting it.").

6.

plaintiffs, victims of a Ponzi scheme operator, charged that the defendant bank, despite knowledge of the operator's illegal activities, allowed the operator to wire transfer millions of dollars to offshore accounts even after state authorities had initiated legal action against the operator and an injunction had been entered freezing the operator's account. The Florida Supreme Court held that the plaintiffs had failed to state a claim against the defendant bank, reasoning that because the UFTA does not refer to parties other than debtors and transferees, to allow claims to be brought against other parties would "expand the FUFTA beyond its facial application and in a manner that is outside the purpose and plain language of the statute." Id. at 1277. The court concluded that the UFTA "was not intended to serve as a vehicle by which a creditor may bring a suit against a non-transferee party . . . for monetary damages arising from the non-transferee party's alleged aiding-abetting of a fraudulent money transfer." Id.

Similarly, in Baker O'Neal Holdings v. Ernst & Young, No. 1:03-CV-0132-DFH, 2004 U.S. Dist. LEXIS 6277 (S.D. Ind. March 24, 2004), the United States District Court, applying Indiana's UFTA, reached the same conclusion and explicitly rejected the argument that UFTA's "catch-all" provision allowing the court to impose "any other relief the circumstances may require" is broad enough to encompass aiding and abetting liability. Id. at *41. As the court explained:

> "At most, IUFTA's 'catch-all' provision gives a court flexibility to fashion remedies not explicitly provided for in the statute. The provision does not permit the court to assign liability where the Act did not, or to create out of whole cloth substantive rights of action with accompanying damages which are not otherwise implied or stated in the statute. Accessory liability for fraudulent transfers cannot be supported by . . . the IUFTA." Id. (emphasis added).

7.

The same conclusion was reached in <u>FDIC v. White</u>, No. 3:96-CV-0560-

P, 1998 U.S. Dist. LEXIS 3020 (N.D. Tex. March 5, 1998), which held that:

> "The Court finds that the statutes upon which the FDIC
> relies seek, generally, to void, set aside and recover
> fraudulently conveyed property.  It allows a creditor to
> track the property.  Nowhere does the statute imply that
> recovery could exceed the fraudulently transferred
> property.  <u>Nor should the Court assume that recovery could
> be had from anyone not in receipt of such property</u> given
> both the nature of the relief afforded thereby and the
> statute's silence as to liability of transferors and transferees
> beyond recovery of the question of the property in
> question."  <u>Id.</u> (emphasis added).[4]

This conclusion is also supported by the majority of cases interpreting the

provisions of the Bankruptcy Code regarding fraudulent transfers.[5]  Under federal law, it

---

[4]     <u>See also</u> <u>In re Parmalat Sec. Litig.</u>, 377 F. Supp. 2d 390, 417 (S.D.N.Y. 2005)
(holding that no claim for aiding and abetting a fraudulent transfer exists under
the Illinois UFTA); <u>Rohm & Haas Co. v. Capuano</u>, 301 F. Supp. 2d 156, 161
(D.R.I. 2004) (refusing to extend liability for a fraudulent transfer to a non-
transferee under the Rhode Island UFTA); <u>Baker O'Neal Holdings, Inv. v. Ernst
& Young LLP</u>, No. 1:03-cv-0132-DFH, 2004 U.S. Dist. LEXIS 6277, at *41
(S.D. Ind. Mar. 24, 2004) (citing "the multitude of other courts . . . holding that
there is no accessory liability under the Uniform Fraudulent Transfer Act"); <u>FDIC
v. S. Prawer & Co.</u>, 829 F. Supp. 453 (D. Me. 1993) (holding that  "civil
conspiracy to commit a fraudulent transfer cannot stand as an independent basis
of civil liability" under Maine's UFTA).  <u>But see</u> <u>Bondi v. Citigroup, Inc.</u>, No.
BER-L-10902-04, 2005 WL 975856 (N.J. Super. Feb. 28, 2005) (declining to
dismiss claim for aiding and abetting a fraudulent transfer under New Jersey's
UFTA); <u>Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.</u>, 97 P.3d
140, 146 (Colo. App. 2003) (recognizing that the majority of courts have not
allowed civil conspiracy claims based on the UFTA, but deciding to follow what
the court characterized as the "minority view" permitting such claims).  <u>But cf.</u>
<u>Morganroth & Morganroth v. Norris, McLaughlin & Marcus</u>, 331 F.3d 406, 414
(3d Cir. 2003) (holding that plaintiff stated a claim for "creditor fraud" under New
Jersey law by alleging that "an attorney has knowingly and intentionally
participated in a client's unlawful conduct to hinder, delay and/or fraudulently
obstruct the enforcement of a judgment of a court").

[5]     Because Montana's UFTA "bear[s] a close resemblance" to the language of
Bankruptcy Code, the Bankruptcy Court for the District of Montana court has
held that courts should "interpret Montana's fraudulent transfer provisions
contemporaneously with those of the Bankruptcy Code."  <u>Samson v. U.S. West
Commc'ns, Inc. (In re Grigonis)</u>, 208 B.R. 950, 958 (Bankr. D. Mont. 1997).

is well established that the fraudulent transfer provisions of the Bankruptcy Code cannot be used to impose liability on third parties who did not receive the assets at issue. See, e.g., Mack v. Newton, 737 F.2d at 1358; Robinson v. Watts Detective Agency, Inc., 685 F.2d 729, 737 & n.10 (1st Cir. 1982) (noting that this was an "open and shut question of law" and holding that "there can be no liability as a matter of law because neither [of the defendants] received any of the fraudulently transferred property"); Jackson v. Star Sprinkler Corp., 575 F.2d 1223, 1234 (8th Cir. 1978) ("recovery under the Bankruptcy Act does not extend to permit a judgment against 'conspirators' who did not receive the property transferred"); Elliott v. Glushon, 390 F.2d at 516 (holding that attorneys who assisted a fraudulent transfer could not be held liable for the fraudulent transfer because "[t]he legislative theory [behind the provision in the Bankruptcy Act concerning fraudulent transfers] is cancellation, not the creation of liability for the consequences of wrongful act"); In re Ampat S. Corp., 128 B.R. 405, 411 (Bankr. D. Md. 1991) (refusing to impose liability for a fraudulent transfer on a defendant who did not receive the property transferred); Atlanta Shipping Corp. v. Chemical Bank, 631 F. Supp. 335, 348 (S.D.N.Y. 1986) (rejecting a claim for "aiding and abetting a fraudulent conveyance" on the grounds that "the appropriate relief is to void the conveyance" and therefore "[a]n aiding and abetting claim against someone other than a transferee is meaningless"), aff'd 818 F. 2d 240 (2d Cir. 1987).[6]

---

[6] The conclusion that non-transferees cannot be held liable for fraudulent transfers is also supported by cases interpreting the fraudulent transfer laws of states that have not adopted the UFTA. See, e.g., Thomson Kernaghan & Co. v. Global Intellicom, Inc., 99 Civ. 3005 (DLC), 1999 U.S. Dist. LEXIS 13723, at *4–5 (S.D.N.Y. Sept. 14, 1999) ("[U]nder New York law no fraudulent conveyance claim may be maintained against Hariton merely for his participation in the alleged transfer."); Geren v. Quantum Chem. Corp., 832 F. Supp. 728, 737 (Continued . . .)

