IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 05-499-JJF |
| | : | |
| MIKE J. HANSON and ERNIE J. KINDT, | : | |
| | : | |
| Defendants. | : | |

**REPLY IN FURTHER SUPPORT OF MOTION OF MAGTEN ASSET
MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST
COMPANY OF NEW YORK FOR LEAVE TO AMEND THE COMPLAINT
AND/OR FOR EXTENSION OF TIME TO SEEK LEAVE TO AMEND**

Plaintiff Magten Asset Management Corporation ("Magten") and Proposed Co-Plaintiff

Law Debenture Trust Company of New York ("Law Debenture" – together with Magten the

"Movants") respectfully submit this Reply in further support of their Motion for Leave to Amend

the Complaint and/or, in the Alternative, for Extension of Time to Seek Leave to Amend the

Complaint (the "Motion").

### PRELIMINARY STATEMENT

Defendants Hanson and Kindt seek to avoid defending the merits of this case, which

alleges that they violated their fiduciary duties by agreeing to let the company they managed

(Clark Fork) be looted of over a billion dollars worth of assets for NorthWestern's benefit,

leaving an entire class of Clark Fork's creditors with nothing. Defendant Hanson has been

substantially rewarded by NorthWestern for his misconduct, and stands to receive a multi-

million dollar windfall if and when NorthWestern's proposed sale of itself is consummated.

1

Hanson and Kindt waited almost two years after the failure of their two prior attempts to have the case dismissed on technical standing grounds to ask this Court for belated permission for a third bite at the apple – once more hoping for dismissal on a technicality without the need to justify their actual conduct. They filed their motion seeking permission to attack the sufficiency of the existing complaint on the last day before the expiration of this Court's previously imposed deadline for seeking leave to amend. They refused to stipulate to an extension of that deadline. In order to protect their rights, Movants had no alternative but to file the Motion on an emergency basis.

But for the February 2 deadline having required an emergency filing to avoid any subsequent dispute about timeliness, the issue of leave to amend would be premature. Judge Cebull's decisions establish both the sufficiency of the existing complaint and Magten's standing to sue. This Court has not yet ruled on Hanson and Kindt's application for leave to relitigate those issues, much less ruled in their favor on the substance of their proposed motion. To the extent the Court wishes to consider the amendment issues now, however, both Hanson and Kindt's procedural objections and substantive objections should be rejected, and the Motion should be granted.

## ARGUMENT

I.    DEFENDANTS' PROCEDURAL OBJECTIONS ARE MERITLESS AND DISINGENUOUS

Despite having compelled Movants to prepare and file the Motion in less than 24 hours, Hanson and Kindt object that no proposed form of amended complaint was attached to the Motion. They admit that Local Rule 15.1 expressly states that failure to do so "is not grounds for denial of the motion" but, incredibly, suggest that that express language should be disregarded. In the Motion (at 7), Movants expressly stated that:

2

> Under the exigent circumstances under which it has been necessary
> to file this motion, it has not been feasible to prepare a proposed
> form of amended complaint. It is anticipated that the amended
> complaint would be substantially identical to the existing
> complaint except for: (a) adding Law Debenture as a plaintiff; (b)
> adding factual allegations relevant to Law Debenture's standing;
> and (c) adding, to the extent necessary, allegations pleading the
> claims in the alternative as derivative claims and explaining why
> pre-action demand on NorthWestern (Clark Fork's sole member
> and manager) would have been futile and thus excused under the
> relevant law.

The situation was thus fully explained and the substance of the proposed amendment was set

forth. Movants also indicated (Motion at 7) their willingness to extend Hanson and Kindt's time

to respond to the Motion, and/or to "prepare a proposed form of amended complaint on any

reasonable schedule the Court may suggest or direct." Due to scheduling conflicts of counsel on

both sides, a revised schedule for briefing of the Motion was thereafter stipulated to. If, in

connection with those scheduling discussions, Hanson and Kindt's counsel had asked to be

provided with a proposed form of amended complaint before they filed their response, we would

have agreed to do so, but they did not ask.

A proposed form of amended complaint is attached hereto as Exhibit 1, together with a

copy (Exhibit 2) marked to show changes from the existing complaint. The only substantive

changes are those that were described in the Motion, together with some miscellaneous changes

related to the transfer of the case from Montana to this District and subsequent developments in

NorthWestern's chapter 11 case.

