# EXHIBIT 2

~~James H. Goetz~~

~~J. Devlan Geddes~~
~~Goetz, Gallik & Baldwin, P.C.~~
~~35 North Grand Avenue~~
~~P.O. Box 6580~~
~~Bozeman, Montana 59771~~
~~(406) 587-0618~~

~~Bonnie Steingart~~      ~~(*Pro Hac Vice* Application pending)~~
~~John W. Brewer~~        ~~(*Pro Hac Vice* Application pending)~~
~~Fried, Frank, Harris, Shriver & Jacobson, LLP~~
~~One New York Plaza~~
~~New York, New York 10004~~
~~(212) 859-8000~~

~~Attorneys for Plaintiff~~
~~MAGTEN ASSET MANAGEMENT CORPORATION~~IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ~~MONTANA~~DELAWARE
~~BUTTE DIVISION~~

|  |  |  |
|---|---|---|
| ~~MAGTEN ASSET MANAGEMENT CORPORATION,~~ | ✳ | |
| | ✚ | |
| ~~Plaintiff,~~ | ✚ | ~~Cause No. _____~~ |
| | ✚ | |
| ~~-against-~~ | ✚ | **COMPLAINT** |
| | ✚ | |
| ~~MIKE J. HANSON, JACK D. HAFFEY, ERNIE J. KNIDT and ELLEN M. SENECHAL,~~ | ✚ | |
| | ✚ | |
| ~~Defendants.~~ | ✚ | |
| ✳ | ✚ | |

**MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, as Indenture Trustee, as Property Trustee, and as Guarantee Trustee, for themselves and derivatively on behalf of CLARK FORK AND BLACKFOOT, LLC,**

**Plaintiffs,**

**C.A. No. 05-499-JJF**



## [PROPOSED] FIRST AMENDED COMPLAINT

~~Plaintiff~~**Plaintiffs** Magten Asset Management Corporation ("Magten")~~, by~~ **and**

**Law Debenture Trust Company of New York, acting in** its **capacities:**

> **(a) as successor indenture trustee (when acting in such**
>
> **capacity the "Indenture Trustee") to The Bank of New**
>
> **York as indenture trustee under that certain Indenture**
>
> **dated as of November 1, 1996 (as amended, the**
>
> **"Indenture"), pursuant to which the Montana Power**
>
> **Company ("Montana Power") issued certain 8.45%**
>
> **Junior Subordinated Debentures (the "Junior**
>
> **Debentures") to Montana Power Capital I, a Delaware**
>
> **statutory business trust (the "Trust");**
>
> **(b) as successor property trustee (when acting in such**
>
> **capacity, the "Property Trustee") to The Bank of New**
>
> **York as property trustee under that certain Amended and**
>
> **Restated Trust Agreement, dated as of November 1, 1996**

2   DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

3/9/07 Draft

(as amended, the "Trust Agreement"), pursuant to which
the Trust issued certain 8.45% Cumulative Quarterly
Preferred Securities Series A ("QUIPS"); and

(c) as successor guarantee trustee (when acting in such
capacity the "Guarantee Trustee") (the Indenture
Trustee, the Property Trustee, and the Guarantee Trustee
are hereinafter sometimes referred to collectively as "Law
Debenture") to The Bank of New York as guarantee
trustee under that certain Guarantee Agreement, dated as
of November 1, 1996 (as amended, the "Guarantee
Agreement"), with Montana Power, pursuant to which
Montana Power unconditionally agreed to pay to the
Guarantee Trustee for the ratable benefit of the holders of
the QUIPS certain payments due from the Trust, to the
extent that the Property Trustee had funds available in a
specified payment account established pursuant to the
Trust Agreement.

by their undersigned attorneys, hereby alleges**allege** in support of its**their** Complaint on
personal knowledge as to its**their** own acts and on information and belief as to all other
matters as follows:

