# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN CORPORATION, <br><br> Defendant. | C.A. No. 04-1494-JJF |
| MAGTEN ASSET MANAGEMENT CORPORATION, <br><br> Plaintiffs, <br><br> v. <br><br> MIKE J. HANSON and ERNIE J. KINDT <br><br> Defendants. | C.A. No. 05-0499-JJF |

STATE OF NEW YORK   )
                     ) ss.:
COUNTY OF NEW YORK  )

        JOSEPH D. PIZZURRO, being duly sworn, deposes and says:

        1.     I have been admitted pro hac vice to the bar of this Court and am a member of the firm of Curtis, Mallet-Prevost, Colt & Mosle LLP, counsel for defendant NorthWestern Corporation ("NorthWestern") in the above-referenced action. I submit this affidavit in support of the Joint Motion of Defendants NorthWestern Corporation, Michael J. Hanson and Ernie J. Kindt pursuant to Fed. R. Civ. P. 26(c) and Local Rule 30.2 for a Protective Order.

2.     On March 14, 2007, John Brewer, counsel to plaintiff Magten Asset Management Corporation ("Magten"), wrote to defendants' counsel stating that plaintiffs intended to take the depositions of Messrs. Hanson and Kindt as well as NorthWestern employees Thielbar and Kliewer during the weeks of April 16 and 23 and asked for convenient dates in those two weeks.  A copy of that letter is attached as Exhibit A.

3.     Subsequently I had a conversation with Bonnie Steingart, also counsel to Magten, where she suggested that those depositions, as well as the depositions of the various non-parties subpoenaed by plaintiffs, be clustered during those weeks in cities to avoid travel as much as possible.  I agreed with that approach and subsequently suggested that, because plaintiffs had noticed Mr. Lewis in Minneapolis on April 17 that the defendants, as a concession to plaintiffs, would be willing to bring Messrs. Hanson, Kindt and Kliewer to Minneapolis that same week, and not insist that they be deposed in Sioux Falls, South Dakota.  I proposed that we try to cluster other depositions the following week in Chicago because plaintiffs had subpoenaed Mr. Drook for April 25 in Chicago.  I also suggested that many of the remaining depositions, including Talton Embry, Bank of New York and Deloitte & Touche, could be done the week of April 30 in New York.

4.     Ms. Steingart was generally agreeable with this approach and told me that she was not sure whether she would be taking the depositions of Mr. Thielbar, Mr. Kliewer or the Bank of New York and asked if we could move those depositions to the end of the schedule.

5.     On or about April 9, we learned from Plaintiffs that the schedule we had discussed had to be changed because John Snellings, counsel for plaintiff Law Debenture Trust Company of New York, was not available for 5 of the 10 days during the last two weeks in April which plaintiffs had originally proposed for depositions.

6.    After learning of Mr. Snellings limited availability, I worked with counsel for Messrs. Hanson and Kindt to determine alternative dates for the depositions of NorthWestern's officers and employees. In the midst of this, plaintiffs unilaterally announced that they were withdrawing the non-party deposition scheduled for April 17 in Minneapolis. Further, plaintiffs demanded that the depositions of NorthWestern's witnesses take place in New York or Delaware and that those depositions remain open until plaintiffs' issues with NorthWestern's privilege designations are resolved.

7.    I objected to the location of the depositions of Messrs. Hanson and Kindt in New York or Delaware. As a compromise, I offered that their depositions take place in Minneapolis. Ms. Steingart and I had a subsequent conversation during the week of April 9, 2007. We discussed the possibility of bringing Messrs. Hanson and Kindt to Chicago to be deposed after Mr. Drook's deposition, which was scheduled for that city on April 25. However, Ms. Steingart also requested that we agree that Messrs. Hanson and Kindt would have to be redeposed if the Court ruled that plaintiffs were entitled to certain documents as to which NorthWestern had asserted a privilege I stated that under no circumstances would defendants agree that Messrs. Hanson and Kindt could be deposed more than once. On April 11, 2007 I sent Ms. Steingart a letter setting forth our position on the scheduling of depositions. A copy of this letter is attached as Exhibit B.

8.    On April 12, 2007, Plaintiff Magten served Defendants with deposition notices for Mr. Hanson and Mr. Kindt for April 23 and 24, respectively, in Wilmington, Delaware. Copies of the deposition notices are attached as Exhibit C.

9.    I am informed that, during this same period of time, counsel for Messrs. Hanson and Kindt were having discussions with counsel for Plaintiffs regarding Mr. Hanson's availability. I am informed that prior to April 12, 2007, counsel for Mr. Hanson told counsel for Magten that Mr. Hanson could not be available to be deposed on April 23. However, Mr. Hanson was available on April 26. A copy of an email dated April 5, 2007 from Kimberly A. Beatty, counsel to Messrs. Hanson and Kindt, is attached as Exhibit D.

10.    I had another conversation with Ms. Steingart concerning these issues on April 18, 2007. We again discussed the possibility of having Messrs. Hanson and Kindt be deposed in Chicago the week of April 23, 2007. I told her again that we could not agree unless they were deposed only once, and told her that, if we could not reach agreement we were prepared to file this Motion for a Protective Order. We could not reach an agreement, and Ms. Steingart subsequently sent me an email on this issue, a copy of which is attached as Exhibit E.

11.    Attached hereto as Exhibit F is the Affidavit of Michael J. Hanson dated April 19, 2007.

12.    Attached hereto as Exhibit G is the Affidavit of Ernie J. Kindt dated April 19, 2007.

13.    I am informed that Bart Thielbar is the former Vice President of NorthWestern Communications Solutions ("NCS"), an operating division of NorthWestern, and former Senior Vice President of Information Technology and Chief Information Officer of NorthWestern Energy. He is now Director, Special Projects for NorthWestern. I am informed that Mr. Thielbar resides in Minnesota but works in Sioux Falls, South Dakota.

14.    I am informed that Kendall Kliewer is the Vice President, Controller of NorthWestern and works and resides in Sioux Falls, South Dakota.

15.    Attached as Exhibit H are pages 1 through 20 of the transcript of the deposition of Talton Embry dated July 27, 2004 in In re: NorthWestern Corp., 03-12872.

16.    Attached as Exhibit I is Magten's Response to Interrogatory 22 propounded by defendants Hanson and Kindt.

17.    Attached as Exhibit J are selected documents produced by Magten to defendants Hanson and Kindt regarding certain of Magten's purchases of QUIPS.

