IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORP. AND LAW DEBENTURE TRUST COMPANY OF NEW YORK, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 04-1494 (JJF) |
| v. | ) ) | |
| NORTHWESTERN CORPORATION, | ) ) | |
| Defendant. | ) | |
| MAGTEN ASSET MANAGEMENT CORP., | ) ) | |
| Plaintiff, | ) | |
| v. | ) ) | |
| | ) | Civil Action No. 05-499 (JJF) |
| MICHAEL J. HANSON and ERNIE J. KINDT, | ) ) | |
| Defendants | ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' JOINT MOTION FOR A PROTECTIVE ORDER**

Magten Asset Management Corp. ("Magten") and the Law Debenture Trust Company of

New York ("Law Debenture" and, together with Magten, the "Plaintiffs"), by and through their

undersigned counsel, respectfully submit this Memorandum of Law in Opposition to the

Defendants' Joint Motion for a Protective Order (the "Motion") (D.I. 151 in Case 04-1494; and

D.I. 185 in Case 05-499).

## I.    PRELIMINARY STATEMENT

This dispute was precipitated by the refusal of the individual defendants Hanson and

Kindt to permit their depositions to be taken in Wilmington, the venue they selected for this

1

litigation.  Magten sued them in the District of Montana, but they successfully moved (over

Magten's objection) to transfer the case to this District.  They obtained that relief based on a

sworn statement by their lawyer Kimberly Beatty (who remains on as their lead counsel in this

District and appears in the signature block for the motion) that it would be "no less convenient

for Mr. Kindt or for Mr. Hanson to be available to the Delaware courts if this litigation is . . .

transferred to Delaware."  *See* D.I. 56, #5 at ¶5 in Case 05-499 (formerly D.I. 35 on District of

Montana Docket, Case 04-24).  Having chosen this forum over Magten's objection, they cannot

credibly now claim it is too inconvenient to testify here, but that is exactly what they have done.


NorthWestern likewise seeks a declaration that witnesses under its control need not

testify in Delaware.  But NorthWestern also chose Delaware as the forum for this litigation.

Because NorthWestern filed its chapter 11 case here (rather than in the District of South Dakota,

where it is headquartered and which would also have been a proper venue for its bankruptcy

case), and since the chapter 11 case was pending in this District, Plaintiffs were compelled to file

their adversary proceeding here.  Again, having chosen the forum, they cannot now credibly

claim it is too inconvenient for their witnesses.  Indeed, it was only the pendency of

NorthWestern's chapter 11 case (and thus Plaintiffs' litigation against NorthWestern) in this

District that made Hanson and Kindt's transfer motion plausible in the first place.


After attempting unsuccessfully for approximately one month to reach a consensual

agreement with respect to dates and locations for the depositions of Hanson and Kindt, on April

12, 2007, the Plaintiffs filed consolidated notices for their depositions for April 23, 2007 and

April 24, 2007, respectively, to take place in Wilmington.[1]  *See* D.I. 136-37 in Case 04-1494; and

D.I. 171-72 in Case 05-499.  During the relevant time period in these litigations, both Messrs.

Hanson and Kindt were officers of NorthWestern Energy LLC , now renamed Clark Fork and

Blackfoot LLC ("Clark Fork"), a Montana-based LLC headquartered in Montana, which was a

wholly owned subsidiary of defendant NorthWestern.  The November 2002 transfer of 1.5

billion dollars worth of assets from Clark Fork to NorthWestern for inadequate consideration,

thereby prejudicing Clark Fork's creditors, is the key transaction underlying both of these

litigations.  While Mr. Hanson was CEO of Clark Fork at the relevant time, as noted in

Defendants' memorandum of law in support of the Motion ("Def. Mem."), he is now the CEO

and a director of NorthWestern.  Def. Mem. at 7.  Mr. Kindt currently provides services to

NorthWestern as a consultant to its utility business based in Butte, Montana.  *Id.*

On April 19, 2007, Defendants filed the Motion seeking to (i) prevent "Plaintiffs from

deposing NorthWestern's employees and contractors at any location other than NorthWestern's

principal place of business in Sioux Falls, South Dakota"; and (ii) preventing "NorthWestern's

employees and contractors from being deposed twice in the consolidated discovery."  By

operation of D. Del. LR 30.2, the filing of the Motion stayed the noticed depositions and excused

the deponents from appearing until the Motion is ruled upon.

