## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | C.A. No. 04-1494 (JJF) |
| NORTHWESTERN CORPORATION, | ) ) | |
| Defendant. | ) ) | |
| MAGTEN ASSET MANAGEMENT CORP., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | C.A. No. 05-499 (JJF) |
| MIKE J. HANSON and ERNIE J. KINDT, | ) ) | |
| Defendants. | ) ) | |

## REPLY MEMORANDUM OF LAW ON BEHALF OF NORTHWESTERN CORPORATION, MICHAEL J. HANSON AND ERNIE J. KINDT IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Defendants NorthWestern Corporation ("NorthWestern"), Michael J. Hanson and Ernie J. Kindt (collectively the "Defendants") by and through their counsel, hereby submit their Reply Memorandum of Law in Further Support of Defendants' Joint Motion for a Protective Order (the "Motion") (D.I. 151 in Case 04-1494; and D.I. 185 in Case 05-499).

## PRELIMINARY STATEMENT

Magten Asset Management Corp. ("Magten") and the Law Debenture Trust Company of New York ("Law Debenture") (collectively, the "Plaintiffs") have managed to submit an 18-page

memorandum of law in opposition to Defendants' motion for a protective order ("Opposition Memo") without even once referring to the legal standard courts employ in determining the proper location of a deposition. The reason is obvious – Plaintiffs fail under each prong of that standard. It is useless to engage in a debate regarding which party can truly be considered the plaintiff or the defendant in the somewhat unusual procedural posture of litigation arising out of a bankruptcy proceeding. Indeed, Plaintiffs have come up with only one case which involved a debtor filing an objection to a creditor's claim that was decided 26 years ago and has never been followed. But there is one theme in all the cases – whether cited by Plaintiffs or Defendants – that is helpful in resolving this issue. Every court faced with the decision of where a party should be deposed focuses on the goal of minimizing the burdens of litigation upon the parties. This goal is best achieved if the depositions of the NorthWestern witnesses take place at or near their principal place of business.

Moreover, contrary to Magten's opening assertion, the need for the requested protective orders did not result solely from any refusal by Messrs. Hanson and Kindt to be deposed in Delaware, although that was certainly one of the reasons for the filing of the motion. Messrs. Hanson and Kindt, as well as all of the other NorthWestern witnesses, have stood ready and available to be deposed at the company's corporate headquarters in Sioux Falls. They have even offered to be available in Minneapolis where other third party witnesses have been, or may be, deposed. In fact, counsel for Messrs. Hanson and Kindt and counsel for NorthWestern have repeatedly offered to make these party witnesses available in cities when counsel would be in such locations conducting depositions of other third parties, thus attempting to minimize the travel burden on all involved. However, when counsel for Magten unilaterally canceled depositions otherwise scheduled to occur in Minneapolis (which they are now attempting to

reschedule), and instead insisted that the NorthWestern witnesses travel to Delaware for their depositions, this motion for a protective order became necessary.

## BACKGROUND

Although not determinative of this motion, Plaintiffs continue to mischaracterize the transaction at issue in this lawsuit. NorthWestern acquired the electric, natural gas and propane utility assets of the Montana Power Company in a two step process that began in 2000 – not as a single transaction which took place on November 15, 2002, as Plaintiffs imply.

NorthWestern paid $1.1 billion for those assets, including the assumption of existing liabilities, and placed both the assets and the liabilities in a wholly-owned subsidiary, NorthWestern Energy LLC ("NWE"). When the utility assets were moved into NorthWestern as a division, rather than being held as a subsidiary, NorthWestern assumed sole responsibility for the liabilities of NWE , with the exception of the Milltown dam which remained in NWE – later renamed Clark Fork & Blackfoot LLC ("Clark Fork"). Clark Fork continues to operate and has never sought bankruptcy protection. And as Judge Case unequivocally held, Plaintiffs are not now, and have never been, creditors of Clark Fork.

