IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | C.A. No. 04-1494-JJF |
| MAGTEN ASSET MANAGEMENT CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MIKE J. HANSON and ERNIE J. KINDT<br><br>Defendants. | C.A. No. 05-0499-JJF |

**AFFIDAVIT OF JOSEPH D. PIZZURRO**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

JOSEPH D. PIZZURRO, being duly sworn, deposes and says:

1.  I have been admitted *pro hac vice* to the bar of this Court and am a member of the firm of Curtis, Mallet-Prevost, Colt & Mosle LLP, counsel for defendant NorthWestern Corporation ("NorthWestern") in the above-referenced action. I submit this affidavit in accordance with the instructions of Special Master John E. James issued during the hearing of May 18, 2007, to set forth the facts and circumstances surrounding the provision of

the Report of the Special Committee of the Board of Directors dated April 25, 2003 (the "Special Committee Report") to Mr. Richard R. Hylland and whether, given those facts and circumstances, there was a waiver of the attorney-client and/or work product privilege. I make this affidavit upon information and belief except where stated to be upon my own personal knowledge.

2. During the relevant period, calendar year 2002, Mr. Hylland was President and Chief Operating Officer of NorthWestern. He held these positions pursuant to the terms of an employment agreement dated March 1, 2001. A copy of that agreement entitled Comprehensive Employment Agreement and Equity Participation Program for Richard R. Hylland is annexed hereto as Exhibit A. Mr. Hylland was also a member of the Board of Directors of NorthWestern.

3. In or about January and February of 2003, the Board of Directors of NorthWestern became concerned with what it learned about the way in which Mr. Hylland had performed his duties during 2002. As a result, on February 18, 2003, a Special Committee of the NorthWestern Board of Directors was formed to review Mr. Hylland's performance. On February 19, 2003, the Special Committee of the Board tasked the law firm of Paul, Hastings, Janofsky and Walker LLP ("Paul Hastings") with conducting an internal investigation of Mr. Hylland's conduct as President and Chief Operating Officer during 2002 in order to determine whether Mr. Hylland should be terminated for cause.

4. Paul Hastings did conduct such an investigation. During the investigation and thereafter, the content and results of Paul Hastings' investigation of Mr. Hylland were kept confidential. The results of the investigation were documented in the Special Committee Report,

which was prepared by Paul Hastings. Each page of the Report bears the legend "This Report Contains Confidential and Privileged Information – Do not Circulate."

5.  The question arose as to whether Mr. Hylland would be entitled under the terms of his employment agreement to view the Special Committee Report. The employment agreement is governed by Delaware law and after consultation with Delaware counsel it was determined that Mr. Hylland had such a right.

6.  Mr. Hylland's employment agreement specifically addresses the procedure to be adopted in the event his employment were to be terminated for cause. This issue is covered by paragraphs 4.b.i and 4.b.ii of his employment agreement which provide in relevant part as follows:

> b. <u>Termination for Cause</u>.
>
> i. <u>Termination Payments</u>. NorthWestern's Board may terminate Executive's employment with NorthWestern at any time for "Cause" as defined below, upon notice to Executive in the manner set forth below in paragraph 4.b.ii.
>
> * * *
>
> ii. <u>Definition of Cause</u>. For purposes of this Agreement, the termination of Executive's employment shall be deemed to have been for "Cause" only if termination of his employment shall have been the result of: (i) the willful engaging by Executive in dishonest or fraudulent conduct intended to result, directly or indirectly, in demonstrable and material financial or economic harm to NorthWestern, or (ii) gross negligence by Executive in the performance of Executive's duties with NorthWestern. Notwithstanding the foregoing, for purposes hereof (A) Executive shall not be deemed to have been terminated for Cause under either clause (i) or (ii) above unless and until

> (1) *there shall have been delivered to Executive a notice of termination and a certified copy of a resolution of the Board duly adopted by not less than three-quarters (3/4) of the entire membership of the Board (other than Executive if he is a member of the Board at the time) at a meeting called and held for that purpose and at which Executive, together with Executive's counsel, was given the opportunity to be heard,* finding that, in the good faith opinion of the Board, Executive was guilty of conduct set forth above based on reasonable evidence, specifying the particulars thereof in detail . . . .

(Exhibit A, pp. 8-9, emphasis added)

7.  After the Special Committee Report was completed, the Board of Directors called a Special Meeting of the Board to review the Special Committee Report and to address the issue of whether Mr. Hylland should be terminated for cause. On April 28, 2003, all of the members of the NorthWestern Board of Directors, including Mr. Hylland, were given a copy of the Special Committee Report which was to be considered at the Special Meeting. A copy of the email notice of that meeting sent to each Director stating that the Special Committee Report was being distributed concurrently with that notice is annexed hereto as Exhibit B. As stated above, each page of the Report sent to the various Board members contained the legend "This Report Contains Confidential and Privileged Information – Do not Circulate."

8.  On or about April 28, 2003, Mr. Hylland purported to resign as President and Chief Operating Officer of NorthWestern effective April 30, 2003. However, he remained a director of the company. A copy of the NorthWestern News Release announcing Mr. Hylland's resignation as President and Chief Operating Officer, dated April 30, 2003, is annexed hereto as Exhibit C. Subsequently, on April 30, 2003, Mr. Hylland resigned as a member of the Board of Directors. A copy of the NorthWestern News Release announcing Mr. Hylland's resignation as a member of the Board of Directors, dated May 1, 2003, is annexed hereto as Exhibit D.

