IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORP. and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 04-1494-JJF<br>)<br>)<br>)<br>)<br>)<br>) |
| MAGTEN ASSET MANAGEMENT CORP.,<br><br>Plaintiff,<br><br>v.<br><br>MIKE J. HANSON and ERNIE J. KINDT.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 05-499-JJF<br>)<br>)<br>)<br>) |

**SUPPLEMENTAL SUBMISSION OF MAGTEN AND LAW DEBENTURE
CONCERNING PRIVILEGE AND WORK PRODUCT WAIVER**

Dale R. Dubé (DE No. 2863)
David W. Carickhoff (DE No. 3715)
**BLANK ROME LLP**
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

Bonnie Steingart
Gary L. Kaplan
John W. Brewer
**FRIED, FRANK, HARRIS, SHRIVER
    & JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for Magten Asset Management
Corporation*

Kathleen M. Miller (DE No. 2898)
**SMITH, KATZENSTEIN & FURLOW, LLP**
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405

John V. Snellings
Amanda Darwin
**NIXON PEABODY LLP**
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1201
Facsimile: (866) 947-1732

*Counsel for Law Debenture Trust
Company of New York*

DATED: May 25, 2007

As directed by the Special Master at the hearing held on Friday, May 18, plaintiffs respectfully provide this Supplemental Submission on privilege waiver law in Montana and South Dakota and certain related issues.

I.    WAIVER OF ATTORNEY-CLIENT PRIVILEGE

As the Special Master correctly stated at the last hearing, while neither Montana nor South Dakota may have specifically addressed the so-called "selective waiver" theory under which voluntary disclosure of otherwise privileged documents to a governmental agency does *not* operate as a waiver of privilege as to other third parties, neither jurisdiction is a "tabula rasa" on basic privilege waiver doctrine. In both jurisdictions, the waiver rule is codified, rather than simply arising out of evolving case law.[1] Using substantially identical language, Montana Rule of Evidence 503(a) and South Dakota Codified Laws § 19-13-26 provide in pertinent part: "A person upon whom [these rules – MT / this chapter – SD] [confer / confers] a privilege against disclosure waives the privilege if [the person / he] . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter." (For the convenience of the Special Master, we are submitting herewith an addendum containing copies of the pertinent rules, statutes, cases, and other authority cited herein.) Other than an express exception that this rule "does not apply if the disclosure itself is privileged," the rule is phrased in absolute terms and

---

[1] Since we do not think there is a material difference between Montana and South Dakota law, we do not think it is material which of those jurisdictions the choice of law analysis as to privilege mandated by Fed. R. Evid. 501 points to. As we have previously demonstrated, Delaware has virtually no significant contacts with either the underlying facts of the litigation, the substantive state law governing the claims, the creation of the allegedly privileged documents, or the decision to disclose them to the SEC. Judge Latchum's decision in *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 411 (D. Del. 1992), which the Special Master mentioned at the hearing, treated the state whose substantive law governed (Connecticut in that case; Montana in the present case) as the state whose privilege law should be applied, as an analysis of the plain language of Rule 501 suggests.

1

120087.01600/40169082v.1

does not permit exceptions: waiver to anyone outside the attorney-client relationship (or another privileged relationship – not merely under a promise of confidentiality) waives privilege as to the world.[2]

Neither the Montana nor the South Dakota courts appear to have ever recognized an exception to this explicit and absolute waiver rule for voluntary disclosure. The Supreme Court of South Dakota has repeatedly found privilege to have been waived. *State v. Guthrie*, 627 N.W.2d 401, 427 (S.D. 2001) (clergy privilege: "Guthrie voluntarily disclosed the contents of his confidential communications with others and waived the privilege"); *State v. Karlen*, 589 N.W.2d 594, 601 (S.D. 1999) (statutory privilege for communications between alleged crime victim and counselor waived because alleged victim had disclosed their substance to third parties). *See also State v. Catch the Bear*, 352 N.W.2d 640, 647 (S.D. 1984) (noting that privileges are to be "strictly construed to avoid suppressing otherwise competent evidence" and that under waiver statute attorney-client privilege will be "waived if the client voluntarily or through his attorney discloses the contents of the communication or advice to someone outside

