# Exhibit 16

MAINTENANCE AND OPERATING COSTS SUPPORT AGREEMENT

THIS MAINTENANCE AND OPERATING COSTS SUPPORT AGREEMENT (this "**Agreement**") is made as the 15th day of November, 2002, between NORTHWESTERN CORPORATION, a Delaware corporation ("**Parent**"), and NORTHWESTERN ENERGY, L.L.C., a Montana limited liability company ("**Subsidiary**").

WHEREAS, on January 31, 2002, the Montana Public Service Commission issued its Order No. 6353c in Docket No. D 2001.1.5 pursuant to which, among other things, it approved the acquisition by Parent of the utility business of The Montana Power Company (the predecessor in interest to Subsidiary) and the continued operation of such business "as a subsidiary or division" of Parent;

WHEREAS, on February 15, 2002, Parent acquired and continues to own 100% of the membership interests of Subsidiary;

WHEREAS, pursuant to the Asset and Stock Transfer Agreement, dated as of November 15, 2002 (the "**Transfer Agreement**"), between Parent and Subsidiary, the parties propose to consummate a restructuring transaction involving the assignment by Subsidiary to Parent and the assumption by Parent of substantially all of Subsidiary's assets and liabilities (the "**Transaction**");

WHEREAS, certain assets of Subsidiary will not be transferred to Parent pursuant to the Transaction, including the hydroelectric generating facility known as the Milltown Dam Assets and associated physical structures more particularly described on Schedule 1 hereto (the "**Milltown Dam Assets**");

WHEREAS, Parent and Subsidiary have entered into a Unit Power Purchase Agreement, dated as of September 20, 2002 (the "**Power Purchase Agreement**"), providing for the sale by Subsidiary to Parent of the power and energy produced by the Milltown Dam Assets, effective upon consummation of the Transaction, and such agreement was accepted for filing by order of the Federal Energy Regulatory Commission pursuant to Section 205 of the Federal Power Act;

WHEREAS, it is the desire of Parent and Subsidiary that they enter into this Agreement providing for Parent to make available to Subsidiary funds necessary to ensure that Subsidiary will be able to make payment on any of Subsidiary's trade accounts arising in the ordinary course of business and other costs and expenses, all as relating to or arising in connection with the operation and maintenance of the Milltown Dam Assets subsequent to the consummation of the Transaction, taking into account payments due and to become due from Parent under the Power Purchase Agreement.

NOW, THEREFORE, Subsidiary and Parent agree as follows:

1. Support Obligation. If Subsidiary at any time is unable, after taking into account payments due and to become due from Parent under the Power Purchase Agreement, to make payment on any of its trade accounts arising in the ordinary course of business or to pay any other costs and expenses (other than Environmental Liabilities, as defined in the Transfer Agreement), in each case relating to or arising in connection with the operation and maintenance of the Milltown Dam Assets ("**Milltown Operating Expenses**"), then Subsidiary will promptly notify Parent of the shortfall and Parent will make available to Subsidiary, before the due date of any such Milltown Operating Expenses, funds sufficient to enable it to pay any such Milltown Operating Expenses in full as they fall due. Subsidiary will use the funds made available to it by Parent solely for the payment when due of such Milltown Operating Expenses. It is understood and agreed that Milltown Operating Expenses shall include any and all amounts payable by Subsidiary to Parent under the Employee Secondment and Administrative Services Agreement of even date between Parent and Subsidiary pursuant to which Parent has agreed to second certain employees to Subsidiary in connection with operating the Milltown Dam Assets.

2. Waiver. Parent hereby waives any failure or delay on the part of the Subsidiary in asserting or enforcing any of its rights or in making any claims or demands hereunder.

3. Not a Guarantee. This Agreement is not, and nothing herein contained and nothing done pursuant hereto by Parent shall be deemed to constitute, a guarantee, direct or indirect, by Parent of any debt, liability or obligation arising out of a borrowing of money or a trade payable, or any other debt, liability or obligation, of any kind or character whatsoever, of Subsidiary.

