UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------x
MAGTEN ASSET MANAGEMENT CORP. and :
LAW DEBENTURE TRUST COMPANY OF :
NEW YORK, :
 :
       Plaintiffs, :
 : Civil Action No. 04-1494-JJF
    - against - :
 :
NORTHWESTERN CORP., :
 :
       Defendant. :
 :
---------------------------------x
MAGTEN ASSET MANAGEMENT CORP., :
 :
       Plaintiff, :
 :
    - against - : Civil Action No. 05-499-JJF
 :
MIKE J. HANSON and ERNIE J. KINDT, :
 :
       Defendants. :
 :
---------------------------------x

City of Washington    )
                       : ss
District of Columbia  )

### DECLARATION OF CHARLES A. PATRIZIA IN SUPPORT OF NORTHWESTERN CORP.'S MOTION FOR SUMMARY JUDGMENT

CHARLES A. PATRIZIA, ESQ., under penalty of perjury, deposes and says:

1.    I am a member of the Bar of the District of Columbia and a partner at the law firm of Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"). I submit this declaration in support of NorthWestern Corporation's Motion for Summary Judgment.

2.      Beginning in early 2000, Paul Hastings represented NorthWestern Corporation ("NorthWestern") in connection with its acquisition of the regulated electric utility and natural gas businesses of The Montana Power Company ("MPC"), hereafter referred to as the "Transaction." I was personally involved in that representation. As part of my involvement in the representation, I advised NorthWestern on regulatory issues relating to the potential application of the Public Utility Holding Company Act of 1935 ("PUHCA") to the Transaction and to the corporate structures related to the Transaction.

3.      As set forth below, the Transaction occurred in two steps. The first step, which was completed as of February 15, 2002, involved MPC's transfer of its regulated electric and natural gas utility operations, together with certain unassociated liabilities, to MPC's wholly owned, newly formed subsidiary, Montana Power LLC ("MPLLC"), and NorthWestern's acquisition of 100% of the membership interests of MPLLC. The second step, which was completed on November 15, 2002, involved the transfer of all MPLLC's assets, except those specifically related to the Milltown Dam, to the parent company level at NorthWestern; the assumption by NorthWestern of MPLLC liabilities; and the entry by NorthWestern into support agreements with MPLLC to ensure that MPLLC would have the financial wherewithal to meet the obligations associated with its remaining assets. The Milltown Dam was associated with an active Superfund site, and NorthWestern sought to continue to segregate that potential liability from the remaining MPLLC operations. Therefore, NorthWestern did not want to move assets associated with Milltown Dam to the parent company level. This two-step process was contemplated from the very beginning of the Transaction. Thereafter, in July 2003,

MPLLC became an "exempt wholesale generator" ("EWG"), pursuant to the provisions of PUHCA, as amended.

4.      The steps outlined in paragraph 3, above, were a part of structuring the Transaction so as to achieve two reasonable and legitimate business objectives of NorthWestern: (i) to avoid burdensome and duplicative regulation; and (ii) to address the interests of rating agencies and capital markets, which preferred that NorthWestern hold the MPLLC assets at the parent level.

**The Structure of the Transaction**

5.      Prior to the Transaction, NorthWestern held all of its utility operations at the parent company level. Because it had no subsidiaries that were "utility companies" as defined by PUHCA, NorthWestern was not regulated by the Securities and Exchange Commission ("SEC") as a "utility holding company". Rather, NorthWestern was regulated by the Federal Energy Regulatory Commission under the Federal Power Act (as to sales of electric power at wholesale in interstate commerce, and the transmission of electricity in interstate commerce) and by either state regulatory authorities as to its retail electric operations, or its franchise agreements as to its gas operations.

6.      Because of various restrictions and other limitations under PUHCA, NorthWestern preferred that the Transaction not result in its becoming a registered utility holding company, and therefore sought to structure the Transaction in a way that would avoid that possibility. However, MPC preferred that the initial sale be in the form of a "stock" rather than an "asset" transaction, and the presence of certain assets in MPLLC would make MPLLC an "electric utility company" for PUHCA purposes.

7.     The final structure, described above in paragraph 3, assured that at the end of the Transaction the utility related operations (except for Milltown Dam) would all be held at the parent company level at NorthWestern, and Milltown Dam would either be sold to a third party or would be qualified as an exempt wholesale generator. Thus, NorthWestern would remain structured so that it held no subsidiary that would be an "electric utility company", and NorthWestern would not be not a "utility holding company" within the meaning of PUHCA. In that form, NorthWestern would remain subject to state regulation as to retail sales of electricity, and to its franchise agreements as to retail sales of natural gas, but would not be subject to restrictions or limitations under PUHCA.

