# EXHIBIT
# 5

ORIGINAL

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

OFFICE    THE SECRETARY

00 DEC 20 AM 10: 29

FEDERAL ENERGY
REGULATORY COMMISSION

The Montana Power Company )

NorthWestern Corporation )

)

)

Docket No. EC01-**47**-000

## JOINT APPLICATION OF THE MONTANA POWER COMPANY
## AND NORTHWESTERN CORPORATION FOR APPROVAL
## OF DISPOSITION OF JURISDICTIONAL FACILITIES

Charles A. Patrizia
William D. DeGrandis
Jennifer L. Hong
Paul, Hastings, Janofsky & Walker LLP
1299 Pennsylvania Avenue, NW, 10th Floor
Washington, DC  20004

Steven M. Kramer
Carla J. Urquhart
Milbank, Tweed, Hadley & McCloy LLP
1825 Eye Street, NW, Suite 1100
Washington, DC  20006

Eric R. Jacobsen
Vice President and General Counsel
Susan Anderson Bachman
Vice President – Legal Services
Alan D. Dietrich
Vice President – Legal Administration
NorthWestern Corporation
125 S. Dakota Avenue
Sioux Falls, South Dakota 58501

Michael P. Manion
Vice President and General Counsel,
Utility Division
The Montana Power Company
40 East Broadway
Butte, Montana  59701

*Counsel for*
*NorthWestern Corporation*

*Counsel for*
*The Montana Power Company*

December 20, 2000

FERC DOCKETED

DEC 2 0 2000

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................. 1
II. SECTION 33.2 REQUIREMENTS ....................................................................... 5

    A.  Name and Principal Business Address (18 C.F.R. § 33.2(a)) ........................... 5

    B.  Names and Addresses of Persons Authorized to Receive Notices and
    Communications (18 C.F.R. § 33.2(b)) ............................................................ 5

    C.  Description of The Applicants (18 C.F.R. § 33.2(c)) ........................................ 6
        1.  The Montana Power Company ............................................................... 6
        2.  NorthWestern Corporation .................................................................... 9
        3.  Exhibits Under 18 C.F.R. § 33.2(c) ..................................................... 11

    D.  Jurisdictional Facilities Owned, Operated or Controlled By
    Applicants:  Exhibit G (18 C.F.R. § 33.2(d)) .................................................. 13

    E.  The Proposed Transaction  (18 C.F.R. § 33.2(e)(1)-(4)) ................................ 13
        1.  Overview .............................................................................................. 13
        2.  Internal Corporate Restructuring ......................................................... 15
        3.  Structure of NorthWestern After The Proposed Transaction ............... 17
        4.  Specific Requirements Under 18 C.F.R. § 33.2(e) ............................... 18

    F.  Contracts Related To Proposed Transaction – Exhibit I  (18 C.F.R. §
    33.2(f)) ........................................................................................................... 19

    G.  The Proposed Transaction Is Consistent With The Public Interest:
    Exhibit J (18 C.F.R. § 33.2(g)) ...................................................................... 19
        1.  Standard of Review .............................................................................. 20
        2.  Effect On Competition ......................................................................... 20
        3.  Effect On Rates .................................................................................... 25
        4.  Effect On Regulation ........................................................................... 26

    H.  Map:  Exhibit K (18 C.F.R. § 33.2(h)) ........................................................... 28

    I.  Actions By Other Regulatory Bodies:  Exhibit L (18 C.F.R. § 33.2(i)) ......... 28
        1.  Montana PSC ....................................................................................... 28
        2.  Federal Trade Commission/Department of Justice .............................. 28
        3.  Securities and Exchange Commission .................................................. 28
        4.  Federal Energy Regulatory Commission .............................................. 29
        5.  Federal Communications Commission ................................................. 29
        6.  Other Filings ........................................................................................ 29

III. OPEN-ACCESS TRANSMISSION TARIFF ..................................................... 29
IV. CODE OF CONDUCT ........................................................................................ 31
V.  PROPOSED ACCOUNTING ENTRIES (18 C.F.R. § 33.5) ............................. 31
VI. FORM OF NOTICE (18 C.F.R. § 33.6) ............................................................. 32

i

VII.   **PROCEDURAL MATTERS** ........................................................................... 32
VIII.  **CONCLUSION** ............................................................................................ 33

| | |
|---|---|
| Form of Notice | Attachment 1 |
| Proposed Accounting Entries | Attachment 2 |
| Prepared Direct Testimony of Jack Haffey | Attachment 3 Exhibit No. MPC-100 |
| Prepared Direct Testimony of William H. Hieronymus | Attachment 4 Exhibit Nos. MPC-200-203 |
| Prepared Direct Testimony of Michael Hanson | Attachment 5 Exhibit No. NW-100 |
| Business Activities of Applicants | Exhibit A |
| Energy Subsidiaries and Affiliates | Exhibit B |
| Organizational Charts | Exhibit C |
| Joint Ventures, Strategic Alliances, Tolling Arrangements, Other Business Arrangements | Exhibit D |
| Common Officers or Directors | Exhibit E |
| Wholesale Power Sales and Unbundled Transmission Customers | Exhibit F |
| Jurisdictional Facilities Owned, Operated Or Controlled By Applicants | Exhibit G |
| Jurisdictional Facilities and Securities Associated With or Affected By The Transaction | Exhibit H |
| Contracts Related To Proposed Transaction | Exhibit I |
| Consistency With The Public Interest | Exhibit J |
| Map | Exhibit K |
| Other Regulatory Actions | Exhibit L |

ii

**ORIGINAL**

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

OFFICE · FILED
THE SECRETARY
00 DEC 20 AM 10: 29

FEDERAL ENERGY
REGULATORY COMMISSION

The Montana Power Company          )
                                   )          Docket No. EC01-47-000
NorthWestern Corporation           )

**JOINT APPLICATION OF**
**THE MONTANA POWER COMPANY AND NORTHWESTERN CORPORATION**
**FOR APPROVAL OF DISPOSITION OF JURISDICTIONAL FACILITIES**

## I.     INTRODUCTION

The Montana Power Company ("Montana Power"), on behalf of itself, Touch America

Holdings, Inc. and The Montana Power L.L.C., and NorthWestern Corporation

("NorthWestern"), on behalf of itself and NorthWestern Public Service, a division of

NorthWestern that is a jurisdictional public utility (collectively, the "Applicants"), submit this

Joint Application under Section 203 of the Federal Power Act (the "FPA")[1] and Part 33 of the

Federal Energy Regulatory Commission's (the "Commission") regulations,[2] and hereby request

authorization and approval for the disposition of jurisdictional facilities described herein in order

to consummate the sale of Montana Power's utility business to NorthWestern.[3] The sale of

Montana Power's electric and natural gas utility businesses to NorthWestern is part of an overall

effort by Montana Power to sell all of its energy businesses and to thereafter focus its resources

---

[1]      16 U.S.C. §824b.

[2]      18 C.F.R. Part 33.

[3]      As discussed herein, the Applicants seek authorization for the disposition of jurisdictional
facilities in connection with the sale of Montana Power's utility business to NorthWestern and the internal
restructuring of Montana Power prior to the sale of the utility business.

on the operation and development of its separately incorporated subsidiary, Touch America, Inc. ("Touch America"), a provider of multiple lines of telecommunications services.

The process of transforming Montana Power into Touch America began earlier this year with Montana Power's public announcement to sell each of its energy businesses and focus on telecommunications. Montana Power is selling its energy businesses in four separate business units (the oil and gas, coal, independent power, and utility business units), with each of the four business units being sold to separate, unaffiliated companies. Specifically, PanCanadian Petroleum Limited has acquired Montana Power's oil and gas subsidiaries, Westmoreland Coal Company has signed an agreement to acquire Montana Power's subsidiaries in the coal business, and BBI Power Corporation has signed an agreement to acquire Montana Power's independent power subsidiary.[4] The sale of the utility business unit to NorthWestern, the subject of this Joint Application, constitutes the final business unit to be sold, and will complete the transformation to Touch America. Upon closing of the proposed transaction, NorthWestern will hold all utility interests of Montana Power, and Touch America will operate as a completely independent telecommunications company. As explained in this Joint Application, the public utility operations held by NorthWestern will primarily be in the wires business, as neither of the companies have control over significant supplies of electric generation.

