NORTHWESTERN CORPORATION

FORM OF COMPLIANCE CERTIFICATE

Pursuant to Section 5.2(b) of the Credit Agreement dated as of January 14, 2002 among Northwestern Corporation, a Delaware corporation (the "Borrower"), the several banks and other financial institutions from time to time party thereto (the "Lenders"), and Credit Suisse First Boston, as Administrative Agent for the Lenders (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"; certain defined terms are used herein as defined therein), the undersigned hereby certifies that [he][she] is a Responsible Officer of the Borrower and further certifies as follows:

1.    No Default or Event of Default has occurred and is continuing as of the date hereof, except as set forth in this Certificate.

2.    As of _____ (the "Computation Date"), the Net Worth of the Borrower and its Consolidated Subsidiaries was $ _____, as computed on Attachment 1 hereto.

3.    The ratio of Funded Debt to Total Capital for the immediately preceding fiscal quarter was _____% as computed on Attachment 2 hereto.

4.    The ratio of Utility Business EBITDA to Consolidated Recourse Interest Expense for the immediately preceding fiscal quarter was [•]:1.00 as computed on Attachment 7 hereto.

IN WITNESS WHEREOF, the undersigned has hereunto set [his][her] name on this ___ day of _____, ___.

NORTHWESTERN CORPORATION

By: _____
    Name:
    Title:

E-1

CSFB001382

ATTACHMENT 1

<u>NET WORTH</u>

1.  Shareholders' equity of the Borrower and          $_____
    and its Consolidated Subsidiaries

2.  Preferred stock, preference stock and             $_____
    preferred securities of the Borrower and
    its Consolidated Subsidiaries

3.  Net Worth *(sum of Item 1 and Item 2)*            $_____

4.  Covenant Net Worth (as set forth in Section       Not less than
    6.1(a) of the Credit Agreement)                   $350,000,000

E-2

CSFB001383

ATTACHMENT 2

<u>TOTAL CAPITALIZATION</u>

| | | |
|---|---|---|
| 1. | Funded Debt *(Item 4 of Attachment 3)* | $_____ |
| 2. | Total Capital *(Item 4 of Attachment 4)* | $_____ |
| 3. | Total Capitalization *(Item 1 <u>divided</u> by Item 2)* | \_\_\_\_\_% |
| 4. | Covenant Total Capitalization | Not greater than [●]%[1] |

---

[1] Refer to Section 6.1(b) of the Credit Agreement for applicable ratio for a specified fiscal quarter.

E-3

CSFB001384

ATTACHMENT 3

<u>FUNDED DEBT</u>

| | | |
|---|---|---|
| 1. | Indebtedness *(Item 7 of Attachment 5)* | $_____ |
| 2. | Liabilities under Hedging Agreements (other than liabilities under interest rate caps) | $_____ |
| 3. | Non-Recourse Debt | $_____ |
| 4. | Funded Debt *(excess of Item 1 over sum of Item 2 and Item 3)* | $_____ |

E-4

CSFB001385

ATTACHMENT 4

## TOTAL CAPITAL

1.  Funded Debt (*Item 4 of Attachment 3*)                    $_____

2.  Stockholders' equity                                      $_____

3.  Preferred stock, preference stock and
    preferred securities of the Borrower
    and its Consolidated Subsidiaries                         $_____

4.  Total Capital (*sum of Item 1, Item 2 and Item 3*)        $_____

E-5

CSFB001386

ATTACHMENT 5

## INDEBTEDNESS[1]

1. Debt for Borrowed Money *(Item 5 of Attachment 7)*                   $_____

2. Indebtedness for the deferred purchase
   of property or service (other than current
   trade liabilities incurred in the ordinary
   course of business and payable in accordance
   with customary practices)                                            $_____

3. Outstanding reimbursement obligations under
   outstanding letters of credit, acceptances and
   similar obligations                                                  $_____

4. To the extent not included above, liabilities
   secured by any Lien on owned property even
   if the Borrower and/or the Consolidated Subsidiaries
   has not assumed or otherwise become liable for
   payment for such liabilities                                         $_____

5. To the extent not included above, liabilities
   arising under the Hedging Agreements
   (other than interest rate caps)                                      $_____

6. To the extent not included above, Guarantee
   Obligations                                                          $_____

7. Indebtedness *(sum of Item 1, Item 2, Item 3,
   Item 4, Item 5 and Item 6)*                                          $_____

---

[1] To be calculated on a consolidated basis.

E-6

CSFB001387

ATTACHMENT 6

## UTILITY BUSINESS FINANCIAL COVENANT

1. Operating income[1] of the Utility Business                                                   $_____

2. Without duplication and to the extent reflected as a charge in the statement of operating income of the Utility Business, depreciation and amortization[1]                                                   $_____

3. Utility Business EBITDA *(sum of Item 1 and Item 2)*                                                   $_____

4. Aggregate amount of interest expense of the Borrower and all Consolidated Subsidiaries                                                   $_____

5. Aggregate amount of interest accrued on Non-Recourse Debt                                                   $_____

6. Consolidated Recourse Interest Expenses *(Item 4 minus Item 5)*                                                   $_____

7. Ratio of Utility Business EBITDA *(Item 3)* to Consolidated Recourse Interest Expense *(Item 6)*                                                   [●][2]:1.00

---

[1] Determined in accordance with GAAP.

[2] Refer to Section 6.1(c) of the Credit Agreement for applicable ratio for a specified fiscal quarter.

E-7

CSFB001388

ATTACHMENT 7

## DEBT FOR BORROWED MONEY*

1. Obligations for borrowed money      $_____

2. Obligations evidenced by bonds, debentures, notes or similar
   instruments      $_____

3. Obligations under Financing Leases      $_____

4. Obligations under synthetic leases, tax retention operating
   leases, off-balance sheet loans or other off-balance sheet
   financing products that, for tax purposes, are considered as
   indebtedness for borrowed money of the lessee but are
   classified as operating leases under GAAP      $_____

5. Debt for Borrowed Money *(sum of Item 1, Item 2, Item 3 and
   Item 4)*      $_____

---

* To be calculated on a consolidated basis.

