# EXHIBIT 23

NORTHWESTERN CORPORATION
BOARD OF DIRECTORS
MINUTES OF REGULAR MEETING
AUGUST 7, 2002

A regular meeting of the Board of Directors of Northwestern Corporation, (the "Corporation") was held at 7:00 a.m. MDT on August 7, 2002, at The Summit at Big Sky Resort, Big Sky, Montana. The following Directors were present in person:

> Randy G. Darcy
> Gary G. Drook
> Richard R. Hylland
> Jerry W. Johnson
> Merle D. Lewis
> Larry F. Ness
> Marilyn R. Seymann
> Bruce I. Smith

Also present were Daniel K. Newell, Eric R. Jacobsen, Michael J. Hanson, John C. Charters, and Alan D. Dietrich of the Corporation, Mark Toney of AlixPartners, and Lionel L. Nowell, III.

The meeting was called to order by the Chairman of the Board, Merle D. Lewis, who served as Chairman of the meeting, and Mr. Dietrich served as Secretary.

**Governance Committee Nominating Report**

Governance Committee Chair Drook introduced Mr. Nowell, whom the Committee was recommending for election to fill a vacancy on the Board of Directors, and who had consented to serve on the Corporation's Board. Following a discussion, the Board members unanimously adopted the following resolution:

> BE IT RESOLVED by the Board of Directors of NORTHWESTERN CORPORATION (the "Corporation") that Lionel L. Nowell, III is hereby elected as a member of the Board of Directors, in Class III, to serve from this date for the balance of the current term for Directors in such Class, and until a successor is elected and qualifies.

MOU-00143
CONFIDENTIAL

NOR009568

**Consideration of dividends payable September 1, 2002**

The Chairman then noted that the next regular quarterly dividend payment on the Corporation's outstanding Cumulative Preferred Stock is September 1, 2002. He indicated that the Board should also consider declaration of a quarterly dividend on the outstanding Common Stock of the Corporation. Mr. Dietrich stated that the Corporation, consistent with the authorization approved at the April 30 – May 1, 2002 Board meeting, had redeemed all of the outstanding shares of 4½% Cumulative Preferred Stock, as of July 31, 2002, and, in addition, had proposed a purchase of the outstanding shares of 6½% Cumulative Preferred Stock to the two holders of that security, to be effective August 15, 2002. Because the executed purchase agreements for the 6½% Preferred shares had not been received as of the time of this meeting, Mr. Dietrich recommended that the Board approve a tentative dividend on such shares, payable September 1, 2002, only if the shares had not been repurchased at such time.

Thereupon, on motion duly made and seconded, the Directors unanimously adopted the following resolution with regard to the Commutative Preferred Stock of the Corporation:

> BE IT RESOLVED by the Board of Directors of NORTHWESTERN CORPORATION (the "Corporation") that there shall be, and is, hereby declared the following dividend upon each of the outstanding shares of 6½% Cumulative Preferred Stock of the Corporation, if outstanding September 1, 2002:
>
> Quarterly dividend in the amount of $1.625 per share;
>
> payable out of the surplus of the Corporation available therefore, on September 1, 2002, and that August 15, 2002 be, and the same is, hereby declared to be the record date for the determination of stockholders entitled to receive payment of the said dividend;

MOU-00144
CONFIDENTIAL

NOR009569

> FURTHER RESOLVED, that there shall be, and is, hereby declared upon each of the outstanding shares of Common Stock of the Corporation, a quarterly dividend in the amount of $0.3175 per share payable out of the surplus of the Corporation available therefore, on September 1, 2002, and that August 15, 2002 be, and the same is, hereby declared to be the record date for the determination of stockholders entitled to receive payment of the said dividend.

**Approval of Minutes of Previous Meetings**

The Chairman stated that there had been provided to each Director for his or her information and approval copies of the minutes of the annual meeting of the Board of Directors held on April 30 – May 1, 2002, and of the special meeting of the Board of Directors held on June 21, 2002.

Thereupon, on motion duly made and seconded, the Directors adopted the following resolution:

> BE IT RESOLVED by the Board of Directors of NORTHWESTERN CORPORATION that the minutes of the annual meeting of the Board of Directors held on April 30 – May 1, 2002, and the special meeting held on June 21, 2002, are hereby approved as recorded.

