# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORP. and LAW DEBENTURE TRUST COMPANY OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN CORPORATION, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 04-1494-JJF |
| MAGTEN ASSET MANAGEMENT CORPORATION, <br><br> Plaintiff, <br> v. <br><br> MICHAEL J. HANSON and ERNIE J. KINDT, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) C.A. No. 05-499-JJF |

## DEFENDANTS MICHAEL J. HANSON AND ERNIE J. KINDT'S
## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Denise Seastone Kraft (#2778)
EDWARDS ANGELL PALMER & DODGE LLP
919 North Market Street, 15th Fl.
Wilmington, DE 19801
(302) 777-7770
*Counsel to Michael J. Hanson*
*and Ernie J. Kindt*

OF COUNSEL:
Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY
 & HOVEN, P.C.
139 North Last Chance Gulch
Helena, MT 59624
(406) 443-6820

January 14, 2008

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

I.    MAGTEN HAS FAILED TO RAISE A SINGLE GENUINE ISSUE OF FACT IN DISPUTE, AND THEREFORE SUMMARY JUDGEMENT MUST BE GRANTED IN DEFENDANTS' FAVOR. ....................................................... 1

II.    THE LATE JOINDER OF LAW DEBENTURE DOES NOT CURE MAGTEN'S LACK OF STANDING. ..................................... 3

III.    THE "LAW OF THE CASE" DOCTRINE DOES NOT CURE MAGTEN'S OR LAW DEBENTURE'S LACK OF STANDING. ............................................................................................. 4

IV.    MAGTEN HAS FAILED TO PROVE INSOLVENCY OR "ZONE OF INSOLVENCY" AND THEREFORE FAILS IN ITS BURDEN OF PROOF. ................................................................. 8

V.    MAGTEN ERRONEOUSLY SEEKS TO IMPOSE FIDUCIARY DUTIES UPON HANSON AND KINDT WELL IN EXCESS OF THE ESTABLIHSED LAW, AND FURTHER CLOUDS THIS ISSUE WITH UNSUPPORTED ALLEGATIONS CONCERNING DEFENDANTS' STATE OF MIND. ................................................................................. 11

VI.    MAGTEN HAS PROVIDED NO EVIDENCE SUPPORTING ANY OF THE ALLEGATIONS SET FORTH IN ITS COMPLAINT. .................................................................................. 16

    A.    Reasonably Equivalent Value. ............................................ 17
    B.    Insolvency. .......................................................................... 19
    C.    Deprived the benefits of the QUIPS. .................................. 20
    D.    Conclusion. .......................................................................... 20

VII.    AS A MATTER OF LAW, MAGTEN'S RECOVERY OF COMPENSATORY DAMAGES IS LIMITED. ............................. 21

VIII.    MAGTEN MISSTATES AND MISAPPLIES THE LAW OF MITIGATION OF DAMAGES. ............................................... 22

IX.    AS A MATTER OF LAW, MAGTEN IS NOT ENTITLED TO ANY PUNITIVE DAMAGES AWARD. ................................. 23

X.    MAGTEN CITES NO AUTHORITY FOR AN AWARD OF ATTORNEY FEES AND ACTUALLY MISLEADS THIS COURT WITH RESPECT TO THE STATUS OF THE LAW. .......... 24

XI.    MAGTEN'S CONTINUED PRACTICE OF MAKING BLATANT MISREPRESENTATIONS DO NOT PROVIDE A SUFFICIENT BASIS FOR DENYING DEFENDANTS' MOTION. .................................................................................. 25

CONCLUSION ............................................................................................. 26

## TABLE OF AUTHORITIES

PAGE

**Cases**

*Allen v. Wright*,
    468 U.S. 737, 750 (1984).......................................................................7
*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..............................................................................2
*Arbaugh v. Y&H Corp.*,
    546 U.S. 500 (2006).............................................................................7
*Arizona v. California*,
    460 U.S. 605, 619 (1983)......................................................................5
*Aronson v. Lewis*,
    472 A.2d 805 (Del. 1984) .....................................................................15
*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)..............................................................................2
*Clark v. Neal*,
    890 F. Supp. 345 (D. Del. 1995)............................................................2
*Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*,
    988 F.2d 414, (3d Cir. 1993)..................................................................6
*D'Addario v. Geller*,
    2005 WL 428779 ...................................................................................15
*Elk Grove Unified Sch. Dist. v. Newdow*,
    542 U.S. 1 (2004)..................................................................................7
*Erker v. Kestner*,
    988 P.2d 1221 (Mont. 1999).................................................................24
*Fireman's Ins. Co. of Newark v. Dufresne*,
    676 F.2d 965 (3d Cir. 1982)...................................................................2
*Fogel v. Chestnutt*,
    668 F.2d 100 (2d Cir. 1981)...................................................................5
*FW/PBS Inc. v. City of Dallas*,
    493 U.S. 215 (1990)..............................................................................4
*Gheewalla*,
    930 A.2d at 102.....................................................................................15
*Hayman Cash Register Co. v. Sarokin*,
    669 F.2d 162 (3d Cir. 1982)...............................................................5, 8
*Hoagland v. Sandberg, Phoenix & Van Gontard, P.C.*,
    385 F.3d 737 (7th Cir. 2004) ................................................................15
*In re City of Philadelphia Litigation*,
    158 F.3d at 718 ..................................................................................6, 7
*In re Mercedes-Benz Anti-Trust Litigation*,
    364 F.Supp.2d 468 (D. NJ 2005) .......................................................5, 6
*In re Reliance Securities Litig.*,
    135 F.Supp.2d 480 (D. Del. 2001).......................................................14
*In re Teleglobe Commcns Corp.*,
    493 F.3d 345 (3d. Cir. 2007)........................................................8, 9, 10

*Intl. Assn. of Heat and Frost Insulators and Asbestos Workers*
    *Local Union 42 v. Absolute Environmental Services, Inc.*,
    814 F. Supp. 392 (D. Del. 1993).............................................................................1

*Le Fevre v. Space Communications Co. (Spacecom)*,
    771 F.2d 421 (10th Cir.1985) ..............................................................................14

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).........................................................................................3, 7

*McCabe v. Ernst & Young LLP*,
    494 F.3d 418 (3d Cir. 2007 ...................................................................................2

*Medina-Munoz v. R.J. Reynolds Tobacco Co.*,
    896 F.2d 5 (1st Cir. 1990).....................................................................................14

*Messinger v. Anderson*,
    225 U.S. 436, 444 (1912).......................................................................................5

*Miller v. Delaware Dept. of Probation and Parole*,
    158 F.Supp.2d 406 (D. Del. 2001)......................................................................1, 2

*New Jersey Office Supply, Inc. v. Feldman*, No. 89-3990,
    1992 WL 219790 (D.N.J. Sept. 1, 1992) .............................................................14

*North American Catholic Educational Programming Foundation, Inc. v.*
    *Gheewalla*, 930 A.2d 92 (Del. 2007)................................................................9, 10

*Production Resources Group, L.L.C. v. NCT Group, Inc.*,
    863 A.2d 772, (Del. Ch. Ct. 2004)........................................................................14

*Public Interest Research Group ("PIRG") of New Jersey, Inc. v.*
    *Magnesium Elektron, Inc.*,
    123 F.3d 111, 117 (3d Cir. 1997)...........................................................4, 5, 6, 7, 8

*Resource Developers, Inc. v. Statute of Liberty-Ellis Island*,
    926 F.2d 134, 141 (2d Cir. 1991)..........................................................................14

*Roselink Investors, L.L.C. v. Shenkman*,
    386 F.Supp.2d 209 (S.D. N.Y. 2004)..................................................................8, 9

*Ryckman v. Wildwood, Inc.*,
    641 P.2d 467 (Mont. 1982) ...................................................................................11

*Satori v. S & S Trucking, Inc.*,
    139 P.3d 806, 809 (Mont. 2006) ...........................................................................24

*Scott Acquisition Corp., v. Morris*,
    344 B.R. 283 (Bankr. D. Del. 2006) ...................................................................8, 9

*Smith v. Van Gorkom*,
    488 A.2d 858 (Del. 1985) .....................................................................................15

*Spackman v. Ralph M. Parsons Co.*,
    414 P.2d 918 (Mont. 1966) ...................................................................................21

*Tiggerman v. City of Butte*,
    119 P. 477 (Mont. 1911) .......................................................................................22

*Tilden Fin. Corp. v. Palo Tire Serv., Inc.*,
    596 F.2d 604 (3d Cir. 1979)....................................................................................2

