IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORP. and LAW DEBENTURE TRUST COMPANY OF NEW YORK, <br><br> Plaintiffs, <br><br> v. <br><br> NORTHWESTERN CORPORATION, <br><br> Defendant. | Civil Action No. 04-1494-JJF |
| MAGTEN ASSET MANAGEMENT CORP., <br><br> Plaintiff, <br><br> v. <br><br> MIKE J. HANSON and ERNIE J. KINDT, <br><br> Defendants. | Civil Action No. 05-499-JJF |

## NORTHWESTERN CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP
Joseph D. Pizzurro
Nancy E. Delaney
Myles K. Bartley
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

GREENBERG TRAURIG LLP
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360
counihanv@gtlaw.com
Melorod@gtlaw.com

Counsel for NorthWestern Corporation
Dated: January 14, 2008

# **TABLE OF CONTENTS**

**Page #**

SUMMARY OF ARGUMENT ..................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

I Plaintiffs Have Failed to Set Forth Specific Facts in the Record Showing That There Is a Genuine Issue of Material Fact for Trial ........................................................................ 3

II Plaintiffs Cannot Prevail on their Fraudulent Conveyance Claim Because They Cannot Demonstrate That They Are Creditors of Clark Fork ............................................. 6

III Plaintiffs Have Failed to Raise an Issue of Fact Relating to any Fraud in Connection with the Going Flat Transaction .................................................................................... 8

    A.    The 2002 Financials ........................................................................................... 8

    B.    The Bank of New York ..................................................................................... 9

    C.    NorthWestern's Insolvency .............................................................................. 10

IV Plaintiffs Cannot Establish Proximate Cause ...................................................................... 11

V Plaintiffs' Unjust Enrichment Claim Fails As A Matter of Law ......................................... 15

CONCLUSION ........................................................................................................................... 16

# TABLE OF AUTHORITIES

## Cases

*ACLU-NJ v. Township of Wall,*
  246 F.3d 258 (3d Cir. 2001) .................................................................................................7

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) ..............................................................................................................3

*Awala v. State of N.J. Dep't of Corrections,*
  No. 05-3036, 2005 U.S. Dist. LEXIS 32247 (D. N.J. June 24, 2005) ...................................6

*Cantor Fitzgerald, L.P. v. Cantor,*
  No. C.A. 16297, 1998 WL 326686 (Del. Ch. June 16, 1998) .............................................15

*Carlough v. Amchem Prods., Inc.,*
  834 F. Supp. 1437 (E.D. Pa. 1993) ........................................................................................7

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ..............................................................................................................4

*Clark v. Neal,*
  890 F. Supp. 345 (D. Del. 1995) ...........................................................................................4

*Day v. Bond,*
  500 F.3d 1127 (10th Cir. 2007) .............................................................................................7

*El v. Se. Pa. Transp. Auth.,*
  479 F.3d 232 (3d Cir. 2007) ..................................................................................................5

*Fireman's Ins. Co. of Newark v. Dufresne,*
  676 F.2d 965 (3d Cir. 1982) ..................................................................................................4

*In re IKON Office Solutions, Inc.,*
  277 F.3d 658 (3d Cir. 2002) ..................................................................................................4

*In re: NorthWestern Corp. (Magten Asset Mgmt. Corp. &*
*Law Debenture Trust Co. of N.Y. v. NorthWestern Corp.),*
  313 B.R. 595, 601 (Bankr. D. Del. 2004) .....................................................................7, 8, 12

*Lauren W. v. Lugar,*
  480 F.3d 259 (3d Cir. 2007) ..................................................................................................4

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992) ..............................................................................................................7

*Magten Asset Mgmt. Corp. v. Bank of N.Y.*,
  15 Misc. 3d 1132(A), 841 N.Y.S.2d 219, 2007 N.Y. Misc. LEXIS 3320
  (Sup. Ct. N.Y. Co. May 8, 2007) .................................................................................. 10

*Maxwell v. KPMG, LLP*,
  No. 03 C 3524, 2007 U.S. Dist. LEXIS 52647 (N.D. Ill. July 19, 2007) ..................... 11, 14

*McCabe v. Ernst & Young LLP*,
  494 F.3d 418 (3d Cir. 2007) ............................................................................... 4, 11, 14

