IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 05-499-JJF |
| | : | |
| MIKE J. HANSON and ERNIE J. KINDT, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPLY IN FURTHER SUPPORT OF RENEWED MOTION OF MAGTEN ASSET MANAGEMENT CORPORATION AND THE LAW DEBENTURE TRUST COMPANY OF NEW YORK FOR LEAVE TO AMEND THE COMPLAINT

Dale R. Dubé (DE No. 2863)
David W. Carickhoff (DE No. 3715)
**BLANK ROME LLP**
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

Bonnie Steingart
Gary L. Kaplan
John W. Brewer
**FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

*Counsel for Magten Asset Management Corporation*

Dated January 14, 2008

Kathleen M. Miller (DE No. 2898)
**SMITH, KATZENSTEIN & FURLOW, LLP**
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE 19899
Telephone: (302) 652-8400
Facsimile: (302) 652-8405

John V. Snellings
Amanda Darwin
**NIXON PEABODY LLP**
100 Summer Street
Boston, MA 02110
Telephone: (617) 345-1201
Facsimile: (866) 947-1732

*Counsel for Law Debenture Trust Company of New York, as Indenture Trustee*

120087.01600/40173006v.1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................................1

ARGUMENT ................................................................................................................................3

    I.      THE MOTION IS TIMELY ...............................................................................4

    II.     THE PROPOSED AMENDMENT IS NOT FUTILE............................................7

          A.     The Indenture Trustee Unquestionably Has Standing .................................7

          B.     The Indenture Trustee's Claims Are Not Time-Barred................................8

          C.     Defendants' Position On Rule 17(a) Is Self-Contradictory........................12

    III.    THE DEFENDANTS' CLAIMS OF PREJUDICE ARE BASELESS.................14

CONCLUSION.............................................................................................................................18

i

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page**

American Pipe & Constr. Co. v. Utah
    415 U.S. 538 (1974)..............................................................................................................11

Anadarko Petroleum Corp. v. Panhandle E. Corp.
    545 A.2d 1171 (Del. 1988) ....................................................................................................8

Arthur v. Guerdon Industries, Inc.
    1990 U.S. Dist. LEXIS 14042 (D. Del. October 18, 1990) ................................................11

Arthur v. Maersk, Inc.
    434 F.3d 196 (3d Cir. 2006).................................................................................................9

Boarhead Farm Agreement Group v. Advanced Envtl. Tech. Corp.
    381 F. Supp. 2d 427 (E.D. Pa. 2005) ..................................................................................12

Catholic Social Serv., Inc. v. INS
    232 F.3d 1139 (9th Cir. 2000) .............................................................................................11

Chambliss v. Coca-Cola Bottling Corp.
    274 F. Supp. 401 (E.D. Tenn. 1967)....................................................................................11

Collins v. Wal-Mart, Inc.
    245 F.R.D. 503 (D. Kan. 2007).......................................................................................7, 12

Edgeworth v. First Nat. Bank of Chicago
    677 F. Supp. 982 (S.D. Ind. 1988) ......................................................................................13

Funnelcap, Inc. v. Orion Industries, Inc.
    392 F. Supp. 938 (D. Del. 1975)............................................................................................5

Garr v. Clayville
    71 F.R.D. 553 (D. Del 1976) ...............................................................................................10

Goodman v. PraxAir, Inc.
    494 F.3d 458 (4th Cir. 2007) ...............................................................................................11

Korweck v. Hunt
    827 F.2d 874 (2d Cir. 1987).................................................................................................11

Matthies v. Seymour Mfg. Co.
270 F. 2d 365 (2d Cir. 1959)...............................................................................................13

MCI Worldcom Network Servs. v. Graphnet, Inc.
2005 U.S. Dist. LEXIS 40835 (D.N.J. May 10, 2005)........................................................13

In re Norplant Contraceptive Products Liability Litigation
898 F. Supp. 429 (E.D. Tex. 1995)......................................................................................10

North American Catholic Educational Programming Foundation, Inc. v. Gheewalla
930 A.2d 92 (Del. 2007) ........................................................................................................7

Olech v. Village of Willowbrook
138 F. Supp. 2d 1036 (N.D. Ill. 2000)...............................................................................6, 10

In re Pittsburgh & L.E.R. Co. Securities and Antitrust Litigation
543 F.2d 1058 (3d Cir. 1976)...............................................................................................13

Product Resources Group, L.L.C. v. NCT Group, Inc.
863 A.2d 772 (Del. Ch. Ct. 2004)..........................................................................................7

Roselink Investors, L.L.C. v. Shenkman
386 F. Supp. 2d 209 (S.D.N.Y. 2004)....................................................................................8

RSL COM Primecall, Inc. v. Beckoff (In re RSL COM Primecall, Inc.)
No. 0111457, 2003 Bankr. LEXIS 1635 (Bankr. S.D.N.Y. Dec 11, 2003).........................8

Scott Acquisition Corp. v. Morris (In re Scott Acquisition Corp.)
344 B.R. 283 (Bankr. D. Del. 2006) ......................................................................................8

Shane v. Fauver
213 F.3d 113 (3d Cir. 2000)...................................................................................................7

Smith v. Flagship Intern.
609 F. Supp. 58 (N.D. Tex. 1985) .......................................................................................11

State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C.,
246 F.R.D. 143 (E.D.N.Y. 2007)............................................................................................5

Warpar Mfg. Corp. v. Ashland Oil, Inc.
102 F.R.D. 749 (N.D. Ohio 1983) .......................................................................................10

