IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>MIKE J. HANSON and ERNIE J. KINDT,<br><br>　　　　　Defendants. | :<br>:<br>:<br>:<br>:　Civil Action No. 05-499-JJF<br>:<br>:<br>:<br>: |

**MAGTEN ASSET MANAGEMENT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND <u>TESTIMONY OF STEPHEN J. SCHERF</u>**

Dale R. Dubé (No. 2863)
David W. Carickhoff (No. 3715)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

Bonnie Steingart
Gary L. Kaplan
John W. Brewer
FRIED, FRANK, HARRIS, SHRIVER &
JACOBSON LLP
One New York Plaza
New York, NY 10004
Telephone: (212) 859-8000
Facsimile: (212) 859-4000

Dated:  January 31, 2008         *Counsel for Magten Asset Management Cor*

## TABLE OF CONTENTS

I.    Governing Legal Standard ............................................................................................... 3

II.   Scherf's Testimony Is Inadmissible Under Fed. R. Evid. 702 ......................................... 4

       A.    Scherf's Opinion Seeks to Usurp the Role of the Jury ........................................ 4

       B.    Scherf Has No Special Expertise Concerning
            Defendants' Subjective Knowledge ..................................................................... 7

       C.    Scherf's Opinion Is Based On a Flawed Methodology ...................................... 9

## TABLE OF AUTHORITIES
**Cases**

Page

In re Air Crash Disaster at New Orleans,
    795 F.2d 1230 (5th Cir. 1986) ..................................................................................6

Baumgardner v. Wyeth Pharms.,
    No. 05-05720-JF, WL 1308232 (E.D. Pa. May 11, 2006)....................................5

Calhoun v. Yamaha Motors Corp., U.S.A.,
    350 F.3d 316 (3d Cir. 2003)..................................................................................4

D'Addario v. Geller,
    No. 04-1687, 2005 WL 428779 (4th Cir. Feb. 24, 2005) ......................................6

Daubert v. Merrel Dow Pharm.,
    509 U.S. 579 (1993)........................................................................................4, 7, 9

In re Diet Drugs Prod. Liab. Litig.,
    MDL No. 1203, 2000 U.S. Dist. LEXIS 9661 (E.D. Pa. June 28, 2000) ..............7

Fedor v. Freightliner,
    193 F. Supp. 2d 820 (E.D. Pa. 2002) ....................................................................7

Fellner v. Supreme Corp.,
    No. 92-3680, 1995 U.S. Dist. LEXIS 2166 (D.N.J. Feb. 21, 1995) ..................4, 5

Hill v. Equitable Bank, Nat'l Ass'n,
    Civ. A. Bo. 82-220 CMW, 1987 WL 8953 (D. Del. Mar. 3, 1987)......................4

Hamilton v. Emerson Elec. Co.,
    133 F. Supp. 2d 360 (M.D. Pa. 2001) ...................................................................4

Nickel v. Gillette,
    2006 U.S. Dist. LEXIS 66741 (W.D. Wis. Sept. 13, 2006)..................................6

Oddi v. Ford Motor Co.,
    234 F.3d 136 (3d Cir. 2000)..................................................................................4

Pell v. E.I. Dupont De Nemours & Co.,
    231 F.R.D. 186 (D. Del. 2005) .............................................................................9

Salas v. Carpenter,
    980 F.2d 299 (5th Cir. 1992) ................................................................................6

In re TMI Litigation,
    193 F.3d 613 (3d Cir. 1999)..................................................................................12

United States v. Clapp,
    46 F.3d 795 (8th Cir. 1995) ....................................................................................6

Woodhull v. County of Kent,
    No. 1:04-cv-203, 2006 U.S. Dist. LEXIS 54028 (W.D. Mich. Aug. 3, 2006) ......5

Yancey v. Carson,
    No. 3:04-CV-556, 3:04-CV-610, 2007 U.S. Dist. LEXIS 78289 (E.D. Tenn. Oct. 19,
    2007) ......................................................................................................................8

**Statutes**

Fed. R. Evid. 702 ..............................................................................................1, 3, 4, 7

**Other Authorities**

1 JACK B. WEINSTEIN & MARGARET A. BERGER,
    WEINSTEIN'S FEDERAL EVIDENCE § 702.03 (2d ed. 2007) ..................................6

Plaintiff Magten Asset Management Corp. ("Magten") respectfully submits this memorandum of law pursuant to Rule 702 of the Federal Rules of Evidence in support of its motion in limine to (i) strike the expert report submitted by Stephen J. Scherf; (ii) preclude reliance thereon by defendants Michael J. Hanson, and Ernie J. Kindt;[1] and (iii) exclude testimony by Scherf at the trial of this matter.

