# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

------------------------------------------ X

MAGTEN ASSET MANAGEMENT CORPORATION and

LAW DEBENTURE TRUST COMPANY OF NEW YORK,

                Plaintiffs,

   -vs-

NORTHWESTERN CORPORATION,

                Defendant.

Civil Action No. C.A. No. 04-1494 (JJF)

------------------------------------------ X

MAGTEN ASSET MANAGEMENT CORP.,

                Plaintiff,

   -vs-

MICHAEL J. HANSON and ERNIE J. KINDT,

                Defendants.

Civil Action No. C.S. No. 05-499 (JJF)

------------------------------------------ X

DATE:     November 8, 2007

TIME:     9:00 a.m.


        Deposition of ROBERT W. BERLINER, held

at the offices of Curtis, Mallet-Prevost, Colt &

Mosle, 101 Park Avenue, New York, New York,

**Page 25**

- ROBERT W. BERLINER -

A. Yes.

Q. -- you've listed as a document that you reviewed creditors' First Amended Complaint dated October 4th, 2004.

Do you recognize this as that First Amended Complaint?

A. Yes.

Q. When did you review the Complaint for the first time?

A. In either August or September of this year.

Q. Who provided you with a copy of the Complaint?

A. Mr. Holmes and Mr. Schwitter.

Q. Did you have any discussions with Mr. Holmes or Mr. Schwitter regarding the contents of the Amended Complaint --

A. No.

Q. -- at that time?

Did you ever have any conversations with those two individuals regarding the content of this Complaint?

A. I did not.

Q. Did you ever have a conversation with

**Page 26**

- ROBERT W. BERLINER -

any attorneys representing the plaintiffs in this action regarding this Complaint?

A. No, sir.

Q. I'd like to refer your attention to Page 10 of the Complaint, Paragraph 51.

Do you have that, sir?

A. Yes, I do.

Q. It states, "The debtor was insolvent both immediately before and immediately after the acquisition of MPLLC and the assumption of related liabilities. Debtor was engaged in a business with unreasonably small capitalization and incurred debts beyond its ability to pay both immediately before and immediately after the acquisition of MPLLC and the assumption of liabilities."

Sir, do you understand that the debtor referred to in this paragraph is Northwestern Corporation, the defendant in this case?

MR. KAPLAN: Rather than asking the question, it's defined up front. I'd rather have the witness look at the definition.

MR. PIZZURRO: That's fine. I just want his understanding.

A. That's my understanding, yes.

**Page 27**

- ROBERT W. BERLINER -

Q. Do you recall, reviewing this paragraph of the Complaint, when you looked at the Complaint?

A. Yes.

Q. Were you ever asked to offer an opinion regarding the allegations contained in this paragraph?

A. No.

Q. Did you ever consider an opinion regarding the allegations contained in this paragraph?

A. No.

Q. Was there ever any discussion that you had either with your colleagues or with any attorneys representing the plaintiffs concerning the allegations contained in this paragraph?

MR. KAPLAN: Object to the form.

A. I think the answer is yes.

Q. Okay. And what -- with whom did you have that -- those discussions, conversations or conversation?

A. With Mr. Holmes and Mr. Schwitter.

Q. When did you have those conversations or conversation?

A. In August or September of this year.

**Page 28**

- ROBERT W. BERLINER -

Q. Do you recall whether it was more than one conversation?

A. It was one conversation.

Q. What was said? What did you say and what did they say, to the best of your recollection, in that conversation?

A. The essence of the conversation was that they communicated to me that counsel had asked us to opine, as I have in the fourth opinion on Page 4 of my report, based on a hypothetical assumption that Clark Fork remained directly obligated for the QUIPS following the going flat transactions.

Q. Sir, let me -- you do understand that the issue in Paragraph 51 is the solvency of Northwestern Corporation; do you not?

A. Yes.

Q. Can you explain to me, then, the relationship between that allegation and Opinion Number 4?

MR. KAPLAN: Objection to form.

A. Yes.

Q. Please, could you explain?

A. In reading the deposition transcripts in the case, a lot of the testimony had to do with the

Pages 25 to 28

Elisa Dreier Reporting Corp.   (212) 557-5558
780 Third Avenue, New York, NY 10017

- ROBERT W. BERLINER -

going flat transaction, the insolvency issues and those kinds of things. And I raised the question with my colleagues, you know, much of the testimony is seemingly irrelevant to the opinions that we're going to be expressing in our report and isn't that an odd situation for us?

And it was then that I learned that the only way that we were going to even remotely address any of those was by offering the opinion I referred to based on the hypothetical assumption.

Q. Let's look at Opinion Number 4. Okay. It states, "Assuming that Clark Fork remained directly obligated for the QUIPS, following the November 15th, 2002, going flat transaction, its total liabilities would have materially exceeded its total assets."

Can you explain to me how that opinion relates to the solvency or insolvency of Northwestern before or after the going flat transaction?

MR. KAPLAN: Asked and answered.

A. The relationship -- obviously, it doesn't relate. The relationship, in my mind, was -- it was the linkage as to how -- how come I

29

- ROBERT W. BERLINER -

wasn't going to address the issues related to the going flat transaction and the solvency or insolvency of Northwestern that for some reasons, that were apparently legal reasons, counsel had restricted my attention to just this particular hypothetical assumption and that's the linkage.

Q. So you understood -- am I correct that you understood that counsel was specifically not asking you to opine regarding the solvency of Northwestern?

MR. KAPLAN: Object to the form.

A. Not because they said that in so many words but because this is all that I was asked to do, so obviously I wasn't asked to address the solvency of Northwestern.

