IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAGTEN ASSET MANAGEMENT CORPORATION and LAW DEBENTURE TRUST COMPANY OF NEW YORK,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 04-1494 (JJF)<br>)<br>)<br>)<br>)<br>)<br>) |
| MAGTEN ASSET MANAGEMENT CORP.,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. HANSON and ERNIE J. KINDT,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 05-499 (JJF)<br>)<br>)<br>)<br>) |

**MAGTEN ASSET MANAGEMENT CORPORATION AND LAW
DEBENTURE TRUST COMPANY OF NEW YORK'S MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE THE TESTIMONY
<u>OF CHARLES A. PATRIZIA PURSUANT TO FED. R. CIV. P. 37(c)</u>**

Dale R. Dubé (No. 2863)
David W. Carickhoff (No. 3715)
BLANK ROME LLP
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

- and -

Kathleen M. Miller (No. 2898)
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899
Telephone (302) 652-8400
Facsimile (302) 652-8405

- and -

| | |
|---|---|
| Bonnie Steingart<br>Gary L. Kaplan<br>John W. Brewer<br>FRIED, FRANK, HARRIS, SHRIVER &<br>JACOBSON LLP<br>One New York Plaza<br>New York, NY 10004<br>Telephone: (212) 859-8000<br>Facsimile: (212) 859-4000<br><br>*Counsel for Magten Asset Management Corporation* | John V. Snellings<br>Amanda D. Darwin<br>NIXON PEABODY LLP<br>100 Summer Street<br>Boston, Massachusetts 02110-1832<br><br>*Counsel for Law Debenture Trust Company of New York* |

Dated: January 31, 2008

## TABLE OF CONTENTS

Page

I. **Patrizia Should Be Precluded From Offering Testimony at Trial** ...................3

    A. **NorthWestern's Disclosure of Patrizia, Made After the Close of Discovery and on the Eve of Trial, Requires Evidentiary Preclusion Under Fed. R. Civ. P. 37(c)** ......................................................3

    B. **Patrizia's Testimony at Trial Will Cause Plaintiffs Undue and Incurable Harm and Prejudice** ................................................................4

II. **There Can Be No Doubt That Patrizia's Declaration and Planned Testimony Function as a Waiver of the Attorney-Client Privilege** ...................5

    A. **Patrizia's Declaration Has Already Waived Attorney-Client Privilege** ........................................................................................................6

    B. **Patrizia's Testimony Will Waive Attorney-Client Privilege** .................7

# TABLE OF AUTHORITIES

## CASES

Ajax Enterprises v. Fay,
   2007 U.S. Dist. LEXIS 38515 (D. N.J. May 15, 2007) .................................................. 4, 5

Chevron Corp. v. Pennzoil Co.,
   974 F.2d 1156 (9th Cir. 1992) ........................................................................................ 6

Frederick v. Hanna,
   2007 U.S. Dist. LEXIS 18626 (W.D. Pa. Mar. 16, 2007) .................................................. 4

Gov. Guaranty Fund of Finland v. Hyatt Corp.,
   1997 U.S. Dist. LEXIS 20591 (D. V.I. Dec. 19, 1997) ...................................................... 7

Hagans v. Henry Weber Aircraft Distributings,
   852 F.2d 60 (3d Cir. 1988) .............................................................................................. 6

Handgards, Inc. v. Johnson & Johnson,
   413 F. Supp. 926 (N.D.Cal.1976) ................................................................................. 7, 8

McCree v. Allegheny County,
   2006 U.S. Dist. LEXIS 90394 (W.D. Pa. Dec. 14, 2006) .................................................. 4

Mextel, Inc. v. Air-Shields, Inc.,
   2005 U.S. Dist. LEXIS 1281 (E.D. Pa. Jan. 31, 2005) ..................................................... 6

Multiform Dessicants, Inc. v. Stanhope Products Co.,
   930 F. Supp. 45 (W.D.N.Y. 1996) .................................................................................. 7

Mushroom Associates v. Monterey Mushrooms,
   1992 U.S. Dist. LEXIS 20640 (N.D. Cal. Aug. 21, 1992) ................................................ 7

Nitinol Medical Technologies, Inc. v. AGA Medical Corp.,
   135 F. Supp. 2d 212 (D. Mass. 2000) .............................................................................. 5

Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.,
   32 F.3d 851 (3d Cir. 1994) ........................................................................................... 6, 8

Softel, Inc. v. Dragon Medical & Sci. Communs.,
   118 F.3d 955 (2d Cir.1997) ............................................................................................. 6