9.

As a result of these and similar decisions, it is now well recognized that "most courts have been reluctant to extend the reach of fraudulent conveyance actions so as to include parties that are only participants in a fraudulent transfer." Rohm & Haas Co. v. Capuano, 301 F. Supp. 2d at 161. To the contrary, "[c]ourts have generally held as to fraudulent conveyances that a person who assists another to procure one, is not liable in tort to the insolvent's creditors." Lowell Staats Mining Co., Inc. v. Phila. Elec. Co., 878 F. 2d 1271, 1276 n.1 (10th Cir. 1989).

It is clear from the face of the pleadings that Paul Hastings was neither the debtor nor the transferee of the assets in question. Indeed, the complaint specifically alleges that NorthWestern was "the only party that benefited in the transaction." (Compl. ¶ 5.) Therefore, all of the claims against Paul Hastings should be dismissed because Montana's UFTA does not impose liability on non-transferees for a fraudulent transfer.[7]

---

(. . . continued)

(S.D.N.Y. 1993) ("[T]he action of fraudulent conveyance does not create an independent remedy of money damages against third parties who aided the debtor's transfer at all."); FDIC v. Porco, 552 N.E.2d 158, 159 (N.Y. 1990) (refusing to "create a creditor's remedy for money damages against parties who . . . were neither transferees of the assets nor beneficiaries of the conveyance"); cf. Chepstow Ltd. v. Hunt, 381 F.3d 1077, 1090 (11th Cir. 2004) (holding that there is no independent cause of action under Georgia law for aiding and abetting a fraudulent transfer, but that Georgia law permits claims against non-transferees for conspiracy to defraud a creditor).

[7]     This is particularly clear with respect to Magten's second and third causes of action for aiding and abetting and conspiring to conduct a fraudulent transfer, respectively. The same conclusion also applies to Magten's first and fourth causes of action for aiding and abetting a breach of fiduciary duty and malpractice since these claims are simply another way in which Magten is attempting to impose liability upon Paul Hastings for a fraudulent transfer when Paul Hastings did not receive any of the assets that were transferred.

10.

## II.    MAGTEN DOES NOT HAVE STANDING TO ASSERT CLAIMS AGAINST PAUL HASTINGS FOR AIDING AND ABETTING A BREACH OF FIDUCIARY DUTY OR MALPRACTICE.

Magten's claims against Paul Hastings for aiding and abetting a breach of fiduciary duty and malpractice should be dismissed on the pleadings for the additional reason that they are derivative claims and Magten does not have standing to assert any derivative claims on Clark Fork's behalf.

Montana law clearly provides that "stockholders and guarantors of a corporation do not have the right to pursue an action on their own behalf when the cause of action accrues to the corporation." Kondelik v. First Fidelity Bank, 857 P.2d 687, 692 (Mont. 1993) (quoting Richland Nat'l Bank & Trust v. Swenson, 816 P.2d 1045, 1054 (Mont. 1991)).[8]  The complaint alleges that Paul Hastings aided and abetted the officers and directors of Clark Fork in breaching their fiduciary duties to Clark Fork and that Paul Hastings committed malpractice while representing Clark Fork. Such claims, if they are cognizable at all, clearly accrued to Clark Fork itself and not to its owner or creditors.

In an effort to overcome this obstacle to its claims, Magten alleges that Clark Fork's officers owed "individual fiduciary duties" to Clark Fork's creditors because Clark Fork was allegedly "in the zone of insolvency" at the time of the transaction at issue. (Compl. ¶ 60.) This reasoning is fundamentally flawed because it is based on the fiction that Clark Fork's alleged insolvency transformed these claims from

---

[8]    Clark Fork is a limited liability company organized under Montana law. Section 35-8-1104 of the Montana Code allows a member of a limited liability company to bring a derivative action on behalf of the company if the member meets the requirements of the statute. See MCA § 35-8-1104.

11.

derivative claims into direct creditor claims. As Vice Chancellor Strine held in a case in which a similar argument was raised:

> "The fact that the corporation has become insolvent does not turn such [derivative] claims into direct creditor claims, it simply provides creditors with standing to assert those claims. At all times, claims of this kind belong to the corporation itself because even if the improper acts occur when the firm is insolvent, they operate to injure the firm in the first instance by reducing its value, injuring creditors only indirectly by diminishing the value of the firm and therefore the assets from which the creditors may satisfy their claims.
>
> . . .
>
> Thus, regardless of whether they are brought by creditors when a company is insolvent, these claims remain derivative, with either shareholders or creditors suing to recover for a harm done to the corporation as an economic entity and any recovery logically flows to the corporation and benefits the derivative plaintiffs indirectly to the extent of their claim on the firm's assets. The reason for this bears repeating—the fact of insolvency does not change the primary object of the director's duties, which is the firm itself." Prod. Res. Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 776, 792 (Del. Ch. Ct. 2004) (emphasis added).

It is well established that, in the absence of insolvency, only a company's equity holders, and not a company's creditors, have standing to bring a derivative claim on behalf of the company. See, e.g., id. at 787 ("Typically, creditors may not allege fiduciary duty claims against corporate directors"). Furthermore, Clark Fork is a limited liability company, and the Montana statute authorizing derivative actions against limited liability companies authorizes only members of the limited liability company to bring such claims. See MCA § 35-8-1104.

Moreover, even assuming arguendo that Clark Fork was in the "zone of insolvency" when the transaction at issue took place, and assuming further that the

12.

Montana statute could be extended beyond its terms to allow a creditor to assert derivative claims on behalf of Clark Fork, Magten still does not have standing to assert claims against Paul Hastings because Magten was not a creditor of Clark Fork at the time of the transactions at issue. See In re NorthWestern Corp., 2004 WL 1661016, at *1.