Given the extensive correspondence between the parties in the four days between Hanson

and Kindt's sudden decision to seek to relitigate the adequacy of the existing complaint and the

filing of the Motion (Exhibits C, D, E, F, G and H submitted with the Motion), their contention

that Movants failed to meet and confer as contemplated by Local Rule 7.1.1 is disingenuous and

absurd. Their counsel's disingenuous and ill-tempered letter of February 1 (Exhibit H submitted

3

with the Motion), reneging without justification on a prior promise to give Magten time to

consider their proposed 12(c) motion and refusing to agree to a modest extension of the deadline

for seeking leave to amend, made it clear that no further good-faith discussion was possible.[1]

II.    THE COURT NEED NOT DETERMINE AT THIS TIME WHETHER AMENDMENT
       AND/OR ADDITION OF A CO-PLAINTIFF IS APPROPRIATE AS LONG AS THE
       FEBRUARY 2 DEADLINE DOES NOT PRECLUDE DETERMINATION OF THAT
       ISSUE AT THE APPROPRIATE TIME

Under controlling Third Circuit precedent, whether leave to amend should be granted

must virtually always be considered when a court is inclined to grant a motion attacking the

sufficiency of a complaint -- even when a plaintiff has not expressly requested leave to amend.

Shane v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000). See Fed. R. Civ. P. 15(a) (leave to amend

"shall be freely given when justice so requires"). It is obviously easiest to determine whether a

particular amendment would or would not cure perceived defects in an existing pleading after the

sufficiency of that existing pleading has been briefed, argued, and decided. Here, the Motion

was filed on an emergency basis to avoid any dispute about the applicability of the February 2

deadline to a proposed amendment only made potentially necessary by a proposed motion which

had not even been filed (and as to which leave to file had not been granted) as of the deadline.[2]

Movants do not believe that the deadline was ever intended to preclude consideration of potential

amendment at the appropriate time – i.e. at the time of a decision on the sufficiency of the

existing complaint, but wanted to make sure that Hanson and Kindt could not seek an

---

[1]    The undersigned counsel apologize to the Court for their oversight, due to the exigent circumstances, in failing to include a separate certificate in the form contemplated by Local Rule 7.1.1, but believe that the substance of such a certificate was fairly set forth in the Motion and the attached correspondence.

[2]    As we set forth in our opposition [D.I. 145] to Hanson and Kindt's application for leave to file a dispositive motion contrary to the existing scheduling order, it cannot be assumed that the proposed motion is meritorious. Assuming arguendo that the January 12 Opinion (which is currently on appeal to the Third Circuit) was correctly decided, there are crucial differences between the procedural posture of this case and no. 04-1256, including but not limited to the law of the case effects of Judge Cebull's two prior decisions in this case expressly recognizing Magten's standing and the sufficiency of the existing complaint.

4

120087.01600/40167696v.1

inappropriate advantage from their own delay in seeking to relitigate the issue of Magten's standing.[3]

Hanson and Kindt claim that the Motion is procedurally flawed because Rule 15 is not the appropriate vehicle for adding an additional plaintiff. Again, they willfully ignore the protective nature of the Motion, which was required by their own gamesmanship and the imminent expiration of the February 2 deadline. As was indicated in the Motion (at 8, citing cases), some courts have analyzed addition of a co-plaintiff in similar circumstances under Rule 15, others under different provisions such as Rule 17(a). We expressly noted (Motion at 7) that we did not believe that Rule 15 was necessarily the applicable provision, but were filing to avoid any dispute about the impact of the deadline.[4] If the Court agrees that the addition of Law Debenture should be evaluated under a different procedure than a Rule 15 motion for leave to amend, the February 2 deadline would be irrelevant, and the Court could then direct any further proceedings on the addition of Law Debenture to proceed on a schedule the Court deems appropriate.

III.     THE PROPOSED AMENDMENT WOULD NOT BE FUTILE

The key aspect of the January 12 Decision Hanson and Kindt hope to benefit from is its holding that Magten was not an appropriate plaintiff under a particular Montana statute (Montana Code § 35-8-1104(2)(a)) because it did not own QUIPS as of the date of the

---

3     Not only could they and should they have raised any arguments they now wish to make years ago in the motion practice before Judge Cebull, they could have requested the third bite at the apple they now seek at the time Paul Hastings filed its 12(c) motion in early 2006, permitting the issues (including the impact of Judge Cebull's prior decisions and other differences between this case and no. 04-1256) to be fully briefed and decided before the February 2 deadline. They did not do so, and have failed to offer any explanation or excuse for their delay. Under these circumstances, for them to turn around and accuse Magten and Law Debenture of "undue delay" and even bad faith for failing to seek leave to amend earlier – in order to respond to arguments they had not made and/or which had been definitively rejected by Judge Cebull -- is as preposterous as the proverbial criminal defendant convicted of killing his parents who asks for mercy on account of being an orphan.