---

3     DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and
iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

3/9/07 Draft

## INTRODUCTION

1. ~~Magten is a creditor~~**The Trust, Magten, and all other beneficial holders of QUIPS, who in accordance with the provisions of the Indenture, the Trust Agreement, and the Guarantee Agreement are represented by Law Debenture, as, respectively, Indenture Trustee, Property Trustee, and Guarantee Trustee thereunder, are creditors** of Clark Fork and Blackfoot, LLC ("Clark Fork"), formerly known as NorthWestern Energy, LLC ("NWE"), and prior to that known as The Montana Power Company LLC ("MPLLC"). ~~Magten brings~~**Plaintiffs commenced** this lawsuit to obtain redress for the wrongful actions of defendants Mike J. Hanson~~, Jack D. Haffey,~~ **and** Ernie J. ~~Knidt and Ellen M. Senechal, all~~**Kindt, both** of whom were officers of Clark Fork on November 15, 2002 and enabled the transfer on that date (the "Transaction") of Clark Fork's key assets — electric, natural gas and propane utility assets (the "Montana Utility Assets") — to its corporate parent NorthWestern Corporation ("NorthWestern") without adequate consideration. The Transaction unjustly enriched NorthWestern by hundreds of millions of dollars while destroying Clark Fork's solvency and thus its ability to meet its obligations to **its creditors including** Magten and ~~its~~**the** other ~~creditors~~**QUIPS holders**. The defendants, as officers of Clark Fork, had a fiduciary duty to Clark Fork's creditors **as well as to Clark Fork itself** not to engage in transactions that would render Clark Fork insolvent. In connection with the Transaction, Clark Fork purported to have NorthWestern assume Clark Fork's liabilities, but NorthWestern's other liabilities were so massive that, even after paying inadequate consideration to Clark Fork for the Montana Utility Assets, NorthWestern could not pay its own pre-existing creditors, and filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. As a result of defendants' actions, ~~Magten is~~**Plaintiffs are** now owed well in excess of $20 million dollars by a company which defendants

4    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

rendered unable to meet its obligations to ~~Magten. Magten seeks~~**Plaintiffs. Plaintiffs seek** appropriate compensatory and punitive damages, in an amount to be determined at trial.

### THE PARTIES

2. ~~Plaintiff is~~**Magten is and was as of the institution of this lawsuit** a corporation validly organized and doing business under the laws of the State of Delaware with its principal place of business in the State of New York and is, therefore, deemed to be a citizen of Delaware and New York pursuant to 28 U.S.C § 1332(c)(1).

**3. Law Debenture Trust Company of New York is a banking corporation duly organized under the laws of the State of New York, with its principal office located at 400 Madison Avenue, Fourth Floor, New York, New York 10017, and is, therefore, deemed to be a citizen of New York pursuant to 28 U.S.C. § 1332(c)(1).**

4. Defendant Mike J. Hanson is **and was as of the institution of this lawsuit** a citizen of the State of ~~Montana and is believed to reside at 1805 C St., Butte, Montana 59701,~~**South Dakota.** As of November 15, 2002, Hanson was Chief Executive Officer of Clark Fork. **He is presently Chief Executive Officer of NorthWestern.**

~~4. Defendant Jack D. Haffey is a citizen of the State of Montana, and is believed to reside at 2101 Garfield St., Anaconda, Montana 59711. As of November 15, 2002, Haffey was President of Clark Fork.~~

5. Defendant Ernie J. Kindt is **and was as of the institution of this lawsuit** a citizen of the State of Montana~~, and is believed to reside at 5 Amber Way, Butte, Montana 59701.~~**.** As of November 15, 2002 Kindt was Vice President and Chief Accounting Officer of Clark Fork.

~~6.   Defendant Ellen M. Senechal is a citizen of the State of Montana, and is believed to reside at 75 Park Drive, Clancy, Montana 59634.  As of November 15, 2002, Senechal was Vice President, Treasurer and Chief Financial Officer of Clark Fork.~~

## JURISDICTION AND VENUE

6. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as it is between citizens of different States and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. ~~Venue~~**Magten originally commenced this action in the District of Montana, where venue was and** is proper pursuant to 28 U.S.C. ~~1391, because all defendants reside in this judicial district, and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district~~**1391.  The action was subsequently transferred to this District at the defendants' request**.

8.