Joseph Pizzurro

Sworn to before me
this *19* day of April 2007

Notary Public

JACQUELINE T. DIMARCO
Notary Public, State of New York
No. 31-4841199
Qualified in New York County
Commission Expires Oct. 31, 2009

*EXHIBIT A*

**Fried, Frank, Harris, Shriver & Jacobson LLP**

One New York Plaza
New York, New York 10004-1980
Tel:  +1.212.859.8000
Fax:  +1.212.859.4000
www.friedfrank.com

Direct Line:  212.859.8736
Fax:  212.859.4000
brewejo@ffhsj.com

March 14, 2007

Joseph D. Pizzuro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY   10178

Stanley T. Kaleczyc
Kimberly A. Beatty.
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
Helena, MT 59601

          Re:    Magten Litigation  -- Deposition Scheduling

Dear Counsel:

          We intend to begin serving deposition notices in the near term.  To minimize
inconvenience to all concerned, please provide us with dates during the weeks beginning
April 16 and 23 that would be convenient for Mr. Hanson, Mr. Kindt, NorthWestern
employee Kendall Kliewer, and NorthWestern employee Bart Thielbar to be deposed in
Wilmington.  We would be happy to hold the depositions in New York rather than
Wilmington if you would prefer, and might be able to take Mr. Thielbar's deposition
towards the end of the week of the 9th if that would be helpful.

          We also intend to take the deposition of a 30(b)(6) designee of NorthWestern in
the same general time period.  We will provide you with a formal 30(b)(6) notice of
topics, but for your planning purposes you should assume the relevant topics will
generally include the subject matter of our interrogatories and requests to admit, as well
as NorthWestern's response to our document requests and the factual content of the
recent SEC settlement.

                              Very truly yours,

                              John W. Brewer

JWB:ner

New York ▪ Washington DC ▪ London ▪ Paris ▪ Frankfurt
Fried, Frank, Harris, Shriver & Jacobson LLP is a Delaware Limited Liability Partnership

*EXHIBIT B*

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

ATTORNEYS AND COUNSELLORS AT LAW
101 PARK AVENUE
NEW YORK, NEW YORK 10178-0061

FRANKFURT   MUSCAT
HOUSTON     PARIS
LONDON      STAMFORD
MEXICO CITY WASHINGTON, D.C.
MILAN

TELEPHONE 212-696-6000
FACSIMILE 212-697-1559
E-MAIL INFO@CM-P.COM
INTERNET WWW.CM-P.COM

WRITER'S DIRECT:
TEL.: 212-696-6196

April 11, 2007

Bonnie Steingart, Esq.
Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004-1980

Re:   *Magten Asset Management Corp. and Law
      Debenture Trust Co. v. NorthWestern Corp.*;
      C.A. No. 04-1494-JJF

Dear Bonnie:

        We write as counsel to NorthWestern and on behalf of counsel for Messrs.
Hanson and Kindt, in response to your email of last evening. It's unfortunate that we seem to
have reached an impasse on some of the scheduling issues for the depositions. However, the
problems that have arisen are entirely the fault of Plaintiffs.

        John Brewer wrote to Defendants' counsel on March 14 stating that Plaintiffs
intended to take the depositions of Messrs. Hanson and Kindt as well as NorthWestern
employees Thielbar and Kliewer during the weeks of April 16 and 23 and asked for convenient
dates in those two weeks. Subsequently you and I had a conversation where you suggested that
those depositions, as well as the depositions of the various non-parties subpoenaed by Plaintiffs,
be clustered during those weeks in cities to avoid travel as much as possible. I agreed with that
approach and subsequently suggested that, because Plaintiffs had noticed Mr. Lewis in
Minneapolis on April 17 that the defendants, as a concession to Plaintiffs, would be willing to
bring Messrs. Hanson, Kindt and Kliewer to Minneapolis that same week, and not insist that they
be deposed in Sioux Falls, South Dakota. I made it clear that Mr. Hanson's availability that
week was limited to the 18th. I proposed that we try to cluster other depositions the following
week in Chicago because you had subpoenaed Mr. Drook for April 25 in Chicago. I also
suggested that many of the remaining depositions, including Talton Embry, Bank of New York
and Deloitte & Touche, could be done the week of April 30 in New York. You were generally
agreeable with this approach and told me that you were not sure whether you would be taking the
depositions of Mr. Thielbar, Mr. Kliewer or the Bank of New York and asked if we could move
those depositions to the end of the schedule. However, last week we were informed for the first
time that this schedule would not work because John Snelling was not available for most of the

3564737v1

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 2

Bonnie Steingart, Esq.
April 11, 2007

two weeks you originally suggested and which are the two weeks prior to the close of fact discovery. Since then the deposition scheduling process and your cooperation have gone down hill. All alternative schedules proposed by Defendants' counsel have been met with resistance from your side.

Plaintiffs may take Mr. Hanson's deposition in Sioux Falls, South Dakota, the corporate headquarters of NorthWestern, on April 18 and Mr. Kindt's there as well on April 19. As you are aware, the case law is clear that, regardless of the place of the forum, a corporate defendant is entitled to have its corporate representatives deposed at the corporate headquarters. However, we are still willing to make Mr. Hanson available in Minneapolis on April 18. As I told you earlier, as chief executive officer of NorthWestern he is quite busy these days and has no time to travel to the east coast. Mr. Kindt will also be made available in Minneapolis on April 19. Mr. Snelling's scheduling issue with this latter date should not pose a problem in as much as his client has asserted no claim against Mr. Kindt.

We do not agree that any of the depositions will remain open until the issue of privilege is resolved. The issue of whether documents which may have been produced to the SEC are still subject to a claim of privilege is one in which was raised in correspondence between you and me as early as December, and was mentioned again in front of the Special Master in January. You have had our privilege log now for over two weeks. This issue could have been raised by Plaintiffs in a motion long ago.

Counsel for Messrs. Hanson and Kindt have suggested several dates for Mr. Embry's deposition. Each time, we have all been told that he is not available on the date suggested. As you have previously been informed, Mr. Kaleczyc, lead trial counsel for Messrs. Hanson and Kindt, is not available the weeks of May 7, 14 or 21 due to other trial schedules, and therefore, Mr. Embry's deposition must take place before that time. In a last effort to be cooperative, counsel for Messrs. Hanson and Kindt were prepared to offer to depose Mr. Embry in New York City on either April 23 or April 30 at your election; however, as we were preparing this letter to you, we received John Brewer's email informing us that you have now unilaterally scheduled Mr. Fresia's deposition for April 30. Therefore, Mr. Embry's deposition will be noticed for April 23.