## II.    BACKGROUND

NorthWestern filed for bankruptcy in the United States Bankruptcy Court for the District

of Delaware (the "Bankruptcy Court") on September 14, 2003, and emerged from chapter 11 on

---

[1]     Notwithstanding the issuance of these deposition notices, Plaintiffs remained willing, as always, to work
with Defendants to accommodate dates and times that would minimize inconvenience to the deponents.

November 1, 2004.  In April 2004, during NorthWestern's bankruptcy case, Magten and Law

Debenture, on behalf of certain preferred securities known as the Series A 8.45% Quarterly

Income Preferred Securities (the "QUIPS") issued by Clark Fork, commenced an adversary

proceeding with respect to NorthWestern's fraudulent transfer in November 2002 of

substantially all of the key utility assets of Clark Fork — electric, natural gas and propane utility

assets — to its corporate parent NorthWestern without adequate consideration (the "Transfer").

Magten and Law Debenture have also commenced a lawsuit to obtain redress for the wrongful

actions of Messrs. Hanson and Kindt, both of whom were officers of Clark Fork on November

15, 2002, and enabled the Transfer on that date.  The Transfer unjustly enriched NorthWestern

by hundreds of millions of dollars while destroying Clark Fork's solvency and thus its ability to

meet its obligations to its creditors including Magten and the other QUIPS holders.  Hanson and

Kindt breached their fiduciary duties under Montana law by approving and enabling the Transfer

in their capacities as officers of Clark Fork.

Counsel for Magten has engaged in lengthy and exhaustive communications with counsel

for NorthWestern and counsel for Hanson and Kindt in an effort to reach a mutually agreeable

schedule for various depositions to be taken in connection with fact discovery in the litigations.

This back and forth communication has been necessitated by the complexity of coordinating all

of the various depositions that need to be scheduled, including the depositions of Messrs. Hanson

and Kindt.  The scheduling of depositions has been made more complicated by the fact that

virtually NorthWestern's entire senior management team for the relevant time period is no longer

with the company and, therefore, many of the deponents are non-parties represented by their own

counsel whose own scheduling issues need to be accommodated (and have less incentive to

compromise because they are not seeking any scheduling concessions in return).[2]

Deposition scheduling has been further complicated by NorthWestern's refusal to

produce hundreds upon hundreds of responsive non-privileged documents along with its

unjustified demand for the return of documents that it has already produced, which are both the

subject of Magten's pending emergency motion to compel filed with the District Court on April

13, 2007 (the "Emergency Motion"), which was fully briefed as of May 2, 2007.[3]  *See* D.I. 139,

179 in Case 04-1494; D.I. 175, 213 in Case 05-499.

As Defendants admit in their memorandum of law, counsel for Magten first contacted

Defendants' counsel on March 14, 2007, to seek mutually convenient dates for the  depositions

of Hanson and Kindt, as well as other NorthWestern-affiliated witnesses.  *See* Def. Mem. at 5;

*see also* D.I. 147 in Case 04-1494; D.I. 182 in Case 05-499 at Exh. A.  Plantiffs' counsel

consistently indicated that these depositions must take place in Wilmington absent agreement to

the contrary (although we suggested the possible alternative of New York, where lead counsel

for both Magten and NorthWestern are located).  *See* D.I. 155 in Case 04-1949; D.I. 189 in Case

05-499 at Exh. 4.

---

[2]    As explained in a recent filing (D.I. 174 in Case 04-1494; D.I. 208 in Case 05-499), almost the entire senior NorthWestern management team as of the date of the transfer has agreed to pay massive fines to the SEC and be barred from serving as officers or directors of any public company for five years, rather than contest the charges of intentional securities fraud the SEC brought against them in connection with NorthWestern's false and misleading 2002 financial statements – the same financial statements it used to facilitate the Transfer.