Plaintiffs' excuses about the difficulty of scheduling depositions of former employees of NorthWestern is also belied by the facts. In a letter dated December 5, 2006, counsel for Magten announced her intention to serve subpoenas upon six former employees of NorthWestern "in the near term." (Pizzurro Supp. Aff. Ex. A.)[1] NorthWestern promptly supplied contact information for each of the former employee's separate counsel. (Pizzurro Supp. Aff. Ex. B.) But Plaintiffs inexplicably waited until the last week of March to begin serving subpoenas. And they did not serve a single notice of deposition on the NorthWestern witnesses until one week prior to the

---

[1] References in the form "Pizzurro Supp. Aff. Ex. ___" are to the Supplemental Declaration of Joseph D. Pizzurro

close of discovery. Prior to the service of these last minute notices, the discussion among counsel for the NorthWestern witnesses and the Plaintiffs concerned only whether those depositions would be held in Minneapolis or Chicago.

Despite Plaintiffs' posturing, it appears much more likely that the last minute demand to depose these witnesses more than once and in Delaware was to force Defendants to file this motion for a protective order, thus forestalling the depositions and giving Magten additional time to review documents.

## ARGUMENT

### I.

### The Delaware Situs of NorthWestern's Bankruptcy Proceeding Is Not Determinative of Where the Depositions Should be Held

Plaintiffs argue that NorthWestern should be treated like a plaintiff given that it chose to file bankruptcy in the District of Delaware. However, NorthWestern's decision to seek Chapter 11 protection in Delaware does not make the corporation analogous to a plaintiff in this action.

Plaintiffs rely upon *Good Hope Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.*, for the proposition that a bankruptcy debtor should be treated like a plaintiff for the purposes of determining the site of a deposition. 14 B.R. 942, 945-46 (Bankr. D. Mass. 1981). However, no other court has cited the opinion since it was published more than two decades ago, and it is distinguishable.

The plaintiffs in *Good Hope* sought to depose only two corporate representatives. 14 B.R. at 943. By contrast, Plaintiffs have sought five depositions, among them depositions of

dated May 10, 2007.

several officers of NorthWestern. Plaintiffs' demand that key corporate officers abandon their duties threatens the corporation with significant disruption in the management of its affairs.[2]

Even if NorthWestern is to be considered a plaintiff insofar as it determined the forum for the bankruptcy proceeding, in which Plaintiffs commenced their adversary proceeding against NorthWestern and on account of which their action against Hanson and Kindt was transferred to Delaware, the relevance of arguments regarding the plaintiff accepting the forum it has chosen become tenuous and diminished when the plaintiff's choice of forum is limited. *See, e.g., Ellis Air Lines v. Bellanca Aircraft Corp.*, 17 F.R.D. 395, 396-7 (D. Del. 1955) (because Alaska-based corporate plaintiff could only sue in Delaware, it was unreasonable for Delaware-based defendant to demand deposition of corporate plaintiff in Delaware). And as Plaintiffs note in their Opposition Memo, NorthWestern's choice of forum in filing for bankruptcy was limited to its state of incorporation (Delaware) and the state of its principal place of business (South Dakota). *See* 28 U.S.C. § 1408 (providing that a corporation may seek Chapter XI relief in the district of its domicile, of its principal place of business, or in which its principal assets are located. (Opposition Memo at 11.)

Finally, the goal of every court in deciding where a party should be deposed is to minimize the burdens of litigation upon the parties. This aim is evident in the factors regularly considered by courts in determining the site of depositions:

> These factors include location of counsel for the parties in the forum district, the number of corporate representatives a party is

---

[2] Unlike the corporate witnesses in *Good Hope*, whose "round trip [between the principal place of business and the forum] could be accomplished in a matter of twenty-four hours," 14 B.R. at 947, the corporate witnesses in this case face a considerably longer journey. As Messrs. Hanson and Kindt explained in their affidavits, a round trip from their respective domiciles could not be accomplished in a day. Mr. Hanson explained that, because there are no direct flights from Sioux Falls to Wilmington, travel between the two cities would take approximately nine to ten hours each way. *See* Hanson Aff. at 6. The other corporate witnesses residing in Sioux Falls obviously face the same problem. Similarly, Mr. Kindt's flight from his home in Butte, Montana, to Wilmington would be composed of multiple segments and layovers and would take over twelve hours each way. *See* Kindt Aff. at 8.