Although the NorthWestern Board minutes state that Mr. Hylland resigned as a director pursuant to a letter dated April 28, 2003, this is an error. In fact, he resigned as a director on April 30, 2003. A copy of Mr. Hylland's letter of April 30 resigning as a director is annexed as Exhibit E.

9. The Special Meeting of the Board of Directors called to consider the Special Committee Report was held on May 6, 2003. Mr. Hylland, who under the terms of his employment agreement had a right to be at that meeting with counsel, failed to attend. The Board duly considered the Report and adopted a resolution terminating Mr. Hylland for cause. Mr. Hylland was advised of that decision pursuant to notice dated May 7, 2003. A copy of the letter notifying Mr. Hylland of his termination is annexed hereto as Exhibit F.

10. The foregoing makes clear that the Special Committee Report was prepared for the Board of Directors while Mr. Hylland was a director, that it was provided to Mr. Hylland while he was still a director and that it was provided to him in his capacity as a director at the same time that it was provided to the other members of the Board. The Special Committee Report was to be considered by the entire Board of Directors at a Special Meeting of the Board which Mr. Hylland had a right to attend both as a matter of his status as a director and pursuant to the terms of his employment agreement.

11. Furthermore, it is clear that NorthWestern took the appropriate precautions to ensure that the Special Committee Report remained confidential and within the corporation. As stated above, each page of the document bore the legend "This Report Contains Confidential and Privileged Information – Do not Circulate." There is no evidence that copies of the Special Committee Report were distributed other than to members of the Board. And it is clear that NorthWestern considered Mr. Hylland as a director when he was provided a copy of the report, and thus clearly a "client" of the lawyers who prepared the report and not some third party.

Plaintiffs can hardly argue that they are entitled to production of otherwise privileged materials when NorthWestern did nothing to waive the privilege and clearly intended to keep those materials from being viewed by any third party.

12. Plaintiffs' reliance on *SBC Interactive, Inc. v. Corporate Media Partners*, 1997 Del. Ch. LEXIS 170 (Del. Ch. 1997) ("*SBC*") is misplaced. That case did not involve any issue of waiver of the attorney-client privilege. The issue before the court was whether a partner, which was in an open dispute with the partnership, was entitled access to materials prepared for the partnership by the partnership's counsel in connection with that dispute where the partnership took steps to keep those materials confidential as to that partner. Here the issue is whether NorthWestern waived the attorney-client and/or work product privilege by providing the Special Committee Report, which was prepared for the entire Board of Directors, to a member of that Board, who had a right both as a director and as a matter of contract, to review the report and to attend and participate in the Special Meeting of the Board called specifically for the purpose of considering that report and its recommendations. Unlike the defendants in *SBC*, NorthWestern never took the position that Mr. Hylland was not entitled to receive the Special Committee Report because he was outside the scope of the attorney-client privilege.

13. The proper question to pose here is whether Mr. Hylland, had he *not* been provided a copy of the Special Committee Report, would have been entitled to compel the production of a copy of that Report. Following the reasoning of the court in *Moore Business Forms, Inc. v. Cordant Holdings Corp.*, 1996 Del. Ch. LEXIS 56 (Del. Ch. June 4, 1996) ("*Moore*"), as well as the dicta in *SBC* itself, it is clear that Mr. Hylland did have a right to the Special Committee Report and that the attorney-client or work product privileges could not have been asserted against him.

14. As *Moore* makes clear, the starting point for the analysis is that, under Delaware law, as a director Mr. Hylland had a presumptive right to the Special Committee Report. "[A]s a general matter, a corporation cannot assert the privilege to deny a director access to legal advice furnished to the board during the director's tenure." *Moore* at *12. While the court in *SBC* did say that this principle is not absolute and must be viewed in the context of the circumstances of a particular case, the particular facts of this case make clear that Mr. Hylland, like the director in *Moore*, had a right to a copy of the Special Committee Report. As in *Moore*, that report was prepared during Mr. Hylland's tenure as a director. The report was prepared for the entire Board, including Mr. Hylland. And, as in *Moore,* Mr. Hylland's contractual rights are key.

15. The court in *Moore* was influenced by the fact that the plaintiff's right to representation and participation on the board "was established by contract." *Moore* at *15-16. Here, Mr. Hylland's right to attend and participate in the board meeting called specifically to consider the Special Committee Report was likewise established by contract. The language of paragraph 4.b.ii of Mr. Hylland's employment agreement makes clear that Mr. Hylland could not be terminated for cause unless he had an opportunity to attend and be heard at any meeting of the Board held to consider that issue. The entire purpose of the Special Committee Report was to consider Mr. Hylland's conduct and to recommend whether that conduct merited his termination for cause. It would absurd to suggest that, under these circumstances, NorthWestern could have withheld the Special Committee Report from Mr. Hylland and still comply with its contractual obligations both to allow Mr. Hylland to attend the Special Meeting called to consider that report and to give Mr. Hylland the opportunity to be heard on the content and findings of that report.

-8-

Thus, because Mr. Hylland had a right to receive a copy of the Special Committee Report, both as a member of the Board and as a matter of his employment agreement, giving him that copy cannot constitute a waiver of either the attorney-client or work product privilege.

_____
Joseph D. Pizzurro

Sworn to before me
this 24th day of May, 2007

_____
Notary Public
JOAN E. MEZZACAPPA
Notary Public, State Of New York
No. 01ME4833093
Qualified In New York County
Commission Expires June 30, 20 07

3590111v4