---

2    Delaware has a similarly-worded rule (D.R.E. 510), which like the Montana and South Dakota provisions is ultimately derived from Uniform Rule of Evidence 510. *Saito v. McKesson HBOC, Inc.*, 2002 Del. Ch. LEXIS 125 (Del. Ch. Oct. 25, 2002), on which NorthWestern places so much reliance, never even mentions Delaware's Rule 510, much less claims to find an implicit exception to it that its text would seem to preclude. But this otherwise inexplicable silence is fully consistent with the correct view expressed by the Special Master at the May 18 hearing that *Saito* is not actually a case about privilege waiver at all but only about waiver of work product protection, a separate issue not governed by that rule. Indeed, Chancellor Chandler expressly noted (*Saito* at *46) that "I do not need to address attorney-client privilege in relation to most of the documents" disclosed to the SEC because he had already held them to be protected by the work product doctrine, and then held that attorney-client privilege had been waived as to the remaining document because it had been given to the SEC without a prior confidentiality agreement in place. To the extent NorthWestern is arguing that *Saito*'s analysis should nonetheless carry over to waiver of privilege despite *Saito*'s express disclaimer that it was not addressing that issue, the opinion's failure to address and explain the seemingly contrary language of what would then be the directly applicable Rule 510 would raise serious questions about the correctness of the analysis as applied to attorney-client privilege, and thus the likelihood the Supreme Court of Delaware would agree if and when that question were presented to it.

2

that relationship").³  Moreover, in an unreported decision, the U.S. District Court for the District of South Dakota, applying South Dakota privilege law, has held that disclosure of privileged documents to a state investigative agency waived privilege as to those specific documents (but not as to other communications on the same subject matter which had not been disclosed to the agency) in a subsequent litigation brought by private plaintiffs. *Statler v. Buffalo-Bodega Complex, Inc.*, No. 06-5003 (D.S.D. Nov. 6, 2006) (order on motions to compel).

Reported decisions by the Montana Supreme Court have primarily focused on the voluntariness of the disclosure or consent on the part of the holder of the privilege – an explicit prerequisite for waiver under the text of Rule 503, not an exception – and cannot be read to suggest any openness to potential exceptions once voluntariness on the part of the holder is established. *See, e.g., Pacificorp v. Dep't of Revenue*, 838 P.2d 914 (Mont. 1992) (inadvertent production of privileged documents during discovery did not work waiver when return was promptly requested); *State v. Statczar*, 743 P.2d 606 (Mont. 1987) (error to admit testimony of counsel as to substance of privileged communications when record did not establish that client, as holder of privilege, had authorized counsel to do so).⁴  The state's lower courts have found voluntary disclosure to constitute waiver on multiple occasions, without suggesting any implicit

---

3   *See also Chem-Age Industries, Inc. v. Dahl*, 652 N.W.2d 756, 770 (S.D. 2002) (noting that while the Restatement (Third) of the Law Governing Lawyers is "not binding on this Court; nevertheless, we have found its reasoning persuasive in many instances"). That Restatement's provision on waiver of privilege (§ 79) adheres to the absolute rule that voluntary disclosure to any third party by the client or its authorized representative waives privilege as to the world, and does not either in its text or the accompanying notes contemplate any exception for voluntary disclosure to an investigative agency such as the SEC.

4   There is no dispute here that NorthWestern's disclosure of allegedly privileged documents to the SEC was voluntary, intentional, and directed by the client for its own purposes. Any claim that NorthWestern subjectively intended not to waive privilege when it made voluntary disclosure to the SEC in the hope that some subsequent court would accept the selective waiver theory overwhelmingly rejected by the majority of courts to consider it is irrelevant, because under Montana law the voluntariness determination ultimately looks to objective conduct, not merely alleged subjective intent to waive or refrain from waiving. *See Pacificorp*, 838 P.2d at 919.

3

exceptions.[5] *See also Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 294-96 (D. Mont. 1998) (applying Montana law and holding that privilege was waived by tactical decision to use attorney as expert witness even while formally disclaiming advice-of-counsel defense).[6]

Significantly, however, one of the numerous federal cases rejecting the selective waiver doctrine, *United States v. Mass. Inst. of Technology*, 129 F.3d 681 (1st Cir. 1997), is quoted extensively and cited with approval by the Montana Supreme Court in *In re: Rules of Professional Conduct*, 2 P.3d 806, 818-19 (Mont. 2000), albeit in a slightly different context (the need for informed client consent before counsel may provide certain confidential information to liability insurers funding the client's defense). In particular, the opinion approvingly cites the First Circuit's conclusion that the relationship between a private entity and a governmental agency with the power to bring charges against it is inherently adversarial, no matter how much the private entity might hope that charges would never be brought, thus making any non-waiver claim unavailing.