4. Modification and Amendment. This Agreement may be modified or amended only by the written agreement of Parent and Subsidiary; provided, however, that no such modification or amendment shall have a material adverse effect upon the ability of Subsidiary to meet any of its payment obligations described in Section 1 above.

5. Termination. This Agreement and the obligations of Parent hereunder shall terminate upon the expiration or earlier termination of the Power Purchase Agreement in accordance with its terms.

6. Bankruptcy, Liquidation or Moratorium. Any rights and obligations which either of the parties has under this Agreement will remain valid and binding notwithstanding any bankruptcy, insolvency or liquidation of, or moratorium involving, Subsidiary.

7. Successors and Assigns. The agreements herein set forth shall be mutually binding upon, and inure to the mutual benefit of, Parent and Subsidiary and their respective successors. Neither this Agreement nor the rights or duties of any party hereto may be assigned without the prior written consent of the other party hereto.

NOR000218

8.  <u>Governing Law</u>.  This Agreement shall be governed by the internal laws of the State of New York, determined without reference to principles of conflicts of laws.

**[SIGNATURES TO THIS MAINTENANCE AND OPERATING
COSTS SUPPORT AGREEMENT ARE ON THE FOLLOWING PAGE]**

3

NOR000219

[SIGNATURES TO THIS MAINTENANCE AND OPERATING
COSTS SUPPORT AGREEMENT]

**IN WITNESS WHEREOF**, the parties hereto have caused this Maintenance and Operating Costs Support Agreement to be executed and delivered as of the day and year first above written.

NORTHWESTERN CORPORATION

By: _____
Name: Eric R. Jacobsen
Title: Senior Vice President, General Counsel & Chief Legal Officer

NORTHWESTERN ENERGY, L.L.C.

By: _____
Name: Michael J. Hanson
Title: President and CEO

4

SCHEDULE 1<br>(TO MAINTENANCE AND OPERATING<br>COSTS SUPPORT AGREEMENT)

## MILLTOWN DAM ASSETS

All of Subsidiary's right, title and interest in and to all of the assets and properties included within, or related or appertenant to (i) the Milltown Dam Project (the "Milltown Dam Project") as described in that certain application filed by The Montana Power Company on August 30, 1965, as amended on April 8, 1968, for a license under Section 4(e) of the Federal Power Act for constructed Project No. 2543 known as the Milltown Project (the "**Application**"); (ii) the Disposal Area Number 1; and (iii) the Milltown Rehabilitation Upland Disposal Area, including without limitation the following:

1. All lands and interests in lands (i) constituting the Milltown Dam Project area and enclosed by the project boundary, the limits of which are otherwise defined, the use and occupancy of which are necessary for the purposes of the Milltown Dam Project; such Milltown Dam Project area and project boundary being shown and described by Exhibits J and K: Sheet 1, FPC No. 2543-8 – showing location of project works and project boundary - which exhibits are attached to the Application; (ii) the Disposal Area Number 1, which is located on a bluff on the west side of the Milltown Dam reservoir, just south of the Bonner Tunnel (an abandoned railway tunnel), where The Montana Power Company deposited sediment removed from upstream of the Milltown Dam spillway in connection with repairs to the spillway made in 1986 and 1987; (iii) the Milltown Rehabilitation Upland Disposal Area, which is located on the west side of the Milltown Dam reservoir, in the vicinity of the abandoned Chicago, Milwaukee, St. Paul & Pacific Railroad tracks, where The Montana Power Company deposited sediment removed from upstream of the base of the Milltown Dam in connection with repairs to the dam made in 1988 and 1989; and (iv) constituting additional lands or interests in lands related to the Milltown Dam Project as included in the descriptions set forth below. A description of such lands, located in Missoula County, Montana, is, without limiting the generality of the introductory paragraph or the foregoing general description, set forth on Appendix A, attached hereto.