8.     Structuring the Transaction in this manner also held other benefits for NorthWestern. Specifically, the transfer of the MPLLC assets to the parent level at NorthWestern provided greater transparency into NorthWestern's utility operations and was viewed favorably by the rating agencies and the capital markets.

**NorthWestern's 3(a)(3) Application**

9.     Although the completion of the Transaction meant that NorthWestern was not a utility holding company and was therefore outside of PUHCA, during the period from the initial acquisition of MPLLC until the time that the utility operating assets were moved to the parent level and Milltown Dam became an EWG, NorthWestern was technically a "holding company" within the meaning of PUHCA. Because the transfer of assets could not be completed until NorthWestern had identified all of the MPLLC assets (including bills of sale and deeds, where applicable) and obtained various consents and regulatory approvals, there was inevitably some time between the initial acquisition of

MPLLC (the first step in the Transaction), and structural restoration of NorthWestern as a "flat" utility company. In that circumstance, unless it otherwise qualified for an exemption from PUHCA, NorthWestern would have been subject to federal regulation and oversight under PUHCA, even though it was clear that there was no long-term basis for that regulation.

10. The regulatory implications of the two-step process had been identified at the very earliest stages of considering the Transaction, and NorthWestern explored throughout the Transaction period the possible bases on which it would qualify for exemption from PUHCA regulation. As part of that exploration, NorthWestern submitted draft applications under Section 3 of PUHCA to the SEC staff, as early as December 2000. Ultimately, by the end of 2001, it became clear in discussions with the SEC staff that because of various factors, including the relative size of NorthWestern's utility businesses in Montana, South Dakota, and Nebraska following the acquisition of MPLLC, NorthWestern would not meet the quantitative standards historically used by the SEC staff under sections 3(a)(1) and 3(a)(2) of PUHCA. After further discussion of the issues with the SEC staff, in February 2002 NorthWestern filed an application for an exemption under Section 3(a)(3) of PUHCA to address its status during the period necessary to complete the structural restoration. In the application, NorthWestern showed that, given the lines of business it was then conducting and the historic gross revenues of those various businesses, NorthWestern was only "incidentally a holding company, being primarily engaged or interested in one or more businesses other than the business of public-utility company and . . . not deriving, directly or indirectly, any

material part of its income from any one or more subsidiary companies, the principal business of which is that of a public-utility company."

11.  Under Section 3(c) of PUHCA, NorthWestern's application for a 3(a)(3) exemption was effective upon its good faith filing with the Securities and Exchange Commission, and remained in place until the MPLLC assets were transferred to the parent company level in November 2002 and the Milltown Dam thereafter qualified as an EWG. In this respect, the 3(a)(3) exemption was "temporary" and had always been intended to be temporary—not because there was any specific time limitation under PUHCA, but rather because NorthWestern had always intended to return promptly to its original "flat" utility structure, and once the necessary steps were taken to do so, the exemption was no longer necessary.

12.  Indeed, NorthWestern in its application for the 3(a)(3) status specifically noted that it would hold that status only for a limited period necessary to accomplish the restoration to a flat structure.

13.  Thus, in the 3(a)(3) application, NorthWestern explained, for example, that its purchase of MPLLC would "proceed in two steps: As part of the first step, [Montana Power] will transfer the MPC Utility Operations to a newly-formed subsidiary Montana limited liability company, Montana Power LLC, and NorthWestern will acquire 100% of the membership interests of the LLC." Form U-1 Application Under the Public Utility Holding Company Act of 1935, filed Feb. 14, 2002, at NOR 3484 (attached as an exhibit to the affidavit of Nancy E. Delaney in support of NorthWestern Corp.'s motion for summary judgment).

14. The application further explained that although NorthWestern would be a utility holding company "[u]pon closing of the first step of the Transaction," that status would be temporary and was "not anticipated to last more than 18 months from the date of the closing of the first step of the transaction." (Id.)

15. Finally, the application provided that, "upon receipt of any necessary regulatory approvals . . . NorthWestern currently intends to undertake the second step of the Transaction in which it would acquire the transmission and distribution assets of [MPLLC]." (Id.)

16. Structuring the Transaction in two stages had been described to the SEC staff, disclosed in other filings NorthWestern had made concerning the Transaction, and set out in statements by NorthWestern to analysts and rating agencies. As noted above, NorthWestern implemented the Transaction in the way described, and upon completion of the steps and the filing of an EWG application for Milltown Dam, NorthWestern was no longer a utility holding company and returned to its original status as outside PUHCA.

17. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on November 27, 2007.

CHARLES A. PATRIZIA