The disposition of jurisdictional facilities described herein is consistent with the public interest and will not create anti-competitive effects, impair the effectiveness of regulation, or adversely affect customer rates. Montana Power and NorthWestern have minimal generation

---

[4]     The sales of the oil and gas and coal business units do not involve the merger or disposition of facilities that are subject to the FPA. The Commission recently authorized the disposition of jurisdictional facilities in connection with the sale of the independent power business unit. *Continental Energy Services, Inc. and BBI Power Corp.*, 93 FERC ¶62,133 (November 21, 2000). The sale of the independent power and other business units will be consummated separately from the sale of the utility business unit, and will not involve NorthWestern or any of its affiliates.

assets and their electric utility facilities are located in the Western and Eastern Interconnections, respectively – thus, the two public utilities operate in non-contiguous and non-synchronous control areas, and do not compete in the same wholesale or retail electric power markets, so there will be no adverse competitive effects from the proposed transaction. Moreover, as explained in Exhibit D to this Joint Application, both Montana Power and NorthWestern Public Service have submitted filings in accordance with Order No. 2000[5] and are committed to participating in Commission-approved Regional Transmission Organizations ("RTO") in their respective regions. The proposed transaction will not involve the creation of a registered holding company under the Public Utility Holding Company Act of 1935 ("PUHCA") nor affect the jurisdiction or regulatory authority of the affected state commissions, and is subject to review by the Montana Public Service Commission ("Montana PSC") – thus, there will be no adverse effect on regulation. Customer rates will not be adversely affected by the proposed transaction. In this regard, the Applicants have made commitments in this Joint Application that, as a condition of the Commission's approval of the proposed transaction, they will exclude from Commission-jurisdictional cost-based rates all transaction-related costs, including the acquisition premium, in excess of transaction-related savings.

Because the proposed transaction does not raise vertical or horizontal market power concerns, consistent with the Commission's 1996 Merger Policy Statement ("Merger Policy Statement),[6] previous Commission orders issued pursuant to Section 203 of the FPA,[7] and the

---

[5]    *Regional Transmission Organizations,* Order No. 2000, 65 Fed. Reg. 809, III FERC Stats. & Regs. ¶31,089 (1999), *order on reh'g,* Order No. 2000-A, 65 Fed. Reg. 12088 III FERC Stats. & Regs. ¶31,092 (2000), *review pending sub nom., Public Utility Dist. No. 1 of Snohomish Cty., WA v. FERC,* Nos. 00-1174, *et al.* (D.C. Cir).

[6]    *Inquiry Concerning The Commission's Merger Policy Under The Federal Power Act: Policy Statement,* Order No. 592, 61 Fed. Reg. 68,595, III FERC Stats. and Regs. ¶31,044 at 30,113 (1996),

abbreviated filing requirements contemplated in Order No. 642,[8] the Applicants are filing this Joint Application without full horizontal or vertical competitive analyses. As is explained in greater detail below, the Applicants submit that full horizontal and vertical analyses are unnecessary because they do not operate in the same geographic markets, and no party can reasonably allege that either of the companies is a perceived potential competitor in the same geographic market as the other.[9]

The Applicants anticipate that they will close the proposed transaction in May 2001, and request approval of the proposed transaction, without a trial-type evidentiary hearing, as soon as possible, but by no later than March 31, 2001, to allow sufficient time for them to complete all necessary shareholder and regulatory approvals. Because the proposed transaction does not trigger the need for the filing of either a horizontal or vertical competitive analysis, the Applicants respectfully submit that this Joint Application should be subject to a shortened notice period of 30 days, consistent with the Commission's pronouncements in Order No. 642.[10] The Applicants have submitted herein all exhibits and information in the form and substance required under the recently revised Part 33 of the Commission's regulations, and respectfully request any waiver of the Commission's currently effective regulations that is deemed to be necessary.

---

*order on reconsideration*, Order No. 592-A, 62 Fed. Reg. 33,341, 79 FERC ¶61,321 (1997) ("Merger Policy Statement").

[7]     *See e.g. Duke Power Co. and PanEnergy Corp.*, 79 FERC ¶61,236 at 62,037 (1997).

[8]     *Revised Filing Requirements Under Part 33 of the Commission's Regulations*, Order No. 642, 65 Fed. Reg. 70984, 93 FERC ¶61,164 (November 15, 2000) ("Order No. 642").

[9]     *See* 18 C.F.R. §§33.3(a)(2)(i)(ii); 33.4(a)(2)(i) (as promulgated in Order No. 642).

[10]     Order No. 642, *mimeo* at page 16.

## II.    SECTION 33.2 REQUIREMENTS

### A.    Name and Principal Business Address (18 C.F.R. § 33.2(a))

The Montana Power Company
40 East Broadway
Butte, Montana 59701

NorthWestern Corporation
125 S. Dakota Avenue, Suite 1100
Sioux Falls, South Dakota 57104

### B.    Names and Addresses of Persons Authorized to Receive Notices and Communications (18 C.F.R. § 33.2(b))

#### The Montana Power Company:

Michael P. Manion
Vice President and General Counsel,
Utility Division
The Montana Power Company
40 East Broadway
Butte, Montana 59701
Phone: (406) 497-2456
Fax: (406) 497-2451
E-mail: mpmanion@mtpower.com

Steven M. Kramer
Carla J. Urquhart
Milbank, Tweed, Hadley & McCloy, LLP
1825 Eye Street, NW, Suite 1100
Washington, DC 20006
Phone: (202) 835-7508
Fax: (202) 835-7586
E-mail: skramer@milbank.com
E-mail: curquhart@milbank.com

#### NorthWestern Corporation:

Eric R. Jacobsen,
Vice President and General Counsel
Susan Anderson Bachman
Vice President – Legal Services
Alan D. Dietrich
Vice President – Legal Administration
NorthWestern Corporation
125 S. Dakota Avenue
Sioux Falls, South Dakota 58501
Phone: (605) 978-2908
Fax: (605) 978-2963
E-mail: eric.jacobsen@northwestern.com
E-mail: susan.anderson_bachman@northwestern.com
E-mail: alan.dietrich@northwestern.com

Charles A. Patrizia
William D. DeGrandis
Jennifer L. Hong
Paul, Hastings, Janofsky & Walker LLP
1299 Pennsylvania Avenue, NW, 10th Floor
Washington, DC 20004
Phone: (202) 508-9500
Fax: (202) 508-9700
E-mail: capatrizia@phjw.com
E-mail: wddegran@phjw.com
E-mail: jlhong@phjw.com

5

C. **Description of The Applicants (18 C.F.R. § 33.2(c))**

1. **The Montana Power Company**

Montana Power, a Montana corporation with general offices in Butte, Montana, is a diversified electric and gas utility providing regulated electric and natural gas services within Montana and contract electric services to Yellowstone National Park.[11] Montana Power is a "public utility" within the meaning of Section 201(e) of the FPA[12] and is regulated as a public utility by the Montana PSC.[13] It provides wholesale sales, transmission and retail distribution services to electric and natural gas markets within Montana. The Montana Power electric service area encompasses 107,600 square miles in Montana. Montana Power owns and operates 7,000 miles of electric transmission lines and 16,000 miles of electric distribution lines. It also owns 3,500 miles of natural gas distribution lines and 2,000 miles of natural gas transmission lines, four natural gas storage reservoirs, and three propane distribution systems. The Commission has granted Montana Power authorization to make wholesale sales of electricity at market-based rates.[14]

In addition to its public utility business in Montana, Montana Power has held a number of subsidiary companies involved in the energy and telecommunications industries. As stated above, Montana Power is in the process of selling all of its energy businesses, however, so that it may focus its resources entirely upon the development and operation of Touch America, its

---

[11]    The description of Montana Power provided herein pertains only to Montana Power's utility business, which is the subject of this Joint Application.