E-8

CSFB001389

EXHIBIT F
TO CREDIT AGREEMENT

FORM OF PLEDGE AGREEMENT

_____

PLEDGE AGREEMENT

made by

NORTHWESTERN CORPORATION,
as Pledgor

to

CREDIT SUISSE FIRST BOSTON,
as Collateral Agent

_____

Dated as of February [●], 2002

_____

F-1

CSFB001390

TABLE OF CONTENTS

<u>Page</u>

ARTICLE I DEFINITIONS................................................................1
    Section 1.1    Defined Terms..............................................1
    Section 1.2    Uniform Commercial Code; Additional Terms...............2

ARTICLE II PLEDGE AND SECURITY INTEREST .........................3
    Section 2.1    Granting Clause.............................................3
    Section 2.2    Security for Obligations. .................................4
    Section 2.3    Delivery Of Certificates ..................................4

ARTICLE III REPRESENTATIONS AND WARRANTIES...............5
    Section 3.1    Organization; Place of Business. ..........................5
    Section 3.2    Beneficial Ownership.....................................5
    Section 3.3    Title; No Assignment to Third Parties.....................5
    Section 3.4    Valid Lien and Security Interest..........................5
    Section 3.5    No Other Approval Required. .............................5
    Section 3.6    Membership Interests.....................................6
    Section 3.7    No Encumbrances.........................................6

ARTICLE IV COVENANTS ...............................................6
    Section 4.1    Change of Name, Jurisdiction of Organization or Location of
                Place of Business......................................6
    Section 4.2    Performance of LLC Agreement ..........................6
    Section 4.3    No Impairment of Collateral .............................7
    Section 4.4    Defense of Collateral ....................................7
    Section 4.5    Disposition of Collateral .................................7
    Section 4.6    No Other Filings ........................................7
    Section 4.7    Voting Rights ..........................................7
    Section 4.8    Distributions ...........................................8
    Section 4.9    Filing of Bankruptcy Proceedings ........................8
    Section 4.10   Proceeds of Collateral ...................................8

ARTICLE V PERFECTION OF SECURITY INTEREST .....................8
    Section 5.1    Continued Perfection Of Security Interest ..................8

ARTICLE VI RIGHTS OF PARTIES .......................................9
    Section 6.1    Pledgor's Rights.........................................9
    Section 6.2    Obligations of Pledgor and Rights of Collateral Agent ........10

ARTICLE VII REMEDIES .................................................11
    Section 7.1    Remedies of Collateral Agent ............................11

CSFB001391

Section 7.2    Sale of Collateral .................................................. 12
Section 7.3    Registration of Securities ...................................... 13
Section 7.4    Distributions as Collateral .................................... 14
Section 7.5    Waiver of Rights and Remedies Under Applicable Legal
               Requirements ....................................................... 14
Section 7.6    Compliance With Limitations and Restrictions; No Discount ........... 14

ARTICLE VIII ATTORNEY-IN-FACT ............................................... 15

Section 8.1    Collateral Agent Appointed Attorney-In-Fact ................... 15

ARTICLE IX MISCELLANEOUS ...................................................... 15

Section 9.1    Indemnity and Expenses ......................................... 15
Section 9.2    Security Interest Absolute ..................................... 15
Section 9.3    Delivery of Collateral ......................................... 16
Section 9.4    Remedies Cumulative; Delay Not Waiver ......................... 16
Section 9.5    Payment of Fees ................................................ 17
Section 9.6    Information Concerning Collateral .............................. 17
Section 9.7    Company's Consent .............................................. 17
Section 9.8    Termination of Security Interest .............................. 17
Section 9.9    Expenses; Interest ............................................. 18
Section 9.10   Amendments; Etc ................................................ 18
Section 9.11   Address for Notices ............................................ 18
Section 9.12   Continuing Assignment; Pledge and Security Interest; Release ....... 18
Section 9.13   Severability ................................................... 19
Section 9.14   Survival Of Provisions ......................................... 19
Section 9.15   Binding Agreement .............................................. 19
Section 9.16   Headings ....................................................... 19
Section 9.17   GOVERNING LAW .................................................. 19
Section 9.18   WAIVER OF JURY TRIAL; SUBMISSION TO
               JURISDICTION ................................................... 19
Section 9.19   Third Party Rights ............................................. 20
Section 9.20   Execution in Counterparts ...................................... 20
Section 9.21   Applicability of Credit Agreement ............................. 20

Schedule 1 – Collateral

Exhibit A    Form of Irrevocable Instrument of Transfer

CSFB001392

PLEDGE AGREEMENT, dated as of February [●], 2002 (this "Agreement"), between NORTHWESTERN CORPORATION, a corporation duly organized and validly existing under the laws of the state of Delaware (the "Pledgor"), and CREDIT SUISSE FIRST BOSTON, as collateral agent (in such capacity, together with its successors in such capacity, the "Collateral Agent") for the benefit of the Secured Parties (as defined below).

WITNESSETH:

WHEREAS, the Pledgor intends to acquire (the "Acquisition") the membership interest of The Montana Power Company L.L.C., a Montana limited liability company (the "Company"), which holds the assets and securities owned by The Montana Power Company ("MPC") as of September 29, 2000 (other than Entech, Inc. and its subsidiaries) pursuant to the terms of the Unit Purchase Agreement, dated as of September 29, 2000 (as amended from time to time, the "Acquisition Agreement"), among the Pledgor, MPC, the Company, and Touch America Holding, Inc., as the seller;

WHEREAS, after giving effect to the Acquisition, the Company will be a direct wholly-owned subsidiary of the Pledgor;

WHEREAS, the Pledgor has entered into the Credit Agreement, dated as of January 14, 2002 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), with the financial institutions from time to time parties thereto (each, a "Lender" and collectively, the "Lenders") and Credit Suisse First Boston, as Administrative Agent for the Lenders; and

WHEREAS, as a condition precedent to the obligations of the Lenders under the Credit Agreement, the Pledgor is required to execute and deliver this Agreement and to grant the Collateral Agent a continuing security interest in all of the Collateral (as defined in Section 2 below) to secure all of the Obligations.

AGREEMENT

NOW, THEREFORE, in consideration of the benefits to the Pledgor, the receipt and sufficiency of which are hereby acknowledged, the Pledgor hereby makes the following assignments, representations and warranties to the Collateral Agent, for the benefit of the Secured Parties and hereby covenants and agrees with the Collateral Agent, for the benefit of the Secured Parties, as follows:

ARTICLE I

DEFINITIONS

Section 1.1    Defined Terms.  For all purposes of this Agreement, (i) capitalized terms not otherwise defined herein shall have the meanings set forth in the Credit Agreement and (ii) the principles of construction set forth in Section 1.2 of the Credit Agreement shall apply.

F-4

CSFB001393

Section 1.2    Uniform Commercial Code; Additional Terms.  Except for the terms defined in this Agreement or in the Credit Agreement, all terms defined in Article 8 or 9 of the Uniform Commercial Code of the State of New York (the "Uniform Commercial Code") which are used in this Agreement shall have the meaning specified in such Articles.

In addition, the following terms shall have the meaning herein specified:

"Acquisition" has the meaning given in the recitals to this Agreement.

"Acquisition Agreement" has the meaning given in the recitals to this Agreement.

"Agreement" has the meaning given in the introductory paragraph to this Agreement.

"Collateral" has the meaning given in Section 2 of this Agreement.

"Collateral Agent" has the meaning given in the introductory paragraph to this Agreement.

"Company" has the meaning given in the recitals to this Agreement.

"Credit Agreement" has the meaning given in the recitals to this Agreement.

"Federal Securities Laws" has the meaning given in Section 7.3 of this Agreement.

"Governmental Rule" means any law, rule, regulation, ordinance, order, code interpretation, treaty, judgment, decree, directive, guideline, policy or similar form of decision of any Governmental Authority.

"LLC Agreement" means The Limited Liability Operating Agreement of The Montana Power Company, L.L.C.