**Montana Operations Restructuring**

Mr. Jacobsen stated that following the acquisition of The Montana Power Company's utility transmission and distribution business in February, the Corporation has operated the acquired business as a subsidiary, NorthWestern Energy, L.L.C., but that as was previously discussed with the Board, with the market, and with rating agencies, the Corporation has intended to go to a "flat" structure by moving the Montana operations from the LLC to the Corporation as part of its utility division, NorthWestern Energy. He stated that management was recommending the Board authorize the officers of the Corporation to take the necessary steps to go to the "flat"

structure. Following a discussion, the members of the Board of Directors unanimously adopted the following resolution:

WHEREAS, NorthWestern Corporation (the "Corporation") believes it is advisable for rating agency purposes to move the assets of its wholly-owned subsidiary, NorthWestern Energy, L.L.C. (referred to herein as "NWE", formerly known as The Montana Power, L.L.C. ("MPLLC") into which The Montana Power Company was merged on February 13, 2002, with MPLLC being the surviving entity), to the Corporation to more directly support the obligations of the Corporation;

WHEREAS, the Corporation desires that NWE transfer substantially all of NWE's assets to it, except for those assets (and liabilities) associated with the Milltown hydroelectric dam on the Clark Fork River (the "Milltown Dam") (collectively, excluding the Milltown Dam assets and liabilities, the "NWE Assets and Liabilities");

WHEREAS, the Board of Directors desires to effect the transfer of the NWE Assets and Liabilities to it by NWE (the "NWE Asset Transfer") such that upon the consummation of the NWE Asset Transfer all assets and liabilities associated with the Milltown Dam remain with NWE and from and after the consummation of the NWE Asset Transfer, to operate the business comprising the NWE Assets and Liabilities as a division of the Corporation to be known as the "NorthWestern Energy Division".

NOW, THEREFORE, BE IT RESOLVED that the Board of Directors hereby authorizes, empowers and directs the officers of the Corporation, or any of them, to execute and deliver an asset and stock transfer agreement to be entered into between the Corporation and NWE (the "Transfer Agreement") to effect the NWE Asset Transfer, as well as any agreements, instruments, or documents contemplated thereby or in connection therewith ("Ancillary Agreements"), as the proper officers of the Corporation may deem necessary or desirable, with such modifications or amendments thereto as such officers shall approve and the execution of such Transfer Agreement and Ancillary Agreements shall be deemed conclusive evidence of such approval;

FURTHER RESOLVED, that the Board of Directors hereby authorizes, empowers and directs the proper officers of the Corporation, or any of them, to execute and deliver a power purchase agreement with NWE for the purchase of power from the Milltown Dam at a price equal to the price authorized in NWE's Tier II proceeding (the "PPA") and keepwell agreements to be entered into between the Corporation and NWE pursuant to which the Corporation will ensure that NWE will have necessary funds to pay (i) the maintenance and operating costs of the Milltown Dam not paid pursuant to the PPA and (ii) NWE's allowable

share of environmental liabilities relating to the Milltown Dam (collectively, the "Keepwell Agreements"), on mutually agreeable terms, with such modifications or amendments thereto as such officers shall approve and the execution of such PPA and Keepwell Agreements shall be deemed conclusive evidence of such approval;

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and instructed on behalf of the Corporation to take all other actions to effect the NWE Asset Transfer, such as, among other things, obtaining any necessary or desirable consents, or providing necessary or desirable notices, certificates, ratings confirmation letters or taking other actions, including, without limitation, under, or in connection with, the Credit Agreement among the Corporation, Credit Suisse First Boston ("CSFB"), CIBC Inc. ABN AMRO Bank, N.V., and Barclays Capital, as co-arrangers, and CSFB, as administrative agent, lead arranger and sole book runner, dated as of January 14, 2002, and as such officer shall deem necessary or desirable;

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and instructed on behalf of the Corporation and in its name to prepare, execute and file with the Securities and Exchange Commission any and all documents, reports, statements, filings, requests and information supplements as may be necessary or desirable for the purpose of completing the transactions contemplated by, or in connection with, the NWE Asset Transfer;

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and instructed on behalf of the Corporation to take all action, and act in the name of, or represent, the Corporation where necessary or desirable to comply with any and all applicable federal, state and local laws, rules and regulations applicable to the Corporation or the NWE Asset Transfer, including, without limitation, in connection with the Federal Energy Regulatory Commission and state and other federal regulatory agencies;