*Town Pump, Inc. v. Diteman*,
    622 P.2d 212 (Mont. 1981) ...................................................................................22

*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*,
    906 A.2d 168, 192 (Del.Ch.2006)...........................................................................9

*USH Ventures v. Global Telesystems Group, Inc.*,
    2000 WL 1211205 (Del. Sup. Ct. 2000)................................................19
*Williams v. Union Fidelity Life Ins. Co.*,
    123 P.3d 213 (Mont. 2005) ........................................................................23
*Wisconsin Inv. Bd. v. Peerless Systems Corp*., No. Civ.A. 17637,
    2000 WL 1805376 (Del. Ch. Dec. 4, 2000).............................................1
*Zapata Corp., v. Maldonado*,
    430 A.2d 779 (Del. 1981) ..........................................................................15

**Statutes**

28 U.S.C. § 1331 ..............................................................................................7
Mont. Code Ann. § 27-1-221 ........................................................................23
Mont. Code Ann. § 27-1-221(2) ..............................................................23, 24
Mont. Code Ann. § 27-2-204 ..........................................................................4
Mont. Code Ann. §35-8-310 .........................................................................11
Mont. Code Ann. § 35-8-1104 ................................................................3, 6, 7, 8
Mont. Code Ann. § 35-8-1104(2)(a)...............................................................3
Mont. Code Ann. § 35-8-1104(4) .............................................................24, 25

**Other Authorities**

11 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE, ¶56.11 (3d ed. 2000) ............1

**Rules**

Fed.R.Civ.P. 56(c) ...........................................................................................1
Fed.R.Civ.P. 56(e) ........................................................................................1, 2
Fed.R.Civ.P. 56(e)(2)......................................................................................1

I.    **MAGTEN HAS FAILED TO RAISE A SINGLE GENUINE ISSUE OF FACT IN DISPUTE, AND THEREFORE SUMMARY JUDGEMENT MUST BE GRANTED IN DEFENDANTS' FAVOR.**

Magten ignores the fundamental requirement that to defeat summary judgment it must present probative evidence in support of its claims.  Fed.R.Civ.P. 56(e).[1]  Once the moving parties, Hanson and Kindt, have met their burden, the burden shifts to the nonmoving party, Magten, to "set forth specific facts showing that there is a genuine issue for trial."  *Miller v. Delaware Dept. of Probation and Parole*, 158 F.Supp.2d 406, 408-409 (D. Del. 2001) (citations omitted).  *See also, Wisconsin Inv. Bd. v. Peerless Systems Corp*., No. Civ.A. 17637, 2000 WL 1805376, at *6 (Del. Ch. Dec. 4, 2000) ("If the movant puts in the record facts that, if undenied, entitle her to summary judgment, the burden then shifts to the defending party to dispute the facts by affidavit or proof of similar weight"); *Intl. Assn. of Heat and Frost Insulators and Asbestos Workers Local Union 42 v. Absolute Environmental Services, Inc.*, 814 F. Supp. 392, 401-402 (D. Del. 1993) ("when the nonmovant does bear the ultimate burden of proof at trial, the nonmovant may withstand summary judgment only by coming forward with evidence sufficient to create a genuine issue of material fact as to every essential element of the nonmovant's claim or defense. … An issue of material fact is established by the nonmovant only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or it is not significantly probative, summary judgment may be granted.").

It is well established that the nonmoving party may not rest upon the mere allegations or denials of its claim; it must show there was "testimonial, documentary, or other evidence that demonstrates a genuine issue of material fact." *Id. citing* 11 James W. Moore et al., Moore's Federal Practice, ¶56.11 (3d ed. 2000); Fed.R.Civ. P. 56(e)(2).  *See also,* Fed.R.Civ.P. 56(c).  If the nonmoving party does not meet this burden, summary judgment, if

---

[1]  Fed R. Civ. P. 56(e) provides that, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

appropriate, must be entered. *Miller*, 158 F.Supp.2d at 408-09, *citing* to Fed.R.Civ.P. 56(e).[2]

Magten cannot resist summary judgment by the proffer of a mere scintilla of evidence, nor by reliance upon argument of counsel which are not supported by evidence. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.[3]

Magten utterly fails to meet its burden. Its Brief in Opposition to Michael J. Hanson and Ernie J. Kindt's Motion for Summary Judgment ("Opposition Brief") is a mere recitation of argument by counsel. It cites no documentary or testimonial evidence to support any of its allegations. It has failed to present any statement of genuine issues. Its footnote 4, in which it claims "the evidence set forth herein is sufficient to create a genuine issue of dispute facts as to numerous items" is an impermissible conclusory, bare allegation that is insufficient to overcome Defendants' specific uncontested facts.[4]

---

[2]  S*ee also*, *McCabe v. Ernst & Young LLP*, 494 F.3d 418, 438 (3d Cir. 2007) (affirming grant of summary judgment to defendant because plaintiffs failed to point to sufficient record evidence in order to establish an element of its claim and therefore failed to create a genuine issue for trial); *Clark v. Neal*, 890 F. Supp. 345, 349 (D. Del. 1995) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) ("[T]he entry of summary judgment is mandated 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' In such a case, 'there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

[3]  S*ee also Fireman's Ins. Co. of Newark v. Dufresne*, 676 F.2d 965, 969 (3d Cir. 1982) ("Rule 56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions."); *Tilden Fin. Corp. v. Palo Tire Serv., Inc.*, 596 F.2d 604, 608 (3d Cir. 1979) ("[A]n adverse party may not rest upon a mere cryptic and conclusory allegation in his pleading, but must set forth specific facts showing that there is a genuinely disputed factual issue for trial.")

[4]  The statements in footnote 4 that Magten's failure to provide a statement of genuine issues of material fact is "consistent with the Court's individual practice and prior discussion with Chambers" is likewise insufficient to overcome summary judgment. First, any "discussions with Chambers" on this matter with respect to this specific case were impermissible *ex parte* communications held without the knowledge or consent of Defendants. Second, to the extent this footnote refers to one of this Court's form orders sometimes entered by this Court in intellectual property cases, that form order has not been issued in this case and has no force and effect in this case. Therefore, Magten's failure to comply with yet another one of the Rules of Civil Procedure must be condemned, not condoned, by this Court. There are no genuine issues of material fact in this case that preclude summary judgment in Defendants' favor.

## II.     THE LATE JOINDER OF LAW DEBENTURE DOES NOT CURE MAGTEN'S LACK OF STANDING.

Amendment of the Complaint at this late date to join a new party does not cure the fatal defects in standing.  The simple fact is that Law Debenture has no more standing to assert these claims than does Magten.  *See* D.I. 293, at 10-11.  Neither entity has standing to bring either a derivative or a direct claim here.

The fundamental requirements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case," and therefore Magten's standing does not rest on "mere allegations" that can be amended.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  Magten has filed a renewed motion for leave to amend the Complaint in which it seeks to add Law Debenture as a co-plaintiff and add a count to plead its breach of fiduciary duty claim as a derivative claim in an attempt to cure the fatal defects asserted by Defendants in their Motion for Summary Judgment.  *See* D.I. 278, at 5.  Defendants oppose the amendment to the Complaint because it is untimely, made in bad faith, and futile.  *See* D.I. 293, at 5-20.  Nothing in the proposed amended complaint can change the indisputable fact that Magten was not a creditor of Clark Fork at the time of the Transaction, and therefore is not within the zone of interests protected under Mont Code Ann. § 35-8-1104.  Whether or not Law Debenture is added as a co-plaintiff in this action, Magten must establish its own standing to maintain its claims against Defendants and cannot bootstrap its standing to Law Debenture.

Indeed, if Law Debenture were added as a plaintiff in this action, Magten still lacks standing.  Section 610 of the Indenture only permits Magten to enforce the Property Trustee's rights if it fails to enforce these rights itself.  If Law Debenture enters this case to enforce its rights as Property Trustee, Magten and other QUIPS holders lose their right to maintain an action as third party beneficiaries, and therefore, Magten must be dismissed from this action.