*Meagher v. Pension Plan of the Cement & Concrete Bd. of
  Trustees Workers Dist. Pension Fund*,
  921 F.Supp. 161 (S.D.N.Y. 1995) .................................................................................. 10

*N.A.I.F. Inc. v. Snyder*,
  No. 03-506, 2005 U.S. Dist. LEXIS 5103 (D. Del. Mar. 30, 2005) .................................. 6

*Parkoff v. General Tel. & Elec. Corp.*,
  53 N.Y.2d 412, 442 N.Y.S.2d 432 (1981) ....................................................................... 10

*Schoonejongen v. Curtiss-Wright Corp.*,
  143 F.3d 120 (3d Cir. 1998) .............................................................................................. 5

*Soc'y Hill Towers Owners' Ass'n v. Rendell*,
  210 F.3d 168 (3d Cir. 2000) .............................................................................................. 7

*Tilden Fin. Corp. v. Palo Tire Serv., Inc.*,
  596 F.2d 604 (3d Cir. 1979) .............................................................................................. 4

*Trenwick America Litig. Trust v. Ernst & Young, L.L.P.*,
  906 A.2d 168 (Del. Ch. 2006) ......................................................................................... 14

*United States v. Hayes*,
  515 U.S. 737 (1995) ........................................................................................................... 6

*United States v. Local 560 of the Int'l Bhd. of Teamsters*,
  780 F.2d 267 (3d Cir. 1985) ........................................................................................... 14

*Whitmore v. Ark.*,
  495 U.S. 149 (1990) ........................................................................................................... 6

*Winer Family Trust v. Queen*,
  503 F.3d 319 (3d Cir. 2007) .............................................................................................. 6

**Statutes**

18 C.F.R. § 34.4 ..................................................................................................................... 13

Fed. R. Civ. P. 56(e) ........................................................................................................ 3, 4, 7

In accordance with the October 19, 2007 Second Stipulation and Order to Amend Rule 16 Scheduling Order, Defendant NorthWestern Corporation ("NorthWestern"), respectfully submits this reply memorandum of law in support of its motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment on the First Amended Complaint of Magten Asset Management Corporation ("Magten") and Law Debenture Trust Company of New York ("Law Debenture") (collectively "Plaintiffs"). As Plaintiffs' have not demonstrated that there is any genuine issue as to any material fact, NorthWestern is entitled to judgment as a matter of law.

## SUMMARY OF ARGUMENT

NorthWestern's summary judgment motion is based upon a detailed 70-paragraph Statement of Material Facts meticulously annotated to the record, and upon controlling case law dealing with each of the elements Plaintiffs must establish, including reliance, scienter and proximate cause, their burden of showing that the release of Clark Fork as obligor on the QUIPS was procured by fraud. In response, Plaintiffs have failed to cite a single record reference to dispute even one of NorthWestern's material facts. Instead Plaintiffs rely on general denials and yet another change of theory in a last attempt to avoid dismissal.

Plaintiffs commence their opposition to NorthWestern's motion with an explanation of their claim under the Montana Uniform Fraudulent Transfer Act ("MUFTA"), stating that there is "overwhelming evidence" to support their fraudulent conveyance claim and seeking to relegate the issue of their standing as creditors of Clark Fork to some sort of "technical" defense. But the question of whether Plaintiffs remained creditors of Clark Fork is no technical defense. It is fundamental to Plaintiffs' entire theory that the Going Flat Transaction was a fraudulent conveyance. If the release was valid, Clark Fork was not rendered

insolvent and Plaintiffs, as creditors of NorthWestern, simply have no basis for complaint. The fact that the QUIPS ended up as deeply subordinated unsecured debt of NorthWestern, the same status they held as creditors of Montana Power Company, gives them no claim that the transaction was a fraudulent conveyance, or that it was somehow unfair. It gives them no claim at all. In fact they received all they were entitled to under their contract. Thus, Plaintiffs can only sustain a claim if, as Judge Case made clear, they can show that the release of Clark Fork was obtained by fraud.

Plaintiffs next spend pages and pages describing how NorthWestern's financials for the first three quarters for 2002 were false. But Plaintiffs cannot point to a scintilla of evidence that those financials were falsified in order to accomplish the Going Flat Transaction or that those financials were used to accomplish the Going Flat Transaction. Indeed, Plaintiffs cannot establish any link between those financial statements and the Going Flat Transaction, or the release of Clark Fork as obligor on the QUIPS.