Williams v. U.S.
405 F.2d 234 (5th Cir. 1968) .............................................................................................6, 10

Yang v. Odom
    392 F.3d 97 (3d Cir. 2004)..................................................................................................11

Yorden v. Flaste
    374 F. Supp. 516 (D. Del. 1974)....................................................................................6, 10

**Rules**

Fed. R. Civ. P. 15(a) .............................................................................................................7

Fed. R. Civ. P. 15(c) ...........................................................................................................12

Fed. R. Civ. P. 15(c)(2)..........................................................................................................9

Fed. R. Civ. P. 15(c)(3)..........................................................................................................9

Fed. R. Civ. P. 17........................................................................................................... 12-13

1966 Advisory Committee Note to Fed R. Civ. P. 15 ..................................................................12

**Statute**

Mont. Code Ann. § 35-8-1104...............................................................................................4

**Other Authorities**

6 WRIGHT, MILLER AND KANE,
    FEDERAL PRACTICE AND PROCEDURE, CIVIL 2D § 1501 (2007)......................................6, 9

Plaintiff Magten Asset Management Corporation ("Magten") and Proposed Co-Plaintiff Law Debenture Trust Company of New York, as Indenture Trustee (the "Indenture Trustee" – together with Magten the "Movants"), respectfully submit this Reply in further support of their Renewed Motion for Leave to Amend the Complaint (the "Motion").[1]

## PRELIMINARY STATEMENT

Hanson and Kindt's opposition ("Opp.") to the Motion is long on rhetoric, but short on relevant legal authority and utterly devoid of any claim to equity. It primarily claims that the Motion is untimely and reflects "undue delay." But this is wholly disingenuous. It is undisputed that:

- Hanson and Kindt first notified Magten on January 29, 2007 that they would seek to relitigate the issue resolved adversely to them by Judge Cebull over two years earlier – namely, whether the fact that Magten purchased its QUIPS subsequent to the Transfer deprived it of standing to sue for breach of fiduciary duty. They then, on February 1, 2007, filed a Motion for Leave to File a Dispositive Motion immediately, contrary to the provisions of the Scheduling Order then in place. D.I. 141 (the "H&K Motion for Leave").

- Magten and the Indenture Trustee brought their original Joint Motion to Amend/Correct the Complaint and/or, in the Alternative, for Extension of Time to Seek Leave to Amend the Complaint on February 2, 2007, only four days after that notification and one day after the H&K Motion to Leave, explaining that the proposed amendment and the addition of the Indenture Trustee as co-plaintiff would moot the issues Hanson and Kindt

---

[1]    Other capitalized phrases are used herein with the same meaning set forth in Movants' opening brief in support of the Motion, unless otherwise specified.

1

sought to raise, even if they were deemed free to relitigate Judge Cebull's prior adverse

decision. February 2 was the deadline set in the Scheduling Order for motions to amend

– a deadline Hanson and Kindt refused to agree to extend despite the sudden change of

circumstances caused by their announcement that they intended to seek to relitigate Judge

Cebull's decision. D.I. 142 (the "Original Motion").

- On June 8, 2007, this Court entered an order denying the H&K Motion for Leave,
  holding that the issues Hanson and Kindt sought to raise ahead of schedule could and
  should be addressed in the context of dispositive motions. Since the Original Motion had
  been filed as a protective response to the Motion for Leave, and raised issues best
  determined in connection with arguments raised by Hanson and Kindt that the Court had
  concluded were premature, the Court determined in the June 8 Order that it did not wish
  to adjudicate the Original Motion at that time, and thus denied it with leave to renew.
  D.I. 238 (the "June 8 Order").

- On November 30, 2007, Hanson and Kindt filed a Motion for Summary Judgment on the
  deadline set by the Scheduling Order (as it had been subsequently slightly modified),
  which raised, as its Point I, the attack on Magten's standing previously rejected by Judge
  Cebull which had been the subject of the unsuccessful Motion for Leave. D.I. 273 (the
  "H&K Summary Judgment Motion").

- On the same day, Magten and the Indenture Trustee renewed the Original Motion, as
  directed by the Court in the June 8 Order. D.I. 278.

Given all of this, Hanson and Kindt's complaints about timing are preposterous. Magten and the

Indenture Trustee responded to the initial need to file the Original Motion (a need caused by

defendants' own timing and delay tactics) extraordinarily quickly, indeed, on an emergency

2

basis. They then renewed their arguments in the present Motion precisely as directed by the Court in the June 8 Order.

Hanson and Kindt's baseless arguments of futility have been fully addressed in the prior briefing, and their newly-crafted claims of supposed prejudice are likewise unconvincing. The Original Motion was filed before Hanson and Kindt had sought to take any discovery. It was pending when they served their document requests, interrogatories, and deposition notices. Fact discovery was still ongoing when the June 8 Order indicated that the Original Motion was denied with leave to renew, with such renewal to occur after discovery had been completed. They were at all times fully aware of the issues presented by the Original Motion and thus the present Motion, and able to take them into account in how they chose to conduct discovery. Magten and the Indenture Trustee did not and do not believe that the relief sought in the Original Motion and the present Motion would make any different or additional discovery appropriate, but Hanson and Kindt were free to take a different view and frame their discovery accordingly. That they did not do so is, at worst, a purely self-inflicted wound.