### Summary of Argument

Defendants seek to offer the expert report and the testimony of Stephen J. Scherf in an improper attempt to usurp the role of the finder of fact in this action. As is plainly admitted in their engagement letter, Scherf and his firm were hired by defendants' counsel to "analyz[e] . . . the information that was available to Hanson and Kindt prior to the 'going flat' transaction in order to determine what Hanson or Kindt knew or should have known concerning the financial condition of Northwestern before or at the time of the transfer."[2] September 25, 2007 ESBA Engagement Letter at 1; Deposition of Stephen J. Scherf ("Scherf Depo.") at 5-7.[3] Expert testimony of this nature is not admissible, and the report and testimony of Scherf should be precluded.

In rendering his opinion, Scherf relied solely on defendants' deposition testimony and documents provided by defendants' lawyers in connection with discovery in this action. Scherf Depo. at 147, 161; D.I. 277, Expert Report of Stephen J. Scherf ("Scherf Rep."), Exh. B. Reviewing testimony and looking at documents to decide what defendants "knew or should have

---

[1] Based on currently available information, it does not appear that NorthWestern intends to make any use of Scherf's testimony; but to the extent that NorthWestern does intend to utilize Scherf's testimony, it should be precluded from doing so for the reasons detailed below.

[2] Plaintiff assumes a familiarity with the factual and procedural background of this action, which can be found in plaintiff's opposition to Hanson and Kindt's motion for summary judgment. (D.I. 289).

[3] The ESBA Engagement Letter and the relevant excerpts of the Scherf Deposition are attached as Exhibits 1 and 2, respectively, to the January 31, 2008 Declaration of John W. Brewer in Support of this Motion, filed herewith.

1

known" is precisely what a jury does. Engagement Letter at 1; Scherf Depo. 5-7. Worse, Scherf's conclusions necessarily suffer because he was not present for the defendants' depositions, and even if he had attended, his ability to assess their credibility would be limited, since neither defendant was subject to cross examination. And yet, Scherf boldly concludes – without qualification – that (i) Kindt "was not privy to the operations or financial condition of NorthWestern or its various subsidiaries" (Scherf Rep. at 14); and (ii) that Hanson, though he "had more information concerning the results of operations of NorthWestern's other operations and subsidiaries than did Kindt" was nevertheless unaware of NorthWestern's dire financial condition or the fact that it was actively engaged in a massive and ongoing cover-up of its true financial state. Id. at 23.

Scherf's report is inadmissible for several reasons, and it (as well as Scherf's proposed testimony) should be excluded. First, questions about the subjective knowledge of the defendants and whether they breached their fiduciary duties are the sole province of the jury. Scherf's sweeping conclusion that there is no basis to conclude that the defendants knew of NorthWestern's financial peril is not based on any technical, scientific, or financial analysis that is outside the competence of laymen. Based on his report, it is clear that Scherf's proposed testimony at trial would cover territory more properly addressed by the opening and closing statements of defendants' lawyers. Indeed, Scherf's expert "opinions" are "scattered" throughout his report (Scherf Depo. at 79), and even he has great difficulty in parsing out what statements represent his expert opinions and what statements represent a mere recitation of defendants' spin on the facts.

Second, Scherf is wholly unqualified to opine on the actual, subjective knowledge Hanson and Kindt possessed in 2002 when they engaged in the Going Flat Transaction. He is an

2

accountant with a master's degree in finance, and his training provides no special basis for him to categorically opine on what defendants knew, did not know, or should have known in 2002 – or indeed at any time.