Q. Did you question that in the conversation that we're now referring to that you had with your colleagues, did you question why you were not being asked to offer an opinion regarding solvency or insolvency of Northwestern?

A. Yes.

Q. What did they tell you?

A. They told me that this isn't our area of expertise and that may have been a reason why we

30

- ROBERT W. BERLINER -

weren't asked to address it. But I never did find out by conversations with counsel as to the reason or not.

This was what I was asked to do. It was relatively easy to do it, and so I felt somewhat delighted that this is all I had to do because I was concerned about being able to render my report by the 19th of September.

Q. What else was discussed regarding the allegations in this paragraph, Paragraph 51 of the Amended Complaint, during the conversation we're referring to?

A. Nothing else.

Q. You testified a moment ago that in that conversation you remarked that much of what you had read in the deposition testimony seemed to be irrelevant to the issues that you were being asked to opine on.

Do you recall saying that?

A. Yes.

Q. Why did you feel that way?

A. Because I wasn't being asked to express any opinions such as the ones you've asked me about relating to the solvency or insolvency of

31

- ROBERT W. BERLINER -

Northwestern or any of the ramifications relating to the going flat transaction.

Q. You did rely, however -- strike that.

Your report reflects that you did review deposition transcripts taken in this case, correct?

A. Correct.

Q. Did you view those as irrelevant to any of the opinions that you've offered in this case?

A. No.

Q. Okay. But irrelevant to Opinion Number 4, is that what I understand; is that correct?

MR. KAPLAN: Object to form.

A. Yes.

MS. DELANEY: Are you expecting any males to join us? There is apparently a Mr. Schwartz here to join the deposition. Does anyone know who he is?

Q. Off the record.

(Whereupon, there was a brief recess in the proceedings.)

Q. Mr. Berliner, prior to your retention by Fried, Frank and Storch Amini in this case, had you ever been employed by Magten Asset Corporation?

32

Pages 29 to 32

Elisa Dreier Reporting Corp.    (212) 557-5558
780 Third Avenue, New York, NY 10017

- ROBERT W. BERLINER -

1  Q. When did you learn of them in this case?
2  A. Well, I would have understood there to exist such standards but the first time, I guess, that I saw them in that particular terminology was when I read the expert reports of the experts on behalf of defendants in this case.
3  Q. So that -- strike that.
       Is it, therefore, safe to assume that informing the opinions and in preparing your report, which is Exhibit 1, that you did not refer to or use any of the Uniform Standards of Professional Appraisal Practice?
       MR. KAPLAN: Object to the form.
4  A. It's fair to say that.
       MR. PIZZURRO: Maybe take five minutes.
       (Whereupon, there was a brief recess in the proceedings.)
5  Q. Mr. Berliner, you referred to three instances in which you participated in a SFAS 142 impairment analysis.
       Do you recall that testimony?
6  A. Yes.
7  Q. You referred to years 2005, 2006 and 2007.

Page 41

- ROBERT W. BERLINER -

       As I recall, 2007 is this case, that's what you're referring to; is that right?
  A. And the second one covered both 2006 and '7.
  Q. So, am I correct in understanding that the work you did in 2006 with respect to a 142 goodwill impairment analysis is work that relates to this litigation?
  A. No.
  Q. I'm sorry. Did it relate to a litigation?
  A. Yes.
  Q. Did you offer an opinion as an expert in this litigation?
  A. No.
  Q. The work that you performed in 2005, was that also in connection with a litigation?
  A. Yes, sir.
  Q. Did you offer an opinion in that litigation?
  A. I did.
  Q. What was the name of that case? Do you recall the name of the case?
  A. Let me see if I can get it from -- the

Page 42

- ROBERT W. BERLINER -

name of the case was the Huff Alternative Income Fund LP against PriceWaterhouseCoopers LLP.
  Q. Is that the case which is listed at Page B2 of Exhibit B to your report?
  A. Yes, sir.
  Q. What was -- were you representing plaintiff or the defendant in that case?
  A. The plaintiff.
  Q. Was there a judgment or verdict in that case?
  A. I believe that case settled.
  Q. Sir, do you remember the name of the case you testified to in 1992 where there was a successful disqualification motion made with respect to your participation?
       MR. KAPLAN: Object to the form.
  A. I refer to it as the Interfund case, but I don't think that was the exact name of the case, so I don't recall the exact name of the case.
  Q. What court was that case?
  A. I don't recall.
  Q. Do you recall the state?
  A. No.
  Q. Do you recall the name of the case --

Page 43

- ROBERT W. BERLINER -

the second case that you referred to, which I believe was 1993, in which a disqualification motion was made?
  A. Yes. It was a class action case involving the Republic Bank, maybe the First Republic Bank. I don't remember the exact name of -- Texas, not New York.
  Q. Do you recall what court that was in?
  A. Yes. It was a court in Texas.
  Q. Do you recall whether --
  A. Dallas, I believe. I believe federal court in Dallas.
  Q. Earlier, if you recall, we were discussing a discussion you had with your colleagues regarding the allegations in Paragraph 51 of the Complaint.
       Do you recall that testimony?
  A. Not in the Complaint in this litigation, but the First Amended Complaint.
  Q. Yes, sir, the First Amended Complaint.
  A. Yes, sir.
  Q. Do you remember that testimony?
  A. Yes.
  Q. Sir, do you recall whether or not either

Page 44

Pages 41 to 44

Elisa Dreier Reporting Corp.   (212) 557-5558
780 Third Avenue, New York, NY 10017