W. L. Gore & Assoc., Inc. v. Tetratec Corp.,
   1989 U.S. Dist. LEXIS 14245 (E.D. Pa. Nov. 27, 1989.) ................................................. 5

## RULES

Fed. R. Civ. P. 26(a)(1)(A) ...........................................................................................................3

Fed. R. Civ. P. 26(e)(1)...............................................................................................................3

Fed. R. Civ. P. 37(c) ................................................................................................................3, 4

Plaintiffs Magten Asset Management Corp. ("Magten") and Law Debenture Trust Company of New York (the "Indenture Trustee", and, collectively with Magten, the "Plaintiffs") respectfully submit this memorandum of law pursuant to Rule 37(c) of the Federal Rules of Civil Procedure in support of its motion to exclude the testimony of Charles A. Patrizia at the trials in the above captioned actions.[1]

## PRELIMINARY STATEMENT

On January 22, 2008, defendants NorthWestern Corporation ("NorthWestern"), Michael Hanson and Ernie Kindt (collectively, the "Defendants") advised Plaintiffs for the first time that they intended to call Charles A. Patrizia, an outside lawyer who represented NorthWestern in connection with the transactions giving rise to these lawsuits, as a fact witness at trial.[2] This belated announcement is particularly prejudicial to Plaintiffs because of the well-established rule that using a lawyer as a fact witness waives privilege where, as here, the witness' potentially relevant personal knowledge necessarily derives from information he learned, or advice he gave, in his capacity as a lawyer. During fact discovery, NorthWestern withheld as privileged nearly 100 separate documents with Patrizia's name on them, as well as numerous others involving Patrizia's colleagues at the Paul Hastings law firm (whose knowledge is obviously imputable to him).[3] The vast majority of those documents reflect communications involving both Patrizia

---

[1]   Plaintiffs are filing herewith a declaration of John W. Brewer ("Brewer Decl.") to place before the Court certain relevant documents referred to in this motion.
[2]   The preliminary witness lists Defendants sent to Plaintiffs on the evening of January 22 are Brewer Decl. Exhs. 1 & 2. The factual and procedural background of these actions can be found in Plaintiffs' oppositions to Defendants' motions for summary judgment. (D.I. 260, Case No. 04-1494; D.I. 298, Case No. 05-499)
[3]   Brewer Decl. ¶ 4.

and NorthWestern personnel who were deposed by Plaintiffs in this case – but obviously deposed without access to the withheld documents.[4]

Less than 72 hours after being notified of Defendants' intent to use Patrizia as a trial witness, Plaintiffs made additional discovery requests seeking material previously withheld as privileged, both from NorthWestern and from Mr. Patrizia and the Paul Hastings firm, and noticing Mr. Patrizia for a deposition on February 15.[5] Plaintiffs have not yet received any response from NorthWestern, Mr. Patrizia, or Paul Hastings to these requests.

But even in the somewhat unlikely event that all of the subjects of the supplemental discovery provide it promptly and do not assert any privilege objections, the prejudice to Plaintiffs cannot be adequately cured. Mr. Patrizia is apparently being offered to testify to his client's subjective intention and state of mind with regard to the transactions at issue, but the basis of his knowledge (otherwise privileged communications and legal advice) was not available to Plaintiffs when they deposed his client, i.e. the former senior NorthWestern officers and directors – virtually all of whom are no longer associated with NorthWestern and do not live close enough to Delaware to be subpoenaed as trial witnesses.[6] Even if Plaintiffs were able to scramble to review newly-produced documents and carry out a deposition of Mr. Patrizia (all in the middle of last-minute trial preparation), it would be impossible to reopen all of those depositions in light of previously withheld information on what Defendants apparently believe is a key issue. Exclusion of the proffered testimony at trial is therefore the appropriate remedy.

---

[4] Id.
[5] The letter to NorthWestern's counsel demanding prompt production of previously withheld items from the privilege log is Brewer Decl Exh. 3; the supplemental document request to NorthWestern is Brewer Decl. Exh. 4; the subpoenas served on Paul Hastings and Mr. Patrizia are Brewer Decl. Exhs. 5 & 6.
[6] Plaintiffs deposed 6 witnesses during fact discovery who had been officers or directors of NorthWestern during 2002, of which only one (Mr. Hanson) is still affiliated with the company. Brewer Decl. ¶ 9. All of the witnesses no longer affiliated with the company neither live nor work in Delaware or nearby states. Id.