Significantly, the Montana statute authorizing derivative actions against limited liability companies expressly requires that "[i]n a derivative action for a limited liability company, the plaintiff must be a member of the company when the action is commenced and: (a) must have been a member at the time of the transaction of which the plaintiff complains." MCA § 35-8-1104 (2)(a) (emphasis added).[9]

The primary purpose of the "contemporaneous ownership" rule embodied in MCA § 35-8-1104(2)(a) is to prevent suits such as the one sub judice—"'strike suits,' where individuals purchase shares in a corporation [or, in this instance, a beneficial interest in junior debentures of a limited liability company] with litigious motives." 13 William Meade Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 5981.10, at 146–47 (rev. ed. 2004); Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.), 320 F.3d 291, 297 (2d Cir. 2003) (characterizing the primary purpose of contemporaneous ownership rule as "prevent[ing] . . . courts from being used to litigate

---

[9]    As such, this provision of Montana law is similar to Federal Rule of Civil Procedure Rule 23.1, which requires that:

> "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege . . . that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law." Fed. R. Civ. P. 23.1 (emphasis added).

13.

purchased grievances" (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1828 (2d ed. 1986)). As a leading treatise explains, in the rule's absence, subsequent purchasers could achieve precisely the result that Magten seeks to achieve here, namely, to "reap a windfall from a[] recovery in a derivative proceeding which was not considered in the purchase price of their shares." Fletcher, supra, § 5981.10, at 147.

Magten apparently seeks to circumvent the contemporaneous ownership requirement by relying on a provision of the indenture which, according to Magten, "expressly acknowledges that the holders of the QUIPS are intended beneficiaries of [Clark Fork's] obligations with respect to the Junior Debentures and that if the Property Trustee of the Trust (the legal titleholder to the Junior Debentures) fails to act, any holder of the QUIPS can sue directly to enforce the Property Trustee's rights." (Compl ¶ 23.) Because the trustee has not asserted claims against Paul Hastings, Magten insists that it "has standing under the Indenture to enforce both the Trust's rights and its own individual rights as successor to the QUIPS holders who were its predecessors in interest." (Compl. ¶ 62; see also Compl. ¶ 97.)

These allegations, however, cannot establish Magten's standing to assert derivative claims on behalf of Clark Fork in this matter. Although an indenture may confer on Magten the right, in appropriate circumstances, to bring a direct action on behalf of the QUIPS trust to "enforce ... the Trust's rights and [Magten's] own individual rights," the indenture does not and cannot grant Magten the right to bring derivative claims on behalf of Clark Fork. The right and capacity to bring a derivative suit on behalf of a corporation or limited liability company is an equitable right that

14.

cannot be contractually assigned or transferred.  See, e.g., Lewis v. Chiles, 719 F.2d 1044, 1048 (9th Cir. 1983); Starrels v. First Nat'l Bank of Chi., No. 85 C 6458, 1987 U.S. Dist. LEXIS 518 (N.D. Ill. Jan. 21, 1987), aff'd, 870 F.2d 1168 (7th Cir. 1989).

       To be sure, courts have recognized that "record ownership of shares is not necessary to bring a derivative proceeding and, therefore, holders of equitable or beneficial interests in shares have standing to sue."  13 Fletcher, supra, § 5975, at 132; see, e.g., Drachman v. Harvey, 453 F.2d 722 (2d Cir 1971) (shareholders holding stock in "street name" have standing to assert derivative claims).  And some courts, applying this general rule, have held that beneficiaries of a trust may have standing to sue where the trust corpus consists of shares.  See Fletcher, supra, § 5976, at 134–35 (citing Silling v. Erwin, 881 F. Supp. 236, 239 (S.D.W. Va. 1995) ("beneficiaries of a trust holding stock are equitable shareholders who may bring an action against the corporation"); Edgeworth v. First Nat'l Bank of Chi., 677 F. Supp. 982 (S.D. Ind. 1988)).  But see Matthies v. Seymour Mfg. Co., 270 F.2d 365 (2d Cir. 1959) (holding that one of several trust beneficiaries cannot sue derivatively on behalf of a trustee who has refused to sue without joinder of all beneficiaries as indispensable parties).  In each of these cases, however, "the plaintiffs were beneficiaries or beneficial owners of shares at the time of the alleged wrongful actions."  Silling, 881 F. Supp. at 239 (emphasis added) (collecting cases).

       Where, as here, the plaintiff complains of actions that occurred prior to its acquisition of a beneficial interest, the plaintiff simply lacks standing to commence a derivative suit.  Id.  See generally Edgeworth, 677 F. Supp. at 991, 992 (dismissing the parties' arguments concerning whether the plaintiff could "step into the position of the Trust and rely on the Trust's shareholder status to establish the requisite standing to sue

15.

derivatively" as misplaced, because in a derivative action, the "'[p]laintiff sues on behalf

of himself and all other stockholders of [the corporation], not on behalf of himself and his

fellow beneficiaries of the ... trust[]'" (quoting Matthies, 270 F.2d at 376–77

(Waterman, J., dissenting))). [10]

　　　　　In sum, because Magten was not a member of Clark Fork or a creditor of

Clark Fork "at the time of the transaction of which the plaintiff complains," Magten

clearly does not have the ability to assert a derivative claim on Clark Fork's behalf.[11]

Accordingly, Magten's claims against Paul Hastings for aiding and abetting a breach of

fiduciary duty and malpractice should be dismissed on the pleadings.

---

[10]　　But see Magten Asset Mgmt. Corp. v. Mike J. Hanson, et al., No. CV-04-26-BU-
RFC (D. Mont. Jan. 27, 2005) (holding with respect to similar claims asserted in a
separate action by Magten against NorthWestern's officers that Magten had
standing to sue derivatively even though it had acquired its interest in the QUIPS
after the time of the transfer). Significantly, the court in the Hanson action failed
even to cite—much less to analyze—MCA § 35-8-1104(2)(a), the Montana
statute which flatly prohibits the prosecution of this derivative action by Magten.

[11]　　Notably, Magten also cannot allege that it ever had any ownership interest in
Clark Fork after the underlying debt had been assigned from Clark Fork to
NorthWestern. As such, apart from its failure to own the QUIPS at the time of the
alleged "fraudulent transfer" (which is itself fatal to Magten's standing to bring a
derivative claim in this matter), Magten also was never actually a creditor of
Clark Fork because Clark Fork's obligations under the QUIPS were assumed by
NorthWestern before the QUIPS were even purchased by Magten.