4     No doubt if Law Debenture had not sought to join the action on February 2 Hanson and Kindt would now be taking the opposite position and claiming that Rule 15 governed the situation and the deadline had passed.

5

transaction complained of. Hanson and Kindt had apparently not previously considered this statute relevant to the issue of Magten's standing[5] or the sufficiency of the complaint, as they had failed to cite it in any of the briefs filed in support of their unsuccessful motions before Judge Cebull, who expressly held that the timing of Magten's purchases did not affect its ability to sue, especially given its contractual right to assert the rights of Montana Power Capital I (the "Trust").[6] There is no dispute that the Trust owned Clark Fork debt securities at all relevant points in time.

To the extent Hanson and Kindt are permitted to relitigate the issue of the relevance of the timing of Magten's purchases, any potential issues arising from that timing would be cured by the addition of Law Debenture. Hanson and Kindt do not dispute that Law Debenture may assert the rights of the Trust, which was undisputedly a creditor of Clark Fork at the relevant time. Likewise, Hanson and Kindt do not dispute that the claims in the original Complaint can be successfully repleaded in the alternative as derivative claims, with a valid basis alleged for presuit demand being excused.

---

[5] Hanson and Kindt's citation of Public Interest Research Group of New Jersey, Inc. v. Magnesium Elektron, Inc., 123 F.3d 111 (3d Cir. 1997) for the proposition that challenges to "standing" cannot be waived and thus can be relitigated at will is a red herring. That case involved a lack of basic Article III standing which necessarily deprived the court of subject matter jurisdiction – an issue the court would have been required to consider sua sponte even if no party had raised it. Here, it cannot be seriously claimed that either Magten or Law Debenture lacks Article III standing and that this Court lacks subject matter jurisdiction. The "standing" questions in this case are purely merits issues based on the substantive law: for example, whether a claim can be brought directly or must be brought as a derivative claim, whether a current security holder may pursue a derivative claim on behalf of a company if it was not a holder as of the date the cause of action accrued in favor of the company, whether creditors as opposed to equity holders may bring derivative claims. Relevant state law could in principle answer any of these questions either way, just as it could answer similar questions (whether a beneficial owner who is not record owner of securities may sue, whether a particular plaintiff is a third-party beneficiary able to sue on a particular contract, and many others) without raising any constitutional issues. Indeed, Hanson and Kindt assert (albeit incorrectly) that Montana law denies creditors standing under circumstances where Delaware law unquestionably grants it. In Arbaugh v. Y&H Corp., 546 U.S. 500 (2006), the Supreme Court unanimously ruled that a so-called "jurisdictional" issue could be and had been waived, because it was not in fact an issue going to the court's subject matter jurisdiction but merely a threshold merits issue which the defendant had not disputed until too late a point in the proceedings. The same analysis applies to the "standing" issues here.

[6] Hanson and Kindt's various Montana briefs were previously submitted to this Court as Exhibits C, D, E and F with D.I. 146.

6

The claims of futility they do make either misconstrue the January 12 Decision or otherwise ignore the governing law. First, they claim the January 12 Decision immunizes Hanson and Kindt because they were not the direct recipients of the transferred assets (although Hanson, at least, has personally profited substantially as a result of his wrongful conduct). But all the Court held was that the Montana Uniform Fraudulent Transfer Act could not provide a basis for imposing liability against a non-transferee. No claim against Hanson and Kindt has been asserted under that statute – their fiduciary duties as Clark Fork officers not to permit the looting of assets to the prejudice of Clark Fork and its creditors are an entirely separate basis of liability, and neither the January 12 Decision nor any other authority suggests that such basic fiduciary duty claims are somehow preempted if the Fraudulent Transfer Act does not expressly provide an additional remedy for the same conduct.