## FACTUAL BACKGROUND AND SUBSTANTIVE ALLEGATIONS

### The Montana Power Company

9. ~~The~~ Montana Power ~~Company ("Montana Power")~~ was incorporated in 1961 under the laws of the state of Montana as the successor to a corporation formed in 1912 through the merger of four regional electric companies.

10. By the year 2000, Montana Power was engaged in activities related to telecommunications and energy related activities including activities in the fields of oil, coal, natural gas, and electricity.

11. ~~In~~**On or about** November **1,** 1996, Montana Power and **The** Bank of New York entered into ~~that certain Indenture for Unsecured Subordinated Debt Securities Relating to Trust Securities (the "Indenture").~~

~~12. Pursuant to the Indenture,~~**the Indenture, pursuant to which** Montana Power issued the Junior ~~Subordinated Interest Debentures (the "Junior Debentures")~~ **Debentures to the Trust**.

~~13. At or about the same time, pursuant to the Amended and Restated Trust Agreement (the "Trust Agreement") between itself and various other persons, Montana Power created Montana Power Capital I (the "Trust"), a business trust established pursuant to the Delaware Business Trust Act. Bank of New York was designated as the Property Trustee of the Trust as well as serving as Trustee under the Indenture.~~

**12. At or about the same time, Montana Power, The Bank of New York as property trustee, and others entered into the Trust Agreement, pursuant to which the Trust issued the QUIPS.**

7    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

13. As detailed below, as of November 2002, Clark Fork had succeeded to Montana Power's obligations with respect to the Junior Indentures. ~~The Bank of New York has been succeeded as Property Trustee of the Trust as well as Trustee under the Indenture by the~~ Law Debenture Trust Company of New York ~~("Law Debenture").~~**is now the successor property trustee under the Trust Agreement as well as successor indenture trustee under the Indenture.**

~~15. The Trust is a special purpose vehicle which, pursuant to the Trust Agreement, issued the Series A 8.45% Quarterly Income Preferred Securities ("QUIPS").~~

14. ~~The Trust holds 100%~~**Montana Power created the Trust as a special purpose financing vehicle. The Trust is the sole holder** of the Junior Debentures, with a total face amount of approximately $67 million, which constitute its sole meaningful asset. The value of the QUIPS is entirely based on the value of the Junior Debentures, and thus on the ability of Clark Fork to pay interest and principal to the Trust. The amounts paid by Clark Fork to the Trust would then in turn be passed on by the Trust to the holders of the QUIPS.

15. The Junior Debentures were not sold directly to investors; rather, purchasing the QUIPS provided investors with substantially the same rights and the same potential investment return as they would have had had they been able to own Junior Debentures directly. The entire structure of the transaction was designed to put investors in the same position as if they had directly purchased the Junior Debentures, while providing Montana Power with a more favorable accounting treatment than would have been possible had the Junior Debentures been sold directly to the investing public.

16.    Accordingly, in Section 610 of the Indenture Clark Fork (as successor to Montana Power) expressly acknowledges that the holders of the QUIPS are intended

8    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

3/9/07 Draft

beneficiaries of ~~the Company's~~**Clark Fork's (formerly Montana Power's)** obligations with respect to the Junior Debentures and that if the ~~Property Trustee of~~**property trustee under** the Trust **Agreement** (the legal titleholder to the Junior Debentures) fails to act, any holder of the QUIPS can sue directly to enforce the ~~Property Trustee~~**Trust**'s rights ~~with respect~~**and remedies**.

17.    Magten owns in excess of 33% of ~~the~~**all of the issued and outstanding** QUIPS.

**18. In connection with the Trust Agreement and the Indenture, Montana Power also entered into the Guarantee Agreement.**

19. ~~In connection with the Trust Agreement and the Indenture, Montana Power also entered into a Guarantee Agreement with the Bank of New York as Guarantee Trustee (the "Guarantee Agreement"). Pursuant to the Guarantee Agreement, Montana Power, as guarantor, agreed to pay to the holders of the QUIPS certain payments, to the extent such are not paid by the Trust, and to the extent the Property Trustee had funds available in a specified account.~~ As with the Indenture and the Trust Agreement, Clark Fork and Law Debenture have succeeded to the original roles and responsibilities of Montana Power and Bank of New York, respectively, **under the Guarantee Agreement**.