Finally, we must address the other eight witnesses that you have indicated you want to depose, some of whom you have previously noticed for depositions. You have informed us that Mr. Fresia, currently scheduled for May 1 in Denver, is not available that date and therefore must be rescheduled; we now understand that you have unilaterally rescheduled this deposition for April 30, which again is contrary to the notion that we would attempt to cluster depositions in various cities. We are also informed that the American Appraisal witness, to the extent you still want to depose him, is located in New Jersey, and therefore must be rescheduled. Richard Hylland's deposition is currently set for May 2 in Minneapolis, and is set simultaneously with the date for the deposition of the Bank of New York which is scheduled for New York. You have informed us that you will be canceling Mr. Lewis' deposition for April 17, but have not suggested an alternative date or location. You have also informed us that you may want to reschedule the Deloitte & Touche deposition for a later date to allow you time to review their

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 3

Bonnie Steingart, Esq.
April 11, 2007

documents.  You have also indicated that you are not sure whether you want to depose Mr. Thielbar or a 30(b)(6) representative of NorthWestern, but that if you do, you want to move them to the end of the schedule.  Provided we can work out the scheduling of the above witnesses, we would be willing to extend the close of fact discovery by one week to schedule two depositions during the week of May 6 in Minneapolis.

Yours truly,

Joseph D. Pizzurro

cc:  Gary L. Kaplan, Esq.
     John W. Brewer, Esq.
     Victoria W. Counihan, Esq.
     Denise Seastone Kraft, Esq.
     Dennis A. Meloro, Esq.
     John V. Snellings, Esq.
     Dale R. Dubé, Esq.
     Stanley T. Kaleczyc, Esq.
     Kimberly A. Beatty, Esq.

3564737v1

*EXHIBIT C*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 04-1494-(JJF) |
| NORTHWESTERN CORPORATION, | ) ) | |
| Defendant. | ) ) | |

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORP., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. Action No. 05-499 (JJF) |
| MICHAEL J. HANSON and ERNIE J. KINDT, | ) ) ) | |
| Defendants. | ) | |

TO:   Denise Seastone Kraft          Stanley T. Kaleczyc
      Edwards Angell Palmer & Dodge LLP   Kimberly A. Beatty
      919 North Market Street          Browning, Kaleczyc, Berry & Hoven, P.C.
      15th Floor                       139 North Last Chance Gulch
      Wilmington, DE 19801             P.O. Box 1697
                                       Helena, Mt 59624

### NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that Plaintiff Magten Asset Management Corp. will take the

deposition of Michael J. Hanson commencing at 9:30 a.m. on April 24, 2007 and continuing

until completed, at the offices of Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington,

Delaware 19801. The deposition will be taken before a notary public or other officer authorized

by law to administer oaths, and may be recorded by stenographic and videographic means.

120087.01600/40168272v.1

April 12, 2007

**BLANK ROME LLP**


 /s/  Dale R. Dubé_____
Dale R. Dubé (DE No. 2863)
Bonnie G. Fatell (DE No. 3809)
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP**
Bonnie Steingart
Gary L. Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:  (212) 859-4000
Counsel for Magten Asset Management
Corporation

2

120087.01600/40168272v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April, 2007, I served by hand delivery and electronic filing the NOTICE OF DEPOSITION using CM/ECF which will send notification of such filing(s) to the following:

### BY EMAIL AND HAND DELIVERY

Kathleen M. Miller, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

David A. Jenkins, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

I also certify that, on this 12th day of April, 2007, I served the aforementioned document, by e-mail and Federal Express, upon the following participants:

### BY EMAIL AND FEDERAL EXPRESS

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Bijan Amini, Esquire
Avery Samet, Esquire
Bradley F. Silverman, Esquire
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

John V. Snellings, Esquire
Amanda D. Darwin, Esquire
Nixon Peabody LLP
100 Summer Street
Boston, Massachusetts 02110-1832

*Dale R. Dubé*

Dale R. Dubé  (No. 2863)

120087.01600/40168272v.1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 04-1494-(JJF)<br>)<br>)<br>)<br>)<br>) |
| MAGTEN ASSET MANAGEMENT CORP.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. HANSON and ERNIE J. KINDT,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  C.A. Action No. 05-499 (JJF)<br>)<br>)<br>)<br>) |

TO:    Denise Seastone Kraft            Stanley T. Kaleczyc
       Edwards Angell Palmer & Dodge LLP    Kimberly A. Beatty
       919 North Market Street          Browning, Kaleczyc, Berry & Hoven, P.C.
       15th Floor                       139 North Last Chance Gulch
       Wilmington, DE 19801             P.O. Box 1697
                                        Helena, Mt 59624

### NOTICE OF DEPOSITION

PLEASE TAKE NOTICE that Plaintiff Magten Asset Management Corp. will take the

deposition of Ernie J. Kindt commencing at 9:30 a.m. on April 23, 2007 and continuing until

completed, at the offices of Blank Rome LLP, 1201 Market Street, Suite 800, Wilmington,

Delaware 19801. The deposition will be taken before a notary public or other officer authorized

by law to administer oaths, and may be recorded by stenographic and videographic means.

120087.01600/40168275v.1

April 12, 2007

**BLANK ROME LLP**


 /s/  Dale R. Dubé
Dale R. Dubé (DE No. 2863)
Bonnie G. Fatell (DE No. 3809)
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP**
Bonnie Steingart
Gary L. Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:  (212) 859-4000
Counsel for Magten Asset Management
Corporation

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of April, 2007, I served by hand delivery and electronic filing the NOTICE OF DEPOSITION using CM/ECF which will send notification of such filing(s) to the following:

### BY EMAIL AND HAND DELIVERY

Kathleen M. Miller, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

David A. Jenkins, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

I also certify that, on this 12th day of April, 2007, I served the aforementioned document, by e-mail and Federal Express, upon the following participants:

### BY EMAIL AND FEDERAL EXPRESS

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Bijan Amini, Esquire
Avery Samet, Esquire
Bradley F. Silverman, Esquire
Storch Amini & Munves PC
2 Grand Central Tower
140 East 45th Street, 25th Floor
New York, New York 10017

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

John V. Snellings, Esquire
Amanda D. Darwin, Esquire
Nixon Peabody LLP
100 Summer Street
Boston, Massachusetts 02110-1832

_____
Dale R. Dubé  (No. 2863)

120087.01600/40168275v.1

*EXHIBIT D*

**Pizzurro, Joseph D.**

| From: | KIM Beatty [KIM@bkbh.com] |
|---|---|
| Sent: | Thursday, April 05, 2007 6:27 PM |
| To: | Delaney, Nancy E.; John W. Brewer |
| Cc: | STAN Kaleczyc; Gary Kaplan; Bonnie Steingart; jsnellings@nixonpeabody.com |
| Subject: | RE: Orme Deposition |

Counsel:

In light of John Snelling's email of a few days ago indicating he could only attend
depositions the week of April 16 "at great expense" and as supplemented by Bonnie's email
indicating the names of three witnesses she might not want to depose afterall, we took the
initiative to try to come up with a proposal that (1) minimizes the number of depositions
to be conducted during the week of April 16 and (2) switch the order of the depositions so
that the depositions that John and Bonnie indicated were "key" depositions requiring
John's participation could be scheduled during the weeks John was available.