[3]    Among the relief requested in the Emergency Motion is a request for extending the deadline for completing depositions until a time following the production of the documents in dispute.  Subsequently, on May 2, 2007, Plaintiffs filed a motion for amendment of the scheduling order (the "Motion for Amendment") (D.I. 176 in Case 04-1494; D.I. 210 in Case 05-499) requesting that the fact discovery period be extended for certain third-party witnesses.

120087.01600/40168670v.1

In addition, due to the unresolved document disputes referred to above that are the

subject of the Emergency Motion, counsel for Magten was constrained to inform Defendants that

going forward with the depositions of Hanson and Kindt before production of the documents in

dispute would require the depositions to be subsequently resumed if and when NorthWestern

ultimately provides such documents to Plaintiffs.  *See id.*

On April 11, 2007, counsel for NorthWestern sent counsel for Magten a letter stating that

Hanson and Kindt's depositions could only be taken in Sioux Falls, South Dakota or in

Minneapolis, and that they do not agree that any of the depositions would remain open until the

issue of privilege is resolved.  *See* D.I. 155 in Case 04-1949; D.I. 189 in Case 05-499 at Exh. 5.

Indeed, after further correspondence between counsel as to the dates of the respective

depositions, counsel for NorthWestern sent counsel for Magten a subsequent e-mail that same

day stating that "We can't discuss Wilmington."  *See* D.I. 155 in Case 04-1949; D.I. 189 in Case

05-499 at Exh. 8.

While Plaintiffs had already conceded to Defendants that they are willing to negotiate

dates of deposition, because of a breakdown in discussions and compromise between the parties,

Plaintiffs were constrained to file formal deposition notices pursuant to D. Del. LR 30.1

(requiring that a deponent have at least 5 days notice of a deposition) to protect Plaintiffs' right

to take the depositions within the discovery schedule set by the Court.  *See* D.I. 136-37 in Case

04-1494; D.I. 171-72 in Case 05-499.  Plaintiffs, however, intended that the parties would

continue to work to resolve the dates for deposition.  Accordingly, the issue before the Court is

not the specific date upon which Messrs. Hanson and Kindt (or the other NorthWestern-affiliated

witnesses) will agree to appear to be deposed, as Plaintiffs believe they can reach agreement to

6

take the depositions at a mutually convenient time.  Rather, the key issue in dispute is the

location of the depositions.  As set forth below, absent satisfactory mutual agreement of the

parties, there is no basis for Defendants' who chose Delaware as the forum for these disputes to

refuse to testify in Delaware.

## II.    DISCUSSION

Fed. R. Civ. P. 30(a)(1) provides that a party may take the deposition of any person,

including a party, without leave of court.  The examining party may set the location of the

deposition of the other party wherever the examining party wishes, subject to the power of the

court to grant a protective order under Rule 26(c)(2).  *See* 8A Charles A. Wright, Arthur R.

Miller & Richard L. Marcus, *Federal Practice and Procedure: Civil 2D* §2112 (2007); *see also*

*White v. Chrysler Corp.*, 1994 WL 114902 (E.D. Pa. April 4, 1994); *Muehlberger v. Maxwell,*

1990 WL 4411, *1 (E.D. Pa. Jan. 19, 1990).


In ruling on the application for protective order here, the Court should be guided by well-

reasoned authority that these depositions should proceed in Delaware based upon: (i) Messrs.

Hanson and Kindt's successful motion to transfer Case 05-499 to Delaware from Montana, and,

in connection therewith, their agreement to personally submit to the jurisdiction of the Delaware

courts (*see* D.I. 56, #5 at ¶4 in Case 05-499 (formerly D.I. 35 on District of Montana Docket,

Case 04-24)); and (ii) NorthWestern's selection of Delaware as the venue for the filing of its

bankruptcy petition.[4]

---

4      As of the filing date of the Motion, only Messrs. Hanson and Kindt had received deposition notices.
       However, the relief sought by the Motion – to prevent any NorthWestern employee of contractor being
       deposed at any location other than NorthWestern's principal of business in Sioux Falls, South Dakota –
       arguably sought an advisory opinion as to depositions not yet noticed.  For this reason and to avoid the

Defendants have failed to show that "good cause" and "justice requires" the entry of an order protecting the movants from "annoyance, embarrassment, oppression, or undue burden or expense," such that their depositions should not be taken in Delaware – the forum they each selected.  Fed. R. Civ. P. 26(c).