> seeking to depose, the likelihood of significant discovery disputes
> arising which would necessitate resolution by the forum court;
> whether the persons sought to be deposed often engage in travel
> for business purposes; and the equities with regard to the nature of
> the claim and the parties' relationship.

*Armsey v. Medshares Mgmt. Serv., Inc.*, 184 F.R.D. 569, 571 (W.D. Va. 1998) (citing *Resolution Trust Corp.* v. *Worldwide Ins. Mgmt. Corp*, 147 F.R.D. 125, 127 (N.D. Tex. 1992); *Turner v. Prudential Ins. Co,*. 119 F.R.D. 381, 383 (M.D.N.C. 1988)).  See also *Intagio Corp. v. Tiger Oak Publ'n., Inc.*, 2007 U.S. Dist. LEXIS 11735, at *2-3 (N.D. Cal. Feb 6, 2007) (citing and using factor analysis to determine sites of depositions); *Willis v. Mullins*, 2006 U.S. Dist. LEXIS 18794, at *4-10 (E.D. Cal. Apr. 4, 2006) (applying *Turner* factors and denying plaintiffs' request to be deposed outside the forum); *Cadent Ltd. v. 3M Unitek Corp.*, 232 F.R.D. 625, 629 (C.D. Cal. 2005) (applying *Resolution Trust Corp.* factors and holding that plaintiff's officers be deposed in the district); *Tailift USA, Inc. v. Tailift Co., Ltd.*, 2004 U.S. Dist. LEXIS 28648, at *5-6 (N.D. Tex. Mar. 26, 2004) (applying *Turner / Resolution Trust Corp.* factors and holding that defendant's corporate representative should be deposed at principal place of business in Taiwan); *Rapoca Energy Co., L.P. v. AMCI Exp. Corp.*, 199 F.R.D. 191, 193 (W.D. Va. 2001) (applying factors in *Turner* and *Resolution Trust Corp.* and holding that corporate defendant be deposed at principal place of business); *Starlight Int'l, Inc. v. Herlihy*, 1998 U.S. Dist. LEXIS 13124, at *6-7 (D. Kan. Aug. 13, 1998) (citing *Turner* for the proposition that various factors can counsel departure from the presumption that a corporate defendant be deposed other than at its principal place of business); *Shapiro v. Delta Boats, Inc.*, 1990 U.S. Dist. LEXIS 1506, at *4-7 (E.D. Pa. Feb. 12, 1990) (applying *Turner* factors and ordering that corporate defendant's officers be deposed at principal place of business).

Given the frequency with which federal courts turn to the factors outlined in *Turner and Resolution Trust Corp.*, these factors clearly provide a more acceptable basis for determining whether NorthWestern's officers should be deposed at a place other than at its principal place of business. As discussed in NorthWestern's opening memorandum, a weighing of the burdens indicates that NorthWestern's corporate officers should be deposed at the corporation's principal place of business.

## II.

### The Appropriate Venue for Trial Does Not Dictate the Venue For Depositions of Corporate Officers and Employees

Plaintiffs' attempt to make much of the selection of venue for trial, insisting that such venue is the only proper location for discovery as well. Such arguments are without merit. As Plaintiffs must concede, and as Montana Federal District Judge Cebull found, there were many legitimate reasons for transferring venue of Magten's case against Messrs. Hanson and Kindt from Montana to Delaware. (Pizzurro Supp. Aff. Ex. C.)