For all of these reasons, both Montana and South Dakota have enacted and adhered to the majority and traditional rule that voluntary disclosure of privileged information to any party outside the privileged relationship constitutes waiver of privilege as to the world.[7] There is absolutely no basis to believe that either state's courts would modify its precedents and apply a

---

5    *State v. Clifford*, 2004 Mont. Dist. LEXIS 3556 (Dist. Ct. Lewis & Clark Co. Aug. 25, 2004) (failure to seek timely return of allegedly inadvertently produced document was voluntary waiver of privilege); *Barnes v. Montana Milk Express, Inc.*, 2003 Mont. Dist. LEXIS 2625 (Dist. Ct. Gallatin Co. Apr. 29, 2003) (intentional disclosure of originally privileged letter containing legal advice waived privilege as to all communications on same subject matter).

6    Both *Barnes* and *Dion* condemn "selective" waiver of privileged materials for tactical advantage and the use of privileged materials as a sword rather than a shield, both of which are fair characterizations of NorthWestern's deliberate disclosure of allegedly previously privileged materials to the SEC in a successful attempt to obtain comparative leniency for itself as compared to its former senior management team who were subject to more onerous settlement terms.

7    Moreover, as indicated above, the *Saito* case does not indicate that Delaware has taken a contrary position with respect to waiver of privilege (as distinct from waiver of work product protection, which is discussed below).

4

hitherto unknown exception to that rule – contrary to the text of the relevant court rule or statute in each state – when voluntary disclosure is made to the SEC or another governmental agency, and no basis for any federal court making a prediction under the *Erie* doctrine as to how those courts might rule to anticipate that such an exception to existing law would be adopted. Indeed, the recent report of the Advisory Committee on Evidence Rules explaining, among other things, its reasons for deleting the language in earlier drafts of proposed Fed. R. Evid. 502 that would have adopted such an exception highlights some of the numerous reasons why any further spread of the minority position recognizing "selective waiver" is highly unlikely.[8]

II.   WAIVER OF WORK PRODUCT PROTECTION

As stated above, at the May 18 hearing, the Special Master noted that the documents at issue in *Saito* as to which disclosure to the SEC was held not to require production were subject to a claim of work product protection, and correctly indicated that Chancellor Chandler's opinion was appropriately read as addressing waiver of work product protection, but (as it explicitly states) did not reach the separate question of whether privilege as distinct from work product protection was waived by disclosure to the SEC with a confidentiality agreement in place. *See supra* at 2, n.2. Understandably (given the number of issues being addressed at the hearing), NorthWestern's counsel was not immediately able to respond fully to the Special Master's factual question about the potential significance of that distinction for the documents in dispute

---

[8] At the close of the May 18 hearing, we provided NorthWestern's counsel and the Special Master with a copy of this report, which was issued on May 15, 2007, together with its attachments. Because of its length, we have not provided another copy with this submission, but it may be accessed in full at http://www.uscourts.gov/rules/Reports/EV05-2007.pdf. As the report indicates, reaction to the proposal from virtually all segments of the legal community (other than governmental agencies) was almost uniformly negative, and strongly so. Moreover, the Committee judged that adoption of the selective waiver doctrine necessarily involved judgments as to appropriate tradeoffs (for example, between the interests of investigative agencies and the chilling impact on attorney-client interaction widely said to be caused by the so-called "culture of waiver") that were inherently political in nature. Accordingly, the Committee concluded that any change in the traditional majority waiver rule should be the result of direct legislative action rather than the quasi-judicial process of amending the Federal Rules.

here. Following the hearing, we compared NorthWestern's list of documents admittedly disclosed to the SEC (D.I. 158, Exh. 16) to its most recent version of its privilege log (D.I. 163, Exh. 2). As indicated on the attached chart [Tab 1], that comparison showed: (1) that NorthWestern claimed attorney-client privilege for all 350 of the documents admittedly disclosed to the SEC; (2) that NorthWestern additionally claimed attorney work product protection for only 66 of the documents it admittedly disclosed to the SEC; and (3) that there were no such documents where work product protection was claimed but privilege was not also asserted.[9]