2. Milltown Dam Project works consisting of the following:

    (a) a dam in four sections: a 244-foot concrete abutment wall, a 152-foot concrete gravity section (maximum height about 45 feet), integral with the powerhouse, a 52-foot long concrete sluice gate section containing four steel gates 9 feet by 14 feet and a 216-foot long rock crib spillway beyond the concrete sluice;

    (b) a reservoir with a capacity of approximately 300 acre-feet at maximum pond elevation of about 3,260 feet;

    (c) a brick powerhouse containing five units with a total installed capacity of 3,040 kilowatts;

Schedule 1-1

(d) 2.3 kv bus at the plant; and

(e) appurtenant facilities; the location, nature and character of which are more specifically shown and described by <u>Exhibit L</u>, Sheet 1, FPC No. 2543-2 (Showing Project plan and elevations), Sheet 2, FPC No. 2543-3 (showing Powerhouse floor plan), Sheet 3 FPC No. 2543-4 (showing Powerhouse section), and Sheet 4, FPC No. 2543-5 (showing abutment wall elevation and sections), and <u>Exhibit M</u> (consisting of two typewritten pages entitled "General Description of Mechanical, Electrical, and Transmission Equipment, Milltown Project"), which exhibits were attached to the Application.

3. All other structures, fixtures, equipment or facilities used or useful in the maintenance and operation of the Milltown Dam Project and located on the Milltown Dam Project area and all riparian or other rights, the use or possession of which is necessary or appropriate in the maintenance or operation of the Milltown Dam Project.

4. The interconnection point (the "**Interconnection Point**") between the Milltown Dam Project and the Transferred Assets is that point located on the utility pole structure lying north of the Montana Rail Link Railroad right of way, approximately 500 feet north of the Milltown Dam Project, one pole south of the radial line's intersection with Transferor circuit number 61.

5. Except for the transmission line from the Milltown Dam Project powerhouse to the Interconnection Point, the Excluded Assets shall not include any electric or gas transmission or distribution lines or related facilities which are located on the lands described in Section 1 to this <u>Schedule 1</u>.

6. All water rights appurtenant to the Milltown Dam Project including without limitation the following:

(i) Water Right Number 76F 30850 00, Ground Water Certificate;
(ii) Water Right Number 76F 94407 00, Statement of Claim;
(iii) Water Right Number 76M 94404 00, Statement of Claim;
(iv) Water Right Number 76M 94405 00, Statement of Claim and
(v) Water Right Number 76M 94406 00, Statement of Claim.

Schedule 2.2-2

APPENDIX A
(TO SCHEDULE 1,
MILLTOWN DAM ASSETS)

## MILLTOWN DAM PROJECT REAL PROPERTY
## MISSOULA COUNTY, MONTANA
## FEE LANDS, EASEMENTS AND OTHER INTERESTS

A.  **FEE LANDS**

Parcel I

That certain piece, parcel or tract of land located in Sections 20, 21, 22, 27, 28 and 34, Township 13 North, Range 18 West, M.P.M., Missoula County, Montana, and more particularly described as follows, to-wit:

Beginning at the Southwest corner of the E½SE¼NE¼ of Section 20, Township 13 North, Range 18 West, M.P.M., and running thence South to the South line of the NE¼SE¼ of said Section 20; thence East along said South line of the NE¼SE¼ of said Section 20 and along the North line of SW¼SW¼ of Section 21, 820 feet more or less to a point where the North line of the SW¼SW¼ of Section 21 intersects the East right-of-way line of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company; thence along said East line of said Railroad right-of-way, across and through the S½SW¼ of Section 21, NW¼ and E½ of Section 28, 8255 feet, more or less, to the East line of said Section 28; thence South along the East line of said Section 28, 500 feet, more or less, to the Southeast corner of said Section 28; thence South along the West line of the NW¼ of Section 34, 2830 feet, more or less, to the Southwest corner of the NW¼ of Section 34; thence East along the South line of the NW¼ of Section 34, 2640 feet, more or less, to the center of said Section 34; thence North along the center line of Section 34, 920 feet; thence North 73° East, 367 feet; thence due East 250 feet; North 31° East, 334 feet, more or less to a point at the high water line on the South bank of the Missoula or Hellgate River; thence Northwesterly along the South bank of said river, and following the high water line of said River, on the West and South banks thereof to the West boundary line of NE¼ of Section 34; thence North and across said River, and along the North and South center line of said Section 34, to the South line of Section 27; thence Easterly along the South line of said Section 27, 1252 feet; thence North 5°5' West, 370 feet; thence North 23°10' West, 467 feet; thence North 35°25' West, 250 feet; thence North 8°20' West, 223 feet; thence North 27°30' West, 124 feet; thence North 44°30' West, 325 feet; thence North 79°30' West, 138 feet; thence North 30°01' West, 452.9 feet; thence South 53°17' West, 260 feet, more or less, to the center line of Section 27; thence Northerly along the center line of said Section 27, to the South boundary of the Northern Pacific Railway Company right-of-way; thence Northwesterly and along said right-of-way line and across the NW¼ of Section 27, 3260 feet, more or less, to a point, where said right-of-way line intersects the North line of Section 27; thence Westerly along said North line of Section 27 and the North line of Section 28, 3220