[12]    16 U.S.C. §824(e).

[13]    Section 69-3-101 *et seq.* of the Montana Code Annotated authorizes the Montana PSC to regulate public utilities in the State of Montana.

[14]    *Montana Power Co.*, 78 FERC ¶61,005 (1997).

telecommunications business. Montana Power's utility business unit is the only energy business that is being acquired by NorthWestern.

Upon closing of the proposed sale to NorthWestern, Montana Power will have completed its transformation into Touch America. A detailed explanation of Montana Power's internal corporate restructuring necessary to effect the transformation to Touch America is provided below.

Last year, Montana Power completed the sale of substantially all of its electric generating facilities to PPL Montana, LLC ("PPLM").[15] Montana Power pursued this divestiture path for several reasons, including the new and different aptitudes needed to succeed in the competitive electricity market. Montana Power's interests in generation capacity now consists solely of the following: (1) its ownership interest in Milltown Dam (3 MW);[16] (2) purchases of electric energy from 15 qualifying facilities ("QFs") under long-term contracts (approximately 101 MW); (3) a leasehold interest in Colstrip Unit 4 (222 MW); (4) long-term purchase contracts with Avista Corporation (100 MW) and Avista Energy, Inc. (40 MW), that expire on July 31, 2001, and May 31, 2001, respectively; and (5) two buyback agreements with PPLM - the first for the purchase of a portion of the output from the Colstrip 3 facility (200 MW) through December 16, 2001, and the second for the purchase of a variable portion of the output from the other facilities that were sold to PPLM to serve residual retail load, that will remain in effect through June 30,

---

[15]    Montana Power was granted authority to sell its jurisdictional facilities to PPLM by Commission order issued June 22, 1999. *See Montana Power Co.*, 87 FERC ¶61,344 (1999).

[16]    Earlier this year the Commission issued an order extending the term of the license for the Milltown Project No. 2543 until December 31, 2006. *Montana Power Co.*, 91 FERC ¶61,280 (2000).

2002.[17]   Output from Milltown Dam, the QF power purchase contracts, and the buyback contracts with PPLM is used to serve retail customers only.  208 MW of the output from the Colstrip 4 facility is sold under existing wholesale contracts.[18]  Output under the power purchase contracts with Avista Corporation and Avista Energy, Inc. is committed to serve  two retail and three wholesale customers. In other words, almost all of the generation is used to serve retail load and existing supply contracts, and very little of the available generation is used to make additional wholesale sales of electric energy.

Montana Power is neither a registered nor an exempt holding company under PUHCA. Moreover, this transaction will not result in the creation by or for Montana Power or NorthWestern of a new registered holding company.

### a.    Utility Business Subsidiaries

The utility business unit holds certain subsidiaries that will also be included in the sale to NorthWestern.[19] The only subsidiary in a relevant energy business for purposes of this Joint Application is Canadian-Montana Pipe Line Corporation ("CMPL").  CMPL owns and operates natural gas pipeline border-crossing facilities for the transportation of natural gas between Canada and the United States.  Three of the four border-crossing facilities that CMPL currently owns will be sold to 3698157 Canada Ltd., a wholly-owned subsidiary of Altana Exploration

---

[17]    The June 30, 2002, expiration date coincides with the date when the rate moratorium period ends for power supply for small retail customers under the State of Montana restructuring legislation. *See Section 69-8-211(6)*, Montana Code Annotated.

[18]    In addition, 8 MW is unavailable due to transmission line losses.  The remaining 6 MW is typically used to provide imbalance services, and is occasionally sold on a short-term, non-firm basis.

[19]    Montana Power also operates two business trusts that will be transferred to NorthWestern. Montana Power Capital 1 is a statutory business trust created under Delaware law, the sole purpose of which is to issue preferred securities for the benefit of Montana Power.  MPC Natural Gas Funding Trust is a special purpose statutory Delaware business trust that is the financing vehicle used in connection with recovery of transition costs associated with the transfer of the natural gas utility's production assets to unregulated affiliates in 1997.

Ltd., before the sale of the utility business unit to NorthWestern. The remaining facility is a 16-inch, 3.93 mile pipeline at Carway, Canada that interconnects on the south end with a Montana Power natural gas transmission line at the United States-Canadian border, and with Nova Gas Transmission Ltd. on the north end at a Nova meter station. The other subsidiaries are as follow:

(1) <u>Montana Power Services Company</u> – Was formed as an entity to hold common corporate properties and provide centralized shared administrative services for Montana Power and its subsidiaries, so that such services could be appropriately tracked and allocated among the various business units of Montana Power. Before the transaction with NorthWestern is consummated, Montana Power Services Company is expected to transfer its assets to either Touch America, Inc. or Montana Power, consistent with the internal corporate restructuring of Montana Power prior to the sale to NorthWestern.

(2) <u>One Call Locators, Ltd.</u> – Operates a line locating service that provides services to utilities and others that own or operate underground pipes and wires.

(3) <u>Colstrip Community Services Company</u> – Was established to provide real estate management and related services in Colstrip, Montana.

(4) <u>Discovery Energy Solutions, Inc.</u> - Discovery Energy Solutions, Inc. ("DES") provides a variety of energy-related products and services designed to reduce the energy costs of its customers. Industrial, commercial, and institutional segments in the western United States represent the primary target market of DES. Products and services include implementation of load management and efficiency improvement strategies, as well as information-based and consulting services that assist customers' evaluation of supply options, transmission and distribution alternatives, and energy market trends.

## 2. **NorthWestern Corporation**

NorthWestern is a Delaware corporation with its principal place of business located at 125 S. Dakota Avenue, Sioux Falls, SD 57104. NorthWestern and its subsidiaries are leading providers of value-added services and solutions for residential and business customers nationwide. NorthWestern's subsidiaries are as follow:

(1) <u>Expanets, Inc.</u> - A leading provider of integrated communication and data services.

(2) <u>Cornerstone Propane Partners, L.P.</u> - A publicly held retail propane distributor for which a NorthWestern subsidiary serves as managing general partner.

(3) <u>Blue Dot Services, Inc.</u> - A leading provider of air conditioning, heating, plumbing and related services.

(4)    <u>NorthWestern Services Group, Inc.</u> - Which includes the following entities: NorthWestern Energy, which provides energy supply, management and utilization services to commercial and industrial customers; NorthWestern Consumer Services, which offers cooling, heating, air quality control, installation, and maintenance to residential and small business consumers; and NorCom Advanced Technologies, which offers a one-stop solution for integration of voice, data and video communications needs.

NorthWestern's only relevant energy business for purposes of this Joint Application is its NorthWestern Public Service division. NorthWestern Public Service is a combination local distribution company engaged in the business of generating, transmitting, and distributing electricity and natural gas at retail to residential, commercial, and industrial customers in South Dakota and natural gas only in Nebraska. NorthWestern Public Service also owns electric generation and small connecting segments of electric transmission lines from such generation in Iowa and North Dakota. NorthWestern Public Service is a "public utility" within the meaning of Section 201 of the FPA[20] and as defined in the South Dakota Public Utilities Act (South Dakota Codified Laws Chapter 49-34A) and, as such, is subject to the jurisdiction of the South Dakota Public Utilities Commission. The State of Nebraska has no centralized regulatory agency with jurisdiction over the natural gas operations of NorthWestern Public Service. Natural gas rates are subject to regulation by the four municipalities in which NorthWestern Public Service operates (the Cities of Grand Island, Kearney and North Platte, Nebraska, and the Village of Alda, Nebraska).