"Legal Requirements" means, as to any Person, the articles of incorporation, bylaws or other organizational or governing documents of such Person, and any Governmental Rule, in each case applicable to, or binding upon such Person or any of its properties or to which such Person or any of its property is subject.

"Lenders" has the meaning given in the recitals to this Agreement.

"Membership Interests" has the meaning given in Section 2.1(a) of this Agreement.

"MPC" has the meaning given in the recitals to this Agreement.

CSFB001394

"Permitted Collateral Liens" means, collectively, (i) the security interest created hereby and (ii) Liens of the type set forth in clause (a) or (f) of the definition of "Permitted Liens" set forth in Section 1.1 of the Credit Agreement.

"Pledgor" has the meaning given in the introductory paragraph to this Agreement.

"Secured Parties" means, collectively, the Administrative Agent, the Collateral Agent, the Lenders and the Issuing Lender.

ARTICLE II

PLEDGE AND SECURITY INTEREST

Section 2.1    Granting Clause.  The Pledgor hereby assigns, grants, pledges and hypothecates to the Collateral Agent for the ratable benefit of the Secured Parties a continuing security interest in and to, all of its estate, right, title and interest (whether now existing or hereafter acquired) in and to the following (the "Collateral"):

(a)    the membership and other debt or equity interests owned by the Pledgor in and to the Company, whether now owned or hereafter acquired (the "Membership Interests"), and all rights and benefits of the Pledgor under the LLC Agreement, including, without limitation:

(i)    all of the Pledgor's interest in the capital of the Company, including the Pledgor's capital accounts in the Company, if any;

(ii)    all rights of the Pledgor as a member and all rights of the Pledgor as a member to receive income, gain, profit, distributions, cash, instruments and other property from time to time receivable or otherwise distributable in respect of the Membership Interests or pursuant to the LLC Agreement;

(iii)    all other payments due or to become due to the Pledgor in respect of such Membership Interests or the LLC Agreement, including but not limited to all rights of the Pledgor to receive proceeds of any insurance, indemnity, warranty or guaranty with respect to the Membership Interests or the LLC Agreement;

(iv)    all claims of the Pledgor for damages arising out of or for breach of or default under the LLC Agreement or relating to the Membership Interests;

(v)    all indebtedness or other obligations of the Company owed to the Pledgor;

(vi)    the right of the Pledgor to terminate, amend, supplement, modify or waive performance under the LLC Agreement, to perform and

F-6

CSFB001395

exercise consensual or voting rights thereunder, including but not limited to the right, if any, to manage the Company's affairs, to make determinations, to exercise any election or option or to give or receive any notice, consent, amendment, waiver or approval, and the right, if any, to compel performance and otherwise exercise all remedies thereunder;

(vii)    all rights of the Pledgor, as a member of the Company, to all property and assets of the Company (whether real property, inventory, equipment, contract rights, accounts, receivables, general intangibles, securities, instruments, chattel paper, documents, chooses in action or otherwise); and

(viii)    all securities, notes, certificates and other instruments evidencing any of the foregoing rights and interests or the ownership thereof in the Company or its assets, and

(b)    to the extent not included in the foregoing, all proceeds of any and all of the foregoing Collateral (including, without limitation, proceeds that constitute property of the types described above).

Section 2.2    Security for Obligations. This Agreement and all of the Collateral secures the prompt and complete payment and performance of all the Obligations. The Pledgor agrees that this Agreement, the security interest granted pursuant to this Agreement and all rights, remedies, powers and privileges provided to the Collateral Agent under this Agreement are in addition to and not in any way affected or limited by any other security now or at any time held by the Collateral Agent to secure payment and performance of the Obligations.

Section 2.3    Delivery Of Certificates. All certificates, notes and other instruments representing or evidencing any Collateral (including the certificates described on Schedule 1 hereto) shall be delivered to and held by or on behalf of, and, in the case of notes, endorsed to the order of, the Collateral Agent, or its designee pursuant hereto, in the manner set forth in Section 9.3 hereof.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

The Pledgor represents and warrants as follows:

Section 3.1    Organization; Place of Business. The Pledgor is a corporation organized solely under the laws of the State of Delaware and no other state or jurisdiction. The Pledgor's principal place of business and chief executive office is located at 125 South Dakota Avenue, Suite 1100, Sioux Falls, South Dakota 57104-6403.

Section 3.2    Beneficial Ownership. The Pledgor is the sole member of the Company and owns 100% of the membership interests in the Company, and has not

CSFB001396

assigned any of its rights and interests in, to and under all or any portion of the Collateral, except for the assignments made herein.

Section 3.3   Title; No Assignment to Third Parties.  The Pledgor is the legal and beneficial owner of and has full rights, good title and interest in, to and under all of the rights and interests comprising the Collateral free and clear of all Liens, except for Permitted Collateral Liens.  The Pledgor has not authorized the filing of any financing statement or other instrument similar in effect covering all or any part of the Collateral in any recording office, except such as may have been filed in favor of the Collateral Agent relating to this Agreement.

Section 3.4   Valid Lien and Security Interest.  There exists no "adverse claim" within the meaning of Section 8-302 of the Uniform Commercial Code, with respect to the Membership Interests.  The Pledgor has the unencumbered right and power to pledge the Collateral to the Collateral Agent.  This Agreement creates a good and valid Lien and security interest in the Collateral securing the payment of all the Obligations. All actions necessary to perfect, establish the first priority of, or otherwise protect the security interest of the Collateral Agent in the Collateral have been duly taken, except for the taking possession by the Collateral Agent of any certificates or other instruments constituting Collateral which are acquired by the Pledgor after the date hereof.

Section 3.5   No Other Approval Required.  Except for the filing of the financing statements in the Office of the Secretary of State of the State of Delaware, no consent of any other Person and no authorization, approval, or other action by, or notice to or filing with, any Person is required (i) for the pledge and assignment by the Pledgor of the Collateral pursuant to this Agreement or (ii) for the validity, perfection or maintenance of the security interest created hereby (including the first priority nature of such security interest), except, in the case of the maintenance of perfection, for the filing of continuation statements under the UCC.  No consent of any other Person and no authorization, approval, or other action by, or notice to or filing with, any Person is required for the exercise by the Collateral Agent of the voting or other rights provided for in this Agreement or the remedies in respect of such Collateral pursuant to this Agreement or as provided by law, except as may be required in connection with any disposition of any portion of the Collateral by laws affecting the offering and sale of securities generally and except for regulatory approvals or consents which may be required pursuant to Governmental Rules.

Section 3.6   Membership Interests.  The Membership Interests constituting Collateral are evidenced by certificated securities representing 100% of the Membership Interests in the Company executed by the manager of the Company on February [●], 2002 that state, among other things, that the Pledgor is a member of the Company and is entitled to the full benefits and privileges of such membership.

Section 3.7   No Encumbrances.  There are no outstanding agreements, options and contracts to sell all or any portion of the Collateral.  No part of the Collateral is subject to the terms of any agreement to which the Pledgor is a party or by which the Pledgor is bound restricting the sale or transfer of such Collateral, except for the Credit

CSFB001397

Agreement and the LLC Agreement. No Person has any right to purchase or terminate any or all of the membership interests in the Company except pursuant to the terms of this Agreement and the LLC Agreement.