FURTHER RESOLVED, that the officers of the Corporation be, and each of them is, authorized, empowered and instructed, for and on behalf of the Corporation, to retain such consultants, advisors, attorneys, independent contractors, investor and public relations firms as they deem necessary or desirable and on such terms and conditions as they deem appropriate to effect the NWE Asset Transfer and further the purposes and intent of these resolutions;

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and instructed, for and on behalf of the Corporation, to take all such further actions and to negotiate,

MOU-00147
CONFIDENTIAL

NOR009572

execute and deliver any and all documents, filings, reports, statements, instruments and certificates, and to do or cause to be done any and all acts as such officers may deem necessary or appropriate in order to carry out the purposes and intentions of these resolutions, including, but not limited to, the transactions in anticipation of, contemplated by, or in connection with the NWE Asset Transfer;

FURTHER RESOLVED, that Eric R. Jacobsen and Michael J. Hanson, or either of them, shall have a proxy to adopt the necessary or appropriate resolutions of the Corporation as manager of NWE to approve as manager of NWE the NWE Asset Transfer and related actions; and

FURTHER RESOLVED, that any and all actions taken by any director, officer, employee or agent of the Corporation in furtherance of the foregoing resolutions and within the authority conferred by the foregoing resolutions are hereby ratified and approved in all respects.

Mr. Jacobsen then stated that NorthWestern Energy, L.L.C., has had a continuing SEC reporting responsibility because of its public debt. In addition to administrative burdens and costs related to these additional 10-K and 10-Q filings, such reporting is confusing to the market because of the similarity in reporting entity name and the different financial information reported. He advised that the additional reporting responsibility could be avoided by the Corporation agreeing to jointly (with the LLC) guarantee the obligations under the 8.45% Cumulative Quarterly Income Preferred Securities, Series A (the "QUIPs") of Montana Power Capital I. Following a discussion, the members of the Board of Directors unanimously adopted the following resolution:

WHEREAS, pursuant to a Unit Purchase Agreement, dated as of September 29, 2000, by and between NORTHWESTERN CORPORATION (the "Company"), Touch America Holdings, Inc. and The Montana Power Company, on February 15, 2002, the Company acquired all the outstanding membership interests in NorthWestern Energy, L.L.C., formerly known as The Montana Power, L.L.C. and successor to The Montana Power Company ("NW Energy LLC"), and NW Energy LLC became a direct wholly-owned subsidiary of the Company; and

WHEREAS, NW Energy LLC is currently required to file reports under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), as a result of the issuance, sale and listing on the New York Stock

MOU-00148
CONFIDENTIAL

NOR009573

Exchange of $65,000,000 aggregate liquidation amount of the 8.45% Cumulative Quarterly Income Preferred Securities, Series A (the "QUIPs") of Montana Power Capital I (the "Trust") and the issuance and sale of certain other securities under the Securities Act of 1933, as amended;

WHEREAS, in connection with the issuance and sale of the QUIPs, NW Energy LLC issued $67,010,325 aggregate principal amount of its 8.45% Junior Subordinated Debentures due December 31, 2036 (the "QUIPs Debentures"), all of which are currently outstanding, to the Trust pursuant to an Indenture, dated as of November 1, 1996, between The Montana Power Company and The Bank of New York (the "Trustee"), as amended by the First Supplemental Indenture, dated as of February 13, 2002, between NW Energy LLC and the Trustee (as supplemented, the "Indenture");

WHEREAS, in connection with the issuance and sale of the QUIPs, NW Energy LLC also entered into (i) the Guarantee Agreement, dated as of November 1, 1996, between The Montana Power Company and the Trustee, as amended by the Side Letter, dated as of February 13, 2002, from NW Energy LLC to the Trustee (as supplemented, the "Guarantee Agreement"), pursuant to which NW Energy LLC irrevocably and unconditionally agreed to make certain payments, on the terms and conditions set forth in the Guarantee Agreement, for the benefit of the holders of the QUIPs, (ii) the Amended and Restated Trust Agreement of the Trust, dated as of November 1, 1996 (the "Trust Agreement"), among The Montana Power Company, as depositor, the Trustee, as property trustee, The Bank of New York (Delaware), as Delaware trustee, and Ellen M. Senechal, Jerrold P. Pederson and Pamela K. Merrell, as administrative trustees and (iii) the Agreement as to Expenses and Liabilities, dated as of November 1, 1996 (the "Expense Agreement" and, together with the Guarantee Agreement and the Trust Agreement, the "QUIPs Agreements"), between The Montana Power Company and the Trust;