Regardless, the amendment to add Law Debenture is also futile and bears no consideration in this motion for summary judgment.  As previously discussed, the breach of fiduciary duty claim, whether alleged by Magten or Law Debenture, is derivative and may only be brought by a member of the company at the time of the Transaction.  Mont Code Ann. § 35-

8-1104(2)(a); D.I. 293, at 9-16.  Neither Magten nor Law Debenture were members of Clark Fork at the time of the Transaction.  It is also irrelevant that Law Debenture was the indenture trustee for creditors of Clark Fork at the time of the Transaction because a creditor cannot bring a direct action against officers or directors of a company for breach of fiduciary duty regardless of whether the company was solvent, insolvent, or in the zone of insolvency.  D.I. 274, at 2-26.  Finally, any claim by Law Debenture is barred by the three-year statute of limitations provided in Mont. Code Ann. § 27-2-204.  *See* D.I. 293, at 11-12.  For all of these reasons, not only is amendment of the Complaint at this late date highly prejudicial, amendment does not cure any of the fatal defects to standing.  Therefore, summary judgment for Defendants is appropriate.

## III.     THE "LAW OF THE CASE" DOCTRINE DOES NOT CURE MAGTEN'S OR LAW DEBENTURE'S LACK OF STANDING.

Absent any legitimate basis for asserting standing here, Magten wants to avoid the issue by claiming the "law of the case" doctrine bars consideration of Magten's standing.  However, Magten merely recites the same faulty arguments that were refuted during briefing on Defendants' motion for leave to file a dispositive motion in February 2007.  *See* D.I. 145 at 3-6; D.I. 148 at 5-9.  The Third Circuit has clearly explained that a party's standing to bring a claim is a threshold issue that goes to the court's subject matter jurisdiction under Article III of the Constitution, and that a party whose standing has been challenged "cannot hide behind the law of the case."  *Public Interest Research Group ("PIRG") of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997).  As discussed in more detail below, Judge Cebull never addressed the issue of Magten's standing, and therefore the law of the case doctrine has no applicability here.  But regardless of any previous decisions, the issue of standing cannot be waived or conceded and this Court has a continuing obligation to examine its subject matter jurisdiction.  *FW/PBS Inc. v. City of Dallas*, 493 U.S. 215, 230-231 (1990).  Magten's reliance on the law of the case doctrine is misplaced, and Magten must affirmatively prove it has standing to maintain this action.

The Third Circuit decision in *PIRG* is wholly dispositive of Magten's argument. In that case, the plaintiff argued the law of the case doctrine precluded the court from reconsidering the issue of standing, which was resolved earlier in the litigation. 123 F.3d at 116. The court held that "[t]he law of the case doctrine does not limit a federal court's power; rather, it directs its exercise of discretion." *Id*. (citing *Arizona v. California*, 460 U.S. 605, 619 (1983); *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). Therefore, the court made it clear that while courts should be "loathe" to revisit prior decisions of their own or of a coordinate court, they certainly have the power to do so, and they may exercise this power when "extraordinary circumstances" compel it. *Id*. at 116-17. The court further held that "[w]hen a district court issues findings that undermine an earlier conclusion that the plaintiffs before it have standing to sue, the court creates exactly that type of 'extraordinary circumstance' that warrants reconsideration of the standing issue." *Id.* at 117.

Simply put, "the concerns implicated by the issue of standing — the separation of powers and the limitation of this Court's power to hearing cases or controversies under Article III of the Constitution — trump the prudential goals of preserving judicial economy and finality." *Id.* at 118. This binding precedent belies Magten's contention that the law of the case is an iron-tight doctrine requiring a subsequent judge always to forebear hearing issues that were previously decided. Indeed, *Hayman Cash Register*,[5] *Fogel*,[6] and *Mercedes-Benz*[7],

---

[5]  In *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162 (3d Cir. 1982), the issue was whether a transferee court was permitted to revisit a finding of a transferor court that the transferee court had personal jurisdiction to accept the transfer of venue of the case. The Third Circuit found  the transferee court was bound by the law of the case doctrine when the transferor court *expressly* made the requisite personal jurisdiction determination. The personal jurisdiction question at issue in *Hayman* was clearly decided by the transferor court. That is not the case here. Thus, Magten's reliance upon *Hayman* is misplaced.

[6]  In *Fogel v. Chestnutt*, 668 F.2d 100, 108-10 (2d Cir. 1981), the defendant sought to relitigate the issue of whether implied private causes of action for damages exist under the Investment Company Act. The *Fogel* court held  the law of the case supported the existence of such a cause of action, and that the defendants did not present any legal authority that would cause the court to reconsider its previous decision on the issue. *Id*. at 108-12. Therefore, the *Fogel* decision bears no relevance here.

[7]  In the case of *In re Mercedes-Benz Anti-Trust Litigation*, 364 F.Supp.2d 468, 475-76 (D. NJ 2005), the New Jersey district court held the denial of a motion to dismiss the complaint was an implicit determination by the court of the sufficiency of the plaintiff's allegations, which precluded the defendant from filing a subsequent dispositive motion challenging the sufficiency of the complaint allegations. The court

upon which Magten relies, are clearly distinguishable from *PIRG* and this case because they did not concern the court's subject matter jurisdiction, nor did they implicate the kind of "extraordinary circumstances" that justify reconsideration of a previously decided issue.

The *PIRG* decision also directly refutes Magten's assertion that Defendants waived the issue of standing by failing to raise certain arguments before Judge Cebull. 123 F.3d at 117, fn.5 ("Like any jurisdictional requirement, standing cannot be waived."). Therefore, Magten's argument that Judge Cebull "implicitly" ruled on the issue of standing is of no consequence. Moreover, it is clear the law of the case doctrine precludes review of <u>only</u> those legal issues that the court *actually decided*, either expressly or by necessary implication, requiring the issue to be precluded must have been "integral to the court's . . . analysis." *In re City of Philadelphia Litigation*, 158 F.3d 711, 718-19 (3d Cir.1998); *see also Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co*., 988 F.2d 414, 429 (3d Cir. 1993). Magten admits, as it must, that Defendants' statutory standing arguments "were not explicitly considered by Judge Cebull in his decision," and therefore it is clear that these arguments could not have formed an integral part of his decision. *See* D.I. 289 at 6.

Indeed, Judge Cebull's decision did not address the derivative nature of Magten's claims or the impact of Mont Code Ann. § 35-8-1104. Judge Cebull acknowledged Magten is acting as a third party beneficiary under Section 610 of the Indenture and has the right to enforce whatever rights the Trustee possesses. *See* D.I. 22, at 7. However, Judge Cebull did not spell out the nature and extent of these rights, nor did he make any express or implied determination of whether the Trustee or Magten had standing to bring a derivative action under Montana or Delaware law. As discussed above, neither Magten nor the Trustee has standing to bring a derivative (or, for that matter, a direct) action under these circumstances.

Faced with clear and binding precedent that determination of subject matter jurisdiction is an exception to the law of the case doctrine, Magten's only recourse is to attempt to confuse

---

determined that it was the law of the case that the plaintiff's complaint stated a claim. *Id*. The *Mercedes-Benz* court was not faced with a challenge to standing and reliance on that case is misplaced.

6

whether its standing to bring this action goes to the court's subject matter jurisdiction or to the merits of its ability to state a claim. Magten claims that its "'standing' (in the sense of being a proper plaintiff under the appropriate governing law) has nothing to do with Article III or this Court's subject matter jurisdiction." *See* D.I. 289, at 7 & n.7. However, this statement is a contradiction in terms. "The Supreme Court has remarked that standing is "perhaps the most important" of jurisdictional doctrines." *PIRG*, 123 F.3d at 117 (quoting *FW/PBS Inc.*, 493 U.S. at 230; *Allen v. Wright*, 468 U.S. 737, 750 (1984)). Standing is an "irreducible constitutional minimum" that requires the plaintiff to have suffered an "injury in fact" — i.e. an imminent, concrete, and particularized invasion of a legally-protected interest. *Lujan,* 504 U.S. at 560-61. In addition, the prudential limitations on standing encompass "the general prohibition on a litigant's raising another person's legal rights . . . and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004). If Magten was not a creditor of Clark Fork at the time of the Transaction and cannot satisfy the "contemporaneous ownership" requirements of Mont Code Ann. § 35-8-1104, then it has not suffered any legally cognizable injury for which it can seek redress in this Court.[8]

Finally, if the court does not find the issue of its subject matter jurisdiction to be reason enough to directly consider Magten's standing, Defendants note that there are several other "extraordinary circumstances" that require the court to revisit the law of the case, including where: "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." *In re City of*

---

[8] Magten's reliance on *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) in support of this argument is utterly misplaced. That case held that "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." *Id*. at 515. However, this case is distinguishable in several respects, not the least of which is the fact that the plaintiff's standing was not at issue. The plaintiff had clearly suffered an "injury in fact" — the jury had already found that she was sexually harassed and awarded her $40,000 in damages. *Id*. At 504. The issue in *Arbaugh* was whether the defendant could throw out the jury verdict on the basis that it was not an employer, as defined under Title VII, and therefore the court never had subject matter jurisdiction over the case. *Id*. at 515-16. In that case, the court's subject matter jurisdiction arose under "federal question" jurisdiction, 28 U.S.C. § 1331, and the court determined that Congress intended for the employee-numerosity requirement of Title VII to go to the plaintiff's ability to state a claim, not to limit federal court subject matter jurisdiction. *Id*.