Plaintiffs' response to NorthWestern's demonstration that (i) BoNY did not rely upon the financials in executing the Third Supplemental Indenture and (ii) the certificates upon which BoNY did rely were true in all respects, is essentially to abandon the only fraud theory they ever pleaded. Plaintiffs' response to NorthWestern's demonstration that there is no evidence in the record to support the assertion that it was insolvent and thus no evidence to support that NorthWestern, in Judge Case's words, "knew at the time that it could not do the transaction" is to change theories, arguing that it's simply "too narrow" an inquiry to focus on their original allegations of the so-called fraudulent scheme. Because Plaintiffs cannot muster any evidence at all to support their original theories, they now argue that they can succeed if they can show that the existence of the false financials somehow enabled NorthWestern to avoid financial collapse long enough to accomplish the Going Flat Transaction. Of course there is no

evidence to support this new theory. And the theory is not supported by any applicable law. Plaintiffs not only fail to cite a single case that would permit liability on such a thin and indirect causal connection, they do not attempt to distinguish, or indeed even discuss, the cases cited by NorthWestern which demonstrate that Plaintiffs' new "but for" theories do not meet the requirement of proximate cause.

In short, no matter how mightily Plaintiffs may argue, this is not a case about whether or not NorthWestern's financial statements were false. This is a case about whether NorthWestern falsified those financials in order to do the Going Flat Transaction or used those financials to accomplish the Going Flat Transaction, and in particular the release of Clark Fork. There is no evidence to support either assertion and the Plaintiffs' attempt to ignore this fatal deficiency in their case through the construct of various "but for" scenarios cannot save it. NorthWestern is entitled to summary judgment as a matter of law.

## ARGUMENT

### I

### Plaintiffs Have Failed to Set Forth Specific Facts in the Record Showing That There Is a Genuine Issue of Material Fact for Trial

Plaintiffs have failed to cite a single piece of evidence from the record demonstrating that there is a genuine issue of material fact for trial. Plaintiffs do not point out any facts that contradict the facts set out in NorthWestern's papers. Absent such evidence, NorthWestern is entitled to summary judgment.

Fed. R. Civ. P. 56(e) provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts of record showing that there is a genuine issue of material fact for trial. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the opposing party is

also the party that bears the burden of proof at trial, that party must designate specific facts of record sufficient to convince a reasonable fact finder to find all of the elements of their prima facie case. *Lauren W. v. Lugar*, 480 F.3d 259, 266 (3d Cir. 2007). Absent this, summary judgment must be granted to the movants. *McCabe v. Ernst & Young LLP*, 494 F.3d 418, 438 (3d Cir. 2007) (affirming grant of summary judgment to defendant because plaintiffs failed to point to sufficient record evidence in order to establish proximate cause and therefore failed to create a genuine issue for trial); *In re IKON Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002) ("If a non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which it bears the burden of proof at trial, there is no issue as to a genuine issue of a material fact and thus the moving party is entitled to judgment as a matter of law."); *Clark v. Neal*, 890 F. Supp. 345, 349 (D. Del. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) ("[T]he entry of summary judgment is mandated 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' In such a case, 'there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'").

Accordingly, in the face of a properly supported summary judgment motion, the non-moving party cannot merely deny the allegations, but must affirmatively show there is a genuinely disputed factual issue. *See Fireman's Ins. Co. of Newark v. Dufresne*, 676 F.2d 965, 969 (3d Cir. 1982) ("Rule 56(e) does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions."); *Tilden Fin. Corp. v. Palo Tire Serv., Inc.*, 596 F.2d 604, 608 (3d Cir. 1979) ("[A]n adverse party may not rest upon a mere cryptic and conclusory allegation in his pleading, but must set forth specific facts showing that there is a genuinely disputed factual issue for trial."). Where an opposing party fails to contradict facts

identified by the moving party, summary judgment is appropriate. *El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 238 (3d Cir. 2007).

In support of its motion for summary judgment, NorthWestern prepared a 70-paragraph, 13-page detailed and annotated recitation of the facts from the record. For each and every point NorthWestern made, it provided extensive record citations that provided the factual underpinnings for its assertions.[1] In comparison, in Plaintiffs' Memorandum of Law in Opposition to NorthWestern's Motion for Summary Judgment (hereinafter "Opp. Br."), Plaintiffs drop a footnote in their brief where they claim that the "evidence set forth herein is sufficient" to create an issue of fact with regard to some, but by no means all, of NorthWestern's Material Facts. (Opp. Br. at 3 n.4.) However, neither in their footnote nor anywhere else in their papers, do Plaintiffs refer or cite to a single record citation that does in fact challenge NorthWestern's Material Facts.