## ARGUMENT

Before addressing the substance of Hanson and Kindt's opposition to the Motion, it may be useful to emphasize that it remains a protective response to a limited number of defenses raised by Hanson and Kindt based on the timing of Magten's purchase of QUIPS. These issues were: (a) raised by them in their original summary judgment motion in the District of Montana, which Judge Cebull denied in all respects; (b) sought to be raised again in their Motion for Leave, which this Court denied in the June 8 Order; and (c) finally raised again in their now-pending summary judgment motion. Magten has explained in its opposition to that summary judgment motion [D.I. 298 at 5] why those defenses should be rejected as a matter of law (both

3

because of the preclusive effect of Judge Cebull's prior decision and, alternatively, on the merits)

and the case should proceed to trial, with Magten as sole plaintiff and on the claims set forth in

the existing complaint.[2] If the Court denies Hanson and Kindt's summary judgment motion in all

respects, there will be no need for the relief requested in this Motion.[3] Alternatively, the Court

might determine, for example, that amendment ought to be permitted so that Magten may plead

the breach of fiduciary duty claims alternatively as derivative as well as direct claims but that

Magten has standing to assert the derivative claims and there is thus no need for the Indenture

Trustee to join as a co-plaintiff. Magten and the Indenture Trustee will abide by the Court's

directions in this regard.

## I.    THE MOTION IS TIMELY

Hanson and Kindt complain that the Motion was filed "on the eve of trial," but totally

ignore this Court's June 8 Order. The Motion was timely filed because the Original Motion was

timely filed, and the Court then denied it without prejudice as premature, specifically inviting

renewal at the appropriate time. In denying defendants' Motion for Leave, the Court held:

> [T]he parties' focus should remain on the completion of discovery
> . . . therefore, the Court will hear all case dispositive arguments in
> the manner set forth in the Scheduling Order and not before. For
> these same reasons, the Court will not, at this juncture, entertain
> Plaintiff's Motion to Amend the Complaint or Defendants' Motion

---

2    Certain of the arguments Hanson and Kindt raised in the Motion for Leave and their current summary
judgment motion, such as the contention that these claims must be brought derivatively rather than directly
and the alleged relevance of Mont. Code Ann. § 35-8-1104, were conspicuously absent from the briefs they
filed with Judge Cebull and were also omitted from their answer to the complaint. D.I. 278 at fn. 2. To this
day, their counsel have never offered any explanation for this consistent failure to timely raise what are
now alleged to be dispositive arguments.

3    In addition to the "standing" issue raised in section I of their brief, Hanson and Kindt also seek to
artificially cap the amount of compensatory damages they will be liable for on the basis of the timing of
Magten's purchases.  D.I. 274 at § III.  This effort fails for the reasons Magten has already briefed.  D.I.
298 at § III(A)-(B).  However, to the extent the Court believes that granting the present Motion would
obviate any dispute about that issue, it would be appropriate to do so.

4

> to Strike, and therefore, both of these Motions will be denied with
> leave to renew.  D.I. 238 at 3.[4]

The only sensible reading of the June 8 Order is that the Original Motion was to be renewed at the same time defendants were to be permitted to file the dispositive motion containing the arguments the Original Motion addressed.  Movants have done so.[5]  It is not movants, but the Court, that determined that the appropriate time to address these issues would be now rather than early 2007 when the Original Motion was filed and fully briefed.

There can be no possible contention that there was "undue delay" in the filing of the Original Motion – even if "delay" could be a basis for denying a motion filed on or prior to a previously-ordered deadline for motions to amend (a dubious proposition for which defendants cite no authority), the Original Motion was filed only four days after Hanson and Kindt first indicated that they would seek to relitigate the issues they had comprehensively lost when Judge Cebull rejected their earlier motions in 2005.[6]  See Funnelcap, Inc. v. Orion Industries, Inc., 392 F. Supp. 938, 941-42 (D. Del. 1975) (motion to amend held timely when delay between filing of original complaint and attempt to amend was largely due to defendant's litigation tactics); State Farm Mut. Auto. Ins. Co. v. CPT Medical Services, P.C., 246 F.R.D. 143, 147 (E.D.N.Y. 2007) (delay of two-and-a-half years not a bar to amending complaint because "[t]o the extent some of the defendants' actions impacted the deadline for amending the complaint, the Court regards the resulting delay as reasonable.").  If there is any "undue" delay here, it was caused by defendants'

---

[4]    Defendants have not renewed their Motion to Strike.

[5]    In the very papers by which they oppose Plaintiffs' renewed Motion, Hanson and Kindt raise the technical argument that the Motion fails to comply with Local Rule 7.1.1.  As made clear by the certification filed with the Original Motion, as well as the arguments posed in their opposition papers to the renewed Motion, Hanson and Kindt have continually opposed any amendment that would add the Indenture Trustee as a plaintiff in this case.  The futility of further efforts to "meet and confer" aside, the renewed Motion was filed pursuant to this Court's June 8 Order that expressly permits Plaintiffs to renew their motion for leave to amend.  D.I. 238.

[6]    The entire point of establishing fixed deadlines is, of course, to avoid the need for guesswork as to how late to bring a particular motion will be too late.