Third, Scherf's "methodology" is not the product of reliable principles and methods. Instead of conducting an independent investigation into the potential sources of information available to defendants, Scherf merely looked at documents provided by their counsel, and relied on counsel's unsubstantiated claim that he "had the same universe" of documents available to him as Hanson and Kindt did in 2002. Id. at 164. Scherf did not attempt to determine whether or to what extent the methods used by counsel to select the documents he reviewed could actually produce this "same universe" (indeed, it appears that he never even inquired what these methods were). Moreover, Scherf did not attend the defendants' depositions, and he did not interview or otherwise communicate with Hanson and Kindt themselves to determine whether they had access to documents not included in the set counsel provided, or to information that was never memorialized or retained in documents. In short, Scherf cannot claim that he analyzed every single piece of relevant information available to defendants – an obvious flaw that renders his attempt to opine on what defendants knew or should have known all the more speculative and absurd. For the foregoing reasons, Scherf's testimony and opinion should be excluded.

## Argument

I. **Governing Legal Standard**

Federal Rule of Evidence 702 governs the admission of expert testimony:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

>principles and methods, and (3) the witness has applied the
>principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2007).

Rule 702 imposes a "gatekeeping" function upon district courts. Thus, courts should only admit expert testimony if it is both reliable and relevant. See Daubert v. Merrel Dow Pharm., 509 U.S. 579, 589 (1993). "First and foremost", a court must determine whether expert testimony is necessary for a jury to understand the subject matter at issue – "[it] is only when the jury is incapable of making sense of the underlying facts that expert opinion is admissible." Fellner v. Supreme Corp., No. 92-3680, 1995 U.S. Dist. LEXIS 2166, at *24-25 (D.N.J. Feb. 21, 1995). If, and only if, this prerequisite is satisfied, the Court should engage in a Daubert inquiry as to whether (i) the expert is qualified to testify; (ii) his methodology is sufficiently reliable; and (iii) his testimony "fits" such that it is relevant and will assist the trier of fact. Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d 316, 321 (3d Cir. 2003). The party offering expert testimony bears the burden of satisfying this standard by a preponderance of the evidence. See Oddi v. Ford Motor Co., 234 F.3d 136, 144 (3d Cir. 2000). Defendants cannot meet this burden.

## II.     Scherf's Testimony Is Inadmissible Under Fed. R. Evid. 702

### A.     Scherf's Opinion Seeks to Usurp the Role of the Jury

Expert testimony should be disallowed if the untrained layman is qualified to determine the issue at hand "without enlightenment from those having a specialized understanding of the subject involved in dispute." Hill v. Equitable Bank, Nat'l Assn., Civ. A. Bo. 82-220 CMW, 1987 WL 8953, at *1 (D. Del. Mar. 3, 1987) See also Hamilton v. Emerson Elec. Co., 133 F. Supp. 2d 360, 374 (M.D. Pa. 2001) ("expert testimony is more likely to be inadmissible if the inferences drawn by the expert are ones that can be, and typically are, made from common observation.") Where, as here, "a jury is capable of understanding the subject matter through its

4

own knowledge and experience, expert testimony is not admissible . . . ." Fellner, No. 92-3680, 1995 U.S. Dist. LEXIS 2166 at *24-25.

Questions of what defendants knew or should have known, and the inferences to be drawn from their acts and omissions, are common-sense factual determinations that are exclusively within the province of the jury. See Woodhull v. County of Kent, No. 1:04-cv-203, 2006 U.S. Dist. LEXIS 54028, at *20 (W.D. Mich. Aug. 3, 2006) (excluding an expert's conclusory statements that a defendant acted with deliberate indifference because they did not assist the trier of fact.) Scherf's Engagement Letter, which states that Scherf was retained to "determine what Hanson and Kindt knew or should have known," is a clear admission that Scherf was retained to supplant the role of the trier of fact. Engagement Letter at 1; Scherf Depo. at 5-7. The fact that Scherf's report improperly intrudes on the province of the jury was also conclusively demonstrated by Scherf at his deposition. During his deposition, Scherf himself had great difficulty in identifying the "expert opinions" in his report, which are scattered throughout the report and nearly indistinguishable from his purported statements of fact. See, e.g., Scherf Depo. at 71-73, 79, 96-99, 131-32.