2

# ARGUMENT

I. **Patrizia Should Be Precluded From Offering Testimony at Trial**

   A. **NorthWestern's Disclosure of Patrizia, Made After the Close of Discovery and on the Eve of Trial, Requires Evidentiary Preclusion Under Fed. R. Civ. P. 37(c)**

Under Rule 37(c), a party is not permitted to use as evidence any witness or information not timely identified as required by Rule 26(a) or 26(e) unless the failure of timely disclosure is harmless. Here, there can be no credible claim that the failure was harmless. Rule 26(a)(1)(A) requires a party to disclose as an initial matter the names of individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses, and to identify the subject matter of this information. Rule 26(e)(1) imposes a further requirement that the party supplement its initial disclosures "at appropriate intervals" if the party learns that the information previously disclosed is in some way materially incorrect.

NorthWestern did not in its initial 26(a) disclosures identify either Patrizia, any colleague of his from Paul Hastings, or any other outside lawyer as an individual likely to have discoverable information.[7] Nor did it supplement those disclosures, or at any time during fact discovery give any indication that it intended to employ outside counsel as a fact witness.[8] Under these circumstances, Rule 37(c) mandates that his testimony be precluded. See Ajax Enters. v. Fay, 2007 U.S. Dist. LEXIS 38515, at *9-10 (D. N.J. May 15, 2007) (precluding, under 37(c), amendment of plaintiffs' damages claim where amendment was sought after the

---

[7] Those disclosures are Brewer Decl. Exh. 7.
[8] Presumably if Plaintiffs had sought to depose Mr. Patrizia or any other outside lawyer as a fact witness prior to the close of fact discovery, NorthWestern would have vigorously opposed the effort and taken a position on privilege consistent with that in its privilege log.

3

close of fact discovery and "virtually on the eve of the final Pretrial Conference"); see also McCree v. Allegheny County, 2006 U.S. Dist. LEXIS 90394, at *6-8 (W.D. Pa. Dec. 14, 2006).

### B. Patrizia's Testimony at Trial Will Cause Plaintiffs Undue and Incurable Harm and Prejudice

Defendants cannot escape mandatory preclusion of Patrizia's testimony under Rule 37(c) by contending that their failure to disclose Patrizia until the eve of trial is harmless. Courts have identified four factors relevant to this inquiry, including the prejudice or surprise of the party against whom the excluded witness would have testified and the ability of that party to cure the prejudice – both of which are met here.[9] While Plaintiffs may be able to conduct some limited discovery related to Patrizia's belatedly-announced testimony, such discovery will be far from adequate. Plaintiffs have had no opportunity to review privileged documents – unproduced and discoverable only as a result of Patrizia's recently revealed intent to testify (as is discussed more fully infra) – when deposing those NorthWestern officers with whom Patrizia had relevant conversations. Moreover, the severely compressed time period available to Plaintiffs for document review will make a complete and meaningful analysis of any newly-produced documents effectively impossible.

Plaintiffs cannot now be expected to turn back time and re-conduct the depositions of NorthWestern's officers. The harm to Plaintiffs is obvious and impermissible – as is the advantage Defendants would unfairly gain. See Ajax Enters. at *9-10 (noting that defendants would be substantially prejudiced if after close of discovery they were required to engage in

---

[9] See Frederick v. Hanna, 2007 U.S. Dist. LEXIS 18626, at *13 (W.D. Pa. Mar. 16, 2007) (citations omitted). The remaining two factors are the extent to which waiver of the rule would disrupt the orderly and efficient trial of the case, and the party's bad faith or unwillingness to comply with an order of the district court. Id.

4

substantial fact discovery and depositions, in an attempt to respond to previously undisclosed evidence presented on the eve of the final Pre-Trial Conference).

When an attorney is called as a fact witness in a litigation, the opposing party must be given a meaningful opportunity to conduct discovery, not merely a minimal opportunity. For this reason, courts – even absent a 37(c) motion – have stressed the need for prompt disclosure, during discovery, of a party's intent to utilize attorney testimony at trial. In W.L. Gore & Associates, Inc. v. Tetratec Corp. the court held that defendant needed to decide "now or . . . in the near future" whether it was willing to produce privileged documents in connection with the testimony of an attorney. 1989 U.S. Dist. LEXIS 14245, at *9 (E.D. Pa. Nov. 27, 1989). If privileged material is to be used at trial, the court reasoned, it cannot simply be produced at the party's discretion, as the opposing party "must be allowed to examine the privileged documents in order to conduct pre-trial discovery." Id. at *9; see also Nitinol Med. Techs., Inc. v. AGA Med. Corp., 135 F. Supp. 2d 212, 217-18 (D. Mass. 2000).