16.

## CONCLUSION

For the reasons set forth above, Paul Hastings respectfully requests that the Court enter a judgment on the pleadings dismissing Magten's claims against Paul Hastings with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Robert J. Dehney (#3578)
Curtis S. Miller (#4583)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
  Attorneys for Defendant Paul Hastings
  Janofsky & Walker LLP

OF COUNSEL:

Dennis E. Glazer
Paul Spagnoletti
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

March 31, 2006

513536

# Exhibit I

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------x
MAGTEN ASSET MANAGEMENT                :
CORPORATION, suing individually and    :
derivatively on behalf of CLARK FORK   :
AND BLACKFOOT, LLC                      :
                                        :
              Plaintiff,                :
                                        :
        v.                              :    Civil Action No. 04-1256 JJF
                                        :
PAUL, HASTINGS, JANOFSKY &              :
WALKER LLP,                             :
                                        :
              Defendant.                :
--------------------------------------------------------x
```

## REPLY BRIEF IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS

> MORRIS, NICHOLS, ARSHT & TUNNELL LLP
> Robert J. Dehney (#3578)
> Curtis S. Miller (#4583)
> 1201 North Market Street
> P.O. Box 1347
> Wilmington, Delaware 19899-1347
> (302) 658-9200
>     Attorneys for Defendant Paul, Hastings,
>     Janofsky & Walker LLP

OF COUNSEL:

Dennis E. Glazer
Paul Spagnoletti
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

June 2, 2006

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 2

    I.    MAGTEN'S CLAIMS FOR AIDING AND ABETTING AND
            CONSPIRACY RUN AFOUL OF THE PURPOSE OF THE
            UNIFORM FRAUDULENT TRANSFER ACT ........................................... 2

    II.   PLAINTIFF LACKS STANDING TO BRING DERIVATIVE
            CLAIMS BECAUSE IT HELD NO EQUITY IN CLARK FORK
            AND HAD NO INTEREST IN THE COMPANY WHEN THE
            ALLEGED FRAUD OCCURRED ................................................................. 8

CONCLUSION ............................................................................................................... 11

## TABLE OF CITATIONS

PAGE

Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,
    869 P.2d 454 (Cal. 1994) ................................................................................................3

Astarte, Inc. v. Pac. Indus. Sys., Inc.,
    865 F. Supp. 693 (D. Colo. 1994)...................................................................................3

Banco Popular North America v. Gandi,
    876 A.2d 253 (N.J. 2005)................................................................................................4

Biering v. Ringling,
    240 P. 829 (Mont. 1925)..................................................................................................8

Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb,
    385 F. Supp. 2d 449 (D. Del. 2004)................................................................................8

Elliott v. Glushon,
    390 F.2d 514 (9th Cir. 1967) ..........................................................................................4

Farmers Plant Aid, Inc. v. Fedder,
    999 P.2d 315 (Mont. 2000)..............................................................................................7

Forum Ins. Co. v. Devere Ltd.,
    151 F. Supp. 2d 1145 (C.D. Cal. 2001) ..........................................................................4

Gulf Insurance Co. v. Clark,
    20 P.3d 780 (Mont. 2001)............................................................................................5, 6

Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.),
    320 F.3d 291 (2d Cir. 2003)............................................................................................9

Las Vegas Sun, Inc. v. Summa Corp.,
    610 F.2d 614 (9th Cir. 1979) ..........................................................................................3

Litchfield Asset Mgmt. Corp. v. Howell,
    799 A.2d 298 (Conn. App. 2002) ...................................................................................4

Mack v. Newton,
    737 F.2d 1343 (5th Cir. 1984) ........................................................................................4

PAGE

McAndrew v. Lockheed Martin Corp.,
 206 F.3d 1031 (11th Cir. 2000) ....................................................................................3

Neset v. Fifer,
 942 P.2d 712 (Mont. 1997) ............................................................................................8

Northern Tankers (Cyprus) Ltd. v. Backstrom,
 968 F. Supp. 66 (D. Conn. 1997) ....................................................................................4

Production Resources Group, L.L.C. v. NCT Group, Inc.,
 863 A.2d 772 (Del. Ch. 2004) ........................................................................................8

Raymond v. Blancgrass,
 93 P. 648 (Mont. 1908) ............................................................................................6, 7

Wieboldt Stores, Inc. v. Schottenstein,
 111 B.R. 162 (N.D. Ill. 1990) ........................................................................................4

Wiles v. Capitol Indemnity Corp.,
 75 F. Supp. 2d 1003 (E.D. Mo. 1999) ...........................................................................3

## STATUTES & RULES

Fed. R. Civ. P. 12(c) ..........................................................................................................1

Mont. Code Ann. § 31-2-327 ............................................................................................5

Mont. Code Ann. § 31-2-342 ....................................................................................5, 6, 7

Mont. Code Ann. § 35-8-1104 ....................................................................................9, 10

## OTHER AUTHORITIES

Howard J. Steinberg, Liability of Participants in Fraudulent Transfers,
 2 Bankr. Litig. § 14.9 (Dec. 2003) ..................................................................................5

Defendant Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"), by and
through its counsel, respectfully submits this reply brief in further support of its motion,
pursuant to Federal Rule of Civil Procedure 12(c), for a judgment dismissing Plaintiff's
claims on the pleadings.

## PRELIMINARY STATEMENT

The claims alleged by Magten Asset Management Corp. ("Magten" or "Plaintiff")
must be dismissed because, as a matter of law, (a) a non-party like Paul Hastings cannot
be held liable for an alleged fraudulent transfer, and (b) a creditor such as Magten does
not have standing to assert derivative claims on behalf of a debtor when it was
indisputably not a creditor when the debtor's cause of action accrued. In attempting to