Second, they claim that Law Debenture, although able to assert the rights of the Trust which was a creditor at the time of the transaction, is still unable to sue because it was not an equity holder of Clark Fork. But the only equity holder of Clark Fork was and is none other than NorthWestern, the very entity which benefited from the looting. It is well-established that officers and directors of a wholly-owned subsidiary cannot, when the subsidiary is in the zone of insolvency, permit the controlling parent to loot the subsidiary to the prejudice of the subsidiary and its creditors. See, e.g., Scott Acquisition Corp. v. Morris (In re Scott Acquisition Corp.), 344 B.R. 283, 289-90 (Bankr. D. Del. 2006); Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 215 (S.D.N.Y. 2004).[7]

---

[7]    Scott and similar cases recognize that the so-called Anadarko principle (see Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A.2d 1171 (Del. 1988)), i.e. that the directors and officers of a 100%-owned subsidiary do not have any direct duties to the subsidiary and its stakeholders as distinguished from the parent company, does not apply when the subsidiary is insolvent or in the "zone of insolvency."

7

As one court has bluntly put it, there is "no basis for the principle . . . that the directors of an insolvent subsidiary can, with impunity, permit it to be plundered for the benefit of its parent corporation." RSL COM Primecall, Inc. v. Beckoff (In re RSL COM Primecall), No. 01-11457, 2003 Bankr. LEXIS 1635, at *44 (Bankr. S.D.N.Y. Dec. 11, 2003). Such impunity for their role in the plundering of Clark Fork is exactly what Hanson and Kindt are seeking, but are not entitled to. Given its focus on the timing-of-purchase issue, any mention of the general creditor standing issue in the January 12 Decision was dictum. There is certainly no basis to think that Montana law shields defendants such as these under circumstances such as these. The fact that the Montana statute does not explicitly contemplate creditor standing is not dispositive since no Delaware statute authorizes creditor standing – it is a doctrine the courts have evolved precisely to prevent abuses which could otherwise occur in the context of wholly-owned 100% subsidiaries, where there are no minority equity holders who would be able to challenge abuse and self-dealing by the controlling equity holder.

Finally, Hanson and Kindt assert that Law Debenture should not be permitted to join as a co-plaintiff because the statute of limitations has allegedly run against it. But as of the time of the supposed expiration of the limitations period (November 2005), Judge Cebull had expressly held that Magten had standing to assert the Trust's rights and Hanson and Kindt were making no effort to relitigate that issue, thus making it unnecessary for Law Debenture to seek to join the action. Judge Cebull's decisions remain the law of the case today, and this Court has not yet ruled on Hanson and Kindt's application for leave to relitigate the issue. All the addition of Law Debenture would do is change the entity asserting the Trust's rights. Hanson and Kindt have failed either to comprehend or distinguish the cases cited in the Motion (at 8) establishing that Law Debenture's joinder would accordingly relate back to the commencement of the action for

8

limitations purposes, whether evaluated under Rule 15(c) or Rule 17(a).[8]  In Garr v. Clayville,
71 F.R.D. 553, 556 (D. Del. 1976), Judge Schwartz held that relation-back applied when "the
plaintiff sought to be added is closely identified with the original plaintiff and seeks to assert a
claim so close to that of the original plaintiff, that it is clear no prejudice arises even if
technically a new cause of action is being asserted." Here, Law Debenture is unquestionably
closely identified with Magten (as the trustee of the Trust of which Magten is a beneficiary) and
would be asserting the same causes of action as Magten -- not even close but technically distinct
claims.[9]

Moreover, Hanson and Kindt's argument would require wasteful and duplicative
litigation. Law Debenture (and, more to the point, the Trust and the other QUIPS holders it
represents) would be penalized for its failure to intervene despite the fact that as of the date of
the alleged running of the limitations period the court with jurisdiction over the case had
affirmatively ruled that Magten could litigate and was litigating on behalf of the Trust. For Law
Debenture and other potential parties in similar situations to be compelled to file protective
lawsuits of their own to avoid allegations they had "slept on their rights" if the controlling
decision in the litigation were subsequently revisited would be absurd. This is precisely the
reason for the rule of American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974), holding that
absent parties whose interests are apparently being represented in pending litigation by others (in

---

[8]     Their discussion of the 17(a) issue is particularly confused. It seems to be an argument that because the
        Trust allegedly lacks standing because it is not an equity holder, neither Magten nor Law Debenture could
        qualify as a real party in interest. This hopelessly muddles the technical creditor-standing issue with
        relation-back for limitations purposes. The point is simply that if the Trust had standing but the Court were
        to determine that, despite Judge Cebull's express prior holding on the point, Magten was not the correct
        party to assert the Trust's rights, the substitution of Law Debenture as the correct party to assert whatever
        the Trust's rights might be would relate back for limitations purposes under the express terms of Rule
        17(a).