**The Sale of the Montana Power Company's Utility Assets**

20.    On March 28, 2000, Montana Power announced plans to restructure its business. This restructuring involved the sale of its energy related assets, including its electric, natural gas, and propane utility assets, in order to allow Montana Power to focus on telecommunications.

3/9/07 Draft

21. On September 29, 2000, Montana Power entered into a Unit Purchase Agreement with NorthWestern, pursuant to which NorthWestern agreed to purchase control of the Montana Utility Assets, then owned by Montana Power, in a multi-step transaction.

22. On February 13, 2002, Montana Power merged its energy assets into MPLLC (the "Merger"). As a result of the Merger, MPLLC thereafter held and operated the Montana Utility Assets and succeeded to all of Montana Power's obligations with respect to the Junior Debentures and the QUIPS.

23. Specifically, in connection with the Merger, on February 13, 2002, pursuant to the First Supplemental Indenture, MPLLC assumed the obligations of Montana Power under the Indenture.

24. In addition, in connection with the Merger, on February 13, 2002, pursuant to a letter agreement, MPLLC assumed the obligations of Montana Power under the Guarantee Agreement.

25. On February 15, 2002, NorthWestern purchased 100% of the equity of MPLLC, and, thus, the corresponding control of the Montana Utility Assets, for $478 million in cash. None of this consideration was received or retained by MPLLC. It was thus not thereafter available to Clark Fork to assist Clark Fork in meeting its obligations to its creditors.

26.        On March 19, 2002, MPLLC was renamed NWE.

27. On August 13, 2002, NorthWestern entered into the Second Supplemental Indenture, whereby it assumed on a joint and several basis with NWE all of NWE's obligations under the Indenture.

10    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

28. On August 13, 2002, NorthWestern entered into an ~~Amendment~~**amendment** to the Guarantee Agreement, whereby it assumed on a joint and several basis with NWE all of NWE's obligations under the Guarantee Agreement.

29. On August 13, 2002, NorthWestern entered into a letter agreement amending the Trust Agreement, whereby it assumed on a joint and several basis with NWE all of NWE's obligations under the Trust Agreement.

**The Transfer**

30.    On November 15, 2002, defendants, as officers of Clark Fork, carried out a scheme to defraud, injure and deprive **the Trust,** Magten**, and all QUIPS holders** of the ability to receive the benefits due to ~~it~~**them** from Clark Fork in connection with the Junior Debentures and the QUIPS, by, in the Transaction, transferring substantially all of Clark Fork's assets, the Montana Utility Assets, to NorthWestern without receiving adequate consideration in return. Clark Fork received no cash for the Transfer, and the consideration purportedly received was dramatically less than the value of the assets; over $1 billion dollars in assets were transferred to NorthWestern, and only approximately $700 million dollars in Clark Fork liabilities were purportedly assumed by NorthWestern. Indeed, with respect to some if not all of the liabilities purportedly assumed, NorthWestern was already a co-obligor with Clark Fork prior to the Transaction and/or Clark Fork remained obligated jointly and severally with NorthWestern subsequent to the Transaction, thus making any purported assumption of the liabilities in connection with the Transaction valueless.

31.    In particular, NorthWestern was already a co-obligor as to Clark Fork's obligations with respect to the Junior Indentures and QUIPS prior to the transaction, and Clark Fork remained obligated jointly and severally with NorthWestern with respect to the Junior

11    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

~~Indentures~~**Debentures** and QUIPS subsequent to the Transaction. Indeed, Clark Fork requested Bank of New York (at the time still the Trustee under the Indenture) to execute a supplement to the Indenture purporting to release Clark Fork from its continuing obligations under the Indenture, but Bank of New York refused to provide such a release.

      32.      As an immediate result of the consummation of the Transfer, Clark Fork was insolvent. Stripped of its assets, Clark Fork was thereafter unable to meet its obligations with respect to the Junior Debentures and QUIPS and did not do so. **Any purported release of Clark Fork's obligations with respect to the Junior Debentures and QUIPS is invalid and unenforceable**.