Therefore, after consulting with NorthWestern's counsel as to the available dates for
their witnesses, we propose the following schedule:
Atlanta:        April 12, 2007      Kip Orme

Chicago:                April 18, 2007 American Appraisal (Chicago)
            April 19, 2007          Drook (Chicago)


Minn/Denver:        April 24, 2007          Hylland
            April 25, 2007          Kindt
            April 26, 2007          Hanson
            April 27, 2007          Friesa (Denver)

New York:    May 1, 2007       Deloitte & Touche
            May 2, 2007       Bank of New York
            May 3, 2007       Talton Embry

Minneapolis:        May 8, 2007       Lewis
            May 9, 2007       Thielbar
            May 10, 2007          Kliewer

However, not wanting to suggest a schedule where other witnesses would not be available,
we tried to contact counsel for Hylland, Drook, Thielbar, and Lewis to see if they would
each be amenable to the switch in deposition dates.  Thielbar's counsel agreed to a
deposition during the week of May 7; Hylland's counsel is on vacation this week; Drook's
counsel has not returned the message left; and Lewis' counsel responded that Lewis was not
available at any time between mid-April and the end of May and therefore would only appear
on the date set forth in the Subpoena sent by Magten:  April 17 in Minneapolis.

Therefore, we are at a loss as to what schedule to propose that will accommodate the needs
of all counsel.  Mr. Hanson and Mr. Kindt are available only on the dates we have
previously suggested (April 18 and 19) and the dates set forth in the above proposal
(April 25 and 26).  We would like to cluster depositions in appropriate cities to minimize
travel which cris-crosses the country.  Due to our other trial schedules in May, we cannot
push depositions past May 10; and we are not agreeable to conducting multiple depositions
in several different cities on the same day.  Because time is now running very short and
we would all like to finalize the deposition schedule, we await input and suggestions from
each of you.


Sincerely,

Kimberly A. Beatty
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
Helena, MT  59601

*EXHIBIT E*

**Pizzurro, Joseph D.**

| | |
|---|---|
| **From:** | Steingart, Bonnie [SteinBo@friedfrank.com] |
| **Sent:** | Wednesday, April 18, 2007 4:56 PM |
| **To:** | Pizzurro, Joseph D. |
| **Subject:** | RE: Update re Friesa Deposition |

I do not want to leave you with a misimpression about the depositions.
While we could agree to try to put off the depositions until the court
may decide on the claims of privilege, it is important to complete the
deposition of Mr. Hanson as soon as possible. Mr. Hanson must be
produced by Northwestern regardless of his testimony as a party to the
other lawsuit. So to the extent that Mr. Hanson is not deposed on either
April 26 or April 27, his deposition must be scheduled within the time
remaining for fact discovery or within some modest extension thereof to
accommodate his schedule. If you or his other counsel agree to a
reasonable schedule, we are willing to withdraw the notices served on
Messrs. Hanson and Kindt. If you are unable to suggest such a schedule,
I guess you have no choice but to move for a protective order. As to
the third parties, John Brewer will get back to you about that schedule
tomorrow. We are trying to contact them to see if some movement of
dates is possible so that we can use all available documents with them.


-----Original Message-----
From: Pizzurro, Joseph D. [mailto:jpizzurro@cm-p.com]
Sent: Wednesday, April 18, 2007 3:46 PM
To: Brewer, John W.; Steingart, Bonnie; Delaney, Nancy E.; John V.
Snellings Esq. (E-mail); Kaplan, Gary; Nadritch, Jordanna
Cc: Stanley T. Kaleczyc Esq. (E-mail); Kimberly A. Beatty Esq. (E-mail);
Bagnato, Jennifer A.
Subject: RE: Update re Friesa Deposition

John,
With all the changes could you let us all know what depositions are
still scheduled to go forward and on what dates. Thanks

Joseph D.Pizzurro
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY 10178
Tel:  212 696 6196
Fax: 212 697 1559
Email: jpizzurro@cm-p.com


-----Original Message-----
From: Brewer, John W. [mailto:BreweJo@friedfrank.com]
Sent: Wednesday, April 18, 2007 3:27 PM
To: Steingart, Bonnie; Delaney, Nancy E.; John V. Snellings Esq.
(E-mail); Kaplan, Gary; Nadritch, Jordanna
Cc: Stanley T. Kaleczyc Esq. (E-mail); Kimberly A. Beatty Esq. (E-mail);
Pizzurro, Joseph D.; Bagnato, Jennifer A.
Subject: Update re Friesa Deposition


Dear Counsel:

     You will recall that in a series of emails last week I advised
you that the originally-noticed May 1 date for Rick Fresia had become
problematic and then (following a series of communications with Mr.
Fresia's counsel) that April 30 was a firm date for Mr. Fresia's
deposition. Unfortunately, subsequent developments have made the April
30 date problematic as well. In particular, we have been advised that

1

*EXHIBIT F*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | Civil Action No. 05-499-JJF |
| Plaintiff, | |
| v. | **AFFIDAVIT OF MICHAEL J. HANSON** |
| MIKE J. HANSON and ERNIE J. KINDT | |
| Defendants. | |

STATE OF SOUTH DAKOTA      )

                                                    :ss

County of Minnehaha)

     MICHAEL J. HANSON, first being duly sworn upon his oath deposes and says:

1.     I live in rural Sioux Falls, South Dakota.

2.     At all times material to the Complaint in this action, I served as an officer of Clark Fork and Blackfoot, LLC, and was employed by NorthWestern Corporation, working in Sioux Falls, South Dakota.

3.     I currently serve as the President & CEO for NorthWestern Corporation. NorthWestern Corporation is headquartered in Sioux Falls, South Dakota. I work in NorthWestern's Sioux Falls' headquarters.

4.     NorthWestern Corporation utilizes approximately 1,350 employees to serve approximately 640,000 customers. NorthWestern Corporation operates in South Dakota, Nebraska, and Montana. As CEO of this large and complex publicly traded organization, I am required to spend as much time governing our operations as possible. These obligations required that I spend the majority of my time in the

corporate headquarters in Sioux Falls, or in the Montana headquarters in Butte, Montana. Because the corporation also operates in Nebraska, I make periodic trips to Nebraska as well. In addition to my daily management responsibilities, NorthWestern Corporation is presently in the middle of an acquisition transaction. The impending sale of NorthWestern Corporation requires me to devote additional time and attention to these matters, further impairing my ability to travel away from the corporate headquarters to give a deposition.

5.      Because of my schedule, I am not available to be deposed on April 24, 2007 in any location. However, a deposition in Delaware would create an intractable conflict in my schedule as the travel time would impact several other obligations.