## A.   THE INDIVIDUAL DEFENDANTS HANSON AND KINDT SELECTED DELAWARE AS THE FORUM FOR THIS LITIGATION

The District of Delaware, like most jurisdictions, adheres to the well-established principle that "a plaintiff having selected a particular forum for the adjudication of his case should be prepared to answer a notice of deposition in that locality."  *Ellis Air Lines v. Bellanca Aircraft Corp.*, 17 F.R.D. 395 (D. Del. 1955); *Messelt v. Security Storage Co.*, 10 F.R.D. 509, 509 (D. Del. 1950) ("Several authorities have held that where a non-resident plaintiff chooses his forum he makes himself available for examination there…"); *In re Barrett Estate*, No. RW-76, 1994 WL 274004, at *1 (Del.Ch. June 1, 1994) (recognizing that "Since [the plaintiff]…has selected the forum, he will not be heard to complain about having to appear there for a deposition."); *Fast Food Gourmet v. Little Lady Foods*, No. 05 C 6022, 2007 WL 188014, at *2 (N.D.Ill. Jan. 23, 2007) ("Ordinarily, a defendant is entitled to examine a plaintiff in the forum in which the plaintiff sues."); *Seuthe v. Renwal Prods., Inc.*, 38 F.R.D. 323, 324 (S.D.N.Y. 1965) ("Ordinarily, a defendant is entitled to examine a plaintiff in the forum where plaintiff has chosen to sue.").  The rationale behind this rule is that it is generally the plaintiff who brings the lawsuit and who thus chose the forum.

---

possible need for duplicative motion practice, Rule 30 notices were subsequently served for depositions of Messrs. Thielbar and Kliewer, two current NorthWestern employees, as well as for a 30(b)(6) designee of NorthWestern, all noticed for Wilmington for May 1 and 2.  *See* D.I. 160-61, 164 in Case 04-1494; D.I. 194-95, 198 in Case 05-499.  Accordingly, the analysis and case law set forth herein is equally applicable to Thielbar, Kliewer and any other NorthWestern employee, as NorthWestern has availed itself of Delaware as the forum through the filing of its chapter 11 petition.

8

But here it is Hanson and Kindt who acted in the role of the plaintiffs because they chose

the forum – and did so over Magten's objection.[5]  Had they been content to litigate in the District

of Montana, they (setting aside their affiliation with NorthWestern) might have plausibly

claimed the right to be deposed only there or in South Dakota, but having selected Delaware they

waived any such right.  By transferring this case here, Hanson and Kindt purposefully availed

themselves of the services of the District of Delaware and invoked this Court's jurisdiction,

exactly the way that a plaintiff does when choosing a forum.  For this reason alone, Messrs.

Hanson and Kindt should be treated as the functional plaintiffs for purposes of discovery in these

matters and the Motion for a protective order as it relates to the depositions of Messrs. Hanson

and Kindt should be denied.  When a defendant consciously chooses to avail himself of the

services of the forum court in the same way that a plaintiff typically does, that defendant loses

the ability to claim the inconvenience of the chosen forum.  *See Armsey v. Medshares*

*Management Svs.*, 184 F.R.D. 569, 571-72 (W.D.Va. 1998) (when out-of-state defendant availed

itself of benefits of forum by filing counterclaims it could not refuse to produce its officers for

deposition in the forum); *Braunsteins v. Mart Assoc.*, 1987 WL 28308, at *2 (Del. Super. Nov.

25, 1987) (where out-of-state corporate defendant invoked jurisdiction of the Delaware courts by

filing cross-claims, such defendant's representatives should be deposed in Delaware).