As noted in Judge Cebull's Order, Magten could have (and should have) brought this case in Delaware originally, where its other multitude of cases against NorthWestern and its advisors were then pending. However, filing in Delaware did not conform to Magten's chosen litigation strategy which has been to exert maximum pressure on NorthWestern to settle by bringing multiple lawsuits in several far-flung venues. Judge Cebull chose to afford "little weight" to Magten's forum selection in this instance. (*Id.* at 4.) Rather, Judge Cebull noted that "the cases involving Magten in Montana and Delaware are intertwined and much of the discovery sought will be duplicative." (*Id.*)

Further, he noted that both Messrs. Hanson and Kindt were likely to be called to testify in the other Magten litigation already then pending in Delaware regardless of whether Magten's

case against them remained venued in Montana. (*Id.* at 5.) Given Magten's present insistence on deposing Mr. Hanson twice, once related to Magten's case against Mr. Hanson and once related to Magten's case against NorthWestern (even despite the Court ordered consolidation of these cases for discovery purposes) Judge Cebull's findings appear correct.

Judge Cebull also noted that "[c]onsideration of the interest of justice, which includes judicial economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result.'" (*Id.*) Therefore, preventing duplicate trials of the same subject matter favors a transfer of venue. For these reasons, Judge Cebull found: "The Delaware Courts already face a number of cases, motions and appeals concerning matters related to this. The District of Delaware is closer to multiple witnesses and documentary evidence. It will save the parties time, energy and money by transferring the case to Delaware." (*Id.* at 6.)

Absent from Judge Cebull's Order is any indication that since venue for trial purposes was appropriately transferred to Delaware, depositions of corporate witnesses, officers and employees, should likewise be required to occur in Delaware. Judge Cebull did not make such a far-reaching pronouncement, and the case law and treatise material previously cited by Defendants in their supporting memorandum demonstrates such a requirement is not supportable. Neither do the cases cited by Plaintiffs stand for a different proposition. Plaintiffs' own parenthetical quote for each of these cases (*Armsey v. Medshares Management Svs.* and *Braunsteins v. Mart Assoc.*) demonstrates that in these instances the defendants availed themselves of the benefits of the forum by filing counterclaims and cross-claims. Such is not the case here. While venue for trial purposes is appropriate in Delaware to avoid duplicate discovery, Messrs. Hanson and Kindt did not avail themselves of the Delaware forum other than

to ensure that they would not be facing multiple rounds of discovery addressing the same subject matter.

In *Armsey v. Medshares Mgmt. Serv., Inc.*, the plaintiffs sought 21 depositions of current and former employees of the corporate defendant. 184 F.R.D. 569, 571, 572 (W.D. Va. 1998). The court ordered that the officers of the corporate defendant be deposed in the forum state, but that depositions of other employees be conducted in each deponent's district of residence. In explaining the distinction, the court emphasized that it had considered multiple factors. *Id.* at 571 (citing *Resolution Trust Corp.,* 147 F.R.D. at 127; *Turner*, 119 F.R.D. at 383).

Four factors motivated the court's decision regarding the site of the officers' depositions. Two of those factors derived from the fact that Medshares - unlike NorthWestern - was doing business in the forum state. First, the officers "often engage[d] in travel for business purposes, including travel to the Western District of Virginia to manage Medshares' Virginia offices and agencies." *Id.* at 571. Second, the officers were sufficiently sophisticated to understand that doing business in the district could subject them to judicial proceedings there. *Id.* Third, the court acknowledged that the defendant corporation had availed itself of the services of the court by filing a counterclaim that – whether permissive or mandatory – need not have been filed in the district court. *Id.* at 571-2. Fourth, the court anticipated further discovery disputes requiring resolution by the forum court. *Id.* at 572.