More fundamentally, however, the choice of law analysis required by Fed. R. Evid. 501 for privilege issues does not apply to the separate issue of whether work product protection has been waived. The Third Circuit has unequivocally held that "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard." *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988).[10] In *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1427, 1430 (3d Cir. 1992), the Third Circuit unequivocally held that voluntary disclosure to the SEC (confidentiality agreement or no confidentiality agreement) waived work product protection as well as attorney-client privilege. As to the distinct issue of waiver of work product protection (as opposed to privilege), *Westinghouse* necessarily binds this Court under *United Coal*, NorthWestern's

---

[9] We note, however, that NorthWestern has still not disclosed either to us or to the Special Master whether any of the 27 documents it did not add to its log until April 24 (the items numbered 1747 and higher) were disclosed to the SEC, so those have not been included in this analysis.

[10] *See also Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 57 Fed. Appx. 58 (3d Cir. 2003) (reversing district court for applying Pennsylvania work product precedents rather than federal precedents in diversity case where difference between federal and state law was outcome-determinative); *In re: Qwest Communications Int'l Inc.*, 450 F.3d 1179, 1184 n.3 (10th Cir. 2006) (noting in context of rejecting claim that disclosure to SEC had not waived both privilege and work product protection that work product issue was not governed by Rule 501); *Railroad Salvage of Conn., Inc. v. Japan Freight Consolidators (U.S.A.) Inc.*, 97 F.R.D. 37, 39-40 (E.D.N.Y. 1983) (declining to apply state law on work product in diversity case because Rule 501 was not applicable).

voluntary production to the SEC waived that protection as to the subset of documents for which such protection has been asserted by NorthWestern, and any contrary state court decisions such as *Saito* are irrelevant.[11]

Dated: May 25, 2007

Respectfully submitted,

| | |
|---|---|
| **BLANK ROME LLP** | **SMITH, KATZENSTEIN & FURLOW, LLP** |
| /s/ Dale R. Dubé | /s/ Kathleen M. Miller |
| Dale R. Dubé (DE No. 2863) | Kathleen M. Miller (DE No. 2898) |
| David W. Carickhoff (DE No. 3715) | 800 Delaware Avenue, 7th Floor |
| 1201 Market Street, Suite 800 | P.O. Box 410 |
| Wilmington, DE 19801 | Wilmington, DE 19899 |
| Telephone: (302) 425-6400 | Telephone: (302) 652-8400 |
| Facsimile: (302) 425-6464 | Facsimile: (302) 652-8405 |
| - and - | - and - |
| **FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP** | **NIXON PEABODY LLP** |
| Bonnie Steingart | John V. Snellings |
| Gary L. Kaplan | Amanda Darwin |
| John W. Brewer | 100 Summer Street |
| One New York Plaza | Boston, MA 02110 |
| New York, NY 10004 | Telephone: (617) 345-1201 |
| Telephone: (212) 859-8000 | Facsimile: (866) 947-1732 |
| Facsimile: (212) 859-4000 | |
| *Counsel for Plaintiff, Magten Asset Management Corporation* | *Counsel for Plaintiff, Law Debenture Trust Company of New York* |

---

[11] *United Coal* makes the determination of which state's work product law would govern under a Rule 501 analysis irrelevant by confirming that the uniform federal standard always applies in federal court, but we should note for the record that our research did not find any Montana or South Dakota cases suggesting that disclosure to a governmental agency which was an actual or potential litigation adversary, as the SEC was to NorthWestern here, would not waive work product protection.

7

120087.01600/40169082v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of May, 2007, I served by hand delivery and electronic filing the SUPPLEMENTAL SUBMISSION OF MAGTEN AND LAW DEBENTURE CONCERNING PRIVILEGE AND WORK PRODUCT WAIVER, using CM/ECF which will send notification of such filing(s) to the following:

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

I certify that, on this 25th day of May, 2007, I served the aforementioned document, by e-mail and Federal Express, upon the following participants:

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

I certify that, on this 25th day of May, 2007, I served the aforementioned document, by hand delivery upon the Special Master, as follows:

John E. James, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899-0951

_Dale R. Dubé_
Dale R. Dubé (No. 2863)

120087.01600/40169082v.1