Schedule 1 (Appendix A)-1

feet, more or less, to the Northwest corner of the NE¼ of Section 28; thence Northerly along the North and South center line of Section 21, 1850 feet, more or less, to the high water line of the North bank of the Missoula River; thence Northwesterly and following the high water line of said River, and along said bank through the NE¼SW¼ of Section 21, to the confluence of the Big Blackfoot River therewith; thence Easterly and following the high water line of the said Big Blackfoot River, on the South bank thereof, through the SE¼NW¼ of said Section 21 to the North and South center line of said Section 21; thence Northerly and across the said Big Blackfoot River and following the East line of the NW¼ of Section 21, to the high water line of the North bank of said Big Blackfoot River; thence Westerly and following the course of the high water line on the North bank of the Big Blackfoot River, in all its bends, to a point where said high water line on the North bank aforesaid, intersects the South right-of-way line of the Northern Pacific Railway Company in the NW¼ of Section 21; thence Westerly and along the said South right-of-way line to the West side line of the E½SE¼NE¼ of Section 20; thence Southerly along said last mentioned line 875 feet, more or less, to the East and West center line of said Section 20, the point of beginning.

Recording Reference: Book 108 of Deeds at page 583

Parcel II

A strip of land 400 feet wide in the Northwest quarter (NW¼) of Section 21 and the East half of the Northeast quarter of the Northeast quarter E½NE¼NE¼ of Section 20, Township 13 North, Range 18 West, M.P.M., its outside boundaries being 200 feet on each side of the center line of the abandoned main track of the Northern Pacific Railway Company as the same was originally located and staked out across said premises (and which said center line is now the center line of the track of the Missoula Street Railway) and extending from the West line of the E½NE¼NE¼ of Section 20, Township 13 North, Range 18 West, M.P.M., to the high water line of the reservoir located in the SE¼NW¼ of said Section 21, Township 13 North, Range 18 West, M.P.M.

Excepting and reserving therefrom, however, and there is hereby specifically excepted and reserved therefrom a strip of land 80 feet wide, being 40 feet on each side of said center line of the abandoned main track of the Northern Pacific Railway Company as the same was originally located and staked out across the above described premises, and now occupied by the Missoula Street Railway.

Recording Reference: Book 126 of Deeds at page 472

Parcel III

A strip of land 80 feet wide in the NW¼ of Section 21 and the E½NE¼NE¼ of Section 20, Township 13 North, Range 18 West, M.P.M., being 40 feet on each side of the center line of the main track of the Northern Pacific Railway

Schedule 1 (Appendix A)-2

Company as the same was originally located and staked out across said premises, and extending from a line drawn at right angles to said center line of the main track at the point of intersection of the original Southwesterly boundary line of the Northern Pacific Railway Company right-of-way with the center line of the new main track of said Railway Company as the same is now constructed; thence over, along and across the NW¼ said of Section 21 and the E½NE¼NE¼ of said Section 20.