NorthWestern Public Service is part of the Western Area Power Administration's ("WAPA") Upper Great Plains East control area, a control area certified by the North American Electric Reliability Council ("NERC"). NorthWestern Public Service currently has contracts for

---

[20]    16 U.S.C. §824(e).

transmission service from WAPA for delivery of power and energy from remote generation equivalent to approximately 50% of its bundled retail requirements. Given the expanse between population centers in its part of the country, NorthWestern Public Service works with WAPA, the rural electric cooperatives, and other investor-owned utilities in order to provide reliable electric service at affordable prices to the citizens in its region.

NorthWestern Public Service owns approximately 312 MW of generation capacity, consisting of its interests in three jointly-owned facilities, a three-year power purchase agreement for up to 28 MW from Basin Electric Cooperative, and its peaking units. NorthWestern Public Service expects to have surplus generation capacity of only 2 MWs for 2001 and is projected to be capacity short in 2002 and 2003. NorthWestern Public Service also purchases spinning reserves from Minnesota Power Company (5 MW). In addition, NorthWestern Public Service provides transmission services and makes limited wholesale sales of electric energy. NorthWestern Public Service provides transmission service for several small South Dakota communities and South Dakota state institutions of their allocation of power from WAPA and makes supplemental wholesale power sales to those entities for electric needs in excess of their allocation. NorthWestern Public Service also provides transmission service for the total electric requirements of the community of Groton, South Dakota, including its WAPA allocation and its supplemental energy provided by Heartland Consumers Power District. NorthWestern Public Service has a letter agreement with WAPA under which WAPA markets NorthWestern Public Service's excess energy in intersystem sales.

### 3.   **Exhibits Under 18 C.F.R. § 33.2(c)**

Section 33.2(c) of the Commission's recently revised regulations requires the filing of certain exhibits. The following is a listing of the Applicants' exhibits.

       a.       **Exhibit A** – Section 33.2(c)(1) requires a description of all business activities of the Applicants, including by charter or regulatory approval.

The descriptions required under Exhibit A are provided in the discussion above. A list of the Applicants' franchises is attached in Exhibit A to this Joint Application. The Applicants' business activities are also discussed in Exhibit D.

       b.       **Exhibit B** – Section 33.2(c)(2) requires a list of all energy subsidiaries and energy affiliates, and a description of the primary business in which each energy subsidiary and affiliate is engaged.

Exhibit B is provided in the discussion above.

       c.       **Exhibit C** – Section 33.2(c)(3) requires the filing of organizational charts depicting the Applicants' current and proposed post-transaction corporate structures (including any pending authorized but not implemented changes) indicating all parent companies, energy subsidiaries and energy affiliates.

Exhibit C is attached to this Joint Application.  Exhibit C includes organizational charts for NorthWestern as it is currently structured, as well as proposed organizational charts with both exempt holding company and divisional structures.  Exhibit C also includes organizational charts depicting the internal corporate restructuring of Montana Power.

       d.       **Exhibit D** - Section 33.2(c)(4) requires the filing of a  description  of  all joint ventures, strategic alliances, tolling arrangements or other business arrangements, including transfers of operational control of transmission facilities to Commission approved RTOs, both current, and planned to occur within a year from the date of filing.

Exhibit D is attached to this Joint Application, which includes a discussion of the Applicants' RTO plans.

e.    **Exhibit E** - Section 33.2(c)(5) requires that common officers or directors of parties to the proposed transaction be identified.

Montana Power and NorthWestern do not have any common officers or directors.

f.    **Exhibit F** - Section 33.2(c)(6) requires a description and location of wholesale power sales customers and unbundled transmission services customers served by the applicant or its parent companies, subsidiaries, affiliates and associate companies.

Exhibit F is attached to this Joint Application.

### D.    Jurisdictional Facilities Owned, Operated or Controlled By Applicants: Exhibit G (18 C.F.R. § 33.2(d))

The jurisdictional facilities owned, operated or controlled by the Applicants or their parent companies, subsidiaries, affiliates, and associate companies consist of rate schedules, contracts, books and records pursuant to which Montana Power and NorthWestern Public Service engage in the transmission and wholesale sale of electric energy. In addition, Montana Power owns 7,000 miles of electric transmission facilities, including 495 miles of 500 kV lines, 953 miles of 230 kV lines, 1,118 miles of 161 kV lines, and 4,287 miles at 115 kV and below. NorthWestern has joint interests in 48 miles of 345 kV lines and 18 miles of 230 kV lines, and owns 1,234 miles of electric transmission facilities at 115 kV and below.

### E.    The Proposed Transaction  (18 C.F.R. § 33.2(e)(1)-(4))

#### 1.    Overview

The sale of Montana Power's utility business to NorthWestern is part of Montana Power's overall strategy to exit the energy business and focus entirely on the operation and development of its telecommunications business, Touch America. This effort to exit the energy business has

followed Montana Power's extensive evaluation of how its companies can most effectively accomplish their business objectives in the energy and telecommunications industries. Although Montana Power has long been known as a safe, reliable provider of diverse energy products and services, during the 1990s its Touch America subsidiary expanded significantly through the development of its fiber optic network and the acquisition of wireless communication licenses. With an expanded presence in telecommunications, and the dramatic changes taking place in both the energy and telecommunications industries, Montana Power determined that in order to accomplish business objectives and meet customer needs in both business segments it would separate its energy and telecommunications businesses. Ultimately, this led to an announcement on March 28th of this year that Montana Power would sell its energy businesses through a bidding process and then focus its efforts and resources in the telecommunications sector.

After the public announcement of its plan to exit the energy industry, Montana Power began the process of selling each of its four energy business units (the oil and gas, coal, independent power, and utility business units), with the sale of the utility business unit, the subject of this Joint Application, constituting the final unit to be sold. Following a bidding process, NorthWestern was selected as the purchaser of Montana Power's utility business unit, and the parties negotiated the terms of a Unit Purchase Agreement, which is attached to this Joint Application in Exhibit I. As set forth in the Unit Purchase Agreement, the proposed transaction provides for the purchase of Montana Power in exchange for $602 million in cash plus the assumption of up to $488 million in existing Montana Power debt. Prior to closing of the proposed transaction, Montana Power plans to undertake an internal corporate restructuring, as discussed in detail below.

## 2.    **Internal Corporate Restructuring**

Prior to closing of the proposed transaction, Montana Power will undertake an internal corporate restructuring for purposes of effectuating the sale of its utility business to NorthWestern and completing its transformation to Touch America. The internal corporate restructuring will involve Montana Power's jurisdictional utility business as well as its non-jurisdictional, non-utility businesses. This Joint Application is seeking approval for the disposition of jurisdictional facilities in connection with the internal corporate restructuring as well as the sale of the utility business to NorthWestern.

Under its current corporate structure, Montana Power owns all of its regulated utility assets directly, as well as the subsidiaries described above, Entech, Inc. and Touch America Holdings, Inc. ("Touch America Holdings"). Entech, Inc. operates primarily as a holding company for Montana Power's non-regulated businesses and holds the stock of certain subsidiaries, including Touch America, Inc. Touch America Holdings was formed for purposes of facilitating the transformation of Montana Power. Once the transformation is completed, Touch America Holdings will be the publicly traded corporation and the holding company of Touch America as well as other subsidiaries not in the energy business.