## ARTICLE IV

## COVENANTS

The Pledgor agrees that:

Section 4.1    <u>Change of Name, Jurisdiction of Organization or Location of Place of Business</u>. It shall not change its name or jurisdiction of organization without giving at least thirty (30) days' prior written notice thereof to the Administrative Agent and the Collateral Agent. It shall give the Administrative Agent and the Collateral Agent at least thirty (30) days' prior written notice before it changes the location of its principal place of business or chief executive office, or the location of any of the Collateral. In either such case, the Pledgor shall promptly and at its expense execute and deliver such instruments and documents to the Collateral Agent that it may reasonably required in connection therewith.

Section 4.2    <u>Performance of LLC Agreement</u>. It shall at its expense perform and observe all the terms and provisions of the LLC Agreement to be performed or observed by it, use its best efforts to maintain the LLC Agreement in full force and effect, enforce the LLC Agreement in accordance with its terms, and take such further action that may be necessary to such end as may be from time to time reasonably requested by the Collateral Agent. It shall not cancel or terminate the LLC Agreement or consent to or accept any cancellation or termination thereof; amend or otherwise modify any LLC Agreement in any material respect if such amendment or modification would materially impair the value of the interest or rights of the Pledgor thereunder; or waive any material default under or material breach of the LLC Agreement. In addition, it will not consent to any transaction for the termination, dissolution or winding up of, or the merger or consolidation with any other Person by, the admission of additional members to, or otherwise affect or change the structure or organization of the Company, except in each case as permitted pursuant to Section 6.2 of the Credit Agreement.

Section 4.3    <u>No Impairment of Collateral</u>. It shall not take or permit to be taken any action in connection with the Collateral which would impair in any material respect the value of the interests or rights of the Pledgor therein or which would impair in any material respect the interests or rights of the Collateral Agent therein or with respect thereto, except as permitted pursuant to Section 6.2 of the Credit Agreement.

Section 4.4    <u>Defense of Collateral</u>. It will defend the Collateral against all claims and demands of all Persons (other than the Secured Parties) claiming an interest in any of the Collateral. It will discharge or cause to be discharged all Liens on any or all of the Collateral, except for Permitted Collateral Liens.

F-9

CSFB001398

Section 4.5    Disposition of Collateral. It shall not transfer, sell, assign (by operation of law or otherwise) or otherwise dispose of any of the Collateral or create or suffer to exist any Lien upon or with respect to any of the Collateral, except (i) for Permitted Collateral Liens and (ii) as otherwise permitted pursuant to Section 6.2 of the Credit Agreement.

Section 4.6    No Other Filings. The Pledgor will not file or authorize or permit to be filed in any jurisdiction any financing statements under the UCC or any like statement relating to the Collateral in which the Collateral Agent is not named as the sole secured party.

Section 4.7    Voting Rights. It shall exercise any and all management, voting and other consensual rights pertaining to the LLC Agreement and the Company in a manner which is not inconsistent with the terms of this Agreement and the other Loan Documents.

Section 4.8    Distributions. If the Pledgor in its capacity as a member of the Company receives any income, dividend or other distribution of money or property of any kind from the Company other than as permitted hereby and by the other Loan Documents, the Pledgor shall hold such income, dividend or other distribution as trustee for, and shall deliver the same to, the Collateral Agent.

Section 4.9    Filing of Bankruptcy Proceedings. To the extent it may do so under applicable Legal Requirements, the Pledgor, for itself and its successors and assigns, shall not cast any vote as a member of the Company (a) in favor of the commencement of a voluntary case or other proceeding seeking liquidation, reorganization, rehabilitation or other relief with respect to the Company or its debts under any bankruptcy, insolvency or other similar law now or hereafter in effect in any jurisdiction or seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of the owner of the Company or any substantial part of the Company's property, (b) authorize the Company to consent to any such aforesaid relief or to the appointment of or taking possession by any such aforesaid official in an involuntary case or other proceeding commenced against the Company or (c) authorize the Company to make a general assignment for the benefit of creditors.

Section 4.10    Proceeds of Collateral. The Pledgor shall, at all times, keep pledged to the Collateral Agent (for the benefit of itself and the other Secured Parties) pursuant hereto all Collateral and all dividends, distributions, interest, principal and other proceeds received by Collateral Agent with respect thereto, and will not permit any issuer of such Collateral to issue any membership interests or other equity interests which shall not have been immediately duly pledged to the Collateral Agent (for the benefit of itself and the other Secured Parties) hereunder on a first priority perfected basis.

CSFB001399

ARTICLE V

PERFECTION OF SECURITY INTEREST

Section 5.1    Continued Perfection Of Security Interest.  The Pledgor agrees that it will not take any actions or fail to perform any of its duties or obligations under this Agreement so that after giving effect to such action or inaction the Collateral Agent will not have a perfected security interest in any of the Collateral.

The Pledgor agrees that from time to time, at the expense of the Pledgor, the Pledgor will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary, or that the Collateral Agent may reasonably request, in order to perfect and protect the pledge, hypothecation and security interest granted or purported to be granted hereby or to enable the Collateral Agent to exercise and enforce its rights and remedies hereunder with respect to any Collateral.  Without limiting the generality of the foregoing, the Pledgor will execute and file such instruments or notices, as may be necessary, or as the Collateral Agent may reasonably request, in order to perfect and preserve the pledge, hypothecation and security interest granted or purported to be granted hereby.

The Pledgor hereby authorizes the Collateral Agent to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Collateral without the signature of the Pledgor where permitted by law.  A photocopy or other reproduction of this Agreement or any financing statement covering the Collateral or any part thereof shall be sufficient as a financing statement where permitted by law.

If any Event of Default has occurred and is continuing, all payments received by the Pledgor under or in connection with the LLC Agreement, the Membership Interests, or otherwise in respect of the Collateral shall be received in trust for the benefit of the Collateral Agent, shall be segregated from other funds of the Pledgor and shall be forthwith paid over to the Collateral Agent in the same form as so received (with any necessary indorsement).

ARTICLE VI

RIGHTS OF PARTIES

Section 6.1    Pledgor's Rights.  (a)  Unless an Event of Default shall have occurred and be continuing under any of the Loan Documents, the Pledgor shall be entitled to exercise all voting and other rights with respect to the Membership Interests, the LLC Agreement and the other Collateral; provided, however, that no vote shall be cast, right exercised or other action taken which could reasonably be expected to have a material adverse effect on the value of, or the Pledgor's right, title or interest in, the Collateral.