WHEREAS, the Board of Directors of the Company deems it in the best interests of the Company to suspend the reporting obligations of NW Energy LLC under the Exchange Act, while maintaining the listing of the QUIPs on the New York Stock Exchange;

WHEREAS, in order to suspend the reporting obligations of NW Energy LLC under the Exchange Act, while maintaining the listing of the QUIPs on the New York Stock Exchange, the Board of Directors of the Company deems it in the best interests of the Company to fully and unconditionally assume on a joint and several basis with NW Energy LLC, (i) the due and punctual payments of the principal of and premium, if any, and interest, if any, on all of the outstanding QUIPs Debentures and (ii) the performance of every covenant, obligation and agreement of NW

MOU-00149
CONFIDENTIAL

NOR009574

Energy LLC under the Indenture with respect to the outstanding QUIPs Debentures and under the QUIPs Agreements;

NOW, THEREFORE, BE IT HEREBY RESOLVED, that this Board of Directors authorizes the Company to fully and unconditionally assume on a joint and several basis with NW Energy LLC, (i) the due and punctual payments of the principal of and premium, if any, and interest, if any, on all of the outstanding QUIPs Debentures and (ii) the performance of every covenant, obligation and agreement of NW Energy LLC under the Indenture with respect to the outstanding QUIPs Debentures and the QUIPs Agreements, to the same extent as if the Company were deemed to be NW Energy LLC for all purposes of the QUIPs Debentures, the Indenture and the QUIPs Agreements, which assumption shall be subject to all of the terms and conditions related to the QUIPs Debentures contained in the Assumption Agreements (as defined below), the QUIPs Debentures, the Indenture and the QUIPs Agreements; and be it

FURTHER RESOLVED, that the Company enter into a Supplemental Indenture (the "Supplemental Indenture"), Amendment to Guarantee Agreement ("Guarantee Amendment") and Assumption Letter Agreement ("Assumption Agreement" and, collectively with the Supplemental Indenture and the Guarantee Agreement, the "Assumption Agreements"), and any other agreements, documents, instruments and certificates related thereto, and any and all amendments, restatements, renewals and extensions thereof, with the parties listed therein, providing for, among other things, the full and unconditional assumption on a joint and several basis with NW Energy LLC of NW Energy LLC's obligations under the QUIPs Debentures, the Indenture and the QUIPs Agreements, substantially in the forms presented to the Board of Directors, with such changes, amendments and modifications as each or any of the Chairman and Chief Executive Officer; the President and Chief Operating Officer; the Vice President and Chief Financial Officer; the Vice President, General Counsel, Chief Legal Officer and Assistant Secretary; the Treasurer and Controller; the Vice President—Legal Administration and Corporate Secretary of the Company (each such officer referred to as an "Authorized Officer"), acting jointly or individually, shall determine, the execution and delivery thereof to be conclusive evidence of such determination; that the Authorized Officers, any one of whom may act without the joinder of any of the others, are hereby authorized, empowered and directed, in the name and on behalf of the Company and/or any of its subsidiaries, as provided in these resolutions to execute and deliver the Assumption Agreements, and any other agreements, documents, instruments and certificates related thereto, and any and all amendments, restatements, renewals and extensions thereof; that the Company is hereby authorized to comply with the provisions of, and perform all of the transactions contemplated by the Assumption Agreements, and any other agreements, documents, instruments and

MOU-00150
CONFIDENTIAL

NOR009575

certificates related thereto, and any and all amendments, restatements, renewals and extensions thereof; and that upon execution thereof by an Authorized Officer, such Assumption Agreements, and any other agreements, documents, instruments and certificates related thereto, and any and all amendments, restatements, renewals and extensions thereof, shall be the legal, valid and binding obligations of the Company, enforceable against it in accordance with their respective terms; and be it

FURTHER RESOLVED, that the Company is authorized, and each and any Authorized Officer is hereby authorized, empowered and directed, to take, or to instruct others to take, any and all actions, in the name and on behalf of the Company and/or any of its subsidiaries, with the New York Stock Exchange, and to pay any and all fees necessary or advisable to the New York Stock Exchange, to reflect the assumption of the QUIPs Debentures, the Indenture and the QUIPs Agreements by the Company; and be it