*Philadelphia Litigation*, 158 F.3d at 718; *PIRG v. MEI.,* 123 F.3d at 116-117; *Hayman Cash Register,* 669 F.2d at 169-70. Each of these circumstances also requires the Court to consider Magten's standing to bring this action. In light of the written discovery and depositions that occurred since Judge Cebull's decision, it has become clear that Magten cannot satisfy the requirements for standing under Mont. Code Ann. § 35-8-1104. In addition, the Court's January 12th decision in Case No. 04-1256 constitutes supervening law on the issue of Magten's standing to bring a derivative claim under these circumstances. Finally, to the extent an argument can be made that Judge Cebull's decision did address Magten's standing to bring a derivative action, this decision was clearly erroneous and would be manifestly unjust in light of the Court's contrary decision in Case No. 04-1256.

## IV.    MAGTEN HAS FAILED TO PROVE INSOLVENCY OR "ZONE OF INSOLVENCY" AND THEREFORE FAILS IN ITS BURDEN OF PROOF.

Magten asserts: "It is well-established that officers and directors of a wholly-owned subsidiary cannot, *when the subsidiary is in the zone of insolvency*, permit the controlling parent to loot the subsidiary to the prejudice of the subsidiary and its creditors." D.I. 289, at 12 (emphasis added). In support of this assertion, Magten cites a Delaware case, *Scott Acquisition Corp., v. Morris*, 344 B.R. 283 (Bankr. D. Del. 2006), a New York case, *Roselink Investors, L.L.C. v. Shenkman*, 386 F.Supp.2d 209 (S.D. N.Y. 2004), and a Third Circuit case, *In re Teleglobe Commcns Corp.*, 493 F.3d 345, 367 (3d. Cir. 2007). However, none of these cases preclude summary judgment here, as more importantly, Magten failed to cite to the Court the controlling case law in Delaware. As discussed below, officers and directors are ***not*** liable to creditors when their companies are insolvent or in the "zone of insolvency."

First, Magten fails to set forth the established rule of law concerning the fiduciary duties of officers and directors of wholly-owned subsidiaries. In the *Teleglobe* case, the court clearly stated the general rule concerning fiduciary duties of officers of wholly owned subsidiaries:

As Vice Chancellor Strine noted in [*Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 192 (Del.Ch.2006)], *there is nothing wrong (or even unusual) about a parent causing its solvent wholly owned subsidiary to act in a way that benefits the corporate family but harms the individual subsidiary.* He explained:

Assume for a moment that Trenwick [parent] itself never went bankrupt. Imagine further that it had bought another insurer and pledged a key asset of Trenwick America [subsidiary] as security for the purchase price. The purchase goes wrong and causes Trenwick to become less profitable, but not insolvent. To satisfy its creditors, Trenwick causes Trenwick America to sell the key pledged asset and uses the proceeds to pay off the acquisition debt. As a result, Trenwick America is less profitable and less valuable. In this scenario, even though the course of events posed no prospect of benefit for Trenwick America when it is conceived solely as an entity, there would be nothing troubling about it from a fiduciary perspective. Rather, *the scenario would involve a garden-variety situation when a parent corporation used the asset value of one of its wholly-owned subsidiaries to help it finance and absorb the down-side of the parent's larger business strategy*.

*Teleglobe*, 493 F.3d at 367, n. 24 (emphasis added).  Thus, the general rule which Magten conveniently omits from its recitation of *Teleglobe*, is that officers of a wholly-owned, solvent subsidiary are entrusted to carry out the directives of the corporate parent and owe fiduciary duties solely to the controlling parent as the sole shareholder of the subsidiary.  Therefore, absent proof that Clark Fork was insolvent at the time of the Transaction, Magten would have no claim, derivative or direct, against Defendants for a breach of fiduciary duty.

Second, each of the cases relied upon by Magten expressly require proof of either insolvency or the zone of insolvency.  *See Scott*, 344 B.R. at 290 ("upon insolvency[,] directors of a wholly owned subsidiary owe fiduciary duties to the subsidiary and its creditors."); *see also Teleglobe*, 493 F.3d at 366-67; *Roselink*, 386 F.Supp.2d at 215.  However, in the present case Magten has been unable to adduce any proof of insolvency or even the "zone of insolvency" either immediately before or after the Transaction.

Third, even assuming *arguendo* that Clark Fork was insolvent (which it was not), based on a recent Delaware Supreme Court decision, Magten's allegations of breach of fiduciary duty claims against the Defendants fail as a matter of law.  Magten fails to address the Delaware Supreme Court's 2007 decision in *North American Catholic Educational Programming Foundation, Inc. v. Gheewalla*, 930 A.2d 92, 94, 103 (Del. 2007), which held that officers and directors are not directly liable to creditors when their companies are insolvent or in the "zone

of insolvency," and that "creditors of a Delaware corporation that is either insolvent or in the zone of insolvency *have no right, as a matter of law*, to assert direct claims for breach of fiduciary duty against [a] corporation's directors." (emphasis added). Although directors owe fiduciary obligations to the corporation, they generally do not owe such duties to creditors. The court reasoned that while stockholders rely on directors acting as fiduciaries to protect their interests, creditors are afforded protection by contract and other law, such as bankruptcy and fraudulent conveyance law. The Court stated:

> [T]he need for providing directors with definitive guidance compels us to hold that no direct claim for breach of fiduciary duties may be asserted by the creditors of a solvent Corporation that is operating in the zone of insolvency. When a solvent corporation is navigating in the zone of insolvency, the focus for Delaware directors does not change: directors must continue to discharge their fiduciary duties to the corporation and its shareholders by exercising their business judgment in the best interest of the corporation for the benefit of its shareholder owners.

*Id.* at 101. The court further concluded that although creditors of a Delaware corporation that is *actually insolvent* at the time of an alleged breach of fiduciary duty have standing to maintain *derivative claims* against the directors, *they may not assert direct claims* for breach of fiduciary duty. *Id.* (emphasis added).

Here, Magten has presented no evidence that Clark Fork was "*actually insolvent*" at the time of the Transaction. Further, the action pled by Magten is not a derivative claim, but rather is a direct claim. Thus, even, *assuming arguendo*, that Clark Fork had been insolvent (which it was not and is not), Magten's direct action is barred.[9]

Finally, Magten has failed to cite a single case to this Court that supports the legal basis of its underlying claim that officers and directors are directly liable to creditors when their companies are insolvent or in the "zone of insolvency." Further, even if the claim against the Defendants had been brought derivatively and not directly, Magten has failed to come forward

---

[9] The Third Circuit case cited by Magten, *Teleglobe* does not even touch upon the propositions cited by Magten; rather, it involves the assertion of the attorney-client privilege over documents in the context of a parent/subsidiary corporate family relationship. Therefore, its holding is inapposite.

with *any* evidentiary analysis of insolvency, despite the fact it hired two experts to conduct an analysis of the financial affairs of the company.  If it had any evidence of insolvency, it was required to bring it to the Court's attention in opposing the Defendant's Motion for Summary Judgment.  Because it has failed to support an essential element underlying its legal claim and has not produced any material evidence of insolvency asserted in its Complaint, the action against Defendants must be dismissed with prejudice.