Plaintiffs' request that the Court simply disbelieve the clearly articulated evidence submitted by NorthWestern and find inferences in their favor should also be rejected. (*See, e.g.*, Opp. Br. at 8, 9, 20, 27.) As the Third Circuit explained in *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998), "[I]f a moving party has demonstrated the absence of a genuine issue of material fact—meaning that no reasonable jury could find in the nonmoving party's favor based on the record as a whole—concerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the nonmoving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Plaintiffs'

---

[1] For example, NorthWestern did not merely aver that BONY did not rely upon NorthWestern's 2002 financial statements and instead only looked at whether the requirements outlined in the Indenture were satisfied, but cited to explicit evidence in the record showing that BONY did not even *review*, much less rely upon, NorthWestern's 2002 financial statements and that BONY only examined the Officer's Certificate and Opinion of Counsel when it decided whether to execute the Third Supplemental Indenture. (NorthWestern Corporation's Memorandum of Law in Support of Its Motion for Summary Judgment at 22-23 (hereinafter, "NOR Br. at ___"); NorthWestern Corporation's Statement of Material Facts Submitted in Support of Its Motion for Summary Judgment ¶¶ 43-45 (hereinafter, "NOR Material Facts ¶ ___").)

have failed to point to sufficient evidence to establish the elements of their claims and thus have failed to create a genuine issue for trial.

## II

### Plaintiffs Cannot Prevail on their Fraudulent Conveyance Claim Because They Cannot Demonstrate That They Are Creditors of Clark Fork

Plaintiffs' standing to assert a fraudulent conveyance claim is not, as Plaintiffs' argue, some "technical defense" offered by NorthWestern, but goes to the very heart of Plaintiffs' claim. Standing is not an affirmative defense.[2] It is a threshold requirement that must be pleaded and proved by the plaintiff. *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007); *N.A.I.F. Inc. v. Snyder*, No. 03-506, 2005 U.S. Dist. LEXIS 5103, at *10 (D. Del. Mar. 30, 2005). This requirement cannot be waived. *United States v. Hayes*, 515 U.S. 737, 742 (1995). A federal court "is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Awala v. State of N.J. Dep't of Corrections*, No. 05-3036, 2005 U.S. Dist. LEXIS 32247, at *6 (D. N.J. June 24, 2005) (quoting *Whitmore v. Ark.*, 495 U.S. 149, 155-56 (1990)). As enumerated by the Third Circuit, to establish standing:

> (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;
>
> (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and
>
> (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[2] Plaintiffs' attempt to characterize the issue of the validity of the release of Clark Fork as an affirmative defense under Fed. R. Civ. P. 8(c) is both misleading and frivolous. (Opp. Br. at 22 n.18.) NorthWestern has never alleged that the release at issue was a release of NorthWestern. The release is the release of Clark Fork as obligor on the QUIPS, the validity of which destroys Plaintiffs' claim of fraudulent conveyance. As Judge Case made clear, Plaintiffs must prove that the release was obtained by fraud. They cannot shift their burden to NorthWestern.

*Soc'y Hill Towers Owners' Ass'n v. Rendell*, 210 F.3d 168, 175-76 (3d Cir. 2000). These elements "are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Carlough v. Amchem Prods., Inc.*, 834 F. Supp. 1437, 1446 (E.D. Pa. 1993) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

As such, a plaintiff must establish its standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e. with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561; *ACLU-NJ v. Township of Wall*, 246 F.3d 258, 261 (3d Cir. 2001). Therefore, in response to a summary judgment motion, the plaintiff cannot rest on mere allegations, but must set forth by affidavit or other evidence specific facts regarding the elements of standing. *Lujan*, 504 U.S. at 561; *Day v. Bond*, 500 F.3d 1127, 1132 (10th Cir. 2007); Fed. R. Civ. P. 56(e). If a plaintiff fails to establish standing, the court lacks jurisdiction to hear the merits of the plaintiff's case, and therefore must dismiss it. *ACLU-NJ*, 246 F.3d at 266.