5

two-year wait before seeking to revisit the issues they had litigated and lost before Judge Cebull, not to mention raising new supporting arguments they had never bothered to include in their previous briefs.[7]

Nor can defendants claim the Motion is untimely because of the August 3, 2007 deadline in the Scheduling Order for adding new parties. D.I. 121. The Original Motion was filed a full six months before that deadline, and the whole point of the June 8 Order was to put the issue on hold by denying with leave to renew: a disposition that would make no sense unless the renewed motion would relate back to the Original Motion for purposes of determining its timeliness. There is simply no plausible reading of the June 8 Order that would require Magten and the Indenture Trustee to have renewed the Original Motion in August while barring defendants from filing the dispositive motion the amendment sought to moot until November. Moreover, motions to add additional plaintiffs are routinely categorized as Rule 15 motions to amend. See 6 WRIGHT, MILLER AND KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1501 (2007); see also Williams v. U.S., 405 F.2d 234, 236 (5th Cir. 1968); Yorden v. Flaste, 374 F.Supp. 516, 518-19 (D. Del. 1974); Olech v. Village of Willowbrook, 138 F.Supp.2d 1036, 1044 (N.D. Ill. 2000). Hanson and Kindt undoubtedly considered Rule 15 to be the governing rule when they refused even a modest extension of the February 2 deadline on its eve – a position totally inconsistent with their apparent new-found position that that February deadline had nothing to do with the issues presented by the Original Motion.

---

[7]    For example, at what point prior to January 29, 2007, do defendants contend Magten should have sought to amend the complaint to add a derivative claim when defendants had never (not in their 12(b)(6) motion, not in their first summary judgment motion, and not in their answer) contended that the claim should be derivative rather than direct? To even pose the question is to underscore the ridiculousness of defendants' contentions of undue delay.

6

II.     **THE PROPOSED AMENDMENT IS NOT FUTILE**

Leave to amend of course "shall be freely granted when justice so requires." Fed. R. Civ. P. 15(a) (2007). See Collins v. Wal-Mart, Inc., 245 F.R.D. 503, 512 (D. Kan. 2007) ("Furthermore, the decision whether to grant leave to amend is within the Court's sound discretion. In exercising its discretion, the Court must be mindful that Rule 15 was promulgated to provide the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."); Shane v. Fauver, 213 F.3d 113, 115-116 (3d Cir. 2000) (noting that in assessing futility the District Court should apply the same standard of legal sufficiency that applies under Rule 12(b)(6), and if a claim is vulnerable to dismissal, "leave to amend generally must be granted unless the amendment would not cure the deficiency"). Here, defendants' contentions of futility seem to consist of arguments that the Indenture Trustee itself lacks standing to sue Hanson and Kindt and that the Indenture Trustee is barred from joining as a co-plaintiff because of the statute of limitations. Neither argument has any merit.

A.     **The Indenture Trustee Unquestionably Has Standing**

There is no dispute that the Indenture Trustee is successor trustee of the Trust, authorized to sue on behalf of the Trust, and that the Trust was a creditor of Clark Fork as of the date of the Transfer, which was also the date of Hanson and Kindt's breaches of fiduciary duty. The claim that only a "member" (i.e. equityholder) of an LLC can serve as a derivative plaintiff is contrary to well-established law, holding that creditors have standing to sue in that capacity when a company is insolvent, as Clark Fork is. See D.I. 298 at 8-9. Hanson and Kindt themselves cite with approval some of the Delaware cases so holding in their own summary judgment brief. D.I. 274 at 25-26, citing Product Resources Group, L.L.C. v. NCT Group, Inc., 863 A.2d 772, 792 (Del. Ch. Ct. 2004); North American Catholic Educational Programming Foundation, Inc. v. Gheewalla, 930 A.2d 92, 103 (Del. 2007).

7

The claim that only a "member" would have standing to bring a derivative suit is particularly disingenuous here. Clark Fork's only "member" was and is NorthWestern, which directed and benefited from Hanson and Kindt's breaches of fiduciary duty. Indeed, NorthWestern ensured that its own law firm (Paul Hastings) would also represent Clark Fork in connection with the Transfer, thus preventing any independent advice or analysis regarding the disastrous consequences of the Transfer for Clark Fork and its stakeholders. The argument that NorthWestern is the only party that could bring suit complaining about Hanson and Kindt's breaches of fiduciary duty (and the harm they did to Clark Fork and its other stakeholders) is nothing more than an argument that no one other than the fox may bring suit to recover for injury to the henhouse. It is for this very reason that standing cannot be limited to equityholders in the case of insolvent wholly-owned subsidiaries that have been looted by their corporate parents. See, e.g., Scott Acquisition Corp. v. Morris (In re Scott Acquisition Corp.), 344 B.R. 283, 289-90 (Bankr. D. Del. 2006); Roselink Investors, L.L.C. v. Shenkman, 386 F. Supp. 2d 209, 215 (S.D.N.Y. 2004) RSL COM Primecall, Inc. v. Beckoff (In re RSL COM Primecall, Inc.), No. 0111457, 2003 Bankr. LEXIS 1635, at *44 (Bankr. S.D.N.Y. Dec. 11, 2003) (there is "no basis for the principle ... that the directors of an insolvent subsidiary can, with impunity, permit it to be plundered for the benefit of its parent corporation").[8] Accordingly, the Indenture Trustee unquestionably has standing to bring both direct and derivative claims.

### B.     The Indenture Trustee's Claims Are Not Time-Barred

The argument that the limitations period has run against the Indenture Trustee is meritless, because the amendment to add the Indenture Trustee relates back to the original filing

---

[8]     Scott and similar cases recognize that the so-called Anadarko principle (see Anadarko Petroleum Corp. v. Panhandle E. Corp., 545 A.2d 1171 (Del. 1988)), i.e. that the directors and officers of a 100%-owned subsidiary generally do not have any direct duties to the subsidiary and its stakeholders distinct from their duties to the parent company, does not apply when the subsidiary is insolvent or in the "zone of insolvency."