The topics that Scherf seeks to opine on are simply not the proper subject of expert testimony. Hanson and Kindt's knowledge of NorthWestern's financial condition, the fraud that permeated the company at the time of the Going Flat Transaction, and their respective breaches of fiduciary duty are not technical subjects like the issues in product liability medical malpractice cases where it "takes an expert to beat an expert." See Baumgardner v. Wyeth Pharms., No. 05-05720-JF, WL 1308232 (E.D. Pa. May 11, 2006) (recognizing that in a products liability case against a pharmaceutical company, expert testimony would be required on both sides). Intelligent jurors are perfectly capable of understanding the facts that relate to defendants' state

5

of mind in this case, and can come to their own conclusions as to whether defendants' conduct – their lack of care, disloyalty, failure to investigate, and blind adherence to self-serving instructions in the teeth of an obvious conflict of interest – gives rise to a breach of fiduciary duty. See, e.g., D'Addario v. Geller, No. 04-1687, 2005 WL 428779, at *6 (4th Cir. Feb. 24, 2005) (reversing grant of summary judgment and holding that expert testimony is not required for a claim of breach of fiduciary duty because "it should not be unduly difficult to determine whether or not the defendants' actions constitute breaches of fiduciary duties"); Nickel v. Gillette, 2006 U.S. Dist. LEXIS 66741, at *1 (W.D. Wis. Sept. 13, 2006) (denying defendant's motion for summary judgment where plaintiffs had enough evidence to sustain a claim for breach of fiduciary duty even without expert testimony to such effect). Indisputably, Scherf is in no better position to reach a conclusion on these facts than the average juror.

    Moreover, it is well-settled that where the arguments and conclusions contained in expert testimony could just as easily have been made at trial by an attorney, that testimony should be excluded. See Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992) (excluding expert testimony in part because expert could not "bring to the jury more than the lawyers can offer in argument") (citing In re Air Crash Disaster at New Orleans, 795 F.2d 1230, 1233 (5th Cir. 1986)); United States v. Clapp, 46 F.3d 795, 802 (8th Cir. 1995) (district court properly excluded expert testimony concerning a witness' behavior when cross-examination at trial would have been as effective); 1 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE § 702.03 (2d ed. 2007) ("Proffered expert testimony should be excluded when it will not assist the finder of fact to any degree beyond the assistance that the lawyers representing the parties could provide during their closing arguments.") This is precisely the nature of Scherf's report, which reads like a legal brief. He spends many pages attempting to persuade that certain inferences

may, and in fact should, be made from the available facts – i.e., that the documents he reviewed prove that Hanson and Kindt did not know that NorthWestern was in financial trouble, had no reason to know this, and therefore they did not breach their fiduciary duties. An expert report is not supposed to be an argumentative brief. Rather, an expert report should contain scientific, technical, or other specialized knowledge grounded in accepted methodology. See, e.g., Daubert 509 U.S. at 589-90 ("The subject of an expert's testimony must be 'scientific . . . knowledge.' The adjective 'scientific' implies a grounding in the methods and procedures of science") (citations omitted.) Hanson and Kindt have lawyers, and these lawyers are perfectly competent to make every argument Scherf makes in his report.

Accordingly, for these reasons alone, Scherf's report and proposed testimony should be excluded.

      **B.**    **Scherf Has No Special Expertise Concerning Defendants' Subjective Knowledge**

The Third Circuit has established that, at a bare minimum, an expert must possess skill or knowledge greater than an average layman. Fedor v. Freightliner, Inc., 193 F. Supp. 2d 820, 826 (E.D. Pa. 2002) (citations omitted). However, the fact that someone might have expertise in some areas is not on its own sufficient to qualify him as an expert for the purposes of a particular case. Instead, Rule 702 requires that an expert have "specialized knowledge regarding the area of testimony" about which he opines. Id. at 828. See In re Diet Drugs Prod. Liab. Litig., MDL No. 1203, 2000 U.S. Dist. LEXIS 9661, at *9 (E.D. Pa. June 28, 2000) (holding that expert testimony on a subject outside relevant area of expertise should be excluded). Scherf brings no such specialized knowledge to bear in his report. There is nothing that qualifies him to conclude what Hanson or Kindt's actual knowledge was with respect to NorthWestern's financial

7

condition at the time of the Going Flat Transaction. Indeed, it is difficult to imagine that <u>anyone</u> could acquire such expertise.

According to his curriculum vitae, Scherf's educational background is in accounting, finance, and taxation. Scherf Rep., Ex. A. Scherf's employment history indicates that his primary experience is in various aspects of accounting, auditing, finance, valuation, forensic litigation support, and management. Scherf Depo. at 41-50. During his deposition, Scherf identified the particular fields of expertise he called upon in giving his opinion in this case:

> Well, the field of my expertise which includes in this report accounting related matters, analysis of financial statements, analysis of documents and their financial implications as well as certain valuation matters. I think that's kind of where most of the opinions go . . .