## II. There Can Be No Doubt That Patrizia's Declaration and Planned Testimony Function as a Waiver of the Attorney-Client Privilege

Plaintiffs assume that the Defendants intend to present Patrizia as a fact witness.[10] Accordingly, the only possible basis on which Patrizia could have admissible personal

---

[10] To the extent that this assumption proves incorrect, Plaintiffs note that allowing Patrizia to testify as an expert witness after the deadlines for designation of experts and disclosure of expert reports have passed would be wholly inappropriate. Courts routinely sanction parties who fail to comply with designated expert deadlines (or engage in related forms of discovery abuse) by precluding the relevant witness from testifying altogether. See, e.g., Hagans v. Henry Weber Aircraft Distribs., 852 F.2d 60, 64 (3d Cir. 1988) (plaintiff not allowed to use a substitute expert in place of previously designated expert whose testimony had been disallowed for discovery violations); Softel, Inc. v. Dragon Med. & Scientific Commc'n., 118 F.3d 955, 961, 963 (2d Cir.1997) (upholding district court order precluding testimony of a substitute expert who failed to submit his expert report by the court-imposed deadline); Mextel, Inc. v. Air-Shields, Inc., 2005 U.S. Dist. LEXIS 1281, at *36-37 (E.D. Pa. Jan. 31, 2005) (where expert was not designated as such prior to close of discovery, and failed to produce an expert report prior to close of discovery, court precluded expert from testifying at trial.).

5

knowledge of NorthWestern is as a result of communications he had with NorthWestern's employees in his capacity as a lawyer. It is well-settled that calling Patrizia as a witness will effectuate a waiver of the attorney-client privilege with respect to such communications. See Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994) ("Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice."); see also Chevron Corp. v. Pennzoil Co., 974 F.2d 1156, 1162 -1163 (9th Cir. 1992).

### A.    Patrizia's Declaration Has Already Waived Attorney-Client Privilege

Even before trial, the declaration Mr. Patrizia provided to NorthWestern in connection with its summary judgment motion was itself sufficient to operate as a waiver of attorney-client privilege.[11] The Patrizia Declaration sets forth his account of the transfer of substantially all of the assets of Clark Fork and Blackfoot LLC to NorthWestern (the "Going Flat Transaction"), including contentions about NorthWestern's subjective intent and state of mind, based on his knowledge obtained as NorthWestern's counsel.[12] Courts have repeatedly found that a declaration of counsel regarding information learned in a professional capacity constitutes a waiver of attorney-client privilege. See Mushroom Assocs. v. Monterey Mushrooms, 1992 U.S. Dist. LEXIS 20640, at *8-9 (N.D. Cal. Aug. 21, 1992) (holding that the submission of an

---

[11]  That declaration is before the Court as D.I. 245, Case No. 04-1494. Another copy is attached as Exh. 8 to the Brewer Decl. for ease of reference.

[12]  Paragraph 2 of the Patrizia Declaration confirms that the basis for his knowledge is "that he was personally involved in... representing" NorthWestern in the Going Flat Transaction. Indeed, it is clear from the Patrizia Declaration that Mr. Patrizia's testimony would focus on NorthWestern's subjective intent and state of mind with respect to the Going Flat Transaction, including, for example:
- NorthWestern's desire to "structur[e] the Transaction so as to achieve two reasonable and legitimate business objectives." Patrizia Declaration ¶ 4.
- "NorthWestern preferred that the Transaction not result in its becoming a registered utility holding company." Patrizia Declaration ¶ 6.
- "NorthWestern had always intended to return promptly to its original 'flat' utility structure." Patrizia Declaration ¶ 11.

attorney's declaration constituted a waiver of attorney-client privilege; the waiver extended to all communications pertaining to the subject matter of the declaration); see also Multiform Dessicants v. Stanhope Prods., 930 F. Supp. 45, 48 (W.D.N.Y. 1996); Gov. Guar. Fund of Finland v. Hyatt Corp., 1997 U.S. Dist. LEXIS 20591, at *19-20 (D. V.I. Dec. 19, 1997). Likewise, the Patrizia Declaration waived attorney-client privilege regarding the subject matter of the declaration, i.e. the Going Flat Transaction.