hold Paul Hastings liable for providing legal advice to its client, NorthWestern Corp.
("NorthWestern"), and NorthWestern's wholly owned subsidiary Clark Fork and
Blackfoot LLC ("Clark Fork"), Plaintiff misinterprets both Montana statutory and case
law and the indenture agreement governing the debt instruments through which Magten
ultimately became a creditor of NorthWestern.

Plaintiff attempts to salvage its meritless claims for aiding and abetting and for
conspiracy by arguing, inter alia, that Montana law imposes these forms of secondary
liability for violations of the state's Uniform Fraudulent Transfer Act ("UFTA").
However, Plaintiffs find no support in the Montana UFTA or case law for this assertion,
which has been rejected by the sound majority of courts. Moreover, Plaintiff's "theory"
runs counter to the purpose of the UFTA, which is to give creditors equitable remedies to
avoid fraudulent transfers and thereby make those assets available in satisfaction of the
debtor's liabilities.

Plaintiff's argument that it can assert derivative claims on behalf of Clark Fork under the terms of the indenture is equally infirm. Plaintiff conveniently ignores the fact that even though it might be entitled to sue on behalf of the QUIPS trust, it does not have the right to sue on behalf of Clark Fork. Moreover, even if it could sue on behalf of Clark Fork, it was not a creditor of Clark Fork at the time of the alleged fraudulent transfer. Thus, Plaintiff seeks to violate the "contemporaneous ownership" rule, which is so essential to the law of derivative lawsuits because of the omnipresent threat of "strike suits" like the one at bar, in which a person purchases securities after an alleged fraud has become known in order to reap an undeserved windfall through litigation.

## ARGUMENT

I.   MAGTEN'S CLAIMS FOR AIDING AND ABETTING AND
     CONSPIRACY RUN AFOUL OF THE PURPOSE OF THE
     UNIFORM FRAUDULENT TRANSFER ACT.

Plaintiff does not and cannot dispute that the Montana UFTA does not create a cause of action against a defendant, like Paul Hastings, that was not a party to the alleged fraudulent transfer underlying this action. Furthermore, it has not contested that the purpose of the UFTA is to preserve a debtor's assets for the benefit of its creditors, not to impose civil liability on all persons who may have assisted an alleged violation of the UFTA. Nor does Plaintiff even attempt to distinguish the ample authority declining to cognize claims for aiding and abetting or conspiracy in connection with an alleged fraudulent transfer. Instead, Plaintiff seeks to circumvent the clear intention of the UFTA

2

by asserting meritless claims against Paul Hastings for aiding and abetting and conspiracy
in connection with NorthWestern's alleged violation of the Montana UFTA.[1]

Plaintiff's separate proceeding against NorthWestern is evidence that it
understands the clear import of the Montana UFTA. In that case, Plaintiff has sued to
avoid the transfer of Clark Fork's asserts to NorthWestern – the second part of an
integrated transaction in which NorthWestern acquired certain utility assets of the
Montana Power Co. ("MPC") – pursuant to the Montana UFTA. See Complaint, Magten
Asset Mgmt. Corp. v. NorthWestern Corp., Case No. 03-12872 (CGC), Adv. Pro. No. 04-
53324 (Bankr. D. Del.). However, Magten has also pursued these baseless claims against
Paul Hastings in a transparent effort to coerce NorthWestern into a settlement by also
exerting pressure on Paul Hastings, NorthWestern's counsel.[2]

---

[1] Plaintiff argues that NorthWestern, Paul Hastings, and others violated the Montana UFTA by
virtue of the November 2002 transaction by which NorthWestern obtained the energy assets of Clark Fork,
which has been obtained several months earlier from MPC. See Compl. ¶¶ 39-49. However, nowhere in
this litigation does Plaintiff challenge the findings of Judge Case and Judge Peterson of the Delaware
bankruptcy court that NorthWestern's acquisition of MPC's utility assets – first by transferring those assets
to the Clark Fork subsidiary and then to NorthWestern – actually constituted a single, integrated
transaction. See Def.'s Br. at 3 n.2 (citing previous opinions of the Delaware bankruptcy court).

[2] As frequently noted by Plaintiff, Paul Hastings was NorthWestern's attorney and acted as
NorthWestern's agent in its purchase of the Montana utility assets. See, e.g., Compl. ¶¶ 5, 29-31, 35, 42.
However, it is well-settled that an agent cannot conspire with his or her principal. Rather, "acts of
corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary
for the formation of a conspiracy." McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir.
2000); see also, e.g., Las Vegas Sun, Inc. v. Summa Corp., 610 F.2d 614, 618 (9th Cir. 1979); Wiles v.
Capitol Indemnity Corp., 75 F. Supp. 2d 1003, 1005 (E.D. Mo. 1999); Astarte, Inc. v. Pac. Indus. Sys., Inc.,
865 F. Supp. 693, 708 (D. Colo. 1994);

Moreover, "[b]y its nature, tort liability arising from conspiracy presupposes that the coconspirator
is legally capable of committing the tort, i.e., that he or she owes a duty to the plaintiff recognized by law
and is potentially subject to liability for breach of that duty." Applied Equip. Corp. v. Litton Saudi Arabia
Ltd., 869 P.2d 454, 457 (Cal. 1994). However, in this case, Paul Hastings is neither the debtor nor the
transferee, and therefore is incapable of independently violating the UFTA or breaching a duty to Plaintiff
pursuant to that statute. Therefore, as Paul Hastings is not legally capable of committing the breach of duty
alleged, it cannot be held liable for conspiracy to commit a fraudulent transfer.

3

This tactic is plainly contrary to the purpose of the UFTA, which is "clearly to preserve the assets of the bankrupt," not "to render civilly liable all persons who may have contributed in some way to the dissipation of those assets." Mack v. Newton, 737 F.2d 1343, 1358 (5th Cir. 1984) (quoting Elliott v. Glushon, 390 F.2d 514, 516 (9th Cir. 1967)). Other courts hearing UFTA cases have recognized this precise distinction. See, e.g., Forum Ins. Co. v. Devere Ltd., 151 F. Supp. 2d 1145, 1150 (C.D. Cal. 2001) (granting motion for summary judgment because the "UFTA provides only equitable remedies solely against transferees, and Defendant is a not a transferee"); Wieboldt Stores, Inc. v. Schottenstein, 111 B.R. 162, 169 (N.D. Ill. 1990) (noting "the narrow purpose of fraudulent conveyance law"); accord Litchfield Asset Mgmt. Corp. v. Howell, 799 A.2d 298, 309 (Conn. App. 2002) (noting that an award of damages in a fraudulent transfer case is "appropriate only where the transferee subsequently disposes of the transferred property and retains the proceeds of that disposition").[3] Because every fraudulent transfer involves more than one person – at the very least, a debtor/transferor and a transferee – every fraudulent transfer claim can theoretically be restated as a claim for conspiracy, an absurd result clearly not contemplated by the UFTA. See Northern Tankers (Cyprus) Ltd. v. Backstrom, 968 F. Supp. 66, 68 (D. Conn. 1997) ("Fraudulent transfers almost always involve a transferor and a transferee who conspire to convey property. . . . [A]llowing a plaintiff to characterize a fraudulent transfer claim as a tort of