[9]     Hanson and Kindt do not dispute that repleading the claims in the alternative as derivative claims would
        relate back under Rule 15(c).

9

that case, a would-be representative plaintiff in a class action) can rely on a tolling of any limitations period unless and until a court rules that the party in the pending litigation is not entitled to represent their rights. See Yang v. Odom, 392 F.3d 97, 99 (3d Cir. 2004) ("American Pipe tolling applies to the filing of a new class action where certification was denied in the prior suit based on the lead plaintiffs' deficiencies as class representatives"). Even if Law Debenture's claims did not otherwise relate back, American Pipe would require tolling here.

Because there was no need for Law Debenture to consider joining the action until Hanson and Kindt sought to relitigate Magten's right to sue on behalf of the Trust, and because of their own unexplained and unjustified delay in raising the issue, their complaints that the addition of Law Debenture will interfere with their ability to take discovery cannot be taken seriously. Although the stay of discovery in this case was lifted last October, Hanson and Kindt did not even bother to serve any discovery requests on Magten until February 28. Even more significantly, although Law Debenture has been a co-plaintiff in the action against NorthWestern since its inception, NorthWestern (whose litigation strategy may fairly be imputed to defendant Hanson, as its current CEO) has never served any discovery requests on Law Debenture. There is simply no prejudice to Hanson and Kindt from the proposed amendment, since they will have the same damages exposure based on the same underlying facts.

## CONCLUSION

Hanson and Kindt cannot be permitted to bring an extraordinarily belated technical challenge to the sufficiency of the existing complaint but then seek to deny Magten and Law Debenture a fair opportunity to cure the alleged defects. For all of the foregoing reasons, as well as those set forth in the original moving papers, the Motion should be granted, with such other and further relief as may be just and proper.

10

Dated: Wilmington, Delaware
     March 9, 2007

**BLANK ROME LLP**

 /s/ David W. Carickhoff
Dale R. Dubé (DE No. 2863)
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER &
    JACOBSON LLP**
Bonnie Steingart
Gary Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Counsel for Magten Asset Management
Corporation

11

Dated: Wilmington, Delaware
March 9, 2007

**SMITH KATZENSTEIN & FURLOWLLP**

  /s/  Kathleen M. Miller
Kathleen M. Miller (DE No. 2898)
800 Delaware Avenue
P.O. Box 410
Wilmington, DE 19899
Telephone:   (302) 652-8400
Facsimile:   (302) 652-8405

- and -

**NIXON PEABODY LLP**
John V. Snellings
Amanda D. Darwin
100 Summer Street
Boston, MA 02110-2131
Telephone: (617) 345-1000
Facsimile:   (617) 345-1300

Counsel for Law Debenture Trust Company of New
York

546655

12

120087.01600/40167696v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2007, I cause to be served by hand delivery and filed electronically the REPLY IN FURTHER SUPPORT OF MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR LEAVE TO AMEND THE COMPLAINT AND/OR FOR EXTENSION OF TIME TO SEEK LEAVE TO AMEND using CME/CF, which will send notification of such filing to the following:

Denise Seastone Kraft, Esquire
EDWARDS ANGELL PALMER &
  DODGE LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Kathleen M. Miller, Esquire
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

David A. Jenkins, Esquire
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
GREENBERG TRAURIG LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Robert J. Dehney, Esquire
Curtis S. Miller, Esquire
MORRIS NICHOLS ARSHT
  & TUNNELL
1201 Market Street
P.O. Box 1347
Wilmington, DE 19899-1347

I also certify that, on this 9th day of March, 2007, I caused to be served the aforementioned document, by e-mail and Federal Express, upon the following non-registered participants:

Jesse H. Austin, III, Esquire
PAUL, HASTINGS, JANOFSKY
  & WALKER LLP
600 Peachtree Street, Suite 2400
Atlanta, GA 30308

Dennis E. Glazer, Esquire
Paul Spagnoletti, Esquire
DAVIS POLK & WARDWELL
450 Lexington Avenue, Room 3004
New York, NY 10017

120087.01600/40167690v.1

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
BROWNING, KALECZYC, BERRY
  & HOVEN, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Bijan Amini, Esquire
Avery Samet, Esquire
Bradley F. Silverman, Esquire
STORCH AMINI & MUNVES PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017

John V. Snellings, Esquire
Amanda D. Darwin, Esquire
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110-1832

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP
101 Park Avenue
New York, New York 10178-0061

David W. Carickhoff, Jr.  (I.D. No. 3715)

2