      33.      Both prior to and following the Transaction, NorthWestern was itself insolvent, making both its August 2002 assumption of liabilities with respect to the Junior Debentures and QUIPS and any purported further assumption of those liabilities in connection with the Transaction of little or no value to the holders of the QUIPS and other creditors of Clark Fork. Even the hundreds of millions of dollars by which it was unjustly enriched by the Transaction were insufficient to overcome the massive imbalance between assets and liabilities created by its various other failed business ventures.

      34.      The defendants ~~all~~**both** knew, should have known, and/or were reckless with respect to knowing that Clark Fork would be rendered insolvent as a result of the Transaction and that NorthWestern was insolvent both before and after the Transaction.

      35.      No interest on the Junior Debentures was paid by either NorthWestern or Clark Fork since prior to September 14, 2003. ~~In excess~~**Millions** of ~~$2 million~~**dollars** of interest on the Junior Debentures is now past due. If paid, that interest would have been passed on by the Trust to the holders of the QUIPS ~~such as~~**, including** Magten. Moreover, the entire principal

12    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

amount of the Junior Debentures was accelerated pursuant to the terms of the Indenture no later than September 14, 2003.

36. Following the Transaction, Clark Fork retained only the Milltown Dam, a two megawatt hydroelectric dam at the confluence of the Clark Fork and Blackfoot Rivers, under a license that expires in 2007, and the related environmental liabilities.

37. Following the Transaction, NorthWestern operated the Montana Utility Assets as part of NorthWestern's NorthWestern Energy Division.

38. After the Transaction, NWE remained a subsidiary of NorthWestern and on November 20, 2002, NWE was re-named Clark Fork.

39. Clark Fork continues to operate the Milltown Dam.

40. Clark Fork is entirely dependent upon NorthWestern for continued funding of the Milltown Dam and its corporate existence, and NorthWestern is required, under certain agreements with Clark Fork, which require NorthWestern to pay any costs and expenses that arise in connection with the operation of the Milltown Dam.

41. Less than a year later, on September 14, 2003, NorthWestern filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware. **It was accordingly required to obtain the approval of the bankruptcy court to pay its support obligations to Clark Fork on a current basis at a time when it was not meeting its other pre-petition obligations.**

42. ~~The~~**Following the Transaction, the** Montana Utility Assets ~~generate~~**generated** approximately 80% of NorthWestern's consolidated EBITDA, although NorthWestern did not pay fair value for those assets, thus injuring Magten and Clark Fork's other creditors.

13    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

43. The**During NorthWestern's bankruptcy, the** Montana Utility Assets are now**became** available to all creditors of NorthWestern, most of whom were not creditors of Clark Fork and thus had not previously had any claim to Clark Fork's assets. Accordingly, Magten and other QUIPS holders are likely to receive little or no recovery for their claims in NorthWestern's reorganization plan.**QUIPS holders were treated as "out of the money" in NorthWestern's confirmed chapter 11 plan, and were eligible to receive a de minimis payment of approximately two cents on the dollar if, but only if, they agreed to release both NorthWestern and others including the defendants in this action from all claims related to the Transaction.**

44. On April 8, 2004, the United States Bankruptcy Court for the District of Delaware granted Magten's motion in NorthWestern's bankruptcy case for leave to commence an adversary proceeding against NorthWestern seeking to have the Transaction set aside as a fraudulent conveyance. **Magten and Law Debenture are presently prosecuting that action, Civil Action No. 04-1494-JJF, in this Court, the reference to the bankruptcy court having been withdrawn. While NorthWestern's confirmed chapter 11 plan provides for partial payment of any ultimate judgment in Magten and Law Debenture's favor in that adversary proceeding, the terms of the plan will prevent payment in full from NorthWestern of the damage suffered as a result of the Transaction.**

**45. The Trust as an entity is unable to sue in its own name. Its rights as a Clark Fork creditor may be asserted by the relevant trustee (currently, Law Debenture) or, as provided in the Indenture, any QUIPS holder as a beneficiary. In several decisions in 2005 prior to the transfer of this action to this District, the U.S. District Court for the District of Montana rejected attacks raised by defendants in a 12(b)(6) motion and a summary**