6.      It would be unduly burdensome for the Plaintiff to force me to travel to Wilmington, Delaware to the deposition. Wilmington is well over a thousand miles from Sioux Falls. There are no direct airline flights from Sioux Falls to Wilmington, or any other city on the East Coast. As a result, any trip from Sioux Falls to Wilmington will be composed of long flights, multiple stops and significant layovers. Upon information and belief, the average air travel time from Sioux Falls, South Dakota to Wilmington, Delaware is 9 to 10 hours.

7.      As a result, giving my deposition in Wilmington, Delaware will require me to travel and be away from my home and my work for a minimum of three days.

8.      Given the demands of my daily management responsibilities at NorthWestern Corporation, my already full schedule, and the impending sale of the company, it would be extremely disruptive to have to travel from South Dakota to Delaware to attend a deposition. This hardship is only exacerbated if the Plaintiffs in this litigation are permitted to depose me on two separate occasions as they are currently demanding.

Further your affiant sayeth not.

_____
Michael J. Hanson

Subscribed and sworn to before me this 19th day of April, 2007.

(Notarial Seal)

_____
Notary Public for the State of South Dakota
Printed Name: Corinne Bohrer
Residing at: 125 S. Dakota Ave
My Commission Expires: January 30, 2009

*EXHIBIT G*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | Civil Action No. 05-499-JJF |
| Plaintiff, | |
| v. | **AFFIDAVIT OF ERNEST J. KINDT** |
| MIKE J. HANSON and ERNIE J. KINDT | |
| Defendants. | |

STATE OF MONTANA    )

                     :ss

County of Butte, Silver Bow  )

       ERNEST J. KINDT, first being duly sworn upon his oath deposes and says:

1.     I live in Butte, Montana.

2.     At all times material to the Complaint in this action, I was an officer of Clark Fork and Blackfoot, LLC (f/k/a Montana Power LLC and NorthWestern Energy LLC), working in and with its Montana utility business in its Butte, Montana office.

3.     Clark Fork and Blackfoot, LLC  is a Montana limited liability company with its principal place of business in Butte, Montana, and is a subsidiary of NorthWestern Corporation.

4.   NorthWestern Corporation has its principal place of business in Sioux Falls, South Dakota.

5.   Between 1975 and 2002, I was employed by The Montana Power Company, working with its Montana electric and gas utility business.  When The Montana Power Company sold its utility assets to NorthWestern Corporation in February 2002, I became an employee of NorthWestern Energy LLC, and after November 15, 2002 I became an employee of NorthWestern Corporation.  At all times I was employed in the Butte, Montana office.

6.   I retired from active employment with NorthWestern Corporation on or about June 30, 2003.

7.   I currently work on an independent contract basis for NorthWestern Corporation in the corporation's Butte, Montana office.

8.   It is unduly burdensome for me to travel to Wilmington, Delaware to give my deposition in these matters.  Wilmington, Delaware is more than two thousand miles from Butte, Montana.  There are no direct airline flights from Butte to Wilmington, or any airport in the vicinity of Wilmington.  In fact, airline carriers servicing Butte fly directly only to Bozeman, Montana, Salt Lake City, Utah, and Seattle, Washington.  As a result, any trip from Butte to Wilmington will be composed of long flights, multiple stops and numerous layovers.   Upon information and belief, the average flight time from Butte, Montana to Wilmington, Delaware is approximately 12 and a half hours.

9.   Due to Montana's relatively remote location and the fact that limited airline carriers service Montana generally, and fewer service Butte, specifically, it will take me a full day to travel to Wilmington and a full day to travel home.  As a result, giving my deposition in Wilmington, Delaware will require me to travel and be away from my home and my work for a minimum of three days.

Further your affiant sayeth not.

_Ernest J Kindt_
Ernest J. Kindt

Subscribed and sworn to before me this 19th day of April, 2007.

_Tracy Lowney Killoy_
Notary Public for the State of Montana
Printed Name: TRACY Lowney Killoy
Residing at: Butte, Montana
My Commission Expires: 9-08-2008

(Notarial Seal)

*EXHIBIT H*

**Page 1**

```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------x
                Chapter 11
In re:          Case No.
NORTHWESTERN CORPORATION,     03-12872 (CGC)
                Debtor.
-------------------------------x

        July 27, 2004
        11:59 A.M.

    Deposition of MAGTEN ASSET MANAGEMENT

GROUP, by TALTON EMBRY, taken by Debtor, pursuant

to Notice and Agreement, at the offices of Paul,

Hastings, Janofsky & Walker LLP, 75 East 55th

Street, New York, New York 10022 before Anneliese

R. Tursi, a Registered Professional Reporter and

Notary Public within and for the State of New

York.
```

**Page 2**

```
APPEARANCES:
 GREENBERG TRAURIG, LLP
   Attorneys for Debtor
   Brandywine Building
   1000 West Street, Suite 1540
   Wilmington, Delaware 19801
 BY: SCOTT D. COUSINS, ESQ.
   WILLIAM E. CHIPMAN, JR., ESQ.

 PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
   Attorneys for Creditors Committee
   1285 Avenue of the Americas
   New York, New York 10019-6064

 BY: MIKHAIL RATNER, ESQ.

 NIXON PEABODY LLP
   Attorneys for the Law Debenture
   100 Summer Street
   Boston, Massachusetts 02110-2131

 BY: JOHN V. SNELLINGS, ESQ.

 FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP
   Attorneys for Magten Asset Management
   One New York Plaza
   New York, New York 10004-1980

 BY: BONNIE STEINGART, ESQ.
   GARY L. KAPLAN, ESQ.
   JORDANA NADRITCH, ESQ.

 ALSO PRESENT:

   THOMAS J. KNAPP
   NorthWestern
   Daniel R. Fisher, Esq.
   Law Debenture
```

**Page 3**

```
 1           T. Embry
 2  T A L T O N   E M B R Y,
 3      having been first duly sworn by the
 4      Notary Public (Anneliese R. Tursi), was
 5      examined and testified as follows:
 6  EXAMINATION BY MR. COUSINS:
 7      Q.  My name is Scott Cousins.
 8          Could you state your full name
 9  for the record, please.
10      A.  Talton, T-A-L-T-O-N, Robert,
11  R-O-B-E-R-T, Embry, E-M-B-R-Y.
12      Q.  Mr. Embry, could I have your
13  business address and phone number, please?
14      A.  410 Park Avenue, 14th floor, New
15  York, New York, 10022. 212-813-0900.
16      Q.  And by whom are you employed?
17      A.  I'm not employed.
18      Q.  Are you a consultant?
19      A.  No.
20      Q.  What are, other than investments,
21  what are your sources of income?
22      MS. STEINGART: I'm sorry, you
23  are asking him working income or
24  wealth?
25      MR. COUSINS: Working income. I
```