As already noted, through a sworn affidavit by their attorney Ms. Beatty in support of

their motion to transfer venue, Messrs. Hanson and Kindt averred to the District Court of

Montana that it would be "no less convenient for Mr. Kindt or for Mr. Hanson to be available to

---

[5]    Rather than seek transfer to Delaware at the earliest possible opportunity, they did so only after the judge in
Montana denied two separate potentially dispositive motions they had filed (*See* D.I. 55, #5, #8 in Case 05-
499 (formerly D.I. 22, 25 on District of Montana Docket, Case 04-24)), making their forum-shopping
motive transparent.

the Delaware courts if this litigation is also transferred to Delaware where the other actions are all pending." *See* D.I. 56, #5 at ¶5 in Case 05-499 (formerly D.I. 35 on District of Montana Docket, Case 04-24).  They likewise argued in their brief in support of transfer that "*No* witness would be inconvenienced by the transfer and transfer to Delaware will be *more convenient* for the witnesses and *parties*."  *See* D.I. 56, #4 at 14 in Case 05-499 (formerly D.I. 34 on District of Montana Docket, Case 04-24) (emphasis added).  Contradicting both this sworn testimony and unequivocal legal position, Mr. Hanson now maintains that being deposed in Delaware would be "unduly burdensome" and "extremely disruptive."  *See* D.I. 147 in Case No. 04-1494; D.I. 182 in Case No. 05-499 at Exh. F, ¶¶ 5-8.  Mr. Kindt likewise now insists that it would be "unduly burdensome" for him to travel to Wilmington.  *See* D.I. 147 in Case No. 04-1494; D.I. 182 in Case No. 05-499 at Exh. G, ¶¶ 8-9.  Thus, even beyond their role as the functional plaintiffs in having selected the forum, Hanson and Kindt have provided contradictory sworn statements and taken contradictory positions in different federal courts in an effort to obtain the result that best suits them at a particular point in time.  They are thus barred by estoppel from securing any benefit as a result of this self-serving contradiction.  *In re Armstrong World Indus.*, 432 F.3d 507, 517 (3d. Cir. 2005) ("judicial estoppel can be applied when a party asserts a certain position in a legal proceeding and prevails, only to assert a contrary position later on because of changed interests"); *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d. Cir. 1995) ("[t]he basic principle [of judicial estoppel] … is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory"); *Off. Comm. Of Unsec. Creditors v. Aust (In re Network Access Solutions Corp.)*, 330 B.R. 67, 77 (Bankr. D. Del. 2005) (noting that

120087.01600/40168670v.1

judicial estoppel prevents a party from obtaining relief under one theory from later taking a

contrary position).

In the absence of special circumstances dictating a different rule, a motion for a

protective order to change the location of the deposition of the party that selected the forum to a

location outside the forum should be denied.  *See Messelt*, 10 F.R.D. at 509.  Hanson and Kindt

have failed to show that there are exceptional circumstances that justify a divergence from the

generally accepted principle that they should make themselves available to be deposed in the

district they selected for the litigation over Magten's objection.  Accordingly, Defendants have

failed to establish that there is "good cause" to prevent Plaintiffs from deposing Defendants at

any location other than Sioux Falls, South Dakota or Minneapolis, and have likewise not shown

that "justice requires" the entry of an order to protect Messrs. Hanson and Kindt from

"annoyance, embarrassment, oppression, or undue burden or expense" in connection with giving

testimony in the forum they themselves chose.  Therefore, the Motion should be denied in this

respect.

**B.    NORTHWESTERN SELECTED DELAWARE AS THE FORUM FOR
THIS LITIGATION**

Although NorthWestern had an undoubted right to file for bankruptcy in the District of

South Dakota, the location of its principal place of business (*see* 28 U.S.C. § 1408), it elected

instead to select the District of Delaware – the state of its incorporation – as the venue for its

bankruptcy case.[6]  As the party having sought bankruptcy relief in Delaware, NorthWestern is

---

[6]    NorthWestern undoubtedly considered the pros and cons of both forums before deciding where to file.
Given the statutory availability of multiple potential venues for many chapter 11 debtors, there is nothing
wrong about such forum-shopping, but it must be assumed that NorthWestern acted in its self-interest in
selecting the forum it did and should be required to bear the consequences of that choice.