The same judge in fact clarified in a later case that she had relied on various factors in setting the site for the corporate officers' depositions. *See Rapoca Energy Co., L.P. v. Amci Export Corp.*, 199 F.R.D. 191, 193 (W.D. Va. 2001). In particular, the judge distinguished *Armsey* on the ground that the corporate defendant in that case had more substantial business contacts with the forum state. She noted that Rapoca Energy, while conducting business in the

forum state, did not maintain offices in the district, and that none of the potential deponents regularly traveled to the district for work. *Id.* at 193. The judge also clarified that she did not anticipate discovery disputes. *Id.* Finally, the court determined that the only remaining ground for following *Armsey*, the corporate defendant's counterclaim, was insufficient because the counterclaim was permissive. *Id.* at 194. Therefore, the court ruled that the corporate defendant need not make itself available for deposition in the forum state, but could instead be deposed, according to the general rule, at the principal place of business. *Id.*

Clearly the entire context of the transfer motion, of the supporting affidavits, and of Judge Cebull's Order addressed only the appropriate venue for trial purposes, and cannot be deemed a determination of the appropriate venue for discovery and depositions of corporate witnesses, officers and employees. Nor should the motion to transfer venue be misconstrued and twisted into a pronouncement that Messrs. Hanson and Kindt are the "functional plaintiffs" who selected the forum. (Opposition Memo at 9.) Rather, the proper locale for the depositions of corporate witnesses is guided by the clear long-standing case law and black letter law set forth in discovery treatise material that holds depositions of corporate witnesses should be conducted at the company's corporate headquarters. For these reasons, Magten's reliance on one line in a supporting affidavit submitted in support of the transfer motion is misplaced and taken out of context.

### III.

### None of the Corporate Witnesses Should Be Required To Be Deposed Twice

Discovery in these two cases has been consolidated to ensure that the parties would not engage in duplicative discovery or waste judicial resources. To permit Plaintiffs to depose the NorthWestern witnesses more than once would eviscerate the very reason for the consolidation

of discovery. Magten seeks to avoid addressing this important issue by dismissing the concerns as "premature." (Opposition Memo at 17.) To the contrary, at the time Defendants' filed the motion for protective order, their concerns about duplicative depositions were real and immediately pressing. Plaintiffs had not only demanded the right to re-open the depositions of all NorthWestern witnesses in the future if they prevailed in their attempt to compel the production of privileged documents, but had also stated they intended to depose Mr. Hanson twice, once in connection with their case against him and once in connection with their case against NorthWestern. This position flies in the face of consolidated discovery and is the very ploy this Court was attempting to avoid by ordering that discovery be consolidated.

However, now that Magten forced the Defendants to seek a protective order, and because the Special Master will be hearing Magten's arguments to compel the production of privileged documents at the same time he hears this motion for protective order, the concern that Magten will demand the re-opening of depositions at some future time due to the production of documents has now been minimized. Because depositions of the party witnesses must now be reset for sometime in the future, Magten has bought itself some additional time to review documents and to compel the production of privileged documents.

## IV.

### Cost Shifting Is Inappropriate In This Matter

Plaintiffs argue in the alternative that if the NorthWestern witnesses are deposed at the corporation's principal place of business, NorthWestern should bear the costs of travel and maintenance incurred by Plaintiffs and their attorneys. (Opposition Memo at 14.) However, Plaintiffs offer no justification for this request.

Courts have broad discretion to allocate the costs of examination by deposition among the parties. *See* 8A CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2112 (1994) ("On a motion, the court has a wide discretion in selecting the place of examination and in attaching conditions concerning the payment of expenses"). As with alternative sites for depositions, such costs are assessed on a case by case basis, and parties must demonstrate the need for such cost shifting or cost sharing on motion.