Recording Reference: Book 126 of Deeds at page 473

Parcel IV

All that portion of the Chicago, Milwaukee, St. Paul and Pacific Railroad Company's 150 foot wide right-of-way and wye track right-of-way in the Northwest quarter (NW¼) and the Northwest quarter of the Northeast quarter (NW¼NE¼) of Section 28 and the Southwest quarter (SW¼) of Section 21, the East half of the East half of the Southeast quarter (E½E½SE¼) and the East half of the Southeast quarter of the Northeast quarter (E½SE¼NE¼) of Section 20, Township 13 North, Range 18 West, P.M.M.

EXCEPT that portion in the SE¼NW¼ said Section 28 lying southeasterly of former Railroad Engineer's Station 433+84, as measured perpendicular and at right angles to the Grantor's former main track centerline.

Recording Reference: Book 223 of Micro Records at page 564

Parcel V

The Northwest Quarter (NW¼) of Section Thirty-four (34), Township Thirteen (13) North of Range Eighteen (18) West, containing 160 acres. And also all that portion of the Southwest Quarter of the Northwest Quarter (SW¼NW¼) of Section Twenty-one (21), Township Thirteen (13) North of Range Eighteen (18) West, Montana Principal Meridian, lying south of the present used right of way of the Northern Pacific Railway Company, passing through said Southwest Quarter of the Northwest Quarter (SW¼NW¼).

Recording Reference: Book 126 of Deeds at Page 442

Parcel VI

All of Transferor's right, title and interest, if any, in the tracts described in Certificate of Survey No. 3441 filed in the office of the Clerk and Recorder of Missoula County, Montana in Book 256, Page 0638.

EXCEPTING from Parcels I, II, III, IV V and VI the interests conveyed by the following instruments:

(i)  Quitclaim Deed recorded April 30, 1941 in Book 131, Page 77, records of Missoula County, Montana.

Schedule 1 (Appendix A)-3

(ii) Quitclaim Deed recorded April 23, 1963 in Book 228, Page 272, records of Missoula County, Montana.

(iii) Quitclaim Deed recorded July 2, 1963 in Book 229, Page 335, records of Missoula County, Montana.

(iv) Bargain and Sale Deed recorded March 18, 1942 in Book 131, Page 427, records of Missoula County, Montana.

(v) Modification of Reservation of Right to Flood, recorded September 7, 1983 in Book 194, Page 747, records of Missoula County, Montana.

(vi) Bargain and Sale Deed, recorded June 11, 1942 in Book 131, Page 504, records of Missoula County, Montana.

(vii) Correction Deed recorded April 12, 1983 in Book 186, Page 2233, records of Missoula County, Montana.

B. **EASEMENTS**

Easements granted or reserved to The Montana Power Company, or its predecessors in interest, or otherwise described, in the following-described instruments, for the right to flood and other purposes, but only to the extent such easements are used or held for use in connection with the operation of the Milltown Dam Project:

| Grantor | Grantee | Recorded | Book | Page |
|---|---|---|---|---|
| Big Blackfoot Milling Company | Clark-Montana Realty Company | October 19, 1906 | 37 | 217 |
| Missoula Public Service Company | The Montana Power Company | December 20, 1929 | 108 | 583 |
| The Montana Power Company | Luke M. Harris | March 18, 1942 | 131 | 427 |
| The Montana Power Company | John Ray Teague | June 11, 1942 | 131 | 504 |
| Anaconda Copper Mining Company | The Montana Power Company | November 30, 1942 | 131 | 625 |
| The Montana Power Company | Jack L. Green, II | April 12, 1983 | 186 | 2233 |
| The Montana Power Company | Ralph Roy Harris and June Harris | September 7, 1983 | 194 | 747 |
| Champion | The Montana | June 6, 1986 | 241 | 0932 |

Schedule 1 (Appendix A)-4

| International Corporation | Power Company | | | |
|---|---|---|---|---|

C. <u>OTHER RIGHTS IN REAL PROPERTY</u>

All other rights and interests in real property owned by Transferor within the boundary of the Milltown Dam Project which are used or held for use in connection with the Milltown Dam Project and all other real property rights and interests used or held for use in connection with the Milltown Dam Project.

Schedule 1 (Appendix A)-5

NOR000227