The first step of the internal restructuring is planned to be the merger of Entech, Inc. with and into Entech LLC, a newly formed subsidiary of Montana Power, such that Entech LLC will be the surviving entity holding all of the assets of Entech, Inc. The internal restructuring activities concerning Entech, Inc. will not involve the merger or disposition of any interests in jurisdictional facilities, as Entech, Inc. will have disposed of its indirect interests in jurisdictional facilities prior to the merger with Entech LLC.[21] After the merger of Entech, Inc. and Entech

---

[21]    Entech, Inc. holds indirect interests in jurisdictional facilities through its ownership of the capital stock of Continental Energy Services, Inc. ("Continental"). The Commission recently authorized the

LLC and the sale of Montana Power's other energy businesses, Entech LLC will hold the stock of two subsidiaries, Touch America, Inc. and Tetragenics Company.[22]

The second step of the internal restructuring will involve the merger of Montana Power with and into The Montana Power L.L.C. ("MPC L.L.C."), a newly formed subsidiary of Touch America Holdings that was also formed for purposes of facilitating the transformation of Montana Power. Montana Power will merge with and into MPC L.L.C. via a one-for-one stock exchange between Montana Power and Touch America Holdings. The Agreement and Plan of Merger between Montana Power, MPC L.L.C. and Touch America Holdings, Inc. is included in Exhibit I. As a result of these transactions, Touch America Holdings will become the parent entity and will directly hold all of the interests in MPC L.L.C.

The third step of the internal restructuring will involve the transfer of Touch America, Inc. and Tetragenics Company from Entech, LLC to Touch America Holdings. Specifically, Entech LLC will distribute the stock of Touch America, Inc. and Tetragenics Company to MPC L.L.C., and MPC L.L.C. will further distribute this stock to Touch America Holdings. After these transactions, Touch America Holdings will directly hold all of the stock of Touch America, Inc. and Tetragenics Company and all interests in MPC L.L.C. and Entech LLC.

The sale of Montana Power to NorthWestern will be effected by Touch America Holdings' sale of all its interests in MPC L.L.C. to NorthWestern pursuant to the Unit Purchase

---

disposition of jurisdictional facilities in connection with the disposition of the independent power business unit. *Continental Energy Services, Inc. and BBI Power Corp.*, 93 FERC ¶62,133 (November 21, 2000). The merger between Entech, Inc. and Entech LLC will be undertaken after Entech Inc.'s sale of Continental to BBI Power Corporation.

[22]     Tetragenics Company develops, manufactures, and markets alarm control systems, communications monitoring and control systems, SCADA systems, intelligent remote units, and computer based products.

Agreement included in Exhibit I. As a result, NorthWestern will own all of the interests in Montana Power's utility business as well as Montana Power's utility business subsidiaries.

Once the restructuring is completed, Touch America Holdings will own Entech LLC, Touch America, Inc., and Tetragenics Company. None of these companies will have any interest in the energy business.[23] Organizational charts showing the change in structure as a result of the internal corporate restructuring are included in Exhibit C to this Joint Application.

### 3.   Structure of NorthWestern After The Proposed Transaction

NorthWestern plans to make the requisite filings in order to authorize it to become an exempt holding company under PUHCA, although prior approval from the Securities and Exchange Commission ("SEC") of NorthWestern's exempt holding company status is <u>not</u> required before closing of the proposed transaction. If NorthWestern does not implement a holding company structure, upon closing of the proposed transaction NorthWestern will retain its current divisional structure and Montana Power will become a separate division of NorthWestern rather than a subsidiary of the company. Montana Power and NorthWestern Public Service will continue to be headquartered in their existing locations in Butte, Montana, and Huron, South Dakota, respectively. Organizational charts depicting the structure of NorthWestern both before and after the transaction are included in Exhibit C to this Joint Application.

As explained in the Applicants' testimony attached to this Joint Application (Exhibits MPC-100 and NW-100), the utility systems of Montana Power and NorthWestern Public Service are not contiguous and are located in separate, non-synchronous interconnections and separate NERC regions; specifically, Montana Power is part of the Western Systems Coordinating

---

[23]     Entech, LLC will have limited indemnity obligations under the respective stock purchase agreements for the sale of the oil and gas, coal, and independent power businesses that Montana Power is selling separately.

Council ("WSCC") and the Western Interconnection, while NorthWestern Public Service is within the WAPA's Upper Great Plains East control area in the Mid Continent Area Power Pool ("MAPP"), which is part of the Eastern Interconnection. Moreover, the two utilities have no plans to alter their physical electric operations in order to interconnect the two systems, either by constructing transmission lines, reserving a transmission contract path, or otherwise. As such, there will be no physical merger or consolidation of the utilities' jurisdictional facilities, or any alteration in the manner that the two systems are operated electrically, after the proposed transaction is consummated. Once the proposed transaction is consummated, the companies' public utility operations will primarily be involved in the distribution of electric power and natural gas.

4.    **Specific Requirements Under 18 C.F.R. § 33.2(e)**

a.    **Parties Involved In Transaction (18 C.F.R. § 33.2(e)(1))** – The parties are identified in the discussion above.

b.    **Jurisdictional Facilities and Securities: Exhibit H (18 C.F.R. § 33.2(e)(2))** – The jurisdictional facilities associated with or affected by the transaction include all of the jurisdictional facilities of Montana Power and NorthWestern Public Service (including all facilities, rate schedules, contracts, books and records pursuant to which they engage in the wholesale sale or transmission of electric energy) in connection with the internal corporate restructuring of Montana Power and the sale of Montana Power to NorthWestern, as described above. The securities associated with or affected by the transaction are also described above. In addition, NorthWestern will be submitting

a filing under Section 204 of the FPA[24] for the issuance of securities for purposes of financing the proposed transaction.

     c.    **Consideration For The Transaction (18 C.F.R. § 33.2(e)(3))** – The consideration is stated above.

     d.    **Effect on Jurisdictional Facilities and Securities (18 C.F.R. § 33.2(e)(4))** - Montana Power and NorthWestern Public Service plan to continue as separate utilities, either as separate subsidiaries of an exempt holding company, or as separate divisions of the current NorthWestern Corporation. Consequently, there will be no effect on jurisdictional facilities or securities, other than the disposition of jurisdictional facilities and the issuance of financing securities described above.[25]

**F.**    **Contracts Related To Proposed Transaction – Exhibit I (18 C.F.R. § 33.2(f))**

Section 33.2(f) requires that all contracts related to the proposed transaction together with copies of all other written instruments entered into or proposed to be entered into by the parties to the transaction be submitted as Exhibit I to the application. The contracts and written instruments are attached to this Joint Application.

**G.**    **The Proposed Transaction Is Consistent With The Public Interest: Exhibit J (18 C.F.R. § 33.2(g))**

Section 33.2(g) requires that the Applicants provide a statement explaining the facts relied upon to demonstrate that the proposed transaction is consistent with the public interest, and that such statement be included in Exhibit J. The following discussion is the Applicants' Exhibit J.

---

[24]    16 U.S.C. § 824c.

[25]    Due to the internal restructuring discussed above, as a technical legal matter, MPC L.L.C. will succeed to the interests of Montana Power, although this is not expected to have an effect on any jurisdictional facilities or securities.

1.    **Standard of Review**

In order to approve the proposed transaction, the Commission must find that the transaction "will be consistent with the public interest."[26] As the Commission has explained:

> An applicant need not show that a positive benefit will result from a proposed merger or acquisition of facilities in order to support a public interest finding.    Rather, an applicant is required to make a full disclosure of all material facts and to show that the disposition is consistent with the public interest.[27]

The Commission's current policy for review of transactions under Section 203 of the FPA is embodied in its Merger Policy Statement.    In the Merger Policy Statement, and more recently in Order No. 642, the Commission stated that it would consider three elements in evaluating an application:    the effects on competition, rates and regulation.[28]    The discussion below will address each of these elements.

2.    **Effect On Competition**

As summarized below and explained fully in the testimony of Dr. William H. Hieronymus (Exhibit MPC-200) attached to this Joint Application, the planned transaction between Montana Power and NorthWestern will not have negative competitive impacts in any relevant market.    Given the limited generation assets controlled by the respective companies, the fact that Montana Power and NorthWestern Public Service are in disparate geographic locations, and in light of the electrical characteristics of the respective regions where the companies conduct business, Dr. Hieronymus concludes that the proposed transaction raises no horizontal or vertical market power concerns.

---

[26]    16 U.S.C. § 824(b).

[27]    *IES Industries, Inc.*, 65 FERC ¶ 62,191 at 64,416 (1993) (footnote omitted).