F-11

CSFB001400

(b)    Unless an Event of Default shall have occurred and be continuing, the Pledgor shall be entitled to receive and retain any and all distributions paid in respect of the Membership Interests, the LLC Agreement and the other Collateral in compliance with the terms of the Loan Documents, provided, however, that any and all:

(i) distributions paid or payable in respect of the Membership Interests, the LLC Agreement or the other Collateral paid in the form of securities or other equity interests in the Company in connection with (w) any partial or total liquidation or dissolution of the Company, (x) any distribution of capital of the Company, (y) any recapitalization or reclassification of the capital of the Company and (z) any reorganization of the Company; and

(ii) property in the form of securities or other equity interests in the Company paid, payable or otherwise distributed in redemption of, or in exchange for the property described in clause (i) immediately above,

shall be, and shall be forthwith delivered to the Collateral Agent to hold as Collateral and shall, if received by the Pledgor, be received in trust for the benefit of the Collateral Agent, shall be segregated from other funds of the Pledgor and shall be forthwith paid over to the Collateral Agent in the same form as so received (with any necessary indorsement). For the avoidance of doubt, so long as no Event of Default exists at the time of such receipt, the Pledgor shall be entitled to receive and retain, free of the Lien of this Agreement, any distribution or other transfer of assets (other than securities or equity interests in the Company) or liabilities of the Company in connection with any liquidation, partial liquidation, dissolution or reorganization of the Company. Upon the occurrence and during the continuation of an Event of Default, all rights of the Pledgor to receive the distributions which it would otherwise be authorized to receive and retain pursuant to the preceding sentence shall cease, and all such rights shall thereupon become vested in the Collateral Agent which shall thereupon have the sole right to receive and hold as Collateral such distributions.

Section 6.2    Obligations of Pledgor and Rights of Collateral Agent. (a) Anything herein to the contrary notwithstanding, (a) the Pledgor shall remain liable under the LLC Agreement to the extent set forth therein to perform all of its duties and obligations thereunder to the same extent as if this Agreement had not been executed, (b) the exercise by the Collateral Agent of any of the rights hereunder shall not release the Pledgor from any of its duties or obligations under the LLC Agreement and (c) neither the Collateral Agent nor any Secured Party shall have any obligation or liability under the LLC Agreement by reason of this Agreement, nor shall the Collateral Agent or any Secured Party be obligated to perform any of the obligations or duties of the Pledgor thereunder or to take any action to collect or enforce any claim assigned hereunder, unless the Collateral Agent has agreed in writing to be so obligated.

(b)    If the Pledgor fails to perform any agreement contained herein, the Collateral Agent may itself perform, or cause performance of, such agreement and the Collateral Agent shall deliver a written notification to the Pledgor of such decision to perform, or cause the performance of, any such agreement, and the Collateral Agent shall

F-12

CSFB001401

exercise reasonable care and act diligently in all such cases, and the reasonable expenses of the Collateral Agent incurred in connection therewith shall be payable by the Pledgor under Section 9.5 of the Credit Agreement.

(c)    Notwithstanding anything contained herein to the contrary, the powers conferred on the Collateral Agent hereunder are solely to protect its interest, and the interest of the other Secured Parties, in the Collateral and shall not impose any duty or obligation upon the Collateral Agent or its designated agents to exercise any such powers. Except for the reasonable care and preservation of any Collateral in its possession and the accounting for moneys actually received by it hereunder, and the duties set forth in Section 9-207 of the Uniform Commercial Code, the Collateral Agent shall have no duty as to any Collateral or as to the taking of any necessary steps to preserve any rights against prior parties or any other rights pertaining to any Collateral, unless the Collateral Agent has agreed in writing to be so obligated.

## ARTICLE VII

## REMEDIES

Section 7.1    <u>Remedies of Collateral Agent</u>.  At any time after an Event of Default occurs and is continuing, the Collateral Agent has the right, subject to compliance with any regulatory requirements of any applicable Governmental Rule, to do any or all of the following:

(a)    The Collateral Agent may exercise any and all rights and remedies of the Pledgor under or in connection with the LLC Agreement, the Membership Interests or otherwise in respect of the Collateral, including, without limitation, any and all rights of the Pledgor to demand, sue for, collect, receive or otherwise require payment of any amount under, or performance of any provision of, the LLC Agreement and all rights of the Pledgor to manage and control the operations of the Company.  In addition, the Collateral Agent may cure any default by the Pledgor under the LLC Agreement.

(b)    The Collateral Agent shall have the right in its discretion and without notice to the Pledgor, to transfer to or to register in the name of the Collateral Agent or any of its nominees any or all of the Collateral, including securing the appointment of a receiver for the Pledgor without notice to the Company or the Pledgor.

(c)    Upon written notice of the Collateral Agent to the Pledgor, all rights of the Pledgor to exercise or refrain from exercising the voting and other consensual rights which it would otherwise be entitled to exercise shall cease, and all such rights shall thereupon become vested in the Collateral Agent who shall thereupon have the sole right to exercise or refrain from exercising in a reasonable manner such voting and other consensual rights in aid of foreclosure or other enforcement of its security interest in the Collateral.

CSFB001402

(d)    Upon receipt of written notice of such Event of Default from the Collateral Agent to the Pledgor, all rights of the Pledgor to receive the distributions which it would otherwise be authorized to receive and retain, shall cease, and all such rights shall thereupon become vested in the Collateral Agent who shall thereupon have the sole right to receive and hold as Collateral such distributions. All distributions which are received by the Pledgor contrary to the provisions of this paragraph, shall be received in trust for the benefit of the Collateral Agent, shall be segregated from other funds of the Pledgor and shall be forthwith paid over to the Collateral Agent as Collateral in the same form as so received (with any necessary indorsement).

(e)    The Collateral Agent may (i) notify the Company to make payment and performance due the Pledgor under the LLC Agreement to the Collateral Agent, (ii) extend the time of payment and performance of, or compromise or settle for cash, credit or otherwise, and upon any terms and conditions, the obligations of the Pledgor under the LLC Agreement, (iii) file any claims, commence, maintain, settle or discontinue any actions, suits or other proceedings at law or in equity deemed by the Collateral Agent in its sole discretion necessary or advisable for the purpose of collecting upon the Collateral or enforcing the LLC Agreement, including specific enforcement of any covenant or agreement contained herein or in the LLC Agreement, or to foreclose or enforce the security interest in all or any part of the Collateral granted herein, or to enforce any other legal or equitable right vested in it by this Agreement or Legal Requirements, and (iv) execute any instrument and do all other things deemed necessary and proper by the Collateral Agent in its sole discretion to protect and preserve and permit the Collateral Agent to realize upon the Collateral and the other rights contemplated thereby.