FURTHER RESOLVED, that the Company is authorized, and each and any Authorized Officer is hereby authorized, empowered and directed, to apply, in the name and on behalf of the Company and/or any of its subsidiaries, for the registration under the Exchange Act of the assumption of the QUIPs Debentures, the Indenture and the QUIPs Agreements by the Company and the qualification of the Assumption Agreements under the Trust Indenture Act of 1939, as amended (the "Trust Indenture Act"), and in connection therewith to prepare and file with the Securities and Exchange Commission such applications, registration statements and other instruments as may be necessary or advisable to comply with the Exchange Act and the Trust Indenture Act and the rules and regulations adopted by the Securities and Exchange Commission thereunder; and be it

FURTHER RESOLVED, that the Company is authorized, and each and any Authorized Officer is hereby authorized, empowered and directed, to take, or to instruct others to take, any and all actions, in the name and on behalf of the Company, as manager of NW Energy LLC, necessary or desirable to suspend the reporting obligations of NW Energy LLC under Section 15(d) of the Exchange Act, including the filing of Form 15 with the Securities and Exchange Commission;

FURTHER RESOLVED, that each and any Authorized Officer is authorized, empowered and directed, in the name and on behalf of the Company and/or any of its subsidiaries, to execute and deliver any agreement, document, instrument, certificate or other written matter as may be necessary or advisable in connection with the foregoing resolutions or any amendment, restatement, renewal, extension or other modification thereof, and to take any and all actions and do, or authorize to be done, all things necessary or advisable to more fully effectuate the

foregoing resolutions, the execution and delivery thereof and the taking of any such action to be conclusive evidence that the same has been authorized and approved by this resolution, and which agreement, document, instrument, certificate or other written matter, and any amendment, restatement, renewal, extension or other modification, upon execution by an Authorized Officer, shall be the legal, valid and binding obligation of the Company, enforceable against it in accordance with its terms.

**Audit Committee Report**

Audit Committee Chair Smith reported, on behalf of the Committee, that the Committee had met the prior day with representatives of Deloitte & Touche, LLP ("Deloitte") and members of management. Mr. Smith reviewed the Committee's discussion with Deloitte concerning the audit plan for 2002 for the Corporation, the work being done by Deloitte for the June 30, 2002 10-Q report, tax liability issues related to the sale of the Corporation's interest in Cornerstone Propane, the impact of SFAS 141 and 142 on the Corporation's accounting practices, and the appraisal work being done by American Appraisal with regard to the Corporation's investments in Blue Dot Services Inc. and Expanets, Inc., and new legislation and new SEC regulations affecting Audit Committee and executive responsibilities. Mr. Smith also noted that the Committee had met with the Deloitte representatives and without management present. He reported that the Committee was planning to hold a special meeting prior to the filing of the 10-Q report the following week, to discuss the report information with management and with Deloitte. A discussion followed.

**Compensation Committee Report**

Compensation Committee Chair Darcy stated that the Committee had met the prior day, along with representatives of Towers Perrin, the Committee's compensation consultants, and Mr. Van Camp and Jan Nolander of the Corporation. The meeting had

MOU-00152
CONFIDENTIAL

NOR009577

begun with all members of the Board present, and the Towers Perrin representatives provided a review of legislative and regulatory issues affecting executive compensation. Mr. Darcy further reported that the non-Committee Board members then left the Committee meeting, and the Committee discussed with the Towers Perrin and management representatives the Towers Perrin study of the Corporation's executive compensation, discussed specific actions to be undertaken, and agreed to hold a further meeting in Minneapolis on September 18, 2002. A discussion followed.

**Further Governance Committee Report**

Corporate Governance Committee Chairman Drook further reported, on behalf of the Committee, that Mr. Lewis had tendered his resignation as a member of the Committee, and the Committee had accepted such rsignation. Mr. Drook recommended that Mr. Nowell be appointed as a additional member of the Audit Committee. Following a discussion, the Directors unanimously adopted the following resolution:

> BE IT RESOLVED by the Board of Directors of NORTHWESTERN CORPORATION (the "Corporation") that Lionel L. Nowell, III is hereby appointed to serve on the Audit Committee of the Board, for the period from this meeting through April 2003.