**V.    MAGTEN ERRONEOUSLY SEEKS TO IMPOSE FIDUCIARY DUTIES UPON HANSON AND KINDT WELL IN EXCESS OF THE ESTABLIHSED LAW, AND FURTHER CLOUDS THIS ISSUE WITH UNSUPPORTED ALLEGATIONS CONCERNING DEFENDANTS' STATE OF MIND.**

Throughout its Opposition Brief, Magten seeks to impose unlimited fiduciary duties upon Hanson and Kindt.  Contrary to the arguments found of pages 11-12 of Magten's Opposition Brief, under Montana law, officers of a limited liability company have no greater or higher duty than the Members or Managers of the limited liability company.[10]  In fact, the only fiduciary duties owed by officers are the duties of loyalty and care; and then, those duties are owed only to the limited liability company, not to any alleged creditors of the company.  Mont. Code Ann. 35-8-310.[11]

Furthermore, while Magten argues Defendants had a duty to inform themselves of all material information reasonably available to them, Magten fails to consider both the circumstances of each Defendant's respective position and the information which each did in fact review.  Repeating its oft-made fatal flaw, Magten refuses to acknowledge the positions

---

[10] Magten cites to *Ryckman v. Wildwood, Inc.*, 641 P.2d 467 (Mont. 1982) as support for its proposition that "employment as an agent presumptively gives rise to a fiduciary relationship."  This recitation of the holding is inaccurate.  Rather, in addressing a dispute between a real estate broker and a condominium developer the Court noted that the relationship established - - - the broker agreed to find buyers for developer's condominiums in exchange for the payment of commissions and the developer asserted he, not the broker, sold some of the units.   The court held the broker was employed by the developer and that given the facts of that case, "the arrangement resulted in a fiduciary relationship."   641 P.2d at 472.  Magten's attempt to twist this holding into support for the bizarre proposition that an officer of a limited liability company has a higher or greater duty than does the Member or Manager of the company is not supported by the holding of the case cited.

[11] While this statute sets forth duties of members and managers of limited liability companies, officers of such companies cannot be said to owe greater fiduciary obligations than the members or managers who appoint such officers.

Hanson and Kindt occupied within Clark Fork in determining whether they fulfilled their fiduciary duties.  Hanson and Kindt were officers of a member-managed limited liability company.  As such, Clark Fork was managed by its sole member, NorthWestern.  Hanson and Kindt were given specific orders and directions from their employer to take the necessary actions to accomplish the transfer.

No approval by Hanson or Kindt was required to accomplish the intended result.  The only approval necessary for Clark Fork to carry out the Transaction was authorization by the company's sole member and manager.  As the sole Member and Manager of Clark Fork, it was within NorthWestern's sole discretion and control to mandate the Transaction occur.

Magten points to no authority requiring Defendants conduct or have conducted any independent legal or financial review of the Transaction.  Further, Defendants' fiduciary duty did not include conducting independent reviews to question the exercise of business judgment made by the company's sole member and manager.  Additionally, even if the Defendants opposed the transaction, they could not have done anything to stop NorthWestern as Clark Fork's Operating Agreement vested sole discretion and authority over such transactions to the company's sole member and manager.  Uncontested Fact 49.[12]  Therefore, contrary to Magten's unsupported allegation, Defendants could not have "caused Clark Fork to consummate the Transfer."  *See* D.I. 289, at 14.

Defendants met the fiduciary obligations they owed to Clark Fork by carrying out the directives of the company's sole Member, Manager and equity holder, NorthWestern.  Neither Hanson nor Kindt made any attempt to "hide their head in the sand."  Rather, they met their fiduciary obligations by "inform[ing] themselves under the circumstances in which they act[ed]" and considering the information reasonably available to them.

According to Hanson, "[NorthWestern] owned them both.  There was no change. [NorthWestern] owned the equity of [Clark Fork] before the transaction.  They owned it after

---

[12] References herein to "Uncontested Fact __" refer to the Statement of Uncontested Facts set forth in Defendants' Brief in Support of Motion for Summary Judgment, D.I. 274.

the transaction." Uncontested Fact 34. Hanson relied on Management Information Reports, SEC filings[13], other public financial statements, and presentations to NorthWestern's board. Hanson "had no basis for believing that [the documents he relied upon] were false or misleading." Uncontested Fact 31. Hanson further relied on the management of NorthWestern and on officers of its subsidiaries regarding any perceived financial problems with NorthWestern or its related companies. Uncontested Fact 32. Based on his involvement with NorthWestern and his general understanding, Hanson had no reason to question either the advisability of the Transaction or the ability of NorthWestern to pay the QUIPS obligations. Uncontested Fact 33. Magten has not cited a single document or the testimony of any witness, not even their own retained experts, to contradict any of these statements or to otherwise raise any genuine issue of fact.

At the time of the Transaction, Kindt believed NorthWestern had the "financial wherewithal to continue to service the [QUIPS] debt" and that "whenever the utility needed cash, it was available." Kindt had no concerns with respect to whether NorthWestern could satisfy the QUIPS obligations as "[t]he balance sheet of NorthWestern was strong" and "[t]he company had just recently issued some debt and did not have a difficult time issuing that debt." Further, Kindt was not aware of any concerns with respect to NorthWestern's liquidity or cash flows until the late winter or early spring of 2003. Uncontested Fact 44. Kindt believed there was "no need for concern" regarding Clark Fork's cash flows after the Transaction because the Support Agreements guaranteed sufficient cash flows to Clark Fork from NorthWestern. Concerning the Transaction, Kindt believed "NorthWestern was the owner of the assets and that all [NorthWestern] was doing was changing the form of that ownership from ownership of [Clark Fork] to direct ownership of the net assets." Uncontested Fact 45. Magten has not cited

---

[13] Beginning on page 14 of its Opposition Brief, Magten asserts that the SEC did not charge either Hanson or Kindt as a result of its extensive and lengthy investigation into NorthWestern's financial condition is of no moment. However, in the NorthWestern litigation, Magten relies on the SEC's complaints and charges against NorthWestern and various top NorthWestern managers as proof of an alleged fraudulent scheme. Magten cannot have its cake and eat it too. If the fact the SEC charged certain entities and managers with a fraudulent scheme is evidence upon which Magten can rely to support its allegations in one case, then the fact that the SEC *did not charge* Hanson or Kindt must be evidence of their innocence in another case.

to a single document or deposition testimony of any witness, not even their own retained experts, to contradict any of these statements or to otherwise raise any genuine issue of fact.

Finally, absent some evidence that Clark Fork was insolvent at the time of the Transaction, Hanson and Kindt's fiduciary obligations ran solely to the company itself and its sole equityholder, NorthWestern. *See Production Resources Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, (Del. Ch. Ct. 2004). As discussed above, Magten has failed to produce any evidence or expert testimony suggesting, let alone proving, Clark Fork was insolvent or in the "zone of insolvency." Therefore, Hanson and Kindt clearly fulfilled their fiduciary obligations to Clark Fork and are entitled to judgment as a matter of law.

Assuming, *arguendo*, this Court can get to the issue of Defendants' state of mind, given the above legal and factual discussion, Magten has still failed to provide sufficient evidence to defeat summary judgment. While Magten claims that summary judgment is inappropriate where the defendants' knowledge and state of mind are in dispute, "in proper circumstances, courts have granted summary judgment in cases in which intent or motive is a key issue." *New Jersey Office Supply, Inc. v. Feldman*, No. 89-3990, 1992 WL 219790, at *5 (D.N.J. Sept. 1, 1992) (collecting cases). Where the facts and all reasonable inferences that can be drawn from them do not support the plaintiff's contentions, "the mere incantation of intent or state of mind" does not "operate as a talisman to defeat an otherwise valid motion." *Id.* (quoting *Resource Developers, Inc. v. Statute of Liberty-Ellis Island*, 926 F.2d 134, 141 (2d Cir. 1991)); *see also Le Fevre v. Space Communications Co. (Spacecom)*, 771 F.2d 421, 423 (10th Cir.1985) (absent "the requisite quantum of evidence," a party is not entitled to a trial simply because it alleges "a cause of action to which state of mind is a material element"). Summary judgment is warranted in cases involving knowledge or state of mind as a material element if "the non-moving party rests merely upon conclusory allegation, improbable inferences and unsupported speculation." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Therefore, Defendants are entitled to summary judgment here because Magten has "not identified facts to support their allegation that defendants acted intentionally or with

14

knowledge." *In re Reliance Securities Litig.*, 135 F.Supp.2d 480, 520 (D. Del. 2001) (granting

summary judgment in breach of fiduciary duty case)[14].

Moreover, the business judgment rule protects the "full and free exercise of managerial

power granted to Delaware directors." *Zapata Corp., v. Maldonado*, 430 A.2d 779, 782 (Del.

1981). "The rule itself is a presumption that in making a business decision, the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action

taken was in the best interests of the company." *Aronson v. Lewis*, 472 A.2d 805, 812 (Del.

1984). Therefore, the burden is on the party attacking a board decision as uninformed to rebut

the presumption that its business judgment was an informed one. *Id.* To rebut this

presumption, Magten must prove Defendants acted with "gross negligence" in their capacity as

officers of Clark Fork. *Smith v. Van Gorkom*, 488 A.2d 858, 874 (Del. 1985).