Plaintiffs devote the entire first section of their brief to a defense of their fraudulent conveyance claims under MUFTA. However, Plaintiffs can only assert a claim for fraudulent conveyance if they somehow remained creditors of Clark Fork after the transfer of the utility assets to NorthWestern. Judge Case held "the Indenture specifically provides that Clark Fork is released from its underlying liability on the debentures. . . [and] [a]ll of those obligations . . . now lie exclusively with . . . NorthWestern." *See In re: NorthWestern Corp. (Magten Asset Mgmt. Corp. & Law Debenture Trust Co. of N.Y. v. NorthWestern Corp.)*, 313 B.R. 595, 601 (Bankr. D. Del. 2004). Therefore the only avenue left open to Plaintiffs is to establish that the release of Clark Fork was obtained by fraud. That is the claim Plaintiffs are currently litigating. That claim is the reason Plaintiffs argued for and obtained more than 500,000 NorthWestern documents during discovery and that is the claim on which Plaintiffs carry the burden of proof.

Unable to carry their burden Plaintiffs seek to hide behind the lesser fraud standard applicable to a fraudulent conveyance claim. But Plaintiffs do not and will not have a fraudulent conveyance claim unless they first can vitiate the release of Clark Fork by proving that the release was procured by fraud and in so doing carry their burden to prove each of the elements of common law fraud.

This is not a "technical defense" offered by NorthWestern as Plaintiffs argue in their memorandum. (Opp. Br. at 3, 22.) It is, as Judge Case noted, the "essence" of Plaintiffs' claim. *Magten Asset Mgmt. Corp. & Law Debenture Trust Co. of N.Y.*, 313 B.R. at 602. By failing to even acknowledge, much less carry, their burden to prove that NorthWestern's misstated financials were used to obtain the release under the Indenture, Plaintiffs' claim of fraud in the inducement fails. And absent that fraud, Plaintiffs remain creditors of NorthWestern – not Clark Fork – and have no claim for a fraudulent conveyance.

### III

### Plaintiffs Have Failed to Raise an Issue of Fact Relating to any Fraud in Connection with the Going Flat Transaction

A.  The 2002 Financials

Plaintiffs go to great lengths to argue that NorthWestern's financial statements for the first three quarters of 2002 were false. They rely heavily on their expert Berliner as well as the findings of the SEC to assert that these financials were not only false, but intentionally falsified. But what is telling is not what Berliner or the SEC say about the financials. After all, those financials were restated by NorthWestern. What is telling, and indeed dispositive, is what Berliner and the SEC do not say.

Berliner, with all of the discovery in this case at his disposal, does not offer any opinion that there was any connection at all between the financials and the Going Flat

Transaction. If there were any facts anywhere in the record to even suggest that the Going Flat Transaction was part of the supposed fraudulent scheme with respect to the financial statements, one would expect that Berliner would at least mention it, if not make that the centerpiece of his report. But he says nothing about this – because there is nothing. Indeed, Berliner does not even mention the Going Flat Transaction in his opinions. There is no evidence at all that the Going Flat Transaction was part of some fraudulent scheme or that the financials were used to accomplish the Going Flat Transaction.

Similarly the SEC, after four years of intensive investigation, does not even mention the Going Flat Transaction in its Cease and Desist Order. (Delaney Aff. Ex. 17.)[3] Again, one would expect that if that transaction was the objective or an integral part of the fraudulent scheme as Plaintiffs suggest, the SEC would at least mention it in passing. But there is not a word about it. And that is because there is simply no evidence to suggest, much less prove, the connection Plaintiffs posit.

Plaintiffs clearly want to cast this case as a dispute over NorthWestern's 2002 financials. But that is not this case. Unless Plaintiffs can show that those financials were falsified to accomplish the Going Flat Transaction and the release of Clark Fork on the QUIPS, or used to procure that release their claims must be dismissed. And despite their attempts to distract attention from the real issue here, it is apparent that there are no facts to support what Plaintiffs have the burden to prove.

B.    The Bank of New York

Plaintiffs have now virtually conceded that the only fraud theory they ever pleaded – that the Bank of New York relied on NorthWestern's financials in executing the Third

---

[3] References in the form "Delaney Aff." are to the Affidavit of Nancy E. Delaney sworn to on November 29, 2007 submitted in support of NorthWestern's motion for summary judgment.