8

of the action under Rule 15(c)(2). Defendants cannot credibly deny that the "claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," which is all the rule requires for relation back. Defendants try to confuse the issue by bringing up cases (such as Arthur v. Maersk, Inc., 434 F.3d 196, (3d Cir. 2006)) applying the language of Rule 15(c)(3), which focuses on whether there was "a mistake concerning the identity of the proper party." But that subsection of the rule applies by its express terms only to amendments that seek to add an additional defendant (i.e., "but for a mistake concerning the identity of the proper party, the action would have been brought against the party"), as was the case in Arthur. It is well established that this additional "mistake" test is inapplicable to amendments which seek to add an additional plaintiff – not only because of the text of the rule but because the situations are obviously dissimilar. There is a world of difference between a party which had not previously been named being pulled into a lawsuit for the first time after the limitations period has passed and a party which has been actively defending a timely-filed lawsuit simply adjusting to the presence of an additional plaintiff, especially where, as here, the additional plaintiff is seeking the same measure of damages based on the same evidentiary record concerning the same underlying historical events.

As the authoritative Wright and Miller treatise puts it:

> As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations defense. This seems particularly sound inasmuch as the courts will require the scope of the amended pleading to stay within the ambit of the conduct, transaction, or occurrence set forth in the original pleading. 6 WRIGHT, MILLER AND KANE at § 1501.

Here, the proposed amendment is entirely within the "ambit of the conduct, transaction, or occurrence set forth in the original pleading" and the alleged passing of the limitations period is

9

thus wholly irrelevant. See also, e.g., Williams, 405 F.2d at 235, 239 (mother of injured minor

permitted to amend complaint to appear as plaintiff for recovery of loss of services); Yorden, 374

F.Supp. at 517, 521 (guardian of decedent's legally incompetent widow allowed to replace

decedent's alleged common-law wife as plaintiff in wrongful death action); In re Norplant

Contraceptive Products Liability Litigation, 898 F.Supp. 429, 432 (E.D. Tex. 1995) ("[i]n the

case at bar, because the additional plaintiffs complain of the same side effects as those listed in

the original complaint, granting leave to amend in order to add these plaintiffs will cause neither

undue delay nor undue prejudice, and the amendment is certainly germane to the original

complaint."); Olech, 138 F.Supp.2d at 1038, 1045 (plaintiff permitted to add executor of

husband's estate as plaintiff where defendant's conduct had been directed at both plaintiff and

her husband).[9]

Furthermore, even the claim that the Indenture Trustee's previous non-involvement in

this action does not count as a "mistake" is highly disingenuous. What did the Indenture Trustee

do? What should it have done? The Indenture Trustee actively monitored the litigation against

Hanson and Kindt (which was initially proceeding in a different forum than the litigation against

NorthWestern), and was aware that Judge Cebull had held that Magten was entitled, as a third

---

[9]    Hanson and Kindt's attempt (Opp. at 13-16) to distinguish the cases originally cited by Magten in support
of its claim that the addition of the Indenture Trustee, whether considered under Rule 15(c) or Rule 17(a),
would relate back to the initial filing of the complaint and no statute of limitations issue would be present –
Garr v. Clayville, 71 F.R.D. 553 (D. Del 1976) and Warpar Mfg. Corp. v. Ashland Oil, Inc., 102 F.R.D.
749 (N.D. Ohio 1983), respectively – fails. See D.I. 298 at 7. Hanson and Kindt contend that the instant
case is distinguishable from Garr and Warpar because these were cases in which a real party in interest was
substituted for someone who had no interest, whereas in the instant case Magten is in fact a real party in
interest. Hanson and Kindt cite no authority for their contention that "[t]he real party in interest rule only
becomes a tool for a subsequent plaintiff when the original plaintiff is dismissed after a court has
determined that the original plaintiff is not a real-party-in-interest" (Opp. at 15) other than the text of Rule
17 itself. However, given that the Rule explicitly states that the real party in interest may be added to the
litigation through "commencement of the action … or joinder, or substitution" (emphasis added), Hanson
and Kindt's unsupported claim that Rule 17 only applies when the original plaintiff is dismissed for lack of
interest is mystifying at best. Furthermore, as noted in Movants' opening brief, the judge in Garr indicated
that relation back is in fact proper when – as in the instant case – "the plaintiff sought to be added is closely
identified with the original plaintiff and seeks to assert a claim … close to that of the original plaintiff."
D.I. 278 at 7.

10

party beneficiary, to assert all of the trustee's (i.e. the Indenture Trustee's) rights on behalf of the

Trust against Hanson and Kindt. There was no need to intervene at that time; it would have

added additional expense and complication (not least for defendants) without any obvious

corresponding benefit.[10] To the extent the Indenture Trustee assumed that Hanson and Kindt

would treat Judge Cebull's ruling as binding, rather than seek to relitigate it years later, that is

certainly at least as forgivable a "mistake" as the more common situation where, for example, a

plaintiff sues the wrong defendant because of a misunderstanding as to which of several

affiliated entities had played which role and thus was appropriately charged with liability. See,

e.g., Goodman v. PraxAir, Inc., 494 F.3d 458, 475 (4th Cir. 2007) (holding that plaintiff's

mistake in suing parent company, rather than its subsidiary, did not preclude relation-back of

properly amended complaint under 15(c)); Arthur v. Guerdon Industries, Inc., 1990 U.S. Dist.