<u>Id.</u> at 70. These areas of expertise, either standing alone or in combination, simply do not provide a sufficient basis for Scherf to conclude "within a reasonable degree of professional certainty" that both Hanson and Kindt "did not know and had no reason to know about future potential cash flow issues, alleged misstatements or alleged lack of disclosures by NorthWestern or its various subsidiaries." Scherf Rep. at 15. The validity of Scherf's conclusion depends on his ability to determine Hanson and Kindt's <u>actual</u> knowledge in 2002 when the Going Flat Transaction took place, not merely on his ability to analyze and understand financial documents. As Scherf acknowledged several times during his deposition: he is "not a mind-reader." Scherf Depo. at 162-163; 206, 212, 234. However, the ability to read minds is exactly what Scherf would need in order to properly reach the sweeping conclusions reached in his report. Because Scherf has not demonstrated any expertise in determining an individual's subjective knowledge of past events, he should be prohibited from opining on this subject. See <u>Yancey v. Carson</u>, No. 3:04-CV-556, 2007 U.S. Dist. LEXIS 78289, at *7-12 (E.D. Tenn. Oct. 19, 2007) (holding that

8

expert with 34 years experience with the FBI, including several years as a polygraph examiner, was not qualified to opine on the "thought processes and motivations of a third party.")

### C. Scherf's Opinion Is Based On a Flawed Methodology

In order for an expert opinion to be reliable, it must be "based on more than a subjective belief or speculation." Pell v. E.I. Dupont De Nemours & Co., 231 F.R.D. 186, 192 (D. Del. 2005). In other words, the expert must have "good grounds" for his or her belief. Daubert 509 U.S. at 590. In the instant matter, Scherf has made no independent attempt to determine the scope of Hanson and Kindt's actual knowledge. He blindly relied on the subset of documents provided by defendants' counsel, and never even bothered to interview Hanson or Kindt to determine if they knew something more than what was reflected in their depositions or in the documents provided by their counsel. His conclusion that defendants did not know and had no reason to know of NorthWestern's serious and chronic financial difficulties is not based on reliable principles and methods, and thus should not be allowed into evidence.

Scherf testified that he formed his opinions about Hanson and Kindt's conduct after evaluating information contained in documents provided to him by their counsel. But Scherf made no real attempt to determine whether these documents constituted the _entire_ universe of information actually available to Hanson and Kindt:

> Q: You're telling me that [the documents referenced in Exhibit B of Scherf's report] are all the documents that were available to you, right? You are not telling me that these are all the documents available to Mr. Hanson, correct?
>
> A: That is correct, because I don't know. My understanding is that all the documents were produced, and I had the same universe of documents [as Hanson].

Scherf Depo. at 164. See also id. at 151.

9

Notably, Scherf does not discuss or describe – because he does not know – the methods defendants' counsel employed when selecting the documents for Scherf to review in connection with rendering his opinion. It is clear from Exhibit B to his report that Scherf did not review the entirety of NorthWestern's document production. Scherf Rep., Ex. B. It is entirely unclear, however, what process defendants' counsel used to narrow down this vast collection of material to the subset Scherf was told to assume Hanson and Kindt had seen. It is thus impossible to determine whether, or to what extent, counsel's document cull captured the totality of information available to defendants. Nor is it possible to determine whether counsel's (and by extension Scherf's) assumption that Scherf had "the same universe of documents" that was available to defendants in 2002 is at all reasonable.[4]

Throughout his report Scherf feigns detailed analysis, breaking the information available to defendants into several categories in an attempt to seem scientific and technical. However, even a cursory review of his approach reveals multiple obvious steps that Scherf could and should have taken – but, inexplicably, failed to take – before opining conclusively on what Hanson and Kindt knew or should have known. Scherf did not:

- ascertain whether there were any relevant documents available to Kindt that Kindt did not ask for (Scherf Depo. at 153);

- review any relevant documents that were in Hanson's possession but which NorthWestern failed (for whatever reason) to produce, or have any basis for assuming that such relevant, un-produced documents did not exist, other than counsel's assurance that he received "everything that was available to [Hanson]" (Id. at 158-59, 161);

---

[4] For example, it may have been reasonable to assume that Hanson and Kindt had seen documents listing them as sender or recipient, or documents found in their offices. Scherf Depo. at 157-58. However, there is no basis for Scherf to categorically assume that Hanson and Kindt did not see documents that failed to list them as sender or recipient, or were found some place other than their offices or files.