### B. Patrizia's Testimony Will Waive Attorney-Client Privilege

Even if Patrizia's Declaration does not waive the attorney-client privilege, his testimony clearly will. NorthWestern is calling Patrizia to testify that a motivation for the Going Flat Transaction was to enable NorthWestern to avoid the regulatory regime of the Public Utility Holding Company Act ("PUHCA").[13] NorthWestern presumably plans to rely on Patrizia's testimony to demonstrate that the Going Flat Transaction can somehow be separated from the massive fraudulent scheme NorthWestern was carrying out at the same time, because of a supposed alternative non-fraudulent motive for the transaction. Such reliance on counsel's advice to show the client's subjective state of mind waives the privilege accorded attorney-client communications. See Handgards, Inc. v. Johnson & Johnson, 413 F.Supp. 926, 929 (N.D.Cal.1976) (noting that "[b]y putting their lawyers on the witness stand in order to demonstrate that the prior lawsuits were . . . brought in good faith, defendants will waive the attorney-client privilege as to communications relating to the issue of . . . good-faith."). Defendants in this case are attempting to use the testimony of prior counsel to demonstrate

---

[13] Other record evidence suggests that this "motive" was invented after the fact. For example, NorthWestern's board resolution directing the Transfer and the accompanying board minutes makes absolutely no mention of PUHCA compliance issues as a motive for carrying out the Transfer – only "rating agency purposes" and the desire to appropriate Clark Fork's assets "to more directly support the obligations of the Corporation." Brewer Decl. Exh. 9.

7

subjective good faith on NorthWestern's part, and it follows that counsel's testimony will similarly function as a waiver of privilege.

The entire claim that NorthWestern should be presumed to have lacked fraudulent intent because it was motivated by a supposed desire to evade the regulatory requirements of PUHCA is a classic advice-of-counsel defense, which necessarily comes at the price of a waiver of privilege as to the entire relevant subject matter. It is indisputable that if "the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue," then "the client has opened to examination facts relating to that advice," thus waiving privilege. Rhone-Poulenc at 863.

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court exclude any testimony by Charles A. Patrizia at the trials in the above captioned actions.

Dated:  Wilmington, Delaware
        January 31, 2008

BLANK ROME LLP

*/s/ Dale R. Dubé*
Dale Dubé (DE No. 2863)
David W. Carickhoff (No. 3715)
1201 Market Street, Suite 800
Wilmington, DE 19801
Telephone:  (302) 425-6400
Facsimile:   (302) 425-6464

FRIED, FRANK, HARRIS, SHRIVER &
  JACOBSON LLP
Bonnie Steingart
Gary L. Kaplan
John W. Brewer
One New York Plaza
New York, NY 10004
Telephone:  (212) 859-8000
Facsimile:  (212) 859-4000

*Counsel for Magten Asset Management Corporation*

- and -

/s/ Kathleen M. Miller
Kathleen M. Miller (No. 2898)
SMITH KATZENSTEIN & FURLOW LLP
800 Delaware Avenue
P. O. Box 410
Wilmington, DE 19899
Telephone  (302) 652-8400
Facsimile  (302) 652-8405

John V. Snellings
Amanda D. Darwin
NIXON PEABODY LLP
100 Summer Street
Boston, Massachusetts 02110-1832
Telephone:  (617) 345-1000
Facsimile:  (617) 345-1300

*Counsel for Law Debenture Trust Company of New York*

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of January, 2008, I served by hand delivery and electronic filing MAGTEN ASSET MANAGEMENT CORPORATION AND LAW DEBENTURE TRUST COMPANY OF NEW YORK'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF CHARLES A. PATRIZIA PURSUANT TO FED. R. CIV. P. 37(c) using CM/ECF, which will send notification of such filing(s) to the following:

Denise Seastone Kraft, Esquire
Edwards Angell Palmer & Dodge LLP
919 North Market Street, 15th Floor
Wilmington, DE 19801

Victoria Watson Counihan, Esquire
Dennis A. Meloro, Esquire
Greenberg Traurig LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, DE 19801

I also certify that, on this 31st day of January, 2008, I served the aforementioned document, by email and Federal Express, upon the following participants:

Stanley T. Kaleczyc, Esquire
Kimberly A. Beatty, Esquire
Browning, Kaleczyc, Berry & Hoven, P.C.
139 North Last Chance Gulch
P.O. Box 1697
Helena, Mt 59624

Steven J. Reisman, Esquire
Joseph D. Pizzurro, Esquire
Nancy E. Delaney, Esquire
Miriam K. Harwood, Esquire
Myles Bartley, Esquire
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061

_____
Dale R. Dubé (No. 2863)