---

[3] The New Jersey Supreme Court's decision in Banco Popular North America v. Gandi, 876 A.2d 253 (N.J. 2005), relied on heavily by Plaintiff, is plainly at odds with the purpose of the UFTA, which is to preserve a debtor's assets for the benefit of its creditors, not to impose unlimited joint-and-several liability on any and all persons – including lawyers, banks, and other agents – who might assist a debtor in transferring its assets to others.

4

civil conspiracy . . . would be 'legal sophistry' that would swallow the established rule . . . .").

Plaintiff's suggestion that Florida is the only jurisdiction to bar actions against persons who assist violations of the UFTA or the closely related UFCA and bankruptcy statutes is simply untrue. Paul Hastings cited ample authority for this proposition in its moving brief. See Def.'s Br. at 5-9 & nn. 4-6. This conclusion has also been adopted by a leading treatise on the subject. See Howard J. Steinberg, Liability of Participants in Fraudulent Transfers, 2 Bankr. Litig. § 14.9 (Dec. 2003) ("Courts have been hesitant to develop theories of recovery against those who assist in making fraudulent transfers. . . . Most cases simply hold that there can be no recovery from one who aids, participates in, or conspires to affect a fraudulent transfer."). Because the Montana UFTA "must be applied and construed to effectuate the general purpose of making uniform the law with respect to the subject of this part among states enacting it," Mont. Code Ann. § 31-2-327, this authority strongly weighs against a finding of a cause of action in Montana.

The cases cited by Plaintiff do not support its argument that the State of Montana recognizes secondary liability for alleged violations of the UFTA. First, nothing in the Montana common law recognizes a cause of action in connection with a fraudulent transfer against a party other than the debtor and the transferee who received the property in question. Second, while the Montana UFTA preserves pre-existing "principles of law and equity," Mont. Code Ann. § 31-2-342, nothing in the statute indicates that liability should attach to anyone other than a party to the alleged fraudulent transfer. Plaintiff's citation to Gulf Insurance Co. v. Clark, 20 P.3d 780 (Mont. 2001), for the proposition that the Montana UFTA preserves every cause of action pre-dating the UFTA or its

5

predecessor, the UFCA, is unavailing. In construing Section 31-2-342, Gulf Insurance observed only that an aggrieved creditor had other causes of action – such as an injunction, a writ of attachment, a constructive trust, and an equitable lien – against the parties to the fraudulent transfer, but only those parties, id. at 786-87; that case did not say that Section 31-2-342 operated so as to preserve any cause of action against those who were not parties to the allegedly fraudulent transfer.

Third, Plaintiff seriously misconstrues Raymond v. Blancgrass, 93 P. 648 (Mont. 1908), the single, century-old case it cites for the proposition that Montana common law recognizes a cause of action for "conspiracy to defraud creditors." Pl.'s Br. at 6.[4] First, that case, which pre-dates both the UFTA and its predecessor, the UFCA, concerned a suit against third-party transferees – not non-parties like Paul Hastings – who personally converted the debtor's property with knowledge that the plaintiff had a separate suit pending against the debtor. 93 P. at 650-51. In other words, Raymond acknowledged that there may be a cause of action against a transferee who wrongfully obtains a debtor's property – the very cause of action later enshrined in the UFCA and UFTA. Second, Plaintiff's deceptively selective quotation ignores the actual holding of the case, which reversed the judgment against the defendants because the plaintiff failed to state a claim. The court held:

> [T]he action cannot be maintained unless the plaintiff, by judgment, execution, or attachment, has secured a lien upon the particular property, and thus has a vested right therein which has been rendered nugatory by the acts of the defendant, the plaintiff thereby having sustained a specific injury different from the suffered by other creditors. In other words, in order to warrant a recovery, the plaintiff must allege and show that he had

---

[4] Tellingly, Raymond has not been cited for any point of law in any published decision by any Montana court since 1953, nor by any other court since 1958.

> a specific right to subject the particular property to the satisfaction of his
> judgment, and that the defendant, either alone or with others, has deprived
> him of this right. Otherwise a recovery would be had upon the plaintiff's
> bare chance to have satisfaction of a claim which he possessed in common
> with other creditors—a wrong too remote, indefinite, and contingent to be
> the ground of an action. . . .
>
> It thus appears that under the general rule established by the great
> weight of authority in this country, although it is made clearly to appear
> that the defendant has willfully become a party to a conspiracy to defeat
> the judgment of the creditor, such a creditor has no cause of action against
> him, unless he can show that he has suffered some specific injury different
> from that suffered by the other creditors.

Id. at 651-52. This unequivocal holding belies Plaintiff's argument that in addition to the

causes of action found in the UFTA, Montana recognizes a general cause of action,

applicable to non-parties, for "conspiracy to defraud creditors."[5] Section 31-2-342 may

preserve the claim delineated in Raymond, but as Plaintiff has no specific right to Clark

Fork's former assets, it also has no cause of action against Paul Hastings for conspiracy

to defraud it.

Finally, the cases cited by Plaintiff for the proposition that a violation of the

Montana UFTA can give rise to a cause of action for conspiracy against a non-party to

the allegedly fraudulent transfer are similarly inapposite. Biering v. Ringling, 240 P. 829

(Mont. 1925), concerned neither the fraudulent transfer of assets by a debtor nor the

---

[5] Plaintiff cites Farmers Plant Aid, Inc. v. Fedder, 999 P.2d 315 (Mont. 2000), for the proposition
that Montana later abolished the prior lien requirement so forcefully stated in Raymond. However, Farmers
Plant Aid and the authority cited therein concerned suits brought pursuant to the Montana UFCA, not
common law claims for aiding and abetting or conspiracy, and expressly held that there was no lien
requirement for claims under the UFCA. Id. at 319. Moreover, neither Farmers Plant Aid nor the leading