14    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

3/9/07 Draft

judgment motion on Magten's standing to sue, holding among other things that Magten

had standing to enforce the Trust's rights. In light of these rulings, Law Debenture had no

reason to, and did not, revisit the issue of whether to join this action as a co-plaintiff until

defendants sought to relitigate the issue of Magten's standing beginning on January 29,

2007. For this and other reasons, any statute of limitations or similar defense that might

otherwise arguably apply to Law Debenture's right to sue on behalf of the Trust has been

tolled during the period that Magten has been litigating the Trust's rights with express

judicial approval.

## STATEMENT OF CLAIM

### FIRST CAUSE OF ACTION

### (Direct Breach of Fiduciary Duty)

46.      ~~Plaintiff repeats~~**Plaintiffs repeat** and ~~realleges~~**reallege** paragraphs 1-~~45~~**44**

and ~~incorporates~~**incorporate** them herein by reference.

47. Clark Fork was a company within the zone of insolvency on November 15, 2002.

Accordingly, defendants, as officers of Clark Fork, owed individual fiduciary duties to Clark

Fork's creditors, including without limitation the Trust and all QUIPS holders, including

Magten's predecessors in interest, not to engage in any transaction that would make Clark Fork

insolvent and thus unable to perform its obligations with respect to the Junior Debentures and

QUIPS.

48. The Trust and the QUIPS holders, including Magten's predecessors in interest,

were creditors of Clark Fork, and were injured by the Transaction which transferred the Montana

Utility Assets to NorthWestern without adequate consideration, thereby rendering Clark Fork

insolvent.

15    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and
iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

49. ~~The Property Trustee has~~**As of the filing of this lawsuit, the property trustee under the Trust Agreement had** failed to enforce the Trust's rights, so Magten ~~has~~**had** standing under the Indenture to enforce both the Trust's rights and its own individual rights as successor to the QUIPS holders who were its predecessors in interest. **Magten retains that standing despite Law Debenture's subsequent election to join this action as a co-plaintiff.**

**50. Law Debenture, as Indenture Trustee, Property Trustee, and Guarantee Trustee, has standing to assert the Trust's rights and the rights of the QUIPS holders.**

51. Defendants breached their fiduciary duties to the Trust and **the QUIPS holders, including** Magten's predecessors in interest, by willfully and wantonly carrying out the Transaction and transferring the Montana Utility Assets to NorthWestern without adequate consideration, thereby rendering Clark Fork insolvent.

52. Defendants also breached their fiduciary duties to the Trust and **the QUIPS holders, including** Magten's predecessors in interest, by purporting to assign Clark Fork's obligations with respect to the Junior Debenture and QUIPS to NorthWestern, when they knew NorthWestern was insolvent and would remain insolvent, and would thus be unable to perform those obligations.

53. By reason of the foregoing acts, practices and course of conduct, the defendants have breached their fiduciary duties to the Trust and **the QUIPS holders, including** Magten's predecessors in interest, causing financial loss, in an amount to be proven at trial, but in excess of $20 million.

54. Punitive damages in an amount to be determined at trial should also be awarded due to the willful, malicious, and outrageous nature of these breaches of fiduciary duty.

## SECOND CAUSE OF ACTION

3/9/07 Draft

**(Derivative Breach of Fiduciary Duty on behalf of Clark Fork)**

**55.** **Plaintiffs repeat and reallege paragraphs 1-53 and incorporate them herein by reference.**

**56. Defendants, as officers of Clark Fork, owed individual fiduciary duties as of November 15, 2002 to Clark Fork as an entity not to engage in any transaction that would make Clark Fork insolvent and thus unable to perform its obligations to its creditors, including its obligations with respect to the Junior Debentures and QUIPS.**

**57. Because NorthWestern was and is the sole member and manager (i.e., 100% equity owner) of Clark Fork, because NorthWestern expressly directed the defendants to engage in these breaches of fiduciary duty, because defendant Hanson is currently NorthWestern's CEO, and because NorthWestern directly benefited from these breaches of fiduciary duty, NorthWestern has prevented and will continue to prevent Clark Fork from suing defendants for these breaches of duty.**