**Page 4**

```
 1           T. Embry
 2  don't care about his wealth.
 3      MS. STEINGART: Okay.
 4      A.  None.
 5      Q.  What is your relationship to
 6  Magten?
 7      A.  I own it.
 8      Q.  What is your percentage of
 9  ownership in Magten?
10      A.  100 percent.
11      Q.  Do you have any unpaid positions
12  with Magten?
13      A.  I call myself chairman.
14      Q.  Do you have any employee or
15  officer positions with Magten?
16      A.  I have a secretary.
17      MS. STEINGART: I'm sorry, do you
18  mean does he have positions or did he
19  have others in positions?
20      MR. COUSINS: No, he --
21      MS. STEINGART: You want to know
22  if he holds any other titles besides
23  chairman in connection with Magten?
24      MR. COUSINS: Yes.
25      A.  Not that I'm aware of.
```

1 (Pages 1 to 4)

Talton Embry
July 27, 2004

<table>
<tr><td>

' Page 5

1          T Embry
2      Q.   And how many employees does
3   Magten have?
4      A.   One.
5      Q.   Who is that?
6      A.   Jean Colditz, C-O-L-D-I-T-Z.
7      Q.   In what is Jean's position?
8      A.   She is a secretary.
9      Q.   Mr. Embry, what did you do to
10  prepare for today's deposition?
11     A.   I met with my counsel beforehand.
12  I went over the documents that I had submitted
13  to you, and we talked about what questions
14  might be asked.
15     Q.   Did you only review the documents
16  that were submitted?
17     A.   I believe that's correct.
18     Q.   Have you ever been deposed
19  before?
20     A.   I have.
21     Q.   And what context, please?
22     A.   Numerous times.
23     Q.   Can you start with the most
24  recent?
25     A.   I don't know what the most recent

</td><td>

Page 7

1          T. Embry
2      Q.   By whom?
3      A.   Magten Asset Management.
4      Q.   How long have you been with
5   Magten?
6      A.   1978.
7      Q.   And since 1978 have you always
8   owned 100 percent of the equity of Magten?
9      A.   No.
10     Q.   In 1978, what was the equity
11  ownership of Magten?
12     A.   I think I owned 50 percent and a
13  fellow, Angus Douglass owned the other 50
14  percent.
15     Q.   When did Mr. Douglass dispose of
16  his interests in Magten?
17     A.   Sometime in the early '80s.
18     Q.   Did he transfer that interest to
19  you?
20     A.   Yes.
21     Q.   So since the early '80s, you have
22  owned 100 percent of Magten?
23     A.   Yes.
24     Q.   Now, what was your role with
25  respect to the Unocal case?

</td></tr>
<tr><td>

Page 6

1          T. Embry
2   was. I'm sure there have been some between
3   1993 and today, but I can't remember what they
4   are.
5          In 1993 I had a disciplinary
6   action with Securities and Exchange Commission
7   and was deposed on that.
8          During that same time frame, I
9   was a witness for the U.S. Attorney's Office
10  in a securities fraud.
11         The first time that I can
12  remember being deposed was in the Unocal
13  takeover, I think, by Carl Icahn going back in
14  the '80s.
15     Q.   To what did the disciplinary
16  action by the S.E.C. relate?
17     A.   It related to my being -- signing
18  consent that I had taken an opportunity that
19  should have been my client's, that I returned
20  money that I had made on it, plus interest,
21  and on paper -- my books and records were not
22  perfect.
23     Q.   And were you employed at the time
24  of this disciplinary action?
25     A.   Yes.

</td><td>

Page 8

1          T. Embry
2      A.   I had proffered to buy
3   subordinated debt in the new company to be
4   formed in the buyout of Unocal.
5      Q.   Did you get embroiled in the
6   Chance report litigation over Unocal with
7   Icahn, is that --
8          MS. STEINGART:  I object to form.
9      Do you want to ask if he was a witness
10     or a party in the dispute, maybe that
11     will help.
12     Q.   Why were you asked to testify in
13  connection with Unocal?
14     A.   Because I had offered to buy some
15  of the subordinated securities of the new
16  company.
17     Q.   And who deposed you?
18     A.   Skadden Arps.
19     Q.   Who was -- who was Skadden
20  representing?
21     A.   Unocal.
22     Q.   Did you testify at trial?
23     A.   No.
24     Q.   Does Magten have any affiliates?
25     A.   What is an affiliate?

</td></tr>
</table>

2 (Pages 5 to 8)

Talton Embry
July 27, 2004

Page 9

1    T. Embry
2    Q.   Let me show you a definition of
3    affiliate.
4         MR. COUSINS:  Can you mark as D-1
5    a document Order Permitting Securities
6    Trading Upon Establishment of Ethical
7    Wall in the NorthWestern Corp.
8    bankruptcy.
9         (Document entitled "Order
10        Permitting Securities Trading
11        Upon Establishment of Ethical
12        Wall (Re: Docket No. 257)" marked
13        Debtor's Exhibit 1 for
14        identification, as of this date.)
15        MS. STEINGART:  Do you want to
16   direct his attention to something?
17        Q.   Mr. Embry, if it is easier, the
18   reporter will mark it and then both you and
19   your counsel can have a copy.
20        If you turn to about five pages
21   in, there is a page marked "Definitions" and
22   there is a definition of affiliate.
23        Could you read that definition to
24   yourself and let me know if you have an
25   understanding as to what an affiliate is?

Page 10

1    T. Embry
2    (Witness and counsel confer.)
3         MR. COUSINS:  Let the record
4    reflect that deponent referred --
5         MS. STEINGART:  Consulted with
6    counsel.
7         MR. COUSINS:  Consulted with
8    counsel.
9    A.   Not that I'm aware of.
10   Q.   So that was a response to my
11   question, does Magten have any affiliates?
12   A.   Yes.
13   Q.   What are your day-to-day duties
14   and responsibilities with respect to Magten?
15   A.   I don't have any duties.
16   Q.   Do you have any responsibilities?
17   A.   I invest money.
18   Q.   What type of business is Magten
19   in?
20   A.   Buys and sells investments.
21   Q.   Any particular investments?
22        MS. STEINGART:  Excuse me.  You
23   want to know what the holdings of
24   Magten are, because I'm not going to
25   let him describe other things in which

Page 11

1    T. Embry
2    they have an interest until I ascertain
3    if they are publicly reported.  I'm not
4    going to let him talk about the other
5    things.
6         If you want to ask him if he
7    invests in equities or debt or that
8    kind of thing or the full panoply, but
9    before we get into other individual
10   investments, I would have to consult
11   with him.
12        MR. COUSINS:  I don't know what
13   that means.
14   Q.   What type of investments does
15   Magten invest in?
16   A.   Bonds, preferreds, stocks.
17   Q.   Does it have any other types of
18   investments other than securities?
19   A.   It has an investment in one
20   partnership.
21   Q.   What is the business of the
22   partnership?
23   A.   Owns athletic clubs.
24   Q.   What types of bonds does Magten
25   invest in?