11

clearly in the position of the putative plaintiff who should expect and be prepared to have its

employees and agents be deposed in Delaware.  *See*, *e.g.*, 6 Norton Bankr. L.& PRAC. 2d §

141:26 (1999) ("the better view is that the Debtor is treated as the Plaintiff and that its personnel

may be deposed in the jurisdiction in which the petition was filed since the Debtor, rather than

the Creditor, chose the forum").  A party that files its petition for bankruptcy in a particular

district has "effectively restricted all parties having claims against it to one forum" and thus, is in

the position of a "putative plaintiff" who "may be called upon to make itself available for

depositions at the place it has selected for trial."  *Good Hope Industries, Inc. v. Lehman Brothers*

*Kuhn Loeb, Inc*. 14 B.R. 942, 946 (Bankr. D. Mass. 1981) (rejecting Debtor's argument that the

deposition of its officers should go forward at its corporate headquarters in Louisiana, and

requiring that Debtor make its officer "available for dispositions at the place it selected for

trial."); *see also Adams v. Crowley*, 2005 U.S. Dist. LEXIS 9885 (D. Del. May 25, 2005)

(refusing to transfer action brought against former directors of Delaware corporation which had

filed for bankruptcy in Delaware to district where directors resided and corporation was

headquartered).

   In *Good Hope*, in determining that the deposition should be held in the state where the

bankruptcy petition was filed, the court first rejected the debtor's argument that the general rule

that a corporation should be deposed at its place of business was applicable.  *Good Hope*, 14

B.R. at 946.  The court surveyed recent cases and discovered that "rather than there being a

special rule for corporations, the question of whether a corporate party should be deposed at the

principal place of business depends upon whether the corporation is a plaintiff or defendant and

the level of inconvenience involved."  *Id.* (citing 4 *Moore's Federal Practice*,  26.70 (1.-4)).

Reasoning that the debtor "cannot lay claim to rules developed to protect defendants who are

involuntary participants in the legal proceeding, who have no say in the selection of the forum, and who stand to suffer great inconvenience," the court ruled that the debtor "may be called upon to make itself available for depositions at the place it selected for trial." *Id.* at 946.

Because NorthWestern elected Delaware for its bankruptcy case, Plaintiffs were required to commence their adversary proceeding against NorthWestern in Delaware as well. Mr. Hanson is currently an officer of NorthWestern, the putative plaintiff, and is thus subject to being deposed in Delaware by virtue of NorthWestern having chosen this forum separate and apart from his transfer of the action against him personally to this District.[7]

Where a debtor functioning as the plaintiff for purposes of forum selection – such as NorthWestern – has failed to show exceptional circumstances in the nature of hardship, a court should not "force" its claimants "to incur the burden of traveling to the debtor's…location [of business] in order to get depositions." *Good Hope*, 14 B.R. at 946. As the court in *Good Hope* observed, "Even overlooking the inadequacy of the showing on hardship and accepting that…[the movant] has very substantial business responsibilities and that his place of business is a considerable distance from [the forum district], the Court does not find these circumstances to constitute extraordinary hardship…." *Good Hope*, 14 B.R. at 947. Especially in these times, where "[a] round trip could be accomplished in a matter of twenty-four hours." *Id.* Moreover, "it may be noted that the usual situation in which courts have found that requiring the plaintiff to travel to the forum for the taking of the plaintiff's deposition would constitute a hardship were

---

7    Mr. Hanson previously submitted himself to the jurisdiction of the District of Delaware by filing his proof of claim against NorthWestern in its bankruptcy case, and has testified on at least two occasions in Delaware in the bankruptcy proceedings. *See* Defendants' Reply in Support of Motion to Transfer, D.I. 57, #17 at 6 in Case 05-499 (formerly D.I. 47 on District of Montana Docket, Case 04-24).