Courts are particularly sensitive to the financial hardships faced by certain parties. For example, courts are more likely to order a corporate party to bear the travel costs of an individual plaintiff. *See, e.g., White v. Chrysler*, 1994 U.S. Dist. LEXIS 4118, at *2-3 (E.D. Pa. Apr. 4, 1994) (requiring corporate defendant to pay half of plaintiff's "reasonable travel expenses" incurred in deposing two employees at principal place of business because plaintiff was "an individual, upon whom travel expenses will necessarily create a greater hardship"); *Terry v. Modern Woodmen of America*, 57 F.R.D. 141, 144 (W.D. Mo. 1972) (requiring that defendant insurance corporation either produce its employee at offices of individual plaintiffs' attorneys or advance plaintiffs' attorneys travel expenses).

Courts have also proven willing to order financial assistance to a corporate party of exceptionally limited finances. *See, e.g., Dahlstrom Mfg. Co., Inc. v. Storage Tech. Corp.*, 1994 U.S. Dist. LEXIS 483, at *7-8 (W.D.N.Y. Jan. 18, 1994) (requiring that corporate defendant reimburse travel expenses incurred by corporate plaintiff in taking depositions at defendant's principal place of business because plaintiff was "in a dire financial condition" and "had argued strenuously" before the magistrate judge that it could not afford the costs).

However, a party requesting that the court exercise such discretion must show that such discretion is warranted by exceptional circumstances. Plaintiffs have demonstrated no reason why NorthWestern should bear the costs of the several depositions requested other than asserting that the corporation "should give up something in return" for having its officers deposed, according to common practice, at its principal place of business. (Opposition Memo at 14.)

Plaintiffs have not argued – and could not plausibly do so – that traveling to NorthWestern's principal place of business or to a compromise location will be unduly fiscally burdensome. Given that none of the parties and all the attorneys except local counsel are located outside of the forum, all parties and counsel will incur travel costs whether the depositions are held in Wilmington or in Sioux Falls. In fact, it is NorthWestern whose costs will be most substantially affected if depositions are held in Delaware rather than at the corporation's principal place of business. Needless to say, NorthWestern would incur greater travel expenses than the Plaintiffs in order to deliver several of its employees to Delaware. More importantly, as noted above, the burden of the depositions will fall far more heavily on NorthWestern if it is required to suffer the absence of the several members of top management whose depositions Plaintiffs have requested. On the other hand Plaintiffs have not spared any costs in pursuing discovery, having previously noticed, and continuing to notice additional non-party depositions in Atlanta, Chicago, Denver and Minneapolis.

Given that the Plaintiffs have shown no particular circumstances meriting NorthWestern's assumption of Plaintiffs' travel costs, and given that NorthWestern is the party facing the greatest expense if its officers are deposed outside of the principal place of business, the Plaintiffs' request for travel and maintenance expenses should be denied.

## CONCLUSION

For the above reasons, NorthWestern respectfully requests that this Court issue a

Protective Order which provides that: (1) the NorthWestern witness depositions be held in Sioux

Falls, South Dakota; (2) Plaintiffs shall only be permitted to depose the NorthWestern witnesses

once; and (3) each side shall bear its own costs in connection with the depositions.


Dated: May 10, 2007                          Respectfully submitted,


                                             **GREENBURG TRAURIG LLP**

                                             By:_____
                                                  Victoria W. Counihan (No. 3488)
                                                  Dennis A. Meloro (No. 4435)
                                                  The Nemours Building
                                                  1007 North Orange Street, Suite 1200
                                                  Wilmington, DE 19801
                                                  Tel: (302) 661-7000
                                                  Fax: (302) 661-7360

                                                          and

                                             **CURTIS, MALLET-PREVOST,
                                                COLT & MOSLE LLP**


                                                  Joseph D. Pizzurro, Esq.
                                                  Steven J. Reisman, Esq.
                                                  Nancy E. Delaney, Esq.
                                                  Miriam K. Harwood, Esq.
                                                  101 Park Avenue
                                                  New York, NY 10178
                                                  Tel: (212) 696-6000`
                                                  Fax: (212) 697-1559