[28]    *See also* 18 C.F.R. § 2.26.

a.  **Analysis of Effects On Horizontal Market Power (18 C.F.R. §
33.3)**

As discussed in the testimony of Dr. Hieronymus, consistent with established

Commission policy and the Commission's recently issued Order No. 642, there is no need to

conduct a detailed horizontal competitive screen analysis to reach the conclusion that the

proposed transaction will have no adverse effect on competition.  Specifically, in the Merger

Policy Statement, the Commission stated the following in explaining the circumstances when a

full screen analysis need not be performed:

> [I]t will not be necessary for the merger applicants to perform the
> screen analysis or file the data needed for the screen analysis in
> cases where the merging firms do not have facilities or sell
> relevant products in common geographic markets.  In these cases,
> the proposed merger will not have an adverse competitive impact
> (i.e., there can be no increase in the applicants' market power
> unless they are selling relevant products in the same geographic
> markets) so there is no need for a detailed data analysis.[29]

Consistent with this pronouncement, in the recently issued Order No. 642, the

Commission concluded that a full Appendix A screen analysis need not be conducted if the

applicants do not currently conduct business in common geographic markets, or if the extent of

the overlap is *de minimis*.  The newly promulgated Section 33.2(a)(2) of the Commission's

regulations provides an exemption from the filing of an Appendix A screen analysis in these

circumstances:

> (2)    A horizontal Competitive Analysis Screen need not be filed
> if applicant:
>
> (i)    Affirmatively demonstrates that the merging entities
> do not currently conduct business in the same geographic
> markets or that the extent of the business transactions in the
> same geographic markets is de minimis; and

---

[29]    Merger Policy Statement at 30,113.

> (ii)    No intervenor alleges that one of the merging
> entities is a perceived potential competitor in the same
> geographic market as the other.

As explained by Dr. Hieronymus, Montana Power and NorthWestern Public Service do not sell relevant products in the same geographic markets.  In addition, given that the two companies have a nominal amount of uncommitted generation capacity and are engaged in making wholesale sales of electric energy only to a very limited extent, and that neither company has relevant facilities in overlapping markets, no party can reasonably allege that the two companies are potential competitors in the same geographic markets.

First, Montana Power and NorthWestern conduct business and have facilities in different geographic markets.  That is, currently there is no horizontal overlap between the generation assets controlled by the Applicants.  The *de minimis* generation that Montana Power owns is located in Montana, in the WSCC.  The limited generation assets of NorthWestern Public Service are located in the upper Midwest (South Dakota, North Dakota and Iowa), operate in the Mid-Continent Area Power Pool ("MAPP"), and are in the portion of the United States commonly referred to as the Eastern Interconnection.  Moreover, the Applicants do not currently make wholesale sales in the same geographic markets.  As explained by Dr. Hieronymus, while there may have been a *de minimis* overlap in markets before Montana Power divested its generation facilities to PPLM, the limited sales currently made by Montana Power and NorthWestern are exclusively in the WSCC and MAPP, respectively.

Second, the electrical characteristics of the WSCC and the Eastern Interconnection provide further support for the fact that the two companies are not current or potential competitors in common markets.  The WSCC and the Eastern Interconnection have non-synchronous transmission systems and are only weakly interconnected via a series of direct

current ("DC") ties. It is generally accepted that the Eastern Interconnection is a separate market from the WSCC because the transmission systems are non-synchronous. Indeed, in its order on the merger of Northern States Power Company and New Century Energies, Inc., the Commission pointed out that the electrical disparities between the Eastern and Western Interconnections mean that the horizontal combination of generation is unlikely to have a material effect on competition:

> We also agree that due to the electrical disparities between the Eastern and Western interconnections and Applicants' location within each, markets in the WSCC are unlikely to be materially affected by the combination of generation controlled by NSP and PSCO and need not be evaluated.[30]

Moreover, as explained above, the Applicants have no plans to alter the electrical operations of their facilities in order to interconnect their systems after the proposed transaction is consummated, either by constructing transmission lines, reserving a contract path, or otherwise.

Third, Montana Power and NorthWestern Public Service are primarily wires companies and control only minimal amounts of generation. As explained above and in the testimony of Dr. Hieronymus, Montana Power has already divested almost all of its generation assets, and its remaining generation interests are committed to retail load and contract obligations. NorthWestern Public Service owns approximately 312 MW of generation, and most of its generation represents minority shares in generation controlled and operated by third parties. Further, NorthWestern is expected to have only 2 MW of uncommitted capacity in 2001 and to be capacity short in 2002-2003.

In short, it is clear that Montana Power and NorthWestern do not have facilities or sell relevant products in common geographic markets. As the Commission has recognized, in these

---

[30] *Northern States Power Company and New Century Energies, Inc.*, 90 FERC ¶ 61,020 at 61,132 (2000).

circumstances, the proposed transaction will not have an adverse competitive impact (i.e., there can be no increase in the Applicants' market power unless they are selling relevant products in the same geographic markets) so there is no need for a detailed data analysis.[31]  Moreover, the Applicants submit that no party can make a reasonable claim that one of the companies is a perceived potential competitor in the same geographic market as the other.

b.   **Analysis of Effects On Vertical Market Power (18 C.F.R. § 33.4)**

The Commission has explained that for vertical aspects of a proposed transaction to raise competitive concerns, the companies must currently or potentially participate in common or "overlapping" relevant upstream and downstream markets.[32]  In the recently issued Order No. 642, the Commission promulgated a new Section 33.4(a)(2) of its regulations that provides the following exemption from the filing of a vertical competitive screen analysis:

> (2)    A vertical Competitive Analysis Screen need not be filed if applicant can affirmatively demonstrate that:
>
> > (i)    The merging entities currently do not provide inputs to electricity products (i.e., upstream relevant products) and electricity products (i.e., downstream relevant products) in the same geographic markets or that the extent of the business transactions in the same geographic market is de minimis; and no intervenor has alleged that one of the merging entities is a perceived potential competitor in the same geographic market as the other.
> >
> > (ii)    The extent of the upstream relevant products currently provided by the merging entities is used to produce a de minimis amount of the relevant downstream products in the relevant destination markets, as defined in paragraph (c)(2) of § 33.3.

---

[31]    Merger Policy Statement at 30,113.

[32]    *See Northern States Power Company and New Century Energies, Inc.*, 90 FERC ¶ 61,020 at 61,134-135 (2000).

The proposed transaction raises no vertical market power issues. As already explained, the Applicants do not sell downstream electricity products in common markets. The same is true with respect to upstream inputs to electricity products. The companies' natural gas facilities are geographically distant from each other. While Montana Power owns an intrastate natural gas pipeline and natural gas distribution assets in Montana, these are geographically distant from NorthWestern Public Service's generation and currently do not serve any electric generating stations.[33] NorthWestern Public Service's gas distribution operations are geographically remote from Montana Power's generation, and do not serve any third-party gas-fired generation. Further, the electric transmission systems of the two companies are in non-synchronous regions.

As is evident from the discussion above, the Applicants do not operate in common downstream electric power markets or in common upstream markets, and neither Applicant is able to use its assets as a barrier to entry. Further, in these circumstances, no party can reasonably allege that either of the companies is a perceived potential competitor in the same geographic market as the other. As such, it is clear that the proposed transaction does not raise vertical competitive concerns, and that there is no need to conduct a detailed vertical screen analysis to demonstrate a lack of vertical market power.