Section 7.2    Sale of Collateral. In addition to exercising the foregoing rights, subject to compliance with any regulatory requirements of any applicable Governmental Rule, the Collateral Agent may arrange for and conduct a sale of the Collateral at a public or private sale, at any exchange, broker's board or at any of the Collateral Agent's offices or elsewhere (as the Collateral Agent may elect), for cash, on credit or for future delivery, which sale may be conducted by an employee or representative of the Collateral Agent, and any such sale shall be considered or deemed to be a sale made in a commercially reasonable manner. The Collateral Agent agrees to provide at least ten (10) days' prior notice to the Pledgor specifying the time and place of any public sale or the time after which any private sale is to be made and the Pledgor agrees that such ten (10) days' notice shall constitute reasonable notification. The Collateral Agent may release, temporarily or otherwise, to the Pledgor any item of Collateral of which the Collateral Agent has taken possession pursuant to any right granted to the Collateral Agent by this Agreement without waiving any rights granted to the Collateral Agent under this Agreement, the Credit Agreement, the other Loan Documents or any other agreement related hereto or thereto. The Pledgor, in dealing with or disposing of the Collateral or any part thereof, hereby waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to require, upon foreclosure, sales of assets in a particular order. The Pledgor also waives its right to

F-14

CSFB001403

challenge the reasonableness of any disclaimer of warranties, title and the like made by the Collateral Agent in connection with a sale of the Collateral. Each successor and assign of the Pledgor, and any holder of a lien subordinate to the Lien created hereby (without implying that the Pledgor has, except as expressly provided herein, a right to grant an interest in, or a subordinate lien on, any of the Collateral), by acceptance of its interest or lien agrees that it shall be bound by the above waiver, to the same extent as if such holder gave the waiver itself. The Pledgor also hereby waives, to the full extent it may lawfully do so, the benefit of all laws providing for rights of appraisal, valuation, stay or extension or of redemption after foreclosure now or hereafter in force. If the Collateral Agent sells any of the Collateral upon credit, the Pledgor will be credited only with payments actually made by the purchaser, received by the Collateral Agent and applied to the indebtedness of the purchaser. In the event a purchaser fails to pay for the Collateral, the Collateral Agent may resell the Collateral and the Pledgor shall be credited with the proceeds of such sale.

       Section 7.3    <u>Registration of Securities</u>. (a) In view of the position of the Pledgor in relation to the Collateral, or because of other current or future circumstances, questions may arise under the Securities Act of 1933, as now or hereafter in effect, or any similar statute hereafter enacted analogous in purpose or effect (such Act and any such similar statute as from time to time in effect being called the "<u>Federal Securities Laws</u>") with respect to any disposition of the Collateral permitted hereunder. The Pledgor understands that compliance with the Federal Securities Laws might very strictly limit the course of conduct of the Collateral Agent if the Collateral Agent were to attempt to dispose of all or any part of the Collateral, and might also limit the extent to which or the manner in which any subsequent transferee of any Collateral could dispose of the same. Similarly, there may be other legal restrictions or limitations affecting the Collateral Agent in any attempt to dispose of all or part of the Collateral under applicable Blue Sky or other state securities laws or similar laws analogous in purpose or effect. The Pledgor recognizes that in light of the foregoing restrictions and limitations the Collateral Agent may, with respect to any sale of Collateral, to the extent commercially reasonable, limit the purchasers to those who will agree, among other things, to acquire Collateral for their own account, for investment, and not with a view to the distribution or resale thereof. The Pledgor acknowledges and agrees that, in light of the foregoing restrictions and limitations, the Collateral Agent, in a commercially reasonable manner, (i) may proceed to make such a sale whether or not a registration statement for the purpose of registering the Collateral or part thereof shall have been filed under the Federal Securities Laws and (ii) may approach and negotiate with a single possible purchaser to effect such sale. The Pledgor acknowledges and agrees that any such sale might result in prices and other terms less favorable to the seller than if such sale were a public sale without such restrictions. In the event of any such sale, the Collateral Agent shall incur no responsibility or liability for selling all or any part of the Collateral at a price that the Collateral Agent, in a commercially reasonable manner, may in good faith deem reasonable under the circumstances, notwithstanding the possibility that a substantially higher price might have been realized if the sale were deferred until after registration as aforesaid or if more than a single purchaser were approached. The provisions of this paragraph will apply notwithstanding the existence of a public or private market upon which the quotations or sales prices may exceed substantially the

CSFB001404

price at which the Collateral Agent sells. The Pledgor agrees that sales made pursuant to this paragraph are made in a commercially reasonable manner.

      (b)     If the Collateral Agent shall decide to exercise its right to sell any or all of the Collateral, and if in the opinion of counsel for the Collateral Agent it is necessary to have such Collateral, or that portion thereof to be sold, registered under the provisions of the Securities Act of 1933, as amended, or otherwise registered or qualified under any Federal Securities Law, the Pledgor and the Company will execute and deliver, all at the Pledgor's and the Company's expense, all such instruments and documents which, in the opinion of the Collateral Agent, are necessary to register or qualify such Collateral, or that portion thereof to be sold, under the provisions of the Securities Laws. The Pledgor and the Company will execute and will use best efforts to cause any registration statement relating thereto to become effective and to remain effective for a period of not less than six months from the date of the first public offering of such Collateral, or that portion thereof to be sold, and to make all amendments thereto and/or to any related prospectus or similar document which, in the reasonable opinion of the Collateral Agent, are necessary, all in conformity with the Securities Laws applicable thereto. Without limiting the generality of the foregoing, the Pledgor and the Company agree to comply with the provisions of the securities or "Blue Sky" laws of any jurisdiction(s) which the Collateral Agent shall reasonably designate and to make available to security holders, as soon as practicable, an earnings statement which will satisfy the provisions of Section 11(a) of the Securities Act of 1933.

      Section 7.4    Distributions as Collateral. All payments made under or in connection with the LLC Agreement, the Membership Interests, or otherwise in respect of the Collateral and received by the Collateral Agent may, in the discretion of the Collateral Agent and to the extent permitted by Legal Requirements, be held by the Collateral Agent as collateral for the Obligations.

      Section 7.5    Waiver of Rights and Remedies Under Applicable Legal Requirements. To the extent permitted under applicable Legal Requirements, the Pledgor hereby waives all rights and remedies of a debtor or grantor under the Uniform Commercial Code or other applicable Legal Requirements (except for any defense of payment in full), and all formalities prescribed by law relative to the sale or disposition of the Collateral (other than notice of sale) after the occurrence and during the continuation of an Event of Default and all other rights and remedies of the Pledgor with respect thereto.

      Section 7.6    Compliance With Limitations and Restrictions; No Discount. The Pledgor hereby agrees that in respect of any sale of any of the Collateral pursuant to the terms hereof, the Collateral Agent is hereby authorized to comply with any limitation or restriction in connection with such sale as it may be advised by counsel is necessary in order to avoid any violation of applicable Legal Requirements, or in order to obtain any required approval of the sale or of the purchaser by any Governmental Authority or official, and the Pledgor further agrees that such compliance shall not result in such sale being considered or deemed not to have been made in a commercially reasonable manner, nor shall the Collateral Agent be liable or accountable to the Pledgor

CSFB001405

for any discount allowed by reason of the fact that such Collateral is sold in compliance with any such limitation or restriction.