Mr. Drook reported that representatives of the Paul, Hastings, Janofsky & Walker law firm had provided a briefing to all the members of the Board of Directors and to representatives of management concerning new Federal laws and regulations, anticipated regulations, and New York Stock Exchange initiatives, all relating to governance of corporation boards and executives. A discussion followed. Mr. Drook recommended, on behalf of the Committee, that the legal department of the Corporation lead an effort to review the by-laws, articles of incorporation, Committee

MOU-00153
CONFIDENTIAL

NOR009578

charters, and code of business ethics and conduct to determine if any changes should be made to these documents. He also recommended that management, working with its advisors, provide information to the members of the Board of Directors concerning processes and procedures to be followed on a regular basis by the Board and its Committees related to corporate governance. Finally, Mr. Drook recommended that the Board provide formal meetings of its outside Directors, without management present, appointing a chair for such meetings and determining a method to record the minutes of such meetings. A discussion followed.

Thereupon, on motion duly made and seconded, the Board unanimously adopted the following resolution:

> BE IT RESOLVED by the Board of Directors of NORTHWESTERN CORPORATION (the "Corporation") that the Corporation's general counsel is authorized and directed to conduct a review of the governing documents for the Board of Directors of Corporation and its Committees, consistent with good corporate practices, and to recommend any changes to the Governance Committee at its next regularly scheduled meeting.

**Amendment to By-Laws**

Mr. Dietrich discussed a proposed amendment to the by-laws of the Corporation to provide more flexibility with regard to the quarterly meeting dates for Board meetings in order to allow additional time to gather and present financial information as part of the materials provided to the Board members in advance of these meetings. He stated that currently the by-laws provide for the quarterly meetings to be held on the first Wednesday of the months of February, August and November (with the May meeting being held in conjunction with the annual meeting of shareholders, on a date established by the Board). Management was recommending that the Board adopt the amendment proposed which would establish the quarterly Board meeting dates within

MOU-00154
CONFIDENTIAL

NOR009579

the first two weeks of those months, and the record date for any dividends approved at such meeting would be set to be 8-10 days thereafter, with dividend payment dates on the same dates as currently provided. Following a discussion, the Board unanimously adopted the following resolution:

> BE IT RESOLVED by the Board of Directors of NORTHWESTERN CORPORATION (the "Corporation") that the By-Laws of the Corporation are hereby amended, effectively immediately, as follows:
>
> Article III, Section 3 is amended to read as follows:
>
> Section 3. **Annual, Regular and Special Meetings.** The annual meeting of the Board of Directors shall be held in each year in conjunction with the annual meeting of stockholders, for the transaction of such business as may come before the Board; and regular meetings of the Board shall be held at least quarterly during the first two weeks of the months of February, August and November in each year at the office of the Company in the City of Sioux Falls, South Dakota, or such other place and at such time and date as may from time to time be established by resolution of the Board or as may be specified by the Chairman of the Board or the President with respect to each such meeting. Special meetings of the Board may be called by the Chairman of the Board, the President, or any two Directors, and shall be held at such time and place as may be specified by the officer or Directors calling the meeting, or in the absence of such specification as to place, at the office of the Company in the City of Sioux Falls, South Dakota. Notice stating the place, date, and hour of each meeting of the Board (other than the annual meeting, as to which no notice need be given) shall be given to each Director either by mail to his residence or place of business not less than forty-eight (48) hours before the date of the meeting, or personally by telephone, telegram, telecopy, electronic mail, or similar means of communication on twenty-four (24) hours' notice. All or any of the Directors may waive notice of any meeting, and the presence of a Director at any meeting of the Board shall be deemed a waiver of notice thereof by him.

**Discussion Items**

Mr. Newell provided a strategic and operating plan update for Blue Dot Services Inc. A discussion followed.

MOU-00155
CONFIDENTIAL

NOR009580

Mr. Lewis provided an update on the reorganization plans at Cornerstone Propane, L.P. ("Cornerstone"), including SYN INC. loans made to Cornerstone to assist its liquidity needs. A discussion followed.

Mr. Orme provided a financing update for the Corporation and its affiliates. A discussion followed.