---

[14] Magten cites to an unpublished case from the Fourth Circuit as support for its proposition that it is not required to submit expert testimony in a breach of fiduciary duty case. *See* D.I. 289, at 16, citing to *D'Addario v. Geller*, 2005 WL 428779 and other cases. In *D'Addario* court found that expert testimony may indeed be required in some complex and complicated cases. *D'Addario*, 2005 WL 428779, *5-6. More importantly, the *D'Addario* court also found that to make out a claim for breach of fiduciary duty, the plaintiff must prove:

> (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) a causal connection between the breach and the plaintiff's injuries. To satisfy his or her fiduciary duty to a corporation, "[a] director shall discharge his or her duties … [i]n good faith … with the care an ordinarily prudent person in a like position would exercise under similar circumstances and … in a manner he or she reasonably believes to be in the best interest of the corporation. Further, a director is personally liable for monetary damages to the corporation when his breach of fiduciary duty involves willful misconduct, a conscious disregard of the corporation's best interests, or the receipt of an improper benefit.

*Id.* at *4. Therefore, the 4th Circuit properly noted and held that the claim of breach of fiduciary duty is a derivative claim, not a direct claim, and that an award of compensatory damages is an award to the corporation for damages suffered by the corporation, not an award to an alleged creditor for damages that creditor supposedly suffered. *Id.* at *5. This holding is consistent with Delaware law. *See*, *e.g.*, *Gheewalla*, 930 A.2d at 102. Since Magten has pled a direct cause of action asserting damages for a direct injury allegedly suffered, Magten lacks standing to sue and the case must be dismissed.

Similarly, Magten misstates the holding of *Hoagland v. Sandberg, Phoenix & Van Gontard, P.C.*, 385 F.3d 737 (7th Cir. 2004). In fact, that court expressly noted that Illinois law requires expert testimony for legal malpractice cases and the plaintiff "cannot be permitted, by recharacterizing the claim-whether by calling the conflict of interest a breach of fiduciary obligation or by contending that his contract with the law firm contained an implied promise not to commit such conflicts-to get around the requirement of presenting expert testimony. That is the kind of formalist move that courts rightly reject." 385 F.3d at 744. This holding does not support Magten's contention that expert testimony is unnecessary in the present case.

The arguments of counsel found on pages 21 – 27 of Magten's Opposition Brief, in which Magten cites to no document or deposition testimony to contradict Defendants Uncontested Facts or to raise a genuine issue of fact, is based solely on innuendo, suggestions of guilt by association and an ill-defined and unproven conspiracy theory.  As noted in Section I, *supra*, these self-serving, unsubstantiated allegations made by counsel for Magten without any reference to the record are insufficient to defeat an otherwise appropriate and substantiated motion for summary judgment.

**VI.     MAGTEN HAS PROVIDED NO EVIDENCE SUPPORTING ANY OF THE ALLEGATIONS SET FORTH IN ITS COMPLAINT.**

Magten has not and cannot meet its burden of proof and has failed to cite a single genuine issue of material fact that precludes summary judgment in Defendants' favor.  In its Complaint, Magten asserts a single count for breach of fiduciary duty allegedly owed by Clark Fork's officers to its <u>creditors</u>.  Specifically, Magten alleges:

o       "On November 15, 2002, defendants, as officers of Clark Fork, <u>carried out a scheme to defraud, injure and deprive Magten of the ability to receive the benefits due to it from Clark Fork in connection with the Junior Debentures and the QUIPS, by,</u> in the Transaction, <u>transferring</u> substantially all of Clark Fork's assets, <u>the Montana Utility Assets, to NorthWestern without receiving adequate consideration</u> in return."  Complaint at ¶ 31.

o       "<u>As an immediate result of the consummation of the Transfer, Clark Fork was insolvent</u>."  Complaint at ¶ 33.

o       The defendants all knew, should have known, and/or were reckless with respect to knowing <u>that Clark Fork would be rendered insolvent as a result of the Transaction and that NorthWestern was insolvent both before and after the Transaction</u>.  Complaint at ¶ 35.

o       "<u>Clark Fork was a company within the zone of insolvency on November 15, 2002</u>. Accordingly, defendants, as officers of Clark Fork, owed individual fiduciary duties to <u>Clark Fork's creditors</u>…."  Complaint at ¶ 47.

o       "The … <u>creditors of Clark Fork</u> … <u>were injured by the Transaction which transferred the Montana Utility Assets to NorthWestern without adequate consideration, thereby rendering Clark Fork insolvent</u>."  Complaint at ¶ 48.

o      "<u>Defendants breached their fiduciary duties to the Trust and Magten's predecessors in interest by</u> willfully and wantonly carrying out the Transaction and <u>transferring the Montana Utility Assets to NorthWestern without adequate consideration, thereby rendering Clark Fork insolvent</u>."  Complaint at ¶ 50.

o      "<u>Defendants also breached their fiduciary duties to the Trust and Magten's predecessors in interest by purporting to assign Clark Fork's obligations with respect to the Junior Debenture and QUIPS to NorthWestern, when they knew NorthWestern was insolvent and would remain insolvent, and would thus be unable to perform those obligations</u>."  Complaint at ¶ 51.

Magten's Complaint, then, is founded on the following allegations: (a) NorthWestern did not pay reasonably equivalent value to Clark Fork for the Transferred Assets; (b)  NorthWestern was insolvent or in the zone of insolvency before and after the Transaction; (c) Clark Fork was in the zone of insolvency prior to the transaction and was rendered insolvent as a result of the Transaction; and (d) Clark Fork's <u>creditors</u> – Magten, its predecessors and the Trust – were deprived of the benefits of the Debentures and the QUIPS because NorthWestern was unable to pay following the Transaction[15].  But Magten cites not a single genuine issue in dispute to support its allegations to overcome Defendants' Motion for Summary Judgment.  As noted in Section I, *supra*, Magten's failure to specifically refute Defendants' Uncontested Facts is fatal to its claims.

A.      **Reasonably Equivalent Value.**

Magten complains Defendants breached their fiduciary duty by failing to ensure Clark Fork received reasonably equivalent value for the assets transferred, and thus injured Clark Fork's creditors.  D.I. 289, at 2-3.  However, Magten cites no authoritative document or any deposition testimony to support this contention.  Rather, Magten ignores the undisputed fact that Clark Fork did indeed receive reasonably equivalent value for the Transaction in the form

---

[15] On page 15 of its Opposition Brief, Magten attempts to re-write history claiming that "the entire gravamen of this complaint is that defendants breached their fiduciary duties to <u>Clark Fork,</u> and did so at the behest of NorthWestern." (emphasis in original).  The fallacy of this statement is demonstrated by a simple reading of the Complaint.  As demonstrated by the quotes from the Complaint above, Magten's allegations are direct allegations asserting breaches of duties owed to the creditors, <u>not</u> to Clark Fork, seeking damages payable directly to Magten, <u>not</u> to Clark Fork.  As such, Magten lacks standing to bring this direct cause of action.  Magten's attempt to distance itself from these fatal flaws by inserting one sentence in a brief opposing summary judgment cannot and does not cure the original defect.

of (1) the assumption of the liabilities that related to the transferred assets and (2) the support agreements given to Clark Fork with respect to operating expenses and environmental liabilities retained by Clark Fork.

Magten fundamentally misrepresents the nature of the Transaction.  The Transaction which occurred on November 15, 2002 was merely the culmination of a larger transaction whereby NorthWestern acquired the equity and, ultimately, the assets of Clark Fork.  *See* D.I. 283, Patrizzia Decl., ¶¶ 3-4.  As described in NorthWestern's discovery responses cited by Magten, NorthWestern acquired the membership interests in Clark Fork in February 2002, pursuant to the terms of the September 29, 2000 Unit Purchase Agreement.  *See* D.I. 290, Brewer Decl., Exhibit 1, at 3; *see also* Form U-1, dated February 14, 2002, attached as Exhibit 1 to Affidavit of Stanley T. Kaleczyc.[16]  In February 2002, NorthWestern paid approximately $1.1 billion in cash and the assumption of liabilities.  *Id.*  Thereafter, NorthWestern transferred the assets which remained in Clark Fork to a division within NorthWestern and assumed the associated liabilities.  Because NorthWestern already owned all of the equity, there was no need to provide additional capital to Clark Fork.