Supplemental Indenture – cannot be sustained. Plaintiffs are now relegated to arguing that there may be some fraud because Michael Hanson testified that he may have relied on NorthWestern's financials when he executed the officer's certificate, upon which the Bank of New York did rely, stating there would be no immediate event of default. (Opp. Br. at 26.) But Plaintiffs' assertion is irrelevant. Plaintiffs do not and cannot contest that Hanson's certificate was true in all respects. Plaintiffs do not and cannot contest that there was no immediate event of default on the QUIPS after NorthWestern assumed those obligations and after Clark Fork was released. In fact, there was no default on the QUIPS at all for 10 months until NorthWestern filed for Chapter 11 in September 2003.[4] Plaintiffs' theory that there was a fraud on the Indenture Trustee based on NorthWestern's financials is completely unsupported by a single piece of evidence.

C. NorthWestern's Insolvency

When Plaintiffs were faced with a dismissal of their fraudulent conveyance claim because of the release of Clark Fork, they argued to Judge Case that NorthWestern had fraudulently procured that release by concealing its insolvency through its false financial statements. Thus, Plaintiffs argued, NorthWestern assumed obligations it knew it could not perform. It was this argument that led Judge Case to rule that Plaintiffs could pursue their fraud theory.

But now Plaintiffs have abandoned their fraud by insolvency theory as well. Unable to cite any evidence that NorthWestern was insolvent when it assumed the QUIPS, and unable to procure an opinion on NorthWestern's insolvency from either of their highly paid

---

[4] As the decision in *Magten Asset Mgmt. Corp. v. Bank of N.Y.*, 15 Misc. 3d 1132(A), 841 N.Y.S.2d 219, 2007 N.Y. Misc. LEXIS 3320, at *16 (Sup. Ct. N.Y. Co. May 8, 2007) makes clear, NorthWestern's April 2003 statements concerning its financial difficulties did not constitute an event of default. Magten concedes that it is estopped from relitigating this issue. Law Debenture is likewise estopped, because Law Debenture and Magten are united in interest and therefore in privity. *See Meagher v. Pension Plan of the Cement & Concrete Bd. of Trustees Workers Dist. Pension Fund*, 921 F.Supp. 161, 167 (S.D.N.Y. 1995); *see also Parkoff v. General Tel. & Elec. Corp.*, 53 N.Y.2d 412, 423, 442 N.Y.S.2d 432, 437 (1981).

experts, Plaintiffs now argue that NorthWestern's "technical solvency" is not the issue; rather, the issue "is whether [NorthWestern] had a reasonable basis to believe that it would be able to meet its obligations as they fell due going forward." (Opp. Br. at 19 n.15.) Plaintiffs offer no legal support for such a theory, and there is none. The only evidence in the record on this issue is that NorthWestern *did* meet its obligations as they became due, including its obligations to the QUIPS holders, for ten months after it assumed the QUIPS. Instead, Plaintiffs offer their most outlandish theory yet, arguing that NorthWestern's fulfillment of its obligations to pay the QUIPS holders their interest payments was actually part of a plot to perpetuate the supposed fraud. (Opp. Br. at 19.) This argument is preposterous and NorthWestern's performance of its obligations is most certainly *not a fact* that contradicts the clear evidence of NorthWestern's ability to perform when it assumed the QUIPS.

## IV

### Plaintiffs Cannot Establish Proximate Cause

As demonstrated in NorthWestern's opening brief, to succeed on their fraud theory Plaintiffs must establish a direct and proximate causal connection between NorthWestern's financials and the use of those financials and the release of Clark Fork as obligor on the QUIPS in the Going Flat Transaction. "But for" causation is simply insufficient as a matter of law.

Significantly, Plaintiffs do not even address, much less attempt to rebut or distinguish, the case law cited by NorthWestern on the issue of proximate cause which demonstrates that this case is ripe for summary judgment. *See, e.g., McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425 (3d Cir. 2007); *Maxwell v. KPMG, LLP*, No. 03 C 3524, 2007 U.S. Dist. LEXIS 52647, at *12-13 (N.D. Ill. July 19, 2007). Instead Plaintiffs ignore the entire concept of proximate cause.