---

[10]    See American Pipe & Constr. Co. v. Utah, 415 U.S. 538 (1974) (holding that absent parties whose interests are apparently being represented in pending litigation by others (in that case, a would-be representative plaintiff in a class action) can rely on a tolling of any limitations period unless and until a court rules that the party in the pending litigation is not entitled to represent their rights); see also Yang v. Odom, 392 F.3d 97, 99 (3d Cir. 2004) ("American Pipe tolling applies to the filing of a new class action where certification was denied in the prior suit based on the lead plaintiffs' deficiencies as class representatives"). By contrast – selectively quoted rhetoric aside – the cases cited by Hanson and Kindt in support of their claim that allowing the Indenture Trustee to join this action opens the door for "'a potentially endless succession'" of litigation against the defendants" (Opp. at 12) are entirely inapposite. Korweck v. Hunt merely stands for the proposition that the tolling doctrine enunciated in American Pipe does not apply to permit a plaintiff to file class claims identical to those raised in a previously filed action that was denied class certification because of overwhelming manageability difficulties – not that the tolling doctrine would not apply to permit an individual action. 827 F.2d 874, 879 (2d Cir. 1987); see also Smith v. Flagship Intern., 609 F.Supp. 58, 64-65 (N.D. Tex. 1985) (filing of original class action did not toll the statute for subsequent when original class action was dismissed in part for numerosity and typicality problems, but did toll statute for individual action); the court in Catholic Social Serv., Inc. v. INS concluded (like American Pipe) that the pendency of a class action tolled the claims of class members and would-be class members brought in a second class action, as these claims were within the scope of those claims asserted in the earlier action. 232 F.3d 1139, 1149 (9th Cir. 2000); and finally, Chambliss v. Coca-Cola Bottling Corp. held that commencement of an action within the limitations periods provided by the relevant federal securities acts would not serve to toll the statute of limitations for an action filed outside the statutory periods because the original action failed for lack of in personam jurisdiction, and the defendant could have been properly sued at any time in its home district. 274 F. Supp. 401, 411 (E.D. Tenn. 1967). Clearly, none of these rationales would apply to prevent amendment in the instant case: there has been no definitive determination (or indeed any determination) in this action that either Magten or the Indenture Trustee is not an appropriate party; the claims asserted by the Indenture Trustee are firmly within the scope of the action as presently instituted; and the underlying action is not jurisdictionally defective.

11

LEXIS 14042 at *6-7 (D. Del. October 18, 1990) (mem. op.) (mistake in failing to name subsidiaries in prior complaints did not preclude complaint adding subsidiaries as defendants from relating back under 15(c)); Collins, 245 F.R.D. at 510 (failure to name proper corporate entity in complaint did not preclude properly amended complaint from relating back).

Hanson and Kindt, for their part, failed to give any hint whatsoever that they would not abide by Judge Cebull's ruling until well after the expiration of what they now claim to have been the limitations period. Whether this conduct was tactical or merely coincidental, neither possibility makes the belated invocation of that limitations period after changing their litigation position any more equitable.[11]

### C.   **Defendants' Position On Rule 17(a) Is Self-Contradictory**

The addition of new plaintiffs may be governed by Rule 17(a) as well as Rule 15(c). Indeed, the relation-back policy of 15(c) is further strengthened by the availability of 17(a), which is intended to "avoid forfeitures of just claims" by forbidding dismissal on technical grounds without a reasonable opportunity to substitute the proper plaintiff. 1966 Advisory Committee Note to Fed. R. Civ. P. 15. Accordingly, the addition of plaintiffs under Rule 17(a) to remove any doubt that the action is proceeding in the name of the "real party in interest" necessarily relates back for limitations purposes. See Boarhead Farm Agreement Group v. Advanced Envtl. Tech. Corp., 381 F. Supp. 2d 427, 431-33 (E.D. Pa. 2005) (associational

---

[11]   Indeed, the primary reason the case against Hanson and Kindt is approaching trial more than five years after the underlying events is because of their own history of persistent stonewalling. After Judge Cebull denied both their first summary judgment motion and their 12(b)(6) motion, he ordered a discovery schedule and Magten began to serve discovery. Only then, faced with the prospect of having to provide discovery, did Hanson and Kindt file their motion for transfer to this District and obtain a stay of discovery supposedly incident to transfer, causing months of delay. See D.I. 56, #4 (formerly D.I. 33 on District of Montana Docket, Case 04-24. No sooner did attempts to obtain discovery in this district commence in early 2006 (in coordination with discovery in the action against NorthWestern), then Hanson and Kindt joined NorthWestern's groundless motion for a protective order, causing a further 7 months of delay before this Court denied the motion and fact discovery was finally able to commence. D.I. 105 (Motion for Joinder to NorthWestern's Motion for Protective Order); D.I. 115 (Memorandum Order Denying Motion for Protective Order).

12

plaintiff "Agreement Group" permitted to amend caption of complaint to add individual members of the group as parties to the action; individual members were not time-barred because they were real parties in interest under Rule 17(a) and as such could be added "at any time"); <u>see also</u> <u>MCI Worldcom Network Servs. v. Graphnet, Inc.</u>, 2005 U.S. Dist. LEXIS 40835 at \*17-19 (D.N.J. May 10, 2005) (noting that Rule 15(c) has been used in conjunction with Rule 17(a) to enable an amendment substituting the real party in interest to relate back to the time the original action was filed and holding that because the complaint at issue properly substituted the real parties in interest, it related back) (internal citations omitted). The issue presented here, namely whether an action on behalf of a trust may be prosecuted by one of the beneficiaries (i.e. Magten) or only by the trustee (the Indenture Trustee) is a classic real-party-in-interest issue, where the correct answer may depend on the specific facts and circumstances of the case.[12] Here, Judge Cebull has already held that under the specific provisions of the Indenture Magten has standing to assert all of the Trust's rights on the same basis as the trustee, but if for any reason this Court were to permit defendants to relitigate that issue and come to a different conclusion, permitting the addition of the Indenture Trustee would be the appropriate solution to "avoid forfeiture of just claims" under Rule 17(a) and allow the case to proceed to trial.