10

- ask Hanson or Kindt if there were any documents relevant to their decision-making processes that were not retained; [5]

- inquire as to what information concerning the prospects or operations of NorthWestern were distributed or discussed at the monthly board meetings Hanson attended (Id. at 167); or

- interview, speak with, or otherwise contact either Hanson or Kindt to ascertain what sources of relevant non-documentary information they might have had access to. Id. at 152-53, 163, 165.

Scherf's methodology is therefore admittedly based on a narrow and incomplete spectrum of information.

Among the many methodological flaws in Scherf's analysis, Scherf's total and inexplicable failure to interview or otherwise contact either Hanson or Kindt in order to identify the documents (or other sources of information) which they did or did not have access to is particularly noteworthy and troubling. Scherf Depo. at 152-53, 165. Scherf admits that no one denied him access to Hanson or Kindt. Id. at 153, 165. Yet his only explanation for his failure to speak with them is that he "didn't think [he] needed to [contact defendants] in forming the opinion that [he] formed." Id. at 165. This rationale for avoiding contact with the defendants themselves – the sources most capable of providing the information necessary to render his opinion – is simply insufficient. Indeed, Scherf did not even attend their depositions. Unlike the jury, who will see them testify live at trial and subject to cross examination, Scherf has no basis whatsoever to asses the credibility of the deposition testimony he reviewed.

It is difficult to imagine what the "proper" methodology for determining something as inherently speculative as an individual's actual lack of knowledge would be, but it is obvious that

---

[5] Scherf has no way of knowing, without speaking to Hanson or Kindt, whether any relevant documents are simply missing. NorthWestern's document production occurred four years after the events in question; in the interim, the company experienced significant personnel turnover and filed for bankruptcy. It is entirely possible that during this period relevant documents – such as balance sheets, income statements, or statements of cash flow – were not retained or simply lost in the shuffle and therefore never produced.

blindly relying on the assurances of that individual's lawyers while failing to undertake even a preliminary independent investigation is wholly inadequate. Indeed, such blind reliance without independent review is improper. <u>See</u>, <u>e.g.</u>, <u>In re TMI Litigation</u>, 193 F.3d 613, 697-98 (3d Cir. 1999) (medical expert could not rely on medical history summaries prepared by nonprofessionals aligned with counsel for one of the litigants in the case, but was required to conduct some form of independent investigation.)

## Conclusion

For the reasons stated above, plaintiff Magten Asset Management Corporation respectfully requests that the Court (i) exclude Scherf's Report; (ii) preclude defendants' reliance thereon; and (iii) preclude any corresponding testimony by Scherf at trial.

Dated: Wilmington, Delaware
January 31, 2008

        BLANK ROME LLP

        */s/ Dale R. Dubé*
        Dale Dubé (DE No. 2863)
        1201 Market Street, Suite 800
        Wilmington, DE 19801
        Telephone: (302) 425-6400
        Facsimile: (302) 425-6464

        - and -

        FRIED, FRANK, HARRIS, SHRIVER &
          JACOBSON LLP
        Bonnie Steingart
        Gary L. Kaplan
        John W. Brewer
        One New York Plaza
        New York, NY 10004
        Telephone: (212) 859-8000
        Facsimile: (212) 859-4000

        Counsel for Magten Asset Management
          Corporation

Ffny02/hallza/562827

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2008, I served by hand delivery and electronic filing MAGTEN ASSET MANAGEMENT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF STEPHEN J. SCHERF using CM/ECF, which will send notification of such filing(s) to the following:

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Kathleen M. Miller, Esquire
Smith Katzenstein & Furlow LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

I also certify that, on this 31st day of January, 2008, I served the aforementioned document, by email and Federal Express, upon the following participants:

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

John V. Snellings, Esquire
Amanda D. Darwin
Nixon Peabody LLP
100 Summer Street
Boston, Massachusetts 02110-1832

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Myles Bartley, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

_____
Dale R. Dubé  (No. 2863)

120087.01600/40173272v.1