case upon which it relied cite Raymond or its holding. Consequently, Section 31-2-342 of the Montana
UFTA – which concerns principles of law and equity outside the terms of the act but does not provide rules
of construction for the act itself - does not apply. Raymond may be an irrelevant anachronism contrary to
the weight of modern authority, but neither has it been expressly overruled. Therefore, if Plaintiff wishes
to rely on Raymond for the proposition that, before the UFTA, Montana courts recognized a common law
claim for "conspiracy to defraud creditors" – even though Raymond did not involve a claim against a non-
party like Paul Hastings – then Plaintiff must take the good with the bad and accept that that claim, if it
exists, carries with it a prior lien requirement.

liability of a non-party like Paul Hastings for aiding and abetting or conspiracy.

Likewise, Neset v. Fifer, 942 P.2d 712 (Mont. 1997), did not decide whether a conspiracy

charge could stand against a non-party like Paul Hastings in connection with another's

alleged violation of the Montana UFTA. Instead, Neset merely concerned the existence

of a "purchase money resulting trust" in a real estate dispute between former domestic

partners and, peripherally, whether such a trust was created for an improper purpose. In

short, Plaintiff can find no authority for its "theory" that it can salvage a non-cognizable

claim under the Montana UFTA by converting that claim into one for conspiracy.

II.    PLAINTIFF LACKS STANDING TO BRING DERIVATIVE
       CLAIMS BECAUSE IT HELD NO EQUITY IN CLARK
       FORK AND HAD NO INTEREST IN THE COMPANY
       WHEN THE ALLEGED FRAUD OCCURRED.

Plaintiff's argument that it has standing to pursue derivative claims against Paul

Hastings cannot be sustained. As set forth in Paul Hastings' moving papers, Plaintiff

lacks standing to assert derivative claims for breach of fiduciary duty and malpractice

because (a) Montana law authorized derivative lawsuits against limited liability company

only by shareholders, not creditors;[6] and (b) even if a creditor were entitled to sue on the

company's behalf, the would-be plaintiff must be a creditor at the time of the transaction

of which the plaintiff complains.

---

[6] Notably, Plaintiff does not challenge the Delaware Chancery Court's ruling in Production
Resources Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772 (Del. Ch. 2004) (cited in Def.'s Br. at 10-11),
which held that a creditor's claims for breach of fiduciary duty are derivative, and do not become direct
creditor claims even if a company is in the "zone of insolvency." Thus, Plaintiff's claim against Paul
Hastings for aiding and abetting a breach of fiduciary duty must be treated as a derivative claim on behalf
of Clark Fork, not a direct creditor claim. See also Continuing Creditors' Comm. of Star Telecomms., Inc.
v. Edgecomb, 385 F. Supp. 2d 449, 463-64 (D. Del. 2004) (following the Delaware Chancery Court's
ruling in Production Resources and observing that creditor claims for breach of fiduciary duty are
derivative in nature).

Both of these requirements are to be found in the Montana Limited Liability Company Act, Mont. Code Ann. § 35-8-1104, which Plaintiffs dismiss as irrelevant because it "says nothing about the rights of creditors." Pl.'s Br. at 9. However, that is precisely the point: If the statute explains who may bring a derivative suit on behalf of an LLC and the requirements for doing so, and is silent as to the derivative rights of creditors, then ipso facto creditors like the Plaintiff may not bring a suit like the one before this court.

Furthermore, Plaintiff fails to acknowledge the "contemporaneous ownership" requirement for derivative suits, much less offer any authority that would deny its application here. The strong public policy against strike suits – where, as here, a would-be plaintiff acquires securities after the event complained of, in hopes of reaping an undeserved windfall – demands that an action be dismissed where, as here, the plaintiff only acquired its interest in the company after the cause of action accrued and with full knowledge of the facts and circumstances giving rise to the cause of action. See Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.), 320 F.3d 291, 297 (2d Cir. 2003) ("The main purpose of this... rule is to prevent courts from being used to litigate purchased grievances."). Moreover, what is the rule for equity holders, see Mont. Code Ann. § 35-8-1104(2)(a), should clearly be the rule for creditors, whose relationship to the corporation and whose ability to represent its interests are far more attenuated.[7]

---

[7] Plaintiff's contention that this Court should follow the holdings of two other courts in related matters conveniently ignores the fact that both of those courts were addressing different issues. First, the Delaware Bankruptcy Court's decision of August 20, 2004, involved a direct action against NorthWestern, not a derivative action. Thus, the issue of Plaintiff's standing to maintain a derivative action was neither presented to nor decided by the Bankruptcy Court, and the court's decision has no bearing on this case.

Similarly, Plaintiff's action against the Clark Fork officers in Montana District Court involved direct claims against those officers as alleged creditors of Clark Fork, not derivative claims on behalf of (...continued)

9

Plaintiff also insists that it is entitled to maintain a derivative suit pursuant to Section 610 of the Indenture. This reasoning is flawed for two principal reasons. First, as set forth in Paul Hastings' initial papers, while the Indenture may allow Plaintiff, under appropriate circumstances, to bring an action on behalf of the QUIPS trust, it does not give Plaintiff the right to bring derivative claims on behalf of Clark Fork. Second, Section 610 does not represent a free-standing source of authority pursuant to which Plaintiff can bring any conceivable lawsuit. Rather, Section 610 allows a QUIPS holder like the Plaintiff to sue in the name of the trust "to the fullest extent permitted by law." Notably, the Montana Limited Liability Company Act does not allow a plaintiff to bring suit where it is merely a creditor of a Montana LLC and/or does not satisfy the "contemporaneous ownership" rule embodied in Mont. Code Ann. § 35-8-1104(2)(a). Simply put, the law does not permit Plaintiff to maintain a derivative action against Paul Hastings. Accordingly, Paul Hastings' motion should be granted.

---

(continued...)

Clark Fork. Thus, that decision does not speak to Plaintiff's standing to pursue a derivative action on Clark Fork's behalf against Paul Hastings. Moreover, the strength of the Montana District Court's decision is severely undermined by its failure to address, much less distinguish, Mont. Code Ann. § 35-8-1104(2)(a), the section of the Montana Limited Liability Company Act imposing a contemporaneous ownership requirement on those who would pursue a derivative action.