**58. Under these circumstances, where all of the equityholders of an insolvent entity have directed and benefited from breaches of fiduciary duty by the insolvent entity's officers, any creditor or holder of debt securities issued by the entity has standing to bring a derivative claim on behalf of the entity.**

**59. For the same reasons, any pre-action demand that NorthWestern (as managing member) cause Clark Fork pursue these claims against defendants would have been unlikely to succeed and was accordingly not required to be attempted under Montana Code § 35-8-1104(1) & (3) to the extent applicable to this case.**

17    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

60. The Trust owned the Junior Debentures as of the date of defendants' breaches of fiduciary duty and has owned them continuously since then.  It accordingly satisfies the "contemporaneous ownership" rule of Montana Code § 35-8-1104(2) to the extent applicable to this case.

61. As noted above, the Trust cannot sue in its own name and its rights must accordingly be asserted by the relevant trustee such as Law Debenture or, as provided by the terms of the Indenture, any QUIPS holder as beneficiary thereunder.

62. Defendants breached their fiduciary duties to Clark Fork by willfully and wantonly carrying out the Transaction and transferring the Montana Utility Assets to NorthWestern without adequate consideration, thereby rendering Clark Fork insolvent and depriving it of the ability to meet its obligations to its creditors including the Trust and the QUIPS holders, causing financial harm directly to Clark Fork and derivatively to the Trust and the QUIPS holders, in an amount to be proven at trial, but in excess of $20 million.

63. Punitive damages in an amount to be determined at trial should also be awarded due to the willful, malicious, and outrageous nature of these breaches of fiduciary duty.

64.

18    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

WHEREFORE, ~~plaintiff~~**plaintiffs** respectfully ~~requests~~**request** that this Court

enter judgment against defendants as follows:

(1)    Awarding ~~plaintiff~~**plaintiffs** compensatory and punitive damages, in an

amount determined at trial but in excess of \$20 million;

(2)    Awarding ~~plaintiff~~**plaintiffs** all allowable costs, attorney's fees and other

litigation expenses to the extent recoverable under law; and

(3)    Awarding ~~plaintiff~~**plaintiffs** such other and further relief as to this Court

may be just, proper and equitable.

**Dated: Wilmington, Delaware**
    **March ___, 2007**

**BLANK ROME LLP**

---

**Dale R. Dubé (DE No. 2863)**
**1201 Market Street, Suite 800**
**Wilmington, DE 19801**
**Telephone:  (302) 425-6400**
**Facsimile:  (302) 425-6464**

**_____ - and -**

**FRIED, FRANK, HARRIS, SHRIVER &**
**_____JACOBSON LLP**
**Bonnie Steingart**
**Gary Kaplan**
**John W. Brewer**
**One New York Plaza**
**New York, NY 10004**
**Telephone:  (212) 859-8000**
**Facsimile:  (212) 859-4000**

**Counsel for Magten Asset Management**
**Corporation**

19    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and
iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.

3/9/07 Draft

**Dated:  Wilmington, Delaware**
    **March ___, 2007**

**SMITH KATZENSTEIN & FURLOW LLP**


**Kathleen M. Miller**
**800 Delaware Avenue**
**P.O. Box 410**
**Wilmington, DE 19899**
**Telephone:  (302) 652-8400**
**Facsimile:  (302) 652-8405**

    **- and -**


**NIXON PEABODY LLP**
**John V. Snellings**
**Amanda D. Darwin**
**100 Summer Street**
**Boston, MA 02110-2131**
**Telephone:  (617) 345-1000**
**Facsimile:  (617) 345-1300**

**Counsel for Law Debenture Trust Company of New York, as Indenture Trustee, Property Trustee, and Guarantee Trustee**

[Signature Block]
546593.4

20    DeltaView comparison of iManageDeskSite://FFNYDMS/ffny02/546593/1 and iManageDeskSite://FFNYDMS/ffny02/546593/4. Performed on 3/9/2007.