Page 12

1    T. Embry
2         MS. STEINGART:  I'm sorry, I
3    didn't hear the last word.
4    Q.   What types of bonds does Magten
5    invest in?
6    A.   Generally lower grade bonds.
7    Q.   Does Magten invest in any bonds
8    that trade at par?
9    A.   We have.
10   Q.   Do you currently hold any par
11   investments in bonds?
12   A.   Yes.
13   Q.   Now, your investment in bonds,
14   are those acquired off of exchanges, public
15   exchanges?
16   A.   Is that today?
17   Q.   Yes.
18   A.   No.
19   Q.   The bonds that you currently
20   hold, how are they acquired?
21   A.   Purchased through a broker.
22   Q.   You mentioned preferred.  Were
23   you referring to preferred stock or some
24   preferred type of debt instrument?
25   A.   Preferred stock.

3 (Pages 9 to 12)

Talton Embry
July 27, 2004

Page 13

1          T. Embry
2      Q.   Preferred stock that Magten
3  currently holds, how was that acquired?
4      A.   Through open market purchases.
5      Q.   And does Magten hold any stock
6  other than preferred?
7      A.   Yes.
8      Q.   And how does Magten acquire stock
9  other than preferred?
10     A.   Open market purchases.
11     Q.   Other than Magten's interest in
12 the partnership you referred to, does Magten
13 hold any other investments other than bonds,
14 preferred stock, stock?
15     A.   Not that I'm aware of.
16     Q.   When did Magten start investing
17 in the lower grade securities?
18     A.   1978.
19     Q.   Would you say that Magten is
20 experienced in investing in lower grade
21 securities?
22     A.   I would say that we have done it.
23     Q.   Well, you have done it since
24 1978, right?
25     A.   Right.

Page 14

1          T. Embry
2      Q.   And you are doing it today,
3  right?
4      A.   Right.
5      Q.   You wouldn't say that you are
6  experienced in lower grade investments?
7      A.   I may be in the business, but
8  naive.
9      Q.   So would you consider yourself a
10 naive investor?
11     A.   I don't know. Experience is not
12 a word that I know the exact definition.
13     Q.   How would you characterize the
14 acumen of Magten with respect to investments?
15     A.   What do you mean?
16     Q.   Would you consider yourself a
17 novice?
18     A.   No.
19     Q.   Would you consider yourself a
20 veteran?
21     A.   I -- I have been at it a long
22 time, yes. Veteran is a good word.
23     Q.   Would you consider Magten a
24 sophisticated investor?
25     A.   There is an exact definition of

Page 15

1          T. Embry
2  that and I'm not sure that we are or not.
3      Q.   Why does Magten invest in lower
4  grade investments?
5      A.   In the hopes of making a profit.
6      Q.   And is Magten profitable?
7      A.   No.
8      Q.   When was the last time Magten was
9  profitable?
10     A.   It was profitable last year, but
11 not the year before.
12     Q.   And for the first six months of
13 2004, has Magten been profitable?
14     A.   No.
15     Q.   Do you understand the risks
16 associated with trading in lower grade
17 investments?
18         MS. STEINGART: Object to the
19     form.
20     Q.   You can answer.
21     A.   Not always.
22     Q.   You have been in business since
23 1978 and you don't understand risks associated
24 with trading in lower grade investments?
25         MS. STEINGART: Object to the

Page 16

1          T. Embry
2     form.
3      Q.   You can answer.
4      A.   Repeat the question.
5          MR. COUSINS: Could you read that
6     back, please.
7          (Record read.)
8      A.   Not all of them.
9      Q.   Who made the decision for Magten
10 to acquire the NorthWestern QUIPS?
11         Do you know what I mean by the
12 QUIPS?
13     A.   Yes, I do.
14     Q.   Who made that decision?
15     A.   I did.
16     Q.   What was that decision based
17 upon?
18     A.   Based upon my review of the
19 company.
20     Q.   And what did you do to review the
21 company?
22     A.   I read the 10-Q's and 10-K,
23 10-K's, 2001, 2002, and I guess the first
24 quarter of 2003.
25     Q.   Did you review the April 1, 2002

4 (Pages 13 to 16)

Talton Embry
July 27, 2004

**Page 17**

```
 1            T. Embry
 2  10-K?
 3       A.   April 1st which year?
 4       Q.   2002.
 5       A.   I believe so.
 6       Q.   Did you review the April 16, 2003
 7  10-K?
 8       A.   I can't certify the date, but I
 9  reviewed the 2002 10-K.
10       Q.   Well, when you say the 2002 10-K,
11  are you talking about the 10-K that came out
12  in 2002?
13       A.   No, 10-K for fiscal year,
14  calendar year 2002.
15       Q.   So you read a 10-K in 2003 that
16  related to fiscal year 2002?
17       A.   Yes, sir.
18       Q.   Let's talk about due diligence
19  that Magten typically performs before making
20  an investment.
21            Do you normally look at S.E.C.
22  filings?
23       A.   I do.
24       Q.   Do you review any other public
25  filings?
```

**Page 19**

```
 1            T. Embry
 2       A.   No.
 3       Q.   Is that, you never use outside
 4  professionals?
 5       A.   I have on other times.
 6       Q.   In connection with the QUIPS, did
 7  you use outside professionals?
 8       A.   I hired Fried, Frank, Harris
 9  Shriver & Jacobson.
10       Q.   You hired them prior to your
11  acquisition of the QUIPS?
12       A.   After my acquisition of the
13  QUIPS.
14       Q.   So in connection with your
15  investment in the QUIPS, you were the only
16  Magten officer that reviewed the documentation
17  prior to investing in the QUIPS?
18            MS. STEINGART: I object to the
19       form.
20       A.   Yes.
21       Q.   Have you ever hired an investment
22  banker in connection with a potential
23  acquisition?
24            MS. STEINGART: A potential
25       acquisition?
```

**Page 18**

```
 1            T. Embry
 2       A.   What I'm aware of.
 3       Q.   Do you typically review an
 4  indenture for indebtedness?
 5       A.   I do.
 6       Q.   And for preferred stock, do you
 7  typically review the stock certificates with a
 8  designation of rights?
 9            MS. STEINGART: Designation of?
10            MR. COUSINS: Rights.
11       A.   It depends upon the situation.
12       Q.   What is that dependent upon?
13       A.   It is dependent upon generally
14  whether a company is in arrears or not.
15       Q.   And if a company is in arrears,
16  what do you do?
17       A.   I look to see what the
18  consequences of the arrearage is.
19       Q.   If there is an arrearage, would
20  you then look at the stock certificate or
21  designation of rights?
22       A.   Generally, yes.
23       Q.   Does Magten use outside
24  professionals in connection with its review of
25  potential investments?
```