13

cases where the trips in issue required transoceanic or transcontinental travel and these cases

were decided at a time when air transportation was less sophisticated than it is today." *Good*

*Hope*, 14 B.R. at 947 (citations omitted). As the District Court for the Southern District of New

York has noted, "Corporate defendants are frequently deposed in places other than the location

of the principal place of business, especially in the forum, for the convenience of all parties and

in the general interests of judicial economy." *Sugarhill Records Ltd. v. Motown Record Corp.*,

105 F.R.D. 166, 171 (S.D.N.Y. 1985). Large corporations, especially, "cannot seriously contend

that travel on behalf of the corporation by one of its managing agents is unexpected or that such

travel…imposes a severe burden on it." *Id.*

        All of these principles apply in the present situation. Defendants have not demonstrated

that they need protection from "annoyance, embarrassment, oppression, or undue burden or

expense." They have merely registered minor complaints that—in today's world of sophisticated

travel, internet-accessible computers, cellular phones and personal digital assistants—do not bear

nearly as much weight as they used to. Clearly, no extraordinary circumstances exist here.

Therefore, the Court should deny the Motion in this respect.

**C.      IN THE ALTERNATIVE, IF PLAINTIFFS ARE FORCED TO DEPOSE
          DEFENDANTS OUTSIDE OF DELAWARE, DEFENDANTS SHOULD
          BEAR THE RESULTING EXPENSES.**

        Courts have found that to the extent the deposition of a defendant corporation takes place

at the corporation's principal place of business for the convenience for the defendant, the

defendant is generally required to give up something in return, such as payment of plaintiffs' and

its attorneys' traveling expenses and maintenance while in that location. *Fischer & Porter Co. v.*

*The Sheffield Corp.*, 31 F.R. D. 534, 538 (D. Del. 1962); *see also Dahlstrom Man. Co., Inc. v.*

14

*Storage Tech. Corp.*, No. 93-CV-0509E(F), 1994 WL 14839, at \*3 (W.D.N.Y. Jan. 19, 1994)

(the magistrate judge, in ordering that plaintiff had to depose defendant corporation at its

principal place of business but also that defendant corporation would have to pay for plaintiff's

expenses, did not abuse its broad discretion in resolving discovery disputes, and instead "struck a

delicate balance between the parties' divergent positions"); *Terry v. Modern Woodmen of*

*America*, 57 F.R.D. 141, 144 (W.D. Mo. 1972) (ordering defendant corporation to produce its

agent at plaintiff's office, or in the alternative, to advance to plaintiffs' attorneys travel expenses

or tourist accommodations and per diem for hotel and subsistence, to attend the taking of the

deposition in city of the agent's residence).

Thus, even if this Court declines to adopt the view that Messrs. Hanson and Kindt acted

as functional plaintiffs by selecting Delaware as their forum and NorthWestern did likewise by

filing its bankruptcy petition in Delaware, the Defendants cannot have their cake and eat it too.

The Defendants should be ordered to pay for the additional costs and travel expense incurred by

Plaintiffs and their attorneys to the extent these depositions are not required to be held in

Delaware.  *See Bayer AG v. Sony Electronics, Inc.*, 202 F.R.D. 404, 409 (D. Del. 2001) (plaintiff

commencing patent infringement suit in Delaware that failed to make its witnesses available for

depositions in Delaware required to pay defendant's costs for having to travel to Germany to

depose plaintiff's witnesses).

**D.    DEFENDANTS' REQUEST TO PREVENT DEFENDANTS FROM BEING**
**        DEPOSED TWICE IS PREMATURE**

As this Court is aware, because NorthWestern has refused to produce hundreds upon

hundreds of responsive non-privileged documents and has unjustifiably demanded the return of

15

documents that it has already produced, counsel for Magten was constrained to inform

Defendants that going forward with the depositions of Messrs. Hanson and Kindt as scheduled

before production of those documents would require the depositions to be subsequently resumed

if and when NorthWestern ultimately provides such documents to Plaintiffs.  *See* D.I. 155 in

Case 04-1949; D.I. 189 in Case 05-499 at Exh. 4.  While Plaintiffs were willing if necessary to

take Defendants' depositions now, prior to NorthWestern's production of such documents, in an

attempt to be fair and cooperative, Plaintiffs have represented to Defendants that Plaintiffs may

seek leave from the Court to resume the depositions should the depositions go forward prior to

the resolution of the document disputes raised in the Emergency Motion.  *See* Fed. R. Civ. P.