                                             Counsel for Defendant NorthWestern Corporation

3629562v1
*DEL 86183088v1 5/10/2007*

Dated: May 10, 2007

**EDWARDS ANGELL PALMER & DODGE LLP**

/s/ Denise Seastone Kraft
Denise Seastone Kraft (No. 2778)
919 North Market Street
15th Floor
Wilmington, DE 19801
Telephone: (302) 425-7106

and

Stanley T. Kaleczyc, Esq.
Kimberly A. Beatty, Esq.
**BROWNING, KALECZYC, BERRY & HOVEN, P.C.**
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624
Telephone: (406) 443-6820

Counsel to Michael J. Hanson And Ernie J. Kindt

DEL 86183088v1 5/10/2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT<br>CORPORATION and LAW DEBENTURE<br>TRUST COMPANY OF NEW YORK, | ) <br> ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) <br> ) | C.A. No. 04-1494 (JJF) |
| NORTHWESTERN CORPORATION, | ) <br> ) | |
| Defendant. | ) <br> ) | |
| MAGTEN ASSET MANAGEMENT CORP., | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | C.A. No. 05-499 (JJF) |
| MIKE J. HANSON and ERNIE J. KINDT, | ) <br> ) <br> ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I, Dennis A. Meloro, being duly sworn according to law, deposes and says that I am employed by Greenberg Traurig, LLP, which is counsel for the NorthWestern Corporation, and that on the 10th of May 2007, I caused to be served copies of following upon the parties listed below via Electronic Mail, Hand Delivery upon Local Counsel and via First Class, United States Mail upon the remaining parties.

- Reply Memorandum of Law on Behalf of NorthWestern Corporation, Michael J. Hanson and Ernie J. Kindt in Further Support of Defendants' Motion for Protective Order

- Supplemental Affidavit of Joseph D. Pizzurro, Esq.

| | |
|---|---|
| Dale Dube, Esq.<br>David Carickhoff, Esq.<br>Blank Rome LLP<br>1201 Market Street, Suite 800<br>Wilmington DE 19801<br>(Magten) | Bonnie Steingart, Esq.<br>Gary L. Kaplan, Esq.<br>Fried Frank Harris Shriver & Jacobson LLP<br>One New York Plaza<br>New York NY 10004<br>(Magten) |

*DEL 86168487v5 5/10/2007*

| | |
|---|---|
| Kathleen M. Miller, Esquire<br>Smith Katzenstein & Furlow LLP<br>800 Delaware Avenue, 7th Floor<br>Wilmington, DE 19801<br>(Law Debenture) | John V. Snellings, Esq.<br>Amanda Darwin, Esq.<br>Nixon & Peabody LLP<br>100 Summer Street<br>Boston, Massachusetts 02100<br>(Law Debenture) |
| Neil Glassman, Esq.<br>Charlene Davis, Esq.<br>Eric Sutty, Esq.<br>The Bayard Firm<br>222 Delaware Avenue, Suite 900<br>Wilmington DE 19801<br>(NW Plan Committee) | Alan Kornberg, Esq.<br>Margaret Phillips, Esq.<br>Ephraim Diamond, Esq.<br>Paul Weiss Rifkind Wharton & Garrison LLP<br>1285 Avenue of the Americas<br>New York NY 10019<br>(NW Plan Committee) |
| Stanley T. Kaleczyc<br>Kimberly A. Beatty<br>Browning, Kaleczyc, Berry & Hoven, P.C.<br>139 North Last Chance Gulch<br>P.O. Box 1697<br>Helena, Mt 59624<br>(M Hanson/E Kindt) | Denise Seastone Kraft<br>Edwards Angell Palmer & Dodge LLP<br>919 North Market Street, 15th Floor<br>Wilmington, DE 19801<br>(M Hanson/E Kindt) |

Date: May 10, 2007              GREENBERG TRAURIG, LLP

Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801
Telephone: 302-661-7000