### 3.    **Effect On Rates**

The Merger Policy Statement identifies ratepayer protection as an important factor in the Commission's evaluation of a proposed transaction. The concern is that customers be protected

---

[33]    Exhibit K to this Joint Application contains maps reflecting the companies' electric and natural gas facilities. There is a 500 MW planned unit that is expected to start commercial operation in the second quarter of 2004. If approved, the facility would interconnect to the Montana Power natural gas system.

from paying costs that exceed benefits resulting from the transaction.[34]  Thus, the focus is on jurisdictional customers of the public utilities that pay rates based on costs.[35]

The Applicants commit, as a condition for approval of the proposed transaction, that their wholesale generation and transmission customers will be held harmless from any adverse effects of the proposed transaction on Commission-jurisdictional rates.  Specifically, as a condition of the Commission's approval of the proposed transaction, the Applicants will not recover in Commission-regulated cost-based rates any transaction-related costs, including the acquisition premium, in excess of transaction-related savings.  Moreover, the Applicants commit that in any future rate proceeding they will identify and account for all transaction costs and ascertain that any transaction-related costs included in their cost of service are exceeded by transaction-related savings.  The Commission has previously concluded that such a commitment eliminates concerns with adverse rate effects.[36]  This commitment is also described in the Applicants' testimony attached to this Joint Application (Exhibits MPC-100 and NW-100).

### 4.   Effect On Regulation

The Merger Policy Statement provides that the Commission will examine whether the transaction will adversely affect regulation.  The Commission's focus is on whether the transaction could result in the impairment of Federal regulation through the creation of a registered holding company under PUHCA, and whether the regulatory authority of state agencies is adversely affected.  As to the effect on Federal regulation, the Merger Policy

---

[34]     Policy Statement at 30,124; *see also* Order No. 642 *mimeo* at 115-16.

[35]     *See Enron Corp., et al*, 78 FERC ¶ 61,179 (1997) (indicating that the Commission does not have ratepayer protection concerns with respect to entities that make sales only under market-based rate schedules).

[36]     *See NiSource, Inc. and Columbia Energy Group*, 92 FERC ¶ 61,068 at 61,240 (2000).

Statement provides that with a merger of public utilities that involve registered holding companies under PUHCA, the Commission will require applicants either to abide by the Commission's policies on intra-system transactions or the Commission will set the issue of the effect of the merger on regulation for hearing.[37] The Merger Policy Statement indicates that the Commission is concerned with the potential loss of authority to review costs incurred by intra-system, non-power transfers within registered holding companies under *Ohio Power Co. v. FERC*, 954 F.2d 779, 782-86 (D.C. Cir. 1992), *cert. denied*, 498 U.S. 73 (1992). Given that neither Montana Power nor NorthWestern are registered holding companies under PUHCA, and that the proposed transaction will not result in the creation of a registered holding company, the Commission's *Ohio Power* concerns are inapplicable to the proposed transaction.

As to state regulation, because Montana Power and NorthWestern Public Service will continue to operate as separate electric utilities, the proposed transaction will not result in a loss of jurisdiction over retail rates and terms and conditions of services for the states that regulate the companies. Thus, each of the states that currently regulate the retail rates of the Applicants will continue to regulate those rates after the proposed transaction to the same extent as before. In addition, the Applicants will seek the approval of the Montana PSC with respect to the transaction.[38]

In summary, the proposed transaction will not reduce the regulatory authority of this Commission or any state commission. The wholesale sales and transmission service rates of the companies will remain fully subject to this Commission's jurisdiction following the proposed

---

[37]     Policy Statement at 30,125; *see also* Order No. 642 *mimeo* at 116-18.

[38]     Specifically, the Montana PSC has jurisdiction to determine whether the transaction will affect Montana Power's ability to be fit, willing and able to provide reasonably adequate service and facilities at just and reasonable rates.

transaction, the proposed transaction is subject to review by the Montana PSC, and existing state commission regulation will be unaffected by the proposed transaction.

### H.    Map: Exhibit K (18 C.F.R. § 33.2(h))

Section 33.2(h) provides that if the proposed transaction involves physical property of any party, the applicant must provide a general or key map showing in different colors the properties of each party to the transaction. Exhibit K is attached to this Joint Application, which includes maps of the Applicants' electric and natural gas systems.

### I.    Actions By Other Regulatory Bodies: Exhibit L (18 C.F.R. § 33.2(i))

Section 33.2(i) requires the Applicants to identify other regulatory bodies that must provide approvals in connection with the proposed transaction, indicate the status of other regulatory actions, and provide a copy of each order of those regulatory bodies that relates to the proposed transaction. This information is to be identified as Exhibit L to the application. The following is the Applicants' Exhibit L.

1.    **Montana PSC** - Montana Power and NorthWestern will seek a determination from the Montana PSC that the proposed transaction will not affect Montana Power's ability to be fit, willing and able to provide reasonably adequate service and facilities at just and reasonable rates.

2.    **Federal Trade Commission/Department of Justice** - Montana Power and NorthWestern will be submitting necessary filings to the Federal Trade Commission and Department of Justice pursuant to the Hart-Scott-Rodino Antitrust Improvements Act of 1976.

3.    **Securities and Exchange Commission** - NorthWestern will be submitting a filing to the Securities and Exchange Commission ("SEC") with respect to its exempt holding

company status, although SEC action in response to the filing is <u>not</u> a condition to closing of the proposed transaction.

      **4.**    **Federal Energy Regulatory Commission** – In connection with its internal corporate restructuring, Montana Power will be submitting applications for the transfer of its license for the Milltown Hydroelectric Project No. 2543,[39] and the Presidential Permits for certain natural gas pipeline border crossing facilities,[40] from Montana Power to MPC L.L.C. NorthWestern will be submitting a filing under Section 204 of the Federal Power Act for the issuance of securities for purposes of financing the proposed transaction.

      **5.**    **Federal Communications Commission** – Montana Power is seeking approval from the Federal Communications Commission for the transfer of private radio licenses under the Communications Act in connection with the conversion of Montana Power to MPC L.L.C.

      **6.**    **Other Filings** – Montana Power is also filing necessary notifications, or seeking approvals, from the Montana and Wyoming Departments of Environmental Quality and the Environmental Protection Agency for the transfer of various licenses and/or permits from Montana Power to MPC L.L.C.

     If any regulatory orders in connection with the proposed transaction are issued after the date of filing with the Commission, and before the date of final Commission action in this proceeding, the Applicants will supplement this Joint Application promptly with a copy of such orders.

## III.    <u>OPEN-ACCESS TRANSMISSION TARIFF</u>

---

[39]    *See Montana Power Co.*, 91 FERC ¶61,280 (2000).

[40]    *See The Montana Power Co.*, 51 FPC 1486 (1974); 93 FERC ¶61,149 (2000).

Montana Power and NorthWestern Public Service each have an open-access transmission tariff ("OATT") on file with the Commission in compliance with Order No. 888.[41] As explained above, Montana Power and NorthWestern Public Service plan to continue to operate as separate utilities after the proposed transaction is completed. The two utility systems operate in separate markets, are not contiguous, and are located in separate, non-synchronous interconnections[42] and separate NERC regions. In these circumstances, Montana Power and NorthWestern propose to continue to operate under their respective OATTs. Given the fact that the two systems are not contiguous, Montana Power and NorthWestern submit that the implementation of separate OATTs is consistent with Commission policy and precedent,[43] and respectfully request any waiver of Order No. 888 that the Commission would deem to be necessary and appropriate.[44]

Although they propose to operate under separate OATTs, the Applicants recognize that the Commission has previously required affiliated utilities to make a commitment to charge a non-pancaked rate for transmission service should more than one of their utility systems be used for the provision of transmission service for the same transaction. As explained in the

---

[41]    *See Promoting Wholesale Competition Through Open Access Non-discriminatory Transmission Services by Public Utilities; Recovery of Stranded Costs by Public Utilities and Transmitting Utilities*, Order No. 888, 61 Fed. Reg. 21,540 (1996), FERC Stats. & Regs. ¶31,036 (1996), *order on reh'g*, Order 888-A, 62 Fed. Reg. 12,274 (1997), FERC Stats. & Regs. ¶31,048, *order on reh'g*, Order No. 888-B, 81 FERC ¶61,248 (1997), *order on reh'g*, Order No. 888-C, 82 FERC ¶61,046 (1998), *aff'd in part sub nom. Transmission Access Study Group, et al., v. Federal Energy Regulatory Commission*, 225 F.3d 667 (D.C. Cir. 2000).