## ARTICLE VIII

## ATTORNEY-IN-FACT

Section 8.1    Collateral Agent Appointed Attorney-in-Fact.  The Pledgor hereby irrevocably appoints the Collateral Agent as the Pledgor's attorney-in-fact, with full authority in the place and stead of the Pledgor and in the name of the Pledgor or otherwise, upon the occurrence of and during the continuance of an Event of Default, in the Collateral Agent's discretion to take any and all actions authorized or permitted to be taken by the Collateral Agent under this Agreement or by law, including but not limited to the power to:

(a)    take any action and execute any instrument which the Collateral Agent may reasonably deem necessary or advisable to accomplish the purposes of this Agreement;

(b)    to ask for, demand, collect, sue for, recover, receive and give acquittance and receipts for moneys due and to become due under or in connection with the Collateral;

(c)    to receive, indorse, and collect any drafts or other instruments, documents and chattel paper in connection therewith; and

(d)    to file any claims or take any action or institute any proceedings which the Collateral Agent may deem to be necessary or desirable for the collection of any of the Collateral or to enforce compliance with the terms and conditions of the LLC Agreement.

## ARTICLE IX

## MISCELLANEOUS

Section 9.1    Indemnity and Expenses.  The provisions of Section 9.5 of the Credit Agreement are incorporated herein by reference.

Section 9.2    Security Interest Absolute.  The obligations of the Pledgor under this Agreement shall be absolute and unconditional and shall remain in full force and effect without regard to, and shall not be released, suspended, discharged, terminated or otherwise affected by, any circumstance or occurrence whatsoever, including, without limitation: (a) any renewal, extension, amendment or modification of, or addition or supplement to or deletion from, the Credit Agreement or any other Loan Document or any other instrument or agreement referred to therein, or any assignment or transfer of any thereof; (b) any waiver, consent, extension, indulgence or other action or inaction under or in respect of any such instrument or agreement or this Agreement or any exercise or non-exercise of any right, remedy, power or privilege under or in respect of

F-17

CSFB001406

this Agreement or any other Loan Document; (c) any furnishing of any additional security (including, without limitation, any assets, whether now owned or hereafter acquired, upon which a Lien is created or granted from time to time pursuant to the other Security Documents) to the Collateral Agent or any acceptance thereof or any sale, exchange, release, surrender or realization of or upon any security by the Collateral Agent; or (d) any invalidity, irregularity or unenforceability of all or part of the Obligations or of any security therefor. In the event of any inconsistency between this Agreement and the Credit Agreement, the Credit Agreement shall govern.

    Section 9.3 <u>Delivery of Collateral</u>. All certificates or instruments representing or evidencing the Collateral shall be delivered to and held by or on behalf of the Collateral Agent pursuant hereto. All such certificates or instruments shall be in suitable form for transfer by delivery, or shall be accompanied by duly executed instruments of transfer or assignment in blank, all in form and substance reasonably acceptable to the Collateral Agent. The Collateral Agent shall have the right, at any time in its discretion and without prior notice to the Pledgor, following the occurrence and during the continuation of an Event of Default, to transfer to or to register in the name of the Collateral Agent or any of its nominees any or all of the Collateral and to exchange certificates or instruments representing or evidencing Collateral for certificates or instruments of smaller or larger denominations. In furtherance of the foregoing, the Pledgor shall further execute and deliver to the Collateral Agent an ownership power in the form of Exhibit A attached hereto with respect to the Membership Interests in the Company owned by the Pledgor that are represented by certificates or other instruments.

    Section 9.4 <u>Remedies Cumulative; Delay Not Waiver</u>.

    (a) <u>Remedies Cumulative</u>. Each and every right and remedy of the Collateral Agent hereunder shall be cumulative and shall be in addition to any other right or remedy given hereunder or under the other Loan Documents now or hereafter existing at law or in equity or by statute.

    (b) <u>No Waiver; Separate Causes of Action</u>. No delay or omission to exercise any right, power or remedy accruing to the Collateral Agent upon the occurrence of any breach or default of the Pledgor under this Agreement or any other Loan Document shall impair any such right, power or remedy of the Collateral Agent, nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring, nor shall any waiver of any other breach or default under this Agreement or any other Loan Document be deemed a waiver of any other breach or default theretofore or thereafter occurring. Any waiver, permit, consent or approval of any kind or character on the part of the Collateral Agent of any breach or default under this Agreement, or any waiver on the part of the Secured Parties or of the Collateral Agent of any provision or condition of this Agreement, must be in writing and shall be effective only to the extent in such writing specifically set forth. Each and every default by the Pledgor hereunder shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

CSFB001407

Section 9.5    Payment of Fees.  The Pledgor shall pay all filing, registration and recording fees and all re-filing, re-registration and re-recording fees, and all reasonable expenses incident to the execution and acknowledgment of this Agreement, any assurance, and all federal, state, county and municipal stamp taxes and other taxes, duties, imports, assessments and governmental charges arising out of or in connection with the execution and delivery of this Agreement, any agreement supplemental hereto, any financing statements, and any instruments of further assurance.

Section 9.6    Information Concerning Collateral.  The Pledgor shall, promptly upon the request of the Collateral Agent, provide to the Collateral Agent all information and evidence as the Collateral Agent may reasonably request concerning the Collateral to enable the Collateral Agent to administer or enforce the provisions of this Agreement.

Section 9.7    Company's Consent.  The Company hereby consents to the assignment of and grant of a security interest in the Collateral to the Collateral Agent and to the exercise by the Collateral Agent of all rights and powers assigned or delegated to the Collateral Agent by the Pledgor hereunder, including the right, upon and during an Event of Default and subject to compliance with any regulatory requirements of any applicable Governmental Rule, to exercise the Pledgor's voting rights and other rights with respect to the Collateral to manage or control the Company.

Section 9.8    Termination of Security Interest.  Upon the indefeasible payment in full in cash of all Obligations, the termination of all Letters of Credit and the termination of all Commitments and other obligations of the Secured Parties to extend credit under the Loan Documents, this Agreement and the security interest and all other rights granted hereby shall terminate and all rights to and interest in the Collateral shall revert to the Pledgor.  Upon any such termination, the Collateral Agent will return all certificates evidencing ownership interests in the Company, and all ownership powers executed hereunder, to the Pledgor and will, at the Pledgor's expense, execute and deliver to the Pledgor such documents (including UCC-3 termination statements) as the Company or the Pledgor shall reasonably request to evidence such termination.  The release of the security interest in any or all of the Collateral, the taking or acceptance of additional security, or the resort by the Collateral Agent to any security it may have in any order it may deem appropriate, shall not affect the liability of any person on the indebtedness secured hereby.  If this Agreement shall be terminated or revoked by operation of law, the Pledgor will indemnify and save the Collateral Agent and the other Secured Parties harmless from any loss which may be suffered or incurred by the Collateral Agent and the other Secured Parties in acting hereunder prior to the receipt by the Collateral Agent, its successors, transferees, or assigns of notice of such termination or revocation.

Section 9.9    Expenses; Interest.

(a)    Expenses.  The Pledgor agrees to pay on demand to the Collateral Agent all reasonable costs and expenses incurred by the Collateral Agent (including the reasonable fees and disbursements of counsel) in connection with its enforcement,

F-19

CSFB001408

protection or preservation of any of its rights or claims (or the rights or claims of any other Secured Party) under this Agreement.