**Strategic Opportunity**

Mr. Hanson described a strategic opportunity that NorthWestern Energy was considering and requested Board authorization to move forward with further due diligence and negotiations. Following a discussion, the Board unanimously adopted the following resolution:

> WHEREAS, officers of NorthWestern Corporation (the "Corporation") have engaged in discussions with Xcel Energy Inc., a Minnesota corporation ("Seller"), regarding the purchase by the Corporation of all the outstanding capital stock of Cheyenne Light, Fuel & Power Company, a Wyoming corporation ("Target");
>
> WHEREAS, the Board of Directors has been presented with a form of a Stock Purchase Agreement, between the Corporation or one of its subsidiaries, as Buyer, and Seller, attached hereto as Exhibit A (the "Purchase Agreement"), which Purchase Agreement is based on the Term Sheet executed by the Corporation and Seller on July 3, 2002 (the "Term Sheet"), and includes the proposed revisions, comments and additions of officers of the Corporation and the Corporation's legal advisers;
>
> WHEREAS, the Board of Directors has had an adequate opportunity to review and discuss the preliminary due diligence analysis of the business and operations of Target prepared by management of the Corporation, the form of the Purchase Agreement and other materials presented at this meeting and management's recommendations with respect thereto, and to raise any questions and discuss any concerns with the foregoing; and
>
> WHEREAS, the Board of Directors has determined that the proposed terms and conditions of the Purchase Agreement, including the purchase price for the capital stock of Target of $81 million, subject to certain working capital and other adjustments and less the amount of any outstanding long-term debt of Target, represent an attractive opportunity for the Corporation to enhance its business, financial growth and market position, and are in the best interests of the Corporation.

MOU-00156
CONFIDENTIAL

NOR009581

Case 1:05-cv-00499-JJF    Document 285-26    Filed 11/30/2007    Page 16 of 17

NOW, THEREFORE, BE IT RESOLVED, that the Board of Directors approves the terms and conditions of the Purchase Agreement and hereby authorizes, empowers and directs the officers of the Corporation, or any of them, to

- continue negotiating the terms of the Purchase Agreement, conduct such additional due diligence as they may deem necessary and, upon satisfactory completion of such due diligence, to execute and deliver the Purchase Agreement, substantially in the form presented in Exhibit A, with such modifications or amendments thereto as such officers shall approve and the execution of such Purchase Agreement shall be deemed conclusive evidence of such approval;

- prepare, execute and file any and all documents, notices, reports, statements, filings, requests and information supplements as may be necessary or desirable, to take all other action and act in the name of, or represent, the Corporation, where necessary or desirable, to comply with any and all applicable federal, state and local laws, rules and regulations for the purpose of completing the transactions contemplated by the Purchase Agreement or in connection with the proposed acquisition of the capital stock of Target, including, without limitation, the Hart-Scott-Rodino Antitrust Improvements Act and all rules and regulations promulgated by the Securities and Exchange Commission, the Federal Energy Regulatory Commission and the applicable regulatory agencies in Wyoming, South Dakota and Delaware;

- release, with Seller and/or Target, one or more press releases and/or press conferences upon the execution of the Purchase Agreement and from time to time thereafter, as shall be determined to be necessary or desirable by the officers of the Corporation; and

- retain such consultants, advisors, attorneys, independent contractors, investor and public relations firms as they deem necessary or desirable and on such terms and conditions and they deem appropriate to effect the potential acquisition of the capital stock of Target and further the purposes and intent of these resolutions;

FURTHER RESOLVED, that the officers of the Corporation be, and each of them hereby is, authorized, empowered and instructed on behalf of the Corporation, to take all such further actions and to negotiate, execute and deliver any and all documents, filings, reports, statements, instruments, certificates and shareholder proxies of subsidiaries, and to do or cause to be done any and all acts as such officers may deem necessary or appropriate in order to carry out the purposes and intentions of these resolutions, including, but not limited to, the transactions in anticipation of, contemplated by, or in connection with the proposed acquisition of the capital stock of Target; and

MOU-00157
CONFIDENTIAL

NOR009582

FURTHER RESOLVED, that any and all actions taken by any director, officer, employee or agent of the Corporation in furtherance of the foregoing resolutions and within the authority conferred by the foregoing resolutions are hereby ratified and approved in all respects.

The Board then met in executive session. Following that session, Chairman Lewis and the non-employee members of the Board met to conduct the quarterly CEO evaluation.

There being no further business to come before the meeting, the meeting was adjourned.

_____
M. D. Lewis, Chairman of the Board

_____
Alan D. Dietrich, Corporate Secretary

MOU-00158
CONFIDENTIAL

NOR009583