---

[16] In relevant part, the Form U-1, filed by NorthWestern with the SEC in February 2002, discusses the multi-part transaction of NorthWestern purchasing the equity interests of Clark Fork and then transferring such assets to NorthWestern as a utility division.  While NorthWestern owned the equity interests of Clark Fork it was required to obtain an exemption from the requirements of the Public Utility Holding Company Act of 1935.  In the Form U-1, NorthWestern explained:

> The interim exemption is necessary because, as explained more fully below, the Transaction as currently intended will proceed in two steps: NorthWestern will initially acquire the membership interests of a limited liability company ("Montana Power LLC" or the "LLC") that holds the MPC Utility Operations.  Thereafter, upon receipt of further regulatory approvals and such consents as may be required, NorthWestern intends to directly acquire the transmission and distribution assets constituting the Utility Operations held by the limited liability company, while it explores various options for addressing the issues and risks associated with a small hydroelectric facility (the 3 MW Milltown Dam) that is an active Superfund site.

Affidavit of Stanley T. Kaleczyc, Exhibit 1, at 3.  This is consistent with the representations made by NorthWestern to the Montana Public Service Commission in its Application seeking MPSC consent to acquire Clark Fork filed on or about January 11, 2001, and the accompanying pre-filed testimony of Mike Hanson.  *See* Affidavit of Stanley T. Kaleczyc, Exhibits 2, Joint Application of The Montana Power Company and NorthWestern Corporation, at 14, and Exhibit 3, Testimony of Michael J. Hanson of NorthWestern Corporation, at 5.

Thus, Magten ignores, or refuses to accept, that at the time of the Transaction because NorthWestern already owned the equity in Clark Fork, the equity already bought and paid for by NorthWestern in February 2002 is the "gap" Magten now tries to assert was the deficiency in the consideration given to Clark Fork for the Transaction in November 2002. To require NorthWestern to tender additional consideration in the amount of the alleged "gap," would require NorthWestern to pay for the assets twice. As a matter of law, this result is neither compelled nor is it reasonable.

Because NorthWestern already owned the equity, there is no "gap" in the consideration paid. The equity owned, plus the value of the liabilities assumed, plus the value of the Support Agreements given to Clark Fork, comprises reasonably equivalent value for the Transferred Assets.

### B.     Insolvency.

Magten complains Defendants breached their fiduciary duty because the Transaction rendered Clark Fork insolvent. D.I. 289, at 2. However, Magten cites no authoritative document or any deposition testimony to support this contention. Rather, Magten ignores the undisputed facts that Clark Fork was released from all further obligations to the QUIPS holders (as well as from all other liabilities arising from or related to any of the transferred assets), that NorthWestern executed support agreements to Clark Fork to ensure it could meet any obligations it retained related to the Milltown Dam, that Clark Fork never filed for bankruptcy protection, and that none of its own experts (and indeed none of the witnesses in this proceeding) have ever opined that Clark Fork was ever, at any time, insolvent. *See* Uncontested Facts 18-21, 70.

Further, Magten has offered no evidence that NorthWestern was insolvent or in the zone of insolvency. Neither of their experts offered any such opinions.[17]     Further, as

---

[17] "Expert testimony is necessary in cases where the understanding and analysis of the issues is beyond the ken of the typical jury." *USH Ventures v. Global Telesystems Group, Inc.*, 2000 WL 1211205, *2 (Del. Sup. Ct. 2000). The determination of insolvency or zone of insolvency in this case is clearly one which is beyond the province of a typically jury's understanding.

indicated above, NorthWestern did, indeed, satisfy its obligations under the QUIPS. Immediately following the Transaction, NorthWestern paid the quarterly QUIPS payment due in December 2002.  Uncontested Fact 50.  Thereafter, NorthWestern paid the quarterly QUIPS payment due in March 2003.  *Id.*  On May 23, 2003, NorthWestern exercised its rights under the Debentures to defer additional quarterly payments for up to 20 consecutive quarters.  *Id.* Thus, NorthWestern did not default on its QUIPS obligations immediately after the Transaction.

> **C.    Deprived the benefits of the QUIPS.**

Magten complains Defendants breached their fiduciary duty because the agreement by NorthWestern to perform the obligations under the Debentures to the QUIPS holders was "worthless."  *See* D.I. 289, at 1-2.  However, Magten cites no authoritative document or any deposition testimony to support this contention.  Rather, Magten ignores the undisputed fact that following the Transaction, NorthWestern did indeed comply with its obligations to the QUIPS holders.  The QUIPS were paid, and NorthWestern exercised its contractual rights under the Debentures.  There was no "immediate event of default" on the QUIPS.  Uncontested Facts 50, 51.

Magten also complains Defendants breached their fiduciary duties because the Transaction damaged the QUIPS holders by subordinating their interests to the rights of others who were not creditors of Clark Fork prior to the Transaction.  D.I.289, at 8, n. 8.  However, Magten again cites no authoritative document or any deposition testimony to support this contention.  Rather, Magten ignores the undisputed facts that the Debentures allowed the further subordination of the QUIPS holders and that no complaint or objection by them could preclude the closing of the Transaction.  Uncontested Fact 4.

> **D.    Conclusion.**

In short, Magten has failed to provide a scintilla of evidence that either Defendant breached any fiduciary duty.  If Magten had any evidence of such a breach, it would have prominently presented that evidence to this Court at every opportunity.  Rather, Magten failed

to provide a single citation to the documentary or testamentary evidence in this case to establish the existence of any element of its claim as pled in its Complaint.  Defendants are entitled to summary judgment in their favor.

## VII.    AS A MATTER OF LAW, MAGTEN'S RECOVERY OF COMPENSATORY DAMAGES IS LIMITED.

Magten's argument that its compensatory damages are not limited misses the mark. Under Magten's analysis, it would impermissibly be awarded windfall profits.  The proper measure of compensatory damages is limited to the amount of money that will compensate the damaged party for the losses sustained (ie: the present value of the property at the date of the injury) without awarding the damaged party a profit.  *Spackman v. Ralph M. Parsons Co.*, 414 P.2d 918, 921 (Mont. 1966).  Here, Magten did not, in fact, own any QUIPS as of the date of the alleged injury: the date of the alleged breach of fiduciary duty.  Rather, Magten first purchased the QUIPS nearly six months following the date of the alleged injury at a purchase price that represented the distressed value of the security.  Uncontested Fact 58**.**  Therefore, Magten is entitled only to an amount that will compensate it for its losses, assuming it had any.

By way of example, if the QUIPS had a value of $20 on the date of the alleged breach of fiduciary duty, but Magten purchased the QUIPS six months later for $10, Magten's compensatory damages (the value that would make it "as nearly whole as possible - but not to realize a profit") is limited to $10.  To permit Magten to stand in the shoes of its predecessors in interest who actually held the QUIPS on the date of the alleged breach, and who thus might be entitled to compensation in the amount of $20, would give Magten a $10 profit.  That is not permitted under a compensatory damages calculation.  Further, as discussed below, all injured parties must mitigate their damages.  Therefore, the compensatory award permitted to any of Magten's predecessor's in interest which held QUIPS on the date of the alleged breach must be reduced by the amount they received in mitigating their damages by selling the QUIPS to Magten.  To the extent Magten argues for any other proposition in its brief, it has misstated the law and seeks to overstate its damages.

## VIII.  MAGTEN MISSTATES AND MISAPPLIES THE LAW OF MITIGATION OF DAMAGES.

Magten's arguments on mitigation of damages likewise miss the mark and misstate the relevant law.  The duty to mitigate damages requires more than simply refraining from acting in a way that decreases the value of the injured property.  The duty to mitigate damages requires the injured party to _refrain from actions that will increase his or her losses_, and indeed, requires the injured party to take affirmative steps to _reduce the amount of his or her losses_.  _See_, _e.g._, _Tiggerman v. City of Butte_, 119 P. 477, 478 (Mont. 1911) ("[O]ne who has been injured by the negligence of another must use ordinary diligence to effect a cure, and there can be no recovery for damages that might have been avoided by the exercise of such care.") (citations omitted"); _see also Town Pump, Inc. v. Diteman_, 622 P.2d 212, 216 (Mont. 1981) (injured party has a duty to "act reasonably under the circumstances so as not to unnecessarily enlarge damages").  In this case, Magten failed on both counts.

First, Magten took affirmative steps to actually _increase_ its damages when it continued on its QUIPS buying spree even though it knew that:

(a)  NorthWestern had restated its financials for the first 3 quarters of 2002, and the 8-K filed therewith stated NorthWestern had the right to defer interest payment for up to 20 consecutive quarters and that NorthWestern may not be able to meet its debt obligations (Uncontested Facts 53, 54, 58);

(b)  on May 15, 2003, NorthWestern filed an 8-K stating it was considering deferring QUIPS payments and that it is "likely that such payments will be deferred."  (Uncontested Fact 55);

(c)  on May 23, 2003, NorthWestern filed a Form 8-K announcing that its "Board of Directors has elected to defer interest payments on the subordinated debentures of all series of its trust preferred securities [QUIPS]."  (Uncontested Fact 56); and

(d) NorthWestern was in bankruptcy the day it filed its petition (Uncontested Fact 61).