First, Plaintiffs boldly state that they need only show that NorthWestern's financials were false and that prior to the Going Flat Transaction NorthWestern was experiencing a cash flow crisis. (Opp. Br. at 25.) Of course Plaintiffs cite no case support for this assertion – there is none. Furthermore, whether or not NorthWestern was facing a cash flow problem had nothing to do with the QUIPS. Indeed, under the Indenture, neither the QUIPS holders nor the Indenture Trustee had any right or ability to prevent the assumption of the QUIPS because of the financial condition of the assuming entity, unless the condition of the assuming entity was so dire that there would be an "immediate" event of default after the transfer of the obligation. Therefore, whether the QUIPS would have been better off had the obligations (and the utility assets) remained with Clark Fork, rather than being transferred to NorthWestern, is immaterial. It is undisputed that NorthWestern did not immediately default on the QUIPS and therefore the so-called cash flow crisis is irrelevant.

Next, apparently realizing that the concept of causation, if not proximate cause, cannot be dispensed with entirely, Plaintiffs assert that there were "multiple causal links" between the financials and the Going Flat Transaction. What then follows is a virtually incomprehensible series of theories, none of which bear any relationship to proximate causation and all of which are at best an attempt to establish that, "but for" the false financials, NorthWestern could not have done the Going Flat Transaction.

Thus, Plaintiffs argue that "but for" the financials, the QUIPS holders may have raised objections to the Going Flat Transaction. This rank speculation is not only without evidentiary support, it ignores the fact that the QUIPS holders had no ability to object to or "impede" the transaction. *Magten Asset Mgmt. Corp. v. Law Debenture Trust Co. of N.Y.*, 313 B.R. at 600. Plaintiffs continue to argue that "but for" the financials the MPSC would have intervened. Again, this is rank speculation based entirely on Marcus, the "expert" with no

experience or knowledge about the MPSC.[5]

Plaintiffs' present yet another new theory, unveiled on page 30 of their brief, arguing that "but for" the financials, NorthWestern would have gone bankrupt before it would have been able to complete the Going Flat Transaction. (Opp. Br. at 30-31.) Plaintiffs' foundation for this "theory" is completely contrived. While Plaintiffs refer to Marcus's report in support of their latest theory, nowhere in his report does Marcus state that NorthWestern would have gone bankrupt absent the restated financials and thus would have been unable to complete the Going Flat Transaction. Marcus was even clearer in his deposition where he plainly stated "I have not come up with an opinion as to when the company would have declared bankruptcy." (Pizzurro Aff. Ex. 1 at 94.)[6] Marcus simply did not examine or make a determination as to whether NorthWestern, absent the restated financials, would have gone bankrupt before it would have been able to complete the Going Flat Transaction. Neither his report nor his testimony provide any support for Plaintiffs' new theory.[7]

Finally, Plaintiffs contend, somewhat bizarrely, that the fact that the Going Flat Transaction was beneficial to NorthWestern and its shareholders is "further confirmation of its linkage with the fraudulent scheme." (Opp. Br. at 36.) Plaintiffs do not attempt to explain why the fact that NorthWestern decided to use assets that it purchased and paid for to "more directly

---

[5] For a more detailed discussion of the deficiencies of Marcus' opinion see NorthWestern's Motion in Limine to Exclude the Expert Reports and Testimony of Paul A. Marcus and Robert W. Berliner (Dkt. No. 04-1494, #267).
[6] References in the form "Pizzurro Aff." are to the Affidavit of Joseph D. Pizzurro sworn to January 14, 2008 and submitted in support of this motion.
[7] Plaintiffs make two other assertions in the context of their "linkage" theories, although neither seems to have anything to do with causation. First, Plaintiffs mention a case against Clark Fork in a Montana state court which attempted to enjoin the Going Flat Transaction. (Opp. Br. at 27.) This case had nothing to do with the QUIPS at all, and indeed nothing to do with NorthWestern's financial statements. Plaintiffs also point to the fact that the Federal Energy Regulatory Commission ("FERC") approved the Going Flat Transaction based on financial information provided by NorthWestern as of June 30, 2002 which Plaintiffs allege were "necessarily infected" by the fraud in the company's 10-Q. (Opp. Br. at 27-28.) But the financial information provided to FERC was materially different from that provided to the SEC because it was prepared in strict accordance with FERC's guidelines. 18 C.F.R. § 34.4. For that reason those financials did not contain any information relating to the non-utility businesses, Expanets and Blue Dot, and were not misstated. Even Plaintiffs do not contend that there was any fraud in connection with the FERC approval, and there is no evidence to support such an assertion even if it was made.

support the obligations of the Corporation," is evidence of some kind of fraud. The assertion makes as much sense as Plaintiffs' argument that NorthWestern's continued payment of the QUIPS was actually part and parcel of the imagined fraudulent scheme. But neither the fact that the Going Flat Transaction was to the benefit of NorthWestern's shareholders[8], nor the fact that NorthWestern paid the QUIPS holders what they were due can support Plaintiffs' contrived theory of a fraudulent scheme.