Defendants' position on this issue is almost impossible to understand. They seem to contend (Opp. at 15-16) that the Indenture Trustee cannot be added under 17(a) because Magten

---

[12]    <u>Compare</u> <u>Edgeworth v. First Nat. Bank of Chicago</u>, 677 F. Supp. 982, 993 (S.D. Ind. 1988) (beneficiary who received one half of income of trust owning almost 80% of equity in closely held corporation had standing to sue derivatively on corporation's behalf) <u>with</u> <u>Matthies v. Seymour Mfg. Co.</u>, 270 F.2d 365, 375 (2d Cir. 1959) (testamentary trust beneficiary lacked standing to maintain a derivative action on behalf of the trust where other beneficiaries were ascertained but absent from the action). <u>See also</u> <u>In re Pittsburgh & L. E. R. Co. Securities and Antitrust Litigation</u>, 543 F.2d 1058, 1067 (3d Cir. 1976) (the fact that an indenture trustee had "fiduciary obligations to numerous public bond holders" reinforced court's conviction that it had standing to assert a Rule 23.1 derivative claim).

13

is a real party in interest, yet they simultaneously deny that Magten can assert claims against them that the trustee could. This makes no sense, and unsurprisingly no authority is cited.[13]

### III. **THE DEFENDANTS' CLAIMS OF PREJUDICE ARE BASELESS**

The only "prejudice" defendants claim is that fact discovery is now closed. But they have neither established that there is any new or different evidence that would be relevant to their defenses at trial if the Motion were granted nor that they were precluded from developing such evidence during discovery.

The Original Motion was filed on February 2. As of that date, Hanson and Kindt had served no discovery requests whatsoever. They served their first document request on Magten on February 28, their first interrogatories on the same date [D.I. 150], and their first and only deposition notice of a fact witness on April 11. See D.I. 188 at 1. Fact discovery was still ongoing when the June 8 Order was issued, contemplating that the Original Motion would be renewed at a later date. Indeed, the cut-off had been extended until June 30 (almost five months after the Original Motion had been filed), and the parties further agreed to postpone the deposition of Mr. Embry, which was noticed by Hanson and Kindt, until July 12.[14] Hanson and Kindt could have and should have taken whatever additional discovery they might have thought would be appropriate if the Original Motion were granted. If they failed to do so, they have no

---

13    To the extent this is a roundabout way of rephrasing the argument that the Indenture Trustee also lacks standing, so that Magten's ability to assert the trustee's rights is insufficient, that argument has been fully responded to at § ll(A) above, as well as at [D.I. 298 at § l(B) – (C)]. To the extent this is an argument that derivative claims belonging to a trust are somehow unique and therefore cannot be asserted by a beneficiary even when the governing of the particular trust generally confer all of a trustee's litigation rights on a beneficiary (an argument defendants have made in the past but never supported with any coherent authority), then the answer is that the real party in interest must be determined with respect to the particular claim being advanced against the particular defendant.

14    The claim (Opp. at 19) that Hanson and Kindt only learned about the timing of Magten's QUIPS purchases at that deposition is peculiar, given that the history of Magten's purchases was a matter of public record in numerous court filings as early as 2004. See, e.g., D.I. 1751 at 3, Case No. 03-12872. Indeed, it was the discovery NorthWestern took in the bankruptcy case in 2004 related to the timing of those purchases that Hanson and Kindt relied on for their unsuccessful summary judgment motion before Judge Cebull. D.I. 1587, Case No. 03-12872.

14

one to blame but themselves. They were not entitled to proceed blithely on the assumption that the Original Motion would not be granted, or, after the June 8 Order, that it would never be renewed, and then claim "prejudice" resulting from their own inaction.[15]

There is no contention that they sought discovery from Magten, from the Indenture Trustee, or any third party but were rebuffed because what was sought was deemed premature before the Original Motion or this Motion had been ruled on. No attempt to take additional or different discovery was made. The reason no attempt was made is obvious. Adding the Indenture Trustee to the case, or switching the claim from a direct to a derivative one, will have no impact on the evidence needed to establish defendants' liability, or the evidence defendants might seek to rely on for any of their purported defenses. Rather, the purpose of the relief sought by the Motion is not to add any additional complexity but, to the contrary, to simplify the case by removing certain technical defenses Hanson and Kindt seek to raise despite their prior rejection by Judge Cebull.

It should be noted that despite the fact the Indenture Trustee has been a plaintiff in the separate action against NorthWestern since that action's inception in 2004, NorthWestern elected to take no discovery whatsoever from the Indenture Trustee. It served no document requests; it sought no depositions. NorthWestern, whose litigation strategy is controlled by its CEO defendant Hanson, obviously concluded that the presence of the Indenture Trustee did not require any additional discovery to prepare for trial. There is no reason to believe that Hanson

---

[15]     The disingenuousness of defendants' position is further confirmed by their current argument that the Motion is untimely because it was not filed prior to the August 3 deadline for adding additional parties (while ignoring that the renewed Motion necessarily relates back to the Original Motion filed six months before that deadline). Since the Scheduling Order provided that fact discovery would be completed before the issue of joinder of additional parties was resolved, no prejudice can be claimed.