## CONCLUSION

For the reasons set forth above, Paul Hastings respectfully requests that the Court enter a judgment on the pleadings dismissing Magten's claims against Paul Hastings with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Robert J. Dehney (#3578)
Curtis S. Miller (#4583)
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347
(302) 658-9200
    Attorneys for Defendant Paul, Hastings,
    Janofsky & Walker LLP

OF COUNSEL:

Dennis E. Glazer
Paul Spagnoletti
DAVIS POLK & WARDWELL
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

June 2, 2006

11

# Exhibit J

# Greenberg Traurig

October 17, 2006

**VIA ECF AND HAND DELIVERY**

The Honorable Joseph J. Farnan, Jr.
United States District Court
District of Delaware
844 King Street
Wilmington, DE 19801

> Re: *Magten Asset Management Corp., et al. v. NorthWestern Corp.,*
> *C.A. No. 04-1494-JJF*
> *Magten Asset Management Corp. v. Paul Hastings Janofsky &*
> *Walker, LLP, C.A. No. 04-1256-JJF*
> *Magten Asset Management Corp. v. Mike J. Hanson and Ernie J.*
> *Kindt, C.A. No. 05-0499-JJF*

Dear Judge Farnan:

This is firm is co-counsel to NorthWestern Corporation ("NorthWestern"), along with the firm of Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis") in connection with C.A. No. 04-1494-JJF, referenced above. We write in response to the letter dated October 16, 2006 sent to Your Honor by counsel for plaintiffs, Magten Asset Management Corporation ("Magten") and Law Debenture Trust (collectively, "Plaintiffs").

As is apparent from that letter, there is substantial disagreement between the parties regarding the scheduling of discovery in these three consolidated actions. In order to resolve these differences, NorthWestern respectively requests that the Court schedule a conference with the parties pursuant to Fed.R.Civ.P. 16.

The Defendants in the three consolidated actions have conferred and have jointly agreed on a proposed Scheduling Order for discovery and other pre-trial matters in the consolidated actions, which is enclosed herewith, and which Defendants respectively request be approved by the Court. Defendants' proposed Scheduling Order provides, *inter alia,* for completion of fact discovery within twelve months following the Rule 16 Conference, and an additional two months for completion of expert discovery.

Plaintiffs have proposed that fact discovery in all three consolidated actions be completed in approximately four and a half months. Such a timetable is manifestly unreasonable for a number of reasons. First, this case involves three separate actions, one of which is against NorthWestern's attorneys. Not only have the Plaintiffs served discovery requests which call for literally hundreds of thousands, if not millions of pages of documents, but many of these documents will necessarily involve attorney-client communications which must carefully be reviewed for privilege. Second, the schedule proposed by the Defendants

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

Greenberg Traurig, LLP | Attorneys at Law | The Nemours Building | 1007 North Orange Street | Suite 1200 | Wilmington, DE 19801
Tel 302.661.7000 | Fax 302.661.7360

www.gtlaw.com

is entirely reasonable in light of the discovery schedule Plaintiffs previously agreed to in one of the three consolidated actions, the action against Defendants Hanson and Kindt. There, the Plaintiffs agreed to a discovery schedule of thirteen months – eight months of fact discovery and five additional months for expert discovery. Clearly, completion of discovery in the three consolidated actions cannot be relegated to a shorter time period than that which was previously agreed to for one of the actions standing alone.

Finally, discovery in these actions is made more difficult because of the Plaintiffs' refusal to define the contours of their claim. The Court stated in the decision denying Defendants' Motion for a Protective Order that Judge Case noted that the essence of Plaintiffs' fraud claim is that NorthWestern "engaged in a knowing and conscious fraudulent scheme." The problem is the Plaintiffs have never pled what that fraudulent scheme was, what the object of the fraud was, what fraudulent statements were made, who relied on those statements and how the fraudulent scheme related specifically to the "going flat transaction" which is the transaction at the core of the Plaintiffs' complaint. Answers to these questions will eliminate some of Plaintiffs' discovery requests and permit agreement on a discovery schedule which, while not as accelerated as that demanded by Plaintiffs, maybe somewhat shorter than that which the Defendants believe is necessary in light of the discovery presently requested. Discussions of these issues is appropriate at the Rule 16 Conference. See Fed.R.Civ.P. 16(c)(1) and (2).

As Plaintiffs' counsel was informed at our October conference, NorthWestern is prepared to begin shortly production of documents on a rolling basis. The schedule proposed by Defendants is not interposed for obstruction or delay but is, we believe, reasonably necessary in order to complete discovery in light of the overwhelming amount of materials presently demanded by the Plaintiffs.

If Your Honor has any questions with regard to the foregoing, please feel free to contact me or Joseph D. Pizzurro of the Curtis firm at 212-696-6196.

Respectfully submitted,

Victoria Counihan

Enclosure
cc:    Clerk of Court (*Via* ECF)
       Dale R. Dube, Esq. (*Via* E-Mail: dube@blankrome.com)
       Bonnie Steingart, Esq. (*Via* E-Mail: steinbo@friedfrank.com)
       Gary L. Kaplan, Esq. (*Via* E-Mail: kaplaga@friedfrank.com)
       Kathleen M. Miller, Esq. (*Via* E-Mail: kmiller@skfdelaware.com)
       Bijan Amini, Esq. (*Via* E-Mail: bamini@samlegal.com)
       Amanda Darwin, Esq. (*Via* E-Mail: adarwin@nixonpeabody.com)

John V. Snellings, Esq. (*Via* E-Mail: jsnellings@nixonpeabody.com)
Stanley T. Kaleczyc, Esq. (*Via* E-Mail: stan@bkbh.com)
Kimberly Beatty, Esq. (*Via* E-Mail: kim@bkbh.com)
Denise Seastone Kraft, Esq. (*Via* E-Mail: dkraft@edwardsangell.com)
Paul Spagnoletti, Esq. (*Via* E-Mail: paul.spagnoletti@dpw.com)
Joseph D. Pizzurro, Esq. (*Via* e-Mail: jpizzurro@cm-p.com)
Steven J. Reisman, Esq. (*Via* E-Mail: sreisman@cm-p.com)
David A. Jenkins, Esq. (*Via* E-Mail: daj@skfdelaware.com)
Robert J. Dehney, Esq. (*Via* E-Mail: rdehney@mnat.com)
Curtis S. Miller, Esq. (*Via* E-Mail: cmiller@mnat.com)
Jesse H. Austin, III, Esq. (*Via* E-Mail: jessaustin@paulhastings.com)
Karol K. Denniston, Esq. (*Via* E-Mail: karoldenniston@paulhastings.com)
Joseph D. Pizzurro, Esq. (*Via* E-Mail: jpizzurro@cm-p.com)
Steven J. Reisman, Esq. (*Via* E-Mail: sreisman@cm-p.com)
Miriam K. Harwood, Esq. (*Via* E-Mail: mharwood@cm-p.com)
Kerri K. Mumford, Esq. (*Via* E-Mail: mumford@lrclaw.com)
Philip Bentley, Esq. (Via E-Mail: pbentley@kramerlevin.com)
Bonnie Fatell, Esq. (Via E-Mail: fatell@blankrome.com)
John E. James, Esq. (Via E-Mail: jjames@potteranderson.com)