**Page 20**

```
 1            T. Embry
 2            MR. COUSINS: Yes. Of
 3       securities.
 4       A.   No.
 5       Q.   Accountants. The same question.
 6       A.   No.
 7       Q.   When did Magten first acquire an
 8  interest in any of the NorthWestern
 9  securities?
10       A.   The end of April 2003.
11       Q.   And what did Magten acquire?
12       A.   It acquired shares of preferred
13  stock of Montana Power.
14       Q.   How many shares?
15       A.   Approximately a million.
16       Q.   And you acquired those shares
17  over the open market?
18       A.   I did.
19       Q.   Subsequent to the acquisition of
20  the preferred shares, has Magten bought
21  additional preferred shares?
22       A.   I don't -- I don't understand the
23  question.
24       Q.   How many shares of preferred
25  shares of NorthWestern does Magten currently
```

5 (Pages 17 to 20)

212-268-2590

*EXHIBIT I*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORP. and LAW DEBENTURE TRUST COMPANY OF NEW YORK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 04-1494 (JJF) |
| NORTHWESTERN CORPORATION, | ) ) | |
| Defendant. | ) ) ) | |
| MAGTEN ASSET MANAGEMENT CORP., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 05-499 (JJF) |
| MICHAEL J. HANSON and ERNIE J. KINDT, | ) ) ) | |
| Defendants. | ) ) | |

**MAGTEN ASSET MANAGEMENT CORPORATION'S RESPONSE TO MICHAEL J.
HANSON AND ERNIE J. KINDT'S FIRST SET OF INTERROGATORIES**

     Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP"), Magten Asset Management Corporation ("Magten") hereby objects and responds to Defendants Michael J. Hanson ("Hanson") and Ernie J. Kindt's ("Kindt") First Set of Interrogatories to Magten, dated February 28, 2007, served in the above captioned action (the "Interrogatories"), as follows. Magten reserves (i) the right to object on any grounds (including but not limited to competence, relevance, materiality, privilege, confidentiality, authenticity or admissibility) to the use of these answers in any proceeding or in the trial of this or any other matter, (ii) the right to object to any other discovery concerning the subject matter of the Interrogatories, and (iii) the right but not the obligation (except as required by law or rule) to correct, revise, clarify, supplement or amend these answers and objections.

NorthWestern's confirmed chapter 11 Plan are a matter of public record and speak for themselves. The current market value of the shares being maintained in reserve for Disputed Claims varies depending on current market conditions.

**INTERROGATORY NO. 22**

Please state the amount of damages which you are seeking from Michael Hanson and describe with specificity how you arrived at that amount.

**RESPONSE AND OBJECTIONS TO INTERROGATORY NO. 22**

At present, Magten owns 1,098,431 QUIPS, each of which has a face value of $25. Assuming currently accrued and unpaid dividends (through and including March 31, 2007) compounded into the principal, NorthWestern owes $34.93 on account of each QUIP. Therefore, the total amount of compensatory damages owed with respect to Magten's current holdings as of March 31, 2007 is $38,368,194.83, plus applicable pre-judgment interest on each missed dividend from the date it should have been paid and applicable pre-judgment interest on the principal from September 14, 2003. In addition, Magten is owed consequential and incidental damages, including but not limited to fees and expenses, in an amount it has not yet calculated. Magten is also owed punitive damages in an amount to be determined by the jury. In addition, there are other Non-Accepting QUIPS Holders that are entitled to damages calculated on the same basis, plus applicable pre-judgment interest and fees and expenses. Because Magten is asserting the rights of Montana Power Capital I, it seeks to recover damages on behalf of other Non-Accepting QUIPS Holders.

**INTERROGATORY NO. 23**

Please state the amount of damages which you are seeking from Ernie Kindt and describe with specificity how you arrived at that amount.

17

*EXHIBIT J*

## MAGTEN ASSET MANAGEMENT CORPORATION

BUY / SELL

TRADE DATE: 7/2/03

TOTAL POSITION: ~700

SECURITY NAME: Montana Power Bd. #

PRICE: 5.996 ✓

COMMISSION: 60

SETTLE DATE: 7/11/03

BROKER: Econ Stone

BKR. CODE: ESIII

BKR. NAME: Econ Stone

BKR. NAME: Stevens Brot. 1%

TICKER: MTT

| | AMOUNT | PRINCIPAL | INTEREST | SEC. FEE | COMM | NET | TRANSACT # |
|---|---|---|---|---|---|---|---|
| REDACTED | | | | | | | |
| Eleanor Embry — ELEANOR | | | | | | | |
| Embry & Kamm — EMB KAMM | | | | | | | |
| EmbryTrDoris — EMBTRDOR | | | | | | | |
| REDACTED | | | | | | | |
| Magten Partners — MAGPART | | | | | | | |
| Magten Group Trust — MAGTENGT | | | | | | | |
| M.T. Embry IRA — MTE IRA | | | | | | | |
| REDACTED | | | | | | | |
| Oliver Embry — OLIVER | | | | | | | |
| Sebonac Road — SEBONAC | | | | | | | |
| T.R. Embry IRA — TRE IRA | ~700 | 94,140.34 | — | | 942.00 | 95,082.34 | #562341 |
| Tre Embry Per — TRE PER | | | | | | | |
| TOTALS | | | | | | | |

AUTHORIZED SIGNATURE: _____

Econ /
Breakdown & Credit

MAGTEN (H&K)    000068

MAGTEN ASSET MANAGEMENT CORPORATION   To: Fred Berg
410-837-5888

(BUY) SELL

TRADE DATE: 12/4/03

TOTAL POSITION: 9,300

SECURITY NAME: Mirant Power Plc

PRICE: 5.60 m

COMMISSION: _____

SETTLE. DATE: 12/4/03

BROKER: Fred berg Azul

BKR. CODE: TRAD

TICKER: _____

BKR. NAME: R. Schnal

| AMOUNT | PRINCIPAL | INTEREST | SEC FEE | COMM | NET | TRANSACT# |
|---|---|---|---|---|---|---|
| 4,320 | 67,080.00 | — | — | — | 67,080.00 | # 56.98.17 |
| 1,000 | 15,600.00 | — | — | — | 15,600.00 | #18 |
| 500 | 7,800.00 | — | — | — | 7,800.00 | #19 |
| 1,000 | 15,600.00 | — | — | — | 15,600.00 | #56,33.80 |
| 1,100 | 17,160.00 | — | — | — | 17,160.00 | #56,39.21 |
| 1,400 | 21,840.00 | — | — | — | 21,840.00 | #56,39.23 |
| TOTALS | 145,080.00 | | | — | 145,080.00 | |

REDACTED

HIGHLY CONFIDENTIAL

MAGTEN (H&K)   000167