30(a)(2) (the examining party "must obtain leave of court, which shall be granted to the extent

consistent with the principles stated in Rule 26(b)(2)…if, without the written stipulation of the

parties…the person to be examined already has been deposed in the case….").


   In good faith, Plaintiffs have attempted to reach a consensual agreement regarding the

potential need to resume depositions after Plaintiffs' Emergency Motion is decided. *See* D.I. 155

in Case 04-1949; D.I. 189 in Case 05-499 at Exh. 4; *see also* Fed. R. Civ. P. 29 ("the parties may

by written stipulation…provide that depositions may be taken before any person, at any time or

place, upon any notice, and in any manner and when so taken may be used like other depositions,

and…modify other procedures governing or limitations placed upon discovery").  However,

Defendants refused to entertain that possibility.

Accordingly, Defendants' request to prevent a subsequent deposition if Plaintiffs' prevail on their Emergency Motion is premature at this time.[8]  The availability of a second deposition of any person is left to the discretion of the trial court, upon application of the examining party.  *See Perry v. The Kelly-Springfield Tire Co., Inc.*, 117 F.R.D. 425, 426 (N.D. Ind. 1987).  At that time, the Court will have to determine whether "good cause" exists to prevent the second deposition from occurring.  *Id.* (noting that "the need for protection usually cannot be determined before the examination begins, and the moving party can be adequately protected by making a motion under Rule 30(d) if any need for protection appears during the course of the examination").

To seek protection from Plaintiffs' potential application for a second deposition of undetermined persons is premature, and contrary to the spirit of discovery.  *See United States of America v. Int'l Bus. Machines Corp.*, 453 F. Supp. 194, 195 (S.D.N.Y. 1977) (the court declining to issue a protective order prohibiting a party from re-asking questions at depositions which have not yet been scheduled, because "the apprehension of abuse from which the [movant] seeks protection is merely speculative").  Given the possibility that NorthWestern may be required to produce additional documents (or cease its attempts to retrieve documents previously produced which Plaintiffs are refraining from making use of pending resolution of the Emergency Motion), it is simply too early to say how these future developments may impact deposition discovery.  Accordingly, the Motion should be denied in this respect.

---

[8]    The Emergency Motion has now been fully briefed and oral argument has been requested.  To the extent it is decided reasonably in advance of the depositions that are the subject of this Motion (since Plaintiffs would need a reasonable opportunity to review and analyze the documents in dispute after NorthWestern is compelled to produce them), the possibility of reopening depositions on this basis would be unnecessary.

17

### III.     CONCLUSION

WHEREFORE, Plaintiffs respectfully request that (i) the Motion be denied in all respects

for the reasons set forth herein; and (ii) the Court grant any such other relief it deems just and

proper.

Dated:  May 3, 2007

**BLANK ROME LLP**

 /s/  David W. Carickhoff
Dale R. Dubé (DE No. 2863)
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:  (302) 425-6464

- and -

**FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP**
Bonnie Steingart
Gary L. Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:   (212) 859-4000

Counsel for Plaintiff, Magten Asset
Management Corporation

**SMITH, KATZENSTEIN & FURLOW, LLP**

 /s/  Kathleen M. Miller
Kathleen M. Miller (DE No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899
Telephone:  (302) 652-8400
Facsimile:  (302) 652-8405

-and-

**NIXON PEABODY LLP**
John V. Snellings
Amanda Darwin
100 Summer Street
Boston, MA  02110
Telephone:  (617) 345-1201
Facsimile:  (866) 947-1732

Counsel for Plaintiff, Law Debenture Trust
Company of New York

585410

18