[42]    As explained in the testimony of Dr. Hieronymus, the two interconnections are only weakly interconnected through a DC tie.

[43]    *See WPS Resources Corp. and Upper Peninsula Power Corp.*, 83 FERC ¶61,196 (1996); *UtiliCorp United, Inc., St. Joseph Light & Power Co., and Empire District Electric Co.*, 92 FERC ¶61,067 (2000).

[44]    *See Allegheny Power System, Inc. et al.*, 80 FERC ¶61,143 at 61,553 (1997) (explaining that the Commission's requirement that affiliated public utilities file a single-system OATT providing for transmission service over the entire system at a single price is premised on the affiliates having contiguous systems).

Applicants' testimony attached to this Joint Application (Exhibits MPC-100 and NW-100), given the location and characteristics of the two utility systems, and that the two systems are not operated in a synchronous manner, the Applicants believe that both of their transmission systems will not be used to transmit electricity in the same transaction. Moreover, as explained in Exhibit D to this Joint Application, the Applicants are committed to participating in RTOs in compliance with Order No. 2000, and anticipate that rates for transmission services over each system, or over the RTOs as necessary for a particular transaction, will be dealt with in rates developed by the RTOs and approved by the Commission. Nevertheless, as a condition of the Commission's approval of the proposed transaction, the companies make a commitment that they will charge a single rate in the unlikely and unanticipated event that both of their systems are used to provide transmission service in the same transaction and, if the Commission so orders, will make any tariff changes that might be deemed necessary to reflect this commitment.

## IV.   CODE OF CONDUCT

Montana Power has been granted authority by the Commission to make wholesale sales of electric energy at market-based rates. Neither NorthWestern nor any of its affiliates, however, have ever sought or obtained market-based rate authority. Commission policy requires a utility with market-based rate authority to submit a revised code of conduct during the pendency of a transaction that contemplates a merger with another public utility so that the public utilities are effectively treated as affiliates.[45] Consistent with this policy, Montana Power is filing proposed revisions to its code of conduct concurrently with this Joint Application. Montana Power and NorthWestern have acted in conformance with the revised code of conduct since the announcement of the proposed transaction.

## V.   PROPOSED ACCOUNTING ENTRIES (18 C.F.R. § 33.5)

31

Proposed accounting entries are provided in Attachment 2 to this Joint Application.

## VI.    **FORM OF NOTICE (18 C.F.R. § 33.6)**

A Form of Notice suitable for publication in the *Federal Register* is provided in Attachment 1 to this Joint Application and a copy of the Form of Notice in electronic format is also attached hereto.

## VII.   **PROCEDURAL MATTERS**

Montana Power and NorthWestern respectfully request that the Commission authorize the disposition of jurisdictional facilities described herein as expeditiously as possible and without a trial-type evidentiary hearing. As described above, the transaction is clearly consistent with the public interest as there will be no adverse effect on rates, regulation, or competition. Given that the proposed transaction does not raise concerns with either horizontal or vertical market power, the Applicants respectfully request that the Commission provide a shortened notice period of 30 days for this Joint Application, consistent with its pronouncements in Order No. 642. The Applicants' anticipate that they will close the proposed transaction in May 2001, and request approval of the transaction, without a trial-type evidentiary hearing, as soon as possible, but by no later than March 31, 2001.

A copy of this Joint Application has been served upon the Montana PSC and South Dakota Public Utilities Commission, as well as the Cities of Grand Island, Kearney and North Platte, Nebraska, and the Village of Alda, Nebraska, the retail regulatory bodies in the states in which Montana Power and NorthWestern Public Service operate. The Applicants have also served a copy of this Joint Application on all of their wholesale sales and transmission service customers. The Applicants respectfully request a waiver of any Commission regulations that might be necessary to approve this Joint Application at the earliest date possible.

---

[45]    *See Enron Corp. and Portland General Electric Corp.*, 78 FERC ¶61,179 at 61,740 (1997).

## VIII. __CONCLUSION__

WHEREFORE, the Applicants respectfully request that the Commission approve the proposed transaction, without a trial-type evidentiary hearing or condition, to be effective as of the date that the Commission issues an order approving this Joint Application, and that the requested waivers and any other necessary relief be granted in order to approve the disposition of facilities requested herein at the earliest date possible.

Respectfully submitted,

Charles A. Patrizia
William D. DeGrandis
Jennifer L. Hong
Paul, Hastings, Janofsky & Walker LLP
1299 Pennsylvania Avenue, NW, 10th Floor
Washington, D.C. 20004

Steven M. Kramer
Carla J. Urquhart
Milbank, Tweed, Hadley & McCloy, LLP
1825 Eye Street, NW
Washington, D.C. 20006

Eric R. Jacobsen
Susan Anderson Bachman
Alan D. Dietrich
NorthWestern Corporation
125 S. Dakota Avenue
Sioux Falls, South Dakota 58501

Michael P. Manion
The Montana Power Company
40 East Broadway
Butte, Montana 59701

Counsel for
NorthWestern Corporation

Counsel for
The Montana Power Company

Dated: December 20, 2000

The Montana Power Company
NorthWestern Corporation
Docket No. EC01-___-000

## UNITED STATES OF AMERICA
## BEFORE THE
## FEDERAL ENERGY REGULATORY COMMISSION

### VERIFICATION PURSUANT TO 18 C.F.R. § 33.7

| | | |
|---|---|---|
| STATE OF MONTANA | ) | |
| | ) | ss: |
| COUNTY OF Silver Bow | ) | |

NOW, BEFORE ME, the undersigned authority, personally came and appeared, Jack Haffey,  who first being duly sworn by me, did depose and say:

That he is Executive Vice President and Chief Operating Officer of The Montana Power Company, an applicant in the proceeding; that he has the authority to verify the foregoing Joint Application on behalf of The Montana Power Company; that he has read said Joint Application and knows the contents thereof; and that the statements contained in said Joint Application pertaining to The Montana Power Company are true and correct to the best of his knowledge and belief.

Jack Haffey
Executive Vice President and
Chief Operating Officer

Subscribed and sworn to me this 18th day of December, 2000.

Notary Public: Michael P. Manion

Notary expires: November 9, 2003

The Montana Power Company
NorthWestern Corporation
Docket No. EC01-___-000

# UNITED STATES OF AMERICA
## BEFORE THE
## FEDERAL ENERGY REGULATORY COMMISSION

### VERIFICATION PURSUANT TO 18 C.F.R. § 33.7

STATE OF SOUTH DAKOTA      )
                                )    ss:

COUNTY OF MINNEHAHA      )

        NOW, BEFORE ME, the undersigned authority, personally came and appeared, Alan D. Dietrich, who first being duly sworn by me, did depose and say:

        That he is Vice President – Legal Administration of NorthWestern Corporation, an applicant in the proceeding; that he has the authority to verify the foregoing Joint Application on behalf of NorthWestern Corporation; that he has read said Joint Application and knows the contents thereof; and that the statements contained in said Joint Application pertaining to NorthWestern Corporation are true and correct to the best of his knowledge and belief.

                                      Alan D. Dietrich
                                      Vice President – Legal Administration

Subscribed and sworn to me this _18th_ day of _December_, 2000

                                      Notary Public:

Notary expires: _8/23/2003_

## Certificate of Service

I hereby certify that the foregoing Joint Application of The Montana Power Company and NorthWestern Corporation was served by overnight delivery upon the Montana Public Service Commission, South Dakota Public Utilities Commission, the Cities of Grand Island, Kearney and North Platte, Nebraska, and the Village of Alda, Nebraska, as well as the wholesale sales and transmission service customers of The Montana Power Company and NorthWestern Public Service.

Dated at Washington, D.C. this 20th day of December, 2000.

Steven M. Kramer