    (b)    Interest.  Any amount required to be paid by the Pledgor pursuant to the terms hereof shall bear interest at the Default Rate or the maximum rate permitted by Legal Requirements, whichever is less, from the date due until paid in full.

    Section 9.10   Amendments; Etc.  This Agreement may be changed, waived, discharged or terminated only (i) by an instrument in writing signed by each of the parties hereto, (ii) pursuant to Section 9.8 above and (iii) in accordance with the Section 9.1 of the Credit Agreement.

    Section 9.11   Address for Notices.  All notices and other communications hereunder shall be given (in the manner specified in the Credit Agreement) to the parties hereto at the addresses specified under their respective names on the signature pages hereto, or as to any party at such other address as shall be designated by such party in a written notice to each other party.

    Section 9.12   Continuing Assignment; Pledge and Security Interest; Release.  This Agreement shall create a continuing pledge, assignment of, hypothecation of and security interest in the Collateral and shall (a) remain in full force and effect until the payment in full of the Obligations (other than contingent surviving obligations) and the termination of the Commitments and (b) inure to the benefit of, and be enforceable by, the Collateral Agent, the other Secured Parties and their respective successors, transferees and assigns.  Without limiting the generality of the foregoing clause (b), any Lender may assign or otherwise transfer all or any portion of its rights in the Obligations to the extent and in the manner provided in the Credit Agreement, and such assignee shall thereupon become vested with all the benefits in respect thereof granted to such Lender herein or otherwise.

    Section 9.13   Severability.  If any provision of this Agreement shall be held or deemed to be or shall, in fact, be illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatever.

    Section 9.14   Survival of Provisions.  All agreements, representations and warranties made herein shall survive the execution and delivery of this Agreement and the other Loan Documents and the making of Loans, issuance of Letters of Credit and other extensions of credit thereunder.

    Section 9.15   Binding Agreement.  This Agreement is binding upon the Pledgor and its successors and assigns.  The Pledgor is not entitled to assign its obligations hereunder to any other person without the written consent of the Collateral Agent, and any purported assignment in violation of this provision shall be void.

    Section 9.16   Headings.  The headings of the various articles, sections and paragraphs of this Agreement are for convenience of reference only, do not constitute a part hereof and shall not affect the meaning or construction of any provision hereof.

CSFB001409

Section 9.17    GOVERNING LAW.  THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK WITHOUT REGARD TO THE PRINCIPLES OF CONFLICT OF LAWS THEREOF OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW OF THE STATE OF NEW YORK.

Section 9.18    WAIVER OF JURY TRIAL; SUBMISSION TO JURISDICTION.  EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT AND FOR ANY COUNTERCLAIM THEREIN.

THE COLLATERAL AGENT, THE PLEDGOR AND THE COMPANY AGREE THAT ANY LEGAL ACTION OR PROCEEDING BY OR AGAINST THE PLEDGOR OR THE COMPANY OR WITH RESPECT TO OR ARISING OUT OF THIS AGREEMENT MAY BE BROUGHT IN OR REMOVED TO THE COURTS OF THE STATE OF NEW YORK, IN AND FOR THE COUNTY OF NEW YORK, OR THE COURTS OF THE UNITED STATES OF AMERICA FOR THE SOUTHERN DISTRICT OF NEW YORK, AS THE COLLATERAL AGENT MAY ELECT.  BY EXECUTION AND DELIVERY OF THIS AGREEMENT, THE COLLATERAL AGENT, THE PLEDGOR AND THE COMPANY ACCEPT, FOR THEMSELVES AND IN RESPECT OF THEIR PROPERTY, GENERALLY AND UNCONDITIONALLY, THE JURISDICTION OF THE AFORESAID COURTS.  THE COLLATERAL AGENT, THE PLEDGOR AND THE COMPANY IRREVOCABLY CONSENT TO THE SERVICE OF PROCESS OUT OF ANY OF THE AFOREMENTIONED COURTS IN ANY MANNER PERMITTED BY APPLICABLE LEGAL REQUIREMENTS.  NOTHING HEREIN SHALL AFFECT THE RIGHT OF THE COLLATERAL AGENT TO BRING LEGAL ACTION OR PROCEEDINGS IN ANY OTHER COMPETENT JURISDICTION, INCLUDING JUDICIAL OR NON-JUDICIAL FORECLOSURE.  THE COLLATERAL AGENT, THE PLEDGOR AND THE COMPANY HEREBY WAIVE ANY RIGHT TO STAY OR DISMISS ANY ACTION OR PROCEEDING UNDER OR IN CONNECTION WITH THIS AGREEMENT BROUGHT BEFORE THE FOREGOING COURTS ON THE BASIS OF *FORUM NON CONVENIENS.*

Section 9.19    Third Party Rights.  Nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon, or give to any Person, other than the Pledgor, the Collateral Agent and the Secured Parties, any security, rights, remedies or claims, legal or equitable, under or by reason hereof, or any covenant or condition hereof; and this Agreement and the covenants and agreements herein contained are and shall be held to be for the sole and exclusive benefit of the Pledgor, the Collateral Agent and the Secured Parties.

Section 9.20    Execution in Counterparts.  This Agreement may be executed in any number of counterparts and by different parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same instrument.

CSFB001410

Section 9.21   <u>Applicability of Credit Agreement</u>.  In amplification of, and notwithstanding any other provisions of this Agreement, in connection with its obligations hereunder, the Collateral Agent has all of the rights, powers, privileges, exculpations, protections and indemnities as provided to it in the Credit Agreement.

[Signature pages to follow]

F-22

CSFB001411

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by their officers thereunto duly authorized as of the date first above written.

CREDIT SUISSE FIRST BOSTON, not in its individual capacity, but solely as Collateral Agent

By:_____
    Name:
    Title:

By:_____
    Name:
    Title:

Address for notice:

Eleven Madison Avenue
New York, New York 10010-3629
Attention: Agency Department Manager
Telephone:
Telecopier:

CSFB001412

NORTHWESTERN CORPORATION


By:_____
    Name:
    Title:

Address for notice:

125 South Dakota Avenue, Suite 1100
Sioux Falls, South Dakota 57104-6403
Attention: Chief Financial Officer
Telephone: (605) 978-2908
Telecopier: (605) 978-2910

F-24

CSFB001413

Exhibit A to
Pledge Agreement

Irrevocable Instrument of Transfer

FOR VALUE RECEIVED, the undersigned hereby sells, assigns and transfers to

the following membership interest of The Montana Power Company, L.L.C., a Delaware limited liability company:

[100% Limited Liability Company Membership Interest]

and irrevocably appoints _____ its agent and attorney-in-fact to transfer all or any part of such capital stock and to take all necessary and appropriate action to effect any such transfer. The agent and attorney-in-fact may substitute and appoint one or more persons to act for him. The effectiveness of a transfer pursuant to this stock power shall be subject to any and all transfer restrictions referenced on the face of the certificates evidencing such interest or in the limited liability company agreement of the subject company, to the extent they may from time to time exist.

NORTHWESTERN CORPORATION

By: _____
    Name:
    Title:

CSFB001414