Indeed, Magten continued to purchase QUIPS after NorthWestern filed Bankruptcy, after it filed this lawsuit and even after NorthWestern's Plan of Reorganization was approved by the Bankruptcy Court and the value of the QUIPS claims had been finally determined and approved by the Court, further *increasing* its damages.

Second, Magten failed to take any steps to *reduce* its damages. To mitigate its damages, Magten was obligated to attempt to sell its QUIPS. Any amount received from such sales would mitigate the total compensatory losses Magten suffered. Magten's purposeful enlargement of its alleged injury is a blatant violation of Montana's mitigation of damages requirement and therefore precludes any recovery of damages incurred after May 23, 2003, and certainly after September 14, 2003.

## IX.    AS A MATTER OF LAW, MAGTEN IS NOT ENTITLED TO ANY PUNITIVE DAMAGES AWARD.

Mont. Code Ann. 27-1-221 provides that a party can only collect punitive damages if defendant is guilty of either actual fraud or actual malice. Magten has not pled nor has it provided any evidence of actual fraud. In its Opposition Brief, Magten does not even argue that a jury could find either Defendant liable for actual fraud. Thus, Magten has conceded it is not entitled to punitive damages on that basis.

Magten's argument, unsupported by reference to any genuine issues of fact, that it is entitled to punitive damages based on an actual malice theory likewise fails. To avoid summary judgment Magten must "present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact." *Williams v. Union Fidelity Life Ins. Co.,* 123 P.3d 213, 217-218 (Mont. 2005). Magten has presented *no* material evidence that Hanson and Kindt acted with actual malice; there is no evidence that either had "knowledge of facts or intentionally disregard[ed] facts that create a high probability of injury to the plaintiff," or deliberately proceeded to act with "conscious and intentional disregard" or with indifference to the high probability of injury to Magten. *See* Mont. Code

23

Ann. § 27-1-221(2). Therefore, Magten has failed in its burden to prove Hanson or Kindt engaged in actual malice

     Instead of providing material evidence of actual malice, Magten focuses on the jury's role in determining punitive damages and Montana courts' reluctance to take the issue away from a jury. D.I. 289, at 31. Magten's discussion of the jury's role as the trier of fact is irrelevant because Magten failed to present any evidence of actual malice. Thus, the issue of punitive damages may not be presented to the jury.

### X.  MAGTEN CITES NO AUTHORITY FOR AN AWARD OF ATTORNEY FEES AND ACTUALLY MISLEADS THIS COURT WITH RESPECT TO THE STATUS OF THE LAW.

     As discussed in more depth in the Brief in Support of Motion for Summary Judgment, Montana's application of the American Rule prevents the Court from awarding Magten attorney fees if they prevail in the lawsuit. D.I. 274, at 55-56, citing *Erker v. Kestner*, 988 P.2d 1221, 1228 (Mont. 1999); *Satori v. S & S Trucking, Inc*., 139 P.3d 806, 809 (Mont. 2006). Magten failed to provide any Montana statute or judicial precedent that would overcome the American Rule.

     Instead of providing law that would support the award of attorney fees in a direct action, Magten tries to attain attorney fees by cloaking this *direct action* beneath a *derivative* guise. *See* D.I. 289, at 34. Magten cites Mont. Code Ann. § 35-8-1104(4) for support; however, that statute permits a recovery of attorneys fees only in *derivative*, not *direct*, causes of action. Furthermore, Magten failed to provide this Court with the full language of that code section which states:

> (4) If a derivative action for a limited liability company is successful, in whole or in part, or if anything is received by the plaintiff as a result of a judgment, compromise, or settlement of an action or claim, the court may award the plaintiff reasonable expenses, including reasonable attorney fees, *and shall direct the plaintiff to remit to the limited liability company the remainder of the proceeds received*.

24

Mont. Code Ann. § 35-8-1104(4) (emphasis added).  Magten has clearly sought to mislead this Court by failing to provide the full statutory language.  This case is not a derivative action where Magten is suing on behalf of the limited liability company.  Here, Magten is seeking its own windfall recovery, not to return property to the limited liability company on whose behalf it sues.  If this were really a derivative action, under Mont. Code Ann. § 35-8-1104(4), Magten must "remit to the limited liability company the remainder of the proceeds received" beyond Magten's "reasonable expenses, such as attorney fees[.]"  Magten has no intention of complying with this statutory requirement.   Therefore, Magten cannot rely upon it to avoid the American Rule on attorneys fees.

## XI.    MAGTEN'S CONTINUED PRACTICE OF MAKING BLATANT MISREPRESENTATIONS DO NOT PROVIDE A SUFFICIENT BASIS FOR DENYING DEFENDANTS' MOTION.

Magten improperly claims that Defendants have "admitted" or "conceded" a variety of disputed matters, and cites to inapposite sources.  While Defendants will not point to each misquoted statement, a few bear highlighting and correcting:

On page 13 of their Opposition Brief, Magten states that "defendants concede . . . that the jury could find that Clark Fork was in the zone of insolvency, and rightly so."  Magten cites page 26 of Defendants' opening brief.  However, that quote actually states:  "[e]ven assuming, *arguendo*, that . . . Clark Fork was in the zone of insolvency, Magten still lacks standing for three reasons."  It is quite obvious Defendants did not concede the issue, but simply made a legal argument in the alternative.

Citing to pages 44-45 of Defendants' opening brief, Magten argues: "Defendants do not dispute that the jury could find that Clark Fork was rendered insolvent as a result of the Transfer."  D.I. 289, at 17, n. 17.   However, on those pages, Defendants do not in any way concede Clark Fork was rendered insolvent by the Transaction, but rather discuss how Montana law would limit Magten's recovery, if any, because a party cannot profit from compensatory damages.

Magten also cites Uncontested Fact 15, in which Defendants note that Clark Fork was solvent prior to the Transaction, but make no claim as to its condition afterwards. The omission of a statement that Clark Fork was solvent after the Transaction simply does not constitute a concession, especially in light of Magten's failure to provide any expert or other testimony demonstrating insolvency at any time, that Clark Fork has never filed a petition in bankruptcy, nor has Magten submitted its own statement of genuine issues asserting that Clark Fork was insolvent after the Transaction.

Magten also misquotes or misstates Hanson's deposition testimony. On page 18, footnote 18 of their Opposition Brief, Magten makes two claims. First, Magten claims Hanson conceded he did not consider whether Clark Fork should be advised by its own counsel in connection with the transfer. In actuality, Hanson testified he did not know who represented NorthWestern, and therefore he did not consider whether the same counsel represented both parties. Second, Magten asserts Hanson admitted that no valuation was done of assets and liabilities being transferred. Hanson actually testified: "I don't recall any such assessment nor do I think one was necessary."

Throughout this Brief, Defendants have likewise pointed out numerous instances where Magten misstates the holdings of various cases or fails to bring key holdings to this Court's attention. Defendants have also noted Magten's continuing failure to comply with the Rules of Civil Procedure. Magten's willingness to misquote testimony and case law and to avoid compliance with the rules of this Court demonstrate the desperate depths to which Magten will sink in order to mislead this Court and avoid dismissal of their meritless case. Magten's practices cannot be permitted to continue.

## CONCLUSION

Magten lacks standing to bring this action. No amendment of the Complaint or late joinder of additional parties will cure these fatal defects. Magten has cited no genuine issues of fact and does not event attempt to dispute the Uncontested Facts set forth by Defendants. Magten's conclusory and wholly unsupported statements and arguments by counsel are

insufficient to preclude summary judgment.  For all of these reasons, summary judgment in Defendants favor is warranted.

Dated: January 14, 2008                    EDWARDS ANGELL PALMER & DODGE LLP


                                        _/s/ Denise Seastone Kraft_
                                        Denise Seastone Kraft (#2778)
                                        919 North Market Street
                                        Suite 1500
                                        Wilmington, DE  19801
                                        (302) 777-7770
                                        dkraft@eapdlaw.com
                                          *Counsel to Michael J. Hanson
                                          and Ernie J. Kindt*


OF COUNSEL:

Stanley T. Kaleczyc
Kimberly A. Beatty
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
139 North Last Chance Gulch
Helena, MT  59624
(406) 443-6820


27