All of Plaintiffs' causation arguments boil down to nothing more than an assertion that the Going Flat Transaction was a collateral consequence of NorthWestern's financials. Their theory is perfectly summed up on page 24 of their brief where they state that the question is "whether NorthWestern engaged in a fraudulent scheme that enabled it to carry out the Transfer." But that formulation, which itself is unsupported by any evidence[9], does not rise to the level of proximate cause. It is nothing more than the "but for" causation theory rejected by the courts in both the *McCabe* and *Maxwell* decisions. Summary judgment was granted in these cases on analogous facts and for precisely the reason that the plaintiffs there could not establish proximate cause. Plaintiffs here can fare no better.

---

[8] As the Delaware Chancery Court recently pointed out in a decision refusing to recognize "deepening insolvency" as a cause of action under Delaware law: "So long as directors are respectful of the corporation's obligation to honor the legal rights of its creditors, they should be free to pursue in good faith profit for the corporation's equityholders." *Trenwick America Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 174-75 (Del. Ch. 2006). Thus, as long as the QUIPS holders' contract was adhered to, and it was, they have no complaint. And Plaintiffs most certainly cannot complain that the Going Flat Transaction was unfair because it was more beneficial for NorthWestern's shareholders.

[9] In the absence of any facts supporting Plaintiffs' theory that the Going Flat Transaction would not have taken place if NorthWestern's true financial condition was known, Plaintiffs are not entitled to infer the causal link they cannot prove by relying on Kip Orme's invocation of the Fifth Amendment. (*See* Opp. Br. at 26-27); *United States v. Local 560 of the Int'l Bhd. of Teamsters*, 780 F.2d 267, 292 (3d Cir. 1985).

V

**Plaintiffs' Unjust Enrichment Claim Fails As A Matter of Law**

Plaintiffs argue that the Indenture "does not necessarily preclude" their claim for unjust enrichment, citing *Cantor Fitzgerald, L.P. v. Cantor*, No. C.A. 16297, 1998 WL 326686, at *6 (Del. Ch. June 16, 1998). (Opp. Br. at 38 n.40.) They are wrong.

*Cantor Fitzgerald* involved claims against three groups of defendants, one of which had a contract with the plaintiff. The court dismissed the unjust enrichment claim against the defendant with the contract but sustained claims against the other two defendants because those claims were not governed by an express contract. *Id.* The court refused to consider whether the defendant with the contract owed an implied duty of loyalty to the plaintiff because the subject matter governing the issue was already addressed by the contract in the case. *Id.*

In this matter, Plaintiffs' contract is the Indenture and the claims they assert arise directly under that contract. Under the Indenture the QUIPS were junior, unsecured, subordinate to all senior debt and subject to deferral of interest payments for up to five years. Not one of the obligations under the Indenture was breached as a result of the Going Flat Transaction.

Plaintiffs argue that NorthWestern's bankruptcy exposed them to a "disproportionate risk of injury" because the Going Flat Transaction changed their status as the most junior creditors of Clark Fork to the most junior creditors of NorthWestern. (Opp. Br. at 32 n.33.) But that is all Plaintiffs were entitled to under the terms of the Indenture.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that NorthWestern's motion for summary judgment be granted.

Dated: Wilmington, Delaware
January 14, 2008

GREENBERG TRAURIG LLP

By: _____
Victoria W. Counihan (No. 3488)
Dennis A. Meloro (No. 4435)
The Nemours Building
1007 North Orange Street
Wilmington, DE 19801
Telephone: (302) 661-7000
Facsimile: (302) 661-7360

-and-

CURTIS, MALLET-PREVOST, COLT &
  MOSLE LLP
Joseph D. Pizzurro
Nancy E. Delaney
Myles K. Bartley
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

Attorneys for NorthWestern Corporation

4212096v5