15

and Kindt would have done any differently, especially since, given the pendency of the Original Motion, they had every opportunity to do so if they wanted.[16]

Finally, defendants' contention that they lack the evidence (evidence which they could have sought had they wanted to at any time since February 2) to mount new defenses as to the proper amount of damages makes no sense at all. The timing of Magten's secondary market purchases of QUIPS (and the prices paid in those transactions) are irrelevant to damages for the reasons it has already briefed [D.I. 298 at § III], but the irrelevancy of such issues to a defense against the Indenture Trustee is even clearer. Since the Indenture Trustee would indisputably be suing directly on behalf of the Trust (just as Judge Cebull held Magten could do), it would recover the damages suffered by the Trust, which has held the Junior Debentures continuously since they were issued in 1996. The timing and prices paid in secondary market transactions in QUIPS (representing the beneficial interests in the Trust) are obviously irrelevant to the damages the Trust suffered as a result of Hanson and Kindt's breaches of fiduciary duty.

How the damages award to the Indenture Trustee, on behalf of the Trust, would then be allocated among QUIPS holders (including any possible issues as to the relative interests of current versus former QUIPS holders) is an internal matter for the Trust to be determined in accordance with its governing documents and applicable law. Hanson and Kindt have no

---

[16]  Hanson and Kindt's claim that discovery was needed from the Indenture Trustee in order to learn irrelevant facts about other QUIPS holders is particularly disingenuous in light of the fact that, due to NorthWestern's implementation of its plan process, NorthWestern is the sole depository of this information. See, e.g., D.I. 3328 at p. 11, Case No. 03-12872 (in response to motion to compel the Indenture Trustee to distribute shares and warrants to holders of Allowed Claims in Class 8(b) who elected Option 1, the Indenture Trustee objects that NorthWestern has "failed to adequately identify those Option 1 holders despite numerous requests from the Indenture Trustee to do so.").

standing to address such a future allocation, and it cannot provide a basis for them to escape

responsibility for the full amount of damage they inflicted on the Trust.[17]

---

17      Likewise, since Magten is entitled under section 610 of the Indenture to exercise all of the Trustee's rights, it is entitled to recover the full amount of damages Hanson and Kindt have inflicted on the Trust. Appropriate relief can be crafted as to the allocation of such award in excess of the pro rata share allocable to Magten's own QUIPS holdings so that it goes to the Trust for the benefit of its other beneficiaries. Again, Hanson and Kindt have no standing to challenge that allocation, and cannot use it to escape liability for the full amount of harm they have caused.

Hanson and Kindt's claim that a derivative claim would involve an entirely new damages theory is even less coherent. The damage suffered by Clark Fork are the same as those which Magten and/or The Indenture Trustee would recover in a direct action, because those damages relate to Clark Fork's inability, as a result of the insolvency caused by Hanson and Kindt's actions, to pay its obligations to the Trust for the ultimate benefit of the QUIPS holders, so the quantum and nature of the damages involved are identical, whether or not considered to "flow through" Clark Fork on their way to the Trust and QUIPS holders. In any event, Hanson and Kindt had every opportunity to seek whatever discovery they deemed appropriate to defend on the issue of damages once the possibility of a derivative claim was on the table.

17

## CONCLUSION

For all of the foregoing reasons, as well as those set forth in the opening papers and the briefing on the Original Motion, the Motion should be granted in all respects, to the extent necessary in light of the Court's disposition of Hanson and Kindt's pending summary judgment motion.

Dated:  Wilmington, Delaware
        January 14, 2008

**BLANK ROME LLP**

 /s/ Dale R. Dubé
Dale R. Dubé (DE No. 2863)
David W. Carickhoff (DE No. 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:   (302) 425-6464

Bonnie Steingart
Gary L. Kaplan
John W. Brewer
**FRIED, FRANK, HARRIS, SHRIVER**
  **& JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:   (212) 859-4000

*Counsel for Magten Asset Management*
*Corporation*

**SMITH, KATZENSTEIN & FURLOW, LLP**

 /s/  Kathleen M. Miller
Kathleen M. Miller (DE No. 2898)
800 Delaware Avenue, 7th Floor
P.O. Box 410
Wilmington, DE  19899
Telephone:  (302) 652-8400
Facsimile:   (302) 652-8405

John V. Snellings
Amanda Darwin
**NIXON PEABODY LLP**
100 Summer Street
Boston, MA  02110
Telephone:  (617) 345-1201
Facsimile:   (866) 947-1732

*Counsel for Law Debenture Trust Company of*
*New York, as Indenture Trustee*

18

120087.01600/40173006v.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of January, 2008, I served by hand delivery and

electronic filing the REPLY IN FURTHER SUPPORT OF RENEWED MOTION OF MAGTEN

ASSET MANAGEMENT CORPORATION AND THE LAW DEBENTURE TRUST

COMPANY OF NEW YORK FOR LEAVE TO AMEND THE COMPLAINT , using CM/ECF

which will send notification of such filing(s) to the following:

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

I also certify that, on this 14th day of January, 2008, I served the aforementioned

document, by email and Federal Express, upon the following participants:

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Myles Bartley, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

Dale R. Dubé

Dale R. Dubé  (No. 2863)

120087.01600/40173006v.1